**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530,<br><br>　　　　　*Plaintiff,*<br><br>　　v.<br><br>AGRI STATS, INC.<br>6510 Mutual Drive<br>Fort Wayne, IN 46825<br><br>　　　　　*Defendant.* | Civil Action No.: 0:23-cv-03009-JRT-JFD |

**DEFENDANT'S MOTION TO SEAL SENSITIVE**
**INFORMATION IN THE COMPLAINT**

Defendant Agri Stats, Inc. ("Agri Stats") respectfully requests this Court to order Plaintiff United States of America (the "Government") to withdraw the Complaint in this action from the public docket, refile it under seal, and meet and confer with Agri Stats regarding appropriate redactions for a version to be filed on the public docket.

In support of this motion, Agri Stats states as follows:

1. On September 28, 2023, the Government filed a Complaint alleging that Agri Stats facilitates exchanges of information among broiler, pork, and turkey producers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2. Before the filing of the Complaint, the Government issued a Civil Investigative Demand ("CID") to Agri Stats March 31, 2022. See, 15 U.S.C. §§ 1311-

1314 (the Amended Antitrust Civil Process Act). In compliance with that CID, Agri Stats produced materials containing competitively sensitive information.

3. The vast majority of the information Agri Stats provided to the Government in response to the CID were deposition testimony given or documents produced in pending civil litigation: *In re Broiler Chicken Antitrust Litigation*, C.A. No. 16-cv-8637 (N.D. Ill.); *In re Pork Antitrust Litigation*, C.A. No. 18-cv-1776 (D. Minn.); and *In re Turkey Antitrust Litigation*, C.A. No. 19-cv-8318 (N.D. Ill.) (all such cases, collectively, the "Proteins Cases"). All materials that Agri Stats produced in those matters was designated either Confidential or Highly Confidential pursuant to respective Protective Orders in each case. *See* Agreed Confidentiality Order, *In re Broilers*, ECF. No. 202; Protective Order, *In re Pork*, ECF No. 212; Protective Order, *In re Turkey*, ECF No. 201 ("Protective Orders").

4. When responding to the Government's CID, Agri Stats requested confidential treatment of the material it produced as "Confidential Business Information" under 28 C.F.R. § 16.7, including, among other things compliance with exemptions to any request for disclosure under the Freedom of Information Act such as those set forth in 5 U.S.C. § 552(b)(3), (4), and (7).

5. Notwithstanding the statutory protections, the Government's Complaint contains, or refers to, confidential information including direct quotes from documents and testimony in pending litigation, excerpts from confidential Agri Stats reports (the format of which is competitively sensitive), and references to Agri Stats current ownership structure. *See, e.g.,* Comp. ¶¶ 12, 16 fn. 14, 17, 19 fig. 1, 25, 26, 36 fig. 2, 37 fig. 3, 42 fig. 4, 43 fig. 5, 67, 70, 80 fig. 11, and 86. Agri Stats designated all of this material as

Confidential pursuant to 28 C.F.R. § 16.7 when produced to the Government and had designated the bulk Highly Confidential under the Protective Orders in the Proteins Cases. Agri Stats designated the remainder as Confidential under those same Protective Orders or pursuant to 28 C.F.R. § 16.7.[1]

6. DOJ's disclosure of this information on the public record violates not only the Government's nondisclosure obligations under the relevant statutes, regulations, and agreement between the Government and Agri Stats to keep its information confidential, but also reflects a blatant end-run around the Protective Orders entered by in the Protein Cases. DOJ's disclosure also chills the willingness of future civil investigative demand recipients from engaging with the Government and producing materials in a cooperative fashion when the Government in turn shows no regard for the appropriate treatment of the confidential information that the recipients produce. For these reasons, the Government's disclosure of Defendants' confidential information should be cured by an order compelling the Government to withdraw the unredacted Complaint from the public record and to substitute a redacted version.

7. The applicable regulations governing the designation of confidential commercial information is clear: when the "submitter" of confidential commercial information "designate[s] by appropriate markings, either at the time of submission or within a reasonable time thereafter, any portion of its submission that it considers to be

---

[1] The Government's Complaint also appears to contain material designated as Confidential and Highly Confidential by multiple other parties. Those parties may additionally seek to have their sensitive material redacted but Agri Stats does not have the standing to seek such relief for anyone but itself.

protected," 28 C.F.R. § 16.7(b), the Government "shall promptly provide written notice to [the] submitter . . . whenever records containing such information" are to be made public. *Id*.(c)(1). The only applicable exception to the notice requirement of 28 C.F.R. § 16.7 is when "[t]he information has been lawfully published or has been officially made available to the public." *Id*.(d)(2). Upon receipt of notice the submitter must be afforded the opportunity to object to the disclosure of its confidential information. *Id*.(e).

8. The Government followed none of these steps before filing its Complaint even though Agri Stats expressly designated that the information it provided was to be considered Confidential Business Information. The Government gave Agri Stats no notice that the materials it produced were to be made public and thus no opportunity to object to the disclosure.

9. The Government insists that it has the right to use such material in an enforcement action under 15 U.S.C. § 1312(c)(2) and 15 U.S.C. § 1313(d)(1). *See* Exhibit 1 to the Declaration of Peter H. Walsh ("Walsh Decl."), dated October 6. 2023. Neither statute addresses the confidential nature of materials produced to the Government. They merely identify the process through which the Government can obtain information through civil investigative demands and how the Government can designate a custodian to produce those materials in a later proceeding. The Government's position appears to be that 15 U.S.C. § 1312(c)(2) and 15 U.S.C. § 1313(d)(1) make it the sole arbiter of how the information obtained from other parties—in this case, information produced with an expectation of confidentiality under the governing regulations and further shielded from disclosure by the respective Protective Orders in the Proteins Cases—is made public. The

4

Government, again relying on those statutes, further disclaims any obligation to confer with producing parties before making that information public. Those statutes provide no support for the Government's assertions. Indeed, the Government's position contrasts starkly with the fact that both 15 U.S.C. § 1312(c)(2) and 15 U.S.C. § 1313(d)(1) outline a *compulsory* process under which a private party *must* provide information to the Government. As such, the Government's position is that a private party like Agri Stats *must* provide the requested information even if it is competitively sensitive, *and* the producing party has no say in whether its sensitive information can be made public. No authority supports that position.

10. In an email from the Government to Agri Stats' counsel, the Government argued that the materials are not competitively sensitive. *See* Walsh Decl. Ex. 1. But under its own regulations, the Government is not authorized to make that decision. The materials are confidential business information and were designated as such by Agri Stats, the submitter. The regulations do not permit the Government to decide unilaterally what material is confidential and what is not.

11. The case law is clear that the statutes cited by DOJ do not make the Government sole arbiter of how materials produced under CIDs should be treated or disclosed. In *Aluminum Co. of America v. United States Department of Justice, Antitrust Division*, 444 F. Supp. 1342 (D.D.C. 1978), the Government asserted that the Amended Antitrust Civil Process Act permitted it to "unilaterally decide whether to disclose" confidential documents, *id*. at 1344, precisely the same position it asserts here. In response, Alcoa sought a protective order precluding the Government from using the confidential

information Alcoa produced in future investigative depositions. *Id*. The court sided with Alcoa and rejected the Government's broad claim of authority:

> In sum the Department, insisting that it has the sole discretion to determine whether to use CID documents [in future proceedings], contends that a protective order is precluded by section 1313(c)(2) and would undermine the purposes of the 1976 Amendments. Upon consideration of the relevant provisions, statutory framework, and legislative history, it appears that the interpretation of the Department is incorrect.

*Id*. at 1345-46. Unlike in *Aluminum Co.*, the Government did not even give Agri Stats the opportunity to move for a protective order. It filed the Complaint with the information on the public docket and only informed Agri Stats of the filing after the fact when it requested a waiver of service.

12. The Government's own internal policies also support Agri Stats. The Department of Justice Antitrust Division Manual ("Manual") provides that provides that "[i]f competitively sensitive information is to be used in a pleading, the Division's general policy is to make reasonable efforts to allow the party that produced the material the opportunity to seek a protective order. Alternatively, the Division may voluntarily file the document or portion of the pleading under seal." *See* Manual, 5th Ed., page III-66, attached as Walsh Decl. Ex. 2. The Government gave Agri Stats no such opportunity here.

13. The Government well understands the limitations that the regulations, the cases, and its own internal policies place on its disclosure of confidential information, but nevertheless chose to ignore those limitations here. In September 2022, the Government filed a Complaint seeking to enjoin a merger that contained quotations from, and references to, confidential information that the named defendants had produced to the Government

through a separate process. *United States v. ASSA ABLOY AB, et al.*, CA No. 1:22-cv-2791. In that instance, after the defendants filed a motion similar to this one, the Government withdrew its complaint from the docket and DOJ website, met and conferred with the defendants, and filed a redacted version of the complaint that satisfied the defendants concerns with respect to the treatment of their confidential information. *See id.*, ECF No. 17.

14. Continued public disclosure of such confidential business information will cause commercial and competitive harm to Agri Stats and potentially those to the broiler, pork and turkey businesses Agri Stats serves, or has served in the past. *See State of New York v. Microsoft Corp.*, No. CIV.A. 98-1233(CKK), 2002 WL 1315804, at *1 (D.D.C. May 8, 2002) ("Protecting an entity's 'competitive standing' through retained confidentiality in business information has been recognized as an appropriate justification for the restriction of public or press access."). This is particularly ironic considering DOJ's merits theory is that Agri Stats facilitated an unlawful exchange of confidential information and that such conduct must be enjoined to protect consumers.

15. In short, the Government's disclosure of confidential is inconsistent with the applicable statutes, regulations, case law, and internal Government policy. It also flaunts three Protective Orders entered in the Proteins Cases, including one this Court entered.

16. The fact that the disclosure has already occurred does not minimize the importance of the relief requested in this case. To the contrary, it only heightens the need to have the Government withdraw the Complaint promptly before further harm occurs.

17. Before filing this Motion, Agri Stats conferred with counsel for the Government on October 2, 2023 and October 3, 2023 in a good-faith effort to determine whether there is any opposition to the relief sought and/or to narrow the areas of disagreement, pursuant to LCvR 7(a). The Government refused to redact any of Agri Stats' confidential information in its Complaint, necessitating this motion. *See* Walsh Decl. Ex. 1.

### **CONCLUSION**

For the foregoing reasons, Agri Stats respectfully requests that this Court order the Government to withdraw the unredacted Complaint from the public docket, refile it under seal, and file a new version of the Complaint on the public docket redacting Agri Stats' confidential business information. A proposed redacted version of the Complaint is being submitted with this motion. *See* Walsh Decl. Ex. 3  Agri Stats remains willing to confer with the Government about the appropriate redactions for the public filing.

Dated: October 6, 2023               Respectfully submitted,

*/s/ Peter H. Walsh*
Peter H Walsh (MN# 0388672)
Hogan Lovells US LLP
80 South 8th Street Ste 1225
Minneapolis, MN 55402
Tel: 612-402-3017
Fax: (612) 339-5167
Email: peter.walsh@hoganlovells.com

William L. Monts III (Pro Hac Vice Forthcoming)
Justin W. Bernick (Pro Hac Vice Forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.

Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant Agri Stats, Inc.*