UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                          Plaintiff,<br><br>      v.<br><br>AGRI STATS, INC.<br><br>                          Defendant. | No. 0:23-cv-03009-JRT-JFD |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SEAL**

The United States' Complaint alleges that Agri Stats, Inc. violated the antitrust laws by organizing the exchange of competitively sensitive information among the largest chicken, pork, and turkey processors with the effect of boosting industry-wide profits at the expense of consumers. Agri Stats now seeks to compel the United States to re-file its Complaint under seal and redact allegations that Agri Stats deems "confidential."

Neither Agri Stats' motion nor its prefiling discussions with the United States explain how or why any of the information identified in the Complaint could cause competitive harm to Agri Stats. The paragraphs for which Agri Stats seeks redaction include information that is (1) equivalent to information already in the public domain, including as a result of a hearing before this Court; (2) old—in some cases more than a decade old; or (3) not of the type that could not plausibly threaten competitive harm to Agri Stats. Accordingly, Agri Stats has not and cannot overcome the strong presumption in favor

of public access to judicial documents in court proceedings and government enforcement actions enshrined in both the common law and this Court's Local Rules.

Unable to explain how public disclosure of information in the Complaint could harm its business, Agri Stats instead asserts that *any* material produced to the United States in an investigation may not be disclosed in a complaint, without leave of court, if a party unilaterally designated that material as "confidential." But no court has adopted this position and the regulation Agri Stats relies on for this novel view deals with disclosure requested under the Freedom of Information Act, which is not relevant. The United States has strictly adhered to the regulations dealing with its ability to disclose information in an antitrust case, *see* 15 U.S.C. § 1313(d)(1), and assertions to the contrary are meritless.

The United States respectfully submits that the motion should be denied.

## FACTUAL BACKGROUND

The United States filed this enforcement action on September 28, 2023, alleging that Agri Stats violated Section 1 of the Sherman Act by enabling and encouraging anticompetitive information exchanges among the country's largest chicken, pork, and turkey processors. As part of its investigation, the United States obtained evidence from Agri Stats and third parties using Civil Investigative Demands ("CIDs") issued under the Antitrust Civil Process Act, 15 U.S.C. §§ 1311-1314. *See* Friedman Decl. ¶ 3. The United States used some of this evidence to support allegations included in the Complaint. Although the Antitrust Civil Process Act expressly allows the United States to use this information as part of an enforcement action (see *infra*), attorneys for the United States reviewed the Complaint to ensure that it did not contain any competitively sensitive

2

information. *Id.* ¶¶ 16-19. Agri Stats accepted service of the Complaint the day it was filed and published a press release on its website dated the same day entitled, "DOJ Lawsuit Against Agri Stats is Wrong on the Law and Bad for Consumers." *Id.* Ex. 7.

Four days after accepting service of the Complaint, on October 2, 2023, Agri Stats' counsel emailed counsel for the United States requesting that the United States "withdraw the complaint until agreed-upon redactions can be made." *Id.* Ex. 8 at 4. Counsel's request prompted the United States to ask Agri Stats to identify the paragraphs of "immediate concern" and to explain why those allegations should be redacted.[1] Agri Stats responded with a list of 25 paragraphs—almost double the number of paragraphs identified in the present motion—that Agri Stats claimed contained information designated "Highly Confidential" in other litigations, plus one paragraph with information that Agri Stats claimed it had provided to the United States on the condition that it would be kept confidential. *Id.* at 3. The United States responded a few hours later stating that it had reviewed those paragraphs again and determined once more that none required redaction. *Id* at 2*.*

Eight days after accepting service of the Complaint, on October 6, 2023, Agri Stats filed this motion. Notably, this motion came after plaintiffs in both *In re Broilers Antitrust Litigation ("Broilers")* and *In re Turkey Antitrust Litigation ("Turkey")* filed the United

---

[1] The United States is responsive to concerns about the disclosure of competitively sensitive information and may agree to redact information when appropriate, as it did in the *Assa Abloy* case cited by Defendant. Unlike in *Assa Abloy*, however, Defendant here has not identified any genuinely competitively sensitive material or explained why any "confidential" information should not be publicly disclosed—either in the parties' meet and confer or in its motion.

States' Complaint on those respective dockets. *Broilers*, 16-cv-8637 (N.D. Ill. Oct. 5, 2023), ECF No. 6924; *Turkey*, 19-cv-8318 (N.D. Ill. Oct. 3, 2023), ECF No. 843. Agri Stats has not sought relief regarding those filings.

## ARGUMENT

### I. Agri Stats Has Not Overcome the Strong Presumption of Public Access Because the Information at Issue Does Not Warrant Sealing

Judicial records—including the United States' Complaint here—are entitled to a "presumption of public access." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013). The presumption ensures that the public can "keep a watchful eye on the workings of public agencies." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (internal quotation marks omitted). The presumption of public access "is at its apex when the government is a party to the litigation." *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014). "[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). In addition, Plaintiff's allegations of anticompetitive conduct are at the "heart" of the case and thus "the public's interest in the information is manifest." *Marden's Ark, Inc. v. UnitedHealth Group, Inc.*, 534 F. Supp. 3d 1038, 1049 (D. Minn. 2021). The presumption of public access to the Complaint in this case is "strong" and "difficult to overcome." *Id.* at 1043.

To surmount the strong presumption, Agri Stats bears the burden of presenting sufficiently "compelling reason[s]" to keep specific allegations secret. *Truong v. UTC Aerospace Sys.*, 439 F. Supp. 3d 1171, 1172 (D. Minn. 2020). Agri Stats does not attempt

4

such a showing, but instead merely asserts that "[c]ontinued public disclosure of such confidential business information will cause commercial and competitive harm to Agri Stats and potentially those to the broiler, pork and turkey businesses Agri Stats serves, or has served in the past." Mot. at 7. Such "bald assertions of competitive harm . . . provide no substantive justification for sealing," *Marden's Ark*, 534 F. Supp. 3d at 1050, and Agri Stats' motion should be denied based on that failure of proof alone.[2]

In any event, Agri Stats' claim that the Complaint publicized competitively sensitive information is not plausible. Each of the specific allegations that Agri Stats identifies does not warrant sealing because the information disclosed is (1) already available to the public, (2) too old to cause competitive harm, or (3) otherwise "not the type of sensitive information that might typically be subject to an order to seal, such as financial data, proprietary or trade secret information, or personal health details." *Skky, LLC v. Facebook, Inc.*, 191 F. Supp. 3d 977, 981 (D. Minn. 2016).

Several paragraphs identified by Agri Stats involve information that has already been revealed publicly. For instance, Agri Stats complains about the United States' limited excerpting of certain Agri Stats reports, but similar excerpts have been presented publicly in this Court and are currently available on the *Pork* MDL docket. *See* Friedman Decl. Ex.

---

[2] In *State of New York v. Microsoft Corp.*, 2002 WL 1315804 (D.D.C. May 8, 2002), which Agri Stats cites, the defendant made an unopposed motion to seal trial testimony after submitting "proffers" explaining in detail the sensitivity of the confidential material at issue—specifically, "future plans and/or products not yet available." 2002 WL 1315804, at *1. The court agreed to seal proceedings because the defendant "displayed strong property and privacy interests in maintaining the confidentiality of the information at issue." *Id.* at *2. Agri Stats has not made or even attempted to make such a showing here.

5

6 at 11. Agri Stats also has publicly revealed information about its business in other forums. For example, in 2009, then-Agri Stats President Blair Snyder spoke at a Sanderson Farms shareholder meeting. A transcript of that presentation is publicly available on the SEC's EDGAR database. *See id.* Ex. 5 ("Shareholder Presentation"). In that presentation, Mr. Snyder's described Agri Stats' business in equal or greater detail as the Complaint:

| **Complaint Allegation** | **Sanderson Farms Shareholder Presentation** |
|---|---|
| <ul><li>¶ 17 (describing how Agri Stats acquires information from processors)</li><li>¶ 67 (quoting comments from a former employee and Agri Stats' president describing Agri Stats' access to information)</li></ul> | <ul><li>"When we do a setup . . . [w]e convert your raw data to what we call [the] Agri Stats platform. . . . We're going to download your general ledger, your trial balance, every account number [and] subsidiary account number that provides the detail for a company's own financial information. We download that at the greatest level." Shareholder Presentation at 19-20.</li></ul> |
| <ul><li>¶¶ 36-37, 43 (Figs. 2-3, 5) (excerpts from a weekly sales report and excerpts from monthly breeder chick placement report)</li></ul> | <ul><li>Former Agri Stats president showed model broiler reports publicly at a Sanderson Farms investor meeting. Shareholder Presentation at 21.</li></ul> |
| <ul><li>¶ 42 Fig. 4 (listing the participants in a live production book from 2013)</li></ul> | <ul><li>"I'm going to show you some participation lists here. The fact that we've got high 90 percentage of both broilers and turkeys, this pretty much represents about anybody that's out there in the broiler industry." Shareholder Presentation at 19.</li></ul> |
| <ul><li>¶ 70 (describing Agri Stats "paradigm" as bolstering profitability of participants)</li></ul> | <ul><li>"[O]ur mission statement is very simple. It's to improve the bottom line profitability for our participants and we're going to do that by providing accurate and timely comparative data."). Shareholder Presentation at 16.[3]</li></ul> |

---

[3] *See also* Agri Stats' current website: "Mission Statement: Improve the bottom line profitability for our participants by providing accurate and timely comparative data . . . ." https://www.agristats.com/partnership (last accessed Oct. 12, 2023).

6

Sealing information that is "already readily accessible" would be "both pointless and unwarranted." *United States v. Jackson*, 2021 WL 1026127, at *6 (D.D.C. Mar. 17, 2021); *see also Skky, LLC*, 191 F. Supp. 3d at 981 (denying motion to seal where "most, if not all, of the information Defendants seek to file under seal appears to be publicly available").

Other allegations that Agri Stats seeks to seal contain examples that are years—sometimes more than a decade—old. *See, e.g.*, Compl. at ¶¶ 36-37 (excerpting a 2012 weekly sales report); ¶ 42 (excerpting a 2013 live production book); ¶ 43 (including an excerpt from a 2013 monthly breeder chick report); ¶ 80 (including a 2009 Freezer Inventory report); ¶ 86 (describing 2014 and 2015 communications about the market for broiler chickens); Friedman Decl. ¶ 17. Such dated information does not warrant sealing because it is "too stale to cause . . . serious competitive damage." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2018 WL 10440735, at *8 (D. Minn. June 20, 2018) (rejecting motion to seal where information at issue was over ten years old); *Cambria Co. LLC v. Disney Worldwide Servs., Inc.*, 2023 WL 3827714, at *2 (D. Minn. May 8, 2023), *aff'd*, 2023 WL 4559436 (D. Minn. July 17, 2023) (denying motion to seal where the "terms whose continued confidentiality Disney advocates for are from a contract that is now seven years old").

And finally, Agri Stats does not explain why the remaining allegations that Agri Stats complains about, *see* Compl. at ¶¶ 12 (ownership information), 16 (general description of non-processors with access to some of Agri Stats' information), 19 (cartoon about coordination among competitors), and 25-26 (emails between Agri Stats and processors about recruiting other processors), would be sensitive to the company or cause

any harm. For example, Agri Stats objects to the cartoon excerpted from an Agri Stats slide deck featured in Paragraph 19 of the Complaint. That cartoon, which discusses the challenges to competitor coordination, could not conceivably be deemed competitively sensitive. *See Skky, LLC*, 191 F. Supp. 3d at 981; *see also Marden's Ark*, 534 F. Supp. 3d at 1049 (denying motion to seal where "the information may be embarrassing [but] reveals nothing about [defendant's] proprietary system or contracts").

II. **The United States Has Statutory Authority to Publicly File Information Obtained Through Civil Investigative Demands in Court Proceedings**

Unable to explain how the disclosure of information contained in the Complaint could be harmful to its business, Agri Stats relies on two flawed procedural objections to the United States' use of information in the Complaint. First, Agri Stats makes the far-reaching (and never-before accepted) argument that *any* material produced pursuant to a CID may not be disclosed in a Complaint if a party has unilaterally designated that material as "confidential," regardless of the content of the material. Second, Agri Stats argues that the United States cannot publicly disclose any material that a party in another litigation has designated "confidential" under a protective order in that other litigation (again, regardless of the content of the material). Both arguments are contradicted by the plain language of the relevant statutes, applicable case law, and the rules of this Court.

A. **The Antitrust Civil Process Act Expressly Permits the United States to Publicly Disclose CID Materials in Court Proceedings**

Under the Antitrust Civil Process Act, a Department of Justice "custodian" of materials produced pursuant to a CID may make the materials available to, among others, "any attorney of the Department of Justice . . . designated to appear before any court . . . in

8

any case or proceeding . . . for official use in connection with any such case, grand jury, or proceeding as such attorney determines to be required." 15 U.S.C. § 1313(d)(1). When CID materials are cited in a complaint, they are disclosed "for official use" in a court proceeding as the Antitrust Division attorneys who made the filing "determine[d] to be required." *Id.*; *see In re Air Passenger Computer Reservation Sys. Antitrust Litig.*, 116 F.R.D. 390, 392 (C.D. Cal. 1986) ("There are exceptions to the rule of strict confidentiality. Information gathered by a CID may be . . . introduced into the record of agency, court, or grand jury proceedings." (citing 15 U.S.C. § 1313(d)(1))); *United States v. AMR Corp.*, 2000 U.S. Dist. LEXIS 22646, at *11-12 (D. Kans. 2000) ("In addition to consensual disclosure, a Department of Justice attorney may disclose the CID material 'for official use in connection with any case . . . as such attorney determines to be required.'" (quoting 15 U.S.C. § 1313(d))).

Agri Stats relies primarily on 28 C.F.R. § 16.7, a regulation that governs how the United States responds to certain public requests for information made under the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552. But in quoting the regulation, Mot. at 3-4, Agri Stats omitted language stating that the regulation expressly applies only when "records containing [confidential commercial information] *are requested under the FOIA* . . . ." 28 C.F.R. § 16.7(c)(1) (emphasis added). This motion concerns information contained in a complaint, not disclosures in response to FOIA requests. It is the Antitrust

Civil Process Act, not the FOIA regulations cited by Agri Stats, that governs the United States' use of CID information in a complaint.[4]

Nor does any case law support Agri Stats's position. The sole case Agri Stats relies upon, *Aluminum Co. of America v. United States*, 444 F. Supp. 1342 (D.D.C. 1978), dealt with a separate provision of the Antitrust Civil Process Act, 15 U.S.C. § 1313(c)(2), which concerned the disclosure of CID materials to third parties in *investigative depositions* prior to the filing of a case. *See Aluminum Co.*, 444 F. Supp. at 1345-46. The court in *Aluminum Co.* said nothing about the United States' ability to use information "for official use in connection with any such case" under 15 U.S.C. § 1313(d)(1).

The process Agri Stats seeks to impose is not contemplated by statute, and for good reason. Parties often designate (as Agri Stats has here) *everything* they submit to the Department of Justice as protected from disclosure under FOIA pursuant to 28 CFR § 16.7. *See* Friedman Decl. Ex. 4 ("Agri Stats requests that these materials be treated as confidential per all applicable rules, statutes, regulations, and policies."). Under Agri Stats' logic, the United States would effectively be required to meet and confer with every defendant (and every third party) before filing a complaint containing *any* information submitted in response to a CID, including information that is not even plausibly competitively sensitive. In other words, by over-designating everything as "confidential," a defendant would give itself the right to review and determine—before a complaint was ever filed—what material the United States could publicly disclose in a complaint against

---

[4] The Antitrust Civil Process Act expressly exempts all material produced in response to a CID from FOIA in any event. *See* 15 U.S.C. 1314(g).

10

that defendant. That approach finds no support in statutory language, case law, or decades of practice.

### B. The United States Is Not Bound by Agri Stats' Designations of Confidentiality in Other Cases

Agri Stats fares no better contending that the Complaint must be sealed because it contains information that was originally marked "confidential" or "highly confidential" in other legal proceedings. Mot. at 3. This argument ignores both (i) the text of the Antitrust Civil Process Act and (ii) this Court's rules.

The fact that private parties are bound to treat a document as confidential under a protective order entered in another case does not restrain the United States' ability to reference that document in a public filing. Under the Antitrust Civil Process Act, the United States is entitled to issue CIDs to secure materials produced in other proceedings. 15 U.S.C. §§ 1311(i), 1312(a). A CID for such products of discovery "supersedes any inconsistent order, rule, or provision of law (other than this chapter) preventing or restraining disclosure of such product of discovery to any person." 15 U.S.C. § 1312(c)(2).[5] In other words, the terms of a protective order in a litigation do not restrict the production of information responsive to a CID. Once those products of discovery are produced to the United States, the Department of Justice is authorized to use them in judicial proceedings pursuant to 15 U.S.C. § 1313(d)(1), just like any other CID materials.

---

[5] Pursuant to 15 U.S.C. § 1312(a), the United States notified Agri Stats that its discovery materials were being produced and Agri Stats did not object. Friedman Decl. ¶¶ 3-11, Exs. 1-3.

Even if the Antitrust Civil Process Act did not control, Local Rule 5.6 makes clear that the party seeking to seal information needs to make an affirmative showing that sealing is warranted. The rule is intended "to reduce the amount of information that is sealed in civil cases and to ensure that no information is sealed without the permission of a judge." 2017 Advisory Committee Note to LR 5.6. The Local Rules recognize that "protective orders are often quite broad, covering entire documents or sets of documents . . . even when most or all of the contents are not particularly sensitive." *Id.* Accordingly, when information is filed with the Court, "[e]ven if such information is covered by a protective order, that information should not be kept under seal unless a judge determines that a party or nonparty's need for confidentiality outweighs the public's right of access." *Id.*; *see Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 960 F. Supp. 2d 1011, 1013 (D. Minn. 2013) ("[A] protective order is entirely different than an order to seal or redact Court documents . . . ."). Agri Stats has not even attempted to show any need for confidentiality, much less one that outweighs the public's right of access.[6] *See Marden's Ark*, 534 F. Supp. 3d at 1044 (denying motion to seal where party failed to provide evidence of harm from disclosure).

## CONCLUSION

For the foregoing reasons, the Court should deny Agri Stats' motion to seal and the Complaint should remain publicly available in its entirety.

---

[6] Even without 15 U.S.C. § 1313(c)(2), the protective orders in *Broilers*, *Turkey*, and *Pork* do not purport to bind non-parties to those litigations who lawfully subpoena and receive documents from those litigations. *See* Agreed Confidentiality Order ¶ 15, *Broilers*, 16-cv-8637 (N.D. Ill. Nov. 8, 2016), ECF No. 202; Am. Protective Order ¶ 15, *Pork*, 18-cv-1776 (D. Minn. Jan. 31, 2022), ECF No. 1155; Protective Order ¶ 15, *Turkey*, 19-cv-8318 (N.D. Ill. Dec. 18, 2020), ECF No. 201.

Dated: October 13, 2023

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

ANN M. BILDTSEN
Attorney ID No. 0271494
First Assistant United States Attorney
Attorney for the United States Acting Under Authority Conferred by
28 U.S.C. § 515

/s/ Liles H. Repp
LILES H. REPP
Attorney ID No. 0400692
Assistant United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415
Phone: (612) 664-5600
Fax: (612) 664-5788
Liles.Repp@usdoj.gov


*/s/* Mark H.M. Sosnowsky
MARK H.M. SOSNOWSKY
EUN-HA KIM
Senior Trial Counsel

WILLIAM M. FRIEDMAN
JAMES H. CONGDON
SILVIA J. DOMINGUEZ-REESE
PETER A. NELSON
Trial Attorneys

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: (202) 812-4723
Fax: (202) 307-5802
Mark.Sosnowsky@usdoj.gov
Eun-Ha.Kim@usdoj.gov
William.Friedman2@usdoj.gov
James.Congdon@usdoj.gov
Silvia.Dominguez-Reese2@usdoj.gov
Peter.Nelson@usdoj.gov