## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Plaintiff,<br><br>          v.<br><br>AGRI STATS, INC.<br><br>                    Defendant. | No. 0:23-cv-03009-JRT-JFD |

## DECLARATION OF WILLIAM M. FRIEDMAN IN SUPPORT OF
## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SEAL

I, WILLIAM M. FRIEDMAN, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am an attorney with the Antitrust Division of the United States Department of Justice (the "Antitrust Division"). I am admitted pro hac vice in the United States District Court for the District of Minnesota in this matter. I am a member in good standing of the bar of the District of Columbia.

2.     I have personal knowledge of the matters discussed in this Declaration. If called upon as a witness in this action, I could and would testify competently thereto.

3.     As part of its investigation of Agri Stats' conduct, the Antitrust Division served multiple "product of discovery" Civil Investigative Demands ("CIDs") on parties in the following litigations: *In re Broiler Chicken Antitrust Litigation*, 16-cv-8637 (N.D.

Ill.) ("*Broilers*"); *In re Pork Antitrust Litigation*, 18-cv-1776 (D. Minn.) ("*Pork*"); and *In re Turkey Antitrust Litigation*, 19-cv-8318 (N.D. Ill.) ("*Turkey*").

4.      At the time the Antitrust Division served these CIDs, Agri Stats was a defendant in *Broilers*, *Pork*, and *Turkey*.

5.      Among other things, those CIDs called for "[a]ll documents produced by each party" in the *Broilers*, *Pork*, and *Turkey* litigations, as well as transcripts and associated exhibits of all depositions taken in those litigations.

6.      In connection with issuing those CIDs, the Antitrust Division sent notices to each entity that had produced information called for by each of the CIDs. For example, because each product of discovery CID called for "[a]ll documents produced by each party" in the *Broilers*, *Pork*, and *Turkey* litigations, the Antitrust Division served a notice on each party in those litigations. The notice included the CID itself, the text of the CID requests, and a cover letter informing each recipient of the implications of the CID and the recipient's rights under the Antitrust Civil Process Act.

7.      The Antitrust Division sent hundreds of these notices to parties, including Agri Stats, and third parties that produced information in the *Broilers*, *Pork*, and *Turkey* litigations.

8.      Attached as Exhibit 1 is a true and correct copy of one of the cover letter notices the Antitrust Division sent to Agri Stats in connection with the *Broilers* litigation.

9.      Attached as Exhibit 2 is a true and correct copy of the cover letter notice the Antitrust Division sent to Agri Stats in connection with the *Pork* litigation.

10. Attached as Exhibit 3 is a true and correct copy of the cover letter notice the Antitrust Division sent to Agri Stats in connection with the *Turkey* litigation.

11. None of the entities to which the Antitrust Division provided notices, including Agri Stats, filed a motion seeking to modify or set aside (i.e., quash) any of the product of discovery CIDs.

12. The Antitrust Division also served a CID directly on Agri Stats seeking "all documents, information, and data" Agri Stats had produced in the *Broilers*, *Pork*, and *Turkey* litigations.

13. Agri Stats produced documents and information it had previously produced in the *Broilers*, *Pork*, and *Turkey* litigations to the Antitrust Division. It included a cover letter with the blanket statements that the "enclosed materials contain proprietary and highly confidential trade secret business information, the disclosure of which would cause substantial and irreparable harm to Agri Stats" and "Agri Stats requests that these materials be treated as confidential per all applicable rules, statutes, regulations, and policies." A true and correct copy of this letter is attached as Exhibit 4.

14. No one at the Antitrust Division ever agreed with Agri Stats that information Agri Stats produced to the Antitrust Division would be entitled to any protections beyond those codified in law.

15. The Antitrust Division filed its Complaint against Agri Stats on September 28, 2023. The Complaint refers to and quotes information regarding Agri Stats that was produced both directly from Agri Stats and from other parties in the *Broiler*, *Pork*, and *Turkey* litigations.

16.     Prior to filing the Complaint, the Antitrust Division carefully assessed whether any of the information being disclosed was competitively sensitive.

17.     The excerpts of Agri Stats reports and manuals referenced in the Complaint are all at least ten years old.

18.     The Antitrust Division determined that Agri Stats' former president had presented exemplar Agri Stats reports publicly on an investor call meeting for Sanderson Farms. The transcript of that call, in which the former president describes the reports, is still available to the public on the SEC's website *at* https://www.sec.gov/Archives/edgar/data/812128/000095012309057735/g21049exv99w1.htm. A true and correct copy of that transcript is attached as Exhibit 5.

19.     The Antitrust Division also determined that excerpts of Agri Stats reports have been filed publicly on the docket in the *Pork* litigation.  Attached as Exhibit 6 is a true and correct copy of "Class Plaintiffs' Opening Argument" slides as they are currently found on the public *Pork* docket. *See* Attachment 2, Notice of Filing Class Plaintiffs' Hearing Slides from Motions for Class Certification, *In re Pork Antitrust Litig.*, 18-cv-1776 (March 3, 2023), ECF No. 1832-2. Page 11 of the Consumer Indirect Purchaser Plaintiffs' Slides includes excerpts of Agri Stats sales reports.

20.     On September 29, 2023, one day after the Complaint was filed, I visited Agri Stats' website and reviewed a press release dated September 28, 2023, entitled, "DOJ Lawsuit Against Agri Stats is Wrong on the Law and Bad for Consumers." A true and correct copy of that press release is attached as Exhibit 7.

4

21.     On October 2, 2023, in response to an email from counsel for the Antitrust Division, counsel for Agri Stats stated that the "complaint contains information designated by Agri Stats (and others) as confidential, the disclosure of which could cause harm to the company. We request that the Division withdraw the complaint until agreed-upon redactions can be made."

22.     The following morning, counsel for the Antitrust Division sent an email to counsel for Agri Stats stating, "please let us know the paragraphs that are of immediate concern and why Agri Stats considers the information to be competitively sensitive so that we can expeditiously consider the request."

23.     Counsel for Agri Stats responded the same day and listed 25 paragraphs that, according to Agri Stats, "contain confidential Agri Stats information that should be redacted."

24.     Counsel for the Antitrust Division reviewed those paragraphs again and determined, again, that several of the paragraphs referenced information that is currently publicly available and none of the information was competitively sensitive.

25.     Counsel for the Antitrust Division responded later the same day stating that it had again concluded that the information in the Complaint was not competitively sensitive and should not be filed under seal.

26.     Attached as Exhibit 8 is a true and correct copy of the email correspondence described in paragraphs 21-25.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, DC on October 13, 2023.


/s/ William M. Friedman
WILLIAM M. FRIEDMAN
Trial Attorney
Antitrust Division
United States Department of Justice
450 Fifth Street NW
Washington, DC 20530
William.Friedman2@usdoj.gov