## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AGRI STATS, INC.,<br><br>Defendant. | Case No. 23-CV-3009 (JRT/JFD)<br><br>ORDER DENYING MOTION TO<br>SEAL COMPLAINT |

The Amended Antitrust Civil Process Act, 15 U.S.C. §§ 1311–1314, authorizes the U.S. Department of Justice to use Civil Investigative Demands to look into potential violations of the antitrust laws before filing a complaint or taking other enforcement action. Using CIDs DOJ can obtain various types of evidence, including materials turned over in discovery in private antitrust cases. 15 U.S.C. § 1312(c)(2). Following an investigation in which CIDs were used, DOJ's Antitrust Division sued Agri Stats under Section One of the Sherman Act, alleging that Agri Stats' compilation and dissemination of information about producers of broiler chickens, pork, and turkey "promote total industry profits at the expense of competition" and harms consumers. (Compl. 1–5, Dkt. No. 1.) Agri Stats alleges that the Antitrust Division's publicly filed, wholly unredacted complaint contains confidential information, some of which was disclosed in private antitrust actions under the terms of protective orders entered by U.S. district courts and that Agri Stats told DOJ, when it provided the material in response to CIDs, that the material was confidential. Agri Stats asks this Court to order DOJ to withdraw its complaint and to re-file it under seal

while Agri Stats and DOJ meet and confer about what redactions would be needed to make the complaint suitable, in Agri Stats' view, for public filing. For the following reasons, the Court will not enter such an order.

I.   BACKGROUND

Agri Stats, together with other defendants, was sued in three private antitrust actions that alleged collusion among producers of broiler chicken, pork, and turkey. All three cases are enormous, combining multiple individual cases that have been referred to a single judicial district by the Judicial Panel on Multidistrict Litigation. *In Re: Pork Antitrust Litigation*, no. 18-CV-1776 is pending in the District of Minnesota, while both *In Re: Turkey Antitrust Litigation*, no. 1:19-CV-08318 and *In Re: Broiler Chicken Antitrust Litigation*, no. 1:16-CV-08637 are pending in the Northern District of Illinois. Discovery has been undertaken in all of these cases. The Court does not know exactly when the Antitrust Division began looking into Agri Stats' role in the broiler chicken, pork, and turkey markets but can say that the earliest date on a document filed with the Court as an exhibit is January 9, 2022. (Decl. of William M. Friedman, Ex. 2, Dkt. No. 27-2.)

The Antitrust Division obtained information from Agri Stats by serving a CID on the company in March of 2022. (Decl. of Peter Walsh ¶ 2, Dkt. No. 19.). In its CID response, Agri Stats requested confidential treatment for material that it labeled "Confidential Business Information." (*Id.* at ¶ 4.) According to the Antitrust Division, everything Agri Stats submitted was designated confidential. (Pl.'s Resp. in Opp'n. 10, Dkt. No. 26.) Despite Agri Stats' request, there is no indication in the record that either side engaged the other about confidentiality issues until after the Complaint was publicly

filed. Four days post-filing, Agri Stats sent an email to an Antitrust Division attorney, pointing out that some of the material quoted in the Complaint had been designated "confidential" or "highly confidential" when it was disclosed in private litigation and that some courts, including this one, had entered protective orders that kept some discovery materials out of the public view. (Walsh Decl., Ex. 1, Dkt. No. 1-1.) Agri Stats asked the Antitrust Division to withdraw the Complaint, re-file it under seal, and then meet and confer with Agri Stats about what could and what could not be included in a public complaint. (*Id.*) When the Antitrust Division said it would not do so, Agri Stats filed this motion.

## II.   ANALYSIS

Agri Stats says that it designated its materials as confidential and that DOJ was bound to honor that designation. The Antitrust Division says that the text of the Amended Antitrust Civil Process Act grants it the discretion to decide what it will and will not make public in its court filings.

The Antitrust Division has the better argument.[1] The plain text of 15 U.S.C.

---

[1] Agri Stats makes two arguments that do not need extended discussion and may be dismissed quickly. First, Agri Stats argues that DOJ acted contrary to Antitrust Division internal policy when it included in its Complaint material designated confidential by Agri Stats. But as the title page of the DOJ Antitrust Manual (Walsh Decl. Ex. 2, at 3) correctly states, the manual does not create "any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." The Court recognizes that Agri Stats thinks there are parts of the Antitrust Manual that are helpful to it in this dispute, but looking at the question more broadly, the Court questions whether even Agri Stats would want this Court to issue an Order whose *ratio decidendi* would necessarily include the proposition that the government's prosecuting agencies could make law through no more process than internal policymaking. Second, Agri Stats asserts that DOJ violated 28 C.F.R. § 16.7(b), but that regulation governs Freedom of Information Act requests—Subpart A of 28 C.F.R.

3

§ 1312(c)(2) states that "any such [civil investigative] demand which is an express demand for any product of discovery supersedes any inconsistent order, rule, or provision of law (other than this chapter) preventing or restraining disclosure of such product of discovery to any person."

This statutory language overrides not just parties' designations of materials as "confidential" but also even conflicting court orders, such as the protective orders entered by this Court in the *In Re Pork* MDL. Agri Stats objects that the language quoted in the preceding paragraph only describes a process by which DOJ can gather information using a CID but does not grant DOJ the authority to publicly file confidential material. (Def.'s Mot. 1–4, Dkt. No. 17.) That argument fails for two reasons.

First, the reading Agri Stats gives to the statute is a strained one, given that the statute's text does not express any such limit on DOJ's authority. If Agri Stats' reading were correct, then one would expect the statute to clearly limit the broad language quoted above. For example, the statute might say that sensitive information could not be quoted in a publicly filed complaint. The statute does not contain any such express, limiting language and from its absence, the Court concludes that the natural reading of the subdivision—that the CID "supersedes" inconsistent orders and allows disclosure—is correct.

Second, a separate provision of the Amended Antitrust Civil Process Act, 15 U.S.C. § 1313(d)(1) states that when a Justice Department lawyer appears in a case before a court, material gathered by CID may be used in the manner "such attorney determines to be

---

Ch. I, of which section 16.7 is a part, is titled "Procedures for Disclosure of Records Under the Freedom of Information Act"—and is inapplicable here.

required." Since the next sentence states that the DOJ attorney should return to DOJ's records custodian CID material which has not been introduced into the court's record, the natural reading of "manner such attorney determines to be required" must include making CID material part of the court record—as happened in this case.

One might wonder how this Court could enter a protective order in a private antitrust case but also allow DOJ to file publicly a complaint that contains information within the scope of that very protective order. The answer is that this case is different from a private antitrust case because executive branch action is involved. When a court is considering a request for confidential treatment of material generally, not just under the specific antitrust process statute involved in this dispute, it starts from the proposition that there is a common-law right of access to judicial records so the public can "keep a watchful eye on the workings of public agencies." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This presumption applies to both private and governmental litigation—the Court, after all, is a governmental agency, so even in private litigation the presumption applies— but as DOJ points out, this presumption of public access is "at its apex" when the government is a party to the litigation. The presumption of public access is also heightened for documents that are central to the case, such as complaints, answers, and dispositive motion paperwork. *Inline Packaging, LLC v. Graphic Packaging Int'l., Inc.*, No. 15-CV-3183 (ADM/LIB), 2018 WL 10440735, at *4 (D. Minn. June 30, 2018).

Finally, Agri Stats' Motion is conclusory. It states only that "[c]ontinued public disclosure of such confidential business information will cause commercial and competitive harm to Agri Stats." (Def.'s Mot. ¶ 14.) No details are provided, which is

5

problematic for Agri Stats since, as DOJ points out, the materials for which Agri Stats seeks confidentiality include a cartoon as well as other material that is already publicly available on, for example, the website of the U.S. Securities and Exchange Commission. (Pl.'s Resp. in Opp'n 6, 8.).

For the foregoing reasons, **IT IS ORDERED THAT** Agri Stats' Motion for an Order Directing the Government to Withdraw the Complaint from the Public Docket and Refile it Under Seal (Dkt. No. 17) is **DENIED**.

Date: October 18, 2023                                 *s/ John F. Docherty*
                                                                   JOHN F. DOCHERTY
                                                                   United States Magistrate Judge