## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,
STATE OF MINNESOTA, STATE OF
CALIFORNIA, STATE OF NORTH
CAROLINA, STATE OF TENNESSEE

*Plaintiffs*,

v.

AGRI STATS, INC.,

*Defendant*.

Case No.: 0:23-cv-03009-JRT-JFD

## MEMORANDUM OF LAW IN SUPPORT OF
## AGRI STATS INC.'S MOTION TO TRANSFER VENUE

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................. 1

BACKGROUND .............................................................................................. 5

LEGAL STANDARD ....................................................................................... 8

ARGUMENT.................................................................................................. 10

     I.     The Basis for Venue in this District is Weak ............................... 11

     II.    The Court Should Transfer This Case To The Northern District of
           Illinois........................................................................................... 14

     III.   In The Alternative, The Court Should Transfer This Case To The
           Northern District of Indiana ........................................................ 22

CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahlstrom v. Clarent Corp.*,
   No. 02-780RHKSRN, 2002 WL 31856386 (D. Minn. Dec. 19, 2002) ...................... 16

*Apex IT, Inc. v. Rhema Bible Coll*.,
   No. CIV 08-0596 JRT/FLN, 2009 WL 799611 (D. Minn. Mar. 24,
   2009) .................................................................................................................. 20

*In re Apple, Inc.*,
   602 F.3d 909 (8th Cir. 2010) .............................................................................. 20

*Associated Wholesale Grocers Inc. v. Koch Foods, Inc.*,
   No. 18-cv-02258-DDC-KGG, ECF No. 88 (D. Kan. Sept 13, 2018)......................... 17

*In re Broiler Chicken Antitrust Litig.*,
   No. 1:16-cv-8637 (N.D. Ill.) ("*Broilers*") ............................................*passim*

*Campos v. Ticketmaster Corp.*
   140 F.3d 1166 (8th Cir. 1998) .............................................................................. 13

*Chex Servs., Inc. v. iGames Ent., Inc.*,
   No. CIV.04-1460(PAM/RLE), 2004 WL 1429828 (D. Minn. June 23,
   2004) .................................................................................................................. 21

*Continental Grain Co. v. The FBL–585*,
   364 U.S. 19 (1960)............................................................................................... 16

*Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc*.,
   702 F.3d 472 (8th Cir. 2012) .............................................................................. 13

*Farm Boy Co-Op and Feed Co.*,
   No. 09-2936 ADM/JSM, 2010 WL 935747 (D. Minn. Mar. 12, 2010) ...................... 21

*Ferguson-Keller Assocs., Inc. v. Plano Molding Co., LLC*,
   274 F. Supp. 3d 916 (D. Minn. 2017)...................................................................... 9, 14

*FTC v. Qualcomm*,
   969 F.3d 974 (9th Cir. 2020) .............................................................................. 21

*Gemini Invs. III, L.P. v. RSG, Inc.*,
  No. CIV 08-5264 ADM/JJG, 2009 WL 776740 (D. Minn. Mar. 20,
  2009) ..................................................................................................... 21

*Graff v. Qwest Commc'ns Corp.*,
  33 F. Supp. 2d 1117 (D. Minn. 1999) ..................................................... 16

*I–T–E Cir. Breaker Co. v. Regan*,
  348 F.2d 403 (8th Cir.1965) .................................................................... 16

*I.S. Joseph Co., Inc. v. Mannesmann Pipe & Steel Corp.*,
  408 F. Supp. 1023 (D. Minn. 1976) ........................................................ 12

*King v. Johnson Wax Assocs., Inc.*,
  565 F. Supp. 711 (D. Md. 1983) .............................................................. 12

*Mass. Bay Ins. Co. v. G.M. Northrup Co.*,
  No. 22-cv-699, 2022 WL 2236333 (D. Minn. July 22, 2022) ................... 17

*Medtronic, Inc. v. Am. Optical Corp.*,
  337 F. Supp. 490 (D. Minn. 1971) ............................................... 2, 14, 19

*Midwest Motor Exp. Inc. v. Central States Southeast*,
  70 F.3d 1014 (8th Cir. 1995) ................................................................... 17

*In re Monies on Deposit in Accts. at Stearns Bank Nat'l Ass'n*,
  No. CIV. 06-542 JRT/RLE, 2006 WL 3841518 (D. Minn. Dec. 29,
  2006) .......................................................................................... 2, 15, 16

*Monsanto Tech. LLC v. Syngenta Crop Prot., Inc.*,
  212 F. Supp. 2d 1101 (E.D. Mo. 2002) ................................................... 17

*Omega Demolition Corp. v. Hays Group, Inc.*,
  306 F.R.D. 225 (D. Minn. 2015) ............................................................. 20

*Orthmann v. Apple River Campground, Inc.*,
  765 F.2d 119 (8th Cir. 1985) ................................................................... 19

*PJ Food Service, Inc. v. Agri Stats, Inc.*,
  No. 22-cv-07677, ECF No. 6 (E.D.N.Y. Dec. 16, 2022).......................... 17

*In re Pork Antitrust Litig.*,
  No. 0:18-cv-1776 (D. Minn.) ("*Pork*") .............................................*passim*

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*,
  814 F.2d 358 (7th Cir. 1987) ........................................................... 4, 5, 21

*Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*,
    931 F. Supp. 638 (D. Minn. 1996) ................................................................ 2

*Security Life Ins. Co. v. Steward*,
    No. 01-1677 RHK/JMM, 2001 WL 1640049 (D. Minn. 2001) .................................... 9

*Steen v. Murray*,
    770 F.3d 698 (8th Cir. 2014) ................................................................ 9, 13

*Stromberg v. Qualcomm Inc.*,
    14 F.4th 1059 (9th Cir. 2021) ................................................................ 21

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
    119 F.3d 688 (8th Cir. 1997) ....................................................... 1, 9, 15, 23

*In re Turkey Antitrust Litig.*,
    No. 1:19-cv-08318 (N.D. Ill.) ("*Turkey*") ............................................. *passim*

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................ 9

*Vernet v. Bellmore-Merrick Cent. High Sch. Dist.*,
    343 F. Supp. 2d 186 (E.D.N.Y. 2004), *aff'd*, 155 F. App'x 32 (2d Cir.
    2005) ................................................................ 21

*Wiskus v. United States*,
    No. 06-3023 DSD/SRN, 2006 WL 2250986 (D. Minn. Aug. 4, 2006) ................ 11, 12

## Statutes

15 U.S.C. § 22 ................................................................ *passim*

28 U.S.C. § 1391 ................................................................ *passim*

28 U.S.C. §1404(a) ................................................................ *passim*

## Other Authorities

Federal Rules of Civil Procedure Rule 12 ................................................................ 5

## INTRODUCTION

This case should be transferred to the Northern District of Illinois. The Antitrust Division of the United States Department of Justice ("DOJ") sued Agri Stats on September 28, 2023, alleging an unlawful information exchange under Section 1 of the Sherman Act in the broiler, turkey, and pork industries. ECF No. 1. On November 1, 2023, DOJ amended its Complaint, adding the states of Minnesota, California, North Carolina, and Tennessee as plaintiffs in addition to DOJ (collectively, "Plaintiffs"). ECF No. 30. Agri Stats is not located in this district; none of the events giving rise to Plaintiffs' claims occurred in this district; and Agri Stats does not transact substantial business in this district. What little business Agri Stats has in this district is unrelated to Plaintiffs' claims.

DOJ filed a Notice of Related Case with its original complaint asserting that its claims are related to *In re Pork Antitrust Litig.*, No. 0:18-cv-1776 (D. Minn.) ("*Pork*"), which is pending before this Court, because the two "share a common party as well as common issues of fact and law." ECF. No. 2. Given the weak basis under traditional venue principles for bringing the case here, the "related case" theory appears to be Plaintiffs' only serious rationale for venue in this district.

Agri Stats agrees with Plaintiffs' premise that the Court should carefully weigh judicial economy considerations in determining the appropriate venue for Plaintiffs' case. When evaluating motions to transfer under 28 U.S.C. §1404(a), this Court considers "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The Northern District of Illinois is more convenient to Agri Stats (the only defendant) and

- 1 -

its employee witnesses, all of whom are located in Fort Wayne, Indiana—a quick three-hour day trip from Chicago versus an over nine-hour drive to Minneapolis. But more importantly, as this Court has recognized, "[t]he interest of justice factor is weighed very heavily" in the transfer analysis. *In re Monies on Deposit in Accts. at Stearns Bank Nat'l Ass'n*, No. CIV. 06-542 JRT/RLE, 2006 WL 3841518, at *2 (D. Minn. Dec. 29, 2006) (Tunheim, J.) (citing *Radisson Hotels Int'l, Inc. v. Westin Hotel Co*., 931 F. Supp. 638, 641 (D. Minn. 1996)). A critical factor in this Court's interest-of-justice analysis is the need to avoid "inconsistent results" with "related claims" pending elsewhere. *Medtronic, Inc. v. Am. Optical Corp*., 337 F. Supp. 490, 496 (D. Minn. 1971) (citation omitted). The Northern District of Illinois is the appropriate venue for Plaintiffs' case because *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-8637 (N.D. Ill.) ("*Broilers"*), pending in that district, is by far the most substantially-related case; it covers the same facts and same legal theory. Additionally, the risk of inconsistent outcomes is high because the same claim Plaintiffs bring is not only *pending* in the Northern District of Illinois, but has already been *resolved* by that court.

*First*, concerning relatedness, Plaintiffs' complaint alleges that Agri Stats' pork, turkey, and chicken reports constitute an unlawful information exchange in violation of the Sherman Act. The *Broilers* complaint alleges precisely the same "information exchange" claim concerning chicken. *Compare, e.g.,* ECF 30 ⁋ 163 *with Broilers*, ECF 3748 ⁋⁋ 197-199. While the private *Pork* case before this Court also is "related" to Plaintiffs' case, the connection is far more tenuous. Unlike the *Pork* case that seeks damages, Plaintiffs seek only an *injunction* against Agri Stats reports. But Agri Stats has not offered pork reports—

or turkey reports, for that matter—since 2019. There are no pork or turkey reports to enjoin. In contrast, the *Broilers* case in the Northern District of Illinois actually concerns an ongoing business. Plaintiffs' case, accordingly, is primarily related to *Broilers* because Agri Stats still offers chicken reports, which are the only reports Plaintiffs could conceivably enjoin. Moreover, *two* related cases—*Broilers* and *In re Turkey Antitrust Litig.*, No. 1:19-cv-08318 (N.D. Ill.) ("*Turkey*")—are pending in the Northern District of Illinois. If Plaintiffs' case is not transferred, this Court would need to oversee for two additional proteins a redo of complex fact and expert discovery that already has been completed in the Northern District of Illinois.

*Second*, concerning the risk of inconsistent outcomes, *Broilers*, which was filed in 2016—two years before *Pork* and seven years ahead of Plaintiffs' complaint—was the first case to challenge the Agri Stats reports. After considering *4,500* pages of summary judgment briefing and exhibits—based on a *150 million* page discovery record, over *450* depositions, and thousands of pages of expert reports—Judge Durkin issued a 90-page decision on June 30, 2023, granting Agri Stats' motion for summary judgment. *See Broilers*, 1:16-cv-8637, 2023 WL 7220170 (N.D. Ill. June 30, 2023, amended Nov. 2, 2023) (attached as Exhibit 2). Judge Durkin specifically rejected Plaintiffs' information exchange theory, finding that "Agri Stats reports did not reveal competitors' production and pricing data" and that "there is scant evidence that the information Agri Stats itself provided to each individual producer was used in a manner that had an anticompetitive effect." *Id*. at *27-28. After ruling on summary judgment, Judge Durkin then presided over a six-week jury trial of plaintiffs' claims against a remaining defendant. On October 25,

- 3 -

2023, the jury returned a verdict in favor of that defendant, finding no conspiracy among chicken producers to use Agri Stats reports to restrict the output of chicken. *Broilers*, ECF No. 7014.

Because the earlier-filed *Broilers* case has already resolved Plaintiffs' information exchange claim, the risk of inconsistent outcomes is concrete, not theoretical. The massive burden and expense of re-litigating that claim in this district serves no purpose. DOJ began investigating Agri Stats 13 years ago in 2010, closed the investigation two years later, and then waited until seven years after plaintiffs filed *Broilers*—and three months after the *Broilers* judge rejected the same information exchange claim—to file its complaint in a different court. Plaintiffs should not be permitted to seek a "do-over" of the same claim already resolved by the Northern District of Illinois. *See Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358 (7th Cir. 1987) (Easterbrook, J.) (doctrine of *stare decisis* bars re-litigation of same claim previously adjudicated in a different court involving same defendant and different plaintiff). No plaintiff, including governmental entities, should be permitted to bypass the court that already has thoroughly considered—and resolved—its claim because of the extreme inefficiency and risk of inconsistent outcomes. To the extent Plaintiffs argue that their claim is somehow different than the claim at issue in *Broilers*, Judge Durkin is best positioned to consider any such difference given his extensive consideration of a complete discovery record, summary judgment, and trial on the merits. Plaintiffs' case belongs in the Northern District of Illinois.

If the Court disagrees with Plaintiffs and Agri Stats that the pendency of a related case and risk of inconsistent outcomes should dictate venue, then, alternatively, Agri Stats

requests transfer to the Northern District of Indiana. Agri Stats is incorporated in Indiana; its principal place of business is in Fort Wayne; the reports giving rise to Plaintiffs' claims are created in Fort Wayne; and Agri Stats' employee witnesses are located in Fort Wayne. By every objective standard other than "relatedness," Plaintiffs' case should have been brought in the Northern District of Indiana.

Each of these issues is discussed separately below.[1]

## BACKGROUND

Agri Stats is an Indiana corporation headquartered in Fort Wayne. *See* Declaration of Eric Scholer in Support of Agri Inc.'s Motion to Transfer Venue dated November 7, 2023 ("Scholer Decl.") (attached as Exhibit 1), ¶ 3. It has no offices anywhere else. *Id*. Agri Stats has 70 current employees who work in Fort Wayne or remotely. *Id*. None of its employees lives or regularly works in Minnesota. *Id*. Agri Stats was founded in 1985. *Id*. The company prepares benchmarking reports to help broiler chicken producers identify areas in which they can improve the efficiency of their respective operations. *Id*. at ¶ 4.

Agri Stats developed additional benchmarking reports related to turkey and pork products, modeled after its broiler chicken reports. *Id*. at ¶ 6. The format of the pork and turkey reports, when they existed, was consistent with the broiler chicken reports, with similar data and metrics. *Id*. Agri Stats offered its first turkey benchmarking reports in 2001 and its first pork reports in 2007. *Id*. It ceased offering the turkey reports and pork reports in 2019. *Id*. at ¶ 8.

---

[1]     Agri Stats does not waive, and reserves, the right to file motion(s) for relief under Rule 12 of the Federal Rules of Civil Procedure.

DOJ waited over 13 years to bring this lawsuit. In 2010, Agri Stats received a Civil Investigative Demand, *id*. at ¶ 14, and cooperated with DOJ's investigation focused on whether its benchmarking reports enable chicken producers to coordinate production or prices in violation of the Sherman Act—the same issue Plaintiffs' new complaint raises. After a nearly two-year inquiry, DOJ closed its investigation without seeking any changes to Agri Stats reports. *Id*. at ¶ 14; AGSTAT-00018237 (attached as Exhibit A to the Scholer Declaration). Agri Stats has not materially changed the content or format of the reports since DOJ closed its investigation 11 years ago. Scholer Decl. ¶ 5.

In 2016, private plaintiffs filed their first *Broilers* damages lawsuit alleging that Agri Stats conspired with chicken producers to restrict output and increase prices. In 2018, the same plaintiff's counsel filed the *Pork* lawsuit in this Court based on the same theory. In 2019, the same plaintiff's counsel filed the *Turkey* lawsuit, currently pending in the Northern District of Illinois, again based on the same theory. Agri Stats has not raised venue objections in those cases because, unlike Plaintiffs' lawsuit here, the other cases name many protein producers that sell products in many states, including Minnesota, as co-defendants. *See* 28 U.S.C. § 1391(b)(3) (permitting venue in multi-defendant cases in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action").

After *Broilers* was filed, pork and turkey producers began withdrawing from Agri Stats' pork and turkey reports. Scholer Decl. ¶ 8. Agri Stats has not distributed pork or

turkey reports since 2019 when it shut down both programs.[2] *Id.* The litigation in numerous courts has been a devastating financial burden on Agri Stats, a far smaller business than its protein producer co-defendants. *Id.* at ¶ 9.

DOJ opened another investigation of Agri Stats in 2022, plowing the same ground covered a decade earlier. *Id.* at ¶ 14. Even though Agri Stats reports have not changed since DOJ closed its initial investigation over a decade earlier—and despite the *Broilers* summary judgment ruling in Agri Stats' favor—DOJ filed this case on September 28, 2023, and amended its complaint to add the four state plaintiffs on November 6, 2023. ECF No. 1; ECF No. 30. None of those four states had requested any documents or information from Agri Stats about its business or communicated with Agri Stats in any way about any antitrust concerns prior to joining the complaint. Scholer Decl. ¶ 15. Plaintiffs' amended complaint offers no new legal theory and makes no new factual allegations beyond combining together the allegations private plaintiffs already made in *Broilers*, *Pork*, and *Turkey*. Plaintiffs' complaint differs from the private cases only in that it seeks an injunction against Agri Stats reports—not damages—even though Agri Stats no longer offers pork and turkey reports.

Plaintiffs waited to file their complaint in this district until *thirteen years* after DOJ's initial investigation, *seven years* after *Broilers* was filed, and three months *after* Judge

---

[2]     Agri Stats currently produces "Swine Live" reports, which concern the growth of hogs, in contrast to the pork reports challenged in both *Pork* and Plaintiffs' complaint, which concern pork products destined for consumption. Scholer Decl. ¶ 7. None of the current participants in Agri Stats' Swine Live reports are named co-conspirators in either *Pork* or Plaintiffs' complaint. *Id.*

Durkin resolved the merits of the same information exchange theory Agri Stats' favor. On June 30, 2023, after years of fact and expert discovery, Judge Durkin found that "Agri Stats reports did not reveal competitors' production and pricing data" and that "[t]here is scant evidence that the information Agri Stats itself provided to each individual producer was used in a manner that had an anticompetitive effect." *Broilers*, 2023 WL 7220170, at *27-28. Judge Durkin's ruling addressed Agri Stats' broiler chicken reports, the only reports challenged in Plaintiffs' complaint that Agri Stats still offers, and which are not before this Court in *Pork*. And after a six-week trial in *Broilers*, a jury returned a verdict on October 25, 2023, finding no conspiracy among chicken producers to use Agri Stats reports to restrict the output of chicken. *Broilers*, ECF No. 7014. Under the current case schedules, Plaintiffs' claim that was resolved by Judge Durkin likely will not be addressed in *Pork* until late 2024 and in *Turkey* until 2025. *See Pork*, ECF No. 1651; *Turkey*, ECF No. 210.

## LEGAL STANDARD

28 U.S.C. § 1391 and section 12 of the Clayton Act, 15 U.S.C. § 22, govern venue in antitrust lawsuits. 28 U.S.C. § 1391 is the general venue provision, which states that "a civil action may be brought in:

(1)   a judicial district in which *any defendant resides, if all defendants are residents of the State in which the district is located*;

(2)   a judicial district in which *a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of property that is the subject of the action is situated; or

(3)   if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

28 U.S.C. § 1391(b) (emphasis added).

Section 12 of the Clayton Act, 15 U.S.C. § 22, states that "any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business. . . ."

A court may "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses." 28 U.S.C. §1404(a). Section 1404(a) codifies the common-law doctrine of *forum non conveniens* and permits the transfer of a case to a more convenient forum, even when venue is initially proper in the district in which the case was filed. Indeed, "[a] case may be transferred under § 1404(a) only when venue is proper in the transferor *and* transferee forums." *Steen v. Murray*, 770 F.3d 698, 701 (8th Cir. 2014). Section 1404(a) aims to prevent waste of time and resources and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Security Life Ins. Co. v. Steward*, No. 01-1677 RHK/JMM, 2001 WL 1640049, at *2 (D. Minn. 2001) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964)).

Courts evaluating a motion to transfer proceed in two steps. First, the district court must determine "whether the action might have been brought in the proposed transferee district." *Ferguson-Keller Assocs., Inc. v. Plano Molding Co., LLC*, 274 F. Supp. 3d 916, 919 n.3 (D. Minn. 2017) (citation omitted). Second, the district court must weigh three factors: (1) convenience for the parties; (2) convenience for the witnesses; and (3) the interests of justice. *See id.* (citing *Terra*, 119 F.3d at 691). As discussed below, the Section

- 9 -

1404(a) factors strongly support transfer to the Northern District of Illinois or, alternatively, to the Northern District of Indiana.

## ARGUMENT

Under a standard venue analysis, Plaintiffs' case would not be brought here. Agri Stats is not located in Minnesota, and none of the events giving rise to Plaintiffs' claims occurred in the Minnesota. Agri Stats does not transact any business related to Plaintiffs' claims in Minnesota and only minimal unrelated business. Even assuming those few contacts support venue in this district, the basis for venue in this district is feeble. Plaintiffs' only possible reason for filing the case this district is that *Pork*, a case pending before this Court, is "related" to Plaintiffs' case.

Agri Stats agrees that the Court should consider other related and pending litigation, including the risk of inconsistent rulings, when evaluating the appropriate venue for Plaintiffs' case. But such interest of justice and judicial economy factors strongly support venue in the Northern District of Illinois—not this district. While *Pork* is pending before this Court, both *Turkey* and *Broilers* are pending in the Northern District of Illinois. Moreover, Judge Durkin already has ruled on the merits of Plaintiffs' information exchange claim in *Broilers* on summary judgment, *Broilers*, 2023 WL 7220170, and also presided over a six-week trial in which the jury returned a verdict finding no conspiracy among chicken producers to use Agri Stats reports to restrict the output of chicken. *Broilers*, ECF 7014. Allowing Plaintiffs to relitigate claims that Judge Durkin has carefully considered for seven years, and to seek a "do-over" of the *Broilers* summary judgment ruling and trial verdict, would countenance precisely the inefficiency and risk of inconsistent outcomes

that Section 1404(a) transfer aims to prevent. Because Plaintiffs seek only injunctive relief, and Agri Stats no longer offers pork and turkey reports, relatedness to *Broilers* is far more significant than to *Pork* and *Turkey*, which are many months away from considering Plaintiffs' legal theory that Judge Durkin has resolved. Plaintiffs' case should be transferred to the Northern District of Illinois.

In the alternative, the Court should transfer Plaintiffs' case to the Northern District of Indiana. Agri Stats is incorporated in Indiana; its principal place of business is in Fort Wayne; the reports giving rise to Plaintiffs' claims are created in Fort Wayne; and Agri Stats' employee witnesses are located in Fort Wayne. Under a traditional venue analysis, a case relating solely to a single defendant's business operations and seeking injunctive relief that would effectively shutter that business ordinarily would be tried in the community in which it is located. Plaintiffs' complaint offers no reason to depart from that approach.

## I.      The Basis for Venue in this District is Weak.

Whether analyzed under the general venue statute, 28 U.S.C. § 1391, or Section 12 of the Clayton Act, 15 U.S.C. § 22, arguments supporting venue in this district are weak. Under the general venue statute, 28 U.S.C. § 1391, for a suit to be brought in the District of Minnesota, (1) the named Defendant must reside in Minnesota, (2) "a substantial part of the events or omissions giving rise to the claim" occurred in Minnesota or (3) "the District of Minnesota is a judicial district in which any defendant can be found, if there is no district in which the action may otherwise be brought." *Wiskus v. United States*, No. 06-3023 DSD/SRN, 2006 WL 2250986, at *2 (D. Minn. Aug. 4, 2006). Plaintiffs' complaint makes no allegation that would fit within any of those provisions. Agri Stats does not "reside" in

Minnesota. It is incorporated and has its principal place of business in Indiana. Thus, the first clause is out. The third clause "may be invoked only when venue does not lie in a district pursuant to [clauses] (1) or (2)." *Id*. Plaintiffs do not allege that Agri Stats may be "found" in Minnesota, except as a defendant in *Pork*. Thus, venue under the general venue statute turns on the second clause—namely whether a substantial part of the events or omissions giving rise to the claim occurred in Minnesota.

The analysis under Section 12 of the Clayton Act, 15 U.S.C. § 22, reduces to the same question. That statute also sets out three bases for venue in an antitrust case: the defendant must (1) be an "inhabitant" of, (2) be "found in," or (3) "transact[ ] business" in a district. *Id*. Plaintiffs make no allegation that Agri Stats is an "inhabitant" of Minnesota or may be found here. *See I.S. Joseph Co., Inc. v. Mannesmann Pipe & Steel Corp*., 408 F. Supp. 1023, 1024 (D. Minn. 1976) (finding "[q]uite clearly [defendant] is not an inhabitant of this district, nor is it found here" for a New York corporation headquartered in Jacksonville, Florida); *King v. Johnson Wax Assocs., Inc.*, 565 F. Supp. 711, 714-15 (D. Md. 1983) (stating, "[a] corporation is an inhabitant only of the state of its incorporation" and "[t]o be found within a district, a corporation must be present in the district by its officers and agents carrying on the business of the corporation") (citation omitted). Thus, under section 12, venue is proper in this district only if Agri Stats "transacts business" in Minnesota. While Section 12 is broader than the general venue statute, "[it] was *not* intended to provide a forum-shopping plaintiff with an unfettered choice of venue." *King*, 565 F. Supp. at 714-15.

A company "transacts business" under Section 12 if it engages in "[t]he practical, everyday business or commercial concept of doing or carrying on business *of any substantial character.*" *Campos v. Ticketmaster Corp*. 140 F.3d 1166, 1173 (8th Cir. 1998) (quotation omitted) (emphasis added). Plaintiffs allege that several Agri Stats customers—Hormel, Jennie-O, Gold'n Plump Poultry, and Sparboe—are located in Minnesota. (ECF No. 30 ¶¶ 156-58). But none of these companies subscribe to the Agri Stats pork, turkey, or broiler chicken reports at issue in Plaintiffs' complaint. Hormel and Jennie-O stopped subscribing in 2017 and Gold'n Plump Poultry stopped subscribing in 2016. Scholer Decl. ¶ 11-12. Sparboe Farms subscribed to Agri Stats' *egg* reports and never subscribed to any of the pork, turkey, or broiler chicken reports challenged in the Complaint. *Id.* at ¶ 13. None of Agri Stats' chicken report subscribers are incorporated or headquartered in Minnesota. Nor does the addition of Minnesota as a plaintiff change the venue analysis. Plaintiffs' amended complaint adds no new factual allegations related to venue, and the location of a plaintiff plays no role in the venue analysis under either 28 U.S.C. § 1391 or section 12 of the Clayton Act.

This Court need not decide whether Plaintiffs' allegations are sufficient to lay venue in this district. Even assuming that they are, the case for venue in Minnesota is extraordinarily weak. *See, e.g., Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc*., 702 F.3d 472, 476 (8th Cir. 2012) (finding that Defendants' communications with Missouri headquarters of customer did not amount to transacting business in Missouri). There are superior venues, and Section 1404(a) permits transfer to them even if venue might conceivably lie in this district. *Steen*, 770 F.3d at 701.

**II.      The Court Should Transfer This Case To The Northern District of Illinois.**

While Plaintiffs cite Agri Stats' prior customer relationships for their choice of venue, their principal rationale for bringing this case in Minnesota appears to be its relation to *Pork*. Agri Stats agrees that the Court should consider whether there are related cases in evaluating transfer under Section 1404(a). Indeed, "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that: (1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the time serving the public interest; (4) inconsistent results can be avoided." *Medtronic*, 337 F. Supp. at 496 (quotation omitted). Plaintiffs' information exchange claim related to chicken reports—the only reports challenged by Plaintiffs that Agri Stats still produces—is pending before, and has been resolved by, Judge Durkin in the Northern District of Illinois after seven years of litigation in *Broilers*. These interest of justice factors therefore strongly support transfer to the Northern District of Illinois.

When evaluating transfer under Section 1404(a), the Court first must consider whether the case could have been brought in the Northern District of Illinois. *Ferguson-Keller Associates,* 274 F. Supp. 3d at 919 n. 3. Unlike in Minnesota—where Agri Stats has no current customers for the reports at issue in Plaintiffs' complaint—Agri Stats actually has a current chicken report subscriber located in the Northern District of Illinois: Koch Foods, which is headquartered in Park Ridge, Illinois. Scholer Decl. ¶ 10. If Agri Stats' former customer relationships somehow constitute transacting business in Minnesota, as

- 14 -

Plaintiffs assume, then Agri Stats' continuing relationship with a customer on the only relevant reports related to Plaintiffs' claim easily establishes that venue is proper in the Northern District of Illinois.

The district court must next weigh three factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra,* 119 F.3d at 691, 693. The convenience of the parties and witnesses supports transfer. The Northern District of Illinois is more convenient to Agri Stats (the only Defendant) and its employee witnesses, who are located in Fort Wayne, Indiana—about 150 miles or a three-hour drive from Chicago versus almost 600 miles and over a nine-hour drive to Minneapolis. While the Minnesota Attorney General's office is located in Minneapolis, the remainder of Plaintiffs litigating this case are based on Washington, D.C., North Carolina, California, and Tennessee, most of which are closer to the Northern District of Illinois than this district.

While the convenience of the parties and witnesses support transfer, by far the more important consideration is the interest of justice factor recognized by DOJ, namely the significant judicial economies flowing from considering related proceedings in the same forum to reduce the risk of inconsistent outcomes.[3] "The interest of justice factor is weighed very heavily" in the transfer analysis. *In re Monies*, 2006 WL 3841518, at *2. As

---

[3]     In assessing the "interests of justice" the court may consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra*, 119 F.3d at 696. As discussed below, Plaintiff's choice of forum should be afforded little deference under the circumstances and there are no questions of Minnesota law at issue here. Because the other factors are either neutral or favor transfer, the judicial economy factor should weigh heavily in the analysis.

the Supreme Court observed, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *See Continental Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960); *see also I–T–E Cir. Breaker Co. v. Regan*, 348 F.2d 403, 405 (8th Cir.1965) (finding no abuse of discretion in transfer of case to avoid "repetitive trials in many jurisdictions"); *Graff v. Qwest Commc'ns Corp*., 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999) (finding "untenable the simultaneous pendency of two separate actions relating to the same facts in different courts" and seeking to eliminate "duplicative discovery" and "the possibility of conflicting orders" by resolving "all claims in one forum"). Transfer to the Northern District of Illinois—where both *Turkey and Broilers* are pending and where Judge Durkin is not only *familiar* with Plaintiffs' information exchange claim but actually has *resolved* it on the merits—would clearly promote judicial economy and the interest of justice.

Eighth Circuit courts often grant transfers to districts in which related actions are pending, particularly when prior courts have more experience adjudicating particular issues and facts or there is a risk of inconsistent rulings. *See, e.g., In re Monies*, 2006 WL 3841518, at *2 (transferring case based on the interest of justice because "judicial resources and efficiency are furthered by transferring this action to the Southern District of Florida" that "issued orders" related to the dispute and is "familiar with the underlying facts"); *Ahlstrom v. Clarent Corp.*, No. 02-780RHKSRN, 2002 WL 31856386, at *6 (D. Minn. Dec. 19, 2002) (transferring case where "two lawsuits, involving the same defendants and the same core allegations, present a significant overlap in factual and legal issues");

*Monsanto Tech. LLC v. Syngenta Crop Prot., Inc.*, 212 F. Supp. 2d 1101, 1104 (E.D. Mo. 2002) (ordering transfer and noting "the significant waste of judicial resources that would be expended by litigating the same issues in two courts as well as the serious risk of inconsistent and contrary rulings"). Courts address potential inconsistent rulings by employing a "first-to-file" rule, which transfers duplicative cases to the district in which a prior case was filed. *See Midwest Motor Exp. Inc. v. Central States Southeast*, 70 F.3d 1014, 1017 (8th Cir. 1995) (affirming transfer to first-filed jurisdiction); *Mass. Bay Ins. Co. v. G.M. Northrup Co.*, No. 22-cv-699 (KMM/TNL), 2022 WL 2236333, at *4 (D. Minn. July 22, 2022) (transferring to first-filed jurisdiction).

Consistent with this approach, the routine practice across *Broilers, Pork*, and *Turkey* has been for courts to transfer later-filed actions to those courts already handling claims and facts related to those specific proteins. *See, e.g.*, *Associated Wholesale Grocers Inc. v. Koch Foods, Inc.*, No. 18-cv-02258-DDC-KGG, ECF No. 88 (D. Kan. Sept 13, 2018) (transferring a *Broilers* complaint from the District of Kansas to the Northern District of Illinois); *PJ Food Service, Inc. v. Agri Stats, Inc.*, No. 22-cv-07677, ECF No. 6 (E.D.N.Y. Dec. 16, 2022) (transferring a *Pork* complaint from the Eastern District of New York to the District of Minnesota through the JPML process).

The *Broilers* case was filed in 2016—seven years before Plaintiffs filed their complaint—and alleges the same information exchange claim that Plaintiffs allege here. *Compare, e.g.,* ECF 30 ¶ 163 ("Agri Stats and its broiler chicken processor co-conspirators have agreed with each other to exchange competitively sensitive information . . . . in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1") *with Broilers*, ECF 3748 ¶¶

- 17 -

197-199 ("This action challenges . . . under Section 1 of the Sherman Act . . . . defendants'
agreement to unlawfully exchange competitively sensitive information amongst Broiler
Producers."). The overlap between Plaintiffs' case and *Broilers* is so clear that certain
*Broilers* plaintiffs themselves filed a notice with Judge Durkin noting the relationship. *See*
*Broilers*, ECF No. 6924 ("[T]he DOJ Complaint alleges that Agri Stats collected and
distributed competitively sensitive data thereby allowing the co-conspirators to artificially
inflate prices and restrict output."). The *Turkey* case was filed in 2019, also in the Northern
District of Illinois, and the Turkey plaintiffs likewise field a notice of related case. *See*
*Turkey*, ECF No. 843 (explaining the "significant factual and legal overlap between the
'Agri Stats information exchange scheme' in the DOJ Complaint with the conspiracy
alleged by Plaintiffs in this action").

　　Not only was *Broilers* filed first, but it is far ahead of *Pork* in addressing the merits
of Plaintiffs' claim. Discovery in *Broilers* was massive; the record consists of *150 million*
pages of documents, over *450 depositions*, and thousands of pages of expert reports. After
the close of discovery, Judge Durkin considered *4,500* pages of summary judgment
briefing and exhibits on Agri Stats' summary judgment motion alone. Agri Stats' motion
explained that its reports simply do not contain the price or output information necessary
to facilitate an unlawful information exchange. On June 30, 2023, Judge Durkin issued a
90-page decision granting Agri Stats' motion and dismissing the same information
exchange claims that Plaintiffs raise here. He reasoned that "Agri Stats reports did not
reveal competitors' production and pricing data" and that "there is scant evidence that the
information Agri Stats itself provided to each individual producer was used in a manner

that had an anticompetitive effect." *Broilers*, 2023 WL 7220170, at *27-28. Judge Durkin also noted that, "[d]espite years of discovery, Plaintiffs simply have not produced sufficient evidence for a reasonable jury to find by a preponderance of the evidence that Agri Stats agreed with the producer defendants to restrict supply and increase the price of Broilers." *Id*. at *27. The summary judgment ruling dismissed the information exchange claim as to all *Broilers* defendants. *Id.*

One defendant, Sanderson Farms, proceeded to a six-week jury trial on the merits of the *Broilers* plaintiffs' claim claims. On October 25, 2023, the jury returned a verdict in Sanderson's favor, finding no conspiracy among chicken producers to use Agri Stats reports to restrict the output of chicken. *Broilers*, ECF No. 7014. In stark contrast, summary judgment and trial are far down the road in *Pork. See Medtronic*, 337 F. Supp. at 498 (considering "prospect for much earlier trial" as a factor for transfer); *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) (concluding that "federal comity doctrine is best served" by consolidating the case in the district where the controversy is "further developed").

Unlike *Broilers*, Plaintiffs' complaint contains allegations about pork and turkey as well. But those allegations, parroted from the *Pork* and *Turkey* complaints, are a makeweight. Plaintiffs seek only an injunction preventing Agri Stats from producing its reports. But Agri Stats has not produced pork or turkey reports for four years. Scholer Decl. ¶ 8. There are no pork or turkey reports to enjoin. Thus, the crux of Plaintiffs' injunction claim is Agri Stats' continuing production of broiler chicken reports—precisely the issue pending in the earlier-filed, and now resolved, *Broilers* litigation.

- 19 -

Plaintiffs' decision to file in this district appears designed to avoid Judge Durkin's *Broilers* summary judgment ruling dismissing the same information exchange theory raised in Plaintiffs' complaint. Deference to a plaintiff's choice of forum is unwarranted when, as here, plaintiff has chosen the forum for apparent tactical reasons or to avoid the consequences of prior adjudications in a different forum. *See In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (deference to plaintiff's choice of forum is unreasonable when plaintiff "chose the forum to take advantage of favorable law or to harass the defendant"); *Omega Demolition Corp. v. Hays Group, Inc.*, 306 F.R.D. 225, 230 n.4 (D. Minn. 2015) ("Indeed, deference to a plaintiff's chosen forum is . . . negated by impermissible forum shopping."). A plaintiff's choice of forum is given "significantly less deference" where "the transaction or underlying facts did not occur in that forum." *Apex IT, Inc. v. Rhema Bible Coll.*, No. CIV 08-0596 JRT/FLN, 2009 WL 799611, at *2 (D. Minn. Mar. 24, 2009) (Tunheim, J.) (quotation omitted). The fact that DOJ tried to buttress venue in this district by adding plaintiff Minnesota does nothing to change the extreme inefficiency of litigating the same claim in this district that was already resolved in the Northern District of Illinois after years of litigation at tremendous expense of party and judicial resources. None of those states ever even spoke to Agri Stats or requested any documents or information from the company prior to joining DOJ's complaint. Scholer Decl. ¶ 15.

Plaintiffs' complaint seeks a "do over" of *Broilers*. DOJ first investigated Agri Stats *13 years ago*, and closed that investigation without taking action. Scholer Decl. ¶ 14. Private plaintiffs filed the *Broilers* lawsuit in 2016. Plaintiffs waited another *seven years*, until the *Broilers* plaintiffs *lost* their case against Agri Stats, to file this case with the four

state plaintiffs, improperly asking this Court to address a claim that another judge has already resolved. As Judge Easterbrook held in *Premier Electrical Construction Co.*, the doctrine of *stare decisis* at the very least requires a party seeking to adjudicate the same claim that a prior party adjudicated and lost to explain what evidence it has that will alter the result. 814 F.2d 358; *see also Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1075 (9th Cir. 2021) (noting that "there would have to be some extraordinary difference for Plaintiffs' claims here to not fail as a matter of law" given rejection of overlapping FTC claims in *FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020)); *Vernet v. Bellmore-Merrick Cent. High Sch. Dist.*, 343 F. Supp. 2d 186, 188 (E.D.N.Y. 2004), *aff'd*, 155 F. App'x 32 (2d Cir. 2005) (applying *stare decisis* to a new suit where the court had already ruled 30 years prior on the same claims with the same defendant). At its core, Plaintiffs' tag-along lawsuit hopes to achieve a different outcome on identical facts—exactly what the transfer rules are designed to forestall. *See, e.g.*, *Farm Boy Co-Op and Feed Co.*, No. 09-2936 ADM/JSM, 2010 WL 935747, at *3 (D. Minn. Mar. 12, 2010) (granting transfer where "judicial resources would be wasted and that there would be a potential for inconsistent results if the two actions were to proceed in different courts"); *see also Chex Servs., Inc. v. iGames Ent., Inc.*, No. CIV.04-1460(PAM/RLE), 2004 WL 1429828, at *3 (D. Minn. June 23, 2004) (granting transfer because "the interests of justice must take precedence over even the parties' choice of forum."). And to the extent Plaintiffs argue their claim differs in some way from *Broilers*, the court best positioned to address that argument is the Northern District of Illinois, not this district. *Cf. Gemini Invs. III, L.P. v. RSG, Inc.*, No. CIV 08-5264 ADM/JJG, 2009 WL 776740, at *6 (D. Minn. Mar. 20, 2009) (granting transfer on

the basis of "judicial economy and the concern for avoiding potentially inconsistent results" and noting that transferee court is "well positioned to decide whether to consolidate this action with the pending action").

Judicial economy and the interest of justice factors under Section 1404(a) weigh heavily in favor of transfer to the Northern District of Illinois. In fact, if transfer under Section 1404(a) is not warranted on these facts—with years of discovery and litigation to judgment on the same claim in the transferee court—it is difficult to conceive of any case that ever should be transferred. Re-litigating the *Broilers* case in this district—including expensive and burdensome fact and expert discovery and duplicative summary judgment proceedings—would be inefficient and highly prejudicial to a small company like Agri Stats, which has, for many years and at considerable expense, already litigated—and won—the only relevant claim in Plaintiffs' complaint. If it must be forced to address that claim yet again, it should do so in front of the same court that has presided over those claims for the past seven years.

## III.   In The Alternative, The Court Should Transfer This Case To The Northern District of Indiana.

In the event that the Court disagrees with Plaintiffs and Agri Stats that the pendency of a related case and risk of inconsistent outcomes should dictate venue, then, in the alternative, Agri Stats requests transfer to the Northern District of Indiana. As a threshold matter, venue is clearly appropriate in the Northern District of Indiana under both the general venue statute, 28 U.S.C. § 1391(b), and Section 12 of the Clayton Act, 15 U.S.C. § 22, because Agri Stats is incorporated in Indiana; its principal place of business is in Fort

Wayne; the reports giving rise to Plaintiffs' claims are created in Fort Wayne; and Agri Stats' employee witnesses are located in Fort Wayne.

An evaluation of the remaining Section 1404(a) transfer factors—"(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice"—also supports transfer to the Northern District of Indiana. *Terra*, 119 F.3d at 691. That district is more convenient for the parties and witnesses. Agri Stats' headquarters and employee witnesses all are located in Fort Wayne, and the company has no office or employees in Minnesota. Forcing Agri Stats to litigate in a distant district in which it has no substantial connection, when, unlike in the other pending class actions, there are no other defendants located there, imposes a needless expense and burden with no offsetting benefit or savings of judicial resources. By contrast, a transfer poses no cost on Plaintiffs. The majority of the lawyers litigating this case do not reside or work in either this district or the Northern District of Indiana. They must travel to either.

No appeal to judicial economy can salvage Plaintiffs' position. Though *Pork* is also pending in this District, nothing about that case will make adjudication of this case more efficient. *Pork* seeks damages for alleged past conduct. In contrast, Plaintiffs seek an injunction against future Agri Stats' pork, turkey, and broiler chicken reports. Because Agri Stats no longer offers pork and turkey reports, Plaintiffs' case must necessarily focus on *chicken* reports. This Court's experience with *pork* reports will not improve the efficiency of the litigation. Thus, nothing about the subject of the action pending before this Court suggests that there are substantial efficiencies that will arise from adjudicating this case here rather than the Northern District of Indiana, where it ordinarily would have been

- 23 -

brought. If the Court does not transfer the case to the Northern District of Illinois, it should be transferred to the Northern District of Indiana.

## CONCLUSION

For the foregoing reasons, Agri Stats respectfully requests that the Court transfer this action to the Northern District of Illinois or, in the alternative, to the Northern District of Indiana.

Dated: November 8, 2023                Respectfully submitted,

*/s/ Peter H. Walsh*

Peter H Walsh (MN# 0388672)
Hogan Lovells US LLP
80 South 8th Street Ste 1225
Minneapolis, MN 55402
Tel: (612) 402-3017
Fax: (612) 339-5167
Email: peter.walsh@hoganlovells.com

William L. Monts III (Pro Hac Vice Forthcoming)
Justin W. Bernick (Pro Hac Vice Forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant Agri Stats, Inc.*