# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF MINNESOTA, STATE OF CALIFORNIA, STATE OF NORTH CAROLINA, STATE OF TENNESSEE, STATE OF TEXAS, and STATE OF UTAH,<br><br>    *Plaintiffs*,<br><br>        v.<br><br>AGRI STATS, INC.,<br><br>    *Defendant.* | No. 0:23-CV-03009-JRT-JFD |

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

FACTUAL BACKGROUND ................................................................... 2

PROCEDURAL HISTORY ..................................................................... 3

LEGAL STANDARD ............................................................................. 4

ARGUMENT .......................................................................................... 5

I.      VENUE IS PROPER IN MINNESOTA ........................................... 5

II.     AGRI STATS CANNOT MEET ITS HEAVY BURDEN OF
        OVERCOMING PLAINTIFFS' CHOICE OF FORUM .................... 6

        A.   The Interests of Justice Strongly Favor Remaining in Minnesota .............. 7

             i.    Plaintiffs' Choice of Forum Is Entitled to Deference ......................... 7

             ii.   Judicial Economy Does Not Favor a Transfer .................................. 8

             iii.  The Remaining Interest-of-Justice Factors All Weigh Against
                   Transfer ........................................................................... 13

        B.   The Convenience of the Parties and Witnesses Does Not Favor
             Transfer .................................................................................. 14

             i.    No Other District Is More Convenient for the Parties and
                   Witnesses than Minnesota .................................................... 14

             ii.   The Remaining Factors Weigh Against Transfer ............................ 16

III.    CONCLUSION ............................................................................ 18

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page**

*Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*,
    2009 WL 1684428 (D. Minn. June 16, 2009) ........................................................ 5, 15

*Ahlstrom v. Clarent Corp.*,
    2002 WL 31856386 (D. Minn. Dec. 19, 2002) .................................................... 12

*Barrett v. Hy-Vee, Inc.*,
    2013 WL 12144127 (S.D. Iowa Apr. 17, 2013) .................................................. 13

*Campos v. Ticketmaster Corp.*,
    140 F.3d 1166 (8th Cir. 1998) ............................................................................. 6

*Camreta v. Greene*,
    563 U.S. 692 (2011) ............................................................................................ 10

*Chex Servs. Inc. v. iGames Entm't, Inc.*,
    2004 WL 1429828 (D. Minn. June 23, 2004) .................................................... 12

*Farm Boy Co-Op. & Feed Co., LLC v. Red River Clothing, Inc.*,
    2010 WL 935747 (D. Minn. Mar. 12, 2010) ...................................................... 11

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................................. 9

*FTC v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) ........................................................................... 9

*FTC v. Accusearch, Inc.*,
    2007 WL 4356786 (D. Wyo. Sept. 28, 2007) ...................................................... 9

*Gemini Invs. III, L.P. v. RSG, Inc.*,
    2009 WL 776740 (D. Minn. Mar. 20, 2009) ................................................ 11, 12

*Graff v. Qwest Commc'ns Corp.*,
    33 F. Supp. 2d 1117 (D. Minn. 1999) ............................................................... 12

*In re Apple Inc.*,
    602 F.3d 909 (8th Cir. 2010) ............................................................................... 4

*In re Broiler Chicken Antitrust Litig.*,
    2023 WL 7220170 (N.D. Ill. Nov. 2, 2023) ................................................ 4, 8, 9

i

*In re Monies*,
    2006 WL 3841518 (D. Minn. Dec. 29, 2006)............................................................ 12

*In re Pork Antitrust Litig.*,
    2023 WL 2696497 (D. Minn. Mar. 29, 2023) ........................................................... 4

*Luckey v. Alside, Inc.*,
    2016 WL 1559569 (D. Minn. Apr. 18, 2016)................................................ 2, 15, 17

*Medtronic, Inc. v. Am. Optical Corp.*,
    337 F. Supp. 490 (D. Minn. 1971)............................................................................ 12

*Midwest Motor Exp., Inc. v. Cent. States Se.*,
    70 F.3d 1014 (8th Cir. 1995) .................................................................................... 13

*Monsanto Tech. LLC v. Syngenta Corp. Prot., Inc.*,
    212 F. Supp. 2d 1101 (E.D. Mo. 2002) .................................................................... 13

*Newman v. Stryker Sales Corp.*,
    2010 WL 3926200 (D. Minn. Sept. 30, 2010)..................................................*passim*

*Paragon Freight Sys., LLC v. River City Ins. Agency, Inc.*,
    2021 WL 3636062 (D. Minn. Aug. 17, 2021) ............................................................ 7

*Petters Co., Inc. v. Stayhealthy, Inc.*,
    2004 WL 1630932 (D. Minn. July 7, 2004) ........................................................... 4, 5

*Pragmatic C Software Corp. v. Antrim Design Sys., Inc.*,
    2003 WL 244804 (D. Minn. Jan. 28, 2003)....................................................... 12, 13

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*,
    814 F.2d 358 (7th Cir. 1987) .................................................................................... 10

*QFO Labs, Inc. v. Best Buy Stores, L.P*,
    2018 WL 3966313 (D. Minn. Aug. 17, 2018) .......................................................... 17

*Rock v. Rathsburg Assocs., Inc.*,
    2022 WL 4450418 (D. Minn Sept. 23, 2022)...................................................*passim*

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)................................................................................................. 10

*Terra Int'l, Inc. v. Miss. Chem. Corp.*,
    119 F.3d 688 (8th Cir. 1997) ............................................................................*passim*

ii

*United States v. Brown Univ.*,
    772 F. Supp. 241 (E.D. Pa. 1991) ............................................................... 5, 7

*United States v. Nat'l City Lines*,
    334 U.S. 573 (1948) .................................................................................... 6

*United States v. Scophony Corp. of America*,
    333 U.S. 795 (1948) .................................................................................... 6

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .................................................................................... 14

*Voss v. Johnson & Johnson, Ortho McNeil Pharm., Inc.*,
    2008 WL 697474 (D. Minn. Mar. 12, 2008) ............................................ 7

## STATUTES

28 U.S.C. § 1391 ............................................................................................ 5

15 U.S.C. § 22 ............................................................................................ 5, 6

## OTHER AUTHORITIES

15 Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure (4th Ed. 2023) ....................................... 12

## INTRODUCTION

Agri Stats' motion to transfer venue from this Court (where venue is indisputably proper) to the Northern District of Illinois (where no party is located) fails to carry the heavy burden necessary to justify transfer from Plaintiffs' chosen venue. Instead, Agri Stats makes clear that it simply would prefer to litigate in the Northern District of Illinois because of a favorable ruling in another case in that court involving a different set of allegations brought by different plaintiffs. But Agri Stats' preference to litigate elsewhere does not justify transferring this case given the substantial connections that the District of Minnesota has to this case, including that Agri Stats:

- Conspired with at least four meat processors located in Minnesota, including Cargill, Hormel, Jennie-O Turkey Store, and Pilgrim's;

- Provided processors located in Minnesota with reports containing competitively sensitive information that the processors used to suppress competition;

- Provided advice and consulting services to processors located in Minnesota;

- Used a Minnesota address to invoice and accept payment from clients;

- Engaged in anticompetitive conduct that caused harm to consumers in Minnesota;

- Faces claims in this enforcement action brought by the State of Minnesota, along with five other states; and

- Will continue litigating related claims in this Court in *In re Pork Antitrust Litig.* ("*Pork*"), No. 18-cv-1776, MDL No. 2998 (D. Minn.), regardless of the resolution of its transfer motion in this case.

Agri Stats fails to engage meaningfully with these allegations that are more than sufficient to justify Plaintiffs' choice of venue, which is entitled to heightened deference.

Instead, Agri Stats alludes to defenses it may wish it could raise, like claim preclusion, mootness, or lack of personal jurisdiction. But Agri Stats does not actually

argue that (1) venue or personal jurisdiction is improper in this Court; (2) that any of Plaintiffs' claims, including those regarding the pork and turkey markets, are moot; (3) that the summary judgment decision in *In re Broiler Chicken Antitrust Litig.* ("*Broilers*"), No. 16-cv-8637 (N.D. Ill.), has any preclusive effect on this case; or (4) that the *Pork* litigation is unrelated to Plaintiffs' claims.

Agri Stats' alternative request to transfer venue to the Northern District of Indiana fares no better. The only reason Agri Stats gives for transferring this case to Indiana is the convenience of itself and some of its own employees, but "the location of the Defendants' employee-witnesses is not enough to overcome the deference given to Plaintiffs' choice of forum." *Luckey v. Alside, Inc.*, 2016 WL 1559569, at *5 (D. Minn. Apr. 18, 2016). Moreover, here those employees will presumably still have to participate in the related *Pork* litigation in this Court.

## FACTUAL BACKGROUND

Agri Stats' information-exchange conspiracies at the center of this litigation have operated nationally, with substantial activity in Minnesota. *See* Second Am. Compl. ("Compl.") § VII, ECF No. 50. Agri Stats' representatives travel the country to recruit processors, share the information Agri Stats collects, and advise processors on how the industry can maximize profits. *Id.* ¶¶ 10, 48-50, 159. For each industry it services, Agri Stats collects detailed information from processors, audits the data, and then distributes it back to processors in a variety of reports. *Id.* ¶¶ 16-24. The information included in these reports is sensitive (including information regarding prices and output of individual competitors), granular (often provided on a facility-by-facility and company-by-company

2

basis), and recent (often less than a week old). *Id.* ¶¶ 108-09. Although Agri Stats and its processor subscribers freely share this information with each other, they refuse to sell it to meat purchasers, workers, or consumers. *Id.* ¶¶ 7, 9, 109.

Agri Stats' reports are distributed to processors across the country, including in Minnesota, which has been home to companies and facilities that process broiler chicken, pork, and turkey. *See id.* ¶¶ 156-157 (discussing Minnesota-based processors Hormel, Jennie-O, Gold'n Plump, and Pilgrim's).[1] Agri Stats also operates a consulting business whereby its account managers travel to processors' facilities—including those in Minnesota—and instruct them on how to use information provided by Agri Stats to maximize *industry* profits at the expense of consumers and competition. *Id.* ¶¶ 4, 10, 48-50, 159. Agri Stats even invoiced many of its customers using a Minneapolis, Minnesota address. Decl. of Mark Sosnowsky ("Sosnowsky Decl.") Exs. 1-3. Considering that at least one processor in each relevant industry has operated in Minnesota, Plaintiffs anticipate that evidence related to each claim will be found in Minnesota.

## PROCEDURAL HISTORY

The United States brought this enforcement action in September 2023, ECF No. 1, and the states of Minnesota, California, North Carolina, Tennessee, Texas, and Utah subsequently joined the suit. ECF Nos. 30, 50. The operative complaint brings three counts

---

[1] Cargill, Inc., which is the parent company of turkey processor Cargill Meat Solutions, Compl. ¶ 14, n.12, is also based in Minnesota according to its website. *See Contact Us Form*, Cargill, Inc., https://www.cargill.com/page/cargill-contact-us (last visited Nov. 28, 2023).

under Section 1 of the Sherman Act against Agri Stats for managing anticompetitive information exchanges in the broiler chicken, pork, and turkey markets. ECF No. 50.

Pursuant to this District's Order for Assignment of Cases, the Court reassigned this case to Judge Tunheim as related to *Pork*. That litigation, like this enforcement action, includes claims against Agri Stats for orchestrating "an anticompetitive information exchange" among pork processors. *Pork*, 2023 WL 2696497, at *15. This Court denied Agri Stats' motion to dismiss in *Pork* and certified an information-sharing class claim against it. *Id.* at *2, 29. Summary judgment briefing in *Pork* is scheduled for late 2024. *See* Mot. at 8.

Apart from *Pork*, Agri Stats also has been named as a defendant in *Broilers* and *In re Turkey Antitrust Litig.* ("*Turkey*"), 19-cv-8318 (N.D. Ill.). Although both are pending in the Northern District of Illinois, those cases are consolidated before different judges and are proceeding on different timelines.[2] In *Broilers*, the plaintiffs focused on *per se* claims alleging an output conspiracy; only one of the three certified class actions included an information-sharing claim. *See Broilers,* 2023 WL 7220170, at *27.

## LEGAL STANDARD

"'[F]ederal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted.'" *In re Apple Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997)); *see also Petters*

---

[2] While summary judgment has already taken place in *Broilers*, summary judgment briefing in *Turkey* is not scheduled to take place until 2025. Mot. at 8.

*Co., Inc. v. Stayhealthy, Inc.*, 2004 WL 1630932, at *4 (D. Minn. July 7, 2004) ("Courts give considerable deference to a plaintiff's choice of forum . . . ."). That deference is heightened when government enforcers bring federal antitrust claims. *United States v. Brown Univ.*, 772 F. Supp. 241, 242 (E.D. Pa. 1991) (collecting cases). "When deciding a motion to transfer, courts consider (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice, and may balance a number of case-specific factors." *Rock v. Rathsburg Assocs., Inc.*, 2022 WL 4450418, at *2 (D. Minn Sept. 23, 2022). The movant bears a "heavy burden of showing that the balance of the § 1404(a) factors strongly favor[] transfer." *Newman v. Stryker Sales Corp.*, 2010 WL 3926200, at *7 (D. Minn. Sept. 30, 2010); *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, 2009 WL 1684428, at *7 (D. Minn. June 16, 2009) (finding that the defendants "failed to satisfy their 'heavy' burden" to justify transfer).

## ARGUMENT

Agri Stats does not dispute that its activity within Minnesota establishes venue in this District. When balanced against this case's strong connections to Minnesota and deference to Plaintiffs' choice of venue, Agri Stats' preference to litigate elsewhere does not justify a transfer.

## I.   VENUE IS PROPER IN MINNESOTA

Agri Stats does not actually contest that venue is proper in the District of Minnesota under 28 U.S.C. § 1391 or Section 12 of the Clayton Act, 15 U.S.C. § 22, but characterizes the basis for venue as "weak." Mot. at 1, 11, 13. This assertion is unsupported by fact or law.

In the broiler chicken, pork, and turkey industries, Agri Stats has collected data from across the country (including Minnesota) and sent its detailed reports back out to processors across the country (including Minnesota). *See* Compl. ¶¶ 156-157, 160 (discussing Hormel, Jennie-O, Gold'n Plump, and Pilgrim's). Agri Stats has sent account representatives to processor facilities (including those in Minnesota) to consult about the information Agri Stats has collected. *Id.* ¶ 159. Agri Stats also has invoiced clients using a Minnesota address. Sosnowsky Decl. Exs. 1-3. And Agri Stats' anticompetitive conduct has caused harm in national markets, necessarily including Minnesota. Compl. ¶ 161. That is more than enough to satisfy any venue analysis.[3]

Agri Stats also acknowledges that Plaintiffs' case is related to the *Pork* litigation, *see* Mot. at 2, 8, which features similar underlying facts and many of the same parties. Agri Stats has appeared for years before this Court in that litigation and has not contested venue.

## II.   AGRI STATS CANNOT MEET ITS HEAVY BURDEN OF OVERCOMING PLAINTIFFS' CHOICE OF FORUM

Given that venue is proper in this Court, Agri Stats bears the "heavy burden" of showing transfer is appropriate under a traditional venue analysis. *Newman*, 2010 WL 3926200, at *6. Courts generally consider the convenience of the parties and witnesses

---

[3] The applicable venue statute in this case—Section 12 of the Clayton Act—creates a less restrictive venue analysis than the one conducted under § 1391. *See* 15 U.S.C. § 22; *Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1173 (8th Cir. 1998) ("[Section] 12 was intended to make 'the practical, everyday business or commercial concept of doing or carrying on business "of any substantial character" the test of venue.'") (quoting *United States v. Scophony Corp. of Am.,* 333 U.S. 795, 807 (1948)). The broad language of Section 12 "was designed to aid plaintiffs" by "vest[ing] the power of choice in the plaintiff" in antitrust actions. *United States v. Nat'l City Lines*, 334 U.S. 573, 586, 597 (1948).

before evaluating the interests of justice. *E.g.*, *Rock*, 2022 WL 4450418, at *2-4. However, because Agri Stats focuses almost entirely on the interests of justice, Plaintiffs address that factor first.

### A.  The Interests of Justice Strongly Favor Remaining in Minnesota

"When considering the interest of justice, courts may take a broad range of factors into account, including judicial economy, plaintiff's choice of forum, costs of litigation in each forum, ability to enforce a judgment, obstacles to a fair trial, conflict of law, and the advantages of having local courts determine local law." *Paragon Freight Sys., LLC v. River City Ins. Agency, Inc.*, 2021 WL 3636062, at *5 (D. Minn. Aug. 17, 2021). None of these factors—individually or collectively—favor transfer.

### i.  Plaintiffs' Choice of Forum Is Entitled to Deference

"In general, federal courts give considerable deference to a plaintiff's choice of forum . . . ." *Terra Int'l*, 119 F.3d at 695.[4] That choice is particularly entitled to deference when government enforcers bring federal antitrust claims, *see Brown Univ.*, 772 F. Supp. at 242, and when a plaintiff resides in the selected forum. *Voss v. Johnson & Johnson, Ortho McNeil Pharm., Inc.*, 2008 WL 697474 at *2 (D. Minn. Mar. 12, 2008). Here, not only has the United States brought antitrust claims against Agri Stats in this District, but also the State of Minnesota is among the six states seeking to vindicate their sovereign interests on behalf of their citizens. Agri Stats attempts to undermine the deference afforded to home-state plaintiffs by making the remarkable accusation that the only reason

---

[4] Courts consider deference to the plaintiff's choice of forum when analyzing both the convenience of parties and the interests of justice. *E.g.*, *Rock*, 2022 WL 4450418, at *2-4.

Minnesota joined this case (even though five other states also joined) was to "buttress venue" at the request of the Department of Justice. Mot. at 20. Agri Stats' baseless assertion deserves no weight.

Agri Stats also argues that Plaintiffs' choice of forum should be given less deference when "the transaction or underlying facts did not occur in that forum." Mot. at 20. But that is not the case here because Agri Stats operated each of its anticompetitive schemes nationwide, including in Minnesota. *See* Compl. ¶¶ 156-161 (alleging conduct between Agri Stats and co-conspirator processors located in Minnesota).

### ii.      Judicial Economy Does Not Favor a Transfer

Agri Stats next argues that the "interests of justice" require transfer to the court overseeing the *Broilers* litigation in the Northern District of Illinois to avoid "inconsistent outcomes." Mot. at 2-4. But Agri Stats' argument (i) improperly conflates this enforcement action with *Broilers*; (ii) ignores that this Court will have to resolve related claims regardless of where this case proceeds; and (iii) relies on cases that, unlike here, proceeded simultaneously between common parties.

*First*, Agri Stats wrongly characterizes Plaintiffs' claims here as nothing but a "do-over" of "the same claim already resolved by the Northern District of Illinois." Mot. at 4. The *Broilers* summary judgment decision considered only the broiler chicken market, centered on an alleged *per se* unlawful output restriction conspiracy among broiler processors, and necessarily depended on the set of evidence and arguments offered at

summary judgment.[5] *See Broilers*, 2023 WL 7220170, at *11 n.6 ("[I]t is the parties' responsibility to highlight the material evidence in their briefs and statements of fact."). Here, by contrast, Plaintiffs bring information-sharing claims challenging Agri Stats' conduct in three separate markets, including pork and turkey.

Plaintiffs' pork and turkey claims are no less a part of this case than Plaintiffs' broiler chicken claim. Agri Stats attempts to minimize Plaintiffs' pork and turkey claims as "makeweight"—or even moot—because Agri Stats paused its turkey and pork reporting as a result of ongoing litigation. *See* Mot. at 19. But to moot claims through the voluntary cessation of activity, Agri Stats "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *see also, e.g.*, *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009) (affirming injunction regarding conduct that had ceased because defendant "remained in

---

[5] Even if the Court were to accept Agri Stats' invitation and view this case solely through the lens of Count I (related to the broiler chicken market), the allegations here differ substantially from the evidence the court relied on at summary judgment in *Broilers*. For example, the *Broilers* court's evaluation rested on a finding that Agri Stats provided data that was "generally 45 days old" and the court states that it was presented with "no authority that exchange of 45 day old information can constitute anticompetitive conduct." *Broilers*, 2023 WL 7220170, at *27. In contrast, the operative complaint alleges that Agri Stats routinely provided data that was approximately one week old and details how some processors used such recent data to raise prices. *See, e.g.*, Compl. at ¶¶ 22, 53-57 & Fig. 7. Similarly, the *Broilers* court evaluated industry-level information Agri Stats or EMI employees provided by email to processors, *Broilers,* 2023 WL 7220170, at *26, but does not appear to have evaluated the individualized consulting "reviews" Agri Stats regularly conducted with its customers. *See, e.g.*, Compl. ¶¶ 10, 48-50. These are only two examples. Put simply, the allegations against Agri Stats in this action are not the same as those the Court relied on at summary judgment in *Broilers*.

the 'information brokerage business'" and "had the capacity to 'engage in similar unfair acts or practices' in the future") (quoting *FTC v. Accusearch, Inc.*, 2007 WL 4356786, at *9 (D. Wyo. Sept. 28, 2007)). Agri Stats cannot possibly meet this standard considering "its executives have stated that they want to resume reporting in these industries once [the *Pork* and *Turkey*] litigation concludes." Compl. ¶ 15 (emphasis added). Agri Stats notably does not deny this allegation. *See* Decl. of Eric Scholer ¶ 6, ECF No. 44-2.

As for the effect of the *Broiler* court's summary judgment decision, the Court, of course, may consider the reasoning of that case to the extent that it is persuasive. But to the extent Agri Stats suggests that the opinion somehow *precludes* Plaintiffs' claims, it is wrong. *See Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (rejecting doctrine of "virtual representation" and discussing limited exceptions to the general "rule against nonparty preclusion"). The *Broilers* decision, whether considered here or in the Northern District of Illinois, is not legally binding in any other case; Judge Durkin, like this Court, can reach a different outcome based on a different factual record and arguments. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Agri Stats' repeated invocation of stare decisis is therefore inapposite. Mot. at 4, 21 (citing *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358 (7th Cir. 1987)).

*Second*, wherever this case proceeds, this Court will have to address the private plaintiffs' information-sharing claims against Agri Stats in *Pork*. Accordingly, Agri Stats will continue to litigate in this Court defending against similar claims, and the same

10

purported risk of "inconsistent outcomes" will remain.[6] Under strikingly similar facts, this Court denied a transfer motion in *Newman*. In that case, like here, the defendant was a party to several related lawsuits: some before this Court and two in another forum that were "before two different judges" "in varying procedural postures." *Newman*, 2010 WL 3926200, at *1, 6. The Court concluded that the defendant had "not met its heavy burden of showing that the interest of justice in judicial economy" warranted transfer because even "if this particular case were transferred," the defendant "would continue to defend against numerous other . . . cases in this district and specifically before this Court." *Id.* at *3, 6. So too here.

*Third*, Agri Stats misconstrues the law as it relates to the risk of "inconsistent outcomes." In the cases Agri Stats cites, courts transferred cases to a district with pending, related litigation when cases were proceeding *simultaneously among common parties*. For example, in *Farm Boy Co-Op. & Feed Co., LLC v. Red River Clothing, Inc.*, one party filed in Minnesota for trademark infringement while the other party filed in Texas seeking a declaratory judgment that the trademark was invalid. 2010 WL 935747, at *1-3 (D. Minn. Mar. 12, 2010). Similarly, in *Gemini Invs. III, L.P. v. RSG, Inc.*, the defendants sued in Nebraska for breach of contract while the plaintiffs sued in Minnesota for fraudulent inducement and other fraud claims in connection with the same contract. 2009 WL 776740, at *1 (D. Minn. Mar 20, 2009). In these types of cases, courts conclude that transfer can

---

[6] To be clear, because any decision in this case seeking injunctive relief will be based on considerations and evidence that differ from those relied on by the court in *Broilers*, *see supra* n.5, it need not be "inconsistent" at all with the summary judgment (or any other) decision in *Broilers*.

11

conserve judicial economy by *coordinating* the simultaneously pending litigation, so one court can decide the same issues relating to the same transactions at the same time. *Farm Boy*, 2010 WL 935747, at *3 ("Courts have thus granted transfers to districts where related actions are already pending to permit cases to be consolidated into one proceeding"); *Gemini Invs. III,* 2009 WL 776740, at *5 (same).[7] But the existence of related cases "need not be given significant weight, or even any weight . . . if there is no realistic possibility of consolidating the pending litigation with the related cases," including if "the actions are at different stages of development." 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3854 (4th Ed. 2023).

---

[7] *See also Ahlstrom v. Clarent Corp.*, 2002 WL 31856386, at *6 (D. Minn. Dec. 19, 2002) ("[R]etaining this matter in Minnesota would clearly cause two cases involving the same parties and substantially related issues to be pending simultaneously in two district courts, resulting in a duplicative expenditure of resources."); *Chex Servs. Inc. v. iGames Entm't, Inc.*, 2004 WL 1429828, at *1-3 (D. Minn. June 23, 2004) (near-simultaneous lawsuits brought in separate districts by two sides to a purchase agreement and noting that "this litigation cannot be completely resolved until the Delaware court has determined the propriety of the termination of the Stock Purchase Agreement"); *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999) (lawsuits brought in separate districts on the same day by both parties to an employment contract, one seeking breach of contract and the other seeking a declaratory judgment that the contract was invalid); *Medtronic, Inc. v. Am. Optical Corp.*, 337 F. Supp. 490, 492 (D. Minn. 1971) (near-simultaneous lawsuits brought in separate districts relating to a patent, one seeking liability for patent infringement, and the other seeking a declaratory judgment that the patent was invalid); *In re Monies,* 2006 WL 3841518, at *2 (D. Minn. Dec. 29, 2006) (approving transfer of interpleader action concerning funds to which the SEC claimed it was entitled but which were also the subject of a non-yet-decided divorce proceeding in which the spouse also claimed entitlement). *In re Monies* also differs from this case because it was the third-party interpleader that chose to litigate in Minnesota, not the plaintiff or defendant, and therefore the Court did not defer to its choice of venue. *Id*.

Here, as Agri Stats emphasizes, Agri Stats was granted summary judgment in the *Broilers* case, and thus there are no judicial efficiencies like those that may exist when there are simultaneous, pending cases.[8] None of the government enforcers was a plaintiff in *Broilers*. And, in any event, Agri Stats will "continue to defend against" other related cases before this Court wherever this case proceeds. *Newman*, 2010 WL 3926200, at *3. None of the cases cited by Agri Stats suggest that a court should transfer a case merely so that a party can litigate where it apparently believes the court might be more favorably disposed to it.

### iii.   The Remaining Interest-of-Justice Factors All Weigh Against Transfer

None of the remaining interest-of-justice factors favor transfer. A judgment can be enforced in all courts at issue. There are no impediments to receiving a fair trial in this Court. And there are no conflicts of laws issues since the only law at issue is federal (Section 1 of the Sherman Act). *See Barrett v. Hy-Vee, Inc.*, 2013 WL 12144127, at *3 (S.D. Iowa Apr. 17, 2013) ("The factor concerning the applicability of law does not favor

---

[8] For this reason, among others, Agri Stats' discussion of the "first-to-file" rule is misplaced. *See* Mot. at 17, 19. The first-to-file rule applies when the same parties are involved in litigation concerning the same or similar issue in a different forum. *E.g. Pragmatic C Software Corp. v. Antrim Design Sys., Inc.*, 2003 WL 244804, at *2-3 (D. Minn. Jan. 28, 2003) (noting that "[a] prerequisite to application of the first-filed rule is that the litigation be 'parallel'" and that "substantial similarity" of parties is required to be considered "parallel"). The typical posture is that the defendant in the first suit subsequently files a related claim against the same party in a different forum. *E.g. Midwest Motor Exp., Inc. v. Cent. States Se.*, 70 F.3d 1014, 1015-16 (8th Cir. 1995); *Monsanto Tech. LLC v. Syngenta Corp. Prot., Inc.*, 212 F. Supp. 2d 1101, 1102 (E.D. Mo. 2002). Here, the doctrine is inapplicable because there is no mutuality of parties between the two cases, Agri Stats did not choose to litigate in the Northern District of Illinois, and the two actions are not progressing simultaneously.

transfer, given that either forum is equally capable of applying federal law."). And Agri Stats has not shown that the cost of litigating elsewhere will "prove substantially more cost effective than litigating in Minnesota where it is defending against similar suits." *Newman*, 2010 WL 3926200, at *6.

### B. The Convenience of the Parties and Witnesses Does Not Favor Transfer

In assessing convenience, courts consider "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Terra Int'l,* 119 F.3d at 696. Agri Stats barely even acknowledges these factors, let alone makes the case that they "strongly favor" transfer. *Newman*, 2010 WL 3926200, at *2.

### i. No Other District Is More Convenient for the Parties and Witnesses than Minnesota

When considering the convenience of the parties, courts give "considerable deference" to plaintiff's forum choice. *Rock*, 2022 WL 4450418, at *2 (quoting *Terra Int'l*, 119 F.3d at 695). Agri Stats fails to show why deference is not appropriate here, much less satisfy its "heavy burden" to show that another court is *more* convenient for the parties and witness. *Newman*, 2010 WL 3926200, at *7; *see also Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."). Agri Stats spends only three

14

sentences (*see* Mot. at 15) on this prong of the analysis. A full analysis of the convenience prong makes clear why, as the convenience factors weigh strongly against transfer.

Agri Stats' motion almost entirely ignores that Agri Stats remains a defendant in many cases before this court as part of the *Pork* litigation. Accordingly, regardless of how the Court rules on its Motion, Agri Stats will remain a defendant in these related cases, and will be required to participate in discovery, dispositive motion briefing, and potentially trial. Agri Stats ignores these facts and instead argues that it is more convenient for it to appear in a court in which it has been granted summary judgment (*Broilers*) than one where it is currently litigating (*Pork*). That argument is backward. *See Newman*, 2010 WL 3926200, at *3 (denying motion to transfer where "[e]ven if this particular case were transferred to Ohio, [the defendant] would continue to defend against numerous other pain pump cases in this district and specifically before this Court.").

As to convenience of the witnesses, Agri Stats fares no better. Its argument hinges entirely on the fact that its employees are located in Indiana. *See* Mot. at 23. But "the location of [the] Defendants' employee-witnesses is not enough to overcome the deference given to Plaintiffs' choice of forum." *Luckey*, 2016 WL 1559569, at *5. That is because courts "assume that employees of the parties will voluntarily appear in a foreign forum and focus on the convenience to *non-party witnesses*." *Rock*, 2022 WL 4450418, at *3 (emphasis added) (citing *Advanced Logistics Consulting*, 2009 WL 1684428, at *5); *see also Luckey,* 2016 WL 1559569, at *5. Here, the Court need not only "assume" that Defendant's employees will make themselves available in Minnesota—it can be assured

they will *already* appear as part of *Pork*. Accordingly, the convenience to Agri Stats'
employee witnesses does not favor transfer.

The convenience to non-party witnesses, which is the proper focus of the analysis,
weighs against transfer. *See Rock*, 2022 WL 4450418, at *3. As previously noted, non-
party processors in each protein have operations in Minnesota, and Agri Stats has made no
showing that a critical number of non-parties (whether processors or otherwise) reside in
either district to which Agri Stats seeks transfer. To the contrary, the non-party processors
are geographically dispersed. For instance, the Complaint provides examples of five
different processors—Tyson, Sanderson, Cargill, Butterball, and JBS—using Agri Stats
information to raise prices on chicken, pork, and turkey. Compl. ¶¶ 53-66. Those
companies are headquartered in Arkansas, Mississippi, Minnesota/Kansas,[9] North
Carolina, and Colorado, respectively, and have relevant meat processing facilities located
in many other states. There is no reason to think that either Illinois or Indiana is a "more
convenient forum" to non-parties generally than Minnesota. *Rock*, 2022 WL 4450418, at
*3 In fact, multiple processors are defendants in *Pork* and are therefore already appearing
and litigating before this Court.

## ii. The Remaining Factors Weigh Against Transfer

None of the remaining factors favor transfer, and Agri Stats does not meaningfully
argue otherwise. *First*, the "location where the conduct complaint of occurred" does not

---

[9] Cargill, Inc. is headquartered in Minnesota, while its subsidiary protein business is located
in Kansas. *See supra* n.1; *Overview of Cargill Protein–North America*, Cargill, Inc.,
https://www.cargill.com/meat-poultry/overview-of-protein-na (last visited Nov. 28, 2023).

favor either of the districts to which Agri Stats seeks transfer. *Terra Int'l,* 119 F.3d at 696. While Agri Stats narrowly focuses in its motion on the fact that the "reports giving rise to Plaintiffs' claims are created in [Indiana]," Mot. at 23, the Complaint alleges much more widespread conduct that stretches throughout the country—including in Minnesota. Plaintiffs allege that Agri Stats sent reports electronically and provided consulting services to meat processors for all three proteins at issue located throughout the country, including in Minnesota. *See* Compl. ¶ 160 ("Agri Stats has sent its reports to processors located in Minnesota in the broiler chicken, pork, and turkey industries"). Those processors, often at Agri Stats' recommendation, in turn used that information to raise prices and restrict output in national broiler chicken, pork, and turkey markets. *Id.* ¶ 161. This conduct occurred throughout the country and does not "strongly favor" adjudication by a court in Indiana (and certainly not Defendant's preferred transfer venue, Illinois, which is no differently situated than Minnesota).

*Second*, the "accessibility to records and documents" factor does not favor transfer. When "evidence can be transmitted electronically," "physical location [is] immaterial." *Luckey*, 2016 WL 1559569, at *4, 5; *see also QFO Labs, Inc. v. Best Buy Stores, L.P.*, 2018 WL 3966313, at *6 (D. Minn. Aug. 17, 2018) (finding that the location of documents "does not strongly favor either forum" because "most of the discovery will likely be electronic"). Nor does convenience argue in favor of transfer with respect to depositions, as those will likely take place where the witnesses are located regardless of where the case is heard. *See*

*Luckey*, 2016 WL 1559569, at *5 (denying motion to transfer venue where "[d]epositions . . . are likely to take place [where the witnesses are located]").[10]

In sum, Agri Stats has not met its burden to show "that the convenience of the [parties and] witnesses in this case weighs strongly in favor of transfer." *Newman*, 2010 WL 3926200 at *5.

## CONCLUSION

For the foregoing reasons, the Court should deny Agri Stats' motion to transfer.

Dated: November 29, 2023

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

ANN M. BILDTSEN
Attorney ID No. 0271494
First Assistant United States Attorney
Attorney for the United States Acting Under Authority Conferred by
28 U.S.C. § 515

/s/ Liles H. Repp
LILES H. REPP
Attorney ID No. 0400692
Assistant United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: (612) 664-5600
Fax: (612) 664-5788
Liles.Repp@usdoj.gov

---

[10] The final factor, "the applicability of each forum state's substantive law," also does not favor transfer, as Plaintiffs bring only federal Sherman Act claims. *Terra Int'l,* 119 F.3d at 696.

*/s/* Mark H.M. Sosnowsky
MARK H.M. SOSNOWSKY (*Pro Hac Vice*)
EUN-HA KIM
Senior Trial Counsel

WILLIAM M. FRIEDMAN (*Pro Hac Vice*)
JAMES H. CONGDON (*Pro Hac Vice*)
SILVIA J. DOMINGUEZ-REESE (*Pro Hac Vice*)
PETER A. NELSON (*Pro Hac Vice*)
DEVIN L. REDDING (*Pro Hac Vice*)
Trial Attorneys

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 812-4723
Facsimile: (202) 307-5802
Mark.Sosnowsky@usdoj.gov
Eun-Ha.Kim@usdoj.gov
William.Friedman2@usdoj.gov
James.Congdon@usdoj.gov
Silvia.Dominguez-Reese2@usdoj.gov
Peter.Nelson@usdoj.gov
Devin.Redding@usdoj.gov

*Attorneys for United States of America*

**FOR PLAINTIFF STATE OF MINNESOTA:**

KEITH ELLISON
Attorney General of Minnesota

*/s/* Katherine A. Moerke
JAMES CANADAY (No. 030234X)
Deputy Attorney General
KATHERINE A. MOERKE (No. 0312277)
ELIZABETH ODETTE (No. 0340698)
SARAH DOKTORI (No. 0403060)
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130

james.canaday@ag.state.mn.us
Telephone: (651) 757-1421
katherine.moerke@ag.state.mn.us
Telephone: (651) 757-1288
elizabeth.odette@ag.state.mn.us
Telephone: (651) 728-7208
sarah.doktori@ag.state.mn.us
Telephone: (651) 583-6694

*Attorneys for State of Minnesota and Local Counsel for States of California, North Carolina, and Tennessee*

**FOR PLAINTIFF STATE OF CALIFORNIA:**

ROB BONTA
Attorney General of California

/s/ Robert McNary
ROBERT MCNARY (*Pro Hac Vice*)
Deputy Attorney General
NICOLE GORDON (*Pro Hac Vice*)
Deputy Attorney General
JAMIE MILLER (*Pro Hac Vice*)
Supervising Deputy Attorney General
PAULA BLIZZARD (*Pro Hac Vice*)
Senior Assistant Attorney General
Office of the Attorney General
California Department of Justice
300 S. Spring St.
Los Angeles, California 90013
Telephone: (213) 269-6283
Robert.McNary@doj.ca.gov

*Attorneys for State of California*

**FOR PLAINTIFF STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General of North Carolina

/s/ Jonathan R. Marx
JASMINE MCGHEE (*Pro Hac Vice*)

20

Senior Deputy Attorney General
JONATHAN R. MARX (*Pro Hac Vice*)
Special Deputy Attorney General
KUNAL CHOKSI (*Pro Hac Vice*)
Special Deputy Attorney General
114 W. Edenton Street
Raleigh, NC 27603
Telephone: (919) 716-8611
jmarx@ncdoj.gov

*Attorneys for State of North Carolina*

**FOR PLAINTIFF STATE OF TENNESSEE:**

JONATHAN SKRMETTI
Attorney General of Tennessee

*/s/* Ethan Bowers
ETHAN BOWERS (*Pro Hac Vice*)
Assistant Attorney General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Ethan.Bowers@ag.tn.gov
Telephone: (615) 741-8091

*Attorneys for State of Tennessee*

**FOR PLAINTIFF STATE OF TEXAS:**

KEN PAXTON
Attorney General of Texas

*/s/* Trevor Young
BRENT WEBSTER (*Pro Hac Vice*)
First Assistant Attorney General
GRANT DORFMAN (*Pro Hac Vice*)
Deputy First Assistant Attorney General
JAMES LLOYD (*Pro Hac Vice*)
Deputy Attorney General for Civil Litigation; Chief, Antitrust Division
TREVOR YOUNG (*Pro Hac Vice*)

Deputy Chief, Antitrust Division
WILLIAM SHIEBER (*Pro Hac Vice*)
JONATHAN WOODWARD (*Pro Hac Vice*)
Assistant Attorneys General

Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Telephone: (512) 463-1710
Email: Trevor.Young@oag.texas.gov

*Attorneys for State of Texas*

**FOR PLAINTIFF STATE OF UTAH:**

SEAN D. REYES
Attorney General of Utah

*/s/* Marie W.L. Martin
MARIE W.L. MARTIN (*Pro Hac Vice*)
Assistant Attorney General

Utah Office of the Attorney General
350 N. State Street, Suite 230
Salt Lake City, UT 84114
Tel: (801) 366-0375
Fax: (801) 366-0378
Email: mwmartin@agutah.gov

*Attorneys for State of Utah*