# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>STATE OF MINNESOTA,<br>STATE OF CALIFORNIA,<br>STATE OF NORTH CAROLINA,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS, and<br>STATE OF UTAH,<br><br>       *Plaintiffs*,<br><br>   v.<br><br>AGRI STATS, INC.,<br><br>       *Defendant*. | Case No.: 0:23-cv-03009-JRT-JFD |

## DEFENDANT AGRI STATS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................ 2

   I.   THE BASIS FOR VENUE IN THIS DISTRICT IS WEAK ................................. 2

   II.  THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN
      DISTRICT OF ILLINOIS ............................................................................. 4

   III. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS
      CASE TO THE NORTHERN DISTRICT OF INDIANA .................................. 15

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Medicorp, Inc. v. Humana, Inc.*,
  445 F. Supp. 573 (E.D.P.A. 1977) ................................................................. 3

*In re Apple, Inc.*,
  602 F.3d 909 (8th Cir. 2010) .......................................................................... 14

*Associated Wholesale Grocers Inc. v. Koch Foods, Inc.*,
  No. 18-cv-02258-DDC-KGG (D. Kan. Sept 13, 2018) .................................. 10

*In re Broiler Chicken Antitrust Litig.*,
  1:16-cv-8637, 2023 WL 7220170 (N.D. Ill. June 30, 2023, amended
  Nov. 2, 2023) ..................................................................................... 2, 5, 6, 7

*In re Broiler Chicken Antitrust Litig.*,
  No. 1:16-cv-8637 (N.D. Ill.) ................................................................ *passim*

*Campos v. Ticketmaster Corp.*
  140 F.3d 1166 (8th Cir. 1998) ......................................................................... 3

*Camreta v. Greene*,
  563 U.S. 692 (2011) ......................................................................................... 6

*Chex Servs., Inc. v. iGames Ent., Inc.*,
  No. CIV. 04-1460(PAM/RLE), 2004 WL 1429828 (D. Minn. June 23,
  2004) .............................................................................................................. 13

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ........................................................................................... 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...................................................................................... 8, 9

*Connecticut v. Massachusetts*,
  282 U.S. 660 (1931) ......................................................................................... 9

*Continental Grain Co. v. The FBL–585*,
  364 U.S. 19 (1960) ........................................................................................... 5

*Cosm. Warriors Ltd. v. Abrahamson*,
  723 F. Supp. 2d 1102 (D. Minn. 2010) .......................................................... 16

*Farm Boy Co-Op and Feed Co. LLC, v. Red River Clothing, Inc.*,
No. 09-2936 ADM/JSM, 2010 WL 935747 (D. Minn. Mar. 12, 2010) ..................... 14

*FTC v. Accusearch, Inc.*,
570 F.3d 1187 (10th Cir. 2009) ................................................................. 8

*FTC v. Cephalon, Inc.*,
551 F. Supp. 2d 21 (D.D.C. 2008) ............................................................. 13

*FTC v. Graco Inc.*,
No. 11-CV-02239 RLW, 2012 WL 3584683 (D.D.C. Jan. 26, 2012)..................... 13

*FTC v. Illumina, Inc.*,
No. CV 21-873 (RC), 2021 WL 1546542 (D.D.C. Apr. 20, 2021) ........................... 13

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ...................................................................... 8

*FUL Inc. v. Unified School District No. 204*,
839 F. Supp. 1307 (N.D. Ill. 1993) ..................................................... 15, 16

*Gemini Investors III, L.P. v. RSG, Inc.*,
No. 08-5264 ADM/JJG, 2009 WL 776740 (D. Minn. Mar. 20, 2009)...................... 11

*Graff v. Qwest Commc'ns Corp.*,
33 F. Supp. 2d 1117 (D. Minn. 1999)........................................................ 14

*Harmon v. Kansas City*,
197 F.3d 321 (8th Cir. 1999) ..................................................................... 9

*Luckey v. Alside, Inc.*,
No. 15-2512, 2016 WL 1559569 (D. Minn. Apr. 18, 2016)........................................ 15

*McClamrock v. Eli Lilly & Co.*,
267 F. Supp. 2d 33 (D.D.C. 2003) ............................................................ 12

*Medtronic, Inc. v. Am. Optical Corp.*,
337 F. Supp. 490 (D. Minn. 1971)............................................................ 13

*In re Monies on Deposit in Accts. at Stearns Bank Nat'l Ass'n*,
No. CIV. 06-542 JRT/RLE, 2006 WL 3841518 (D. Minn. Dec. 29,
2006) ............................................................................................. 4, 11

*New York v. Facebook, Inc.*,
549 F. Supp. 3d 6 (D.D.C. 2021), *aff'd sub nom.*
*New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) ................................. 8

*Newman v. Stryker Sales Corp.*,
    No. 09-2866, 2010 WL 3926200 (D. Minn. Sept. 30, 2010).......................................10

*Omega Demolition Corp. v. Hays Grp., Inc.*,
    306 F.R.D. 225 (D. Minn. 2015)...............................................................................14

*PJ Food Serv., Inc. v. Agri Stats, Inc.*,
    No. 22-cv-07677 (E.D.N.Y. Dec. 16, 2022) ...............................................................10

*In re Pork Antitrust Litig.*,
    No. 0:18-cv-1776 (D. Minn.)...........................................................................*passim*

*Pragmatic Software Corp. v. Antrim Design Systems, Inc.*,
    No. 02–2595 (JRT/FL), 2003 WL 244804 (D. Minn. Jan. 28, 2003).........................11

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*,
    814 F.2d 358 (7th Cir. 1987) ......................................................................................6

*Rock v. Rathsburg Assocs., Inc.*,
    No. 21-2717, 2022 WL 4450418 (D. Minn. Sept. 23, 2022)....................................15

*Taylor v. Charter Med. Corp.*,
    162 F.3d 827 (5th Cir. 1998) ......................................................................................6

*Taylor v. Sturgell*,
    553 U.S. 880 (2003)....................................................................................................6

*Terra Int'l, Inc. v. Miss. Chem. Corp.*,
    119 F.3d 688 (8th Cir. 1997) .............................................................................4, 15

*In re Turkey Antitrust Litig.*,
    No. 1:19-cv-08318 (N.D. Ill.) ...................................................................................10

*United States v. Brown University*,
    772 F. Supp. 241 (E.D. Pa. 1991) ..............................................................................12

*United States v. Quicken Loans Inc.*,
    217 F. Supp. 3d 272 (D.D.C. 2016) ...........................................................................13

*United States v. Vision Quest Indus. Inc.*,
    No. 20-2365, 2021 WL 2143138 (D. Minn. May 26, 2021) ................................12, 13

*Voss v. Johnson & Johnson*,
    No. CIV 06-3728 JRT/AJB, 2008 WL 697474 (D. Minn. Mar. 12, 2008) ...........12, 13

*Woodke v. Dahm,*
   70 F.3d 983 (8th Cir. 1995) ........................................................................ 16

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.,*
   395 U.S. 100 (1969) .................................................................................... 8

**Statutes**

15 U.S.C. § 22 .............................................................................................. 3, 4

15 U.S.C. § 23 ................................................................................................ 16

28 U.S.C. § 1391 .......................................................................................... 3, 4

28 U.S.C. § 1407 ............................................................................................ 11

**Other Authorities**

Fed. R. Civ. P. 45(c)(1) .................................................................................. 16

15 Wright & Miller, *Federal Practice and Procedure* § 3854 (4th Ed. 2023) ................. 11

# INTRODUCTION

Plaintiffs oppose transfer—and seek to have this Court re-litigate an "information exchange" claim that the Northern District of Illinois already resolved in *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-8637 (N.D. Ill.) ("*Broilers*")—based on several false premises. Plaintiffs argue:

- This case is "different" than the case Judge Durkin already decided;

- The alleged "nationwide" unlawful information exchange agreement (which Judge Durkin rejected) has some special connection to Minnesota;

- Despite seeking a "do-over" of the ruling in another court, Plaintiffs' choice of forum is entitled to deference; and

- The parties might as well re-litigate in Minnesota the claim already resolved by Judge Durkin because Agri Stats is litigating *In re Pork Antitrust Litig.*, No. 0:18-cv-1776 (D. Minn.) ("*Pork*") here anyway.

None of these statements are correct. Instead:

- Plaintiffs muster only a footnote identifying two purportedly new allegations in their complaint, but even those supposedly novel allegations were before Judge Durkin in *Broilers*;

- That Agri Stats had certain customers in Minnesota *six years ago* (and that its bank's PO Box is located there) does not make Minnesota the epicenter of an information exchange agreement;

- Plaintiffs' choice of forum does not overcome two substantial interest of justice considerations: judicial economy and avoidance of inconsistent outcomes; and

- The *Pork* case is far less relevant to the venue analysis because *Pork* is years behind *Broilers* (which has been litigated through one trial with two further trials set for 2024), and Plaintiffs allege no case or controversy with respect to the pork processing reports that Agri Stats has not published for *years*.

Put simply, Plaintiffs ask the Court to redo seven years of litigation in the Northern District of Illinois—involving 150 million pages of document discovery, over 450

depositions, thousands of pages of expert reports, and 4,500 pages of summary judgment briefing and exhibits—by pretending that their information exchange claim is different than the identical information exchange claim already rejected in *Broilers*. While Plaintiffs' failure to identify any differences in their claim should be dispositive, Judge Durkin is best positioned to determine whether Plaintiffs' claims are somehow distinguishable from those he already rejected on summary judgment. *See In re Broiler Chicken Antitrust Litig.*, 1:16-cv-8637, 2023 WL 7220170 (N.D. Ill. June 30, 2023, amended Nov. 2, 2023) ("*Broilers*"). This case should be transferred to the Northern District of Illinois. Alternatively, the case should be transferred to the Northern District of Indiana, where Agri Stats and its employees are located and the reports giving rise to Plaintiffs' claims are (or were) created.

## ARGUMENT

Plaintiffs' basis for venue in Minneapolis is weak. The interest of justice in transferring to the Northern District of Illinois is strong, including both judicial economy and avoidance of inconsistent outcomes. Plaintiffs' preference to re-litigate in another forum an information exchange claim that already has been rejected by another court does not overcome these interests. Indeed, it proves the point. Should the Court reject Plaintiffs' and Agri Stats' position that venue should be determined by pending related litigation, then the Northern District of Indiana is the appropriate venue because it is more convenient for the witnesses and parties.

## I.   THE BASIS FOR VENUE IN THIS DISTRICT IS WEAK

Plaintiffs say that Agri Stats' arguments regarding venue in Minnesota are "unsupported" by the law, but they fail to grapple with that law. Plaintiffs do not dispute

that Agri Stats is an Indiana corporation headquartered in Indiana—the company does not "reside" in Minnesota and cannot be "found" there. The only conceivable basis for venue in this Court under either the general venue statute, 28 U.S.C. § 1391, or section 12 of the Clayton Act, 15 U.S.C. § 22, therefore, is whether Agri Stats "transacts business" in Minnesota. A company "transacts business" under section 12 if it engages in "[t]he practical, everyday business or commercial concept of doing or carrying on business of any *substantial character*." *Campos v. Ticketmaster Corp.* 140 F.3d 1166, 1173 (8th Cir. 1998) (quotation omitted) (emphasis added).

Plaintiffs' principal basis for venuing the case in Minnesota is that a small number of Agri Stats' *former* pork processing and turkey customers are located in this district. They cite to the presence of Hormel, Jennie-O, and Gold'n Plump Poultry[1] in Minnesota, Opp. at 6 (ECF No. 66), but even assuming the presence of a few current customers is sufficient to establish venue on a prospective relief claim, these companies have not subscribed to Agri Stats reports for *six years*. Mem. at 13 (ECF No. 44). They were not Agri Stats customers when Plaintiffs filed this case. *Cf Am. Medicorp, Inc. v. Humana, Inc*., 445 F. Supp. 573, 582 (E.D.P.A. 1977) (finding that "defendant [was] *currently* transacting business in the Eastern District of Pennsylvania within the meaning of Section 12") (emphasis added).

Plaintiffs' misleading allegation that Agri Stats uses a Minnesota address underscores the tenuous nature of Agri Stats' connection to the State. Opp. at 6 (ECF No.

---

[1] Plaintiffs also mention Pilgrim's, but the company is not referenced in the complaint paragraphs cited. Pilgrim's acquired Gold'n Plump Poultry in 2016.

66). Agri Stats' *bank* (Wells Fargo) requires Agri Stats' customers to mail payment to a Minnesota PO Box so the bank can electronically process Agri Stats' receivables. *See* Ex. A, Scholer Decl. ¶¶ 5-8. That an Agri Stats vendor has a PO Box In Minnesota does not mean that Agri Stats "transacts business" in the district. Adding Minnesota as a plaintiff—*after* Agri Stats informed the United States that it intended to seek transfer—similarly does not change the venue analysis. A *plaintiff's* location plays no role in venue under either 28 U.S.C. § 1391 or section 12 of the Clayton Act. The basis for venue in Minnesota is weak.[2]

## II.   THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF ILLINOIS

When evaluating transfer under Section 1404(a), courts must consider: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691, 693 (8th Cir. 1997). The first factor is at best a wash when comparing this district to the Northern District of Illinois. The second favors transfer, for it is more convenient for Agri Stats witnesses to appear in Chicago than Minneapolis. The third is the most substantial: "[t]he interest of justice factor is weighed very heavily" in the transfer analysis, including the substantial interest in judicial economy. *In re Monies on Deposit in Accts. at Stearns Bank Nat'l Ass'n*, No. CIV. 06-542 JRT/RLE, 2006 WL 3841518, at *2 (D. Minn. Dec. 29, 2006). That factor tilts decidedly in favor of transfer. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to

---

[2]    Agri Stats did not previously contest venue in Minnesota in *Pork* because it could not do so since, unlike here, other Minnesota companies were co-defendants in that action. *See* 28 U.S.C. § 1391(b)(3).

- 4 -

the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *See Continental Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960).

A more deserving case for transfer for judicial economy is difficult to conceive. *Broilers* involved a massive expenditure of party and judicial resources. Judge Durkin considered 4,500 pages of summary judgment briefing and exhibits on Agri Stats' summary judgment motion alone, based on a discovery record of *150 million* pages of documents, over *450* depositions, and thousands of pages of expert reports compiled over seven years of litigation. Judge Durkin issued a 90-page decision granting Agri Stats' motion, explaining that "Agri Stats reports did not reveal competitors' production and pricing data" and therefore could not support the same information exchange claim that Plaintiffs now bring in this Court. *Broilers*, 2023 WL 7220170, at *27-28. Another defendant, Sanderson Farms, proceeded to a six-week trial, and the jury found no conspiracy among chicken producers to use Agri Stats reports to restrict the output or raise the price of chicken. Plaintiffs waited to file a complaint asking this Court to re-litigate the same claim until over a *decade* after DOJ closed its prior investigation of Agri Stats, *seven years* after private plaintiffs filed *Broilers*, and several months after those private plaintiffs *lost* their case against Agri Stats. To redo Judge Durkin's work over the past seven years would squander the resources of this Court and the parties.[3] Plaintiffs nevertheless make

---

[3]     Plaintiffs incorrectly suggest that Agri Stats is arguing that "nonparty preclusion" prohibits Plaintiffs from bringing their claims. Opp. at 10. Agri Stats is instead arguing that *stare decisis*, the legal doctrine that serves as the backbone of our common law judicial system, requires Plaintiffs to identify how their claims differ from the claims decided on summary judgment in *Broilers*. Because their claim is no different, it should fail for the

several arguments to oppose transfer, none of which overcome the strong interest of justice in doing so.

**First**, Plaintiffs argue that their case differs from *Broilers*. Surprisingly, Plaintiffs argue that *Broilers* only involved a "*per se* unlawful output restriction conspiracy" and not a "information-sharing claim[]." Opp. at 8-9. That is wrong. The *Broilers* plaintiffs brought the exact same rule of reason information exchange claim that Plaintiffs bring here. *See Broilers*, End-User Consumer Plaintiffs' Fifth Amended Complaint ¶¶ 197-199 (ECF No. 3748) ("EUCP Compl.") ("defendants' agreement to exchange information violates the antitrust laws under a rule of reason analysis"). Judge Durkin granted summary judgment on that information exchange claim, with an entire "Rule of Reason" section in his opinion. *Broilers*, 2023 WL 7220170, at *27. Plaintiffs have not identified a single factual allegation in their Complaint differing from *Broilers*. They bury two purported examples in a footnote, but both factual allegations were part of the *Broilers* summary judgment record before Judge Durkin. Opp. at 9, n.5.[4] The first—Plaintiffs allegation that certain data in

---

same reasons. *See, e.g.*, *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358 (7th Cir. 1987). *Taylor v. Sturgell*, 553 U.S. 880 (2003), and *Camreta v. Greene*, 563 U.S. 692 (2011), which Plaintiffs cite, are inapposite because Agri Stats is *not* asserting that there is some rule of "nonparty preclusion" or that one district court's ruling is binding precedent on another district court.

[4]     This Court is permitted to "take judicial notice of a 'document filed in another court ... to establish the fact of such litigation and related filings.'" *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998) (internal citation omitted). Portions of the summary judgment record, including materials cited in this memorandum, were provisionally filed under seal in *Broilers*. At the time of this filing, the parties in *Broilers* are in the process of de-designating materials in the summary judgment record to be filed publicly on that docket. To the extent this Court is unable to access the cited materials and would like to review any portions of the record cited in this memorandum, Agri Stats can provide those materials to the Court consistent with the protective order in *Broilers*.

Agri Stats reports is "one week old," *id.*—was a repeated refrain of the *Broilers* plaintiffs. *See, e.g.*, *Broilers* EUCP Compl. ¶¶ 175-80 ("Agri Stats produced weekly reports . . ."). These weekly reports were before Judge Durkin on summary judgment.[5] He concluded that "Agri Stats information is generally 45 days old." *Broilers*, 2023 WL 7220170, at *27. The second—Plaintiffs allegation that Agri Stats conducts "consulting 'reviews,'" Opp. at 9, n.5,—was another fact the *Broilers* plaintiffs cited. In fact, *Broilers* plaintiffs  included in the summary judgment record numerous examples of Agri Stats' reviews with individual customers.[6] There is no difference between *Broilers* and this case. In any event, if any difference in the allegations exists at all (despite the inability of Plaintiffs or Agri Stats to identify any), Judge Durkin is best positioned to evaluate its legal significance.

**Second**, Plaintiffs argue that there is no benefit from transfer to the Northern District of Illinois because "this Court will have to resolve related claims regardless of where this case proceeds" since *Pork* is venued here and Plaintiffs' Complaint also seeks to enjoin pork processing reports. Opp. at 8. Plaintiffs are wrong again. As a threshold matter, there is no case or controversy with respect to Plaintiffs' pork or turkey claims because Agri Stats has not produced pork processing or turkey reports for four years. Plaintiffs seek only

---

[5]     Plaintiffs' Statement of Additional Undisputed Facts ("SOAUF") ¶ 5 (ECF No. 6237-1) (citing to a transcript discussing the weekly reports); ¶ 7 ("Agri Stats also provides some weekly reports to give subscribers more current information"); ¶ 13 ("Defendants received weekly and monthly reports…"); ¶ 27 ("Agri Stats disseminated a weekly report that showed the amount of chicken producers had frozen in their private freezers . . .").

[6]     Plaintiffs' Response to Agri Stats Statement of Material Facts ("SOMF") ¶ 4 (ECF No. 6237-2) (noting that "Agri Stats staff also visited chicken processors regularly"); Plaintiffs' SOAUF ¶ 15 (discussing Agri Stats' in-person quarterly meetings with customers); Ex. 1001 (ECF No. 6237-4) (B. Snyder Tr. at 163:5-9) ("We offer reviews as often as customers would like.").

injunctive relief, but Agri Stats has no pork processing or turkey reports to enjoin. This is not, as Plaintiffs spin it, a mere "mootness" issue in which Agri Stats voluntarily "paused" pork processing and turkey reports. *Id.* at 9. In stark contrast to *FTC v. Accusearch, Inc.*, 570 F.3d 1187 (10th Cir. 2009), on which Plaintiffs rely, Agri Stats' customers stopped buying pork processing and turkey reports, and supplying the data for them, *years* before this lawsuit was filed. Ex. A, Scholer Decl. ¶ 4. Agri Stats could not restart its reports even if it wanted to because it has no data to generate pork processing reports and no customers for those reports. *Id*; *cf. Accusearch*, 570 F.3d at 1201-02 (affirming injunction when defendant, which ceased selling telephone records four months prior to the lawsuit, could unilaterally resume selling the confidential information). Courts routinely reject injunction claims under such circumstances. *See, e.g.*, *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020) (refusing to enjoin conduct terminated "two years before the FTC filed its action"); *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 30 (D.D.C. 2021), *aff'd sub nom. New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) (dismissing complaint seeking injunction because conduct ceased two years before lawsuit).

Plaintiffs must demonstrate an "imminent" threat of a "concrete, particularized" future harm. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969) (a plaintiff must "demonstrate a significant threat of injury from an impending violation of the antitrust laws . . ."). They cannot rely on speculation or allegations regarding the information supposedly contained in pork processing and turkey reports (that no longer exist) to justify a forward-looking injunction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, (1983) ("'[P]ast

exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . .'") (citation omitted); *Harmon v. Kansas City*, 197 F.3d 321, 327 (8th Cir. 1999) (same).

Plaintiffs' only allegation about the future is that Agri Stats "want[s] to resume reporting in [the turkey and pork processing] industries once [the private] litigation concludes." Compl. ¶ 15 (ECF No. 1). But Agri Stats' putative desire to resume some undefined pork processing and turkey business says nothing about the potential for future harm. Agri Stats reports contain thousands of data metrics, and Plaintiffs have not alleged: (a) the contents of any hypothetical future Agri Stats pork processing and turkey reports; (b) that producers would disclose information for, or purchase, such reports; or (c) that such reports could or would be used to harm competition. *See Clapper*, 568 U.S. at 409, 414 n.5 (finding that "allegations of possible future injury are not sufficient" and "Plaintiffs cannot rely on speculation about the unfettered choices made by independent actors not before the court") (citations and quotations omitted). There is no justiciable controversy on the pork and turkey claims because they rest on a hypothetical future Agri Stats pork processing and turkey business that does not exist. *See Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("[Injunctions] will not be granted against something merely feared as liable to occur at some indefinite time in the future.").

Plaintiffs also argue that, regardless of the viability of their pork and turkey claims, this Court might as well re-litigate the *Broilers* information exchange claim because it is already considering the *Pork* information exchange claim. Opp. at 10-11. But it would make no sense for this Court to redo Judge Durkin's work on chicken just because the

Court is presiding over a different case concerning pork. The *Pork* claims before this Court all relate to damages for conduct that ended years ago. Those claims do not contemplate the *future* competitive effects of non-existent reports hypothetically produced under market conditions that are unknown. *Newman v. Stryker Sales Corp.*, No. 09-2866 (JRT/JJK), 2010 WL 3926200, at *6 (D. Minn. Sept. 30, 2010), cited by Plaintiffs, only reinforces Agri Stats' position because the Court there kept cases in the same industry ("pain pumps") together in Minnesota to promote judicial economy. *Id.*. The same judicial economy concerns even more strongly support transfer of Plaintiffs' claims—the chicken claim being the only live controversy—to the Northern District of Illinois. Moreover, there is no judicial economy gained from maintaining this case in Minnesota given that the *Pork* case is already in the expert discovery phase, but still many months (or even years) away from resolution on the merits.

**Third**, Plaintiffs invent a new rule that transfer to a jurisdiction considering a related case is only permitted when the parties in the related case are identical. Opp. at 11-12. They cite no authority for this categorical assertion because none exists. While that fact pattern certainly occurs, it is not a prerequisite; the interest of justice in judicial economy can be significant even when claims involving different plaintiffs (but entirely overlapping claims and factual allegations) are transferred to a common court. In fact, that is standard operating procedure across the *Broilers*, *Pork*, and *In re Turkey Antitrust Litig.*, No. 1:19-cv-08318 (N.D. Ill.) ("*Turkey*") cases. *See, e.g., Associated Wholesale Grocers Inc. v. Koch Foods, Inc*., No. 18-cv-02258-DDC-KGG, Mem. and Order, ECF No. 88 (D. Kan. Sept 13, 2018) (transferring a *Broilers* complaint from Kansas to Illinois); *PJ Food*

*Serv., Inc. v. Agri Stats, Inc.*, No. 22-cv-07677, Transfer Order, ECF No. 6 (E.D.N.Y. Dec. 16, 2022) (transferring a *Pork* complaint from New York to Minnesota through the JPML process). Indeed, were that not the case, there would be no need for the transfer procedures for multidistrict litigation, *see* 28 U.S.C. § 1407, because, by definition, the transfer occurs in cases involving different parties.

Plaintiffs are wrong that Agri Stats only cites cases that proceeded "simultaneously between common parties." Opp. at 8, 11. Even *Gemini Investors III, L.P. v. RSG, Inc.*, No. 08-5264 ADM/JJG, 2009 WL 776740, at *1 (D. Minn. Mar. 20, 2009), which Plaintiffs cite, granted transfer even though there was a two-year gap between the lawsuits and the parties were distinct. *See also In re Monies*, 2006 WL 3841518, at *2  (granting transfer when there was a year-and-a-half gap between the lawsuits and the parties were different). Plaintiffs also cite Wright & Miller, which accords with Agri Stats' position. *See* 15 Wright & Miller, *Federal Practice and Procedure* § 3854 (4th Ed. 2023) (noting that "many courts have transferred to a forum in which other actions arising from the same transaction or event, or which were otherwise related, were pending" and that "judicial economy also supports the transfer of cases to a court that has dealt with the same major issues in other cases") (collecting cases).[7]

---

[7]     Plaintiffs similarly mischaracterize the "prerequisite" for the first-to-file rule. That rule requires only "parallel" litigation. Even when "the two cases technically involve different parties," the doctrine can still apply. *Pragmatic Software Corp. v. Antrim Design Systems, Inc.*, No. 02–2595 (JRT/FL), 2003 WL 244804, at *3 (D. Minn. Jan. 28, 2003) (citation omitted).

**Fourth**, lacking any other basis to oppose transfer, Plaintiffs retreat to deference to a government enforcer's choice of venue. But any such deference has been a prudential principle at best and nothing like the unfettered variety Plaintiffs advocate. While "the government's choice of venue is still entitled to *some* deference [] that weight is lessened [] when the plaintiff is a government agency as opposed to 'a corporation or natural person' with a more 'personal interest' in the forum." *United States v. Vision Quest Indus. Inc*., No. 20-2365 (MJD/KMM), 2021 WL 2143138, at *5 (D. Minn. May 26, 2021) (emphasis added) (citation omitted).[8] What limited deference there may be is "greatly diminished when the activities have little, if any, connection with the chosen forum." *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 36 (D.D.C. 2003) (citation omitted). Here, Plaintiffs concede that Minnesota has no greater connection to the alleged conduct than any other state nationwide. Opp. at 8, 17. Other than belatedly adding Minnesota as a Plaintiff, nothing in the Amended Complaint is specific to *any* state, including Minnesota. Plaintiffs cite no authority for their proposition that there should be extra "deference afforded to home-state plaintiffs."[9] *Id.* at 7. Cases brought by government enforcers are routinely

---

[8]     Plaintiffs cite *United States v. Brown University*, 772 F. Supp. 241, 242 (E.D. Pa. 1991)—which states only that "plaintiffs' choice of forum is entitled to heightened respect"—for the point that the case supposedly "collect[s] cases" showing heightened deference to government enforcers, Opp. at 5, but none of the cases *Brown University* cites even involve government enforcers.

[9]     There can be no deference to a home-state plaintiff here. The United States sued in Minnesota in September 2023. Minnesota was not a party to the suit until November 2023. Minnesota did not choose the venue; the United States did. Plaintiffs are wrong that *Voss v. Johnson & Johnson* stands for the proposition that deference to a plaintiff's choice of forum is greater when a plaintiff resides in the selected forum. Opp at 7. Instead, that case held the converse: "courts afford *less* deference to the plaintiff's choice when the plaintiff

transferred when, as here, they lack a nexus to the government's chosen forum. *See, e.g.,* *United States v. Quicken Loans Inc.*, 217 F. Supp. 3d 272, 276 (D.D.C. 2016) (finding that the government's choice of venue should be afforded "little deference because there is an insubstantial nexus" between the chosen venue and factual allegations); *FTC v. Illumina, Inc.*, No. CV 21-873 (RC), 2021 WL 1546542, at *6 (D.D.C. Apr. 20, 2021) (transferring government action because "while D.C. residents may feel the anticompetitive effects of the merger, the nationwide impact makes this forum no different than any other").[10]

Fundamentally, Plaintiffs' choice of forum is entitled to little deference because "the interests of justice *must take precedence* over even the parties' choice of forum." *Chex Servs., Inc. v. iGames Ent., Inc.*, No. CIV. 04-1460(PAM/RLE), 2004 WL 1429828, at *3 (D. Minn. June 23, 2004). As discussed above, those interests are substantial here and decidedly favor transfer. A *risk* of inconsistent outcomes is not a mere possibility; Plaintiffs are *deliberately seeking* a different result from Judge Durkin's decision on the same information exchange claim. *Medtronic, Inc. v. Am. Optical Corp.*, 337 F. Supp. 490, 496 (D. Minn. 1971) ("There is a strong policy favoring the litigation of related claims in the

---

does *not* reside in the selected forum." *Voss v. Johnson & Johnson*, No. CIV 06-3728 JRT/AJB, 2008 WL 697474, at *2 (D. Minn. Mar. 12, 2008). That is precisely the situation here. The United States does not reside in Minnesota.

[10]    *See also Vision Quest Indus. Inc.*, 2021 WL 2143138, at *5 (transferring government action for alleged kickbacks from Minnesota to California); *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21 (D.D.C. 2008) (transferring government action from the District of Columbia to Pennsylvania, where private Sherman Act cases against the same defendant were pending); *FTC v. Graco Inc.*, No. 11-CV-02239 RLW, 2012 WL 3584683 (D.D.C. Jan. 26, 2012) (granting transfer of government action to Minnesota from the District of Columbia, which "ha[d] no meaningful connection to the parties or the subject matter of the controversy").

same tribunal in order that . . . inconsistent results can be avoided."); *see also Farm Boy Co-Op and Feed Co. LLC, v. Red River Clothing, Inc.*, No. 09-2936 ADM/JSM, 2010 WL 935747, at *3 (D. Minn. Mar. 12, 2010) (transferring because "judicial resources would be wasted and that there would be a potential for inconsistent results if the two actions were to proceed in different courts"); *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999) (transferring to avoid "the possibility of conflicting orders" by resolving "all claims in one forum"). Deference to a plaintiff's choice of forum is "negated" by such "impermissible forum shopping." *Omega Demolition Corp. v. Hays Grp., Inc.*, 306 F.R.D. 225, 230 n.4 (D. Minn. 2015); *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (no deference when plaintiff "chose the forum to take advantage of favorable law or to harass the defendant").

**Finally**, Plaintiffs incorrectly accuse Agri Stats of ignoring the "convenience" factors. Opp. at 14. But as discussed in its motion, the Northern District of Illinois is more convenient to Agri Stats (the only Defendant) and its employee witnesses, who are located in Fort Wayne, Indiana—about 150 miles or a three-hour drive from Chicago versus almost 600 miles and over a nine-hour drive to Minneapolis. While the Minnesota Attorney General's office is located in Minneapolis, the remainder of Plaintiffs litigating this case are based in Washington, D.C., North Carolina, California, Tennessee, Texas, and Utah, most of which are closer to the Northern District of Illinois than this district. Other factors beyond the convenience and cost to the parties and witnesses do not "weigh against

transfer" as Plaintiffs claim, *id.* at 13; in fact, they tilt in Agri Stats' direction.[11] Neither construction of Minnesota law nor allegedly unique conduct occurring in Minnesota are at issue here. As a result, the substantial interest of justice in judicial economy and avoiding inconsistent outcomes weighs heavily in favor of transfer to the Northern District of Illinois.

## III.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF INDIANA

If the case is not transferred to the Northern District of Illinois, then, in the alternative, the Court should transfer the case to the Northern District of Indiana, where Agri Stats and its approximately 70 employees are located and the reports giving rise to Plaintiffs' claims are created. Plaintiffs do not dispute these facts nor seriously dispute that Indiana would be a superior venue. Instead, they make the bold claim that "No Other District Is More Convenient for the Parties and Witnesses than Minnesota," *id.* at 14, based on the incorrect argument that Courts may only consider the convenience of *non-party* witnesses in the transfer analysis, *id*. at 15.

Plaintiffs cite *Luckey v. Alside, Inc.*, No. 15-2512 (JRT/JSM), 2016 WL 1559569, at *5 (D. Minn. Apr. 18, 2016) and *Rock v. Rathsburg Assocs., Inc.*, No. 21-2717 (JFT/BRT), 2022 WL 4450418, at *2 (D. Minn. Sept. 23, 2022), for that proposition, both of which in turn rely on *FUL Inc. v. Unified School District No. 204*, 839 F. Supp. 1307,

---

[11]     Agri Stats agrees with Plaintiffs that other "interest of justice" factors, such as "each party's ability to enforce a judgment," "obstacles to a fair trial," "conflicts of law issues," and "the advantages of having a local court determine questions of local law" are neutral and do not dictate the appropriate venue here. *Terra*, 119 F.3d at 696.

1311 (N.D. Ill. 1993). But the cited discussion in *FUL* related not to convenience but to "the availability of compulsory process" to compel witness testimony, which is not a concern here. *Id*. at 1311-12. *FUL* contained a separate treatment of the convenience of the parties and witnesses that was not limited to consideration of non-party witnesses. *Id*. In fact, courts routinely consider the convenience of *party* witnesses in weighing transfer. *See e.g., Cosm. Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1106 (D. Minn. 2010) (holding that "the convenience-of-parties factor favors transfer" where "it appears that [plaintiffs] will be inconvenienced no matter where this litigation is venued, while Defendants will suffer far less inconvenience" if transfer is granted); *see also Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff" in evaluating venue.). The fact that *all* relevant party witnesses would need to travel at least *600 miles* to Plaintiffs' chosen venue supports transfer to Indiana. Plaintiffs fail to identify any inconvenience that they, or any non-party witnesses, may face should this case be transferred.[12] As a result, convenience weighs in favor of transfer. Moreover, because the reports challenged by Plaintiffs are created in, and distributed from, Indiana. Indiana also has a far stronger connection to facts giving rise to Plaintiffs' claims. Should the Court decline to transfer the case to the Northern District of Illinois—where the interest of justice factors are overwhelming—the Court should nevertheless transfer to the Northern District of Indiana.

---

[12]     Non-party witnesses cannot be hailed into Minnesota in any event unless they live within the state or within 100 miles of the courthouse, *see* Fed. R. Civ. P. 45(c)(1), or, if neither of those criteria are satisfied, the United States establishes cause to compel their attendance.  15 U.S.C. § 23.

## CONCLUSION

For the foregoing reasons, Agri Stats respectfully requests that the Court transfer this action to the Northern District of Illinois or, in the alternative, to the Northern District of Indiana.

Dated: December 13, 2023          Respectfully submitted,

*/s/ Peter H. Walsh*

Peter H Walsh (MN# 0388672)
HOGAN LOVELLS US LLP
80 South 8th Street Ste 1225
Minneapolis, MN 55402
Tel: (612) 402-3017
Fax: (612) 339-5167
Email: peter.walsh@hoganlovells.com

William L. Monts III (admitted *pro hac vice* )
Justin W. Bernick (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant Agri Stats, Inc.*