# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>AGRI STATS, INC.,<br><br>*Defendant*. | Case No.: 0:23-cv-03009-JRT-JFD |

## DEFENDANT AGRI STATS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

    I.     PLAINTIFFS' PORK AND TURKEY CLAIMS ALLEGE NO ARTICLE III CASE OR CONTROVERSY ................................................. 2

    II.    THE PORK AND TURKEY COUNTS DO NOT ALLEGE CLAIMS FOR INJUNCTIVE RELIEF UNDER SECTION 4 OF THE SHERMAN ACT OR SECTION 16 OF THE CLAYTON ACT. ................................................................................................... 6

    III.   THE PLAINTIFF STATES LACK ANTITRUST STANDING TO BRING THE PORK AND TURKEY CLAIMS. .......................................... 7

    IV.   *STARE DECISIS* PERMITS THIS COURT TO DISMISS PLAINTIFFS' ALREADY DECIDED CHICKEN CLAIM. ...................... 8

        A.    Plaintiffs' Allegations Are the Same as Those Adjudicated in *Broilers* ............................................................................................ 11

        B.    Additional Considerations Support Dismissal of the Chicken Claim under the Doctrine of *Stare Decisis*. ..................................... 13

CONCLUSION ................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Bowater Inc.*,
    313 F.3d 615 (1st Cir. 2002) ............................................................................. 6

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ............................................................................................. 2

*American Forest & Paper Association v. EPA*,
    137 F.3d 291 (5th Cir. 1998) ............................................................................. 6

*Associated Gen. Contractors of Ca., Inc. v. Ca. State Council of*
    *Carpenters*,
    459 U.S. 519 (1983) ......................................................................................... 10

*In re Brand Name Prescription Drugs Antitrust Litigation*,
    2000 WL 204061 (N.D. Ill. Feb. 10, 2000) ............................................... 10, 11

*In re Broiler Chicken Antitrust Litigation*,
    2023 WL 7220170 (E.D. Ill. Nov. 2, 2023) ................................................. 8, 12

*Cath. Mut. Relief Society of Am. v. Arrowood Indem. Co.*,
    334 F. Supp. 3d 986 (D. Minn. 2018) ................................................................ 3

*City of Kennett v. EPA*,
    887 F.3d 424 (8th Cir. 2018) ............................................................................. 3

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ......................................................................................... 5, 6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ....................................................................................... 3, 5

*Connecticut v. Massachusetts*,
    282 U.S. 660 (1931) ........................................................................................... 6

*Ctr. for Special Needs Tr. Admin., Inc. v. Olson*,
    676 F.3d 688 (8th Cir. 2012) ............................................................................. 3

*Fair Isaac Corp. v. Experian Info. Sols. Inc.*,
    645 F. Supp. 2d 734 (D. Minn. 2009) ................................................................ 7

*Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 ................................................................................................. 3

*FTC v. Accusearch*,
  570 F.3d 1187 (10th Cir. 2009) ................................................................... 6

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ....................................................................... 7

*Gould v. Bowyer*,
  11 F.3d 82 (7th Cir. 1993) ............................................................................ 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................... 4

*Moragne v. States Marine Lines, Inc.*,
  398 U.S. 375 (1970) ...................................................................................... 8

*New York v. Facebook, Inc.*,
  549 F. Supp. 3d 6 (D.D.C. 2021), *aff'd sub nom.*
  *New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) ...................... 4, 5, 7

*Parents Involved in Community Schools v. Seattle School District No. 1*,
  551 U.S. 701 (2007) ...................................................................................... 6

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*,
  814 F.2d 358 (1987) (Easterbrook, J.) ..................................................... 9, 10

*Reid v. BCBSM, Inc.*,
  787 F.3d 892 (8th Cir. 2015) ....................................................................... 9

*Sam Fox Publ'g Co. v. United States*,
  366 U.S. 683 (1961) ...................................................................................... 9

*Sheely v. MRI Radiology Network, P.A.*,
  505 F.3d 1173 (11th Cir. 2007) ................................................................... 6

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................................ 3

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ...................................................................................... 3

*United States v. Borden*
  347 U.S. 514 (1954) ...................................................................................... 9

*United States v. Parke, Davis & Co.*,
  362 U.S. 29 (1960) ................................................................................................ 3

*United States v. Penn*,
  No. 20-cr-00152-PAB, ECF No. 1156 ............................................................... 1, 14

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953) ................................................................................................ 3

*United States v. West Virginia*,
  295 U.S. 463 (1935) ................................................................................................ 2

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  395 U.S. 100 (1969) ................................................................................................ 7

**Statutes**

Clayton Act ................................................................................................................. 6

Sherman Act ................................................................................................................ 6

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ...................................................................... 8

# INTRODUCTION

Plaintiffs' Opposition ignores that the United States closed its investigation of Agri Stats a decade ago without action. It also ignores that just two years ago the same Antitrust Division affirmatively argued to a jury that Agri Stats reports "cannot be used" to inflate prices. *United States v. Penn*, No. 20-cr-00152-PAB, ECF No. 1156, Trial Tr. Day 24, 4788:5-9 (D. Colo. Dec. 8, 2021) ("*Penn*"). Finally, it ignores that Judge Durkin rejected the same information exchange claim Plaintiffs bring here based on a massive summary judgment record *In re Broiler Chicken Antitrust Litigation* ("*Broilers*"). Plaintiffs ask this Court to pretend that none of this happened. The law does not permit such willful blindness.[1]

*First*, Plaintiffs' pork and turkey claims fail because Agri Stats pork and turkey reports stopped four years ago, and Agri Stats cannot resume them. There is no pork or turkey injunction claim for this Court to adjudicate.

*Second*, Judge Durkin already determined that Plaintiffs' chicken claim does not raise a triable issue on the evidence alleged in Plaintiffs' Complaint. The doctrine of *stare decisis* allows this Court to require Plaintiffs to explain exactly how this case differs from *Broilers* before burdening the Court and a small company with repetitive protracted litigation. Plaintiffs' Complaint does not do that because it cannot. Plaintiffs' claims should be dismissed.

---

[1]     Plaintiffs suggest that Agri Stats did not satisfy its meet-and-confer obligations before filing its motion. *See* Opp. at 2 n.1. Agri Stats has met its obligations under the Local Rules, and even the United States has conceded that Agri Stats' position would not have led it to withdraw its claim.

- 1 -

**ARGUMENT**

**I.    PLAINTIFFS' PORK AND TURKEY CLAIMS ALLEGE NO ARTICLE III CASE OR CONTROVERSY.**

Plaintiffs attempt to recast Agri Stats' argument that no justiciable case or controversy exists on the pork and turkey claims as a question of mootness. Opp. at 12. Plaintiffs are wrong.[2] A case becomes moot when it *loses* its live-controversy character during the proceedings. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) ("[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.") (quotations omitted). Here, no case or controversy exists at the outset. Agri Stats stopped producing the alleged pork and turkey reports four years ago, and it does not have the data or customers necessary to restart them.

Plaintiffs also incorrectly invoke the "voluntary cessation" doctrine, which prevents a defendant from evading suit by unilaterally changing its behavior to secure dismissal, and then subsequently repeating the conduct. *Already, LLC*, 568 U.S. at 91. Plaintiffs thus argue that the burden is on *Agri Stats* to prove that "it is absolutely clear that the allegedly wrongful behavior could not be expected to recur." Opp. at 13 (quotation omitted). Plaintiffs are wrong on both the law and facts.

---

[2]    Plaintiffs begin with the "Hail Mary" that government entities do not need to allege a justiciable controversy, Opp. at 11-12, but cite no authority for this proposition. They then incorrectly accuse Agri Stats of failing to cite a single case dismissing a government enforcement action for lack of justiciability. Opp. at 12. Agri Stats cited several. *See* Mot. at 12-13 (discussing two FTC cases dismissed for lack of justiciability); *see also United States v. West Virginia*, 295 U.S. 463, 473-74 (1935) (dismissing a claim brought by the United States for failure to allege a case or controversy).

Legally, when alleged conduct ceases before an injunction suit, the burden is on the

*plaintiff* to show future harm that is "concrete, particularized," and "certainly impending"

under Article III's case or controversy requirement. *Clapper v. Amnesty Int'l USA*, 568

U.S. 398, 409 (2013). The Supreme Court has explained why Plaintiffs' invocation of

"voluntary cessation" is not sufficient to carry their justiciability burden:

> The United States . . . argues that the injunctive relief does constitute
> remediation because 'there is a presumption of [future] injury when the
> defendant has voluntarily ceased its illegal activity in response to litigation,'
> even if that occurs before a complaint is filed . . . . This makes a sword out
> of a shield. The 'presumption' the Government refers to has been applied to
> refute the assertion of mootness by a defendant who, when sued in a
> complaint that alleges present or threatened injury, ceases the complained-of
> activity . . . . *It is an immense and unacceptable stretch to call the
> presumption into service as a substitute for the allegation of present or
> threatened injury upon which initial standing must be based.*

*Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (quoting *Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (emphasis added)).[3] Even the

authorities Plaintiffs cite acknowledge that *they* must show imminent injury to competition

from resumed pork and turkey reports. Opp. at 13 (citing *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 158 (2014)) (Plaintiff must show "actual or imminent, not

conjectural or hypothetical" injury.) (quotation omitted); *City of Kennett v. EPA*, 887 F.3d

---

[3]     Plaintiffs rely on *United States v. Parke, Davis & Co.*, 362 U.S. 29 (1960), *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953), *Ctr. for Special Needs Tr. Admin., Inc. v. Olson*, 676 F.3d 688 (8th Cir. 2012), and *Cath. Mut. Relief Society of Am. v. Arrowood Indem. Co.*, 334 F. Supp. 3d 986 (D. Minn. 2018), but none impose a different standard for justiciability than *Laidlaw*. 528 U.S. at 190 ("By contrast, in a lawsuit brought to force compliance, it is the plaintiff's burden to establish [a justiciable controversy] by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending.") (citation omitted).

424, 431 (8th Cir. 2018) ("[P]laintiff must demonstrate that the threatened injury is certainly impending . . . .") (quotation omitted).

Factually, Plaintiffs cite various documents supposedly showing that Agri Stats desires to restart its pork and turkey reports, and suggest that Agri Stats could simply lift the "pause" on the reports at any time. Opp. at 16. But Agri Stats stopped the pork and turkey reports four years ago because it does not have the data for the reports or customers to buy them. Scholer Decl. ¶¶ 4-7. It *cannot* restart the reports. Plaintiffs say that "Agri Stats has continued to engage with processors . . . about resuming those reports," Opp. at 16, but they cite meeting minutes from *four years ago* recording an Agri Stats executive's expressed "optimis[m]" about turkey reports. The issue is not whether Agri Stats *desires* to resume the pork and turkey reports; the issue is whether Plaintiffs have shown that Agri Stats will cause imminent harm to competition by resuming the now-defunct reports. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."); *see also New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 46 (D.D.C. 2021), *aff'd sub nom. New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) (requiring plaintiffs to "plead[] risk that such [anticompetitive] scheme will imminently recur"). Plaintiffs have not carried their burden.

Plaintiffs' collection of exhibits from 2019 and 2020 show nothing more than purported desire to resume pork and turkey reports years ago. *See* Friedman Decl. Exs. 3-10, ECF 90-2 through 90-7, 91, 91-1. Plaintiffs offer no evidence that "contradicts" Mr.

Scholer's declaration and shows that Agri Stats will imminently resume the reports. Opp. at 17. Instead, Plaintiffs just *assume* that pork and turkey producers will supply the necessary data and purchase the reports. *Id*. at 16. But Plaintiffs may not rely on "speculation about the unfettered choices made by independent actors not before the court." *Clapper*, 568 U.S. at 414 n.5 (quotation omitted). Plaintiffs also argue the Court should assume harm to competition because *any* participation by Agri Stats in the pork and turkey industries is supposedly a "related practice" that the Court could enjoin. Opp. at 16 n.12. But Plaintiffs have alleged nothing about what problematic data elements hypothetical future Agri Stats pork and turkey reports might contain and how those data elements would harm competition under future market conditions. *Clapper*, 568 U.S. at 409 ("Allegations of possible future injury" are not sufficient.) (quotation omitted); *Facebook*, 549 F. Supp. 3d at 30 ("It is the States' burden to substantiate the claim for injunctive relief by providing proof . . . that the harm . . . is likely to occur again.") (quotation omitted). Plaintiffs have made no showing that hypothetical future pork and turkey reports could constitute an imminent and concrete threat of future harm to competition.[4]

Lacking evidence of *future* harm, Plaintiffs argue that a justiciable controversy is "more easily established" when defendants engaged in the challenged conduct in the *past*. Opp. at 14. But the Supreme Court has cautioned that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Los*

---

[4]     Relatedly, Plaintiffs contend that they are asking this Court to "dissipate" the purported effects of Agri Stats' shuttered pork and turkey reports. *See* Opp. at 18. But no pork or turkey producer is before this Court. How this Court can order parties who are not before it to "dissipate" the effects of information received four years ago is a mystery.

*Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation omitted). No authority Plaintiffs cite relieves them of the burden of pleading imminent future harm.[5] Plaintiffs' pork and turkey claims should be dismissed.

## II.   THE PORK AND TURKEY COUNTS DO NOT ALLEGE CLAIMS FOR INJUNCTIVE RELIEF UNDER SECTION 4 OF THE SHERMAN ACT OR SECTION 16 OF THE CLAYTON ACT.

Plaintiffs' pork and turkey claims fail for the independent reason that neither the Sherman nor Clayton Act authorizes an injunction against reports that do not exist and therefore pose no imminent threat to competition. *See Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("[Injunctions] will not be granted against something merely feared as liable to occur at some indefinite time in the future."). Plaintiffs rely on *FTC v. Accusearch*, 570 F.3d 1187, 1201 (10th Cir. 2009), but the case is distinguishable for the two reasons that Plaintiffs reject out of hand. *First*, Accusearch could have resumed operating its website by simply paying researchers to gather the information. *Id.* at 1191. Here, Agri Stats cannot restart its reports because the necessary data is in the possession of pork and turkey producers who will not provide it. *Second*, Accusearch stopped voluntarily four months before the FTC sued. But Agri Stats stopped its pork and turkey reports over *four years ago* because it could not produce them. Courts routinely reject injunction claims

---

[5]     *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007), *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007), and *Adams v. Bowater Inc.*, 313 F.3d 615 (1st Cir. 2002), all turn on the voluntary cessation doctrine, which is inapplicable. *Am. Forest & Paper Ass'n v. EPA*, 137 F.3d 291, 296 (5th Cir. 1998), held that plaintiffs' injury was "imminent" because the EPA retained unilateral authority to reject applications whereas Agri Stats lacks the ability to promulgate pork and turkey reports.

in analogous circumstances. *See, e.g.*, *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020) (conduct terminated "two years before the FTC filed its action"); *Facebook*, 549 F. Supp. at 30 (dismissing injunctive claim because conduct ceased two years before lawsuit).[6] Plaintiffs have failed to show the "significant threat of injury from an impending violation of the antitrust laws" necessary to obtain injunctive relief. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969).

## III. THE PLAINTIFF STATES LACK ANTITRUST STANDING TO BRING THE PORK AND TURKEY CLAIMS.

The Plaintiff States assert that they have the authority to "seek prospective injunctive relief." Opp. at 20. That is true enough in the abstract, but they must plead *actual facts* showing antitrust injury to state a claim. The complaint paragraphs the Plaintiff States cite allege no such facts, instead making only the conclusory assertion—with no factual support—that Agri Stats' conduct has harmed "Minnesota, as well as California, North Carolina, Tennessee, Texas, and Utah." Compl. ¶ 160. The Complaint does not even attempt to explain how unique state interests are affected, and as explained above, no "real and immediate risk" of such harm exists. *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 645 F. Supp. 2d 734, 754 (D. Minn. 2009). The Plaintiff States' claims should be dismissed.

---

[6]     While Plaintiffs try to distinguish *Qualcomm* and *Facebook*, Opp. at 20 n.16, the time between cessation of the alleged unlawful conduct and the filing of the complaint was determinative in both cases. *See Qualcomm*, 969 F.3d at 1005; *Facebook*, 549 F. Supp. 3d at 30.

## IV. *STARE DECISIS* PERMITS THIS COURT TO DISMISS PLAINTIFFS' ALREADY DECIDED CHICKEN CLAIM.

Before Plaintiffs subject this Court, and Agri Stats, to a burdensome replay of *Broilers*, the doctrine of *stare decisis* permits this Court to demand that Plaintiffs explain how their information exchange theory differs from that already held not to raise a triable issue. Because Plaintiffs have not done so, their chicken claim should be dismissed.

*Stare decisis* is "[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation." Black's Law Dictionary (11th ed. 2019). The goal is to "maintain[] public faith in the judiciary as a source of impersonal and reasoned judgments" and "fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case." *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403 (1970). Agri Stats' argument is simple: Plaintiffs have not alleged anything in support of their chicken claim that was not already examined and rejected in *Broilers*. There, based on a discovery record of 150 million pages of documents, over 450 depositions, and 4,500 pages of summary judgment briefing and exhibits, Judge Durkin held in a 90-page opinion that there was no triable issue of fact on the same information exchange theory Plaintiffs allege here because, *inter alia*, "Agri Stats reports do not reveal competitors' production and pricing data." *Broilers*, 2023 WL 7220170, at *27-28. This Court should not ignore that reality. Instead, *stare decisis* permits this Court to avoid the "dreary" replay of seven years of litigation and to require Plaintiffs to come forward with allegations showing that their case will have a different outcome than

*Broilers*. *See Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 367-68 (1987) (Easterbrook, J.).

As with their attempt to recast Agri Stats' pork and turkey argument as a mootness argument, Plaintiffs try to recast Agri Stats' *stare decisis* argument as a preclusion argument, Opp. at 21, even though Agri Stats agrees that the strict preclusion of *res judicata* and collateral estoppel do not apply here. Mot. at 3. Nevertheless, Plaintiffs argue that "*stare decisis* does not apply" by attacking this preclusion strawman. Opp. at 21. Plaintiffs rely principally on *Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 n.2 (8th Cir. 2015),which parrots *Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir. 1993) in a footnote. The *Reid* footnote merely states that a district court decision does not bind another district court. *Reid*, 787 F.3d at 895 n.2. Setting aside that the cited *Reid* footnote is dicta, Agri Stats has never disputed this point.[7]

As *Premier Electrical* recognizes, however, "[p]reclusion is not an all-or-nothing matter; there are degrees," and "[t]he doctrine of *stare decisis* supplies some of the lesser degrees," even where strict rules of preclusion do not apply. *Premier Elec.*, 814 F.2d at 367. Indeed, "only the gravest reasons" should lead a court to a different outcome when

---

[7]     Plaintiffs also cite *United States v. Borden* 347 U.S. 514, 519 (1954), and *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 686-87 (1961), but neither mentions *stare decisis*. Unlike here, in neither case was the government attempting to relitigate claims already determined to raise no issue of triable fact. *Borden* addressed whether a settlement in earlier private litigation precluded a government action seeking to enjoin the same conduct. *Borden*, 347 U.S. at 519. *Sam Fox* involved an appellant attempting to intervene in a government action seeking to modify a consent decree. *Sam Fox,* 366 U.S. at 686-87.

"two courts are dealing with the same set of facts," creating a "strong presumption" in favor of the prior disposition. *Id*. at 368.

Plaintiffs admit that *Premier Electrical* recognizes such a presumption, contending only that the case does not automatically "bar" future claims. Opp. at 22-23. But, even accepting that contention *arguendo*, Plaintiffs give *stare decisis* short shrift by equating it to mere persuasive authority. *Id*. at 23. The "strong presumption" exists precisely because the prior disposition is on the "same set of facts." *Premier Elec.*, 814 F.2d at 367-68. Applying *stare decisis* in such a situation preserves "judicial economy" and avoids exposing parties to conflicting obligations. *Id*. The doctrine gives this Court authority to require Plaintiffs to plead how their facts differ from *Broilers* before undertaking the burden of readjudicating the same claim previously held to raise no triable issue. *See Associated Gen. Contractors of Ca., Inc. v. Ca. State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983) (in antitrust cases "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed"). As discussed below, because Plaintiffs bring the same information exchange claim based on the exact same facts, *stare decisis* is at its apex, and dismissal based on Judge Durkin's prior ruling is appropriate.

Plaintiffs retreat to calling *Premier Electrical*'s discussion of *stare decisis* dicta, relying on an unpublished opinion in *In re Brand Name Prescription Drugs Antitrust Litigation*, 2000 WL 204061, at *4 (N.D. Ill. Feb. 10, 2000). But *Prescription Drugs* offers no refuge for two reasons. First, its claim of dicta is wrong; *Premier Electrical* established a framework for the application of *stare decisis* and remanded to the trial court to apply it.

Second, *Prescription Drugs* applied the same analysis that Agri Stats advocates here, holding that *stare decisis* ensures that "twin factual scenarios will receive equivalent treatment." *Id*. at *5. The court reviewed the evidence in the subsequent case and noted that it "may not concern the same set of facts or evidence" as the initial case, and therefore denied defendants' efforts to use a prior trial victory to obtain reconsideration of a previously denied summary judgment motion. *Id.* The law is clear: unless Plaintiffs come forward with a different set of facts from those that Judge Durkin already determined raise no triable issue, *stare decisis* counsels dismissal.

A. **Plaintiffs' Allegations Are the Same as Those Adjudicated in *Broilers*.**

Plaintiffs brazenly assert that *Broilers* "is not relevant or persuasive authority" because they supposedly have made "detailed factual allegations . . . that directly address what the *Broilers* court found lacking." Opp. at 23. But even a cursory review of the single paragraph Plaintiffs devote to distinguishing *Broilers* shows that Plaintiffs have only parroted the *Broilers* summary judgment record.

*First*, Plaintiffs argue they have alleged examples of processors using Agri Stats reports to coordinate on price. Opp. at 23-24 (citing Compl. ¶¶ 54-59, 62). But the allegations in paragraphs 54 through 59 regarding Tyson Foods and Sanderson Farms repeat those made by the *Broilers* plaintiffs,[8] who alleged that Agri Stats Sales reports "provide competitors with current information on prices" and submitted an expert report specifically analyzing Plaintiffs' Tyson Foods and Sanderson Farms examples. *See*

---

[8]     The Cargill example related to turkey in paragraph 62 is not relevant to Agri Stats' *stare decisis* argument regarding Plaintiffs' chicken claim.

*Broilers* EUCP Compl., ECF 3748 ¶ 159; ECF 6226-7, Plaintiffs' Ex. 14 ¶¶ 137-139, 144-145 (identifying the exact same examples and documents that Plaintiffs cite in their allegations). Judge Durkin reviewed these same allegations and rejected Plaintiffs' arguments, concluding that Agri Stats' reports "only compare[] the producer's data to market averages" and "each producer received a report of its own [sales] transactions, but not those of its competitors." *Broilers*, 2023 WL 7220170, at *28.

*Second*, Plaintiffs claim to have alleged facts supposedly showing that Agri Stats reports identify competitor output. Opp. at 24 (citing Compl. ¶¶ 6, 41-47, 98-99). Plaintiffs are wrong; no allegations in the Complaint identify any report showing individual competitor output. Regardless, the *Broilers* summary judgment record included the evidence on which Plaintiffs rely. Complaint paragraphs 41-47 summarize Agri Stats report information on breeder chick placement metrics. The *Broilers* plaintiffs made identical claims regarding those reports, and their experts opined that the same chick placement metrics were proxies for competitor output. *See Broilers* DPP Compl., ECF 3935 ¶ 153; ECF 6226-7, Plaintiffs' Ex. 14 ¶ 100. Judge Durkin reviewed that evidence as well and concluded that Agri Stats reports "do not communicate production." *Broilers*, 2023 WL 7220170, at *25-26. Complaint paragraphs 6 and 47 are excerpts from a Sanderson Farms earnings call in which Joe Sanderson, the company's chief executive, purportedly relied upon Agri Stats reports for pullet placement information. Mr. Sanderson clarified in his deposition that the information came from publicly available USDA data. That fact was also before Judge Durkin. *See Broilers* ECF 6229, Plaintiffs Ex. 307 (Sanderson-0002633942); ECF 5993-9, Sanderson Ex. 4 at 545:12-546:19. Finally,

Complaint paragraphs 98 and 99 summarize a supposed interaction between Agri Stats and turkey producer Cargill that is of no relevance to Agri Stats' *stare decisis* arguments on Plaintiffs' chicken claim.

Plaintiffs' Opposition does not identify a single fact that was not in the massive summary judgment record that Judge Durkin considered in *Broilers*,[9] and therefore *stare decisis* allows the Court to dismiss Plaintiffs' chicken claim and reduce the burden on the parties and the Court.

**B.      Additional Considerations Support Dismissal of the Chicken Claim under the Doctrine of *Stare Decisis*.**

Plaintiffs never explain why this Court should ignore the additional considerations Agri Stats raised. The *Broilers* jury heard repeatedly that Agri Stats was a critical "tool for supply discipline" and facilitated an output reduction conspiracy. *Broilers,* Trial Tr. Volume 5A, 672:11-12 (N.D. Ill. Sept. 18, 2023). The jury roundly rejected the argument, *Broilers* ECF 7015 (verdict form), and Plaintiffs offer no reason why this additional development makes the *Broilers* summary judgment opinion less persuasive.

Nor can the United States reconcile its prior investigation of Agri Stats, which it closed a decade ago after taking no action. *See* ECF 44-3 (letter from DOJ to Agri Stats closing prior investigation). Agri Stats' reports have not materially changed since the Antitrust Division closed that investigation. Transfer Decl. ¶ 5. Plaintiffs do not allege otherwise.

---

[9]      Any questions about the overlap between Plaintiffs' chicken claim and that in *Broilers* counsel transferring this matter to the Northern District of Illinois. *See* Agri Stats' Transfer Memorandum, ECF 44.

Finally, the United States' statements in *Penn* are damning. The United States told a criminal jury that Agri Stats and EMI "don't even tell you your competitors' current pricing for a customer. They are much more higher [sic] level than that. And they cannot be used to figure out this kind of information . . . ." *Penn*, Trial Tr. Day 24, 4788:5-9. Facts are not matters of expediency. The United States owes an obligation to state them truthfully. Its allegations here cannot be reconciled with what the same Antitrust Division told the District of Colorado are facts. The United States has demanded that Agri Stats turn square corners with it. It should turn square corners with this Court. Plaintiffs' chicken claim does not.

## <u>CONCLUSION</u>

For the foregoing reasons, Agri Stats respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: February 9, 2024                    Respectfully submitted,

                                           */s/Peter H. Walsh*

                                           Peter H. Walsh (MN# 0388672)
                                           Hogan Lovells US LLP
                                           80 South 8th Street Ste 1225
                                           Minneapolis, MN 55402
                                           Tel: (612) 402-3017
                                           Fax: (612) 339-5167
                                           Email: peter.walsh@hoganlovells.com

                                           William L. Monts III (Pro Hac Vice)
                                           Justin W. Bernick (Pro Hac Vice)
                                           HOGAN LOVELLS US LLP
                                           555 Thirteenth Street, N.W.
                                           Washington, D.C. 20004
                                           Tel: (202) 637-5600
                                           Fax: (202) 637-5910
                                           william.monts@hoganlovells.com
                                           justin.bernick@hoganlovells.com

                                           *Counsel for Defendant Agri Stats, Inc.*