# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,
STATE OF MINNESOTA,
STATE OF CALIFORNIA,
STATE OF NORTH CAROLINA,
STATE OF TENNESSEE,
STATE OF TEXAS, and
STATE OF UTAH,

     *Plaintiffs*,

v.

AGRI STATS, INC.,

     *Defendant.*

No. 0:23-CV-03009-JRT-JFD

**PLAINTIFFS' FIRST SET OF REQUESTS
FOR PRODUCTION TO DEFENDANT AGRI STATS, INC.**

  Pursuant to Federal Rules of Civil Procedure 26 and 34, the Local Rules of this Court, and all applicable orders of the Court in this Action, Plaintiffs hereby requests that Defendant Agri Stats, Inc. respond to these Requests for Production no later than 30 days from date of service. Documents and materials must be produced to Mark Sosnowsky, James Congdon, and Silvia Dominguez-Reese, United States Department of Justice, Antitrust Division, 450 5th Street NW, Washington, DC 20530, or at such other place or in such other manner as may be mutually agreed upon by the parties.

  Plaintiffs are available to meet and confer to discuss these Requests.

1

**INSTRUCTIONS**

1.      Unless otherwise specified, these requests are for all Documents in the Company's possession, custody, or control that were created, altered, or received at any time from January 1, 2007 to the close of fact discovery in this case. Unless otherwise stated, these Requests are for all responsive Documents relating to conduct occurring in or affecting the United States or any part thereof, regardless of where those Documents are kept.

2.      If the Company contends that any Documents responsive to these Requests have already been fully produced to Plaintiff United States and wishes to rely on that previous production in lieu of producing the Documents, the Company must specify by Bates number or other unique identifier all such Documents that have already been produced. To the extent these Requests call for the production of databases or data sets that overlap with databases or data sets already produced and the Company wishes to rely on that previous production, Plaintiffs will confer with the Company to discuss whether the production of additional materials can be produced in a way that allows for those materials to be integrated with the prior database or data set, upon reasonable efforts, in such a way as to render the combined database or data set fully usable. Plaintiffs reserve the right to seek full production of any responsive databases and/or data sets.

3.      These requests are continuing in nature, and the Company's duty to supplement its production in response to these requests pursuant to Federal Rule of Civil Procedure 26(e) is ongoing. Plaintiffs specifically reserve the right to seek supplementary responses and additional supplementary production of Documents.

4.      In addition to the specific instructions set forth below, these Requests incorporate the instructions set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local

Rules of this Court, and any other applicable orders of the Court in this Action. Subject to any valid claims of privilege, the Company must produce the entire Document if any part of that Document is responsive.

5. In producing Documents, the Company must produce a legible copy of each Document requested together with all non-identical copies and drafts of that Document. All metadata of electronic Documents must also be produced.

6. Documents attached to each other should not be separated.

7. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Documents must be produced either: (a) as they are kept in the usual course of business (in which case, they must be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural Person in whose possession they were found or the server or central file in which they were found); or (b) identified as responsive to a specific request enumerated in these requests, with such specific requests identified.

8. Pursuant to Rule 34(b)(2)(B), if the Company objects to a Request, the grounds for each objection must be stated with specificity.

9. If the Company deems any portion of these Requests to be ambiguous, the Company's response must describe the matter or language deemed ambiguous, and the construction or interpretation used by the Company in responding to the Request.

10. Pursuant to Rule 34(b)(2)(C), every objection must state whether the Company is withholding any responsive materials on the basis of the objection.

11. Whenever the Company is asked to identify or produce a Document responsive to a Request and the Company determines to withhold the Document from production, the Company must provide the following information:

  a. If the Company withholds the Document under claim of privilege (including the work product doctrine), the Company must provide the information set forth in Fed. R. Civ. P. 26(b)(5). For electronically stored information, a privilege log (in searchable and sortable form, such as a spreadsheet, matrix, or table) containing metadata fields that correspond to the information required by Fed. R. Civ. P. 26(b)(5) is permissible, provided that it also discloses whether transmitting, attached, or subsidiary ("parent-child") Documents exist and whether those Documents have been produced or withheld.

  b. If the Company withholds the Document for any reason other than privilege, the Company must identify the Document, provide the information set forth in paragraph 7(a) above, and state the basis for withholding the Document. No redactions should be applied other than for a claim of privilege or legal protection.

  12. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without disclosing the privileged material. If the Company asserts a privilege as to any portion of the material contained in a Document, the Company must clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, the Company must identify as to each such Document the reason for the redaction or alteration, and the date of the redaction or alteration.  Any redaction must be clearly visible on the redacted Document.

  13. When a Document provided has been edited, updated, or revised (e.g. policy, procedure, form) provide a copy of each version with the date of the change.

  14. When a database is responsive to any Request, in part or in whole, the entire database must be produced as it is stored in the normal course of business without alteration. The production of any databases or data sets that originate in a database format such as SQL should

include structured data files and sequencing files that can be used to create and populate the SQL database containing data for the reports. Database exports (*e.g.*, dumps) may be provided in PostgreSQL format, or another format as agreed to in writing by the Plaintiffs.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Requests should be construed broadly in a good-faith effort to comply with the Federal Rules of Civil Procedure.

1. The terms "**Agri Stats**" and/or "**Company**" mean Defendant Agri Stats Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (5 percent or more) or total ownership or control between Agri Stats Inc. and any other person. For avoidance of doubt and unless otherwise specified, the terms include Express Markets, Inc. (EMI).

2. The term "**Agreement**" means any understanding, formal or informal, written, or unwritten.

3. The term "**Broiler Chicken**" means a chicken raised for human meat consumption.

4. The term "**Broiler Chicken Processor**" means any person engaged in the business of producing, manufacturing, slaughtering, processing, packaging, selling, and/or distributing meat from Broiler Chickens, including but not limited to Allen Harim Foods, LLC, Amick Farms, LLC, Case Foods, Inc., Case Farms, LLC, Case Farms Processing, Inc., Norman W. Fries, Inc. (d/b/a Claxton Poultry Farms), Fieldale Farms Corp., Foster Poultry Farms, George's, Inc., George's Foods, LLC, Harrison Poultry, Inc., Holmes Foods, Inc., House of

5

Raeford Farms, Inc., Koch Foods, Inc., Mar-Jac Poultry, Inc., Mar-Jac Poultry LLC, Mountaire Farms, Inc., Mountaire Farms of Delaware, Inc., O.K. Foods, Inc., Peco Foods, Inc., Perdue Farms, Inc., Perdue Foods, LLC, Pilgrim's Pride Corp., Sanderson Farms, LLC, Simmons Foods, Inc., Tyson Foods, Inc., Keystone Foods, LLC, and Wayne Farms, LLC.

5. The term "**Collaborative Work Environment**" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include Microsoft SharePoint sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis, and blogs.

6. The term "**concerning**" means referring to, regarding, relating to, alluding to, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, evidencing, estimating, containing, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

7. The term "**Customer**" means a Protein Processor entity that entered into a written or unwritten contract, Agreement, arrangement, understanding, or commitment with the Company to receive Company products or services in exchange for remuneration.

8. The terms "**Document**" and "**Documents**" are synonymous in meaning and equal in scope to the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and mean both documents and any electronically stored information ("ESI") and includes any writing, drawing, graph, chart, photograph, sound recording, data, or data

6

compilation stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including originals, copies, and drafts and as further defined in Rules 25 and 34 (and cases construing those Rules), which documents are in the possession, custody or control of Plaintiff, his agents, representatives, persons acting on his behalf, or attorneys, or known by Plaintiff or them to exist, including materials deemed to be subject to any evidentiary privilege.  For avoidance of doubt, Document and Documents include communications through any means of transmittal, including Messaging Applications and Collaborative Working Environments. A draft or non-identical copy of a Document is a separate Document within the meaning of that term.

9. The term "**EMI**" means Express Markets, Inc. and any predecessors of Express Markets, Inc.

10. The term "*In re Broiler Chicken Antitrust Litigation*" means the multi-district litigation *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-8637, filed in the United States District Court for the Northern District of Illinois, and all cases that have been consolidated for pretrial proceedings therein.

11. The term "*In re Pork Antitrust Litigation*" means the multi-district litigation *In re Pork Antitrust Litigation*, No. 18-cv-1776, filed in the United States District Court for the District of Minnesota, and all cases that have been consolidated for pretrial proceedings therein.

12. The term "*In re Turkey Antitrust Litigation*" means the multi-district litigation *In re Turkey Antitrust Litigation*, No. 19-cv-8318, filed in the United States District Court for the Northern District of Illinois, and all cases that have been consolidated for pretrial proceedings therein.

13. The term "**Messaging Application**" refers to any electronic method used by the Company and its employees to communicate with each other or entities outside the Company for business purposes. "Messaging Application" include platforms for email, chats, instant messages, text messages, and other methods of group and individual communication (*e.g.*, Microsoft Teams, Slack) to include proprietary or off-the-shelf software. "Messaging Application" may overlap with "Collaborative Work Environment."

14. The term "**Person**" means any natural person or any business, legal, or governmental entity or association.

15. The term "**Plan**" includes proposals, recommendations, or considerations, whether finalized or adopted.

16. The term "**Protein Processor**" means any Broiler Chicken Processor, Turkey Processors, or Pork Processor.

17. The term "**Protein Processor Product**" means any protein product sold by any Protein Processor to any Retailer.

18. The term "**products or services**" means all electronic and non-electronic items the Company creates, drafts, produces, or provides for its Customers, including include but not be limited to all electronic data systems; database(s); data sets; documents; reports, including special unique or custom reports; analyses; forecasts; presentations; consultations, in person or remotely; books; and newsletters and documents provided during in-person and virtual consultations.

19. The term "**Pork**" means meat from hogs or domesticated swine.

20. The term **"Pork Processor"** means any person engaged in the business of producing, manufacturing, slaughtering, processing, packaging, selling, and/or distributing Pork,

including but not limited to Clemens Food Group, LLC, Hormel Foods Corporation, Indiana Packers Corporation, JBS USA Food Company, LLC, Seaboard Foods, LLC, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc., and Keystone Foods, LLC.

21. The term **"Protein"** means Broiler Chicken, Pork, or Turkey.

22. The term "**Retailer**" means any customer of a Protein Processor including another Protein Processor.

23. The term **"Turkey"** means meat from domesticated turkeys, which are large North American birds with white plumage and a bare, wattled head and neck, and include young turkey, fryer-roaster, young hen, and young tom.

24. The term **"Turkey Processor"** means any person engaged in the business of producing, manufacturing, slaughtering, processing, packaging, selling, and/or distributing Turkey, including but not limited to Butterball, LLC, Cargill Meat Solutions Corporation, Cargill, Inc., Cooper Farms, Inc., Dakota Provisions, LLC, Farbest Foods, Inc., Foster Poultry Farms, House of Raeford Farms, Inc., Hormel Foods Corporation, Jennie-O Turkey Store, Inc., Kraft Heinz Foods, Michigan Turkey Producers, LLC, Perdue Farms, Inc., Perdue Foods, LLC., Prestage Farms, Inc., Prestage Foods, Inc., Prestage Farms of South Carolina, LLC, Tyson Foods, Inc., Keystone Foods, LLC, and West Liberty Foods, LLC.

25. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "**All**" and "**any**" each mean both any and all. "**Including**" means including, but not limited to. "**And**" and "**or**" each mean both "and" and "or." Words in the masculine, feminine, or neuter form include all genders.

## DOCUMENT REQUESTS

**Document Request No. 1.** Produce a full and complete copy of each database or data set in the possession, custody, or control of the Company that contains information regarding any Broiler Processor's live growth operations, processing operations, further processing operations, sales, customers, or profits, and which is used or has been used at any time since January 1, 2007, to create any book, report or presentation. For the avoidance of doubt, and not as a limitation, this request requires the production of full and complete copies of the database(s) or data set(s) used to create any Bottomline Analysis, Customer Sales Analysis, Express Sales Analysis, Export Sales Report, Freezer Inventory Report, Live Production Analysis, Operating Profit Analysis, Processing Analysis, each Weekly Analysis and report, as well as any EMI Customer Variance Report, Detail Variance Report, EOD Report, Group Detail Variance Report, National Commodity Market Variance Report, Percent Commodity Pounds Report, Summary Variance Report Weekly, and Weekly Recap Report.

**Document Request No. 2.** Produce a full and complete copy of each database or data set in the possession, custody, or control of the Company that contains information regarding any Pork Processor's live growth operations, swine purchasing costs, processing operations, further processing operations, sales, customers, or profits, and which is used or has been used at any time since January 1, 2007, to create any report or presentation. For the avoidance of doubt, and not as a limitation, this request requires the production of full and complete copies of the database(s) or data set(s) used to create any Bottomline Analysis, Customer Sales Analysis, Express Sales Analysis, Export Sales Report, Freezer Inventory Report, Operating Profit Analysis, Swine Bacon Analysis, Swine Integrator Report, Swine Production Analysis, Swine Profit Analysis, Swine Sales Analysis, each Weekly Analysis and report, as well as any EMI Customer Variance Report, Detail Variance Report, EOD Report, Group Detail Variance Report, National Commodity Market Variance Report, Percent Commodity Pounds Report, Summary Variance Report Weekly, and Weekly Recap Report.

**Document Request No. 3.** Produce a full and complete copy of each database or data set in the possession, custody, or control of the Company that contains information regarding any Turkey Processor's live growth operations, processing operations, further processing operations, sales, customers, or profits, and which is used or has been used at any time since January 1, 2007, to create any report or presentation. For the avoidance of doubt, and not as a limitation, this request requires the production of full and complete copies of the database(s) or data set(s) used to create any Bottomline Analysis, Customer Sales Analysis, Express Sales Analysis, Export Sales Report, Freezer Inventory Report, Processing Analysis, Turkey Breeder Report, Turkey Growout Report, Turkey Processing Analysis, Turkey Profit Analysis, each Weekly Analysis and report, as well as any EMI Customer Variance Report, Detail Variance Report, EOD Report, Group Detail Variance Report, National Commodity Market Variance Report, Percent Commodity Pounds Report, Summary Variance Report Weekly, and Weekly Recap Report.

**Document Request No. 4.** For each database or data set responsive to the requests for production above, produce Documents sufficient to show how the Company matches fields from one database to another, including but not limited to any crosswalks, guides, or other data

dictionaries, in order to create its reports and presentations.

**Document Request No. 5.**   Produce all models or code the Company used to create any reports or forecasts.

**Document Request No. 6.**   Produce Documents sufficient to describe the Company's policies and procedures for the retention of information, data, and communications from January 1, 2007 to the present.

Dated:  February 23, 2024

/s/   Mark H.M. Sosnowsky
MARK H.M. SOSNOWSKY
SILVIA DOMINGUEZ-REESE
JAMES H. CONGDON
United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 8700
Washington, DC 20530
Telephone: (202) 812-4723
Facsimile: (202) 307-5802
Email: mark.sosnowsky@usdoj.gov

*Attorneys for Plaintiff United States of America*

/s/ Katherine A. Moerke
KATHERINE A. MOERKE (No. 0312277)
ELIZABETH ODETTE (No. 0340698)
SARAH DOKTORI (No. 0403060)
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
Telephone: (651) 757-1288
Email: katherine.moerke@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota and Local Counsel for Plaintiff States of California, North Caroline, Tennessee, Texas, and Utah*

11

## **CERTIFICATE OF SERVICE**

      I certify that on February 23, 2024, I served a copy of the foregoing upon counsel for all parties of record via electronic mail.


Dated:  February 23, 2024

                                          /s/   James H. Congdon
                                          JAMES H. CONGDON
                                          United States Department of Justice
                                          Antitrust Division
                                          450 Fifth Street N.W., Suite 7000
                                          Washington, DC 20530
                                          Telephone: (202) 538-3985
                                          Facsimile: (202) 307-5802
                                          Email: james.congdon@usdoj.gov