UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,
STATE OF MINNESOTA,
STATE OF CALIFORNIA,
STATE OF NORTH CAROLINA,
STATE OF TENNESSEE,
STATE OF TEXAS, and
STATE OF UTAH,

          *Plaintiffs*,

v.

AGRI STATS, INC.,

          *Defendant.*

No. 0:23-CV-03009-JRT-JFD

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY**

Section 4 of the Sherman Act mandates that, in an equitable action by the United States to enforce the antitrust laws, "the court *shall* proceed, *as soon as may be*, to the hearing and determination of the case." 15 U.S.C. § 4 (emphasis added). Disregarding this statutory command, Agri Stats seeks to delay discovery without good cause. The sole basis for Agri Stats' request—that it has filed motions to transfer and dismiss—does not warrant delay, and all practical considerations favor commencing discovery now, as contemplated by the Federal Rules of Civil Procedure and the District of Minnesota Local Rules.

Agri Stats is unlikely to prevail on its pending motions because those motions are contrary to established precedent and do not otherwise provide a cognizable basis for relief. Nor has Agri Stats demonstrated any hardship beyond the normal burden of discovery, which is not the kind of particularized circumstance that warrants a stay. Considering the

insufficiency of Agri Stats' pending motions to dismiss and transfer, the nominal burden on Agri Stats of proceeding with discovery now does not warrant a stay.

By contrast, a stay would frustrate seven sovereign plaintiffs' ability to seek prompt equitable relief on behalf of millions of American consumers. It also threatens potential efficiencies that will be gained by keeping this case on pace with *In re Pork Antitrust Litigation*, No. 18-cv-1776 (D. Minn.) ("*In re Pork*"), as Plaintiffs propose.

For all these reasons, as discussed more fully below, the Court should deny Agri Stats' motion.

## PROCEDURAL BACKGROUND

Plaintiffs filed this action on September 28, 2023.[1] ECF No. 1. Plaintiffs notified the Court that this action was potentially related to *In re Pork* and that joint assignment with *In re Pork* would "promote judicial economy and administrative efficiency." ECF No. 2. The case was then assigned to Judges Tunheim and Docherty. ECF Nos. 9, 15. Agri Stats filed its motions to transfer and dismiss on November 8, 2023, and January 5, 2024, respectively. ECF Nos. 42, 77. The motions will be argued on April 5. ECF No. 95.

District of Minnesota Local Rule 26.1(d) allows any party to request an "Early Rule 26(f) Conference" 30 days after all defendants have responded to the operative complaint. At Plaintiffs' request, the parties conducted an Early Rule 26(f) Conference on February 20, 2024, at which time they discussed discovery and orderly proceedings in this case.

---

[1] Plaintiffs filed two amended complaints on November 6 and 15, 2023, respectively, to add Minnesota, California, North Carolina, Tennessee, Texas, and Utah as plaintiffs. ECF Nos. 30, 50. The United States and state plaintiffs are referred to herein as "Plaintiffs."

2

Plaintiffs also notified Agri Stats during the conference that they would promptly issue discovery requests, pursuant to Federal Rule of Civil Procedure 26(d)(1), which allows discovery to begin after the Rule 26(f) conference. Plaintiffs served their First Requests for Production on Agri Stats on February 23, 2024. As required by Local Rule 26.1(b)(1), the parties jointly filed a Joint Rule 26(f) report and proposed scheduling order—including disagreements—on March 5, 2024. ECF No. 97. The parties exchanged initial disclosures on the same date. Agri Stats subsequently moved to stay discovery. ECF No. 99.

## LEGAL STANDARD

Under Rule 26(c), a movant must show good cause to stay discovery. *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, 2013 WL 4487505, at *1 (D. Minn. Aug. 20, 2013). To overcome the "presumption favoring the party opposing the stay," a moving party bears the "heavy burden" to "demonstrate a specific hardship or inequity that would result if required to proceed." *Christopherson v. Cinema Ent. Corp.*, 2024 WL 1120925, at *2 (D. Minn. Mar. 6, 2024); *accord TE Connectivity*, 2013 WL 4487505, at *2 (stays are granted "for specific, somewhat unique, reasons").

In addition, "the 'good cause' standard of Rule 26(c) is informed by and incorporates" all relevant policy considerations. *United States v. Microsoft Corp.*, 165 F.3d 952, 959–60 (D.C. Cir. 1999). This includes the statutory interest in prompt resolution of government antitrust enforcement actions reflected in Section 4 of the Sherman Act, which instructs that "in antitrust actions commenced by the Government, 'the court shall proceed, as soon as may be, to the hearing and determination of the case.'" *Texas v. Penguin Grp. (USA) Inc.*, 2013 WL 1759567, at *2 (S.D.N.Y. Apr. 24, 2013) (quoting 15 U.S.C. § 4).

With this language, Congress expressed "a clear public policy" favoring "prompt resolution of Government antitrust claims to provide expeditious relief to the public." *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999) (discussing 28 U.S.C. 1407(g)); *United States v. Google LLC*, 661 F. Supp. 3d 480, 490 (E.D. Va. 2023).

Courts also consider practical factors with respect to a request for a stay:

> In addition to good cause, federal courts typically consider a variety of practical factors when determining whether a stay is appropriate, including: (1) whether the movant has shown it is reasonably likely to succeed on the merits of its dispositive motion; (2) whether the movant has demonstrated it will suffer hardship or inequity if the matter is not stayed; (3) whether there will be prejudice to the non-moving party if the matter is stayed; and (4) what outcome is best for the conservation of judicial resources.

*Villalobos v. United States*, 2022 WL 2452278, at *2 (D. Minn. July 6, 2022).

The mere filing of a motion to dismiss—absent a showing that the complaint is "facially frivolous or clearly without merit"—does not justify a stay because "saving the time and expense of normal litigation costs is not 'good cause' under Rule 26(c)." *TE Connectivity*, 2013 WL 4487505, at *2; *Cath. Mut. Relief Soc'y of Am. v. Arrowood Indem. Co.*, 2018 WL 9787272, at *5 (D. Minn. Apr. 23, 2018) ("Standing alone, the pendency of a dispositive motion does not establish 'good cause' to stay discovery." (citation omitted)). Rather, a party seeking to stay discovery must come forward with "*particular* facts and circumstances that make responding to discovery *unusually* burdensome or prejudicial." *TE Connectivity*, 2013 WL 4487505, at *2 (emphasis added). Responding to routine discovery requests is not sufficient. *Dolan v. Ford Motor Co.*, 2023 WL 7285443, at *2 (E.D. Va. Nov. 3, 2023); *see also Solidfx, LLC v. Jeppesen Sanderson, Inc.*, 2011 WL

4

4018207, at *3–4 (D. Colo. Sept. 8, 2011) (holding that the fact that antitrust claims are complex is not reason enough to stay discovery).

## ARGUMENT

Agri Stats has failed to meet its heavy burden of demonstrating good cause to delay this case. Plaintiffs' complaint is not "facially frivolous or clearly without merit," and there are no "particular facts or circumstances that make responding to discovery in this case unusually burdensome or prejudicial beyond the usual case of this nature." *TE Connectivity*, 2013 WL 4487505, at *2. All remaining considerations favor proceeding with discovery now.

### I.  Agri Stats' Pending Motions Are Not Likely to Succeed

When considering whether to stay discovery, courts may take a "peek" at the merits of a pending motion to determine whether a complaint is "clearly without merit" or the dispositive motion likely will resolve the entire litigation. *Id.* Neither is evident here.

*First,* Agri Stats' sole argument to dismiss Plaintiffs' broiler chicken claim (Count 1) is that a summary judgment decision resolving different theories in a differently-postured matter brought by different plaintiffs in a different court bars Plaintiffs' claim here. This argument flouts well-established legal precedent that one is not bound by a judgment in a litigation in which one was not a party. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008); *see also Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 690 (1961) ("[T]he Government is not bound by private antitrust litigation to which it is a stranger."); *United States v. Borden Co.*, 347 U.S. 514, 519 (1954) ("[T]he Government's right and duty to seek an injunction to protect the public interest exist without regard to any private

5

suit or decree."). *See* Pls. Opp. Mot. to Dismiss at 21, ECF No. 86. Undeterred, Agri Stats couches its argument as a matter of "stare decisis," without any legal support.[2] Def.'s Mot. to Dismiss at 16–25, ECF No. 79. This Court should not countenance Agri Stats' attempt to use this baseless argument to stay discovery. *TE Connectivity*, 2013 WL 4487505, at *2.

*Second*, Agri Stats' assertion that the Court lacks jurisdiction to hear Plaintiffs' pork and turkey claims (Counts 2 and 3) hinges on a narrow, unsupported declaration stating that Agri Stats has no "current" plans to resume its turkey and pork reports. Scholer Decl., ECF No. 80. Such a "sparse declaration," the Supreme Court recently reaffirmed, "falls short of demonstrating that [the defendant] cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *FBI v. Fikre*, 2024 WL 1160994, at *5 (U.S. Mar. 19, 2024). Insofar as this declaration suggests anything about Agri Stats' future behavior, it is contradicted by Agri Stats' internal documents and statements. *See* Pls. Opp. Mot. to Dismiss at 7–8, ECF No. 86; Friedman Decl. Exs. 3, 4, 5, ECF Nos. 90-3, 90-4, 90-5. Those documents confirm that Agri Stats plans to resume its turkey and pork reports upon the conclusion of pending private litigation, in furtherance of its broader, ongoing information-sharing business model. Agri Stats has not met the "formidable burden" it bears to show that its illegal conduct in the pork and turkey industries will not

---

[2] The sole case Agri Stats cites for its *stare decisis* argument, *Premier Electrical Construction Co. v. National Electrical Contractors Ass'n*, 814 F.2d 358 (7th Cir. 1987), directly contradicts Agri Stats' argument. *Premier Electrical* reaffirmed the bedrock rule that while a court can consider the *legal* holdings of a separate court, it cannot bind a party to *factual determinations* in a case involving different parties. *Id.* at 371.

recur, and its voluntary suspension of that conduct does not preclude injunctive relief in those markets. *Fikre*, 2024 WL 1160994, at *4.[3]

*Finally*, Agri Stats' argument that Plaintiff States lack standing provides no basis for a stay. Plaintiff States have standing. *See, e.g.*, *Burch v. Goodyear Tire & Rubber Co.*, 554 F.2d 633, 634–35 (4th Cir. 1977). In any event, the standing of the Plaintiff States is immaterial so long as the United States has standing. *See Nat'l Wildlife Fed'n v. Agric. Stabilization & Conservation Serv.*, 955 F.2d 1199, 1203 (8th Cir. 1992) ("[W]here one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial.") (citing *Bowen v. Kendrick,* 487 U.S. 589, 620 n.15 (1988)); *see also Massachusetts v. EPA*, 549 U.S. 497, 498 (2007) (endorsing the one-plaintiff standing rule).

As Agri Stats has not demonstrated a high likelihood of success on its motion to dismiss, its stay motion should be denied.[4]

---

[3] Agri Stats' argument also conflicts with its request that the Court keep sealed certain invoices related to Agri Stats' pork and turkey business because those documents purportedly "disclose[] competitively sensitive specific negotiated rates that Agri Stats charges for its reports. Agri Stats negotiates its rates with each subscriber individually and they can remain static for years." ECF No. 76 (discussing ECF Nos. 69 & 70). Agri Stats cannot simultaneously ask the Court to protect its future pork and turkey business plans while denying that it has those very same future business plans.

[4] Agri Stats makes passing reference to its Motion to Transfer but does not explain why that motion justifies a stay, other than to say that another judge might manage this case. Mot. at 12. A motion to transfer in and of itself does not supply good cause to justify a stay. *See Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988) ("The mere filing of a motion to transfer . . . does not constitute grounds for staying discovery pending resolution of the motion.").

## II.      Agri Stats Faces No Unusual Discovery Burdens in this Case

Agri Stats faces no "unusually burdensome or prejudicial" discovery that might justify a stay. *See TE Connectivity*, 2013 WL 4487505, at *2 ("Although [the defendant] has filed a potentially viable motion to dismiss, it has not demonstrated any specific good cause warranting a stay . . . [W]ithout good cause based in either law or fact, [a] motion to stay will be denied."). Its oft-repeated lament that it is a "small business" does not alter the analysis. According to Agri Stats internal documents, as of November 16, 2020—after it had suspended reporting in the pork and turkey industries—Agri Stats was facing more than 80 lawsuits in four separate jurisdictions challenging its anticompetitive conduct. Friedman Decl., Ex. 7 at 12–18, ECF 90-7. Agri Stats nevertheless has maintained its broiler chicken business and planned to resume its pork and turkey businesses. *Id.* at 6–7. That Agri Stats must continue to defend its actions in litigation is neither surprising nor unduly prejudicial, and it does not warrant delay.

In any event, discovery is unlikely to be as burdensome as Agri Stats suggests. Plaintiffs have already recognized that "discovery in this matter should incorporate, to the extent possible," materials from private litigations and produced in response to the United States' pre-complaint Civil Investigative Demands. Joint Rule 26(f) Report at 4, ECF No. 97.[5] Incorporating existing discovery will reduce the discovery burden on Agri Stats, while furthering Plaintiffs' interest in moving quickly on behalf of the public.

---

[5] Plaintiffs' First Requests for Production contemplate that discovery in this case will not "duplicate[]" prior discovery, as Agri Stats contends. Mot. at 10. In particular, Plaintiffs' requests allow Agri Stats to identify "[d]ocuments that have already been produced" in

Agri Stats attempts to make its request more palatable by framing it as a "limited" stay of discovery similar to the partial stay granted in *In re Pork*. *See* Mot. at 10. But the approach adopted in *In re Pork* is not apt for reproduction here for several reasons.

Private plaintiffs in *In re Pork* are primarily interested in recovering damages for injuries already suffered, and delay does not impact that relief. *See Dentsply*, 190 F.R.D. at 145. Accordingly, the plaintiffs did not seek full-scale discovery while dispositive motions were pending. *In re Pork*, 2019 WL 480518, at *1 (D. Minn. Feb. 7, 2019). In addition, the court in *In re Pork* did not "take a peek" at the merits of the dispositive motions, but instead accepted that they might impact discovery. *Id.* at *4.

Plaintiffs here are government enforcers seeking injunctive relief to protect the public from competitive injury, which is "of special urgency." *Dentsply*, 190 F.R.D. at 145; *see supra* pp. 3–4. And there is no stipulation as Plaintiffs do not agree that any discovery tasks should be stayed—both because of the statutory urgency and the fact that discovery here will build on existing discovery rather than starting from scratch.

## III. A Stay Would Prejudice the Public Interest in Swift Antitrust Enforcement

Congress recognized the necessity of ensuring that government antitrust enforcement actions proceed expeditiously to secure relief for the public without delay. *See supra* pp. 3–4. Here, the compelling public interest in promptly ending Agri Stats' anticompetitive conduct weighs heavily against staying discovery. *See, e.g.*, *Williams v.*

---

response to any request and invite Agri Stats to meet and confer with Plaintiffs to discuss how to integrate any prior production of documents or data. Def.'s Ex. 2 at 2, ECF No. 102-1.

*New Day Farms, LLC*, 2010 WL 3522397, at *1 (S.D. Ohio Sept. 7, 2010) ("[T]he [c]ourt is required to take into account any societal interests which are implicated by either proceeding or postponing discovery.").

As Plaintiffs' complaint alleges, the harm from Agri Stats' unlawful information exchange in the broiler chicken market presents a substantial and urgent risk to competition. Sec. Am. Compl. at 46–47, ECF No. 50. Through this unlawful exchange of competitively sensitive information, Agri Stats enables and encourages processors to increase industry-wide prices and restrict output of protein products that millions of Americans purchase every day. *Id.* at 2. While these anticompetitive practices continue, the public will continue to suffer from decreased competition in the broiler chicken market (and that harm will be compounded as soon as Agri Stats reactivates its turkey and pork businesses). Accordingly, the public's great interest in "vigorously enforcing the anti-trust laws" and "Congress's goal of securing prompt relief for the public in Government antitrust actions" weigh against a stay in discovery here. *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *8 (E.D. Pa. Nov. 29, 2004); *Dentsply*, 190 F.R.D. at 146.

## IV. Prompt Resolution of Plaintiffs' Action Would Conserve Judicial Resources

Plaintiffs have proposed a schedule that would allow this case to be trial-ready before the private parties' scheduled trial in *In re Pork*, without interfering with the schedule in that case, should the Court decide to proceed in that manner. It is appropriate for the Court to consider how the schedule for this enforcement action may relate to any private action. *See, e.g.*, *Penguin Grp.*, 2013 WL 1759567, at *2 (discussing need to consider how enforcement actions may influence private actions when considering case

10

schedules); *In re Elec. Books Antitrust Litig.*, 2014 WL 1642813, at *3 (S.D.N.Y. Apr. 24, 2014) (recognizing priority of federal enforcement actions).

Proceeding with this case presents at least two potential efficiencies. First, this enforcement action presents a single theory of liability, and no damages considerations, in a "streamlined trial" with a "narrower focus" that may reduce the scope of evidence necessary in subsequent private suits. *Id.* at *4; *see also Dentsply*, 190 F.R.D. at 145. Second, 15 U.S.C. § 16(a) makes a judgment in favor of the government available for use in a private suit as *prima facie* evidence for injured competitors or customers, which "promotes judicial efficiency by fostering settlement." *Id.* (citing 15 U.S.C. § 16(a)). *Id.* Should the stay be granted, these efficiencies likely would be lost.

Agri Stats contends that allowing discovery now would result in "unnecessary expense of judicial resources." Mot. at 11. Not so. This Court has recognized that a stay of discovery is not "the most practical means to conserve judicial resources" where there is "discovery ready and waiting to be produced that may resolve some or all of the issues raised . . . and that may also generate new discovery disputes which the parties can work to resolve—with or without the Court's involvement—while awaiting the outcome" of a motion to dismiss. *Villalobos*, 2022 WL 2452278, at *3.

That consideration is especially relevant to the non-party discovery necessary here. Although Plaintiffs agree that prior discovery from private litigations will be valuable, Plaintiffs will still need to take additional discovery, much of which will involve non-parties. There are 44 protein processors identified in the complaint. Sec. Am. Compl. at 6–7, ECF No. 50. Obtaining discovery from those processors will take time: Plaintiffs will

11

need to negotiate the parameters of the discovery with each of the dozens of non-parties; each non-party will then need time to collect, review, and produce documents and data; and then Plaintiffs will need time to process, review, and analyze those documents and data. Given that both sides have proposed expeditious litigation schedules, beginning discovery now maximizes the amount of time the parties will have to work with non-parties to resolve disputes without judicial intervention and reduces the risk that "[m]atters of importance may be mislaid or avenues unexplored." *Kron Med. Corp.*, 119 F.R.D. at 638.

## CONCLUSION

For these reasons, the Court should deny Agri Stats' Motion to Stay Discovery and adopt Plaintiff's proposed trial schedule pursuant to the parties' Joint 26(f) Conference Report.

Dated: March 27, 2024        Respectfully,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

ANN M. BILDTSEN
Attorney ID No. 0271494
First Assistant United States Attorney
Attorney for the United States Acting Under
Authority Conferred by
28 U.S.C. § 515

/s/ Liles H. Repp
LILES H. REPP
Attorney ID No. 0400692
Assistant United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Phone: (612) 664-5600
Fax: (612) 664-5788
Liles.Repp@usdoj.gov


*/s/* Mark H.M. Sosnowsky
MARK H.M. SOSNOWSKY (*Pro Hac Vice*)
EUN-HA KIM
Senior Trial Counsel

WILLIAM M. FRIEDMAN (*Pro Hac Vice*)
JAMES H. CONGDON (*Pro Hac Vice*)
SILVIA J. DOMINGUEZ-REESE (*Pro Hac Vice*)
PETER A. NELSON (*Pro Hac Vice*)
DEVIN L. REDDING (*Pro Hac Vice*)
Trial Attorneys

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 812-4723
Facsimile: (202) 307-5802
Mark.Sosnowsky@usdoj.gov
Eun-Ha.Kim@usdoj.gov
William.Friedman2@usdoj.gov
James.Congdon@usdoj.gov
Silvia.Dominguez-Reese2@usdoj.gov
Peter.Nelson@usdoj.gov
Devin.Redding@usdoj.gov

*Attorneys for United States of America*

**FOR PLAINTIFF STATE OF MINNESOTA:**

KEITH ELLISON
Attorney General of Minnesota

*/s/* Katherine A. Moerke
JAMES CANADAY (No. 030234X)
Deputy Attorney General

13

KATHERINE A. MOERKE (No. 0312277)
ELIZABETH ODETTE (No. 0340698)
SARAH DOKTORI (No. 0403060)
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
james.canaday@ag.state.mn.us
Telephone: (651) 757-1421
katherine.moerke@ag.state.mn.us
Telephone: (651) 757-1288
elizabeth.odette@ag.state.mn.us
Telephone: (651) 728-7208
sarah.doktori@ag.state.mn.us
Telephone: (651) 583-6694

*Attorneys for State of Minnesota and Local Counsel for States of California, North Carolina, Tennessee, Texas, and Utah*

**FOR PLAINTIFF STATE OF CALIFORNIA:**

ROB BONTA
Attorney General of California

*/s/* Robert McNary
ROBERT MCNARY (*Pro Hac Vice*)
Deputy Attorney General
NICOLE GORDON (*Pro Hac Vice*)
Deputy Attorney General
JAMIE MILLER (*Pro Hac Vice*)
Supervising Deputy Attorney General
PAULA BLIZZARD (*Pro Hac Vice*)
Senior Assistant Attorney General
Office of the Attorney General
California Department of Justice
300 S. Spring St.
Los Angeles, California 90013
Telephone: (213) 269-6283
Robert.McNary@doj.ca.gov

*Attorneys for State of California*

14

**FOR PLAINTIFF STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General of North Carolina

*/s/* Jonathan R. Marx
JASMINE MCGHEE (*Pro Hac Vice*)
Senior Deputy Attorney General
JONATHAN R. MARX (*Pro Hac Vice*)
Special Deputy Attorney General
KUNAL CHOKSI (*Pro Hac Vice*)
Special Deputy Attorney General
114 W. Edenton Street
Raleigh, NC 27603
Telephone: (919) 716-8611
jmarx@ncdoj.gov

*Attorneys for State of North Carolina*

**FOR PLAINTIFF STATE OF TENNESSEE:**

JONATHAN SKRMETTI
Attorney General of Tennessee

*/s/* Ethan Bowers
ETHAN BOWERS (*Pro Hac Vice*)
J. TATE BALL (*Pro Hac Vice*)
Assistant Attorney General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Ethan.Bowers@ag.tn.gov
Tate.Ball@ag.tn.gov
Telephone: (615) 741-8091

*Attorneys for State of Tennessee*

**FOR PLAINTIFF STATE OF TEXAS:**

KEN PAXTON
Attorney General of Texas

15

/*s*/ Trevor Young
BRENT WEBSTER (*Pro Hac Vice*)
First Assistant Attorney General
GRANT DORFMAN (*Pro Hac Vice*)
Deputy First Assistant Attorney General
JAMES LLOYD (*Pro Hac Vice*)
Deputy Attorney General for Civil Litigation;
Chief, Antitrust Division
TREVOR YOUNG (*Pro Hac Vice*)
Deputy Chief, Antitrust Division
WILLIAM SHIEBER (*Pro Hac Vice*)
JONATHAN WOODWARD (*Pro Hac Vice*)
Assistant Attorneys General
Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Telephone: (512) 463-1710
Trevor.Young@oag.texas.gov
*Attorneys for State of Texas*

**FOR PLAINTIFF STATE OF UTAH:**

SEAN D. REYES
Attorney General of Utah

/*s/* Marie W.L. Martin
MARIE W.L. MARTIN (*Pro Hac Vice*)
Assistant Attorney General
Utah Office of the Attorney General
350 N. State Street, Suite 230
Salt Lake City, UT 84114
Telephone: (801) 366-0375
Fax: (801) 366-0378
mwmartin@agutah.gov

*Attorneys for State of Utah*