```
 1

 2                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 3
     ------------------------------------------------------------
 4                              )
     United States of America,  )  File No. 23-cv-3009
 5   State of Minnesota, State of )         (JRT-JFD)
     California, State of North  )
 6   Carolina, State of Tennessee, )
     State of Texas and State of )  St. Paul, Minnesota
 7   Utah,                       )  April 3, 2024
                                 )  10:04 a.m.
 8           Plaintiffs,         )
                                 )
 9   vs.                         )
                                 )
10   Agri Stats, Inc.,           )
                                 )
11           Defendant.          )
     ------------------------------------------------------------
12

13

14

15

16

17          BEFORE THE HONORABLE JOHN F. DOCHERTY
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
18
                        (MOTION HEARING)
19

20

21

22

23

24
          Proceedings recorded by mechanical stenography;
25   transcript produced by computer.
```

```
 1       APPEARANCES:

 2       For the Plaintiff The      United States Department of
         United States of          Justice
 3       America:                   Antitrust Division
                                    DEVIN REDDING, ESQ.
 4                                  EUN-HA KIM, ESQ.
                                    JAMES H. CONGDON, ESQ.
 5                                  MARK HENRY MICHAEL SOSNOWSKY,
                                    ESQ.
 6                                  PETER A. NELSON, ESQ.
                                    WILLIAM FRIEDMAN, ESQ.
 7                                  450 Fifth Street NW
                                    Washington, DC 20530
 8
         For the Plaintiff State   Minnesota Attorney General's
 9       of Minnesota:             Office
                                    KATHERINE MOERKE, ESQ.
10                                 SARAH DOKTORI, ESQ.
                                    445 Minnesota Street
11                                 Suite 1200
                                    St. Paul, Minnesota 55101
12
         For the Plaintiff State   North Carolina Department of
13       of North Carolina:        Justice
                                    JONATHAN R. MARX, ESQ.
14                                 114 West Edenton Street
                                    Raleigh, North Carolina 27603
15
         For the Plaintiff State   California Department of Justice
16       of California             Antitrust Section
                                    ROBERT B. MCNARY, ESQ.
17                                 300 South Spring Street
                                    Suite 1702
18                                 Los Angeles, California 90013

19                                 Office of the Attorney General
                                    NICOLE GORDON, ESQ.
20                                 MICHAEL JORGENSON, ESQ.
                                    455 Golden Gate Avenue
21                                 Suite 11000
                                    San Francisco, California 94102
22
         For the Plaintiff State   Tennessee Attorney General's
23       of Tennessee:             Office
                                    JAMISON TATE BALL, ESQ.
24                                 P.O. Box 20207
                                    Nashville, Tennessee 37202
25
```

```
 1      For the Plaintiff State    Texas Office of the Attorney
        of Texas:                  General
 2                                 Antitrust Division
                                   JONATHAN LUCAS WOODWARD, ESQ.
 3                                 WILLIAM SHIEBER, ESQ.
                                   300 West 15th Street
 4                                 7th Floor
                                   Austin, Texas 78701
 5
        For the Plaintiff State    Utah Office of the Attorney
 6      of Utah:                   General
                                   Antitrust Unit
 7                                 MARIE W.L. MARTIN, ESQ.
                                   350 North State Street
 8                                 Salt Lake City, Utah 84114

 9      For the Defendant:         Hogan Lovells US LLP
                                   JUSTIN BERNICK, ESQ.
10                                 LIAM PHIBBS, ESQ.
                                   JOSH SHORT, ESQ.
11                                 555 13th Street NW
                                   Washington, DC 20004
12
        Court Reporter:            ERIN D. DROST RMR-CRR
13                                 Suite 146
                                   316 North Robert Street
14                                 St. Paul, Minnesota 55101

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

**IN OPEN COURT**

1

2

3

4      THE COURT:  Good morning, everybody.  My name is

5    John Docherty.  I'm the U.S. Magistrate Judge assigned to

6    this case, which is United States of America v. Agri Stats,

7    23-cv-3009.  I was here, although darkened out, when the law

8    clerk took attendance.

9      We're here this morning for oral argument on a

10    motion by Agri Stats to stay discovery.  We've budgeted an

11    hour for this hearing.  I don't know if we'll need honestly

12    a full hour, but I thought that I would give each side 15 or

13    20 minutes.

14      I don't, in these motions hearings, keep time with

15    the rigor of, say, a Circuit Court.  I really want to hear

16    the points that the lawyers want to make, and I want to get

17    my questions answered and that's more important than

18    stopping right when 15 or 20 minutes is up.

19      I am familiar with the papers that you submitted,

20    am also familiar with the overall docket of this case, and I

21    have been the Magistrate Judge on the *Pork* and the *Beef*

22    MDLs, which have some overlap with the present case.  I've

23    been the MJ on those cases for about two years now.

24      So I am ready to go.  My practice is to let a

25    lawyer who is making an argument have a couple of minutes

1    question free to make their headline points and to frame the

2    argument.  And after that, I typically do have a fair number

3    of questions.

4          So the moving party is Agri Stats.  Mr. Bernick,

5    are you ready to proceed?

6          MR. BERNICK:  I am, Your Honor.  Thank you.

7          THE COURT:  Okay.  Go ahead.  You have the floor.

8          MR. BERNICK:  Thank you, Your Honor.  I guess

9    where I will start is where the Court began with its

10   March 6th order, expressing some surprise that we find

11   ourselves in this position where a stay might -- where a

12   motion to stay might be necessary.  We too were a bit

13   surprised by the position the plaintiffs took that discovery

14   should just commence immediately.  But we are where we are.

15         Agri Stats believes that discovery should not

16   commence until two pending motions that are dispositive are

17   resolved, especially since those motions are just going to

18   be heard in two days and imminently resolved by the Court is

19   at least our expectation.

20         And I guess just because it's important to take a

21   quick peek at the merits of those motions, one of those goes

22   to the subject matter jurisdiction of the Court, and that

23   relates to the *Pork* and *Turkey* claims.  And because that

24   jurisdictional question has not been resolved, it's Agri

25   Stats' position that discovery cannot and should not proceed

1  as to those claims until the jurisdictional question is

2  addressed.

3      We don't believe that the plaintiffs have

4  responded to that argument other than to argue the merits of

5  the jurisdictional question.  In other words, it seems like

6  everyone is aligned that this threshold jurisdictional

7  question needs to be addressed before discovery can

8  commence.  And because that's imminent, again, a stay seems

9  warranted here.  And it does not, in our view, seem to make

10  sense for two Courts to be considering -- or two Judges to

11  be considering that same jurisdictional question at the same

12  time.

13      As for the *Chicken* claim, Your Honor, that claim

14  has already been resolved by Judge Durkin on summary

15  judgment in the Northern District of Illinois.  And neither

16  Judge Tunheim nor Judge Durkin, depending on the outcome of

17  the motion to transfer, should resolve Agri Stats' motion to

18  dismiss before duplicative discovery on a resolved claim

19  proceeds in our court.  We think that's a unique procedural

20  posture here that warrants a stay, particularly since the

21  stay is short.

22      There's also another factor, Your Honor, and

23  that's that there's no reason in our view to depart from the

24  well-reasoned opinion of Judge Bowbeer.  She heard argument.

25  I was in her court arguing issues related to the stay of

1    discovery that was imposed in the *Pork* case.

2        And like in that case, Agri Stats is not saying

3    there should be a wholesome halt to all discovery efforts.

4    We're willing to engage in discussions to lay the ground

5    work for discovery, about a protective order, ESI order, et

6    cetera.  So -- and I'm using Judge Bowbeer's language here

7    because she used it often with us, so the parties can be

8    ready to hit the ground running.  We don't want unnecessary

9    delay.  We also don't want unnecessary burden, and we agree

10   wholeheartedly with that and we're willing to work with the

11   plaintiffs to do that.

12       And I guess briefly, Your Honor, just to hit on

13   the four elements of the legal standard that the Court is

14   applying here, I don't believe there's a dispute as to those

15   elements.  One is the likelihood of success on those pending

16   motions.  Two is whether there would be hardship to the

17   party who is moving for the stay.  Three is whether there's

18   some sort of hardship or prejudice to the nonmoving party.

19   And then the fourth is whether a stay would conserve

20   judicial resources, and we submit that all of those factors

21   warrant a stay here.  And I can take --

22       THE COURT:  This is probably a good time for me

23   to --

24       MR. BERNICK:  Absolutely.

25       THE COURT:  -- give up my self-discipline and jump

1    in here.  How thorough a look at the merits of the

2    underlying motions do I take, and is it a different

3    thoroughness from what Judge Tunheim will undertake starting

4    with the hearing the day after tomorrow?

5              MR. BERNICK:  I do believe it is a different level

6    of thoroughness, Your Honor.  And this is actually where I

7    was going to head next is what Judge Bowbeer did in *Pork*.

8    And she said it makes little sense there for the Court to

9    delve deeply into the merits of the motions that will be

10   heard and resolved by the District Judge and in short order.

11   We agree with that here.

12             But even to the extent that you believe it's

13   appropriate to dig a bit deeper into the merits of those

14   arguments, we're prepared to argue them.  I guess I'd

15   emphasize just a couple of points that we think are

16   sufficient to meet our standard there.

17             The motion to dismiss arguments that we raise here

18   cannot be baseless where the Government, for example,

19   previously told a criminal jury that it agreed with those

20   arguments, essentially.  And in the *Penn* trial, the

21   Department of Justice argued that the reports at issue here,

22   quote, don't even tell you the current competitor's pricing

23   for a customer.  They are much higher level than that.  They

24   cannot be used to figure out that kind of information.

25   That's precisely the reasoning that Judge Durkin applied

1    when granting summary judgment to Agri Stats in those claims

2    with a massive discovery record.  A record I've never seen

3    the likes of which before.  Over 400 depositions, millions

4    and millions of documents, other things.  So we're dealing

5    with the same exact claims.

6          THE COURT:  What you are saying, Mr. Bernick, is

7    that you've got enough to meet your standard.

8          MR. BERNICK:  Correct.

9          THE COURT:  I'm just not clear on what your

10   standard is.  I don't think you're saying that I've got to

11   do what Judge Tunheim is about to do, which is do a thorough

12   jurisdictional analysis here.  But how much do I need to do

13   in order to make a decision?  Because it can't be that you

14   can just write, you know, a one-page dismissed for lack of

15   jurisdiction, signed Justin Bernick, and stop everything.

16         MR. BERNICK:  That's right.

17         THE COURT:  So somewhere I've got to say there's

18   at least enough here to justify a stay.  I'm not saying

19   there's enough here to justify granting the motion, but

20   enough to justify granting the stay.  And my question is how

21   much is that enough that I'm --

22         MR. BERNICK:  I would direct the Court to the

23   *Danger v. Nextep Funding* case that we cited in our papers.

24   It's a District of Minnesota case where the Court says, To

25   demonstrate substantial grounds, a movement -- movant,

1    quote, must show more than a mere possibility that the

2    motion will result in a decision in its favor but need not

3    show, quote, a greater than 50 percent probability.

4         So I think if we had a motion on the table that

5    was clearly frivolous and was destined to fail in front of

6    Judge Tunheim, then you, as the presiding judge over this

7    motion, should exercise a gatekeeping function, and that

8    would be a factor in the decision.  I don't think that's

9    where we are where this is a frivolous motion, either with

10   respect to the *Chicken* reports, with respect to our *stare*

11   *decisis* argument, or with respect to the jurisdictional

12   argument.

13        These are weighty arguments that the Court needs

14   to take seriously.  We believe they will prevail.  The

15   Government believes they will not.  But I don't believe it's

16   necessary for you to pre -- to rule ultimately on the

17   merits.  It doesn't have to get to a probability standard.

18   It's just more than a mere possibility.  That's what the

19   Court said in that case.

20        THE COURT:  Okay.  I have two questions about the

21   burden of discovery because you write quite a bit about

22   that, say several times, you know, Agri Stats is a small

23   business.

24        MR. BERNICK:  Correct.

25        THE COURT:  Only 70 employees facing 80 lawsuits,

1   et cetera, et cetera.

2          Two questions:  Number One, burden on Agri Stats.

3   Agri Stats has already produced a great deal of discovery

4   in -- first of all, in the private litigation, second of

5   all, in response to the DOJ's use of CIDs before filing

6   suit.

7          MR. BERNICK:  Right.

8          THE COURT:  DOJ identifies what I'll call the

9   delta, the additional discovery, as -- looks like it's

10  mostly focused on third parties.  They indicate that they

11  have got about 44 Rule 45 subpoenas that they want to get

12  out.  So what is the burden to Agri Stats?  What is -- I

13  mean, I know that this is -- these are huge cases.  I mean,

14  I'm the Magistrate Judge on -- on these cases.  I know how

15  big the record is.  But what's the difference here, and

16  what's the difference to Agri Stats and not to recipients of

17  Rule 45 subpoenas?

18         MR. BERNICK:  Thank you, Your Honor.  It's an

19  important question.  So I guess first what I'd say is

20  notably absent from their papers is some sort of stipulation

21  that no further document discovery or depositions of Agri

22  Stats is necessary.  They have said that they would try to

23  keep it minimal.  But in our conversations, including with

24  respect to the 26(f) conference that we had, they were very

25  clear that they do intend and they have served document and

1    data requests already, and they could serve more and they

2    haven't said that they will not serve more.

3          There will be depositions of Agri Stats'

4    employees, some of whom have already been deposed,

5    Your Honor, five, six times already in this case.  This

6    is -- this is an enormous burden on a very small company.

7    And the number -- the 80 lawsuits is a significant

8    understatement.  It's a massive undertaking here.

9          But there's also a really important difference

10   between this case and the other cases that Agri Stats is

11   defending.  In the other cases, Agri Stats has

12   co-defendants.  And with those 450 depositions that took

13   place, there's no way that Agri Stats could even afford to

14   have a person in the room for all those 450 depositions.

15         Right now, the Government is asking for 50

16   depositions, and this isn't a case where I believe Agri

17   Stats can just defend its own witnesses and do nothing with

18   respect to the third-party depositions.  It's going to have

19   to participate actively in third-party discovery in this

20   case, which should not commence.  And that's both in a

21   defensive posture with respect to the discovery that the DOJ

22   is seeking, but there may also be affirmative discovery that

23   Agri Stats now is solely responsible for, whereas, in the

24   other cases, it could largely, and I'll be frank here,

25   piggyback off the efforts of far larger companies that were

1    engaged in those affirmative discovery efforts.

2            And I guess the final thing that I'd say is the

3    other producers are not in the room today.  And I know that

4    that's not one of the explicit factors that's addressed in

5    the legal standard.  We do think it's important to note that

6    an additional 40 depositions on these non-parties is a

7    significant burden on them as well that we think also should

8    weigh in the balance here given what the Government has said

9    about the need for extensive discovery to those third

10   parties.

11           So I am significantly concerned, Your Honor, about

12   the constraints on Agri Stats' resources to be able to even

13   pursue this discovery.  And so that, in our mind, means that

14   there should be a gating issue here determining whether

15   those claims should proceed before we move into an extensive

16   discovery phase.

17           THE COURT:  All right.  I think you've anticipated

18   the second question I had about burden.  You're not asking

19   for a full stay.  You're saying that negotiations on a

20   protective order will go forward; correct?

21           MR. BERNICK:  That's right, Your Honor, and,

22   actually, the Government gave us a draft.  We redlined it,

23   sent it back.  I think we're waiting for a return from them.

24   We're happy to move forward with that.

25           We've also just recently, Your Honor, responded to

1    questions about data systems.  We're doing what we can,

2    without creating an undue burden and hardship on our client,

3    to get us ready in case discovery needs to proceed.  Again,

4    we don't believe it should.  We believe this case shouldn't

5    move forward, but if it does, we understand, per Judge

6    Bowbeer's instructions, that we need to be ready to go and

7    we're committed to doing that.

8         THE COURT:  And you are also prepared to go ahead

9    on negotiating an ESI protocol, and you'll make your

10   26(a)(1) disclosures?

11        MR. BERNICK:  Correct, Your Honor.

12        THE COURT:  Okay.  And I guess the question I had

13   was whether you'd be okay with the Rule 45 subpoenas going

14   forward given that that, in my view, wasn't directed at Agri

15   Stats, but I think you've answered that question, which is,

16   no, you would oppose expanding the exceptions to the stay to

17   include Rule 45?

18        MR. BERNICK:  That is the position that Agri Stats

19   would take.  And I would say that if that were to go

20   forward, my guess is we'd find ourselves right back here

21   with motions practice brought by those recipients of the

22   subpoenas from the other producers, who I know well from

23   these other cases.

24        So I think they would assert significant burden

25   objections too, and we'd find ourselves right back here.

1    But there would be a burden on Agri Stats as well from

2    having to move forward with that third-party discovery.

3              THE COURT:  All right.  And then one thing that

4    DOJ made a point of in their brief, and I don't know to what

5    extent this will matter to the decision that I need to make,

6    but Agri Stats is not producing these reports right now.

7    DOJ's view is that they do plan to resume -- I'll let

8    Mr. Sosnowsky speak to this, but my understanding is DOJ

9    says they do plan to resume after the private litigation is

10   over and do point out that there's a joint motion to

11   continue sealing in front of me where one of the things that

12   Agri Stats wants to keep sealed is pricing of their reports.

13   And that is at least, on a first look, not consistent with

14   we have no plans to ever do this again position.

15             MR. BERNICK:  A couple of things in response to

16   that, Your Honor.  I think the most important one is that,

17   as the Government notes, a lot of these customers cross over

18   into different proteins, and disclosure of even the amount

19   of the price levels for reports that are -- in reports that

20   have ceased, the *Pork* and *Turkey* reports, have a bearing on

21   the discussion of prices of the *Chicken* reports, which are

22   ongoing.  And there's no plans to cease those *Chicken*

23   reports.

24             So this isn't something where we can draw sort of

25   a neat circle around anything related to *Pork* and *Turkey* and

1    say it doesn't have a competitive impact on the business.

2    It does have a competitive impact because some of those same

3    customers are negotiating pricing for *Chicken* reports and

4    those are one-off pricing negotiations.  So that's where

5    we're being cautious about that issue.  I understand there's

6    some facial tension in that argument, but that's the basis.

7    It's not because we believe that they'll be used in

8    subsequent *Pork* or *Turkey* report negotiations.

9            THE COURT:  Okay.

10           MR. BERNICK:  And I'll make one other comment too

11   because I think there's a lot of ink that's been spilled in

12   several motions here about what may or may not happen with

13   these *Pork* or *Turkey* reports.  Let's put to the side --

14   let's assume for the sake of argument that the Government is

15   right, that the minute there's a ruling that the *Pork* and

16   *Turkey* reports are lawful by a District Court, those reports

17   will -- that Agri Stats would desire for those reports to

18   resume because it has a business to run.  It cannot do that

19   because it doesn't have the data to restart those reports.

20   It just doesn't have the ability to do any of that work.

21           And that distinguishes all of the cases that the

22   Government has put in front of the Court with respect to

23   mootness and voluntary cessation.  This was no voluntary

24   cessation for this litigation.  These reports ended long ago

25   because Agri Stats could not produce them.  There's no facts

1    in the record, the Government hasn't identified any,

2    despite, as you noted, Your Honor, having massive discovery

3    through the CIDs, there's no facts showing that we're going

4    to get this data that would allow us to do the reports.

5          And one final issue, Your Honor, is that it's not

6    enough just to say that the reports would restart.  These

7    reports are lengthy.  They have a lot of data elements.  And

8    the Government, despite Agri Stats pressing the Government

9    for frankly months and months now to identify the particular

10   data elements that are problematic, we don't know what those

11   are.  And there's no factual allegations that even resumed

12   reports would contain those particular data elements that

13   the Government finds problematic.

14         And we -- look, to be -- to step back a bit, we'd

15   be happy to engage the Department of Justice about what

16   those data elements might be because we have no intention of

17   sharing competitively sensitive information.  There's no

18   allegations that even if the reports were resumed, they

19   would have those specific data elements in them.

20         So I think there's no factual dispute over these

21   underlying facts.  Even assuming a world where Agri Stats

22   would desire to resume their reports, it cannot do that, and

23   that means there's no case or controversy here.

24         THE COURT:  All right.  You've got just a couple

25   of minutes left, because I do want to give Mr. Sosnowsky

1    adequate time.  You can tell me anything that you think it's

2    important for me to hear, or you can reserve time for

3    rebuttal.

4              MR. BERNICK:  I would just mention one thing

5    quickly and then reserve the balance of my time, and that's

6    that there's absolutely no prejudice to the plaintiffs in

7    this situation.  They have a massive discovery record that

8    they have already compiled on issues.  They are not starting

9    from square one.  A stay will be short, likely a matter of

10   weeks or so.

11             But in contrast, the Government waited 13 years

12   since beginning its investigation of Agri Stats to bring

13   this lawsuit, waited 7 years after the first private cases

14   were filed, and then did not bring this claim before this

15   Court until three months after another judge rejected that

16   claim.

17             These are very unique circumstances, and so

18   everything they say in their papers about this being some

19   urgent public need to vindicate an antitrust violation rings

20   a bit hollow against that backdrop.  And they certainly cite

21   no cases in their papers saying that that public interest in

22   enforcing the antitrust laws means there can never be a

23   short stay of discovery while a motion to dismiss is

24   pending.

25             So we've talked about the merits, we have talked

1    about the burden on Agri Stats, but I wanted to have that

2    quick note about the potential prejudice to the plaintiffs,

3    which if it exists at all, is minimal given the procedural

4    history here and the amount of information already available

5    to the Government.

6              And with that, I'll reserve any time I have

7    remaining.

8              THE COURT:  Okay.  Thank.

9              Mr. Sosnowsky, are you still with us?

10             MR. SOSNOWSKY:  Yes, Your Honor.  Can you hear me

11   okay?

12             THE COURT:  Yeah, I can hear you fine.  Good

13   morning.

14             MR. SOSNOWSKY:  Good morning.

15             Thank you, Your Honor.  I think maybe the best

16   place to start is a little bit where Mr. Bernick left off

17   and just talk a little bit about why we're asking for

18   discovery to start right now and the information that we

19   need.  Because I think there's a little bit of a disconnect

20   here as to what the claims are and what information we have

21   available to us and what we need.

22             So at the heart of the claim here is that Agri

23   Stats is in the information sharing business, and they

24   collect a lot of information from processors, and then they

25   share that information from processors.

1              They do that, to be sure, through their reports.

2      They also do that, to be sure, through consulting.  They do

3      that by picking up the phone and talking to processors, and

4      they do that by talking on e-mail to processors.

5              So it's very important, Your Honor, for the

6      plaintiffs here to get our hands on certain data that Agri

7      Stats has and certain data that the plaintiffs -- I'm

8      sorry -- that the processors have.

9              As Mr. Bernick mentioned, we requested this

10     information.  We requested this information during the

11     investigation period, and we're over a year since we've

12     requested that information, and the information is still

13     incomplete.

14             And we've gone back to Agri Stats multiple times

15     and said, Look, let me give you an example.  We know that

16     processors provide you with customer-level information; who

17     they are selling to, what prices they are selling to, how

18     much they're selling to.  But that information isn't in the

19     data that you've provided to us.  Where is that?  Where can

20     we find that?

21             And we asked that in the investigation.  We didn't

22     get that information.  We filed our suit.  We had a 26(f)

23     conference.  I invited Mr. Bernick to have a conversation,

24     as you suggest in your practice pointers, to say, let's talk

25     about that.  Let's talk about the information that's

1   missing.

2           Mr. Bernick said, You're going to need to take a

3   30(b)(6) deposition to get that information.  We then wrote

4   a letter to Mr. Bernick and said, Look, we'll do that.

5   We'll take a 30(b)(6) deposition.  Can you just assure us

6   that that's not going to preclude us from taking another

7   one?  He said, Why don't you instead write written

8   questions.  And so we answered those questions last night at

9   5:00.  And he said, You've had all this information from

10  January.

11          So we're still in the same spot we're in.  That

12  information isn't available to us in the discovery, and it's

13  not available to us in the investigative file.

14          So the problem is is that information takes a long

15  time to process.  It takes time to clean.  It takes time to

16  make sure that we have the information that we need and that

17  it's complete and that it's usable.

18          So what the plaintiffs did here is we followed the

19  script, Your Honor.  Federal Rule of Civil Procedure 26

20  allows discovery to begin.  It's stated in the negative in

21  the actual rule, but it's stated in the positive in the

22  comments that says discovery begins once you've had the

23  Rule 26(f) conference.  And the local rules in the Minnesota

24  Federal Courts allow us to ask for an early conference, and

25  that's what we did.  We asked for the early conference, and

1    then we served discovery.  And there's been no objection to

2    that discovery.  We didn't receive any objections to that

3    discovery request.

4         So that's where we -- accept now that we have

5    this -- I'm sorry -- motion to stay.  So that's where we

6    find ourselves as far as looking for the documents.  Now --

7         THE COURT:  Okay.  Let me jump in here.  My

8    understanding, after reading the papers, was that Justices'

9    theory of the case was that the reports were the information

10   exchange.  What I'm hearing, but I want to confirm, is that

11   information exchange goes on outside of the reports in phone

12   calls, conferences, and things like that.  Am I hearing that

13   right or am I misunderstanding?

14        MR. SOSNOWSKY:  You are hearing that right,

15   Your Honor, but let me make sure that I'm being precise

16   because I don't want to overstate what our claim is.  There

17   is an exchange of information through the reports.  Once

18   those reports go out to processors, Agri Stats offers

19   another service.  And Agri Stats says, Why don't we come out

20   and talk about your report with you.  And one of the things

21   we can do is we can help you find opportunities.  We can

22   help you dissect our reports, and we can talk about here's

23   areas where you have opportunities.  And opportunities is

24   shorthand for raising prices.

25        And in some circumstances --

1          THE COURT:  Okay.  But that presupposes the

2     existence of a report that Agri Stats can use sort of as a

3     marketing wedge to open the door and say, you've got this

4     lovely report, would you like to hear even more.  We can

5     come out and talk.  Is that what I'm hearing?

6          MR. SOSNOWSKY:  It does presuppose a report,

7     Your Honor.  I would say that, you know, when I think of

8     reports and when I think of benchmarking reports, it's

9     usually a fairly standardized report.  I'll say that each

10    processor kind of gets a bespoke set of reports as well, so

11    it's not as simple as saying Processor A gets this report.

12    Processor A may get a suite of reports that have the

13    information in different ways.

14          THE COURT:  Right.

15          MR. SOSNOWSKY:  And then Agri Stats will

16    also -- I'm sorry, Your Honor.

17          THE COURT:  No, no, finish what you were going to

18    say, but then I do have a question.

19          MR. SOSNOWSKY:  Sure.  And then our understanding

20    is that Agri Stats will have conversations with them, and

21    there may be questions along the way in between reports.

22    Hey, we're looking at this.  We'd like some information on

23    this.  We'd like information on that.  We'd like information

24    and --

25          THE COURT:  Okay.  So here's the follow up.  Is

1    there any exchange of information that is taking place in

2    the full absence of reports, or does all information

3    exchange either take the form of a report or colloquy that

4    is based upon a report?

5            MR. SOSNOWSKY:  Again, Your Honor, I want to be

6    precise with the record that I have in front of me.  I

7    believe that we have seen examples of information exchange

8    that takes place in the absence of a report specific -- at

9    least one specific request for information in the process of

10    a negotiation with a buyer.

11            THE COURT:  All right.  Because here's --

12    here's -- you are seeking an injunction in this case.  And

13    as I read the papers, even on DOJ's theory of the case,

14    these reports have stopped and these reports -- you are

15    apprehensive that the reports will resume but you say that

16    the reports will not resume until the private litigation is

17    over.

18            And as the Magistrate Judge on the *Pork* case and

19    the Magistrate Judge on the *Beef* and *Cattle* MDL case as

20    well, I rate the chances of that private litigation ending

21    before Judge Tunheim rules on a motion to dismiss as pretty

22    close to zero.  Do you see it differently?

23            MR. SOSNOWSKY:  Let me make sure I'm following

24    Your Honor.

25            THE COURT:  Yeah.

1          MR. SOSNOWSKY:  Before Judge Tunheim rules on our

2     motion to dismiss, it's unlikely that the private litigation

3     will end.  Is that --

4          THE COURT:  That is -- no.  Before Judge Tunheim

5     rules on Agri Stats' motion to dismiss --

6          MR. SOSNOWSKY:  Sorry.

7          THE COURT:  -- it is unlikely that the private

8     litigation will have ended.

9          MR. SOSNOWSKY:  I believe that's the case.

10         THE COURT:  Okay.  Then what is the harm in

11    waiting and not -- and staying discovery until that motion

12    is decided given that it is a -- not just a, you know, run

13    of the mill 12(b)(6) motion, but a motion to dismiss for

14    lack of jurisdiction, which, as you know, is something that

15    Federal Courts are pretty sensitive about?

16         MR. SOSNOWSKY:  Sure.  And, Your Honor, there's

17    probably about 16 points I'd like to make on your question,

18    but let me start with the obvious -- let me start with the

19    first one, which is that the *Broiler* reporting is continuing

20    to this day.  The *Broiler* reporting is going on.  The

21    consulting is going on.  That activity -- entire activity is

22    happening.

23         The *Broiler* claims will be -- in our case will be

24    tried with the *Pork* and the *Turkey* claims.  So, you know,

25    there's -- we'd like to get that stopped, and if we have to

1    stop and wait for -- you know, even if we started *Chicken*

2    and then we have to hit pause on *Pork* and *Turkey*, we're not

3    going to get the relief on the ongoing conduct that we're

4    seeking as quickly as we believe is necessary.  So that's

5    the first point.  There's conduct that's ongoing in that

6    case.

7         Your Honor, I would argue you asked a question

8    previously how thoroughly you should take a peek at the

9    merits.  I believe the standard is your -- what you should

10   review is to see if the claim is clearly without merit or

11   the dispositive motion is likely to resolve the entire

12   litigation.

13        Count 1, Count 1 is going forward, Your Honor.

14   There's -- it's black letter law from *Taylor v. Sturgell*,

15   *United States v. Borden*, *Fox Publishing Company v. United*

16   *States*.

17        The -- what happens in a separate case has no

18   impact on our case.  There's absolutely no authority to

19   support Agri Stats' point.  They cite one case, *premier*

20   *electrical*.  That case came out the same way that we say it

21   should.  In *Premier Electrical*, the Seventh Circuit looked

22   at what the Fourth Circuit did and they said, Hey, we agree

23   with the law that the Fourth Circuit is applying, but we

24   have to reverse and remand this because you haven't given

25   the parties a chance to make their factual case.

1    So there's no -- there is no case -- you only need

2    to look at one case to see that Count 1 has no merit.  Okay.

3    With respect to Counts 2 and 3, which are

4    purportedly jurisdictional cases, I would submit,

5    Your Honor, there is not a single case where a United States

6    District Court has said we are without power to enjoin

7    violations of the Sherman Act until the United States meets

8    some heightened pleading standard or -- I'm sorry, I guess

9    their argument is is that to prove that the -- that there's

10    no chance -- that there's a chance that this is going to

11    occur.

12    We've established, Your Honor, through a factual

13    record here, that Agri Stats has planned to restart it.

14    It's in their internal documents.  They have budgeted to

15    restart these reports.  They advertise -- they've maintained

16    relationships with their customers.  They've -- they

17    continue to advertise on their website that they provide

18    certain services in the turkey and pork market.  So these

19    are all -- these all support the idea that they are going to

20    continue.

21    Now, in response, Agri Stats has offered a single

22    declaration that says, we have no present intent to restart.

23    And what we know from the recent Supreme Court case in *FBI*

24    *v. Fikre* is that that is not enough.  And I think it's

25    important, Your Honor, I want to cite one thing that the

```
 1     Court said there, which is that the Constitution -- I'm

 2     missing my quote here.  But the shorter answer is that the

 3     Constitution doesn't deal in strategies.  It deals in

 4     substance.

 5            So what Agri Stats has done is they said to

 6     Your Honor -- they came in and they said, Look, we're going

 7     to -- you know, we need to protect our information about

 8     pork and turkey.  We need to protect this.  It shouldn't be

 9     disclosed.

10            And then they came up with a strategy.  And their

11     strategy is pretty detailed.  It's in pages 5 and 6 of their

12     brief.  And that strategy says, Look, you can't -- you can't

13     prove that we're going to restart.  And if we were going to

14     restart, you can't prove what we're going to say and you

15     can't prove who is going to sign up and you can't prove how

16     people are going to use that information, therefore, the

17     Court has no power to even hear this case, okay.  That's

18     strategy.  That's not substance.

19            The Court is certainly empowered to take a look at

20     the evidence and to enter an injunction that says, we know

21     that Agri Stats has a business model that it is currently

22     employing.  Okay.  We know that that business model is

23     anticompetitive.  We know that they have done it in the

24     past.  We know that these are the problems.  And, Agri

25     Stats, you're enjoined from sharing this type of
```

1     information.

2              It doesn't have to -- and I doubt the Court would

3     be willing to go through an Agri Stats report and say, Okay,

4     I'm going to X out this column, or I'm going to cross out

5     this line.  The Court is going to enter injunctive relief

6     that's going to stop the anticompetitive conduct.  There's

7     certainly enough here to show that there is a danger of that

8     anticompetitive conduct continuing in *Pork* and *Turkey*, and

9     that it should be prevented.

10             THE COURT:  Okay.  And so does that mean that I've

11    got to assess the likelihood that Agri Stats will restart,

12    because that seems to me -- well, go ahead.

13             MR. SOSNOWSKY:  I don't think you need to do that,

14    Your Honor.  I think you need to look and say is the

15    complaint clearly without merit.  And I think you can

16    clearly say, no, the complaint has merit here.

17             THE COURT:  Well, what if you take a hypothetical.

18    What if you sue me to enjoin me from violating the Sherman

19    Act?  Now I'm not violating the Sherman Act, and I'm not

20    capable of violating the Sherman Act.  But if you were to

21    say, Well, yes, but some day you might, you know, you might

22    go into private industry and violate the Sherman Act and,

23    therefore, Judge, hear our case, I think the answer would be

24    no.

25             So where on this -- from absurd to rock solid,

1    where on this continuum do I need to find myself with regard

2    to your complaint before I can say this complaint is solid

3    enough, stay of discovery denied?

4        MR. SOSNOWSKY:  Well, Your Honor, I'd start with

5    the fact that as far as I know, you are not currently

6    violating the Sherman Act.  Okay.  Agri Stats, we allege, is

7    in the *Broiler* market.

8        You don't have a past history -- a recent past

9    history of violating the Sherman Act.  We allege that Agri

10   Stats does and has that history.

11       You don't have -- we don't understand that you

12   have a customer base or a business plan or a strategy of

13   doing that, nor do we understand that you've made plans to

14   do that or that you financially planned to do that.  All of

15   that is in our papers that we set forth.

16       But I would think that the underlying question,

17   Your Honor, is where's the case, where's the case that Agri

18   Stats says says that the Court loses the power to hear this

19   case when they make this argument?

20       The only time this argument that I have ever seen

21   made that the United States lacks standing to enforce its

22   laws is by criminal defendants in saying the United States

23   lacks standing under the tripartite test to enforce a

24   criminal law.  That's the only time I've seen this argument

25   made, and it has been roundly rejected.

1        So there's no basis.  So I would say Your Honor

2   can simply look at the papers and say, Well, has this ever

3   been done before?  Has a Court ever said we don't have the

4   power, we don't have jurisdiction to enforce the Sherman

5   Act?  And the Sherman Act is clear.  It grants the Courts

6   jurisdiction to prevent violations of the Sherman Act.

7   That's in Section 4, prevent is in there.

8        And so Congress certainly thinks you have that

9   power.  The executive branch certainly thinks you have that

10  power.  And no Court -- and, again, Courts have to assess

11  their own jurisdiction.  I have never seen a case where a

12  Court has said, we don't have that power.

13       THE COURT:  All right.  And you must have known

14  this one was coming, but to put it sort of bluntly, where

15  have you all been?  You know, these cases have been going on

16  and going on and I have been on them, and I started my

17  career at the antitrust division and it was like where are

18  they?  And the years go by.  And now it's hurry up, hurry

19  up, let's get this done.

20       Why should I not -- if this is such an egregious

21  violation of the antitrust laws -- or to put it differently,

22  should I take DOJ's lack of involvement in these cases up

23  until recently as circumstantial evidence that DOJ does not

24  assess these cases as solid or serious or something else?

25       MR. SOSNOWSKY:  Your Honor, I think the short

1    answer is no.  I don't think it would be proper to make that

2    inference.

3         I will say that the United States brings its cases

4    when facts and circumstances warrant.  Beyond that, the

5    decision-making process isn't something that I can discuss,

6    but I believe that there's case law, I don't think it's been

7    cited in our brief, but I believe that there's case law that

8    says that Courts actually can't consider that.  There is a

9    variety of decisions, many of which we can't disclose.  So

10   the lack of a prior -- an enforcement action coming into a

11   particular time isn't an inference that relates to the

12   importance of that.

13        That's especially true in the antitrust context,

14   Your Honor, because business processes change.  And the

15   understanding of how they work changes over time.  But I

16   don't think that it's proper.  What I can say is that

17   Section 4 of the Sherman Act is clear, and it says that when

18   a party files the complaint, the Court shall proceed, as

19   soon as may be, to the hearing and determination of the

20   case.

21        THE COURT:  That is exactly what the law says, but

22   the Constitution trumps the statute and the Constitution

23   says Courts -- Federal Courts don't hear cases where there's

24   no case or controversy.

25        MR. SOSNOWSKY:  I understand that, Your Honor, and

1    I would say that I have yet to see of the case.  Mr. Bernick

2    said there was a couple cases in his brief that actually

3    stand for that proposition.  I have read through them.  None

4    of them stand for that proposition.  Yet to see that case

5    where a District Court has said we don't have jurisdiction

6    to hear an enforcement action.

7         THE COURT:  What role does Judge Durkin's decision

8    play in the analysis of this stay motion?

9         MR. SOSNOWSKY:  Your Honor, I would say it

10   plays -- Judge -- okay -- I would say it plays no role.

11   Judge Durkin made a decision on summary judgment.  He

12   evaluated the facts that were presented to him in the

13   *Broiler* case.  And he said you have not come forward with

14   evidence to support your claim, the recent claim.

15        Now, I want to caution because I -- and I didn't

16   get into this because it gets complicated.  There's quite a

17   bit in Judge Durkin's decision that relates to a per se

18   claim and Agri Stats' involvement in that, and, I'm sorry, a

19   price fixing is a straight, you know, price fixing claim.

20   That's not the claim that we brought.  So there's a little

21   bit of overlap in their briefs about that.  That's obviously

22   not this case.

23        But let me put it simply, we could have signed the

24   same complaint that the plaintiffs did.  We didn't.  Ours is

25   substantively different, but we could have.  And the law

1    says that we are entitled to our day in court.  We're

2    entitled to bring our case.  We're entitled to prove our

3    facts.

4         Now what Judge Durkin also did was he denied Agri

5    Stats' motion to dismiss.  So Judge Durkin said, Okay, on

6    the pleadings, you've pled the case, and I have got the

7    power to hear this case, I've got the authority to hear this

8    case.  I'm going to let it go forward.  And on the motion

9    for summary judgment stage, he determined that the

10   plaintiffs had not come forward with evidence.

11        You are not -- you are not presented with the

12   evidence here, Your Honor.  This is a motion to dismiss.

13   And so, you know, to the extent *stare decisis* applies here,

14   we would say that it actually, I guess, would be in favor of

15   denying the motion to dismiss.

16        THE COURT:  All right.  That resolves the

17   questions I had for you -- or at least lets me hear your

18   answers, whether it's resolved or not.  Anything else you

19   think it's important for me to know bearing in mind I have

20   read the papers and I am familiar with the docket and with

21   the overall economic landscape?

22        MR. SOSNOWSKY:  Your Honor, I think it's only that

23   we believe that there are -- you know, what hasn't been

24   really addressed is judicial efficiencies.  We believe that

25   there are some efficiencies if the Court ultimately decides

1    that this case should proceed before the plaintiffs' case.

2    We've outlined those in the brief.  Those efficiencies are

3    hard to realize if we don't start discovery now.  If

4    discovery is put off one to two to three months, and, you

5    know, what Agri Stats has suggested is you can get this done

6    in three months.  And I know Agri Stats wants us to rely

7    almost exclusively --

8            THE COURT:  Four I thought from the --

9            MR. SOSNOWSKY:  Is it four?

10           THE COURT:  Four on the 26(f), and you asked for

11   eight, but you have different starting points.  And I

12   think -- yeah, they want 16 weeks after a ruling on their

13   pending dispositive motions, whereas, if my math is right,

14   you would end fact discovery on October the 25th of this

15   year.  Does that sound right?  I'm not going to hold you to

16   these.  That's in the ballpark?

17           MR. SOSNOWSKY:  I'm sorry, Your Honor, you're

18   right.  I was thinking three months of -- document discovery

19   is completed in three months, and then there's another

20   month --

21           THE COURT:  Okay.

22           MR. SOSNOWSKY:  -- for depositions.

23           But, in short, Your Honor, the idea of trying to

24   get information from Agri Stats, which we haven't gotten in

25   over a year, and then to go and get the information from

1   these non-party processors in that amount of time and be in

2   a position to then do depositions, I would say is next to

3   impossible.

4            And, frankly, if we were in that schedule, in that

5   posture, that's only going to increase the amount of times

6   we're going to come before you, Your Honor.  I just -- I

7   know that that's the case when, you know, you're on a

8   quicker schedule.  You don't have time to really say, okay,

9   is this important enough to bring to the judge.  Everything

10  is important in four months.

11           THE COURT:  Right.

12           MR. SOSNOWSKY:  So I would say that judicial

13  efficiency is in our favor as well.

14           THE COURT:  All right.  All right.  Thank you very

15  much.

16           Mr. Bernick, let's go back to you for rebuttal,

17  but I have do have two specific questions for you.  Number

18  One -- both triggered by what Mr. Sosnowsky was saying.

19           Number one, he has recited a history of

20  frustration with attempting to get information from Agri

21  Stats.  I want to hear your side of that.

22           Number two, I will put the challenge he put to me

23  to you, which is, where is the case that says the United

24  States of America cannot enforce the laws of the United

25  States of America?

1          MR. BERNICK:  Thank you, Your Honor.  I'll take

2     those in turn.  So I guess I'm baffled frankly by the

3     history that Mr. Sosnowsky laid out regarding Agri Stats'

4     engagement with the Department of Justice because that

5     engagement goes back literally over a decade.  We were

6     completely open kimono with the Government when this

7     investigation launched 13 years ago, produced thousands and

8     thousands of documents, submitted white papers, engaged in

9     advocacy, lots of back and forth.  The Government --

10          THE COURT:  Yes, yes.  I think what Mr. Sosnowsky

11     was saying is they have got all this paper, and it doesn't

12     include specific answers to the specific questions that they

13     have asked.  And your response has been, Okay, notice of

14     30(b)(6) deposition, only you can't because we're going to

15     move to stay discovery.

16          MR. BERNICK:  And that's incorrect, Your Honor.

17     There's a massive factual record here.  And what triggered

18     the 30(b)(6) response is they wanted to get on the phone

19     with my company's employees, not in a deposition, nothing,

20     just to talk to them about Agri Stats' business and its

21     data.  And I said, Look, I can't do that in good faith and

22     put my employees on the line directly with the Department of

23     Justice attorneys and having these sidebar communications

24     without being a part of an official discovery record.  If

25     that's where we're headed, we will need a 30(b)(6).  But I

1    want to engage so if you have additional questions, please

2    submit a letter and we're happy to take those up with our

3    client and respond to them in our official capacity.  And

4    that's exactly what we did, Your Honor.

5         And this notion that there's outstanding document

6    questions or some corpus of e-mails or something that's out

7    there, it's just not true because all of those private

8    cases, Your Honor, that this case mirrors, they didn't just

9    focus on the reports.  They dealt extensively with the

10   meetings that Agri Stats had, all the e-mails.  Hundreds of

11   thousands of communications were produced, and I am not

12   sitting here today aware of a single document request that's

13   outstanding to Agri Stats that we did not respond to during

14   the investigation phase.  I'm not aware of a single one.

15        And maybe after this call Mr. Sosnowsky can point

16   us to it so we can figure out where the disconnect is, but

17   we have produced literally millions -- I would be surprised

18   if there was a document in Agri Stats' files that has not

19   been produced as part of discovery in these other cases and

20   then, in turn, produced to the DOJ as part of this process.

21        So I think it's a bit of a disconnect.  We met

22   voluntarily with DOJ to answer their questions.  We met with

23   the front office, and we begged the Department to say,

24   Please tell us what in our reports might be of concern so we

25   can work with you to address it.  And they refused to engage

 1   and filed this lawsuit.

 2           And we're in a very difficult position because we

 3   would love to engage.  We have no intention of violating the

 4   antitrust law.  We're not aware of how we're doing it.

 5   We're not aware of competitively sensitive information in

 6   our reports, neither is Judge Durkin.  If they are aware of

 7   something and sees something we're not, please let us know,

 8   and we have not seen it either in our documents or in the

 9   reports.

10           And the second issue, Your Honor, relates to this

11   question about the precedent.  I think Mr. Sosnowsky is

12   setting up a strawman.  We are not arguing here that the

13   Government doesn't have authority to enforce the antitrust

14   laws.  We're saying exactly what you said about a

15   theoretical antitrust claim against Your Honor that there

16   must be something showing an actual or threatened violation

17   of the antitrust laws in order for the Government to haul a

18   company into court and subject them to discovery.  And that

19   hasn't been met here, and there's ample case law out there

20   that says that the mere desire to restart reports is not

21   enough.  And that's all they've said.  And assuming that's

22   true, assuming that Agri Stats is champing at the bit to

23   restart these reports, they can't do it.  And that's what

24   was missing from Mr. --

25           THE COURT:  Why doesn't the *FBI v. Fikre* case

1    apply here?

2         MR. BERNICK:  I think it does but for the opposite

3    reason.  So the *Fikre* case, Your Honor, dealt with the

4    Government submitting a declaration, Oh, you don't need to

5    worry about this case anymore because we're no longer --

6    we're not going to put this person on the No Fly List.

7    We've taken him off the No Fly List.  You have nothing to

8    worry about.

9         And the Court said, no, that self-serving

10   declaration entered after litigation commenced was not

11   sufficient because the Government could just put him on the

12   list again at any time.  That's completely different than

13   what we have here because Agri Stats didn't cease these

14   reports for this litigation or any other litigation.  It

15   ceased them because it no longer had the data for those

16   reports, and it still doesn't.

17        And so unlike the Government in *Fikre* where the

18   Government could just put the person back on the list the

19   minute litigation is over, it is physically impossible for

20   Agri Stats to engage in the purported antitrust violation

21   that's in the Government's complaint right now.  It can't

22   happen.  And there's no facts that establish it and no

23   discovery that could reveal such facts.

24        So this notion that there might be a disconnect

25   over desire and other things is beside the point because in

1    the *Defenders of Wildlife* case, the Supreme Court said that

2    that is just not sufficient.  These some day intentions

3    without more don't matter.

4          And I know the Government in prior briefing -- and

5    this is another way in which *Fikre* is relevant.  The

6    Government in prior briefing has argued that, well, Agri

7    Stats hasn't recanted, it hasn't conceded the point that it

8    has been violating the law, and, therefore, it might do it

9    again.

10          But *Fikre*, the case that Mr. Sosnowsky is relying

11    on, dealt specifically with that issue and said, and I'm

12    quoting here, Yes, a party's repudiation of its past conduct

13    may sometimes help demonstrate the conduct is unlikey to --

14          THE COURT:  No, slow down.  Slow down a little

15    bit.

16          MR. BERNICK:  Oh, I'm sorry.  Let me start that

17    quote over again.

18          Yes, a party's repudiation of its past conduct may

19    sometimes help demonstrate the conduct is unlikely to recur,

20    and this is a quote, but often a case will become moot even

21    when a defendant vehemently insists on the propriety of the

22    conduct that has precipitated the lawsuit.

23          And so let's assume they are correct about all

24    this, the desire, the fact that we are not recanting.  And

25    as a sidebar, we are not, because we are not aware of it.

1    We have not been engaged with that.  What *Fikre* is saying is

2    that's not enough to establish the fact that there's some

3    sort of case or controversy.

4         So I think the case is important, but for a

5    different reason.  And that's -- the Government keeps trying

6    to put this in this box of mootness.  That we hit a pause

7    button on reports and we can just unpause it.  We can't.

8    There's nothing we can do to start these reports or

9    conversations based on those reports.

10         THE COURT:  Okay.  Thank you very much.  Let's

11    take a pause here.  I will come back and, if possible, I'll

12    let you know a decision right now.  If not, we will get

13    something in writing as soon as we can.  So stand by,

14    please, and it will probably be about -- it will be about

15    five minutes, so if you --

16         MR. SOSNOWSKY:  Your Honor, is it okay if we go

17    off video?

18         THE COURT:  Yes, it is.

19         MR. SOSNOWSKY:  Thank you.

20    (Recess taken at 10:52 a.m.)

21              *    *    *    *    *

22    (11:12 a.m.)

23                   **IN OPEN COURT**

24

25         THE COURT:  All right.  Well, at least the marque

1    names are back on camera, so I had hoped -- given that the

2    motion to dismiss oral argument is going to be on Friday, I

3    had hoped to give you a decision here today.  And I know

4    that obviously the parties want a decision.

5         I find myself not able to do that.  I'm still

6    working through a couple of things that were said during the

7    argument.  I don't think this will take long.  I don't think

8    that this will be a long written product.  But it will be --

9    it will need to be in writing, and I -- I do regret that.  I

10   wish that I was able to do this orally here this

11   afternoon -- well, I guess for some of you this afternoon,

12   for others of you this morning.

13        So I will say that the -- the motion is -- is

14   under advisement.  And I think that that will -- I think

15   that will probably do it for today.  Anything else from

16   either party before we break?

17        MR. BERNICK:  No, Your Honor, thank you, for Agri

18   Stats.

19        MR. SOSNOWSKY:  Thank you, Your Honor.  Nothing

20   from plaintiffs.

21        THE COURT:  Mr. Bernick -- Mr. Sosnowsky, I want

22   to have a word with Mr. Bernick.  It does not involve the

23   case or the merits of the case.  Any objection?

24        MR. SOSNOWSKY:  No, Your Honor.

25        THE COURT:  Mr. Bernick, would you just stay on

1    the line for a little bit?

2            MR. BERNICK:  I'd be happy to, Your Honor.

3            THE COURT:  Okay.  And would everyone else please

4    leave.  And, Ms. Drost, this does not need to be on the

5    record.

6        (Court adjourned at 11:13 a.m.)

7                         *     *     *

8

9

10       I, Erin D. Drost, certify that the foregoing is a

11   correct transcript from the record of proceedings in the

12   above-entitled matter to the best of my ability.

13

14            Certified by:   *s/ Erin D. Drost*

15                            Erin D. Drost, RMR-CRR

16

17

18

19

20

21

22

23

24

25