UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA et al,

    Plaintiffs,

v.

AGRI STATS, INC.,

    Defendant.

Case No. 23-CV-3009 (JRT/JFD)

**ORDER DENYING MOTION TO STAY DISCOVERY**

---

Defendant Agri Stats's Motion to Stay Discovery (Dkt. No. 99) came before the Court on April 3, 2024. Justin Bernick, Esq. argued on behalf of Agri Stats while Mark Sosnowsky argued for the United States. (Hr'g Mins., Dkt. No. 110 (listing all appearances of counsel).) After hearing oral argument and studying the parties' briefs, the Court respectfully denies the motion.

### I. BACKGROUND

Agri Stats is a market research and consulting company that sells reports on various U.S. protein markets to its subscribers. (Am. Compl. ¶¶ 2–4, Dkt. No. 50; Def's Mem. in Supp. of Mot. to Stay Disc. 6, Dkt. No. 101.) Agri Stats obtains data from its customers, "audits and anonymizes" the data, then "prepares reports that allow its customers to compare the efficiency of their" business with Agri Stats's other customers. (Def.'s Mem. in Supp. of Mot. to Dismiss 7, Dkt. No. 79.) Agri Stats provides follow-up consulting for its customers over email and telephone. (Tr. of Apr. 3, 2024 Mot. Hr'g 20:1–4; 22:14–24; 23:6–24:10.) The Plaintiffs in this case are the United States and several individual states.

1

They bring three Sherman Act § 1 claims against Agri Stats, one for each of its subscription reports on the pork, chicken, and turkey markets. (*Id.* at ¶¶ 162–67.) Agri Stats filed a motion to transfer venue (Dkt. No. 42), then a motion to dismiss the complaint (Dkt. No. 77). It argues that the Court does not have subject matter jurisdiction over this case. (Def.'s Mem. Supp. Mot. Dismiss 8–10.) These two motions are under advisement with the district judge, the Hon. John Tunheim. (Dkt. No. 95.)

In February 2024, Plaintiffs requested an early Rule 26(f) conference with Agri Stats. (Ex. 1, Dkt. No. 102); D. Minn. LR 26.1 ("Any party may request a Rule 26(f) conference before the date on which Rule 26(f) requires the conference to be held.") Agri Stats attended the conference as required by this District's Local Rules. D. Minn. LR 26.1(d)(2). Three days later, before the Court convened a scheduling conference under Fed. R. Civ. P. 16, Plaintiffs served their first set of requests for production of documents. (Ex. 2 at 12[1], Dkt. No. 102-1.) The parties filed their Rule 26(f) report with the Court in March and Agri Stats moved for a stay of discovery later that month. (*See* Report of Rule 26(f) Planning Meeting, Dkt. No. 97; Mot. Stay Disc., Dkt. No. 99.) This Court has not yet held a Rule 16 conference or issued a scheduling order for this case because if the motion to stay discovery were granted, there would be no discovery to schedule. However, because the Court denies the motion, a pretrial scheduling conference pursuant to Fed. R. Civ. P. 16 will be held by Zoom, audio-only on **June 21, 2024 at 3:30 PM CST** with a Rule 26(f) conference and resulting report due on or before **June 14, 2024**.

---

[1] All references are to the page numbers assigned by the CM/ECF system, which are printed in blue ink on the top of every page filed in this action.

Agri Stats seeks a stay of discovery until Judge Tunheim issues his ruling on Agri Stats's motions to dismiss (or transfer venue) because the motion "raises fundamental questions going to the power of this Court to adjudicate Plaintiffs' putative pork and turkey claims." (Def.'s Mem. Supp. Mot. Stay 6.) Agri Stats proposes that the parties serve initial disclosures under Rule 26(a) and negotiate proposed orders on electronically stored information and confidentiality designations, but no more. (*Id.* at 7 (citing Magistrate Judge Bowbeer's order in *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2019 WL 480518, at *4 (D. Minn. Feb. 7, 2019)); Tr. 7:2–11, 13:17–14:11.) Without a "brief" stay, Agri Stats says it will be unfairly burdened by discovery requests from Plaintiffs, who already have "more than 30 million documents, over 600 deposition transcripts, and terabytes of structured data all relating to the claims" from previous litigation and civil investigative discovery demands. (Def.'s Mem. Supp. Mot. Stay 6–7.)

Plaintiffs argue that discovery should not be stayed because Agri Stats's arguments for dismissal lack merit and, in any event, Agri Stats has not shown it would be harmed by submitting to discovery now. (Pls.' Mem. in Opp'n to Mot. to Stay Disc. 1, Dkt. No. 105.) According to Plaintiffs, a stay in this case would undercut one of the public policy objectives of the Sherman Act, specifically the swift enforcement of the antitrust laws. (*Id.* at 2 (citing 15 U.S.C. § 4).)

## II.   LEGAL STANDARDS

The power of a federal district court to stay discovery in civil cases has two sources. The first is Federal Rule of Civil Procedure 26(c), which empowers courts to stay discovery if good cause is shown. Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an

3

order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . . ."); *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-CV-1356 (ADM/FLN), 2013 WL 4487505, at *1 (D. Minn. Aug. 20, 2013); *Riehm v. Engelking*, No. 06-CV-293 (JRT/RLE), 2006 WL 2085404, at *1 (D. Minn. July 25, 2006). The second source of this power is the courts' inherent authority to control their dockets. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997). Courts exercise their authority to stay for various reasons, but the reason most pertinent to this motion is "judicial parsimony": "when one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided." § 2040 *Limitation of Scope of Discovery*, 8A Fed. Prac. & Proc. Civ. § 2040 (3d ed.)

The party asking the court to stay discovery has the burden of showing good cause. *Christopherson v. Cinema Ent. Corp.*, No. 23-CV-3614 (JWB/LIB), 2024 WL 1120925, at *1–2 (D. Minn. Mar. 6, 2024). Filing a motion to dismiss is not sufficient in itself to establish good cause. *TE Connectivity Networks, Inc.*, 2013 WL 4487505, at *2; *Wells Fargo Ins. Servs. USA, Inc. v. Kyle King & Sherman Ins. Agency, Inc.*, No. 15-CV-4378 (PJS/HB), 2016 WL 6892108, at *4 (D. Minn. July 29, 2016) ("[A]ll motions to dismiss for lack of subject matter jurisdiction are not created equal when it comes to the decision to stay, or not stay, discovery. It may often make sense for discovery to continue while a federal court considers whether a case that will probably be litigated no matter what will

4

proceed before it or in some other court. . . .") Neither is it sufficient to cite the "cost inherent to litigation" in pushing for a stay. *Christopherson*, 2024 WL 1120925, at *6. There must be some unique facts or circumstances that would make the discovery not just burdensome but unduly burdensome. *Id.*

District courts have wide discretion to weigh the competing interests of the parties and find a practical solution. See *TE Connectivity Networks, Inc.*, 2013 WL 4487505, at *2. In her order granting a partial stay of discovery in *Pork*, Magistrate Judge Bowbeer explained that many "factors may inform a court's decision whether to stay discovery while a motion to dismiss is pending, including the merits of the motion, the scope of the discovery, the potential harm to the plaintiff if discovery is delayed, the potential hardship or injustice to the defendant if discovery proceeds, and the resources of the parties and the Court." *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2019 WL 480518, at *3 (D. Minn. Feb. 7, 2019); *see also Christopherson*, 2024 WL 1120925, at *1–2 (repeating four of those five factors); *Kellogg v. Watts Guerra, LLP*, No. CV 18-1082 (DWF/BRT), 2018 WL 3432048, at *1 (D. Minn. July 16, 2018) (repeating three); *see generally* Kevin J. Lynch, *When Staying Discovery Stays Justice: Analyzing Motions to Stay Discovery When a Motion to Dismiss is Pending*, 47 Wake Forest L. Rev. 71, 85 (2012) (acknowledging there is no universally accepted test and listing five factors that courts typically apply: (1) the interest of the plaintiff in starting discovery—or the burden a stay will impose on plaintiffs; (2) the burden that starting discovery places on defendants; (3) the court's convenience; (4) non-party interests, and (5) the public interest). The Court will

take each factor listed by Magistrate Judge Bowbeer in turn, analyzing the public's interest alongside the interests of the Plaintiffs, because they represent the public.

### III. ANALYSIS

#### A. The Merits of the Dispositive Motions Do Not Support a Stay.

In deciding whether to stay discovery, the Court's first considers the merits of the complaint and of the dispositive motions pending before the court. If the complaint is clearly doomed, or a motion to dismiss "seems likely to resolve the entire litigation" a stay may be appropriate. *TE Connectivity Networks, Inc.*, 2013 WL 4487505, at *2. Put another way, if the dispositive "motion 'appears to have substantial grounds,' and is 'not unfounded in the law,'" a stay may be appropriate until the motion is decided. *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-MDL-2795 (MJD/KMM), 2018 WL 2122869, at *1 (D. Minn. May 8, 2018). The party seeking a stay bears the burden of showing that there is "more than a mere possibility" that the court will decide the dispositive motion in its favor; the party does not have to show that it is more likely than not that it will prevail, however. *Danger v. Nextep Funding, LLC*, No. 18-CV-567 (SRN/LIB), 2019 WL 4917181, at *3 (D. Minn. Jan. 22, 2019).

"In determining whether a movant seeking a stay has shown a likelihood of success on the merits, a court must take a 'peek' into the merits of the pending dispositive motion." *Id.* (citing *TE Connectivity Networks Inc. v. All Systems Broadband, Inc.*, No. 13-CV-1356 (ADM/FLN), 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013).) Plaintiffs argue that the undersigned need only determine whether the complaint is meritless or if a dispositive motion could terminate the case. (Tr. 26:9–12.) Agri Stats contends that the undersigned's

review should be less thorough than the analysis Judge Tunheim is conducting, and be limited to whether Agri Stats has shown "more than a mere possibility that the motion will result in a decision in its favor." (Tr. 9:17–10:12.) Agri Stats is correct when it suggests that the undersigned's role is to "exercise a gatekeeping function" and not rule on the merits of the dispositive motion itself. (*Id.* 10:4–12.) The undersigned will consider whether it is more than merely possible that Agri Stats's dispositive motion will terminate the entire case. The district judge, applying a different standard for a different purpose, may or may not reach the same conclusion. *Cf. In re EpiPen Direct Purchaser Litig.*, No. 20-CV-0827 (ECT/JFD), 2023 WL 4104000, at *2–3 (D. Minn. June 21, 2023) (affirming magistrate judge's discovery ruling over objections that he improperly decided a merits issue by noting that the ruling was in the context of a relevancy determination and was not a final decision on a merits issue).

Agri Stats makes four arguments in favor of dismissal, three against Plaintiffs' claims about Agri Stats's pork and turkey reports and one argument about its chicken reports. (Def.'s Mem. Supp. Mot. Stay 10-11.) The undersigned has reviewed the filings carefully and concludes that at least Agri Stats's argument in favor of dismissing Count I, about the chicken reports, has only a "mere possibility" of success. Because Count I is likely to survive Agri Stats's Motion to Dismiss, and because the undersigned finds it would be inappropriate to stay discovery as to some counts and not others, the undersigned concludes that the merits of the motion to dismiss weigh in favor of denying the motion to dismiss.

### i. The Parties' Arguments on the Merits of Motion to Dismiss the Pork and Turkey Claims

The parties' arguments regarding the pork and turkey claims, although not determinative of this motion given the Court's analysis of the chicken claim below, are worth summarizing for context. Agri Stats says there is no case or controversy for the Court to adjudicate because Agri Stats has not produced pork or turkey reports for nearly five years and "cannot unilaterally restart them" because it has neither the data it needs to compile reports nor the customers who would buy them. (Def.'s Mem. Supp. Mot. Dismiss 10-11.) Plaintiffs retort that Agri Stats's internal documents, public statements, and budgets suggest the opposite. (Pls.' Mem. Opp'n Mot. Stay 6; Pls.' Redacted Mem. Opp'n Mot. Dismiss 7–8, Dkt. No.; Tr. 27:12–20.) They expect Agri Stats to start producing the reports again once the threat of litigation has passed, notwithstanding Agri Stats's declaration that it does not intend to restart publication. (Pls.' Mem. Opp'n Mot. Stay 6.) The declaration, Plaintiffs argue, is not enough to moot the claims about pork and turkey under *FBI v. Fikre,* 601 U.S. 234, 242 (2024). (*Id.* (citing 601 U.S. 234, 242 (2024) (case not moot because "the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past.").)[2] Next, Agri Stats says that because the reports are out of circulation, Plaintiffs cannot show an impending violation of the antitrust laws. (Def.'s Mem. Supp. Mot. Stay 10–11.) Third and

---

[2] For its part, Agri Stats argues that *Fikre* is distinguishable because the cessation of the challenged activity in that action was voluntary. (Tr. 40:2–23.)) Agri Stats did not want to stop producing the reports, but it lacked the data from participating producers to continue. (Id.)

8

finally, Agri Stats argues that the state Plaintiffs do not have standing to sue because they failed to plead antitrust injury. (Def.'s Mem. Supp. Mot. Stay 11; Def.'s Mem. Supp. Mot. Dismiss 9.) In reply, Plaintiffs say that the state attorneys general have antitrust standing in their *parens patriae* role, but even if they did not, it is sufficient for antitrust standing that co-Plaintiff United States undoubtedly has standing to enforce United States antitrust law. (Pls.' Mem. Opp'n Mot. Stay 7 (citing *Nat'l Wildlife Fed'n v. Agric. Stabilization & Conservation Serv.*, 955 F.2d 1199, 1203 (8th Cir. 1992)).)

### ii. *Arguments on the Merits of Motion to Dismiss as to the Chicken Claims*

Turning back to the *Chicken* claim, in arguing that Plaintiffs' claims about Agri Stats's chicken reports should be dismissed, Agri Stats says *stare decisis* (but not collateral estoppel) counsels against relitigating issues that have already been decided. (Def.'s Mem. Supp. Mot. Stay 11–12.) They write, "Plaintiffs' only live claim, which relates to Agri Stats' broiler chicken reports, is identical to the information exchange claim which the Northern District of Illinois granted summary judgment to Agri Stats on in *Broilers*") (*Id.*; Def.'s Mem. Supp. Mot. Dismiss 9.) The case Agri Stats references did involve Agri Stats's production of chicken reports, and the presiding judge in that case did grant summary judgment to Agri Stats on the plaintiffs' per se price fixing claim and their rule of reason claim. *In re Broiler Chicken Antitrust Litig.*, No. 16-CV-8637, 2023 WL 7220170, at *27 (N.D. Ill. Nov. 2, 2023). Ruling first on the plaintiffs' *per se* price fixing conspiracy claim, Judge Durkin found that, "[d]espite years of discovery, Plaintiffs simply have not produced sufficient evidence for a reasonable jury to find by a preponderance of the evidence that

9

Agri Stats agreed with the producer defendants to restrict supply and increase the price of Broilers." *Id.* Then, Judge Durkin turned to the plaintiffs' alternative rule of reason argument—that the defendants unreasonably restrained competition when they used Agri Stats to communicate confidential information to each other. (*Id.* at 27–28.) He found only "scant evidence that the information Agri Stats itself provided to each individual producer was used in a manner that had an anticompetitive effect." (*Id.* at 28.) Agri Stats argues that Judge Durkin's decisions on summary judgment should compel dismissal in this case.

Plaintiffs argue that they cannot be bound by a decision in a case to which they were never a party. (Pls.' Mem. Opp'n Stay 5–6 (citing *Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 690 (1961) ("Government is not bound by private antitrust litigation to which it is a stranger . . . .")).) "Whatever Agri Stats may mean by that term, *stare decisis* does not apply to factual determinations made by a different district court, in a different posture, based on different facts." (Pls.' Redacted Mem. Opp'n Mot. Dismiss 2.)

Plaintiffs are correct. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th at 866–67. Nor is a district court's ruling on summary judgement precedent that demands *stare decisis* treatment. *See Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 (8th Cir. 2015) ("[A] district court decision binds no judge in any other case, save to the extent that doctrines of preclusion (not *stare decisis*) apply." (quoting *Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir.1993)).

Agri Stats cites *Premier Electrical Construction Co. v. National Electrical Contractor's Association*, 814 F. 2d 358 (7th Cir. 1987) for the proposition that Plaintiffs must show that they "allege a different claim" than the plaintiffs in *Broilers* did or show that "the outcome here will be different" than it was in *Broilers* before they are allowed to take discovery. (Def.'s Mem. Supp. Stay 12; Def.'s Mem. Supp. Mot. Dismiss 23, 32–35.) The Court does not agree with Agri Stats's reading of *Premier Electrical*. In that case, the Seventh Circuit reversed and remanded a district court's that had held a particular economic arrangement between a group of employers and a labor union to be a *per se* Sherman Act violation. The district court ruled as it did because another district court, analyzing the same economic arrangement, had found a violation and that other district court had been affirmed by the Fourth Circuit. The Seventh Circuit reversed, not because the district court had improperly given too much weight to rulings from other courts, but because the way the district court used issue preclusion was erroneous. In remanding to the district court, the Seventh Circuit ruled that the district court must undertake its own economic analysis, but wrote extensively that the district court should depart from the Fourth Circuit's only for "the gravest reasons" and that any "doubts should be resolved in favor of the Fourth Circuit's disposition." *Premier Electrical,* 814 F. 2d at 368.

From this Agri Stats would have this Court stay discovery because the summary judgment ruling in the Northern District of Illinois is based on the same information-exchange antitrust claims, and this Court should presume that ruling was correct. (Def.'s Mem. Supp. Mot. Stay 11–12; Def.'s Mem. Supp. Mot. Dismiss 12–13, 23.) The undersigned is unpersuaded. *Premier Electrical Construction Co.* exhorted one court to

11

give great weight to another court's decision that an alleged agreement, if proven, would be a Sherman Act violation. Agri Stats exhorts this Court to give great weight to another court's decision that different plaintiffs, serving different discovery demands, in a different court, failed to "produce[] sufficient evidence for a reasonable jury to find by a preponderance of the evidence that Agri Stats agreed with the producer defendants to restrict supply and increase the price" of chicken. *In re Broiler Chicken Antitrust Litig.*, 2023 WL 7220170, at *27. Agri Stats is not comparing like to like. *Premier Electrical* allows for the possibility that defendants could still prove no agreement existed, while Agri Stats demands that discovery be skipped entirely because other plaintiffs filed the case before these Plaintiffs did and could not prove an agreement. Not only does s*tare decisis,* for the reasons above, not compel this outcome, *stare decisis* does not even apply to the situation in this case.

Plaintiffs have made factual allegations that "directly address what the *Broilers* court found lacking." (Def.'s Mem. Supp. Mot. Dismiss 23.) They allege that it *is* possible to achieve price coordination through Agri Stats' reports (Am. Compl. ¶¶ 54–57, 58–59, 62) and the reports *do* show producers the amount of meat their competitors are producing (*Id.* ¶¶ 41-47, 6, 47, 98–99.) The undersigned cannot find that Agri Stats's dispositive motion has any more than a "mere possibility" of success in dismissing Count I and anticipates that Count I will proceed regardless of how successful Agri Stats' justiciability arguments on Counts II and III prove to be. Since the pending dispositive motion is unlikely to resolve the entire case, the merits factor weighs in favor of denying the stay of discovery Agri Stats requests.

### B. If Discovery Proceeds, Agri Stats Will Be Minimally Burdened Because the Scope of Discovery is Limited.

The parties agree that there is a large discovery record already available to the Plaintiffs as a result of the United States' civil investigative demands, which includes the full discovery records from *Broilers*, *Pork,* and *Turkey*. (Def.'s Mem. Supp. Mot. Stay 15; Pls.' Mem. Opp'n Mot. Stay 8–9.) Much of the document disclosure that would be required in this case is already complete. Plaintiffs report that "much" of the new discovery they plan to take involves third party processors, not Agri Stats. (*Id.* 11–12.) Agri Stats replies that if discovery goes forward it will suffer not only the notoriously burdensome process of antitrust discovery, including having to defend re-depositions of employees who have already been deposed multiple times, but it will also have to actively defend third-party deponents with no co-defendants to share the burden of that work. (Tr. 12:3–13:1.) This is a real burden on Agri Stats, but it is a limited one given how many disclosures are already complete and given the low likelihood that its Motions to Dismiss will dispose of all discovery entirely.

### C. If Discovery is Delayed, Plaintiffs and the Public Interest Will Be Harmed.

Agri Stats argues that a stay will not harm Plaintiffs because so much of the discovery in this case has already been turned over to them; Plaintiffs can simply analyze that information while the district court decides its pending Motion to Dismiss. (Def.'s Mem. Supp. Mot. Stay 15.) But this argument ignores the fact that Plaintiffs, including the United States, are seeking an injunction not only against the pork and turkey reports that Agri Stats no longer makes, but also against the chicken reports it continues to produce

13

today. (*See* Pls.' Mem. Opp'n Mot. Stay 10.) Plaintiffs claim that the "the harm from Agri Stats' unlawful information exchange in the broiler chicken market presents a substantial and urgent risk to competition." (Pls.' Mem. Opp'n Mot. Stay 10.) That lack of competition, Plaintiffs argue, affects millions of American consumers every day. (*Id.*)

The United States, unlike private plaintiffs who seek damages, has the responsibility of protecting the public from anticompetitive behavior by seeking speedy injunctive relief when it finds a violation of antitrust law. (*See* Pls.' Mem. Opp'n Stay 9.) 15 U.S.C. § 4 makes it the "duty of the several United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations" of the Sherman Act. The federal courts, for their part, are expected to "proceed, as soon as may be, to the hearing and determination" of these cases and maintain the power to issue just orders to prevent unlawful conduct during the pendency of the suit. 15 U.S.C. § 4. Congress recognizes "the primacy of antitrust enforcement actions brought by the United States, and that such actions are of special urgency and serve a different purpose than private damages suits because they seek to enjoin ongoing anticompetitive conduct." *Id.* at 144–45. That reasoning applies to the current situation, where the Court is asked to balance the burden of a stay on Agri Stats with the Congressional imperative to act quickly in antitrust enforcement where the United States is a plaintiff.

The parties have suggested competing, and ambitious, timelines in their Rule 26(f) Report, suggesting they understand the need for speed in this matter. (Dkt. No. 97.) Plaintiffs will need to start on third party discovery as soon as possible to meet those

14

deadlines. (Pls.' Mem. Opp'n Mot. Stay 11–12.) A delay in discovery will delay judgment in this action, which is exactly what Congress sought to avoid. Plaintiffs allege an ongoing harm to consumers because of Agri Stats' chicken reports, and that claim is unlikely to be dismissed. Requiring the United States and other Plaintiffs to wait to gather evidence and pursue their case will burden not only Plaintiffs, but the public interest in swift determination of the action.

### D. The Parties' and the Court's Resources Do Not Require a Stay.

Judicial economy does not favor a stay in this case because it is unlikely to be dismissed without at least some discovery. Promptly starting that discovery will help to ensure a prompt judgment. The Court may be called upon to adjudicate irreconcilable discovery disputes. (Tr. 14:18–15:2.) The undersigned is prepared to participate actively in this litigation to keep discovery moving. Further, the parties have sufficient resources to begin discovery now. The Department of Justice has vast resources at its disposal, not even considering the resources of the six state Plaintiffs. Agri Stats is a for-profit company that was once a subsidiary of Eli Lilly & Co. (Second Am. Compl. ¶ 12. *But see* Def.'s Mem. Supp. Mot. Stay 6, 14; Def.'s Mem. Supp. Mot. Dismiss 7, 10 (describing the business as a small one).) Therefore, this factor, as all the others do, weighs in favor of denying a stay of discovery.

## IV. CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Agri Stats's Motion to Stay Discovery (Dkt. No. 99) is **DENIED.**

Date: May 17, 2024

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge