# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF NORTH CAROLINA, STATE OF TENNESSEE, STATE OF MINNESOTA, STATE OF TEXAS, and STATE OF UTAH, | Civil No. 23-3009 (JRT/JFD) |
| Plaintiffs, | **MEMORANDUM OPINION & ORDER DENYING DEFENDANT'S MOTION TO TRANSER AND MOTION TO DISMISS** |
| v. | |
| AGRI STATS, INC., | |
| Defendant. | |

Mark Henry Michael Sosnowsky and William Friedman, **UNITED STATES DEPARTMENT OF JUSTICE**, 450 Fifth Street Northwest, Washington, D.C. 20530; Liles Harvey Repp, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Minneapolis, MN 55415; Sarah Doktori, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, St. Paul, MN 55101; Robert Brian McNary, **CALIFORNIA DEPARTMENT OF JUSTICE**, 300 South Spring Street, Suite 1702, Los Angeles, CA 90013, for Plaintiffs.

Justin Bernick and Liam Phibbs, **HOGAN LOVELLS US LLP**, 555 Thirteenth Street Northwest, Washington, D.C. 20004; Peter H. Walsh, **HOGAN LOVELLS US LLP**, 80 South Eighth Street, Suite 1225, Minneapolis, MN 55402, for Defendant.

The United States and six individual states bring this antitrust action against Defendant Agri Stats, Inc. for an alleged information-exchange conspiracy with major U.S. broiler chicken, pork, and turkey processors. Agri Stats filed a motion to transfer venue pursuant to 28 U.S.C. § 1404 or, alternatively, a motion to dismiss for lack of subject

matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because the convenience of the parties and witnesses and the interests of justice do not strongly favor transfer, the Court will deny Agri Stats's motion to transfer. Because Plaintiffs' pork and turkey claims meet the requisite standing and pleading requirements under Article III and the antitrust statutes and because the Court declines to justify dismissal of the broiler chicken claim under stare decisis, the Court will deny Agri Stats's motion to dismiss.

## BACKGROUND

### I. FACTS

Agri Stats is an Indiana corporation that operates a subscription and consulting service in numerous U.S. meat processing industries. (2nd Am. Compl. ¶ 12, Nov. 15, 2023, Docket No. 50.) Its employees work in the company's single office in Fort Wayne, Indiana, or remotely—no employees live or regularly work in Minnesota. (Def.'s Mem. Supp. Mot. Transfer, Ex. 1 ("1st Scholer Decl.") ¶ 3, Nov. 8, 2023, Docket No. 44.)

Through its subscription service, Agri Stats collects detailed information from its subscribers about their operations, including information about sales, live production, processing, and profits, which is not available elsewhere. (2nd Am. Compl. ¶¶ 16–18, 28–29.) Then, Agri Stats audits the data to ensure its reliability, compiles it into written reports, and distributes those reports back to subscribers. (*Id.* ¶¶ 19–21.) The reports provide subscribers with detailed information about where the subscriber stands in comparison to the rest of the industry in terms of sales and live production. (*Id.* ¶¶ 33–

34, 37–39, 41, 43–44.) Agri Stats also provides sales consulting services to its subscribers, through which it advises subscribers how to use the information it collects from the industry. (*Id.* ¶¶ 48, 50.)

The reports that Agri Stats produces are comprehensive, with some being hundreds of pages long and replete with company- and facility-level information. (*Id.* ¶ 21.) Agri Stats anonymizes company data in the reports, but subscribers have access to participating companies and facilities. (*Id.* ¶¶ 3, 25.) Agri Stats only shares its reports with subscribers. (*Id.* ¶ 9.)

Agri Stats's subscribers include meat processers in the broiler chicken, pork, and turkey industries. (*Id.* ¶ 14.) The company began offering benchmarking reports and services to broiler chicken producers in 1985 and to turkey and pork producers in 2001 and 2007, respectively. (1st Scholer Decl. ¶¶ 5–6.) Turkey and pork producers withdrew their subscriptions to Agri Stats's reports after *In re Broiler Chicken Antitrust Litigation*, No. 16-8637, was filed in the Northern District of Illinois, and Agri Stats stopped offering turkey and pork reports in 2019. (*Id.* ¶ 8; 2nd Am. Compl. ¶ 15.) Agri Stats still produces and distributes reports to broiler chicken subscribers. (1st Scholer Decl. ¶ 5.)

The parties dispute the reason behind Agri Stats's change in pork and turkey reports. Agri Stats represents that it stopped producing pork and turkey reports because "there were not enough subscribers to maintain" those reports, not because of any litigation risk to Agri Stats from those reports. (Decl. Eric Scholer ("2nd Scholer Decl.") ¶¶

3–5, Jan. 5, 2024, Docket No. 80.)  Essentially, Agri Stats claims that without the input from the meat industries it cannot produce the reports.  (2ⁿᵈ Scholer Decl. ¶¶ 6, 8.) Plaintiffs, however, allege that Agri Stats's "executives have stated that they want to resume reporting in these industries once that litigation concludes." (2ⁿᵈ Am. Compl. ¶ 15.)

Plaintiffs allege that Agri Stats's reports and counseling services constitute anticompetitive conduct in the broiler chicken, pork, and turkey industries. (*Id.* ¶¶ 2–11.) Specifically, Plaintiffs describe Agri Stats's reports as negating the need to communicate directly with other processors. (*Id.* ¶ 5.)  Instead, the reports' forecasting of competitor action encourages processors to raise total industry profits on a collective scale. (*Id.*)  As a result, Plaintiffs contend that this behavior not only stifles competition, but also harms consumers as they are forced to pay higher prices for staple food items like broiler chicken, pork, and turkey. (*Id.* ¶¶ 6, 11, 72, 115, 160.)

## II.    PROCEDURAL HISTORY

The United States initiated this action against Agri Stats in September 2023, and California, Minnesota, North Carolina, Tennessee, Texas, and Utah (the "Plaintiff States") subsequently joined the suit.  (Compl., Sept. 28, 2023, Docket No. 1; Am. Compl., Nov. 6, 2023, Docket No. 30; 2ⁿᵈ Am. Compl.)  Pursuant to Section 4 of the Sherman Act, 15 U.S.C. § 4, and Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs bring three counts under Section 1 of the Sherman Act, 15 U.S.C. § 1, for managing anticompetitive information

exchanges in the broiler chicken, pork, and turkey markets. (2nd Am. Compl. ¶¶ 152–53, 162–67.)

Agri Stats is a defendant in three other antitrust matters as well. *See In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753 (D. Minn. 2020) ("*Pork*"); *In re Broiler Chicken Antitrust Litig.*, No. 16-8637 (N.D. Ill.) ("*Broilers*"); *In re Turkey Antitrust Litig.*, No. 19-8318 (N.D. Ill.) ("*Turkey*"). *Broilers* and *Turkey* are both pending in the Northern District of Illinois but before different judges and on different timelines. *Broilers* completed summary judgment motions but summary judgment motions in *Turkey* are scheduled for 2025. (Def.'s Mem. Supp. Mot. Transfer at 13.)

Agri Stats filed a motion to transfer venue to the Northern District of Illinois or to the Northern District of Indiana. (Def.'s Mot. Transfer/Change Venue, Nov. 8, 2023, Docket No. 42.) Alternatively, Agri Stats filed a motion to dismiss Plaintiffs' Second Amended Complaint ("Complaint") for lack of subject matter jurisdiction and failure to state a claim. (Def.'s Mot. Dismiss, Jan. 5, 2024, Docket No. 77.)

**DISCUSSION**

## I.   DEFENDANT'S MOTION TO TRANSFER VENUE

Agri Stats has moved to transfer venue to the Northern District of Illinois, the location of the pending *Broilers* and *Turkey* litigation, or, alternatively, to the Northern District of Indiana, its primary place of business, pursuant to 28 U.S.C. § 1404(a). Because the convenience of the parties and witnesses and the interests of justice do not strongly favor transfer, the Court will deny the motion.

### A.    Standard of Review

28 U.S.C. § 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, [and] in the interests of justice."  The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).  When deciding a motion to transfer under § 1404(a), courts consider (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice, and may balance other case-specific factors. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988).  Courts give "considerable deference" to a plaintiff's forum choice, and the moving party bears the burden of demonstrating that transfer is warranted under § 1404(a).  *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).  Ultimately, the decision to transfer a case is committed to the discretion of the district court.  *Id.* at 697.

### B.    Venue in the District of Minnesota

Agri Stats argues its place of residence and the fact that a substantial part of the events or omissions giving rise to the claim did not occur in Minnesota support its motion for transfer.  The Court does not find these arguments compelling.

The general venue statute, 28 U.S.C. § 1391, provides that venue is proper (1) where "any defendant resides, if all defendants are residents of the State in which the district is located," (2) where "a substantial part of the events or omissions giving rise to

the claim occurred," or (3) where "any defendant is subject to the court's personal jurisdiction with respect to such action" where the action cannot otherwise be brought in any other district. But Section 12 of the Clayton Act, which applies in this antitrust action, provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C. § 22. The venue analysis under Section 12 is thus a less restrictive venue analysis than that under § 1391. *See Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1173 (8th Cir. 1998) ("[Section] 12 was intended to make the practical, everyday business or commercial concept of doing or carrying on business of any substantial character the test of venue.") (cleaned up) (quoting *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948)). The broad language of Section 12 "was designed to aid plaintiffs by giving them a wider choice of venues, and thereby to secure a more effective, because more convenient, enforcement of antitrust prohibitions." *United States v. Nat'l City Lines*, 334 U.S. 573, 586 (1948).

While Agri Stats is incorporated and has its principal place of business in Indiana, it sufficiently conducts business in Minnesota to support venue in the District of Minnesota. The appropriate inquiry is not if a substantial part of the events giving rise to the claims occurred in Minnesota but rather whether Agri Stats transacts business in Minnesota to an extent that would make venue proper in this District.

Agri Stats transacts business in Minnesota as it distributes reports to processors across the country, including Minnesota-based processors of broiler chicken, pork, and turkey.  (2nd Am. Compl. ¶¶ 156-157 (discussing Minnesota-based subscribers Hormel, Jennie-O, Gold'n Plump, and Pilgrim's).)  Plus, Agri Stats's consulting managers travel to processors' facilities—including those in Minnesota—and instruct them on how to use information provided by Agri Stats.  (*Id.* ¶¶ 10, 48–50, 159.)  Because at least one processor in each relevant industry has operated in Minnesota, Agri Stats transacts business in Minnesota to an extent that makes venue proper in this District.

### C.     Convenience of the Parties and Witnesses

Turning next to the convenience of the parties and witnesses, Plaintiffs favor maintaining venue in the District of Minnesota, while Agri Stats requests transfer to the Northern District of Illinois or Northern District of Indiana.

In general, courts give "considerable deference" to a plaintiff's forum choice.  *Terra Int'l, Inc.*, 119 F.3d at 695.  That choice is particularly entitled to deference when government enforcers bring federal antitrust claims, *see United States v. Brown Univ.*, 772 F. Supp. 241, 242 (E.D. Pa. 1991), and when a plaintiff resides in the selected forum, *Voss v. Johnson & Johnson*, No. 06-3728, 2008 WL 697474, at *2 (D. Minn. Mar. 12, 2008).  Courts assess "(1) the convenience of the parties, (2) the convenience of the witnesses— including the willingness of the witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of

each forum state's substantive law." *Terra Int'l, Inc.*, 119 F.3d at 696.  The transferee

forum must be a more convenient forum rather than "a forum likely to prove equally

convenient or inconvenient." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121

(D. Minn. 1999).  Therefore, a transfer should not be granted "if the effect is simply to

shift the inconvenience" from one party to the other. *Id.* (citing *Van Dusen*, 376 U.S. at

646).  Agri Stats must establish that its "inconvenience substantially outweighs the

inconvenience that plaintiff would suffer if venue were transferred." *Nelson v. Soo Line

R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999).  Courts assume that employees of the

parties will voluntarily appear in a foreign forum and focus on the convenience to non-

party witnesses. *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720, 2009

WL 1684428, at *5 (D. Minn. June 16, 2009); *see also Luckey v. Alside, Inc.*, No. 15-2512,

2016 WL 1559569, at *5 (D. Minn. Apr. 18, 2016).

Under the current circumstances of this case, the convenience of the parties and

witnesses does not strongly favor transfer.  Convenience factors that weigh in favor of

transfer to either Indiana or Illinois include the fact that Agri Stats is incorporated in

Indiana and has its principal place of business in Fort Wayne, which is a three-hour drive

from Chicago versus a nine-hour drive to Minneapolis; that the reports giving rise to

Plaintiffs' claims are created in Fort Wayne; that Agri Stats's employee witnesses are in

Fort Wayne; that the company has no office or employees in Minnesota; and the

existence of the ongoing litigation involving Agri Stats as a defendant in Illinois.  However,

convenience factors that weigh against transfer include the fact that the State of Minnesota is a plaintiff in this action; that some of Agri Stats's subscribers are Minnesota-based; and that some of non-party witnesses reside in Minnesota.  Further, "the location of the Defendants' employee-witnesses is not enough to overcome the deference given to Plaintiffs' choice of forum."  *Luckey*, 2016 WL 1559569, at *5.  Plus, Agri Stats remains a defendant before this Court as part of the *Pork* litigation, and so is already required to participate in discovery, dispositive motion briefing, and potentially trial in this District.  On balance, the convenience of the parties and witnesses is therefore neutral and does not strongly favor transfer.

### D.     Interests of Justice

In analyzing transfer, courts weigh the interest of justice factor heavily.  *In re Monies on Deposit in Accts. at Stearns Bank Nat'l Ass'n*, No. 06-542, 2006 WL 3841518, at *2 (D. Minn. Dec. 29, 2006); *see also I-T-E Circuit Breaker Co. v. Regan*, 348 F.2d 403, 405 (8th Cir. 1965).  When considering the interest of justice, the Court may take into account a broad range of factors, such as "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of laws, and (7) the advantages of having a local court determine questions of local law."  *Terra Int'l*, 119 F.3d at 696.  The parties most hotly contest judicial economy.

Agri Stats bases its judicial economy argument primarily on *Broilers*.  It argues that *Broilers* more adequately encompasses the dispute here than *Pork*, so the case should be

transferred to the Northern District of Illinois.  Specifically, Agri Stats indicates that Plaintiffs' case must necessarily focus on broiler chicken reports because those are the only reports still being produced.  Alternatively, Agri Stats reminds the Court that *Turkey*, which is also pending in the Northern District of Illinois, supports transfer as two of the three meat industries involved in this case (broiler chicken and turkey) are already in that district.  The Court disagrees.

The plaintiffs in *Broilers* accused chicken producers of using Agri Stats's reports in a price-fixing conspiracy such that Agri Stats's information exchange was anticompetitive and violated the Sherman Act.  *In re Broiler Chicken Antitrust Litig.*, No. 16-8637, 2023 WL 7220170, at *2 (N.D. Ill. Nov. 2, 2023).  The plaintiffs described Agri Stats's reports as establishing and enforcing the alleged conspiracy because chicken producers were able to "deanonymize" the data.  *Id.* at *25.  At summary judgment, the Court concluded however that "[j]ust because Agri Stats provided a convenient form to transmit the information [did] not mean that Agri Stats itself joined the conspiracy."  *Id.* at *26.  In other words, the Court found insufficient evidence that Agri Stats conspired with chicken producers to restrict supply and increase the price of broiler chicken and dismissed the claims against Agri Stats.  *Id.* at *27.

Despite the similarities between the claims against Agri Stats in this action and in *Broilers*, judicial resources and efficiency would not be furthered by transferring this action.  *Pork*, *Broilers*, *Turkey*, and this action all allege that Agri Stats participated in a

price-fixing conspiracy and anticompetitive information exchange, such that there is overlap between all four actions. *In re Pork Antitrust Litig.*, 495 F. Supp. 3d at 766–67; *In re Broiler Chicken Antitrust Litig.*, 2023 WL 7220170, at *1; *In re Turkey Antitrust Litig.*, 642 F. Supp. 3d 711, 717–18 (N.D. Ill. 2022).  The fact that the plaintiffs in *Pork* seek damages for alleged past conduct, whereas here Plaintiffs seek an injunction against Agri Stats' pork, turkey, and broiler chicken reports, is of little matter, because both cases allege a price-fixing conspiracy and anticompetitive information exchange against Agri Stats. *Compare id.* at 765, *with* (2nd Am. Compl. ¶ 169.).  Discovery in this case therefore will overlap with that in *Pork*, which Agri Stats is defending in this Court. *See Newman v. Stryker Sales Corp.*, No. 09-2866, 2010 WL 3926200, at *6 (D. Minn. Sept. 30, 2010) (denying a transfer motion where discovery was subject to coordination with other actions that defendant was defending before the court).  And Agri Stats's attempts to minimize Plaintiffs' pork and turkey claims because Agri Stats ceased its pork and turkey reporting are inconsequential, as the Court may still consider claims for injunctive relief on challenged conduct that terminated before litigation commenced. *Fed. Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009) (A "court's power to grant injunctive relief survives the discontinuance of the illegal conduct.") (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Moreover, though the information exchange claim against Agri Stats was dismissed in *Broilers*, allowing Plaintiffs to litigate this claim would not countenance the inefficiency

-12-

and risk of inconsistent outcomes that Section 1404(a) aims to prevent. The same

purported risk of inconsistent outcomes against the information exchange claims will

remain whether this action continues in this District or is transferred to the Northern

District of Illinois because of this Court's jurisdiction over *Pork*. Finally, and very

importantly, Plaintiffs' forum choice deserves "considerable deference." *Terra Int'l*, 119

F.3d at 695. That choice is especially entitled to deference in this case given that the

United States chose to bring antitrust claims against Agri Stats in this forum, and the State

of Minnesota is a Plaintiff State. *See Brown Univ.*, 772 F. Supp. at 242 ("[M]any courts,

pointing to the liberal venue requirements for the government bringing an antitrust suit,

have held that in such suits, plaintiffs' choice of forum is entitled to heightened respect.");

*Voss*, 2008 WL 697474, at *2 (noting that courts generally afford less deference to the

plaintiff's choice of forum when the plaintiff does not reside in the forum). Given the

above considerations, Agri Stats has not met its burden of showing that the interests of

justice warrant transfer.

*     *     *

Weighing all the transfer factors in this case, the Court concludes that the

convenience of the parties and witnesses and the interests of justice do not strongly favor

transfer. Accordingly, the Court will deny Agri Stats's motion to transfer and maintain the

action in this forum.

## II.     DEFENDANT'S MOTION TO DISMISS

Alternatively, Agri Stats has moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and failure to state a claim.  Agri Stats challenges Plaintiffs' claims on different grounds.  Agri Stats's arguments against the pork and turkey claims are based in jurisdiction, and its arguments against the broiler chicken claim are based on stare decisis. Because the pork and turkey claims meet the requisite standing and pleading requirements under Article III and the antitrust statutes and the Court is not bound by the summary judgment decision in *Broilers*, the Court will deny the motion.

### A.     Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings."  *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's

factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.    Pork and Turkey Claims

Agri Stats challenges the pork and turkey claims on three separate grounds: (1) Article III standing, (2) the availability of injunctive relief under the antitrust statutes, and (3) antitrust standing.  The Court will analyze each in turn.

### 1.    Article III Standing

First, Agri Stats argues that Plaintiffs' pork and turkey claims allege no Article III case or controversy and must be dismissed for lack of subject matter jurisdiction.  Article III of the Constitution limits federal jurisdiction to actual cases and controversies.  U.S. Const. art. III, § 2; *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).  A case or controversy must exist for each claim Plaintiffs bring.  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks and quotation omitted).  Sovereign entities as plaintiffs are not immune from the traditional standing requirements.  *See W.T. Grant Co.*, 345 U.S. at 633–34; *California v. Am. Stores*, 495 U.S. 271, 277 (1990).  To show Article III standing, Plaintiffs bear the burden of proving: (1) they suffered an "injury-in-fact," (2) their injury was caused by the challenged conduct, and (3) their injury likely will be

redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Agri Stats challenges the first element: injury-in-fact.  Because Plaintiffs seek injunctive relief, the "injury-in-fact" element requires a showing that they face "a threat of ongoing or future harm." *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000).  The threat of future harm cannot be abstract, but rather "must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up).  "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).  Exposure to past illegal conduct does not establish a present case or controversy, "if unaccompanied by any continuing, present adverse effects." *Park*, 205 F.3d at 1037 (quotation omitted); *see also Lyons*, 461 U.S. at 102.

Agri Stats rests on its cessation of pork and turkey reports in 2019 as evidence that Plaintiffs fail to allege an injury-in-fact.  Further, Agri Stats argues the Complaint is devoid of any indication that Agri Stats will or even can restart such reports.  To restart pork and turkey reports, Agri Stats would need subscribers to provide their information to Agri Stats and subsequently purchase any resulting reports.  But, Agri Stats contends, such conduct is speculative and depends on the actions of third parties, which is insufficient to

create an injury-in-fact.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

The Court disagrees.

Though Agri Stats is not currently producing pork and turkey reports and declares

it "has no current plans to resume its production of the turkey and pork-related reports,"

a "sparse declaration" regarding no current plans to resume the challenged conduct and

the passage of multiple years since the conduct ceased are insufficient bases for dismissal.

(2nd Scholer Decl. ¶ 8.); *FBI v. Fikre*, 601 U.S. 234, 239–44 (2024).  Agri Stats can restart

such reports when/if requested.  *See Accusearch Inc.*, 570 F.3d at 1201 (affirming

injunction regarding conduct that had ceased because defendant "remained in the

information brokerage business" and "had the capacity to engage in similar unfair acts or

practices in the future").  Though Plaintiffs cannot rely on "speculation about the

unfettered choices made by independent actors not before the court," *Clapper*, 568 U.S.

at 414 n.5 (quotation omitted), they have alleged enough at this stage to suggest that

subscribers intend to subscribe to such reports in the future.  (*See, e.g.*, Decl. William M.

Friedman ("Friedman Decl.") ¶ 9, Ex. 7, Jan. 26, 2024, Docket No. 89.)  Plus, Agri Stats

continues to advertise on its website that it "service[s] customers in the chicken, turkey,

commercial egg, and swine industries."  (*Id.* ¶ 11, Ex. 9.)

Additionally, Plaintiffs have provided sufficient expressions of intent by Agri Stats

to restart pork and turkey reports in the future.  Plaintiffs allege that Agri Stats intends to

resume pork and turkey reports once the litigation that spurred the cessation terminates.

-17-

(2nd Am. Compl. ¶ 15; *see also id.* ¶ 104; Friedman Decl. ¶¶ 5–10, Exs. 3–8.)  Though "[s]ome day" intentions "without any description of concrete plans, or indeed even any specification of when the some day will be" are insufficient to establish Article III standing, the Plaintiffs allege a more specific "some day"— after the conclusion of *Pork* and *Turkey*. *Lujan*, 504 U.S. at 564.  Further, the fact that Agri Stats insists that its information-sharing is lawful reinforces the likelihood that it will resume that activity absent relief.  *See SEC v. First Am. Bank & Tr. Co.*, 481 F.2d 673, 682 (8th Cir. 1973).  To be sure, the Complaint could have included more specific details about Agri Stats's intent to restart its pork and turkey reports, but it has alleged just enough to establish a "substantial risk" of future harm for injury-in-fact.  *Driehaus*, 573 U.S. at 158.  It remains to be seen what discovery may yield but as of now, the Court will not grant Agri Stats's motion to dismiss the pork and turkey claims on this ground.

### 2.    Injunctive Relief

Next, Agri Stats argues that Plaintiffs' pork and turkey claims fail to allege facts warranting prospective relief under the antitrust statutes.  Plaintiffs bring this action pursuant to Section 4 of the Sherman Act and Section 16 of the Clayton Act.  (2nd Am. Compl. ¶¶ 152–53.)  Both statutes empower district courts with jurisdiction to authorize injunctions against prospective anticompetitive conduct.  *See* 15 U.S.C. §§ 4, 26.  To meet their burden, Plaintiffs must establish "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."  *W.T. Grant Co.*, 345 U.S. at 633; *see also Zenith Radio Corp. v. Hazeltine Rsch.,*

*Inc.*, 395 U.S. 100, 130 (1969) ("[Plaintiffs] need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur.").  "In assessing the likelihood of recurrence, a court may consider all the circumstances, including the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations."  *Accusearch Inc.*, 570 F.3d at 1201 (internal quotation marks and quotation omitted).

Like its arguments regarding Article III standing, Agri Stats claims that Plaintiffs failed to allege a concrete threat of competitive harm from future resumption of the pork and turkey reports as required under the antitrust statutes.  But as the Court previously noted, Plaintiffs have alleged just enough to establish a substantial risk of future harm from future Agri Stats pork and turkey reports for Article III standing.  Plaintiffs have provided sufficient expressions of intent by Agri Stats to restart its pork and turkey reports once litigation in *Pork* and *Turkey* conclude.  And the fact that Agri Stats remains in the information sharing business and has the capacity to produce pork and turkey reports in the future indicates there is a cognizable danger of recurrent violation that is more than a mere possibility.  *W.T. Grant Co.*, 345 U.S. at 633; *Accusearch Inc.*, 570 F.3d at 1201.  Plaintiffs have thus sufficiently alleged a threat of injury from an impending antitrust violation.  Accordingly, for similar reasons that the Court declined to dismiss the pork and

turkey claims for lack of Article III standing, the Court declines to dismiss the pork and turkey claims on this ground.

### 3.    Antitrust Standing

Lastly, Agri Stats challenges whether the Plaintiff States have alleged an antitrust injury, an element of antitrust standing, for the pork and turkey claims.  Agri Stats argues that the Plaintiff States have not alleged a concrete, actionable threat of antitrust injury to themselves involving a resumption of pork and turkey reports.  The Court disagrees.

To establish antitrust standing, the Plaintiffs States must allege an "injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."  *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  The Court must consider whether "the injury was of a type that Congress sought to redress with antitrust laws."  *McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1374 (8th Cir. 1983).

In this case, Plaintiffs allege that Agri Stats and its coconspirators have harmed the competitive process in the broiler chicken, pork, and turkey markets, which ultimately overcharges consumers at the bottom of those markets' supply chains.  (2nd Am. Compl. at 1–2.)  The Complaint alleges that Agri Stats's reports encourage and facilitate its processor-subscribers "to increase and stabilize prices and reduce the supply of meat." (*Id.* ¶¶ 51, 116–17.)  As a result of Agri Stats's alleged anticompetitive conduct, Plaintiffs allege harm to "the United States markets for broiler chicken, pork, and turkey, which includes harm in Minnesota, as well as California, North Carolina, Tennessee, Texas, and

Utah." (*Id.* ¶ 160.)    Additionally, Agri Stats's and its coconspirators' agreement to exchange "competitively sensitive information regarding prices, output, and costs" have "unreasonably restrained trade, suppressed competition, and had the actual and likely effect of stabilizing and increasing prices and reducing output" in the broiler chicken, pork, and turkey markets.  (*Id.* ¶¶ 163, 165, 167.)

These allegations align with the type of harm that Congress sought to redress.  *Cf. In re Cattle & Beef Antitrust Litig.*, No. 22-3031, 2023 WL 5310905, at *6 (D. Minn. Aug. 17, 2023) (finding deprivation of fair price competition at the top of the supply chain and overcharging of customers at the bottom of the supply chain "highly suggestive of the type of injury Congress sought to redress" with the antitrust statutes).  The Plaintiff States seek prospective injunctive relief to prevent anticompetitive conduct that harms their general economies, which is sufficient to confer antitrust standing.  *See, e.g.*, *Burch v. Goodyear Tire & Rubber Co.*, 554 F.2d 633, 634–35 (4th Cir. 1977) (allegations of injury to general economy of state of Maryland were sufficient to confer standing upon its Attorney General in an antitrust suit filed in parens patriae capacity).  Agri Stats's conduct could continue to cause the Plaintiff States' citizens harm unless injunctive relief is granted.  This is surely the kind of harm the antitrust laws were intended to prevent and the type of injury that state attorneys general have standing to challenge.  Therefore, the Plaintiff States have sufficiently alleged harm from the pork and turkey reports to confer antitrust standing.

\*        \*        \*

Agri Stats challenges the pork and turkey claims under Article III standing, injunctive relief, and antitrust standing theories, but none are successful. Because the Court concludes that Plaintiffs' pork and turkey claims have satisfied the requisite standing and pleading requirements under Article III and the antitrust statutes, the Court will deny Agri Stats's motion to dismiss the pork and turkey claims.

### C.        Broiler Chicken Claim

Agri Stats argues that the broiler chicken claim has already been resolved in *Broilers* on the same evidence alleged in the Complaint and is therefore barred under the doctrine of stare decisis. While the Court agrees that uniformity in the law should be encouraged where possible, it declines to dismiss Plaintiffs' broiler chicken claim because of the summary judgment ruling in *Broilers*.

Stare decisis encourages "uniformity in the law . . . wherever reasoned analysis will allow." *United States v. Auginash*, 266 F.3d 781, 784 (8th Cir. 2001) (quotation omitted). However, a district court's ruling "cannot be used as stare decisis because '[a] district court decision binds no judge in any other case, save to the extent that doctrines of preclusion (not stare decisis) apply.'" *Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 n.2 (8th Cir. 2015) (quotation omitted); *accord Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 967 (8th Cir. 2009) ("[O]ne district court is not bound by the holdings of others, even those within the same district."). In addition, the Northern District of Illinois is in a different circuit than the District of Minnesota. Agri Stats

concedes that neither res judicata nor collateral estoppel bars Plaintiffs' broiler chicken claim because they were not parties in *Broilers*.  Thus, the Court is not bound by *Broilers*, and instead need only give it the same consideration as it would any other district court ruling.

The broiler chicken claims here are like those that *Broilers* found insufficient, but summary judgment rulings necessarily rely on the evidence before the specific judge.  Here, Plaintiffs allege that Agri Stats's reports contain information that encouraged meat processors to conspire to reduce the output and increase the price of meat, much like the private plaintiffs in *Broilers*.  *Broilers*, 2023 WL 7220170, at *25.  However, the *Broilers* summary judgment order necessarily depended on the set of evidence and arguments offered before the Court at summary judgment.  While the *Broilers* opinion will certainly be helpful to the Court's own analyses, and maybe even persuasive, the Court declines, at this earlier stage of litigation, to deprive itself the opportunity to consider the evidence and arguments that will be developed during discovery in this highly complex antitrust action brought by the United States.  Accordingly, the Court will deny Agri Stats's motion to dismiss the broiler chicken claim.

## CONCLUSION

This action arises out of alleged anti-competitive conduct by Agri Stats in its reporting in the broiler chicken, turkey, and pork industries.  While this case is similar to other litigation pending in the Northern District of Illinois, the Court finds it proper to keep the case here and to allow all claims to proceed.

-23-

The convenience of the parties and witnesses and judicial economy does not strongly favor transfer to the Northern District of Illinois or the Northern District of Indiana because of the overlap between this case and *Pork*, which Agri Stats is defending in this Court.  Transfer therefore is not warranted, so the Court will deny Agri Stats's motion to transfer.  Further, Plaintiffs' pork and turkey claims meet the requisite standing and pleading requirements under Article III and the antitrust statutes, and the Court declines to dismiss the broiler chicken claim because of the summary judgment decision in *Broilers* in the Northern District of Illinois.  Accordingly, the Court will deny Agri Stats's motion to dismiss.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's Motion to Transfer [Docket No. 42] is **DENIED**; and

2.  Defendant's Motion to Dismiss [Docket No. 77] is **DENIED**.

DATED:  May 28, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge