UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>STATE OF MINNESOTA,<br>STATE OF CALIFORNIA,<br>STATE OF NORTH CAROLINA,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS, and<br>STATE OF UTAH,<br><br>               *Plaintiffs*,<br><br>        v.<br><br>AGRI STATS, INC.,<br><br>               *Defendant.* | No. 0:23-CV-03009-JRT-JFD<br><br>**Updated Rule 26(f) Report** |

       As required by Fed. R. Civ. P. 26(f), the Local Rules, and the Court's May 17, 2024 Order, ECF No. 117, the parties identified below conferred on June 11, 2024 and prepared the following report.[1]

**A.**     **DESCRIPTION OF THE CASE**

    **1.**     **Plaintiff's concise factual summary of their claims:**

       Plaintiffs filed suit against Agri Stats to enjoin its unlawful information sharing practices, which violate Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs allege that in each of the broiler chicken, pork, and turkey industries, Agri Stats has recruited the major processors to share sensitive details about their business operations with Agri Stats, with the understanding that competitors will do the same and that Agri Stats will then share the data among the competitors. Plaintiffs allege that Agri Stats audits the data it receives from the various competitors, standardizes the data, and then compiles that data into a variety of highly detailed and loosely anonymized reports that Agri Stats distributes to all of the participating processors. In addition, Plaintiffs allege that Agri Stats reviews the industry data and uses it to advise individual competitors on ways they can increase prices, reduce output, and elevate profits without harming their competitors.

---

[1] This updates the 26(f) Report submitted by the parties on March 5, 2024. ECF No. 97.

By sharing timely and granular data about their business operations, Plaintiffs allege that Agri Stats grants competitors in each of the broiler chicken, pork, and turkey industries valuable and exclusive insight about each industry that harms the competitive process. This is particularly true given that purchasers and consumers do not have access to the same information. Plaintiffs allege that processors routinely follow Agri Stats' advice and use Agri Stats to guide their price increases, which ultimately harms consumers.

2.  **Defendant's concise factual summary of its claims/defenses:**

Agri Stats denies Plaintiffs' allegations that its reports and accompanying services result in harm to competition. Agri Stats is a small benchmarking company based in Fort Wayne, Indiana, with less than 70 employees. For nearly 40 years, it has provided reports to chicken producers to help make those producers more efficient, by, for example, understanding how companies can produce more pounds of chicken with lower feed and water costs, ultimately resulting in lower priced chicken for consumers. It began offering similar reports to turkey producers in 2001 and pork producers in 2007, but has not produced any pork or turkey reports since 2019. Agri Stats does not share in any of the revenues that its customers earn from chicken, pork, or turkey sales, but instead charges flat fees for its services. Agri Stat is *not* a consultant that advises its subscribers on the business decisions those companies should make.

This is not the first time Agri Stats' business has been investigated by at least one of these Plaintiffs. In 2010, Agri Stats received a Civil Investigative Demand from the United States and cooperated with an antitrust investigation focused on whether its reports enable producers to coordinate on output or price—the same issue Plaintiffs' Complaint raises. After a nearly two-year inquiry, DOJ closed the investigation without seeking any changes to Agri Stats' reports. Agri Stats' reports have not changed materially since DOJ closed its investigation 11 years ago.

Further, in 2016, private plaintiffs filed a class action alleging an information exchange claim identical to that Plaintiffs assert here with respect to the alleged broiler chicken market. *See In re Broiler Chicken Antitrust Litig.*, 1:16-cv-8637, 2023 WL 7220170 (N.D. Ill. June 30, 2023, amended Nov. 2, 2023) ("*Broilers*"). In 2018, some of the same private plaintiffs filed a class action in this Court on the same theories but for pork. *See In re Pork Antitrust Litig.*, 1:18-cv-1776 (D. Minn. June 28, 2018) ("*Pork*"). In 2019, a private plaintiff, filed another class action on the same theories but for turkey. *See In re Turkey Antitrust Litig.*, 1:19-cv-8318 (N.D. Ill. Dec. 19, 2019) ("*Turkey*"). *Broilers* has been resolved on the merits when the Northern District of Illinois granted Agri Stats' summary judgment, concluding that plaintiffs had failed to raise a triable issue that Agri Stats' broiler chicken reports violated section 1 of the Sherman Act. *See Broilers*, 2023 WL 7220170. Plaintiffs have access to the vast discovery records from *Broiler*, *Pork*, and *Turkey* that took years to develop in each case. Those records include millions of documents, terabytes of structured data, and hundreds of depositions, all directly related to the information exchange theory alleged by Plaintiffs. Despite having access to this

voluminous record, Plaintiffs offered no legal theory or factual allegations beyond those contained *Broiler*, *Pork*, and *Turkey,* and, as discussed below, have been unable to date to identify any actual proposed changes to Agri Stats' reports or services that they might seek from the Court in the form of equitable relief. It is therefore unclear whether litigation in this case is necessary, but, should the case proceed, there is no reason for the Court to reach a different outcome than that reached by the Northern District of Illinois in *Broilers*.

3. **Statement of jurisdiction (including statutory citations):**

    ***Plaintiffs' Position:***  This Court has jurisdiction over all of Plaintiffs' claims pursuant to 15 U.S.C. §§ 1, 4, 26 and 28 U.S.C. §§ 1331, 1337(a), 1345.

    ***Defendant's Position:*** This Court has jurisdiction over Count 1 in Plaintiffs' Second Amended Complaint pursuant to 15 U.S.C. § 1; 15 U.S.C. § 4; 15 U.S.C. § 26; 28 U.S.C. §§ 1331, 1337(a), 1345. This Court lacks subject matter jurisdiction over Counts 2 and 3 in Plaintiffs Second Amended Complaint pursuant to U.S. Const., art III, § 2.

4. **Summary of factual stipulations or agreements:**

    Not applicable.

5. **Statement of whether a jury trial has been timely demanded by any party:**

    The parties agree that the trial should be a bench trial.

6. **Statement as to whether the parties agree to resolve the matter under the Rules of Procedure for Expedited Trials of the United States District Court, District of Minnesota, if applicable:**

    Not applicable.

7. **Has all process been served and have all pleadings been filed?**

    Yes.

8. **Does any party have plans to seek to amend the pleadings or add additional parties to the action, and if so, what are those plans?**

    There are no present plans to amend the pleadings. Plaintiffs reserve the right to amend their pleadings based on additional facts or events, or as otherwise permitted by the Federal Rules of Civil Procedure, if applicable.

## B.   FACT DISCOVERY

The parties have been unable to reach an agreement regarding the discovery schedule and discovery limitations in this case. The parties' respective positions on discovery limitations are set forth below. The parties' respective positions on the discovery schedule are set forth in Section G, below.

*Plaintiffs' Position:*

Plaintiffs believe discovery in this matter should incorporate, to the extent possible, materials from the three private litigations concerning Agri Stats' alleged anti-competitive conduct in the broiler chicken, pork, and turkey industries. Contrary to Agri Stats' suggestion, Plaintiffs do not intend to "redo the massive discovery" from those cases, unless Defendant is unwilling to agree to incorporate the discovery from those cases here. Plaintiffs will endeavor to reach agreement with Defendant regarding the extent to which those discovery materials will be admissible in this litigation so as to minimize duplications as much as possible, while accounting for the fact that Plaintiffs' claims here differ meaningfully from the claims litigated in the private litigations. Plaintiffs believe it will be necessary to supplement discovery from those litigations at least in the following ways: (i) bringing current discovery that ended years ago in those cases; (ii) collecting materials that pre-date the discovery period from those cases, as needed; (iii) exploring facts and allegations not addressed in the prior litigations (including, for instance, Agri Stats' claim in this litigation that it has no intention to resume pork and turkey reporting); and (iv) to capturing materials that are relevant to Plaintiffs' claims here but were outside the scope of discovery in those litigations.

In addition, although Plaintiffs obtained some materials and data from Agri Stats and third parties prior to filing this lawsuit, those productions were either incomplete or narrower than the discovery Plaintiffs intend—and are entitled—to seek in litigation. Other materials provided to Plaintiffs from prior litigations were not provided in a manner that captures all relevant information. Plaintiffs believe the parties can work together to efficiently identify categories of documents and data that are relevant to the litigation but were not fully produced previously, so as to avoid duplication to the extent possible.

With respect to discovery limitations, Plaintiffs agree with Defendant that, consistent with the Federal Rules of Civil Procedure, there should be no limit on the number of requests for production and requests for admission available to the parties. The only disputes between the parties concern the number of interrogatories and depositions that should be permitted. Plaintiffs propose the following:

***Interrogatories.*** Plaintiffs (collectively) and Defendant should each be permitted 35 interrogatories—ten more than the default under the Federal Rules of Civil Procedure. This is a complex case involving three separate industries and product markets and over at least 15 years of conduct by Defendant and dozens of its co-conspirator processors. Plaintiffs

4

believe permitting each side ten additional interrogatories beyond the default of 25 under the Federal Rules of Civil Procedure will facilitate more efficient discovery.

**Depositions.** Plaintiffs (collectively) and Defendant should each be permitted 50 depositions, including cross-noticed depositions, and Plaintiffs should also be permitted five 30(b)(6) depositions of Defendant Agri Stats. Plaintiffs will endeavor to reach an agreement with Defendant to treat depositions from the private multidistrict litigations as if they had been taken in this litigation—if Defendants are willing to agree to do so—and will minimize duplication in depositions as much as possible. This number of depositions will be necessary because, in addition to party depositions, there are dozens of key third-party witnesses that both sides will likely need to depose—in particular, the 44 protein processors identified as Defendant's co-conspirators in Plaintiffs' Second Amended Complaint, all of which were defendants in the three multidistrict litigations. In addition, Plaintiffs need the ability to take multiple 30(b)(6) depositions of Agri Stats. For example, Plaintiffs may need to take an initial 30(b)(6) deposition to understand Agri Stats' data systems, and that deposition—which will help streamline and facilitate discovery—should not prejudice Plaintiffs' ability to take other 30(b)(6) depositions of Agri Stats on unrelated substantive issues.

Defendant's proposal to limit Plaintiffs to only 10 depositions *total* (to cover Agri Stats current employees, former employees, 30(b)(6) depositions, the 44 co-conspirator processors, and all other third parties) is severely prejudicial to Plaintiffs, who were not parties to the private litigations and did not participate in any depositions in those cases. Defendant's concern that Plaintiffs are seeking to entirely re-do deposition discovery from those cases is simply misplaced: Plaintiffs' proposal of 50 depositions is a fraction of the hundreds of depositions that were allowed and have taken place in those cases.

### *Defendant's Position:*

Plaintiffs already have had access to a massive discovery record previously compiled from class actions raising exactly the same information exchange claims that Plaintiffs bring against Agri Stats. Plaintiff the United States issued multiple Civil Investigative Demands ("CIDs") seeking the full discovery records from *In re Broiler Chicken Antitrust Litigation*, *In re Pork Antitrust Litigation*, and *In re Turkey Antitrust Litigation,* and Agri Stats understands that those records were produced to the United States by counsel for plaintiffs in those cases. Each of those cases contains a rule of reason information exchange theory identical to the three counts brought by Plaintiffs here. The Department of Justice further issued CIDs to Agri Stats seeking additional information beyond what was contained in the records for those three cases.

As a result of these efforts, Plaintiffs have access to more than **30 million documents** produced by Agri Stats and other defendants and third parties in those cases; terabytes of data produced by Agri Stats and other defendants and third parties in those cases (including the data underlying the chicken, pork, and turkey reports challenged by Plaintiffs); over

5

***600 deposition transcripts*** from all of the fact witnesses deposed in those cases; and all of the expert reports and analyses from those cases. This massive record was compiled over many years at an enormous expense. Plaintiffs also have access to the extensive record compiled in three trials in *United States v. Penn*, No. 20-cr-00152 (D. Colo.), in which Plaintiff United States told a jury that Agri Stats reports could not be used to coordinate or raise prices.

Plaintiffs have identified no basis to redo the massive discovery that already has been conducted on their claims, or identified any "gaps" in discovery that require piling on an additional 50 depositions on top of the 600+ already conducted. While there might be some need for limited supplementation of the fact discovery record for broiler chicken reports (because those reports continue to this day), there is no conceivable need for more discovery than that ordinarily afforded under the Federal Rules. And there is no need for any discovery related to pork or turkey at all because those reports all ceased more than four years ago before the end of the discovery periods in *Pork* and *Turkey* for which Plaintiffs already have documents, data, and deposition testimony. Redoing this discovery will impose a massive burden on third-parties who are not defendants in this action, as well as massive and unnecessary burdens on Agri Stats, a small business based in Fort Wayne Indiana with fewer than 70 employees, that has already litigated for over six years—and defeated—the same information exchange claim brought by Plaintiffs. Agri Stats simply does not have the financial resources to participate in 50 depositions, and there is no need to force Agri Stats employees to sit for new depositions—including a staggering five days of 30(b)(6) depositions—when Agri Stats witnesses have provided dozens of days of sworn testimony binding the company on these same issues already. Consistent with the above, Agri Stats proposes the following discovery limitations, consistent with the Federal Rules of Civil Procedure:

1. Interrogatories: consistent with Rule 33(a)(1), all Plaintiffs jointly and Defendant each shall be permitted 25 interrogatories.

2. Document requests: consistent with Rule 34 there shall be no limit on the number of requests to produce the parties may serve. The parties may propound only a reasonable and appropriate number of requests for production.

3. Requests for Admission: consistent with Rule 36 there shall be no limit on the number of requests for admission the parties may serve. The parties may propound only a reasonable and appropriate number of requests for admission.

4. Depositions: consistent with Rule 30, all Plaintiffs jointly and Defendants each shall be permitted 10 fact witness depositions, including depositions taken pursuant to Fed. R. Civ. P. 30(b)(6). If plaintiffs identify a reasonable basis to re-depose particular individuals who were previously deposed in the

other three class action proceedings, Agri Stats agrees to meet and confer regarding whether additional depositions are necessary.

C. **EXPERT DISCOVERY**

1. The parties anticipate that they will require expert witnesses at trial.

    ***Plaintiffs' Position:*** Plaintiffs anticipate calling up to four experts in the fields of industrial organization/economics, benchmarking, and/or relevant industry expertise. Plaintiffs reserve the right to call any additional experts, based on the course of litigation and/or any defenses asserted by Defendant.

    ***Defendant's Position:*** Agri Stats anticipates calling expert witnesses in connection with liability issues, but has not yet determined how many such experts it will require.

2. The parties provide competing proposals for expert discovery below in Part G.

D. **OTHER DISCOVERY ISSUES**

1. **Protective Order.** The parties have filed a proposed protective order attached to this report as Exhibit 1.

2. **Discovery of Electronically Stored Information.** The parties will jointly submit a proposed ESI order identifying any areas of disagreement, if any.

3. **Claims of Privilege or Protection.** These matters will be addressed in the protective order, ESI order, and/or other proposed orders submitted by the parties.

4. **Authenticity.** The parties will meet and confer in good faith at the appropriate time to determine if a stipulation can be agreed to concerning various evidentiary issues addressed in the Federal Rules of Evidence ("FRE"), including authenticity (FRE 902 & 903) and the status of a document as a business record (FRE 803(6)). To assist the parties in resolving such evidentiary issues via stipulation rather than serving requests for admission, the parties may presume that a document produced by a party is from the party's files, unless a party makes a showing of good cause to the contrary.

5. **Access to Confidential *Pork* Materials**. Plaintiffs intend to seek an order from the Court permitting them to access sealed filings in the *In re Pork* litigation.

E. **PROPOSED MOTION SCHEDULE**

1. Motions seeking to join other parties must be filed and served by 30 days after ruling on Defendant's motion to dismiss.

2. Motions seeking to amend the pleadings must be filed and served by 30 days after ruling on Defendant's motion to dismiss.[2]

3. Non-dispositive motions:

    a. ***Plaintiffs' Position***: All non-dispositive motions relating to fact discovery must be filed and served prior to the close of fact discovery.

    b. ***Defendant's Position***: All non-dispositive motions relating to fact discovery must be filed and served 30 days prior to the close of fact discovery.

    c. All other non-dispositive motions, including motions relating to expert discovery, but with the exclusion of pre-trial motions in limine, must be filed and served by the deadline for dispositive motions.

    The parties must meet and confer to resolve all discovery disputes and other non-dispositive issues prior to filing any motions.

4. All dispositive motions must either be filed by, or filed and heard by, depending on the preferences of the district judge, the date set forth in the schedule below in Part G.

F. **TRIAL-READY DATE**

*Plaintiffs' Position:*

1. The case will be ready for trial no later than August 2025, subject to the Court's rulings on any summary judgment motions.

2. The anticipated length of the bench trial is 15-20 days.

3. Plaintiffs propose that the final pretrial conference be held two weeks before the commencement of trial.

---

[2] Plaintiffs reserve the right to seek to amend or add parties for good cause or as otherwise allowed under the Federal Rules of Civil Procedure.

*Defendant's Position:*

4. The case will be ready for trial 12 weeks after a ruling on any summary judgment motions.

5. The anticipated length of the bench trial is 5 days.

6. Defendant proposes that the final pretrial conference be held two weeks before the commencement of trial.

**G.     PROPOSED SCHEDULE**

Below are the parties' competing schedule proposals, consistent with the positions outlined above.

| Event | Plaintiffs' Proposal | Defendant's Proposal |
| --- | --- | --- |
| Initial disclosures. | March 5, 2024 | March 5, 2024 |
| Commencement of fact discovery. | February 20, 2024 (upon Rule 26(f) conference) | May 17, 2024 |
| Deadline for serving discovery requests. | 30 days prior to the close of fact discovery | July 26, 2024 |
| Substantial completion of document productions. | November 22, 2024 | August 9, 2024 |
| Close of fact discovery. | January 24, 2025 | September 6, 2024 |
| Plaintiffs identify experts and serve expert report(s). | February 14, 2025 | September 20, 2024 |
| Defendants identify experts and serve rebuttal expert report(s). | March 14, 2025 | October 18, 2024 |

| | | |
|---|---|---|
| Plaintiffs serve reply expert report(s). | April 11, 2025 | November 1, 2024 |
| Close of expert discovery. | May 2, 2025 | November 15, 2024 |
| All dispositive and *Daubert* motions filed. | May 16, 2025 | December 13, 2025 |
| Oppositions to dispositive and *Daubert* motions filed. | June 13, 2025 | January 10, 2025 |
| Replies in further support of dispositive and *Daubert* motions filed. | June 27, 2025 | January 24, 2025 |
| Commencement of trial. | August 2025 | 12 weeks from a ruling on dispositive motions. |

H.     **INSURANCE CARRIERS/INDEMNITORS**

List all insurance carriers/indemnitors, including limits of coverage of each defendant or a statement that the defendant is self-insured:

Not Applicable.

I.     **SETTLEMENT**

At the Rule 16 Scheduling Conference, Magistrate Judge Docherty will ask the parties for their views about the optimal timing of a settlement conference in this case.

*Plaintiffs' Position:*

Plaintiffs seek an injunction permanently enjoining Agri Stats and EMI from facilitating the exchange of sensitive information and from continuing to engage in the anticompetitive practices described in the Second Amended Complaint or practices with the same purpose and effect as the challenged practices. Plaintiffs are charged with

10

enforcing U.S. antitrust laws to prevent and restrain such anticompetitive conduct and to protect against likely future harm to consumers. Plaintiffs also seek to dissipate the anticompetitive effects of Agri Stats' conduct.

Although Plaintiffs have identified numerous aspects of Agri Stats' business that are unlawful and require reform (many of which are detailed in the Second Amended Complaint), Plaintiffs cannot make a settlement demand because Plaintiffs do not believe Agri Stats has been forthcoming about *all* of its business practices. Notably, while Agri Stats states that 'Plaintiffs now argue that they do not have sufficient information about "all" of Agri Stats' business practices in order to identify that "sensitive information," Plaintiffs respectfully submit that this statement misunderstands Plaintiffs' position. Agri Stats facilitates the sharing of sensitive information among competitors in a variety of ways. This matter does not merely turn on the nature of the sensitive information Agri Stats distributes, but also the various ways in which Agri Stats communicates that information among competitors. Plaintiffs disagree that Agri Stats has been fully open about its business.

In the face of this, a settlement conference is premature at this time and the optimal timing for a settlement conference in this case would be after there has been adequate discovery regarding the full scope of Agri Stats' conduct.

### *Defendant's Position:*

Plaintiffs seek an injunction "permanently enjoin[ing] Agri Stats and EMI from facilitating the exchange of sensitive information." Even prior to the filing of the complaint, Agri Stats repeatedly requested that the United States identify the "sensitive information" that it believed Agri Stats should cease including in its reports. Agri Stats was (and remains) willing to consider any request from Plaintiffs to modify its reports. But, to date (including in the above statement), the United States has refused to disclose to Agri Stats what "sensitive information" it seeks to enjoin.

Agri Stats reiterated its request during the February 20, 2024 Rule 26(f) Conference. Agri Stats explained on that call that Plaintiffs are seeking an injunction and, at some point, they will need to tell this Court what specific conduct they are asking the Court to enjoin. It does not make sense to waste the resources of the parties and the Court if the parties do not even know whether they are at an impasse on what "sensitive information" is of specific concern to Plaintiffs and whether alterations to the Agri Stats reports could address those concerns. Nevertheless, Plaintiffs continued to refuse to identify the "sensitive information" the exchange of which they seek to enjoin during the 26(f) Conference. For the first time, Plaintiffs now argue that they do not have sufficient information about "all" of Agri Stats' business practices in order to identify that "sensitive information." But DOJ began investigating Agri Stats over a decade ago, and at no point has DOJ asked Agri Stats a question about its business that Agri Stats has not answered. Moreover, DOJ has **tens of millions** of documents and **hundreds** of depositions from discovery records compiled over

many years about all of the details of Agri Stats' business, as well as ***all*** of Agri Stats reports and ***all*** of the data underlying those reports. If DOJ ***still*** does not have enough information to identify what "sensitive information" it seeks to enjoin, then it is unclear why the case should proceed at all.

Litigation with no end goal or fixed target does not make sense. Agri Stats submits that Plaintiffs should identify immediately the contours of the injunction they seek for the parties and the Court so that the parties can determine whether a potential settlement could avoid burdening the parties and the Court with costly litigation. Agri Stats believes that a mediator could potentially help facilitate these discussions, and requests guidance from the Court on this issue.

**J.      TRIAL BY MAGISTRATE JUDGE**

The parties have not agreed to consent to jurisdiction by the Magistrate Judge under 28 U.S.C. § 636(c). (If the parties agree to consent, file the consent with the Rule 26(f) Report.)

Dated: June 17, 2024

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

ANN M. BILDTSEN
Attorney ID No. 0271494
First Assistant United States Attorney
Attorney for the United States Acting Under Authority Conferred by
28 U.S.C. § 515

/s/ Liles H. Repp
LILES H. REPP
Attorney ID No. 0400692
Assistant United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: (612) 664-5600
Fax: (612) 664-5788
Liles.Repp@usdoj.gov

*/s/* Mark H.M. Sosnowsky

MARK H.M. SOSNOWSKY (*Pro Hac Vice*)
EUN-HA KIM
Senior Trial Counsel

WILLIAM M. FRIEDMAN (*Pro Hac Vice*)
JAMES H. CONGDON (*Pro Hac Vice*)
SILVIA J. DOMINGUEZ-REESE (*Pro Hac Vice*)
PETER A. NELSON (*Pro Hac Vice*)
DEVIN L. REDDING (*Pro Hac Vice*)
Trial Attorneys

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 812-4723
Facsimile: (202) 307-5802
Mark.Sosnowsky@usdoj.gov
Eun-Ha.Kim@usdoj.gov
William.Friedman2@usdoj.gov
James.Congdon@usdoj.gov
Silvia.Dominguez-Reese2@usdoj.gov
Peter.Nelson@usdoj.gov
Devin.Redding@usdoj.gov

*Attorneys for United States of America*

**FOR PLAINTIFF STATE OF MINNESOTA:**

KEITH ELLISON
Attorney General of Minnesota

*/s/* Katherine A. Moerke
JAMES CANADAY (No. 030234X)
Deputy Attorney General
KATHERINE A. MOERKE (No. 0312277)
ELIZABETH ODETTE (No. 0340698)
SARAH DOKTORI (No. 0403060)
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
james.canaday@ag.state.mn.us

13

Telephone: (651) 757-1421
katherine.moerke@ag.state.mn.us
Telephone: (651) 757-1288
elizabeth.odette@ag.state.mn.us
Telephone: (651) 728-7208
sarah.doktori@ag.state.mn.us
Telephone: (651) 583-6694

*Attorneys for State of Minnesota and Local Counsel for States of California, North Carolina, Tennessee, Texas, and Utah*

**FOR PLAINTIFF STATE OF CALIFORNIA:**

ROB BONTA
Attorney General of California

*/s/* Robert McNary
ROBERT MCNARY (*Pro Hac Vice*)
Deputy Attorney General
NICOLE GORDON (*Pro Hac Vice*)
Deputy Attorney General
JAMIE MILLER (*Pro Hac Vice*)
Supervising Deputy Attorney General
PAULA BLIZZARD (*Pro Hac Vice*)
Senior Assistant Attorney General
Office of the Attorney General
California Department of Justice
300 S. Spring St.
Los Angeles, California 90013
Telephone: (213) 269-6283
Robert.McNary@doj.ca.gov

*Attorneys for State of California*

14

**FOR PLAINTIFF STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General of North Carolina

*/s/* Jonathan R. Marx
JASMINE MCGHEE (*Pro Hac Vice*)
Senior Deputy Attorney General
JONATHAN R. MARX (*Pro Hac Vice*)
Special Deputy Attorney General
KUNAL CHOKSI (*Pro Hac Vice*)
Special Deputy Attorney General
114 W. Edenton Street
Raleigh, NC 27603
Telephone: (919) 716-8611
jmarx@ncdoj.gov

*Attorneys for State of North Carolina*

**FOR PLAINTIFF STATE OF TENNESSEE:**

JONATHAN SKRMETTI
Attorney General of Tennessee

*/s/* Ethan Bowers
ETHAN BOWERS (*Pro Hac Vice*)
J. TATE BALL (*Pro Hac Vice*)
Assistant Attorney General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Ethan.Bowers@ag.tn.gov
Tate.Ball@ag.tn.gov
Telephone: (615) 741-8091

*Attorneys for State of Tennessee*

**FOR PLAINTIFF STATE OF TEXAS:**

KEN PAXTON
Attorney General of Texas

/*s/* Trevor Young
BRENT WEBSTER (*Pro Hac Vice*)
First Assistant Attorney General
GRANT DORFMAN (*Pro Hac Vice*)
Deputy First Assistant Attorney General
JAMES LLOYD (*Pro Hac Vice*)
Deputy Attorney General for Civil Litigation; Chief, Antitrust Division
TREVOR YOUNG (*Pro Hac Vice*)
Deputy Chief, Antitrust Division
WILLIAM SHIEBER (*Pro Hac Vice*)
JONATHAN WOODWARD (*Pro Hac Vice*)
Assistant Attorneys General
Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Telephone: (512) 463-1710
Trevor.Young@oag.texas.gov

*Attorneys for State of Texas*

**FOR PLAINTIFF STATE OF UTAH:**

SEAN D. REYES
Attorney General of Utah

/*s/* Marie W.L. Martin
MARIE W.L. MARTIN (*Pro Hac Vice*)
Assistant Attorney General
Utah Office of the Attorney General
350 N. State Street, Suite 230
Salt Lake City, UT 84114
Telephone: (801) 366-0375
Fax: (801) 366-0378
mwmartin@agutah.gov

*Attorneys for State of Utah*

16

*/s/ Justin W. Bernick*
Peter H Walsh (MN# 0388672)
Hogan Lovells US LLP
80 South 8th Street Ste 1225
Minneapolis, MN 55402
Tel: (612) 402-3017
Fax: (612) 339-5167
Email: peter.walsh@hoganlovells.com

William L. Monts III (Pro Hac Vice)
Justin W. Bernick (Pro Hac Vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant Agri Stats, Inc.*