UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>STATE OF MINNESOTA,<br>STATE OF CALIFORNIA,<br>STATE OF NORTH CAROLINA,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS, and<br>STATE OF UTAH,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>AGRI STATS, INC.,<br><br>     *Defendant.* | No. 0:23-CV-03009-JRT-JFD |

**[PROPOSED] ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS**

This Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Order") entered by and between Plaintiffs United States of America, State of Minnesota, State of California, State of North Carolina, State of Tennessee, State of Texas, and State of Utah ("Plaintiffs"), and Defendant Agri Stats, Inc. (together with Plaintiffs, the "Parties") with terms and scope recited herein.

**I. GENERAL PROVISIONS**

  A. Except as specifically set forth herein, this ESI Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court the District of Minnesota.

  B. The production specifications set forth in this ESI Order do not apply to

1

databases, data sources, logs, and other structured data except as described in Section VII (Databases, Data Sources, Logs, and Structured Data) below.

    C.    This ESI Order may be modified for good cause by a Stipulated Order of all Parties or by the Court. The Parties reserve their rights to seek reasonable modifications of these procedures as appropriate.

    D.    Where disputes arise concerning the scope or nature of a production or any provision in this ESI Order, the Parties must meet and confer consistent with Local Rule 7.1(a)-(b) (Civil Motion Practice) in the District of Minnesota.

## II. DEFINED TERMS

For purposes of this ESI Order, the Definitions below must apply.

    A.    The "Action" means the case captioned *United States, et al. v. Agri Stats, Inc.*, Case No. 0:23-CV-03009-JRT-JFD (D. Minn.).

    B.    "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a), including but not limited to emails, calendar items, instant messages, text messages, chat messages, and other ESI.

    C.    "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI, hard copy discovery, and tangible things.

    D.    "Format" means the internal structure of a file, which defines the way it is stored and used.

    E.    "Native File(s)" or "Native Format(s)" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application

(including, for example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.msg, *.pst, and *.pdf files).

F.  "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

G.  "Receiving Party" means a Party to whom documents are produced.

H.  "Bates Number" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of:

1.  An alphanumeric portion identifying the Producing party and/or other characteristics of the production; and

2.  A numeric portion incremented according to a scheme defined at the Producing Party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier must be no more than 16 characters in length.

I.  "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

J. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format ("TIFF") image is an example of a Static Image.

K. "Load/Utilization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Utilization File also contains data relevant to the individual Documents, including extracted and user-created Metadata, coded-data, as well as OCR or Extracted Text.

L. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

M. "Extracted Text" means the text extracted from a Native File and includes all header, footer, document body information, and tracked changes content (comments, markup, etc.).

**III.    PRESERVATION**

**A.    Materials To Be Preserved.** Each Party will continue its retention practices with regard to all Documents and ESI and will take reasonable and proportionate steps to preserve relevant and discoverable ESI in compliance with duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Upon mutual agreement of the Parties, a Party will modify its retention

practices to ensure the preservation of potentially responsive Documents and ESI. The Parties agree to preserve ESI in such a way that it can be produced in a reasonably usable form in accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(ii).

  B. **No Preclusion.** Nothing in this ESI Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that any categories of Documents or ESI are not reasonably accessible.

  C. **Preservation Does Not Affect Discoverability or Claims of Privilege.** By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## IV. COLLECTION AND REVIEW

  A. **Meet and Confer.** The Parties agree that in responding to any Fed. R. Civ. P. 34 request, they will meet and confer about methods to collect, review, and identify ESI in order to categorize ESI subject to production in discovery and exclude ESI not subject to discovery, including the use of technology-assisted review or a similar tool (collectively "TAR"), search terms, or other search and review methods.

  B. **Production of All Documents Captured.** Nothing in this Order may be construed or interpreted as requiring the production of all Documents captured by any search term or TAR if any such Documents are in good faith and reasonably deemed not responsive to the Requesting Party's request or are otherwise privileged. Nothing in this Order allows a Producing Party to knowingly withhold any otherwise responsive and non-privileged Document because the Document was not captured by any search term or TAR methodology used by the Producing Party.

**C.     Identification Process.** Each Party will use its best efforts to filter out all non-responsive common system files, executable files, program files, application executable files, and any other non-user created data that exist in the National Software Reference Library ("NSRL") hash set list produced by the National Institute of Standards and Technology ("NIST"). The above-described filtering is commonly referred to as "deNISTing." All available metadata from files withheld from delivery due to deNISTing process must be made available upon request. If a Producing Party proposes filters other than those found in the NIST hash set list to collect for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the Producing Party must advise the Requesting Party and the Requesting and Producing Parties must meet and confer regarding such additional proposed filters.

**D.     De-Duplication.** Each Party is required to produce only a single copy of a responsive document. A Producing Party must de-duplicate across custodians and at the family-level only (i.e., if there are identical child documents that have different parents, they are not duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone document). A Party may de-duplicate responsive ESI based on Source Hash, MD5 hash values, or other industry standard method. For emails with families, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through hash values is not possible, the Parties must meet and confer to discuss any other proposed method of de-duplication. A Producing Party must make reasonable effort to identify all agreed upon custodians who were in possession of any de-duplicated Documents through an

appropriate load file field such as All Custodians, as well as the File Paths where each Custodian stored the de-duplicated Document. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field. In the event of rolling productions of Documents or ESI, the Producing Party will, as needed, supplement the load files with updated All Custodian information and updated File Path information, as well as BCC information to the extent such metadata exists.

      E.    **Email Threading.** The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. The Parties reserve the right to request the production of any email excluded pursuant to this provision. Production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No Document may be withheld from production solely on the basis that it is included in a produced more-inclusive email.

**V.    PRODUCTION OF ESI**

    The Parties must produce all Documents and ESI in the following format:

      A.    **Covered ESI.** Covered ESI and paper Documents that are produced as

scanned images should be produced in Standard Group IV - single page TIFF images at a minimum of 300 DPI, 1 bit, with the exception of certain documents identified in paragraph V.B, below, which are to be produced in native format. If after reviewing any black and white document, a Receiving Party believes that color is critical to a document, the Parties must engage in discussion regarding production of the specified documents in color, which production will not be unreasonably withheld. Hidden content (comments, draft markup, etc.) must be made visible prior to image conversion. The Parties must provide image load files in Concordance (*.OPT) format to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata (including the fields described in Exhibit A) should be provided in a Concordance *.DAT format, or other standard, compatible file format and extension as the Receiving Party specifies. For Documents from which text cannot be extracted, such as non-native or non-searchable native files, the text will be generated using OCR and provided as multi-page text (*.txt) files or other standard, compatible file format as specified by the Receiving Party.

      **B.**    **Native Format.** Parties must produce in native format spreadsheets (e.g., Excel, Google Sheets, OpenOffice, etc.), presentations (e.g., PowerPoint, Google Slides, Keynote, etc.), files that cannot be converted to TIFF (such as audio and video files), and other agreed-upon ESI. Native files should contain the Bates number in the file title. In addition, native files should be accompanied by a TIFF placeholder that contains the beginning Bates number, any confidentiality designation, and text indicating "FILE PRODUCED NATIVELY" displayed on the page. Wherever feasible, the Producing Party

must include accompanying metadata in the load file. Documents with privileged information will not be produced in native format, unless the Party is able to redact privileged information in native format. Additionally, if after reviewing production of ESI in a non-native format, a Receiving Party believes that it is necessary to review a certain document or documents in native format, the Parties must engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

      **C.**      **Parent-Child Relationships**. Parent-child relationships (the association between an attachment and its parent Document) must be preserved in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

      **D.**      **Metadata Fields.** All required metadata fields are identified in the attached Exhibit A.

      **E.**      **Document Unitization.** If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments must be maintained as it existed in the original when creating the image file. For documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) must be maintained through the scanning or conversion process.

      **F.**      **Redacted Documents.** Documents that contain redactions will be produced

in single-page TIFF format with corresponding OCR text and a Concordance-delimited DAT file containing the metadata fields outlined in Exhibit A to the extent that such metadata fields are not part of the redaction, with the exception that if a Party utilizes technology that permits the redaction of files that are not typically produced in image format (such as spreadsheets), those files may be produced in native format with redactions. Documents that are produced with redactions will be noted as "Redacted" in the DAT file. Documents with any metadata field redacted will be produced with a Redaction Status "Metadata Redacted" indicating the metadata for that document has been redacted in the DAT file.

      G.    **Production Media.** A Producing Party must produce responsive documents in an encrypted electronic form via Secure File Transfer or on a DVD, USB thumb drive, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (Production Media). The following information must be provided on the physical Production Media: (1) a reference to this case number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media must also be contained on the Production Media, where practicable, and must also be provided in an accompanying letter.

      H.    **Embedded Objects.** To the extent search terms or TAR are used to identify potentially responsive documents, such methods must include an evaluation of non-image files embedded within documents, such as spreadsheets within a PowerPoint. Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds should not be extracted as separate documents, and to the extent such objects

are extracted in a Parties' already collected material the parties agree those objects may be culled from the document review set. To the extent possible, Producing Parties will subject large, embedded images that contain text to OCR before executing TAR or using search terms.  To the extent that embedded images present recognition problems during processing, the Parties will meet and confer to discuss any proportional and appropriate countervailing measures.

     **I.**    **Compressed Files.** Container file types (*e.g.*, *.CAB, *.GZ, *.TAR, *.Z, *.ZIP) must be decompressed in a manner that ensures any and all nested containers are also decompressed into the lowest uncompressed element, resulting in individual files. The container file(s) itself must not be produced. All necessary passwords that are reasonably known to the Parties must be provided or encryptions removed.

     **J.**    **Text/SMS Messages and Chat Messages.** To the extent reasonably practicable, responsive text and chat messages (including messages from SMS, iMessage, Teams, Slack, Apple Messages, and other short messaging platforms) must be unitized on the conversation/channel level into 24-hour calendar-day chunks, with each chunk including all messages in that conversation or channel on a given calendar day. Each 24-hour chunk must be reviewed and produced as a single record, with redactions for privilege as provided in paragraph V.F above. The records must be produced with the metadata specified in the "IM/Text/Chat" column in Exhibit A, including TXT-THREAD-GROUP (the DOCID of the first 24-hour chunk in a given conversation/channel) and TXT-PARTICIPANTS (a list of participant names). The producing party will make reasonable efforts to assign names to participants who are identified only by phone number or

11

username.

## VI. LINKED FILES AND COLLABORATIVE WORK ENVIRONMENTS

For documents responsive to properly propounded requests issued pursuant to Fed. R. Civ. P. 34 or 45, the Producing Party must conduct an automated search across all emails to be produced, where the Producing Party has access to a collection tool capable of performing such an automated search, to identify any emails that contain links to another document (or "Linked File") elsewhere in the same "ecosystem" (such as Outlook emails that link to OneDrive files within the same M365 collaborative work environment, or Gmail emails that link to files within Google Drive), and must conduct a reasonable search for the document(s) corresponding with each identified link. This section does not require any Producing Party to collect Linked Files that fall outside of the collaborative work environment used by their collection tool. For example, a Party that collects data using Microsoft Purview or Google Vault is not required to retrieve documents linked in Dropbox. However, a Receiving Party may also make proportionate requests that the Producing Party conduct a reasonable search for relevant documents identified via hyperlinks. For each link identified by the Receiving Party, the Producing Party must conduct a reasonable search for the document(s) corresponding with the link. The Producing Party must process and produce documents corresponding with the links with reasonably available metadata, including Linked Attachment ID/Linked Parent ID fields populated with the corresponding Bates number. Alternatively, for a Document where an email has a hyperlink to another document, the Producing Party may produce the email with the hyperlinked Document as an attachment. The provisions of this Section VI apply

to any type of Document (including emails, presentations, spreadsheets, and other types of documents).

## VII. DATABASES, DATA SOURCES, LOGS, AND STRUCTURED DATA

The Parties must meet and confer regarding the production format and scope of data contained in databases, data sources, and logs to ensure that any information produced is submitted electronically in a reasonably useable compilation consistent with how the data is ordinarily maintained and that its production does not impose an undue burden on the Producing Party. To avoid doubt, information will be considered reasonably usable when produced in CSV format or other commonly used electronic formats, including other character-delimited text format, Microsoft Excel format, or Microsoft Access format, as long as that format maintains all data from the original database, including metadata such as table constraints and primary and foreign key designations. To the extent a Party is constrained from producing responsive ESI because software necessary to view the ESI is hardware-dependent, the Parties must meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting Party to view or access the ESI.

## VIII. PAPER DOCUMENTS

A Producing Party must scan and OCR paper Documents. The following information must be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) DOCID (b) ENDDOC, (c) CUSTODIAN, (d) EPROPERTIES, (e) BEGDOC, (f) BEGATTACH, (g) ENDATTACH, and (f) TEXTLINK. Paper documents should be logically unitized for production to the

extent reasonably practicable as outlined in paragraph V.E. Where a Document or a Document group—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the spine or label must be scanned and produced as the first page of the Document or grouping to the extent reasonably practicable.

IX.     **WRITTEN DISCOVERY ON NON-PARTIES**

The Parties will in good faith cooperate with each other with regard to any discovery to non-parties in an effort to minimize the burden on non-parties. Every subpoena to a non-party must include a cover letter requesting that (a) the non-party Bates-stamp each document with a production number and any applicable confidentiality designation prior to producing it; and (b) the non-party provide to the other Parties copies of all productions at the same time as they are produced to the requesting Party. Upon receipt of written responses and objections to a subpoena, the requesting Party must provide a copy to the Parties within two business days of such receipt. Upon receipt of a production in response to a Subpoena, the requesting Party must provide notice to the other Parties within two business days of such receipt. If the non-party failed to provide copies of the production to the other Parties, the requesting Party must provide such copies to the other Parties. In addition, if a non-Party produces documents or electronically stored information that are not Bates-stamped, the Party receiving those materials must request that the non-party Bates-stamp all documents or electronically stored information and produce such Bates-stamped copies to all Parties simultaneously. Each Party must provide the other Parties with (i) a copy of any written communication (including email) with any non-party concerning the timing of the non-party's response to any subpoena, including any

extensions or postponements, within five business days of the communication; and (ii) a written record of any withdrawal of any requests contained in the subpoena, within five business days of the modification.

IT IS HEREBY SO ORDERED this _____ day of _____, 2024.

_____

Honorable John F. Docherty
United States Magistrate Judge

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

/s/ Liles H. Repp
LILES H. REPP
Attorney ID No. 0400692
Assistant United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: (612) 664-5600
Fax: (612) 664-5788
Liles.Repp@usdoj.gov


/s/ Mark H. M. Sosnowsky
MARK H.M. SOSNOWSKY (*Pro Hac Vice*)
EUN-HA KIM
WILLIAM M. FRIEDMAN (*Pro Hac Vice*)
JAMES H. CONGDON (*Pro Hac Vice*)
SILVIA J. DOMINGUEZ-REESE (*Pro Hac Vice*)
PETER A. NELSON (*Pro Hac Vice*)
DEVIN L. REDDING (*Pro Hac Vice*)

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 812-4723
Mark.Sosnowsky@usdoj.gov

**FOR DEFENDANT AGRI STATS, INC.:**

/s/ Justin W. Bernick
Peter H Walsh (MN# 0388672)
Hogan Lovells US LLP
80 South 8th Street Ste 1225
Minneapolis, MN 55402
Tel: (612) 402-3017
Fax: (612) 339-5167
Email: peter.walsh@hoganlovells.com

William L. Monts III (Pro Hac Vice)
Justin W. Bernick (Pro Hac Vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant Agri Stats, Inc.*

**FOR PLAINTIFF STATE OF MINNESOTA:**

KEITH ELLISON
Attorney General of Minnesota

/s/ Katherine A. Moerke
JAMES CANADAY (No. 030234X)
Deputy Attorney General
KATHERINE A. MOERKE (No. 0312277)
ELIZABETH ODETTE (No. 0340698)
SARAH DOKTORI (No. 0403060)
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
james.canaday@ag.state.mn.us
Telephone: (651) 757-1421
katherine.moerke@ag.state.mn.us
Telephone: (651) 757-1288
elizabeth.odette@ag.state.mn.us
Telephone: (651) 728-7208
sarah.doktori@ag.state.mn.us
Telephone: (651) 583-6694

*Attorneys for State of Minnesota and Local Counsel for States of California, North Carolina, Tennessee, Texas, and Utah*

**FOR PLAINTIFF STATE OF CALIFORNIA:**

ROB BONTA
Attorney General of California

/s/ Robert McNary
ROBERT MCNARY (*Pro Hac Vice*)
Deputy Attorney General
NICOLE GORDON (*Pro Hac Vice*)
Deputy Attorney General
JAMIE MILLER (*Pro Hac Vice*)
Supervising Deputy Attorney General
PAULA BLIZZARD (*Pro Hac Vice*)
Senior Assistant Attorney General
Office of the Attorney General
California Department of Justice
300 S. Spring St.

Los Angeles, California 90013
Telephone: (213) 269-6283
Robert.McNary@doj.ca.gov

*Attorneys for State of California*

**FOR PLAINTIFF STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General of North Carolina

/s/ Kunal Choksi
JASMINE MCGHEE (*Pro Hac Vice*)
Senior Deputy Attorney General
KUNAL CHOKSI (*Pro Hac Vice*)
Special Deputy Attorney General
114 W. Edenton Street
Raleigh, NC 27603
Telephone: (919) 716-7032
kchoksi@ncdoj.gov

*Attorneys for State of North Carolina*

**FOR PLAINTIFF STATE OF TENNESSEE:**

JONATHAN SKRMETTI
Attorney General of Tennessee

/s/ Ethan Bowers
ETHAN BOWERS (*Pro Hac Vice*)
J. TATE BALL (*Pro Hac Vice*)
Assistant Attorneys General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Ethan.Bowers@ag.tn.gov
Telephone: (615) 741-8091

*Attorneys for State of Tennessee*

**FOR PLAINTIFF STATE OF TEXAS:**

KEN PAXTON
Attorney General of Texas

/s/ William Shieber
BRENT WEBSTER (*Pro Hac Vice*)
First Assistant Attorney General
GRANT DORFMAN (*Pro Hac Vice*)
Deputy First Assistant Attorney General
JAMES LLOYD (*Pro Hac Vice*)
Deputy Attorney General for Civil Litigation; Chief, Antitrust Division
TREVOR YOUNG (*Pro Hac Vice*)
Deputy Chief, Antitrust Division
WILLIAM SHIEBER (*Pro Hac Vice*)
JONATHAN WOODWARD (*Pro Hac Vice*)
Assistant Attorneys General

Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Telephone: (512) 463-1710
Email: Trevor.Young@oag.texas.gov

*Attorneys for State of Texas*

**FOR PLAINTIFF STATE OF UTAH:**

SEAN D. REYES
Attorney General of Utah

/s/ Marie Martin
MARIE W.L. MARTIN (*Pro Hac Vice*)
Assistant Attorney General

Utah Office of the Attorney General
350 N. State Street, Suite 230
Salt Lake City, UT 84114
Tel: (801) 366-0375
Fax: (801) 366-0378
Email: mwmartin@agutah.gov

*Attorneys for State of Utah*