## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,
STATE OF MINNESOTA,
STATE OF CALIFORNIA,
STATE OF NORTH CAROLINA,
STATE OF TENNESSEE,
STATE OF TEXAS, and
STATE OF UTAH,

     *Plaintiffs*,

  v.

AGRI STATS, INC.,

     *Defendant.*

No. 0:23-CV-03009-JRT-JFD

## ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS

This Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Order") entered by and between Plaintiffs United States of America, State of Minnesota, State of California, State of North Carolina, State of Tennessee, State of Texas, and State of Utah ("Plaintiffs"), and Defendant Agri Stats, Inc. (together with Plaintiffs, the "Parties") has the following terms and scope.

## I.  GENERAL PROVISIONS

A.  Except as specifically set forth herein, this ESI Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court the District of Minnesota.

B.  The production specifications set forth in this ESI Order do not apply to

databases, data sources, logs, and other structured data except as described in Section VII (Databases, Data Sources, Logs, and Structured Data) below.

C.   This ESI Order may be modified for good cause by a Stipulated Order of all Parties or by the Court. The Parties reserve their rights to seek reasonable modifications of these procedures as appropriate.

D.   Where disputes arise concerning the scope or nature of a production or any provision in this ESI Order, the Parties must meet and confer consistent with Local Rule 7.1(a)-(b) (Civil Motion Practice) in the District of Minnesota.

## II.   DEFINED TERMS

For purposes of this ESI Order, the Definitions below must apply.

A.   The "Action" means the case captioned *United States, et al. v. Agri Stats, Inc.*, Case No. 0:23-CV-03009-JRT-JFD (D. Minn.).

B.   "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a), including but not limited to emails, calendar items, instant messages, text messages, chat messages, and other ESI.

C.   "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI, hard copy discovery, and tangible things.

D.   "Format" means the internal structure of a file, which defines the way it is stored and used.

E.    "Native File(s)" or "Native Format(s)" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application

(including, for example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.msg, *.pst, and *.pdf files).

F.      "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

G.      "Receiving Party" means a Party to whom documents are produced.

H.      "Bates Number" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of:

1.      An alphanumeric portion identifying the Producing party and/or other characteristics of the production; and

2.      A numeric portion incremented according to a scheme defined at the Producing Party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier must be no more than 16 characters in length.

I.      "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

J.      "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format ("TIFF") image is an example of a Static Image.

K.      "Load/Utilization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Utilization File also contains data relevant to the individual Documents, including extracted and user-created Metadata, coded-data, as well as OCR or Extracted Text.

L.      "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

M.      "Extracted Text" means the text extracted from a Native File and includes all header, footer, document body information, and tracked changes content (comments, markup, etc.).

## III.    PRESERVATION

A.      **Materials To Be Preserved.** Each Party will continue its retention practices with regard to all Documents and ESI and will take reasonable and proportionate steps to preserve relevant and discoverable ESI in compliance with duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Upon mutual agreement of the Parties, a Party will modify its retention

practices to ensure the preservation of potentially responsive Documents and ESI. The Parties agree to preserve ESI in such a way that it can be produced in a reasonably usable form in accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(ii).

**B.      No Preclusion.** Nothing in this ESI Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that any categories of Documents or ESI are not reasonably accessible.

**C.      Preservation Does Not Affect Discoverability or Claims of Privilege.** By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## IV.      COLLECTION AND REVIEW

**A.      Meet and Confer.** The Parties agree that in responding to any Fed. R. Civ. P. 34 request, they will meet and confer about methods to collect, review, and identify ESI in order to categorize ESI subject to production in discovery and exclude ESI not subject to discovery, including the use of technology-assisted review or a similar tool (collectively "TAR"), search terms, or other search and review methods.

**B.      Production of All Documents Captured.** Nothing in this Order may be construed or interpreted as requiring the production of all Documents captured by any search term or TAR if any such Documents are in good faith and reasonably deemed not responsive to the Requesting Party's request or are otherwise privileged. Nothing in this Order allows a Producing Party to knowingly withhold any otherwise responsive and non-privileged Document because the Document was not captured by any search term or TAR methodology used by the Producing Party.

**C.**    **Identification Process.** Each Party will use its best efforts to filter out all non-responsive common system files, executable files, program files, application executable files, and any other non-user created data that exist in the National Software Reference Library ("NSRL") hash set list produced by the National Institute of Standards and Technology ("NIST"). The above-described filtering is commonly referred to as "deNISTing." All available metadata from files withheld from delivery due to deNISTing process must be made available upon request. If a Producing Party proposes filters other than those found in the NIST hash set list to collect for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the Producing Party must advise the Requesting Party and the Requesting and Producing Parties must meet and confer regarding such additional proposed filters.

**D.**    **De-Duplication.** Each Party is required to produce only a single copy of a responsive document. A Producing Party must de-duplicate across custodians and at the family-level only (i.e., if there are identical child documents that have different parents, they are not duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone document). A Party may de-duplicate responsive ESI based on Source Hash, MD5 hash values, or other industry standard method. For emails with families, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through hash values is not possible, the Parties must meet and confer to discuss any other proposed method of de-duplication. A Producing Party must make reasonable effort to identify all agreed upon custodians who were in possession of any de-duplicated Documents through an

appropriate load file field such as All Custodians, as well as the File Paths where each Custodian stored the de-duplicated Document. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field. In the event of rolling productions of Documents or ESI, the Producing Party will, as needed, supplement the load files with updated All Custodian information and updated File Path information, as well as BCC information to the extent such metadata exists.

      **E.**    **Email Threading.** The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. The Parties reserve the right to request the production of any email excluded  pursuant to this provision. Production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No Document may be withheld from production solely on the basis that it is included in a produced more-inclusive email.

## V.    PRODUCTION OF ESI

      The Parties must produce all Documents and ESI in the following format:

      **A.**    **Covered ESI.** Covered ESI and paper Documents that are produced as

scanned images should be produced in Standard Group IV - single page TIFF images at a minimum of 300 DPI, 1 bit, with the exception of certain documents identified in paragraph V.B, below, which are to be produced in native format. If after reviewing any black and white document, a Receiving Party believes that color is critical to a document, the Parties must engage in discussion regarding production of the specified documents in color, which production will not be unreasonably withheld. Hidden content (comments, draft markup, etc.) must be made visible prior to image conversion. The Parties must provide image load files in Concordance (*.OPT) format to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata (including the fields described in Exhibit A) should be provided in a Concordance *.DAT format, or other standard, compatible file format and extension as the Receiving Party specifies. For Documents from which text cannot be extracted, such as non-native or non-searchable native files, the text will be generated using OCR and provided as multi-page text (*.txt) files or other standard, compatible file format as specified by the Receiving Party.

B.    **Native Format.** Parties must produce in native format spreadsheets (e.g., Excel, Google Sheets, OpenOffice, etc.), presentations (e.g., PowerPoint, Google Slides, Keynote, etc.), files that cannot be converted to TIFF (such as audio and video files), and other agreed-upon ESI. Native files should contain the Bates number in the file title. In addition, native files should be accompanied by a TIFF placeholder that contains the beginning Bates number, any confidentiality designation, and text indicating "FILE PRODUCED NATIVELY" displayed on the page. Wherever feasible, the Producing Party

must include accompanying metadata in the load file. Documents with privileged information will not be produced in native format, unless the Party is able to redact privileged information in native format. Additionally, if after reviewing production of ESI in a non-native format, a Receiving Party believes that it is necessary to review a certain document or documents in native format, the Parties must engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

**C.     Parent-Child Relationships**.  Parent-child relationships (the association between an attachment and its parent Document) must be preserved in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

**D.     Metadata Fields.**  All required metadata fields are identified in the attached Exhibit A.

**E.     Document Unitization.**  If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments must be maintained as it existed in the original when creating the image file. For documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) must be maintained through the scanning or conversion process.

**F.     Redacted Documents.**  Documents that contain redactions will be produced

in single-page TIFF format with corresponding OCR text and a Concordance-delimited DAT file containing the metadata fields outlined in Exhibit A to the extent that such metadata fields are not part of the redaction, with the exception that if a Party utilizes technology that permits the redaction of files that are not typically produced in image format (such as spreadsheets), those files may be produced in native format with redactions. Documents that are produced with redactions will be noted as "Redacted" in the DAT file. Documents with any metadata field redacted will be produced with a Redaction Status "Metadata Redacted" indicating the metadata for that document has been redacted in the DAT file.

      **G.    Production Media.** A Producing Party must produce responsive documents in an encrypted electronic form via Secure File Transfer or on a DVD, USB thumb drive, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (Production Media). The following information must be provided on the physical Production Media: (1) a reference to this case number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media must also be contained on the Production Media, where practicable, and must also be provided in an accompanying letter.

      **H.    Embedded Objects.** To the extent search terms or TAR are used to identify potentially responsive documents, such methods must include an evaluation of non-image files embedded within documents, such as spreadsheets within a PowerPoint. Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds should not be extracted as separate documents, and to the extent such objects

are extracted in a Parties' already collected material the parties agree those objects may be culled from the document review set. To the extent possible, Producing Parties will subject large, embedded images that contain text to OCR before executing TAR or using search terms.   To the extent that embedded images present recognition problems during processing, the Parties will meet and confer to discuss any proportional and appropriate countervailing measures.

      **I.**    **Compressed Files.** Container file types (*e.g.*, *.CAB, *.GZ, *.TAR, *.Z, *.ZIP) must be decompressed in a manner that ensures any and all nested containers are also decompressed into the lowest uncompressed element, resulting in individual files. The container file(s) itself must not be produced. All necessary passwords that are reasonably known to the Parties must be provided or encryptions removed.

      **J.**    **Text/SMS Messages and Chat Messages.** To the extent reasonably practicable, responsive text and chat messages (including messages from SMS, iMessage, Teams, Slack, Apple Messages, and other short messaging platforms) must be unitized on the conversation/channel level into 24-hour calendar-day chunks, with each chunk including all messages in that conversation or channel on a given calendar day. Each 24-hour chunk must be reviewed and produced as a single record, with redactions for privilege as provided in paragraph V.F above. The records must be produced with the metadata specified in the "IM/Text/Chat" column in Exhibit A, including TXT-THREAD-GROUP (the DOCID of the first 24-hour chunk in a given conversation/channel) and TXT-PARTICIPANTS (a list of participant names). The producing party will make reasonable efforts to assign names to participants who are identified only by phone number or

11

username.

## VI.    LINKED FILES AND COLLABORATIVE WORK ENVIRONMENTS

For documents responsive to properly propounded requests issued pursuant to Fed. R. Civ. P. 34 or 45, the Producing Party must conduct an automated search across all emails to be produced, where the Producing Party has access to a collection tool capable of performing such an automated search, to identify any emails that contain links to another document (or "Linked File") elsewhere in the same "ecosystem" (such as Outlook emails that link to OneDrive files within the same M365 collaborative work environment, or Gmail emails that link to files within Google Drive), and must conduct a reasonable search for the document(s) corresponding with each identified link. This section does not require any Producing Party to collect Linked Files that fall outside of the collaborative work environment used by their collection tool. For example, a Party that collects data using Microsoft Purview or Google Vault is not required to retrieve documents linked in Dropbox. However, a Receiving Party may also make proportionate requests that the Producing Party conduct a reasonable search for relevant documents identified via hyperlinks. For each link identified by the Receiving Party, the Producing Party must conduct a reasonable search for the document(s) corresponding with the link. The Producing Party must process and produce documents corresponding with the links with reasonably available metadata, including Linked Attachment ID/Linked Parent ID fields populated with the corresponding Bates number. Alternatively, for a Document where an email has a hyperlink to another document, the Producing Party may produce the email with the hyperlinked Document as an attachment. The provisions of this Section VI apply

12

to any type of Document (including emails, presentations, spreadsheets, and other types of documents).

## VII.   DATABASES, DATA SOURCES, LOGS, AND STRUCTURED DATA

The Parties must meet and confer regarding the production format and scope of data contained in databases, data sources, and logs to ensure that any information produced is submitted electronically in a reasonably useable compilation consistent with how the data is ordinarily maintained and that its production does not impose an undue burden on the Producing Party. To avoid doubt, information will be considered reasonably usable when produced in CSV format or other commonly used electronic formats, including other character-delimited text format, Microsoft Excel format, or Microsoft Access format, as long as that format maintains all data from the original database, including metadata such as table constraints and primary and foreign key designations. To the extent a Party is constrained from producing responsive ESI because software necessary to view the ESI is hardware-dependent, the Parties must meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting Party to view or access the ESI.

## VIII.  PAPER DOCUMENTS

A Producing Party must scan and OCR paper Documents. The following information must be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) DOCID (b) ENDDOC, (c) CUSTODIAN, (d) EPROPERTIES, (e) BEGDOC, (f) BEGATTACH, (g) ENDATTACH, and (f) TEXTLINK. Paper documents should be logically unitized for production to the

extent reasonably practicable as outlined in paragraph V.E. Where a Document or a Document group—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the spine or label must be scanned and produced as the first page of the Document or grouping to the extent reasonably practicable.

## IX.    WRITTEN DISCOVERY ON NON-PARTIES

The Parties will in good faith cooperate with each other with regard to any discovery to non-parties in an effort to minimize the burden on non-parties.  Every subpoena to a non-party must include a cover letter requesting that (a) the non-party Bates-stamp each document with a production number and any applicable confidentiality designation prior to producing it; and (b) the non-party provide to the other Parties copies of all productions at the same time as they are produced to the requesting Party.  Upon receipt of written responses and objections to a subpoena, the requesting Party must provide a copy to the Parties within two business days of such receipt.  Upon receipt of a production in response to a Subpoena, the requesting Party must provide notice to the other Parties within two business days of such receipt. If the non-party failed to provide copies of the production to the other Parties, the requesting Party must provide such copies to the other Parties.  In addition, if a non-Party produces documents or electronically stored information that are not Bates-stamped, the Party receiving those materials must request that the non-party Bates-stamp all documents or electronically stored information and produce such Bates-stamped copies to all Parties simultaneously.  Each Party must provide the other Parties with (i) a copy of any written communication (including email) with any non-party concerning the timing of the non-party's response to any subpoena, including any

14

extensions or postponements, within five business days of the communication; and (ii) a written record of any withdrawal of any requests contained in the subpoena, within five business days of the modification.


IT IS SO ORDERED.


Dated: July 18, 2024                           *s/ John F. Docherty*
                                               JOHN F. DOCHERTY
                                               United States Magistrate Judge

**EXHIBIT A: METADATA FIELDS FOR EDISCOVERY**

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/Chat |
|---|---|---|---|---|---|---|---|
| DOCID | The unique sequential document control number of the first page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ENDDOC | The unique sequential control number of the last page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| COMPANIES | Globally populated field containing the name of producing party (not the law firm or vendor name). Not pulled from metadata. | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| CUSTODIAN | Name of the individual, or group/department for shared resources, from whose files the document originated. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ALLCUSTODIANS | All custodians who were in possession of a deduplicated document, including the person or group identified in the CUSTODIAN field. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| MEDIAID | The unique identifier applied to each physical piece of media delivered (e.g., ABC001). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| VOLUMENAME | Unique production volume identifier applied (e.g., ABC001-001). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| BEGATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the document control number of the parent document. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |

**EXHIBIT A: METADATA FIELDS FOR EDISCOVERY**

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/Chat |
|---|---|---|---|---|---|---|---|
| ENDATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the ENDDOC of the last child record in the family group. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| EPROPERTIES | Indicates record type, privilege, translation, and other notations. Include all that apply, only the applicable record type or notation category names should be entered: Record Type: Edoc, Edoc Attachment, Email, Email Attachment, Hard Copy, Calendar, Text Message, Text Attachment, IM, Chat, Chat Attachment, Audio, Video, Voicemail Other Notations: Placeholder, Translation, Translated Privilege Notations: Redacted, Privileged, Family Member of Priv Doc | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| TIMEZONE | The time zone in which the custodian is normally located. | Note Text | | ✓ | ✓ | ✓ | ✓ |
| FOLDERLABEL | Full folder path of email within a mail store when collected, including file name; or full folder path of instant message or text message when collected including file name; or Hard Copy folder/bindertitle/label. Prepend with Custodian Name (sample: Smith, James-Inbox\Active). | Multi-Entry | ✓ | ✓ | | ✓ | ✓ |
| FROM | Sender of the Email, Instant Message, Text Message, Chat, or Calendar item. | Note Text | | ✓ | | ✓ | ✓ |

## EXHIBIT A: METADATA FIELDS FOR EDISCOVERY

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/Chat |
|---|---|---|---|---|---|---|---|
| TO | Primary recipients of the Email, Instant Message, Text Message, Chat, or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| CC | Copyees of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| BCC | Blind Copyees of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| SUBJECT | Subject line of the Email, Instant Message, Text Message, Chat, calendar item, or Notes item. | Note Text | | ✓ | | ✓ | ✓ |
| DATEHC | Date of hard copy documents, if coded. Format: MM/DD/YYYY. Leave time segment blank. | Date | ✓ | | | | |
| DATESENT | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was sent. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | ✓ | | ✓ | ✓ |
| DATERECEIVED | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was received. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | ✓ | | ✓ | ✓ |
| HEADER | The internet header information from each Email. | Note Text | | ✓ | | ✓ | |

**EXHIBIT A: METADATA FIELDS FOR EDISCOVERY**

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/Chat |
|---|---|---|---|---|---|---|---|
| INTERNETMSGID | Internet message ID assigned by the outgoing mail server which typically includes messageid and a domain name. Example: 0E6648D558F338179524D555@m1p.innovy.net | Note Text | | ✓ | | ✓ | |
| MESSAGEID | Unique identifier of email messages in mail stores. EntryID for Microsoft Outlook, the UniqueID (UNID) for Lotus Notes, or equivalent value for other proprietary mail store formats. | Note Text | | ✓ | | ✓ | |
| INREPLYTOID | Internet message ID of the Email being replied to. | Note Text | | ✓ | | ✓ | |
| CONVERSATIONINDEX | Conversation index value for Microsoft Exchange emails. | Note Text | | ✓ | | ✓ | |
| IMPORTANCE | Indicates priority level set for message. | Note Text | | ✓ | | ✓ | ✓ |
| DELIVERYRECEIPT | Delivery receipt request notification for Email messages. | Note Text | | ✓ | | ✓ | |
| READRECEIPT | Read Receipt request notification for Email messages. | Note Text | | ✓ | | ✓ | |
| SENSITIVITY | Sensitivity field from Email messages or calendar items. | Note Text | | ✓ | | ✓ | |
| REVISION | Revision number extracted from metadata of native file. | Note Text | | | ✓ | | |
| DATECREATED | Date and time the electronic file was created. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | | ✓ | | ✓ |
| DATESAVED | Date and time the electronic file was last modified. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | ✓ | | ✓ |

**EXHIBIT A: METADATA FIELDS FOR EDISCOVERY**

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/ Chat |
|---|---|---|---|---|---|---|---|
| EORGANIZATION | "Company" field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |
| EAUTHOR | Author field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |
| LASTAUTHOR | Last Saved By field value pulled from metadata of a native file. | Note Text | | | ✓ | | |
| ESUBJECT | Title or Subject field value pulled from metadata from electronic file. | Note Text | | | ✓ | | |
| FILENAME | Original file name of the native file, including file extension. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| APPLICATION | Application used to create or transmit the original native files, document, message, appointment (e.g., WhatsApp, Excel, Slack, Outlook, Snapchat, Word, Twitter, Gmail, Tango). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| FILEEXTENSION | File extension of original native file; e.g. XLSX, PDF, DOCX | Max 5 char. | | ✓ | ✓ | ✓ | |
| FILEPATH | Full qualified original path to the native when collected, including original file name. Prepend with recognizable Custodian Name; e.g. Smith, James- C\My Documents\Sales Info\ACME\2017- Monthly-Sales.xlsx | Multi-Entry | | ✓ | ✓ | ✓ | |
| DOCLINK | File path location to the current native file location on the delivery medium. | Note Text | | | ✓ | | |

**EXHIBIT A: METADATA FIELDS FOR EDISCOVERY**

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/Chat |
|---|---|---|---|---|---|---|---|
| DATESTART | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| DATEEND | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| ACCOUNT | Unique account ID | Note Text | | | | | ✓ |
| DURATION | The elapsed time of the audio, video, voice message. Format HH:MM:SS | Note Text | | | ✓ | | |
| DIRECTION | Identifies direction of communication or other routing information; Outgoing, Incoming. | Note Text | | | | | ✓ |
| TXT-CHATROOMNAME | Name of chat room used in the communications. | Note Text | | | | | ✓ |
| TXT-PARTICIPANTS | List of participant names and/or telephone numbers. | Note Text | | | | | ✓ |
| TXT-BODY | Body of text messages, instant messages, notes, or chats. Do not populate for emails or calendar items. | Note Text | | | | | ✓ |
| TXT-STATUS | Indicates whether text was Sent or Read on the device. | Note Text | | | | | ✓ |
| TXT- THREAD-GROUP | Populate with the DOCID of the first text in a conversation or chat. | Note Text | | | | | ✓ |

6

## EXHIBIT A: METADATA FIELDS FOR EDISCOVERY

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/Chat |
|---|---|---|---|---|---|---|---|
| HASHMD5 | Document MD5 hash value (used for deduplication or other processing). | Note Text | | ✓ | ✓ | ✓ | ✓ |
| HASHSHA | Document SHA hash value (used for deduplication or other processing). | Note Text | | ✓ | ✓ | ✓ | ✓ |
| SPECNO | Subpoena/request paragraph number to which the document is responsive. | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| SEARCHVALUES | Specific search terms used to identify the record as responsive (if used). | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| LINKATTACHID | Populated with the document control numbers of relevant documents corresponding with the links in the present document | | | ✓ | ✓ | ✓ | ✓ |
| LINKPARENTID | | | | ✓ | ✓ | ✓ | ✓ |