## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    *Plaintiff*,<br><br>     v.<br><br>AGRI STATS, INC.,<br><br>                    *Defendant*. | Case No.: 0:23-cv-03009-JRT-JFD |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## DEFENDANT AGRI STATS, INC.'S MOTION TO RECUSE

# <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT.................................................................................................... 1

    I.      RECUSAL IS REQUIRED UNDER 28 U.S.C. § 455(A)............................ 1

    II.     PLAINTIFFS' COUNTERARGUMENTS ARE A MAKEWEIGHT ........ 8

    III.    AGRI STATS MOTION IS TIMELY ........................................................ 11

    IV.    RECUSAL IS REQUIRED UNDER THE FIFTH AMENDMENT
             DUE PROCESS CLAUSE ........................................................................ 15

CONCLUSION ............................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barksdale v. Emerick*,
  853 F.2d 1359 (6th Cir. 1988) ....................................................................... 14

*In re Beef Antitrust Litigation*,
  22-md-3031 (D. Minn.) .......................................................................... 3, 12

*In re Broiler Chicken Antitrust Litigation*,
  18-cv-1776 (D. Minn.) ............................................................................ 3, 4

*Cain v. White*,
  937 F.3d 446 (5th Cir. 2019) ......................................................................... 16

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
  38 F.4th 1025 (Fed. Cir. 2022) ...................................................................... 10

*Doe v. Cabrera*,
  134 F. Supp. 439 (D.D.C. 2015) .................................................................... 1, 9

*Fletcher v. Conoco Pipe Line Co.*,
  323 F.3d 661 (8th Cir. 2003) ..................................................................... 13, 14

*Hall v. Small Bus. Admin.*,
  695 F.2d 175 (5th Cir. 1983) ....................................................................... 1, 9

*Hamid v. Price Waterhouse*,
  51 F.3d 1411 (9th Cir. 1995) ........................................................................... 2

*Hunt v. Am. Bank & Tr. Co. of Baton Rouge*,
  783 F.2d 1011 (11th Cir. 1986) ....................................................................... 2

*Jackson v. Cool*,
  111 F.4th 689 (6th Cir. 2024) ........................................................................ 15

*In re Kan. Pub. Emps. Ret. Sys.*,
  85 F.3d 1353 (8th Cir. 1996) ......................................................................... 13

*In re Kensington Int'l Ltd.*,
  368 F.3d 289 (3d Cir. 2004) ...................................................................... 1, 14

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) ................................................................................ 2, 14

*Matter of Mason*,
    916 F.2d 384 (7th Cir. 1990) ........................................................................ 7

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*,
    601 F. Supp. 2d 1120 (D. Minn. 2009) ..................................................... 9, 15

*In re Nat'l Union Fire Ins. Co. of Pittsburgh*,
    839 F.2d 1226 (7th Cir. 1988) .................................................................... 10

*O'Bannon v. Union Pac. R.R. Co.*,
    169 F.3d 1088 (8th Cir. 1999) ...................................................................... 9

*Parker v. Connors Steel Co.*,
    855 F.2d 1510 (11th Cir. 1988) .................................................................... 2

*In re Pork Antitrust Litig.*,
    665 F. Supp. 3d 967 (D. Minn. 2023) ........................................................... 9

*In re Pork Antitrust Litig.*,
    No. CV 18-1776, 2025 WL 1224694 (D. Minn. Apr. 28, 2025) ............................ 6, 11

*In re Pork Antitrust Litigation*,
    18-cv-1776 (D. Minn.) .................................................................... *passim*

*In re RFC & Rescap Liquidating Tr. Litig.*,
    No. CV 13-3451, 2016 WL 7177706 (D. Minn. Dec. 8, 2016).................................. 10

*Rivera v. Superintendent Houtzdale SCI*,
    738 F. App'x 59 (3d Cir. 2018) ................................................................... 16

*Sentis Grp., Inc. v. Shell Oil Co.*,
    559 F.3d 888 (8th Cir. 2009) ...................................................................... 14

*Trammel v. Simmons First Bank of Searcy*,
    345 F.3d 611 (8th Cir. 2003) .................................................................... 4, 8

*In re Turkey Antitrust Litigation*,
    19-cv-8318 (N.D. Ill.) ............................................................................ 3, 4

*Rabushka ex. rel. U.S. v. Crane Co.*,
    122 F.3d 559 (8th Cir. 1997) ...................................................................... 14

*United States v. Agri Stats, Inc.*,
    No. CV 23-3009, 2024 WL 2728450 (D. Minn. May 28, 2024) .................................. 4

*United States v. Martinez*,
    446 F.3d 878 (8th Cir. 2006) ........................................................................... 8

*United States v. Pfizer Inc.*,
    560 F.2d 319 (8th Cir. 1977) ......................................................................... 16

*United States v. Robinson*,
    809 F.3d 991 (8th Cir. 2016) ........................................................................... 8

*United States v. Ruff*,
    472 F.3d 1044 (8th Cir. 2007) ..................................................................... 2, 8

**Statutes**

28 U.S.C. § 455(a) .............................................................................. 1, 2, 7, 15

28 U.S.C. § 455(e) .................................................................................. 13, 14

Plaintiffs' only real argument against recusal is that a glaring conflict of interest in the Court's ████████████████████████████████ in *In re Pork Antitrust Litigation*, 18-cv-1776 (D. Minn.) ("*Pork*") cannot be imputed to this case, even though Plaintiffs concede that this case raises the "exact same" ████████████████████ ████ as *Pork*. ECF No. 363, Plaintiffs' Mem. in Opp. to Mot. to Recuse at 10 ("Opp."). Any reasonable observer would question the impartiality of the Court given its shocking reliance ████████████████████████████████████ in resolving those "***exact same***" overlapping issues. *Id*. After years of litigating both cases, which has caused tremendous harm to Agri Stats, Inc.'s ("Agri Stats") business and reputation, Agri Stats is entitled to its fair day in court, free from the prejudice that ████ ████████████████████ advised the Court on case-dispositive issues behind closed doors. The Court should recuse itself from further consideration of this case.

## ARGUMENT

## I.   RECUSAL IS REQUIRED UNDER 28 U.S.C. § 455(A).

Plaintiffs' Opposition does not seriously dispute whether there is an appearance of impropriety in *Pork*, or that any such conflict should be imputed to the Court. Nor could it because "any bias of a law clerk is imputed to the Court" where, as here, "the clerk substantively participates in a case where that bias can potentially manifest itself." *Doe v. Cabrera*, 134 F. Supp. 439, 449 (D.D.C. 2015).[1] Instead, Plaintiffs argue that the Court

---

[1]   *See also In re Kensington Int'l Ltd.*, 368 F.3d 289 (3d Cir. 2004) (holding that a judge's advisors providing substantive support in a matter can "taint" the judge with their conflicts of interest); *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983) ("Law clerks are not merely the judge's errand runners. They are sounding boards for tentative

should deny Agri Stats' Motion in this case because the law clerk never worked on it. Opp. at 3. Plaintiffs cite no authority for this bright-line rule because there is none. Instead, recusal is required under Section 455(a) when a court's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Supreme Court explained that "[t]he very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). Agri Stats agrees that the relevant inquiry is whether the Court's "impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *United States v. Ruff*, 472 F.3d 1044, 1046 (8th Cir. 2007) (citations omitted). But no "average person on the street" would acquiesce to a

███████████████████████████████████████████████

---

opinions and legal researchers who seek the authorities that affect decision. Clerks are privy to the judge's thoughts in a way that neither parties to the law suit nor his most intimate family members may be."); *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988) (finding that a law clerk's work on summary judgment in a case where one of the parties was represented by a firm where his father was a named partner raised the appearance of impropriety); *Hamid v. Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995) ("Even if the judge has no reason to recuse herself based upon her own circumstances, a law clerk's relationships might cause the impartiality of decisions from that judge's chambers in which the clerk participates reasonably to be questioned."); *cf. Hunt v. Am. Bank & Tr. Co. of Baton Rouge*, 783 F.2d 1011, 1016 (11th Cir. 1986) ("We do not believe that a law clerk's acceptance of future employment with a law firm would cause a reasonable person to doubt the judge's impartiality *so long as the clerk refrains from participating from the cases involving the firm in question*.") (emphasis added).

2

███████████████████████████████████████████████ Yet here the Court

sanctioned exactly that, requiring recusal.

As a threshold matter, there is no dispute regarding the essential facts of the two law

clerks' involvement in the Agri Stats-related matters:

- A clerk actively worked on this case for the Plaintiff State of Minnesota, while Minnesota had access to the complete discovery record from *Pork*;

- The same clerk worked on *In re Broiler Chicken Antitrust Litigation*, 18-cv-1776 (D. Minn.) ("*Broilers*") and *In re Turkey Antitrust Litigation*, 19-cv-8318 (N.D. Ill.) ("*Turkey*") against Agri Stats while a summer associate at Lockridge Grindal Nauen PLLP, counsel for plaintiffs;

- The Court apparently █████████████████████████ ████████████████████████████████;

- The clerk ████████████████████████████████ █████████ which were critical to the Court's summary judgment ruling;

- The clerk publicly ████████████████ posts by Plaintiffs against Agri Stats on social media, including within days ████████████████;

- The clerk has a pending job offer from Robins Kaplan, lead counsel in the *In re Beef Antitrust Litigation*, 22-md-3031 (D. Minn.) ("*Beef*") which initially named Agri Stats as a defendant;

- The Court has ████████████████████████████████ ████████████████; and

3

- A different law clerk, who was working on summary judgment for *Pork*, ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████.

The impropriety of the law clerks' work on the *Pork* case is addressed in Defendants' separate motion filed in that case. Here, Plaintiffs only argue that recusal is not required because it would be "highly attenuated and speculative" to link the issues at play in *Pork* and this case. Opp. at 4-5. Plaintiffs' argument defies credulity.

*First*, Plaintiffs (and the Court) previously argued the *opposite* when it served their interests. Plaintiffs insisted from day one that this case is so related to *Pork* that it should not be transferred to the Northern District of Illinois, despite that court's more extensive experience with the claims at issue. *See* ECF No. 2 (Notice of Related Case identifying *Pork*); ECF No. 15 (reassigning this case to this Court due to its relation to *Pork*). Plaintiffs argued, for example, that "Plaintiffs' case is related to the *Pork* litigation . . . which features similar underlying facts and many of the same parties." ECF No. 66 at 6. And, relying upon those arguments, the Court denied transfer finding that "*Pork*, *Broilers*, *Turkey*, and this action all allege that Agri Stats participated in a price-fixing conspiracy and anticompetitive information exchange, such that there is overlap between all four actions." *United States v. Agri Stats, Inc.*, No. CV 23-3009, 2024 WL 2728450, at *4 (D. Minn. May 28, 2024); ECF No. 118 at 11-12. The Court said that "[t]he fact that the plaintiffs in Pork seek damages for alleged past conduct, whereas here Plaintiffs seek an injunction against Agri Stats' pork, turkey, and broiler chicken reports, is of little matter, because both cases

4

allege a price-fixing conspiracy and anticompetitive information exchange against Agri Stats." *Id.*

*Second*, at a minimum, ██████████████████████████████████ in the *Pork* case regarding issues that overlap with this case. *See Pork*, ECF 2938 at 2. Plaintiffs argue that those ████████████████████████████████████ ████████████████████████ Opp. at 2. But they do not even try to dispute that plaintiffs' expert analysis in *Pork* is substantially the same as the analysis of Plaintiffs' expert, Dr. Rysman, in this case. *See* ECF No 340-1, Ex. 1 (Nguyen Decl.). Professor Rysman, employs the same regression models comparing the same pork invoice price data before and after the alleged anticompetitive conduct, with similar variables to control for costs, demand, and other economic conditions. *Id.* ¶ 6. Professor Rysman's analysis also suffers from the same flaws (and others), including omitting important control variables. *Id.* ¶ 7. The Court rejected these flaws in *Pork*, ████████████████████████████ ████████. Now, Plaintiffs are already arguing that the Court should reject Agri Stats' arguments regarding the flaws in Professor Rysman's analysis because the Court already rejected those arguments in *Pork*. Opp. at 10 (arguing that "the Court addressed and rejected the ***exact same*** criticisms of the same expert's regression in March of 2023 that Agri Stats and its declarant, Dr. Nguyen, make now") (emphasis added). This is no "highly attenuated and speculative" link. As Plaintiffs concede, the Court already has ruled upon some of the "exact same" flaws in the expert analysis in *Pork* and this case, ██████████ ████████████████████████████████████████████████████████.

*Third*, the "taint" does not stop there. The Court's ██████████████████
███████████████████████████████, as they will be to the rulings in this case.
The *Pork* summary judgment decision cited the plaintiffs' experts that Agri Stats' *Daubert*
motion sought to exclude ***174 times***. And the expert opinions were often the ***only*** evidence
supporting the plaintiffs' allegations. The Court denied Agri Stats' summary judgment
motion on the same rule of reason information exchange claim that Plaintiffs bring here,
citing plaintiffs' experts—and even Plaintiff the United States—to support its conclusion
that Agri Stats reports raise a triable issue of harm competition. *In re Pork Antitrust Litig.*,
No. CV 18-1776, 2025 WL 1224694, at *74 (D. Minn. Apr. 28, 2025). Again citing
plaintiffs' experts, the Court latched onto the same exact theory advanced by Plaintiffs and
Professor Rysman here that Agri Stats' publication of average price statistics provided
"focal points" for increased prices. *Id.* at *75.

The full extent of the ██████████████████████████████████
██████████████████████████ remain unknown because of the Court's denial of
Agri Stats' request for a conference. But Agri Stats knows that the conflicted law clerk ███
██████████████████████. And while it is known from the Court's order that ███
████████████████████████████████████████████████████
████████████████████████████████[2] and the Court related

_____

[2] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

to the summary judgment decision, ███████████████████████████████████

██████. Put simply, this Court has predetermined the outcome on numerous case-

dispositive issues in *this* case based upon its rulings in the *Pork* case, ████████████

███████████████████████████████████████████████████. Plaintiffs do

not even attempt to dispute the point—they embrace it, explaining that the Court should

now reject Agri Stats' "exact same" arguments now for the reasons the Court previously

did, all under a cloud of impropriety. Opp. at 10.

     *Fourth*, the fact that the Court resolved these questions ███████████████████

████████ in *Pork* with █████████████████████ raises an even more acute

concern in this case because, unlike *Pork*, this case will proceed to a bench trial—a trial at

which this Court will be called upon to evaluate an identical rule of reason information

exchange claim to the one ruled upon in *Pork* ████████████████████████████

Agri Stats may not have the opportunity to have a jury reconsider the sufficiency of the

overlapping expert analysis that the Court found sufficient on summary judgment in *Pork*

because the Court will be the finder of fact in this "bet the company" case that will

determine the fate of Agri Stats and its 70 employees. Contrary to Plaintiffs' assertions,

this is not some "future" or "hypothetical" conflict, Opp. at 7,—the Court **already has**

**ruled** on these case-dispositive issues that overlap between *Pork* and this case, ████████

---

████████████████████████████████████████████████████████████████*See*

*Matter of Mason*, 916 F.2d 384 (7th Cir. 1990) (noting that "it is essential to hold in mind

that these outside observers [under § 455(a)] are less inclined to credit judges' impartiality

and mental discipline than the judiciary itself will be").

███████████████████████████████████████████████████████████. Recusal is

warranted and necessary to cure this extreme prejudice.

## II.    PLAINTIFFS' COUNTERARGUMENTS ARE A MAKEWEIGHT.

Plaintiffs respond with a bevy of arguments and authority that do nothing to sever

the link between the law clerk's work on *Pork* and this case. *First*, they cite inapposite

cases, Opp. at 4, where the law clerk at issue never had any substantive involvement on the

issues in the case for which the movant sought recusal. *See, e.g.*, *United States v. Martinez*,

446 F.3d 878, 833 (8th Cir. 2006) (Law clerk performed only "ministerial functions …

including filling water jugs for counsel, placing phone calls to interpreters and completing

minute sheets for the proceedings"); *United States v. Robinson*, 809 F.3d 991, 999 (8th Cir.

2016) (Law clerk performed "only administrative functions"); *Ruff*, 472 F.3d at 1045 (Law

clerk was entirely screened from the case); *Trammel v. Simmons First Bank of Searcy*, 345

F.3d 611, 613 (8th Cir. 2003) (same). None compare to the situation here ████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████.

*Second*, Plaintiffs argue "no harm no foul" because the Court ruled on ████████

███████████████████████████████████ before the conflicted law clerk was

involved. Opp. at 4, 10. But the ████████████████████████████████████████

████████████████████████████████████. The merits ████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████. *Compare Pork* ECF No. 2708 *with Pork* ECF

No. 2929. And different 

"). If the Court had done what Plaintiffs suggest—merely "reaching the same conclusions" as its class certification analysis—it would have erred, which would further increase the impropriety here. Plaintiffs' post-hoc efforts to suggest that the Court's ██████ ████████████████████ are legally and factually wrong.

*Third*, Plaintiffs argue (incorrectly) that Agri Stats' cited cases do not support recusal. Opp. at 5-6. Agri Stats cited *Medtronic* and *Doe* not because they are analogous on the facts, but because they establish the relevant legal principles, which appear uncontested by Plaintiffs. *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 601 F. Supp. 2d 1120, 1128 (D. Minn. 2009); *Doe*, 134 F. Supp. 3d at 442. In *Medtronic*, the party was a significant client of the judge's son's firm. In *Doe*, the clerk at issue had no involvement with the substantive issues in the case, but inappropriately texted a friend that she played a role in a favorable decision. But the Court did explain that it would be problematic for a conflicted clerk to have "[s]ubstantive input" such as "conduct[ing] legal research on any of the parties' motions" or "provid[ing] any advice to the Court or [a fellow law clerk] as to the merits of any motion or any other matter concerning this case." 134 F. Supp. 3d at 450. ████████████████████████████. *Accord. O'Bannon v. Union Pac. R.R. Co.*, 169 F.3d 1088, 1092 (8th Cir. 1999) (citing approvingly *Hall*, 695 F.2d 175, as an example for when recusal is required because the law clerk was part of the plaintiff

class, accepted employment with plaintiff law firm, and advised the court regarding the case).

*Fourth*, Plaintiffs argue that recusal would be inefficient and countenance judge-shopping. Opp. at 9. But the "time and cost of litigation thus far" and the potential "delay in obtaining judgment" would "exist in every case where a ground for recusal arises after significant trial proceedings."[3] *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025, 1038 (Fed. Cir. 2022). And, ironically, it was Plaintiffs who made the "tactical" choice to file in this District specifically to judge shop. Opp. 10. Agri Stats' Motion to Transfer sought to address Plaintiffs' judge-shopping efforts and to have this case adjudicated in a district with the most familiarity with the issues, the Northern District of Illinois, thereby ensuring the most efficient resolution of the matter. *See* ECF No. 44 at 10-11. Neither of the cases Plaintiffs cite support the proposition that a vague "judge-shopping" concern can outweigh serious concerns regarding the Court's appearance of impropriety. *See, e.g.*, *In re Nat'l Union Fire Ins. Co. of Pittsburgh*, 839 F.2d 1226, 1229 (7th Cir. 1988) (rejecting recusal where judge's son represented party for less than a month).

*Finally*, Plaintiffs try to impose a litmus test that recusal is only appropriate if *all* of the Court's rulings go against the disadvantaged parties and *all* the disadvantaged parties seek recusal. Nonsense. The fact that (1) a single defendant was granted summary judgment

---

[3]    *In re RFC & Rescap Liquidating Tr. Litig.*, No. CV 13-3451, 2016 WL 7177706, at *8 (D. Minn. Dec. 8, 2016) is inapposite because, there, the court denied a request for "mid-litigation change of counsel" because it would have "once again force[d] a change of judges in part of a much larger set of cases that the Court has consolidated for effective pre-trial management."

in *Pork*, (2) *Pork* plaintiffs' ████████████████████████, and (3) two *Pork*

defendants did not join the motion to recuse in *Pork*, are entirely irrelevant to the Court's

consideration of this motion because none of these facts support the proposition that an

"average person on the street" would not question the judge's impartiality given the actual

facts discussed above. If anything, that Hormel was granted summary judgment increases

the specter of potential bias against Agri Stats because the Court denied summary judgment

because "[t]he primary difference between Hormel and its alleged co-conspirators, in the

Court's view, is the fact that the company was reluctant—and in some ways, refused—to

participate in Agri Stats reports." *Pork*, 2025 WL 1224694, at *49. That Hormel and JBS

made a strategic decision not join the *Pork* defendants motion to recuse says nothing about

whether an "average person on the street" perceive impropriety. Finally, Plaintiffs fail to

explain how the Court's ████████████████████████████████████████

████████████████████████████████████. Recusal is required.

## III.    AGRI STATS MOTION IS TIMELY.

Plaintiffs argue that Agri Stats' Motion is untimely because it came after an adverse

summary judgment decision. But they flatly ignore the relevant history. Agri Stats filed its

Motion about two weeks after it finally received confirmation from the Court that the

conflicted law clerk had worked on the substantive issues that overlap between *Pork* and

this case. Below is the relevant timeline:

- **November 26, 2024**: *Daubert* hearing at which *Pork* defendants first became
  aware of law clerk's relationship with *Pork* plaintiffs' counsel. *Pork* ECF
  No. 2964.

- **December 5, 2024**: *Pork* defendants write to *Pork* plaintiffs, noting they ███████████████████████████████████████████ and asking several questions. *Id.* at Ex. 5. *Pork* plaintiffs respond that the clerk did not work on this case and did not receive a *written* offer from LGNP, but refuse to answer any other questions.

- **December 7, 2024**: *Pork* defendants write to the Court, flagging the potential conflict and noting they ██████████████████████████████████ ████████████ *Id.* at Ex. 6. *The Court did not respond*.

- **December 11, 2024**: *Pork* defendants send an agenda to the Court for the upcoming summary judgment hearing, noting that they will be prepared to discuss the issues raised in the December 7, 2024 letter. *The Court did not respond*.

- **January 6-7, 2025**: *Pork* defendants write to *Pork* plaintiffs again, asking that they answer the remaining questions, and noting they ████████████ *Id.* at Ex. 5. *Pork* plaintiffs respond that they will not provide any more information unless the Court asks them for it.

- **January 16-21, 2025**: ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ .

- **February 13, 2025**: *Pork* defendants file a motion for a sealed hearing, noting they ██████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████ ECF 2902. *The Court did not respond*.

- **March 31, 2025:** The Court issues its summary judgment and *Daubert* decisions in *Pork*.

- **April 15, 2025:** The Court issues an order in *Pork* denying *Pork* defendants' February 13 motion and disclosing for the first time: ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ 

- **April 28, 2025**: *Pork* Defendants file their motion for vacatur and recusal, thirteen days after the April 15, 2025 Order.

12

- **May 2, 2025**: Agri Stats files its Motion for recusal in this case, seventeen days after the April 15, 2025 Order.

Plaintiffs do not dispute these dates or facts. Instead, they argue that Agri Stats' Motion was filed after an adverse summary judgment ruling in *Pork* as "a belated 'tactical move . . . .'" Opp. at 7 (*citing In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1365 (8th Cir. 1996)). But, setting aside the dearth of evidence supporting the assertion, the above timeline shows that this is untrue. Agri Stats did not learn the key facts until April 15—████████████████████████████████████████████████████████████████. Once it learned the facts, Agri Stats filed its Motion in about two weeks. Until that time, Agri Stats did not have a basis for a recusal motion other than its speculation. From the ██████████████████████████████████, until the filing of Agri Stats' Motion in May 2025, Agri Stats diligently attempted to learn critical information about the law clerk's substantive involvement with overlapping issues in *Pork* and this case. The Court did not respond to those requests until after it had ruled on summary judgment. Agri Stats was not the one engaging in "tactical moves."  It would be inappropriate for the Court to deny Agri Stats' motion on timeliness grounds given the Court's delay in providing the information necessary for Agri Stats' motion.

A recusal motion should be brought "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003); *see also* 28 U.S.C. § 455(e) (explaining that recusal cannot be waived unless "it is preceded by a ***full disclosure*** on the record of the basis for disqualification") (emphasis added). Timeliness therefore depends on disclosure,

not suspicion. *See, e.g.*, *Barksdale v. Emerick*, 853 F.2d 1359, 1361-62 (6th Cir. 1988) (motion was timely because the judge did not fully disclose the extent of the potential conflict on the record); *In re Kensington*, 368 F.3d at 313-14 (holding that a recusal motion brought ***one and a half years*** after the moving party raised the potential conflict was timely because the judge "never disclosed" necessary information). The Supreme Court held in *Liljeberg* that judges should "carefully examine possible grounds for disqualification and promptly disclose them when discovered," and explained that under § 455(e), a party cannot be faulted for failing to move for recusal prior to full disclosure of the potential basis for disqualification. 486 U.S. at 868. The recusal motion in *Liljeberg* was filed "10 months" after an unfavorable decision, but was deemed timely because the moving party had not obtained full disclosure about the judge's conflict. *Id.* at 869-70. As *Liljeberg* shows, the operative question is not when an adverse ruling was issued, but when the party had full disclosure of the grounds for recusal. Here, that was April 15, 2025.

Even Plaintiffs' cited cases support Agri Stats' position. For example, in *Fletcher*, the Eighth Circuit held that the recusal motion was neither waived nor untimely because "[n]either [the] Judge['s] alleged social relationship [with a lawyer], nor his alleged client relationship with [their law firm] was disclosed on the record." 323 F.3d at 664. *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888 (8th Cir. 2009) and *Rabushka ex. rel. U.S. v. Crane Co.*, 122 F.3d 559 (8th Cir. 1997) are inapposite because neither case discusses when the moving party learned the basis of their recusal claims, which is the relevant question here. Plaintiffs' reliance on *Tri–State Financial, LLC v. Lovald* also is misplaced given that the court only found the motion to recuse untimely when it was brought ***seven months after the***

*last act alleged as a basis for recusal.* 525 F.3d 649, 653-54 (8th Cir.2008). By contrast, here, Agri Stats filed its Motion just over two weeks after obtaining the information forming the grounds for recusal. Finally, *In re Medtronic* further supports Agri Stats' Motion because Agri Stats clearly exercised "due diligence" in seeking information necessary to evaluate a potential conflict. 601 F. Supp. 2d at 1128. That information, however, was not disclosed to Agri Stats until April 15, 2025. Agri Stats' Motion was timely.

## IV.    RECUSAL IS REQUIRED UNDER THE FIFTH AMENDMENT DUE PROCESS CLAUSE.

Plaintiffs' opposition responds to Agri Stats' Due Process argument in a three-sentence footnote asserting that the "Fifth Amendment's standard for recusal is significantly more burdensome than section 455's." Opp. at 12. Plaintiffs' only support for this assertion is a citation to *Caperton v. A.T. Massey Coal Co.*, which states that "[b]ecause the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution." 556 U.S. 868, 888-90 (2009). But as established in Agri Stats' Motion and above, the facts here not only require recusal under 28 U.S.C. § 455(a), they go far enough to warrant recusal under the Due Process Clause of the Fifth Amendment. The facts create a constitutionally impermissible risk that the judicial process was structurally compromised—even if the Court itself acted without bias. Plaintiffs do not even attempt to distinguish the cases in which courts have ordered recusal in similar situations. *See, e.g.*, *Jackson v. Cool*, 111 F.4th 689, 699 (6th Cir. 2024) (ordering recusal under Fifth Amendment Due Process

Clause when judge allowed biased party to "draft the original sentencing opinion"); *Cain v. White*, 937 F.3d 446, 452 (5th Cir. 2019) (recusal is appropriate when judge's possible "conflict aris[es] from his participation in an earlier proceeding") (citation and quotations omitted); *see also Rivera v. Superintendent Houtzdale SCI*, 738 F. App'x 59, 65 (3d Cir. 2018) (noting the "possibility . . . that an officer of the Court who had a personal interest in the outcome, may have interceded, could require [the judge's] recusal").

Nor do Plaintiffs contend with the fact that these concerns are exacerbated when the court in question will be presiding over a bench trial. *See, e.g.*, *United States v. Pfizer Inc.*, 560 F.2d 319, 322 (8th Cir. 1977) ("But at a bench trial, the trial judge who expresses his views of the merits and damages before completion of the case may well leave an impression of prejudgment and bias. Thus, the question of the propriety of remarks and actions by a judge in a court case is not at all the same as when the judge presides over a jury trial."). The only remedy for a due process violation is automatic recusal and the Fifth Amendment requires such.

<u>**CONCLUSION**</u>

For these reasons, Agri Stats respectfully requests that the Court recuse itself from this matter.

Dated: June 9, 2025                      Respectfully submitted,

                                         */s/ Justin W. Bernick*
                                         Justin W. Bernick (*Pro Hac Vice*)
                                         William L. Monts III (*Pro Hac Vice*)
                                         **HOGAN LOVELLS US LLP**
                                         555 Thirteenth Street, N.W.

Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
justin.bernick@hoganlovells.com
william.monts@hoganlovells.com

*Counsel for Agri Stats, Inc.*