# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA, *et al.*,

               *Plaintiffs*,

      v.

AGRI STATS, INC.,

               *Defendant*.

Case No.: 0:23-cv-03009-JRT-JFD

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT AGRI STATS' MOTION FOR SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

UNDISPUTED FACTS ....................................................................................................... 3

    I.    Agri Stats' Benchmarking Business ............................................................. 3

    II.   The History of Investigations and Litigation ............................................... 6

    III.  Termination of Pork and Turkey Reports ..................................................... 7

    IV.  Plaintiffs' Expert Analyses ........................................................................... 8

LEGAL STANDARD ....................................................................................................... 11

ARGUMENT ..................................................................................................................... 12

    I.    There is No Evidence that the Broiler Chicken Live, Processing,
          Operations Profit, and Bottom Line Report Books Harm
          Competition. ................................................................................................ 16

    II.   There is No Evidence that the Broiler Chicken Sales Report Books
          Harm Competition. ...................................................................................... 20

    III.  There is No Evidence that Agri Stats Can Resume Pork and Turkey
          Reports. ........................................................................................................ 24

    IV.  There is No Evidence of Harm Related to EMI. .......................................... 27

CONCLUSION ................................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Column & Lumber Co. v. United States*,
  257 U.S. 377 (1921) .................................................................................... 14, 15

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) ........................................................................................... 11

*Brazil v. Ark. Dep't of Hum. Servs.*,
  892 F.3d 957 (8th Cir. 2018) ...................................................................... 24, 26

*In re Broiler Chicken Antitrust Litig.*,
  702 F. Supp. 3d 635 (N.D. Ill. 2023) ............................................................... 4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................... 11

*Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980) ...................................................................................... 19, 20

*In re Comp. of Managerial, Pro. & Tech. Emps. Antitrust Litig.*,
  2008 WL 3887619 (D.N.J. Aug. 20, 2008) ...................................................... 13

*Cont'l Cablevision of Ohio, Inc. v. Am. Elec. Power Co.*,
  715 F.2d 1115 (6th Cir. 1983) ..................................................................... 2, 14

*Cooney v. Casady*,
  735 F.3d 514 (7th Cir. 2013) .......................................................................... 11

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ........................................................................................... 24

*Edenfield v. Fane*,
  507 U.S. 761 (1993) ........................................................................................... 20

*ES Dev., Inc. v. RWM Enters., Inc.*,
  939 F.2d 547 (8th Cir. 1991) ........................................................................... 20

*Five Smiths, Inc. v. Nat'l Football League Players Ass'n*,
  788 F. Supp. 1042 (D. Minn. 1992) ........................................................... 12, 14

*Jien v. Perdue Farms, Inc.*,
    2020 WL 5544183 (D. Md. Sept. 16, 2020) ................................................................. 12

*Kronholm v. Fed. Deposit Ins. Corp.*,
    915 F.2d 1171 (8th Cir. 1990) ..................................................................................... 24

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................. 26, 27

*Maple Flooring Mfrs. Ass'n v. United States*,
    268 U.S. 563 (1925) ....................................................................................................... 14

*Ohio v. Am. Express, Co.*,
    585 U.S. 529 (2018) ........................................................................................... 12, 13, 22

*Pavek v. Simon*,
    467 F. Supp. 3d 718 (D. Minn. 2020) ......................................................................... 25

*In re Pork Antitrust Litig.*,
    781 F. Supp. 3d 758 (D. Minn. 2025) ................................................................. *passim*

*Potter v. Norwest Mortg., Inc.*,
    329 F.3d 608 (8th Cir. 2003) ....................................................................................... 24

*Procaps S.A. v. Patheon, Inc.*,
    845 F.3d 1072 (11th Cir. 2016) ................................................................................... 18

*In re Refco Inc. Sec. Litig.*,
    2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ........................................................... 19

*Sawczyn v. BMO Harris Bank Nat'l Ass'n*,
    8 F. Supp. 3d 1108 (D. Minn. 2014) ........................................................................... 27

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) ......................................................................... 13, 14, 15, 24

*Torgerson v. City of Rocheste*r,
    643 F.3d 1031 (8th Cir. 2011) ..................................................................................... 11

*In re Turkey Antitrust Litig.*,
    1:19-cv-8318 (N.D. Ill. Dec. 19, 2019) ("*Turkey*") ................................................. 6, 7

*United States v. Am. Linseed Oil Co.*,
    262 U.S. 371 (1923) ....................................................................................................... 14

*United States v. Container Corp. of Am.*,
393 U.S. 333 (1969) ................................................................ 13, 14

*United States v. U.S. Gypsum Co.*,
438 U.S. 422 (1978) ........................................................................ 13

*United States v. VISA U.S.A., Inc.*,
344 F.3d 229 (2d Cir. 2003) ........................................................... 13

*V S Ltd. Partnership v. Department of Housing & Urban Development*,
235 F.3d 1109 (8th Cir. 2000) ........................................................ 24

*In re Wholesale Grocery Prods. Antitrust Litig.*,
946 F.3d 995 (8th Cir. 2019) ................................................... 22, 23

**Statutes**

Sherman Act ........................................................................... 1, 18, 20

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................ 11

Moore's Fed. Prac. and Proc. 3d (2015) ........................................... 19

# INTRODUCTION[1]

Nine years of litigation related to Agri Stats in multiple jurisdictions has generated a discovery record likely larger than any other in the history of antitrust litigation. The United States scrutinized that record for years, while also investigating Agri Stats on-and-off for over a decade. It ultimately sued, alleging that Agri Stats facilitated an unlawful information exchange among producers of broiler chicken, pork, and turkey in violation of the Sherman Act. Despite the unprecedented discovery record, Plaintiffs have not adduced evidence sufficient to try their claims. Agri Stats is entitled summary judgment.

Plaintiffs seek only injunctive relief. Because Agri Stats ceased publishing pork and turkey reports long ago, only Plaintiffs' claim related to broiler chicken reports conceivably remains a live controversy. Yet even there, the issues are narrow. Agri Stats produces six different "books" of broiler chicken reports, but Plaintiffs' purported evidence of anticompetitive effects in the alleged broiler chicken market concern only the two books of Sales reports. ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

Accordingly, the Court can significantly streamline trial of this action—if one is to be had—by granting Agri Stats summary judgment on the issue of whether the four books of reports *other than* the Sales reports constitute an unlawful information exchange. *See* infra 4, 15–20. There is no evidence they do.

---

[1] Agri Stats maintains that this Court should recuse itself from this case for the reasons outlined in Agri Stats' Memorandum of Law in Support of Its' Motion to Recuse. *See* Dkt. No. 339. Agri Stats objects to this Court's adjudication of this Motion given the pendency of that motion.

Moreover, even as to the broiler chicken Sales reports, Plaintiffs lack the required evidence of market-wide anticompetitive effects. Plaintiffs have *no* analyses showing an actual price effect from Agri Stats broiler chicken reports, in stark contrast to the expert regressions relied upon by this Court in *In re Pork Antitrust Litigation*, 781 F. Supp. 3d 758, 868 (D. Minn. 2025) ("*Pork*"). Instead, the *only* empirical analysis of the broiler chicken reports conducted by Plaintiffs' expert purported to show only that, in the month following publication, the likelihood that certain product prices might increase exceeds the likelihood that they might decrease. Setting aside the flaws in his analysis, even if it were admissible, it says *nothing* about whether overall prices for broiler chicken increased, decreased, or stayed the same as a result of the reports. Plaintiffs' failure to offer evidence of market-wide anticompetitive effects flowing from the broiler chicken Sales reports is fatal to their broiler chicken claim. *See Cont'l Cablevision of Ohio, Inc. v. Am. Elec. Power Co.*, 715 F.2d 1115, 1119 (6th Cir. 1983) (affirming judgment for defendants on information exchange claim because there was no evidence "the exchange of price information" resulted in market-wide anticompetitive harm).

For Plaintiffs' two remaining claims challenging pork and turkey reports, there is nothing to enjoin because Agri Stats has produced no reports for six years. In ruling on Agri Stats' motion to dismiss, this Court expressed skepticism about "what discovery may yield" to support jurisdiction over those claims. Dkt. No. 118 at 18. The record is now complete, and there is no evidence that Agri Stats could restart the pork and turkey reports even if it wanted to. Plaintiffs' pork and turkey claims should be dismissed.

Finally, while Plaintiffs seek an injunction against Agri Stats' Express Markets, Inc. ("EMI") subsidiary, Compl. ¶ 168, there is no evidence that EMI price reports and forecasts—which are available to both buyers and sellers—have anticompetitive effects. ███████████████████████████████████████████████████████ ████████████████████████████████████████ The Court should therefore issue summary judgment for Agri Stats on any claims against EMI as well.

## UNDISPUTED FACTS

### I.    Agri Stats' Benchmarking Business

Agri Stats is a small business headquartered in Fort Wayne, Indiana with about 70 employees. Ex. 2 (*Pork* Snyder Tr.) 41:11–13; Ex. 3 (Scholer Decl.) ¶ 6. Agri Stats does not produce or sell broiler chicken, pork, or turkey products. Ex. 3 (Scholer Decl.) ¶ 7; Ex. 4 (*Broilers* Snyder Tr.) 150:8–20, 157:10–158:11, 319:12–15. Agri Stats produces benchmarking reports to assist protein producers in improving efficiency and reducing costs. Ex. 2 (*Pork* Snyder Tr.) 12:19–22, 13:4–13; "Company History," Agri Stats, https://www.agristats.com/company-history/ (on file with Hogan Lovells).

Agri Stats began offering benchmarking reports for broiler chicken in 1985. Ex. 5 (AGS-0043721694) at AGS-0043721695; Ex. 6 (*Broilers* Donohue Tr.) 264:1. In 2001, Agri Stats began offering benchmarking reports for turkey. Ex. 7 (AGSTAT-T-03949460) at AGSTAT-T-03949462. In 2004, Agri Stats began benchmarking reports related to the farming of live hogs, called the Swine Live Production reports. Ex. 8 (AGS-0043655870); Ex. 2 (*Pork* Snyder Tr.) 49:16–18, 49:20–50:4. In 2006, Agri Stats purchased Agrimetrics,

a company producing benchmarking reports for processing pork products. Ex. 2 (*Pork Snyder Tr.*) 49:16–18, 49:20–50:4; Ex. 9 (AGS-0043707184) at AGRI-00305710.

By 2009, Agri Stats offered a consistent set of benchmarking reports to processors of broiler chicken, pork, and turkey. Ex. 3 (Scholer Decl.) ¶¶ 16–20. Agri Stats provided the following six books containing various benchmarking reports to subscribing customers in the broiler chicken, pork, and/or turkey processing businesses:

- **Live Production Reports** ("Live Reports") include a variety of metrics related to the breeding, rearing, and growing of live animals before they are transferred to processing facilities for slaughter and processing.

- **Processing Reports** include a variety of metrics related to the slaughter and processing of animals into saleable meat products.

- **Express Sales Reports** compare a processor's own aggregate total net price for all products produced at a plant to that of anonymized plants, assuming that those plants produce the same product mix as the recipient's own product mix. The reports therefore tell a recipient nothing regarding the actual prices a competitor charges for a particular product.

- **Customer Sales Reports** compare a processor's own prices for a particular product category compared to nationwide average prices.

- **Operations Profit Reports** contain information regarding processor profit margins and costs through the full production process.

- **Bottom Line Reports** show a company its overall profitability, measuring everything from feed mill operations to final processing costs, against total sales.

Exs. 10–15 ("Sample Set of Broiler Chicken Reports"); Exs. 16–21 ("Sample Set of Pork Reports"); Exs. 22–29 ("Sample Set of Turkey Reports").

As discussed at length in the *In re Broiler Chicken Antitrust Litigation* ("*Broilers*") summary judgment decision, 702 F. Supp. 3d 635, 678 (N.D. Ill. 2023), *none* of these

reports contain information disclosing actual competitor production volumes or prices. *See* Exs. 10–15 (Sample Set of Broiler Chicken Reports); Ex. 3 (Scholer Decl.) ¶¶ 46–48. Instead, they compare a recipient's *efficiency* metrics with those of anonymized competitor plants and a recipient's prices with industry *averages*. Exs. 10–15 (Sample Sets of Broiler Chicken, Pork, and Turkey Reports); *see also Pork*, 781 F. Supp. 3d at 811 ("The Court agrees with Defendants that the evidence does not establish that the sales reports contain individual sales and pricing information broken out by product for competitors.").

Broiler chicken, pork, and turkey reports were substantively identical, with only small differences designed to account for variations in business practices. *Compare* Exs. 10–29 (Sample Sets of Broiler Chicken, Pork, and Turkey Reports). For example, Agri Stats offers a Bottom Line report to broiler chicken, and previously to turkey, subscribers, but not pork subscribers due to the lack of vertical integration in the pork business. Exs. 10, 22 (Broiler Chicken and Turkey Bottom Line Reports); Ex. 30 (AGS-0043766816) (identifying features of the Bottom Line report). Similarly, because pork products are exported more often than broiler chicken and turkey products, Agri Stats developed an Export report available only to pork subscribers. Ex. 17 (Pork Export Report).

Agri Stats also operates a subsidiary, EMI, which publishes price reports and industry forecasts, both of which are available to anyone who wants to purchase them, including both protein buyers and sellers. Ex. 31 (*Broilers* Scholer Tr.) at 58:25–59:2, 147:4–12, 178:15–179:2,183:18–22, 218:17–21, 371:15-22. EMI's forecasts are based on publicly available data. *Id.* at 69:16–70:23; Ex. 32 (*Broilers* Trudell Tr.) at 18:19–20:25,

91:19–93:7. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

## II.    The History of Investigations and Litigation

In 2010, Agri Stats received a Civil Investigative Demand ("CID") from the United States, with which it complied. Ex. 33 (DOJ-AGSTAT-0000000001); Ex. 3 (Scholer Decl.) ¶ 79. After two years of investigation, the United States officially closed the investigation, seeking no changes to Agri Stats' business. Ex. 34 (AGSTAT-00018237).

In 2016, private class action plaintiffs sued broiler chicken producers alleging, in part, that they used Agri Stats to facilitate a supply-reduction conspiracy from 2008 to 2011. *See Broilers* Compl., Dkt. No. 1, 1:16-cv-8637 (N.D. Ill. Sept. 2, 2016). In 2018, those private plaintiffs added Agri Stats as a defendant and brought an information exchange claim identical to what Plaintiffs assert here. *See Broilers* Am. Compl., Dkt. No. 717. That same year, those same lawyers also filed the *Pork* case, alleging the same supply-reduction and information exchange conspiracies. *See Pork* Compl., Dkt. No. 1, 0:18-cv-01776 (D. Minn. June 28, 2018). A year later, in 2019, those same lawyers brought the same claims with respect to turkey. *See* Compl., Dkt. No. 1, *In re Turkey Antitrust Litigation*, 1:19-cv-8318 (N.D. Ill. Dec. 19, 2019) ("*Turkey*").

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

In 2023, the *Broilers* court granted Agri Stats summary judgment. *See Broilers*, 702 F. Supp. 3d at 678–79 (N.D. Ill. 2023). Specifically, the *Broilers* court rejected the same information exchange claim advanced here, concluding that "Agri Stats reports did not reveal competitors' production and pricing data" and "there is scant evidence that the information Agri Stats itself provided to each individual producer was used in a manner that had an anticompetitive effect." *Id.* at 679. Less than three months later, the United States filed this case.

This Court denied Agri Stats' motion for summary judgment in *Pork* on March 31, 2025. *Pork*, 781 F. Supp. 3d at 812 (D. Minn. 2025) ("respectfully disagree[ing]" with *Broilers*). The Court relied upon expert regression analyses to conclude that *Pork* plaintiffs raised a triable issue regarding the effect of Agri Stats' pork reports on pork prices. *Id.* at 871 (citing regression analysis showing that consumers "paid artificially high prices due to the Defendants' challenged conduct, and that those damages are quantifiable").

## III.   Termination of Pork and Turkey Reports

Agri Stats cannot create benchmarking reports without data submitted by subscribers. Ex. 3 (Scholer Decl.) ¶¶ 21–22. ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███   It is undisputed that Agri Stats has not produced the challenged pork and turkey

reports[2] for six years and could not restart either program because it lacks the necessary customers, data, and employees. Ex. 3 (Scholer Decl.) ¶¶ 21–22; Ex. 36 (Scholer Dep.) at 199:24–200:17 (

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████); Ex. 37 (Response to Interrogatory Sixteen) at 11.

## IV.    Plaintiffs' Expert Analyses

Plaintiffs' only meaningful attempt to differentiate their case from the private litigation is the analysis of their expert, Professor Marc Rysman. As discussed in Agri Stats' Motion to Exclude and Strike Expert Testimony, Dkt. No. 371, that analysis suffers from many flaws, ████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

---

[2]    Agri Stats' only remaining domestic pork-related report is its Swine Live Analysis, which Plaintiffs have not challenged in this lawsuit. Dkt. No. 79 n.5.



███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

## LEGAL STANDARD

Courts grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). While a court must give "the nonmoving party[] the benefit of all reasonable inferences that could be drawn," it must ignore "speculation and conjecture." *Cooney v. Casady*, 735 F.3d 514, 518–19 (7th Cir. 2013) (internal quotation marks and citation omitted). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Torgerson v. City of Rocheste*r, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotation omitted). Once the moving party establishes that no genuine dispute of material fact exists, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial,'" *Torgerson*, 643 F.3d at 1042 (citation omitted). Summary judgment may be entered as to "part" of a claim or defense, Fed. R. Civ. P. 56(a) or as to particular issues where, as here, there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a) advisory committee's note to 2010 Amendment (Rule 56 contemplates "disposition of less than the whole action," "mak[ing]

clear" that "summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense.").

## ARGUMENT

The Court cannot enjoin lawful conduct under the antitrust laws. Courts have been clear for a century that the exchange of information is presumptively lawful conduct. *Five Smiths, Inc. v. Nat'l Football League Players Ass'n,* 788 F. Supp. 1042, 1053 (D. Minn. 1992) ("[T]he exchange of price and other market information is generally benign conduct that facilitates efficient economic activity."); *Jien v. Perdue Farms, Inc.*, 2020 WL 5544183, at *9 (D. Md. Sept. 16, 2020) ("[S]haring price information is presumptively lawful."). Plaintiffs' information exchange claims must be analyzed under the rule of reason. *Pork*, 781 F. Supp. 3d at 867 (information exchanges "will be evaluated under the rule of reason"). Thus, to overcome the presumption of legality and proceed to trial, Plaintiffs must present evidence raising a triable issue as to whether the information disclosed in Agri Stats reports "unreasonably restrains trade." *Pork*, 781 F. Supp. 3d at 867.

That rule of reason analysis proceeds in three steps. First, the plaintiff must "prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Ohio v. Am. Express, Co.*, 585 U.S. 529, 541 (2018). Only if the plaintiff meets its initial burden does "the burden shift[] to the defendant to show a procompetitive rationale for the restraint." *Id*. Finally, if the defendant comes forward with evidence to satisfy its burden at step two, "the burden shifts back to the plaintiff to

demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Id.* at 542. Plaintiffs here do not get past step one.[3]

Economic theory and innuendo are not sufficient to overcome the presumption of legality of information exchanges. There must be actual *evidence* of market-wide harm to competition. *Todd v. Exxon Corp.*, 275 F.3d 191, 213-214 (2d Cir. 2001) (Plaintiff must show "an adverse effect on competition market-wide" and "make a substantial presentation of evidence to support her claim that salaries would have been higher without the information exchange."); *see also In re Comp. of Managerial, Pro. & Tech. Emps. Antitrust Litig.*, 2008 WL 3887619, at *10 (D.N.J. Aug. 20, 2008) (granting summary judgment because plaintiffs failed to establish anticompetitive effects on oil industry salaries as required by *Todd*). Even the exchange of price information, for example, may increase competition. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, n. 16 (1978) ("Exchange of price data and other information among competitors does not invariably have anticompetitive effects, indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive."); *United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969) (noting that "[p]rice information exchanged in some markets may have no effect on truly competitive price").

---

[3]    Plaintiffs and their experts fail entirely to address the "procompetitive purposes" of Agri Stats reports recognized by this Court, *Pork*, 781 F. Supp. 3d at 872, and thus their claims also fail at the second step of the rule of reason analysis. *United States v. VISA U.S.A., Inc.*, 344 F.3d 229, 238 (2d Cir. 2003). Nor do Plaintiffs even attempt to identify any "less anticompetitive means" through which any procompetitive benefits could be achieved. As a result, Plaintiffs claim fails all three steps of the analysis. The Court, however, need not move beyond step one to dispose of this motion.

Therefore, while identifying the nature of the information exchanged may be a threshold burden at the pleading stage, it is insufficient alone to carry Plaintiffs' summary judgment burden without evidence that the exchange resulted in a market-wide price increase or output reduction. *See Cont'l Cablevision*, 715 F.2d at 1119 (affirming judgment for defendants on information exchange claim because "the exchange of price information had no anticompetitive effect"); *Five Smiths, Inc.*, 788 F. Supp. at 1054 (dismissing complaint where plaintiffs failed to allege anticompetitive effects flowing from the exchange); *cf. Todd*, 275 F.3d at 213–14 (denying motion to dismiss based, in part, on nature of information exchanged, but noting that plaintiff must ultimately prove price effects to prevail).

A contrary rule would create a presumption of *illegality* for information exchanges, contrary to controlling law. Indeed, Agri Stats is unaware of any information exchange case, including those cited in the *Pork* summary judgment opinion, in which a court permitted a case to proceed past summary judgment without actual evidence of an anticompetitive effect on price. *See, e.g.*, *Container Corp. of Am.*, 393 U.S. at 335–37 (1969) (considering whether "exchange of information concerning specific sales to identified customers" resulted in "the effect of keeping prices within a fairly narrow ambit"); *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 567, 585–86 (1925) (rejecting information exchange claim where there was no evidence that conduct "affected prices adversely to consumers"); *United States v. Am. Linseed Oil Co.*, 262 U.S. 371, 387 (1923) (considering whether "prices of oil became more stable" as a result of exchange of disaggregated and non-anonymized current price and production information); *Am.*

14

*Column & Lumber Co. v. United States*, 257 U.S. 377, 396–98, 408–09 (1921) (considering whether prices "increased to an unprecedented extent" as a result of exchange of competitor production and price information); *Todd*, 275 F.3d at 212, 214 (considering allegations that "defendants exchanged past and current salary information, as well as future salary budget information" that allegedly resulted in "salary levels across the integrated oil and petrochemical industry have been artificially depressed"). Plaintiffs here have not come forward with such evidence of market-wide effects.

*First*, there is no evidence that four of the six Agri Stats broiler chicken books—the Live, Processing, Operations Profit, and Bottom Line report books—harmed competition in any way. Granting Agri Stats summary judgment as to these reports will significantly narrow the issues for trial, in the event that such a trial is necessary.

*Second*, as to the remaining two broiler chicken Sales report books, Plaintiffs have no evidence of market-wide harm to competition, such as the expert regressions in *Pork* which this Court deemed sufficient. Therefore their claim related to broiler chicken reports should be dismissed in its entirety.

*Third*, Plaintiffs' pork and turkey injunction claims should be dismissed because discovery has revealed no evidence that Agri Stats can resume publication of those reports, and therefore there is no case or controversy for the Court to resolve.

*Fourth*, there is no evidence of harm related to EMI, requiring dismissal of Plaintiffs' injunction claims against the entity.

I.      **There is No Evidence that the Broiler Chicken Live, Processing, Operations Profit, and Bottom Line Report Books Harm Competition.**

The Court should grant Agri Stats summary judgment on the issue of whether four of the six broiler chicken report books—Live, Processing, Operations Profit, and Bottom Line—harm competition because Plaintiffs have adduced no evidence that they do so.

Plaintiffs' complaint seeks an injunction prohibiting Agri Stats from "facilitating the exchange of sensitive information," Compl. ¶ 169, but never identifies what information Plaintiffs believe causes anticompetitive harm. Over the course of discovery, Agri Stats repeatedly demanded that Plaintiffs identify the information that Plaintiffs contended caused anticompetitive effects and Plaintiffs refused. ████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████

Plaintiffs' expert, Professor Rysman, finally addressed Agri Stats' question in his April 17, 2025 report by identifying Plaintiffs' evidence that ████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████ none of which implicate the four other broiler chicken report books.

***First***, ██████████████████████████████████████ █████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

***Second***, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

---

[4]     Rysman did perform various "before-and-after" regressions, but those regressions are limited to the putative markets for the sale of pork and turkey products and prove nothing about market-wide price effects in the separate alleged market for chicken products.

**_Third_**, ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

The Court should grant Agri Stats summary judgment on the question of whether its Live, Processing, Operations Profit, and Bottom Line reports harm competition because all of Plaintiffs putative "evidence" of harm relates solely to Agri Stats' Sales reports. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ theory is not _evidence_. _See, e.g._, _Procaps S.A. v. Patheon, Inc._, 845 F.3d 1072, 1085 (11th Cir. 2016) ("Were theoretical effects stated only at the highest level of abstraction enough, a plaintiff could trot out these same basic principles any time conduct resulted in harm to a competitor. The Sherman Act requires more."). This Court's _Pork_ ruling is a case in point, in which the Court held class plaintiffs to their "burden of proving that the Defendants' exchange of information through Agri Stats reports had a 'substantial anticompetitive effect' that harmed them in the relevant market." _Pork_, 781 F. Supp. 3d at 868 (citation omitted). The Court relied upon regression analyses of pork price data showing that consumers "paid artificially high prices due to the Defendants'

challenged conduct." *Id.* at 871. No such evidence exists with respect to the Live, Processing, Operations Profit, and Bottom Line report books in this case. Indeed, the only record evidence before this Court regarding these report books demonstrates that they have substantial procompetitive benefits in improving efficiency and reducing costs. *See* Ex. 40 (Nguyen Rep.) ¶¶ 101–21 (████████████████████████████████ ████████████████████████████████████████ ████████████████████████).

Plaintiffs must be held to their evidentiary burden of proving substantial anticompetitive effects. ***First***, it is clear from Plaintiffs' expert analysis that the focus of their case is the putative price effects of Agri Stats' Sales reports. Any trial in this matter would be significantly streamlined, and party and judicial resources conserved, if the proceedings were properly limited to Plaintiffs' proffered evidence affecting, at most, the two Sales report books. *See* Moore's Fed. Prac. and Proc. 3d ¶ 56.40[2] (recognizing that partial summary judgment promotes "economical and expeditious" proceedings); *see also In re Refco Inc. Sec. Litig.*, 2013 WL 12191844, at *2 (S.D.N.Y. Mar. 25, 2013) ("The purpose of a partial summary judgment motion is to promote efficiency and narrow the scope of a trial to the issues that are reasonably disputed.").

***Second***, allowing information exchange claims to proceed past summary judgment based on *theory* instead of *evidence* would raise serious constitutional concerns. Agri Stats reports are commercial speech. Restraints on commercial speech may be no broader than necessary to protect a legitimate governmental interest. *Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980). While Plaintiffs have a legitimate interest

19

in protecting competition, the scope of any injunctive relief may sweep up no more commercial speech than necessary to protect that interest. *Id.* Plaintiffs may not rely on theoretical musings and must instead prove with actual evidence that the particular speech sought to be enjoined actually harms competition. Any injunction must be strictly limited and carefully allow commercial speech that is *not* anticompetitive to proceed. *See Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993) (Plaintiffs must prove connection between asserted interest and restriction on speech; that the "harms [Plaintiffs] recite[] are real and that its restriction will in fact alleviate them to a material degree."); *ES Dev., Inc. v. RWM Enters., Inc.*, 939 F.2d 547, 557–58 (8th Cir. 1991) (If a court finds "a violation of the Sherman Act," it "is empowered to fashion appropriate restraints," but "is limited by the requirement that it model its judgment to fit the exigencies of the particular case.") (cleaned up). Because Plaintiffs' proof focuses solely on the Sales reports, these constitutional considerations reinforce that Plaintiffs' claims should be dismissed to the extent they challenge Agri Stats' commercial speech in the remaining four report books.

Plaintiffs have not identified a single piece of evidence linking Agri Stats' broiler chicken Live, Processing, Operations Profit, or Bottom Line reports to *any* anticompetitive effect. Agri Stats is therefore entitled to summary judgment with respect to these reports.

## II.    There is No Evidence that the Broiler Chicken Sales Report Books Harm Competition.

Each of the three categories of evidence put forward by Plaintiffs regarding the Sales reports discussed above fail to raise a triable issue of whether those reports have market-

wide anticompetitive effects, and therefore the Court should grant summary judgment to

Agri Stats on the entirety of Count I.

**_First_**, ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████ ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[5]    The "████████████" model is unreliable and inadmissible for the reasons set forth in Agri Stats' Motion to Exclude and to Strike Expert Testimony. Dkt. No. 374. But even assuming the "████████████" study is admissible, it raises no triable issue of anticompetitive effects flowing from Agri Stats' broiler chicken sales reports.

███████████████████████████████████████████████

*See, e.g.*, *Am. Express Co.*, 585 U.S. at 549 ("This Court will not infer competitive injury from price and output data absent some evidence that tends to prove that output was restricted or prices were above a competitive level.") (internal quotations and citation omitted).

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ *See In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995,

1003 (8th Cir. 2019) ("Absent admissible evidence regarding what [Plaintiff's] monthly and trending costs would have been but for the alleged antitrust conspiracy, no conclusions or inferences can be drawn by a factfinder on causation or the injury incurred.").

███████████████████████████████████████████████

████████████████████████████████ Such evidence cannot prove the market-wide harm necessary to survive summary judgment. *See Todd*, 275 F.3d at 214 (requiring "substantial" evidence of price effect).

## III.    There is No Evidence that Agri Stats Can Resume Pork and Turkey Reports.

The Court should grant Agri Stats summary judgment as to Plaintiffs' claims seeking to enjoin Agri Stats' defunct pork and turkey reports because there is no evidence that Agri Stats could resume them even if it wanted to do so. "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case," *Kronholm v. Federal Deposit Insurance Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990), and the party asserting subject matter jurisdiction has the burden of proving it, *V S Ltd. Partnership v. Department of Housing & Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000). "Article III of the Constitution limits the jurisdiction of federal courts to deciding only 'Cases' or 'Controversies'." *Brazil v. Ark. Dep't of Hum. Servs.*, 892 F.3d 957, 959 (8th Cir. 2018) (citation omitted).[7] "To satisfy this requirement, a plaintiff seeking injunctive relief . . . must be under a 'real and immediate threat of injury.'" *Id.* (quotation omitted).

████████████████████████████████████████████████
████████████████████████████████████████████████

---

[7]    "When an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("'[A] plaintiff must demonstrate a case or controversy for each claim he seeks to press' and 'for each form of relief'.") (citation omitted).

This Court previously acknowledged that Plaintiffs' pork and turkey claims may not present a justiciable controversy because Agri Stats no longer produces them, noting that Plaintiffs had "*alleged* enough . . . to suggest that subscribers intend to subscribe . . . in the future"; but also that it "remains to be seen what discovery may yield" and that the Government's allegations were "just enough" to survive dismissal. Dkt. No. 118 at 17–18 (emphasis added). The Court can now see what discovery has yielded, and it is not enough to survive summary judgment. *See Pavek v. Simon*, 467 F. Supp. 3d 718, 736–37 (D. Minn. 2020) ("At summary judgment, a plaintiff must set forth . . . evidence [of] specific facts . . . to establish standing because allegations alone are insufficient to survive a summary judgment motion") (cleaned up).

**First**, there is no dispute that Agri Stats has not produced benchmarking reports for either pork or turkey customers for *six years*. Ex. 3 (Scholer Decl.) ¶¶ 49–52; Ex. 42 (Grove Tr.) at 122:12–14. Nor is there any dispute that Agri Stats stopped producing those reports because subscribers left and were no longer providing the data necessary to prepare them. Ex. 3 (Scholer Decl.) ¶¶ 49–52); *see also* Ex. 43 (Snyder Tr.) at 81:19–82:9 (███████ ██████████████████████████████████████████████); Ex. 42 (Grove Tr.) at 286:21–23 ("████████████████████████████████████████████████ ████████████████████████████████████████").

**Second**, while the Court previously found that the Government had sufficiently *alleged* that Agri Stats *could* restart pork and turkey benchmarking if requested, Dkt. No. 118 at 17, discovery has now shown that Agri Stats cannot. Agri Stats cannot produce benchmarking reports without subscribers and their data, or without the employees who

were terminated when the programs ceased. *See* Ex. 43 (Snyder Tr.) at 83:2–4 ("███████

███████████████████████████████████████████████

██████████"); *id.* at 191:1–17 ("███████████████████

███████████████████████████████████████████████

███████████████████████████████").

 ***Third***, Plaintiffs had ample opportunity to depose pork and turkey processor employees to ask them about any future plans to resume subscribing to Agri Stats' reports or resume submitting data to Agri Stats. ████████████████████████████████

████████████████████ Because Agri Stats' pork and turkey reports ceased six years ago and no record evidence establishes that it could "restart pork and turkey reports in the future," Dkt. No. 118 at 17, there is no case or controversy for the Court to resolve. *E.g.*, *Brazil*, 892 F.3d at 960 ("Nothing in the record suggests that th[e] events" that "could lead to additional harm of the sort the injunction seeks to prevent . . . will unfold.").

 Plaintiffs try to overcome this failure in proof with documents in which Agri Stats, having lost a substantial part of its business, ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████. But that business has not returned, and there is no evidence that it will. A "'conjectural or hypothetical' possibility of future harm is insufficient." *Brazil*, 892 F.3d at 960 (citation omitted). Even if Plaintiffs established Agri Stats' *desire* to relaunch pork or turkey reports, that would not create a justiciable case or controversy. *See Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.") (emphasis omitted). In *Lujan*, the Court found that for the alleged "'imminent' future injury" to manifest would "require[] scheduling, coordination, and preparation—in other words, it require[d] concrete and advanced plans." *Accord Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 113 (D. Minn. 2014). No such plans exist here. *See, e.g.*, Ex. 36 (Scholer Dep.) at 197:6–15 ("███████████████████████████████ ██████████████████████████████████████████████"). The Court should grant Agri Stats summary judgment on Plaintiffs' pork and turkey claims.

## IV.    There is No Evidence of Harm Related to EMI.

Plaintiffs' complaint seeks an injunction against Agri Stats' subsidiary, EMI. Compl. ¶ 168. EMI publishes price reports and industry forecasts, which are based on publicly available data. Ex. 31 (*Broilers* Scholer Tr.) at 58:25–59:2, 147:4–12, 178:15–179:2,183:18–22, 218:17–21, 371:15–22. Plaintiffs' theory of harm in this case is that the "asymmetric" availability of Agri Stats' Sales reports allows protein sellers to increase prices because protein buyers lack access to the price information. Compl. ¶¶ 67–72. It is unsurprising, then, that Plaintiffs have all but abandoned any theory of liability with respect to EMI because EMI price reports and forecasts are available to anyone who wants to purchase them, including protein buyers and sellers. Ex. 3 (Scholer Decl.) ¶ 64. There is no record evidence that EMI has caused any competitive harm in any relevant market.

████████████████████████████████████████████████████████

████████████████████████████ While Agri Stats submits that no trial is necessary in this matter, it would be inefficient and waste the resources of the parties and the Court to include EMI in any such trial given this lack of evidence. The Court should grant Agri Stats summary judgment on Plaintiffs' claims against EMI.

## CONCLUSION

For the reasons set forth above, Agri Stats respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment against all Plaintiffs on all claims.

Dated: September 17, 2025

Respectfully submitted,

*/s/ Justin W. Bernick*
Justin W. Bernick
William L. Monts III
Liam E. Phibbs
**HOGAN LOVELLS US LLP**
555 13th Street, NW
Washington, DC 20004
(202) 537-5600
justin.bernick@hoganlovells.com
william.monts@hoganlovells.com
liam.phibbs@hoganlovells.com

Peter H. Walsh
**HOGAN LOVELLS US LLP**
80 South 8th Street, Ste. 1225
Minneapolis, MN 55402
(612) 402-3017
peter.walsh@hoganlovells.com

*Counsel for Defendant Agri Stats, Inc.*