

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910
www.hoganlovells.com

December 30, 2025

The Honorable John R. Tunheim
United States District Judge
United States District Court for the District of Minnesota
300 South Fourth Street
Minneapolis, MN 55414

**Re:** *United States, et al. v. Agri Stats, Inc.*, **No. 23-cv-3009-JRT-JFD**

Dear Judge Tunheim,

The Seventh Amendment prescribes: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."  U.S. Const. amend. VII.  Government Plaintiffs invite error by asking the Court to deliberately schedule a bench trial in *United States, et al. v. Agri Stats, Inc.*, No. 23-cv-3009-JRT-JFD (D. Minn.), before a jury trial in *In re Pork Antitrust Litigation*, No. 18-cv-1776-JRT-JFD (D. Minn.) ("*Pork*")—to which Agri Stats is entitled under the Seventh Amendment—solely in pursuit of judicial expedience.  Neither side seriously contests that these actions are related and involve overlapping fact and liability issues; the Government Plaintiffs conceded as much when they filed the case.  *See* Dkt. No. 2 (Notice of Related Case).  The sole dispute is whether a judge or a jury should decide them in the first instance.  The Seventh Amendment provides the answer: a jury.  That result is borne out by the Nation's history, traditions, and precedents.  Agri Stats has the constitutional "right of trial by jury" *now*, and that right "shall be preserved" by ensuring that a jury decides the overlapping fact and liability issues first—meaning that the legal claims in *Pork* are tried by a jury before Government Plaintiffs' equitable claims are tried by the Court.  The Supreme Court has made clear that, even in the rare circumstances in which a judge has some ability or discretion to sequence jury and bench trials, such "discretion is very narrowly limited and must, *whenever possible*, be exercised to preserve jury trial." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) (emphasis added).  And as the Supreme Court confirmed just this year, "judges may not resolve equitable claims first if doing so could prevent legal claims from getting to the jury." *Perttu v. Richards*, 605 U.S. 460, 471 (2025).  There is no reason to depart from this long-settled constitutional rule here, especially when doing so would result in further inefficiency and delay of private claims filed *five years* before the Government Plaintiffs' claims.  Agri Stats is not alone in opposing the Government Plaintiffs' request to proceed to trial first on May 4—*all* of the plaintiffs in *Pork* oppose it, and none of the defendants in *Pork* have been consulted on the question.  *See Pork* Dkt. No. 3248 ("[I]f IPPs still have a claim against a producer defendant, then

IPPs should proceed to trial first."); *Pork* Dkt. No. 3251 ("DAPs' position remains that the Government Plaintiffs should not 'take' the May 4 trial date.").

The Seventh Amendment's plain language dictates that the right to a jury trial is mandatory; it "shall be preserved." That constitutional mandate arose from the Founders' rejection of the British practice of enforcing the Stamp Act of 1765 and other unpopular laws: "authorities directed more and more cases to vice-admiralty courts where crown-appointed judges, rather than local juries, decided the defendant's fate." *Erlinger v. United States*, 602 U.S. 821, 829 (2024). Indeed, one of the Declaration of Independence's chief grievances against the Crown was the deprivation of jury rights. *See The Declaration of Independence* ¶ 20 (U.S. 1776); *cf. Duncan v. Louisiana*, 391 U.S. 145, 152 (1968) (among other things, "[t]he Declaration of Independence stated solemn objections to the King's . . . 'depriving us in many cases, of the benefits of Trial by Jury'"). This concern was not limited to criminal jury trial rights. The Founders viewed civil jury trials as so fundamental to a free society that the Constitution's initial omission of a such a right nearly scuttled ratification. *See* The Federalist No. 83 (Alexander Hamilton) (attributing stalled ratification "to the want of a constitutional provision for the trial by jury in civil cases"). The Framers ultimately refused to risk that the federal government might pursue enforcement actions before jury-less tribunals—just as the British had done before. *See SEC v. Jarkesy*, 603 U.S. 109, 122 (2024). They understood the right to a "trial by jury" to be "the democratic branch of the judiciary power—more necessary than representatives in the legislature." Essays by a Farmer, No. 4 (Mar. 21, 1788); *see also Erlinger*, 602 U.S. at 829 (the Founders "saw representative government and trial by jury as 'the heart and lungs' of liberty"); Letter from the Federal Farmer, No. 4 (Oct. 12, 1787) (observing that the right to a jury ensured "that common people should have a part and share of influence in the judicial, as well as the legislative department").

In light of the Seventh Amendment's text and history, any curtailment of the right to a jury trial is subject to close scrutiny. "The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 603 U.S. at 121 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)); *see also Parsons v. Bedford*, 28 U.S. 433, 434 (1830) ("The trial by jury is justly dear to the American people . . . and every encroachment upon it has been watched with great jealousy."). And this scrutiny is not satisfied by "the passing demands of expediency or convenience." *Reid v. Covert*, 354 U.S. 1, 10 (1957). That is why, when confronted with whether a judge may, for the sake of expediency or convenience, resolve overlapping factual and liability issues for equitable claims in advance of jury resolution of legal claims, the Supreme Court has consistently answered no.

The Supreme Court previously applied this principle in an antitrust case. In *Beacon Theatres*, the Supreme Court confronted an antitrust dispute between two movie theater companies in which the plaintiff sued for declaratory and injunctive relief and the defendant counterclaimed for treble damages. 359 U.S. at 503. After the district court directed that common issues would be decided in a bench trial before a jury determined the merits of the damages counterclaim, the defendant sought a writ of mandamus to vacate the court's order. The Supreme Court reversed, holding that a jury trial had been improperly denied. *Id.* at 510–11. While the Court explained that trial courts may have some "discretion in deciding whether the legal or equitable cause should be tried first," "that discretion is very narrowly limited and must, *wherever possible*, be exercised to

2

preserve jury trial." *Id.* at 510 (emphasis added). Indeed, as the Supreme Court confirmed again just this year, *Beacon Theatres* must be applied "expansively," and "judges may not resolve equitable claims first if doing so *could* prevent legal claims from getting to the jury." *Perttu*, 605 U.S. at 471 (emphasis added).

Understandably, then, *no court* has done what Government Plaintiffs propose here—leapfrogging adjudication of the government's equitable claims ahead of jury resolution of private legal claims when both are pending before the same court—which counsels strongly against jettisoning Agri Stats' Seventh Amendment right to a jury trial in favor of a bench trial. *Beacon Theatres* predicted extraordinary requests like Government Plaintiffs' may later arise and instructed that "only under the *most imperative* circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Beacon Theatres*, 359 U.S. at 510–11 (emphasis added). No such circumstances exist here, nor have Government Plaintiffs identified any. The only reason Government Plaintiffs have tendered for their proposal is the potential for expedience and judicial economy. *Cf.* Dkt. No. 436 at 2–3. Setting aside the fact that delaying resolution of *Pork* would, to the contrary, result in significant *inefficiency*, the Supreme Court has already rejected "the passing demands of expediency or convenience" as a reason to curtail Seventh Amendment rights. *See Reid*, 354 U.S. at 10.

Courts in analogous circumstances reject such requests. When separate actions involving both legal and equitable claims are pending before the same court (for example, following consolidation under Rule 42), courts necessarily sequence trials so that legal claims are resolved by a jury first. *See, e.g.*, *Abbott GMBH & Co., KG v. Centocor Ortho Biotech, Inc.*, 870 F. Supp. 2d 206, 225 (D. Mass. 2012) ("[I]t would be odd if this Court could cut off one party's right to a jury simply by the discretionary manner in which it . . . manages these actions."); *cf.* Fed. R. Civ. P. 42(b) ("When ordering a separate trial, the court must preserve any federal right to a jury trial."). That same rationale applies when bifurcating jury triable issues from those sounding in equity. *See, e.g.*, *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 14-cv-1699, 2021 WL 4037482, at *5 (D. Nev. Sept. 2, 2021) (bifurcation "does not run afoul of the Seventh Amendment" when the district court "intend[ed] to hold the jury trial first, and the bench trial second"). The Seventh Amendment compels this outcome "regardless of whether the equitable claims are primary, more important, or would be more efficiently disposed of first." *N.J. Dep't of Env't Prot. v. Amerada Hess Corp.*, No. 15-cv-6468, 2018 WL 2317534, at *12 (D.N.J. May 22, 2018). The "guiding principle" announced in *Beacon Theatres* obligates courts rendering "case management" decisions to preserve the right to a jury trial notwithstanding those considerations. *Abbott*, 870 F. Supp. 2d at 225–26.

Nothing in *Parklane Hosiery Co. v. Shore* overrides the *Beacon Theatres* mandate. *See* 439 U.S. 322, 334 n.22 (1979) (noting that "legal claims should ordinarily be tried before equitable claims to preserve the right to a jury trial"). Indeed, Agri Stats is aware of *no* authority (including *Parklane Hosiery*) supporting the Government Plaintiffs' position that the Court may intentionally structure trials so that it may resolve factual and liability disputes that would otherwise be presented to a jury—much less authority that would permit staying a jury trial in a case filed *five years earlier* in order to do so. *Parklane Hosiery* merely holds that decisions in bench trials may have a preclusive

3

effect in *subsequent* legal actions without violating the Seventh Amendment. *Id.* at 335–36.[1] Under the facts there, since one judge sitting in equity had already issued judgment and been affirmed on appeal, relitigation of the same issues in a second, separate action before a jury was foreclosed by collateral estoppel. *Id.* at 335. *Parklane Hosiery's* holding that an earlier bench trial could impact a future jury trial on common issues, whether potentially under 15 U.S.C. § 16(a) or as a matter of collateral estoppel,[2] is not in dispute. What *is* in dispute is a question that *Parklane Hosiery* does not address, but that others have: whether a single court in sequencing a jury and bench trial can *manufacture* that effect by deliberately holding the bench trial first. There is no way to reconcile Government Plaintiffs' proposal with the Seventh Amendment.

*Abbott* explains the critical distinction: in *Parklane Hosiery*, "the fact that the equitable action was resolved first was a matter of chance rather than the result of considered judicial discretion" because the equitable and legal claims were "assigned to different judges." *Abbott*, 870 F. Supp. 2d at 225–26. By contrast, when, as here, the equitable and legal cases are before the same judge and "it is *within this Court's discretion* to hold the [jury] trial before, after, or concurrently with its [equitable] determination," the Seventh Amendment dictates that the court's discretion "must, wherever possible, be exercised to preserve jury trial." *Id.* (citing *Beacon Theatres*, 359 U.S. at 510 (1959)) (emphasis added). The court held that "the factfinder's function should, if reasonably possible, be performed by a jury," reasoning that "it would be odd if this Court could cut off one party's right to a jury simply by the discretionary manner in which it consolidates and manages [the legal and equitable] actions." *Id.*; *compare Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552 (1990) ("It would be anomalous to hold that a district court may not deprive a litigant of his right to a jury trial by resolving an equitable claim before a jury hears a legal claim raising common issues, but that a court may accomplish the same result by erroneously dismissing the legal claim."). In other words, *Parklane Hosiery* was backward looking, considering "*only* whether the Seventh Amendment required a limitation on the finality and preclusive effect of factual findings from a *concluded* equitable action in an ongoing legal action in another court." *Abbott*, 870 F. Supp. 2d at 226 (emphasis added). It says nothing about this case or how the Seventh Amendment applies prospectively when a court is deciding the order in which equitable and legal

---

[1]     This rule is predicated on the fact that the Seventh Amendment was intended "to preserve the right to jury trial as it existed in 1791," and back then, "a party was not entitled to have a jury determine issues that had been previously adjudicated by a chancellor in equity" (the equivalent of a modern bench trial). *Parklane Hosiery*, 439 U.S. at 333. There is no historical analog to Government Plaintiffs' proposal.

[2]     At the December 12, 2025, status conference, Government Plaintiffs insinuated that an equitable judgment by the Court in their favor would only be entitled to *prima facie* evidentiary weight under 15 U.S.C. § 16(a) in subsequent private suits against Agri Stats and would not collaterally estop Agri Stats from litigating any legal issues before a jury. Of course, Government Plaintiffs cannot make any representation about how any private plaintiff would seek to use a judgment against Agri Stats in the future. Regardless, this distinction is inconsequential for Seventh Amendment purposes. The Supreme Court has refused "to limit *Beacon Theatres* artificially to cases involving estoppel," *Perttu*, 605 U.S. at 476, or tolerate any dilution of the principle that legal claims must "be resolved by a jury first" if "resolving the equitable claims *could* prevent a full jury trial on the legal claims," *id.* at 471 (emphasis added) (citation omitted). At a minimum, whether conceptualized in terms of *prima facie* evidence or estoppel, a prior equitable determination by this Court risks usurping the province of the jury.

claims will be adjudicated. For the latter issue, *Beacon Theatres* is the governing precedent. *See Perttu*, 605 U.S. at 476 ("The principle of *Beacon Theatres* still applies when judicial resolution of a common issue might 'prevent a full jury trial' for some reason *other* than estoppel") (emphasis original) (citation omitted); *Parklane Hosiery*, 439 U.S. at 334 (explaining that "[r]ecognition that an equitable determination could have collateral-estoppel effect in a *subsequent* legal action was the major premise of this Court's decision in *Beacon Theatres*" (emphasis added)). And *Beacon Theatres* requires the Court to sequence the trials so that any overlapping fact and liability issues between *Pork* and the Government Plaintiffs' action are resolved by a jury first.

To go Government Plaintiffs' way would require this Court to develop a heretofore unrecognized exception to the Seventh Amendment and *Beacon Theatres*. The Court can avoid that constitutional thicket by simply maintaining the May 4 trial date for *Pork*. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring) (noting that courts will not pass upon constitutionality of statute when "a construction of the statute is fairly possible by which the question may be avoided"). The risk of infringing on Agri Stats' Seventh Amendment right is reason alone to do so. *See Perttu*, 605 U.S. at 471, 476 (holding that "judges may not resolve equitable claims first if doing so *could* prevent legal claims from getting to the jury" and noting the problem in *Beacon Theatres* was that "judicial resolution of a common issue *might* [have] prevent[ed] a full jury trial" on the legal claims) (emphasis added).

Even on its putative "efficiency" merits, Government Plaintiffs' proposal should be rejected because any supposed efficiency gains are illusory. *First*, scheduling the Government Plaintiffs' action for a bench trial first will not obviate the need for jury trials in *Pork* as the other defendants would not be bound by an equitable judgment against Agri Stats or even by the *prima facie* evidence rule of 15 U.S.C. § 16(a). *Second*, if an adverse judgment enters against Agri Stats, the remaining plaintiffs nevertheless may attempt to argue for broad preclusive effect, requiring the Court to wade into preclusion issues that could be avoided by allowing a jury trial to proceed first or, alternatively, risking inconsistent outcomes on the same question. *Third*, ordering a bench trial to proceed first would unnecessarily protract these proceedings because Agri Stats would be compelled to petition for a writ of mandamus to protect its right to a trial by jury. *See Beacon Theatres*, 359 U.S. at 510 (reversing denial of petition for writ of mandamus); *In re Brazile*, 993 F.3d 593, 594 (8th Cir. 2021) (observing that "the right to grant mandamus to require jury trial where it has been improperly denied is settled" and there are "no other adequate means to attain the relief desired" as "[a]n appeal after final judgment is not sufficient") (citation omitted). *Fourth*, allowing the Government Plaintiffs' case to proceed ahead of the trial scheduled in *Pork* would likely require the Court to conduct a bench trial related to broiler chicken without the benefit of the Seventh Circuit's forthcoming decision in the *Broilers* appeal—presenting an acute risk of inconsistent outcomes across the judiciary. *Finally*, if the Court ultimately found against Agri Stats in a bench trial, the remaining *Pork* trials would languish during the pendency of the appeal that would follow.

The Supreme Court instructs that a jury must get the first word on issues common to legal and equitable claims "wherever possible." *Beacon Theatres*, 359 U.S. at 510. Agri Stats respectfully submits that the Court should reject Government Plaintiffs' unconventional, unprecedented, and unconstitutional proposal. In addition, Agri Stats requests that the Court rule on the proposal as soon as practicable. Already, as things currently stand, Agri Stats faces the nearly impossible

5

task of simultaneously preparing for three different antitrust trials against three different sets of potential plaintiffs in *Pork*. Dkt. No. 450. Preparing for one antitrust trial alone is notoriously complex and resource intensive; simultaneously doing so for three trials of this scale is a nearly insurmountable burden. Delaying resolution of this issue and requiring Agri Stats to add a *fourth* Government bench trial to the mix for trial preparation—a trial involving two additional proteins with massive independent discovery records—is simply not feasible and unfairly and severely prejudices Agri Stats' ability to defend itself against the pending claims. The Court should deny Government Plaintiffs' request.

Sincerely,

*/s/ Justin W. Bernick*

Justin W. Bernick
Partner
Hogan Lovells US LLP
justin.bernick@hoganlovells.com
(202) 637-5485