**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| STATE OF CALIFORNIA, | Civil No. 23-3009 (JRT/JFD) |
| STATE OF NORTH CAROLINA, | |
| STATE OF TENNESSEE, | |
| STATE OF MINNESOTA, | **MEMORANDUM OPINION &** |
| STATE OF TEXAS, and | **ORDER DENYING AGRI STATS,** |
| STATE OF UTAH, | **INC.'S MOTION FOR SUMMARY** |
| | **JUDGMENT AND DENYING** |
| | **MOTIONS TO EXCLUDE EXPERT** |
| Plaintiffs, | **TESTIMONY** |
| v. | |
| AGRI STATS, INC., | |
| Defendant. | |

---

Mark Henry Michael Sosnowsky, James H. Congdon, and Peter A. Nelson, **ANTITRUST DIVISION, DEPARTMENT OF JUSTICE**, 450 Fifth Street Northwest, Washington, DC 20530, for Plaintiff United States of America; Katherine Moerke and Sarah Doktori, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 600, St. Paul, MN 55101, on behalf of State of Minnesota and as local counsel for other Plaintiff States.

Justin Bernick and Liam Phibbs, **HOGAN LOVELLS US LLP**, 555 Thirteenth Street Northwest, Washington, DC 20004, for Defendant.

The United States of America and the States of California, North Carolina, Tennessee, Minnesota, Texas, and Utah (collectively, "Plaintiffs"), brought this action against Agri Stats, Inc. ("Agri Stats") in September 2023 alleging an information exchange

conspiracy with major broiler chicken, turkey, and pork processors in the United States. Discovery is complete.  The parties move to exclude portions of various expert testimony, and Agri Stats moves for summary judgment.  Because the Court finds that the disputed expert testimony presented by the parties is relevant and the proposed evidence is sufficiently reliable, it will deny the parties' motions to exclude.  And because numerous fact issues remain, the Court will deny Agri Stats' motion for summary judgment.[1]

## BACKGROUND

### I.    FACTS

Agri Stats, a roughly 70-employee business headquartered in Fort Wayne, Indiana, operated information exchanges in the chicken, pork, and turkey markets for many years. (Mem. Supp. Def. Agri Stats' Mot. Summ. J. ("Agri Stats' Supp. SJ") at 3, Sept. 17, 2025, Docket No. 394.)[2]  Although Agri Stats ceased publishing pork and turkey reports years ago,[3] it continues to publish broiler chicken reports.  (*See id.* at 1.)  When the reports were active, Agri Stats' subscribers included most of the largest meat processors.  For example,

---

[1] The Court will contemporaneously issue an order addressing the scheduling of trial.

[2] Agri Stats began offering benchmarking reports for broiler chicken in 1985, for turkey in 2001, and for live hogs in 2004.  (Agri Stats' Supp. SJ at 3.)  "In 2006, Agri Stats purchased Agrimetrics, a company producing benchmarking reports for processing pork products."  (*Id.* at 3–4.)  "By 2009, Agri Stats offered a consistent set of benchmarking reports to processors of broiler chicken, pork, and turkey."  (*Id.* at 4.)

[3] Agri Stats has not produced benchmarking reports for either pork or turkey customers for six years.  (Agri Stats' Supp. SJ at 25.)  They stopped because "participants quit the program." (*Id.*)

from 2007 to 2021, 95 percent of the broiler chicken products processed in the United States were processed by subscribers of Agri Stats. (Pls.' Opp. Agri Stats' Mot. Summ. J. ("Pls.' Opp. SJ") at 4, Nov. 20, 2025, Docket No. 427 (citing Decl. of James H. Congdon Supp. Pls.' Opp. Agri Stats, Inc.'s Mot. Summ. J. ("Congdon Decl."), Ex. 4 ("Rysman Expert Report") ¶ 150, Nov. 20, 2025, Docket Nos. 429–30).)

Agri Stats' subscribers receive reports or "books" of industry specific information "to assist protein producers in improving efficiency and reducing costs." (*See, e.g.*, Agri Stats' Supp. SJ at 3.) "Broiler chicken, pork, and turkey reports were substantively identical, with only small differences designed to account for variations in business practices." (*Id.* at 5.) But "because pork products are exported more often than broiler chicken and turkey products, Agri Stats developed an Export report available only to pork subscribers." (*Id.*)

Subscribers also receive other information from their account mangers—which can include "sensitive cost, production, and pricing information." (Pls.' Opp. SJ at 4.) Many of Agri Stats' agreements with its processors are not in writing. (*See id.*; Congdon Decl., Ex. 6 (Snyder Dep. at 272:18–273:22).) Additionally, "[p]articipating processors know which competitors share information with Agri Stats" because Agri Stats lists participants (and even individual plants) in its reports. (Pls.' Opp. SJ at 5; *see also* Decl. Justin Bernick Supp. Def. Agri Stats, Inc.'s Mot. Summ. J. ("Bernick Decl."), Ex. 21, Sept. 17, 2025, Docket Nos. 395–96.)

In addition to six structured reports or "books," Agri Stats creates other weekly and monthly reports "to evaluate pricing and profitability on certain products" as well as "a variety of other custom and unique materials." (Pls.' Opp. SJ at 6; *see also* Congdon Decl., Ex. 17.) Customers also have "direct access to Agri Stats staff" who have discretion to share information without consulting their management. (Pls.' Opp. SJ at 6 & n. 3 (citing deposition testimony).)

Agri Stats shares information that spans from a few days old (*id.* at 6) to historical data (*id.* at 7). And the data relates to all aspects of a meat processor's operation. (*Id.*) Processors' products are broken down by characteristics (e.g., cut, size, quality) to a level of detail that may effectively identify a processor when only a small number of processors produce certain products. (*Id.* at 8; *see, e.g.*, Bernick Decl., Ex. 12.) Agri Stats also provides reports tailored for each processor (Pls.' Opp. SJ at 8) and allows processors to access information—including sales information, not included in a report—by contacting Agri Stats directly (*id.* at 9 (citing Congdon Decl., Ex. 18)). "A producing company must share data in order to receive data." (Congdon Decl., Ex. 12 (email from Agri Stats' Vice President of Business Development, Brian Snyder, providing "General Requirements to receive Agri Stats monthly benchmarking reports").) Agri Stats' CEO testified that providing detailed competitor pricing for identified products does not violate Agri Stats' confidentiality policies so long as Agri Stats does not identify competing processors by name. (Congdon Decl., Ex. 6 (Snyder Dep. at 293:15–294:6).)

## II.    PROCEDURAL HISTORY

Plaintiffs filed their complaint against Agri Stats in September 2023 after the initiation of a series of private antitrust class action lawsuits, including *In re Broiler Chicken Antitrust Litigation*, Civil No. 16-8637 (N.D. Ill.), *In re Turkey Antitrust Litigation*, Civil No. 19-8318 (N.D. Ill.), and *In re Pork Antitrust Litigation*, Civil No. 18-1776 (D. Minn.). Fact discovery was completed in March of 2025, and dispositive motions were due September 17, 2025. The case was stayed from October 3 to November 13, 2025, due to a government lapse in appropriations. (*See* Order on Mot. to Stay, Oct. 3, 2025, Docket No. 417; Am. Order on Mot. to Stay, Oct. 8, 2025, Docket No. 419; Order Lifting Stay, Nov. 13, 2025, Docket No. 422.) Once the stay was lifted, the parties completed briefing of the dispositive motions in December 2025.

## DISCUSSION

## I.    MOTIONS TO EXCLUDE

Both Agri Stats and Plaintiffs filed motions to exclude portions of the expert reports. Agri Stats also seeks to exclude what it characterizes as "improper and late expert testimony." (Agri Stats' Mot. Exclude, Aug. 7, 2025, Docket No. 370.) Specifically, Agri Stats argues that certain analyses in Dr. Rysman's rebuttal report are "not a rebuttal" but "a new model that the Government failed to disclose." (Agri Stats' Mem. Supp. Mot. Exclude & Strike Expert Test. ("Agri Stats' Mem. Supp. MTE") at 26, Aug. 7, 2025, Docket No. 374.)

Plaintiffs seek to exclude "testimony regarding purported procompetitive effects" by Agri Stats' expert economist, Dr. Tram Nguyen.  (Pls.' Mot. Exclude Test. Regarding Purported Procompetitive Effects by Agri Stats' Expert Economist, Sept. 17, 2025, Docket No. 400.)

The Court will deny both motions because it concludes the testimony will help the trier of fact and that the testimony is sufficiently reliable.

### A.    Standard of Review

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In essence, there are three prerequisites to admitting expert testimony: (1) the evidence is relevant and helpful for the trier of fact, (2) the proposed witness is qualified to assist the trier of fact, and (3) the proposed evidence is reliable.  *Lauzon v. Senco Prods.,*

*Inc.*, 270 F.3d 681, 686 (8ᵗʰ Cir. 2001).  For evidence to be reliable, it must be based upon sufficient facts or data, be a product of reliable principles and methods, and the witness must apply the principles and methods reliably to the facts of the case.  *Id.*

The district court has a gate-keeping obligation to ensure that all testimony admitted under Rule 702 satisfies these prerequisites and that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified, that his or her methodology is scientifically valid, and that "the reasoning or methodology in question is applied properly to the facts in issue."  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8ᵗʰ Cir. 2006).  Expert testimony is inadmissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case."  *Id.* at 757.

"[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Furthermore, the Eighth Circuit has held that "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility."  *Marmo*, 457 F.3d at 758.  "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."  *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8ᵗʰ Cir. 1988).  "Only if

[an] expert's opinion is so fundamentally unsupported that it can offer no assistance to the [trier of fact] must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001) (cleaned up).

When the Court serves as the finder of fact, the need for gatekeeping diminishes. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012). The Court will therefore apply the *Daubert* standard but under a more "relaxed" approach because this case will be tried before the Court, not the jury. *Id.*; *see also In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 914 (D. Minn. 2020).

## B. Plaintiffs' Motion to Exclude

Plaintiffs ask the Court to exclude testimony regarding procompetitive effects by Agri Stats' expert economist, Dr. Nguyen. Plaintiffs argue that "[a]lthough Dr. Nguyen discussed 'evidence' she claimed is consistent with procompetitive conduct, she declined to subject that evidence to any kind of rigorous empirical analysis" and that she did not employ "any expert knowledge, skill, experience, training, or education in identifying evidence purportedly consistent with procompetitive benefits." (Mem. Supp. Pls.' Mot. Exclude Test. Regarding Purported Procompetitive Effects by Agri Stats' Expert Economist ("Pls.' Mem. Supp. MTE") at 7, Sept. 17, 2025, Docket No. 402.)[4]

_____

[4] Agri Stats argues that instead of excluding the evidence, the Court should "issue an order identifying the metes and bounds of permissible expert testimony based on anecdotal evidence." (Def. Agri Stats' Opp. Pls.' Mot. Exclude ("Agri Stats' Mem. Opp. MTE") at 2, Nov. 20, 2025, Docket No. 423.) But Agri Stats' proposed order includes restrictions not just on Dr. Nguyen's expert report but on the use of Plaintiffs' expert report as well. (Decl. of Justin Bernick Supp. Def. Agri

Although Plaintiffs' arguments may undermine the weight of Dr. Nguyen's opinions, the Court finds that any flaws in the analysis go to the weight or credibility, not the admissibility, of her testimony. *See Harley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002). To the extent that an order is needed to clarify the limits of Dr. Nguyen's expert testimony at trial, the Court will consider the scope of such an order at the motions in limine stage.

### C.    Agri Stats' Motion to Exclude and Strike

Agri Stats moves to exclude certain testimony of Plaintiffs' expert, Dr. Marc Rysman. Although the Court will address Agri Stats' specific arguments, below, the Court will deny Agri Stats' motion because it finds that the critiques to the relevance and reliability of Dr. Rysman' testimony go to the weight, not the admissibility, of the evidence. Further, the Court declines to find that the additional analysis submitted in Dr. Rysman's rebuttal expert report was improper or late.

### 1.    Pork and Bacon Regressions

Agri Stats requests that the Court exclude Dr. Rysman's pork and bacon regressions because (1) Dr. Rysman failed to control for the supply and demand shocks in 2008 in his benchmark period; (2) Dr. Rysman failed to control for hog producer profitability; and (3) Dr. Rysman's regressions yield false positives and false negatives.

---

Stats' Opp. Pls.' Mot. Exclude, Ex. A, Nov. 20, 2025, Docket No. 424.) Because Agri Stats' request to exclude specific applications of the examples in Plaintiffs' expert report is untimely, the Court declines to address it further.

With respect to the Agri Stats' arguments that Dr. Rysman did not include the correct variables to control for the recession in 2008 or for hog producer profitability, the Court finds that the inclusion (or exclusion) of these particular variables in a regression analysis goes to the weight of the evidence, not its admissibility.  *Maitland v. Univ. of Minnesota*, 155 F.3d 1013, 1017 (8th Cir. 1998) ("[I]f a regression analysis omits variables, it is for the finder of fact to consider the variables that have been left out of an analysis, and the reasons given for the omissions, and then to determine the weight to accord the study's results[.]").

As to whether Dr. Rysman's regressions yield false positives and false negatives, the experts disagree on how to interpret the results of Dr. Nguyen's testing of Dr. Rysman's model.  (*See, e.g.*, Congdon Decl., Ex. 24 (Rysman Rebuttal Expert Report) ¶¶ 192–97.)  The Court does not find Dr. Rysman's analysis so flawed such that it should be excluded.  To the extent there is a factual issue whether Dr. Rysman's analysis provided inconsistent results or whether Dr. Nguyen's testing was flawed, the finder of fact will determine the weight to accord Dr. Rysman's model and Dr. Nguyen's testing at trial.

## 2.    Broiler Chicken Model

Agri Stats argues that Dr. Rysman's "Economic Impact" broiler chicken model should be excluded because it does not show actual marketwide effects and "does not consider the *magnitude* of any price increase or decrease" so "it cannot show whether consumers were, on balance, better or worse off."  (Agri Stats' Mem. Supp. MTE at 15.)

Since Plaintiffs bear the burden of proving marketwide anticompetitive effects caused by Agri Stats—of which the reports may be just one piece—and the putative flaws in Dr. Rysman's analysis are nothing more than a fact dispute, the Court will admit Dr. Rysman's testimony on this point.

### 3. Market Definition

Agri Stats asserts that Dr. Rysman's market definition analysis should be excluded because Dr. Rysman defined the relevant antitrust markets based on the work of another expert, Professor Dorfman, and did not validate the work of that expert, including the accuracy of cross-price elasticities. The parties agree that Dr. Rysman "relied on academic estimates of price elasticities regarding various proteins" that were selected by Professor Dorfman. (Pls.' Opp. Def. Agri Stats' Mot. Exclude ("Pls.' Mem. Opp. MTE") at 32, Sept. 4, 2025, Docket No. 383.) But Agri Stats argues that because Professor Dorfman "assumed (with no evidence) that the price elasticities have 'not significantly changed in recent years'" and Dr. Rysman relied on Professor Dorfman's opinion, Dr. Rysman's analysis should be excluded. (Agri Stats' Reply Supp. Mot. Exclude ("Agri Stats' Reply Mem. MTE") at 10, Sept. 25, 2025, Docket No. 408.)

Agri Stats did not identify any evidence that Professor Dorfman's analysis was inaccurate; Agri Stats only pointed out that the analysis relied in part on old studies. In a sense, Agri Stats argues that Dr. Rysman should have first validated Professor Dorfman's analysis before relying on it because Agri Stats claims it **might** be inaccurate. The Court declines to find on this record that Dr. Rysman's analysis is based on a "flawed

foundation." (*See* Agri Stats Mem. Supp. MTE at 22.)  To the extent that Agri Stats has evidence that price elasticities have changed and that either Dr. Rysman or Professor Dorfman's opinions are undermined by those changes, it may present that evidence to the fact finder at trial so that it can be assessed as part of the weight of the evidence.

### 4.    Turkey Analysis & Rebuttal Report

Agri Stats claims that Dr. Rysman's turkey analysis in his expert report is "flawed and unreliable" because it uses "data that are fundamentally incompatible with each other and are incapable of showing that turkey prices increased following the cessation of Agri Stats turkey reports in 2018." (Agri Stats' Mem. Supp. MTE at 23.)  In his rebuttal report, Dr. Rysman provides an additional turkey regression addressing some of Agri Stats' expert's critique.  Agri Stats does not substantively criticize this new analysis but does argue that the analysis is not a rebuttal but, rather, "a new model that the Government failed to disclose" and should be excluded because it is untimely.  (Agri Stats Mem. Supp. MTE at 26.)

The Court notes that the party's arguments as to the initial turkey analysis are factual disputes regarding whether the underlying data sources are appropriately representative and whether the data could appropriately be used in the corresponding analyses.  (*See, e.g.*, Rysman Rebuttal Expert Report ¶¶ 175, 177 (acknowledging limitations of the data set but indicating that Dr. Rysman had "found them reliable for the purposes of [his] analysis").)  The Court declines to exclude Dr. Rysman's initial turkey

analysis and concludes instead that Agri Stats' arguments here go to the weight, not the admissibility of the evidence.

Dr. Rysman's second turkey regression—found in his rebuttal report—responds to criticisms in Dr. Nguyen's report and uses the turkey processor data that Agri Stats says he should have used for his first analysis.  (*See* Agri Stats Mem. Supp. MTE at 23 ("Instead of using actual sales data produced by turkey processors, Professor Rysman used spot market price indices from Urner Barry . . . ."); Rysman Rebuttal Expert Report ¶ 176; Decl. of Justin Bernick Supp. Def. Agri Stats, Inc.'s Opp. Pls.' Mot. Exclude, Ex. C (Nguyen Expert Report) ¶¶ 228–33, Nov. 20, 2025,  Docket Nos. 424–25.))  Although Agri Stats is likely correct that the analysis could have been performed and included in the initial report, the Court is not persuaded that the second turkey regression is an improper rebuttal. Moreover, to the extent the additional turkey analysis does stray from proper rebuttal, Agri Stats did not clearly and specifically articulate why it would be prejudiced, particularly as the results are consistent with Dr. Rysman's initial analysis.  (*See* Rysman Rebuttal Expert Report ¶¶ 185–86.)  Thus, even if the Court were to find a violation (which it does not), the Court concludes that any such violation would be harmless and, therefore, exclusion would not be warranted.  *See* Fed. R. Civ. P. 37(c).

Accordingly, the Court will not exclude either of Dr. Rysman's turkey analyses.

*        *        *

The Court will deny Agri Stats' motion to exclude because it finds that Agri Stats' critiques to the relevance and reliability of Dr. Rysman's testimony go to the weight, not the admissibility, of the evidence. Further, the Court concludes that Dr. Rysman's additional turkey regression in his rebuttal report is appropriate rebuttal evidence or, alternatively, would not result in prejudice to Agri Stats, if admitted.

## II.     AGRI STATS' MOTION FOR SUMMARY JUDGMENT

Agri Stats moves for summary judgment because, it argues, there "is no evidence of market-wide harm" in the broiler chicken market, which Agri Stats contends is "the sole putative market where there is a case or controversy before this Court." (Agri Stats' Mot. Summ. J. at 1, Sept. 17, 2025, Docket No. 392.) Agri Stats further argues that there "is no injunctive relief that this Court can fashion in relation to the other two markets"—pork and turkey—in which Plaintiffs allege anti-competitive conduct. (*Id.*)

Agri Stats bases its motion on three main arguments: (1) there is "no evidence that four of the six Agri Stats broiler chicken books . . . harmed competition in any way." and Plaintiffs have produced no evidence of market-wide harm to competition as to the remaining two broiler chicken books; (2) Plaintiffs' pork and turkey injunctive relief claims are moot because there is no evidence that Agri Stats could resume its pork and turkey reports, and (3) Plaintiffs have not presented any evidence of harm relating to Agri Stats' Express Markets, Inc. ("EMI") subsidiary. (Agri Stats' Supp. SJ at 15.)

The Court will deny Agri Stats' motion for summary judgment.  The Court finds that there remain numerous issues of material fact regarding whether Agri Stats' contracts with its customers—Plaintiffs' challenged restraint—had a substantial anticompetitive effect that harmed consumers in the relevant markets.  The Court will decline to allow Agri Stats to use its summary judgment as a pseudo-motion in limine through which it is trying exclude specific reports or evidence from trial.

### A.    Standards of Review

### 1.    Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### 2. Information Exchange Claims

Information exchange claims are analyzed under the rule of reason: a three-step, burden-shifting framework designed to ascertain a challenged practice's "actual effect" on market-wide competition. *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018) ("*Amex*").

In the first step, Plaintiffs bear the "burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Id*. at 541. Plaintiffs can satisfy the first step in one of two ways: (1) by producing "[d]irect evidence of anticompetitive effects," meaning "proof of actual detrimental effects on competition, such as reduced output, increased prices, or decreased quality in the relevant market," **or** (2) by presenting "[i]ndirect evidence," meaning "proof of market power plus some evidence that the challenged restraint harms competition." *Amex*, 585 U.S. at 542 (cleaned up).

"If the plaintiff carries its burden, then [in the second step,] the burden shifts to the defendant to show a procompetitive rationale for the restraint." *Id.* at 541. "If the defendant makes this showing, then [in the third and final step,] the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Id.* at 542.

### B.    Broiler Chicken Books

Agri Stats produces six main reports (or "books") related to broiler chickens.  For four of the six books—related to production[5]—Agri Stats moves for summary judgment "because Plaintiffs have adduced no evidence" that these reports "harm competition" since they do not include any price information and the reports were not empirically addressed by Plaintiffs' expert.  (Agri Stats' Supp. SJ at 16.)  For the remaining two broiler chicken books—related to sales[6]—Agri Stats argues that evidence produced by Plaintiffs does not support a finding of substantial harm to competition.

But while Agri Stats' books are an element of Plaintiffs' case, the Court finds that considering these books in isolation is inappropriate at this stage.  Considering just the reports in the absence of all of the other evidence Plaintiffs have gathered with respect to Agri Stats' conduct would be akin to the dismemberment the Supreme Court warned against in *Continental Ore Company* when it cautioned that the "character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but

---

[5] These four books include: Live or Live Production (provides "efficiency metrics related to growing live animals), Processing (provides "efficiency metrics related to processing meat"), Operations Profit (outlines "profit margins for the production process"), and Bottom Line (describes "overall customer profitability").  (Agri Stats' Slides from Jan. 13, 2026 Motion Hearing at 9; *see also* Agri Stats' Supp. SJ at 4.)

[6] These two books include: Customer Sales ("prices for particular products compared to nationwide averages") and Express Sales ("plant prices for all products compared to hypothetical price if other plants produced the same mix").  (Agri Stats' Slides from Jan. 13, 2026 Motion Hearing at 9; Agri Stats' Supp. SJ at 4.)

only by looking at it as a whole." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (cleaned up); *see also Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1207–08 (8th Cir. 1982) (rejecting the defendants' attempts to "[p]iece by piece . . . explain away the record evidence").

Plaintiffs' Complaint alleges that "[b]y design, Agri Stats focuses on raising industry-wide profitability of the meat industries it services, which can harm competition." (Second Am. Compl. ¶ 4, Nov. 15, 2023, Docket No. 50.) Plaintiffs have explained in their briefing and at oral argument that as part of the alleged conspiracy, Agri Stats' provided its customers, meat processors, information such as data on competitors' costs, supplies, and pricing through "a variety of methods (not just reports)." (Pls.' Opp. SJ at 1.) For example, in addition to the six books, Agri Stats creates other weekly and monthly reports. (*See, e.g.*, Congdon Decl., Ex. 17.) In addition, Plaintiffs have presented evidence that Agri Stats' staff provided information about competitor activity through phone calls, emails, and face-to-face meetings. (*See, e.g.*, *id.*, Ex. 18.)

Plaintiffs have further provided evidence that Agri Stats' contracts with its customers were not written agreements but were, in fact, mostly "handshake" deals. (*Id.*, Ex. 6 (Snyder Dep. at 272:18–273:11).) Thus, it is unclear at this stage exactly how much of the information provided to meat producers was in the six main reports, whether this information overlapped with other information provided by Agri Stats, and what role the

reports played in helping producers maximize their profitability to restrain, rather than promote, competition.

The Court finds that there remain several genuine issues of material fact on how the data in the reports were used by Agri Stats customers—particularly in combination with data not in the reports.  Moreover, excluding evidence of the information contained in these reports would make any trial involving Agri Stats' conduct unmanageable, given the sheer volume of disputes that would inevitably arise over whether particular evidence did or did not originate from the reports.

The Court will, therefore, deny Agri Stats' summary judgment motion with respect to the broiler chicken books.

### C.   Pork and Turkey Reports

Agri Stats moves for summary judgment as to Agri Stats' pork and turkey reports because these reports have been discontinued, arguing that Plaintiffs have not presented sufficient evidence that Agri Stats could resume them.

"To satisfy the case-or-controversy requirement, a plaintiff seeking injunctive relief to guard against future unlawful conduct must be under a 'real and immediate threat of injury.'" *Brazil v. Arkansas Dep't of Hum. Servs.*, 892 F.3d 957, 960 (8th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)).  "In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm." *Park v. Forest Serv. of United States.*, 205 F.3d 1034, 1037 (8th Cir. 2000) (citing *Lyons*, 461 U.S. at 101–05).

-19-

Under the voluntary cessation doctrine, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). While the voluntary cessation doctrine may not apply "if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated[,]" a defendant's "burden is a heavy one." *United States v. W. T. Grant Co.,* 345 U.S. 629, 633 (1953) (internal quotation marks omitted).

Agri Stats claims that it has no intention to revive the pork and turkey reports. But Plaintiffs present evidence to the contrary including testimony from Agri Stats' CEO that he has probed customers on their interest in receiving these reports, that Agri Stats has budgeted for the resumption of reports, and that executives have identified potential customers if it resumed the reports. (*See* Pls.' Opp. SJ at 39–40 (listing evidence).)[7] In addition, Agri Stats maintains contact with potential customers for these reports: some of their broiler chicken customers also process pork or turkey, and Agri Stats has its employees attend pork or turkey industry-specific events. (*Id.*)[8]

The Court is also unpersuaded by Agri Stats' argument that even if "Plaintiffs established Agri Stats' *desire* to relaunch pork or turkey reports, that would not create a

---

[7] (*See also* Congdon Decl., Ex. 6 (Snyder Dep. at 83:584:12); *id.*, Ex. 66 at 2; *id.*, Ex. 45; *id.*, Ex. 67.

[8] (*See also* Congdon Decl., Ex. 6 (Snyder Dep. at 88:1089:15).)

justiciable case or controversy" because there is no evidence that Agri Stats would or could resume.  (Agri Stats' Supp. SJ at 26–27 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)).)  The Court finds that in the absence of pending or threatened litigation, Agri Stats would have incentive to resume producing the reports and so would the producers, who serve as Agri Stats' customers and data sources.

Because the Court finds that Plaintiffs have presented sufficient evidence that Agri Stats could and, given the opportunity, would resume producing pork and turkey reports, the Court will deny Agri Stats' motion for summary judgment on this ground.

### D.    EMI

Finally, Agri Stats moves for summary judgment on Plaintiffs' claims against EMI because, it argues that "it would be inefficient and waste the resources of the parties and the Court to include EMI" in a trial as there is "no record evidence that EMI has caused any competitive harm in any relevant market."  (Agri Stats' Supp. SJ at 27, 28.)

It appears to the Court that Agri Stats is trying a back-door method to exclude certain types of evidence related to EMI or to limit injunctive relief applicable to EMI.  But, because Plaintiffs have evidence that Agri Stats and EMI sold their services together, it is possible that a restriction on EMI-related testimony could improperly hinder Plaintiffs' case.

The Court will, therefore, deny Agri Stats' motion for summary judgment with respect to Plaintiffs' claims against EMI.  The Court can, if appropriate, address at the motions in limine stage whether to exclude any specific evidence related to EMI.  Then,

after trial—once all the evidence has been presented—the Court will determine which terms or parties should be included if and when any injunctive relief is granted.

## CONCLUSION

The Court will deny the parties' motions to exclude because the disputed expert testimony presented by the parties is relevant and the proposed evidence is sufficiently reliable.  Because numerous fact issues remain, the Court will deny Agri Stats' motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Agri Stats, Inc.'s Motion to Exclude Expert Testimony (Docket No. [370]) is **DENIED**;

2. Defendant Agri Stats, Inc.'s Motion for Summary Judgment (Docket No. [392]) is **DENIED**; and

3. Plaintiffs' Motion to Exclude Expert Testimony (Docket No. [400]) is **DENIED**.


DATED: February 24, 2026          _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                    United States District Judge