UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> STATE OF CALIFORNIA, <br> STATE OF NORTH CAROLINA, <br> STATE OF TENNESSEE, <br> STATE OF MINNESOTA, <br> STATE OF TEXAS, and <br> STATE OF UTAH, <br><br> Plaintiffs, <br><br> v. <br><br> AGRI STATS, INC., <br><br> Defendant. | Civil No. 23-3009 (JRT/JFD) <br><br><br> **MEMORANDUM OPINION & ORDER ADDRESSING AGRI STATS, INC.'S SEVENTH AMENDMENT ARGUMENTS AND SETTING TRIAL DATE** |

Plaintiffs, the United States of America, and the States of California, North Carolina, Tennessee, Minnesota, Texas, and Utah (collectively "Plaintiffs") filed their complaint against Agri Stats, Inc. in September 2023 alleging an information exchange conspiracy with major broiler chicken, turkey, and pork processors in the United States. The action was filed after a series of private antitrust class action lawsuits including *In re Broiler Chicken Antitrust Litigation*, Civil No. 16-8637 (N.D. Ill.), *In re Turkey Antitrust Litigation*, Civil No. 19-8318 (N.D. Ill.), and *In re Pork Antitrust Litigation*, Civil No. 18-1776 (D. Minn.).

*United States v. Agri Stats* and *In re Pork* are both before the Court and are both ready for trial.[1]  Agri Stats has submitted argument to the Court that scheduling a bench trial in *United States v. Agri Stats* before a jury trial in the separate but related case *In re Pork* would violate its Seventh Amendment right to a jury trial.  The Court disagrees and concludes that allowing the *Agri Stats* trial to proceed first does not raise constitutional concerns.  The Court will, therefore, set trial in *United States v. Agri Stats* for May 4, 2026.

## DISCUSSION

The Seventh Amendment guarantees "the right of trial by jury."  U.S. Const., amend. VII.  Agri Stats argues that allowing a bench trial to proceed in *United States v. Agri Stats* prior to a jury trial in *In re Pork* would violate its jury-trial right because the two cases include a common party (Agri Stats) and may include common issues that could be decided without the benefit of a jury.[2]

After considering the existing relevant case law, the Court finds that allowing the bench trial in *United States v. Agri Stats* to proceed prior to a jury trial in *In re Pork* is

---

[1] The Court contemporaneously issues an opinion and order denying Agri Stats' pending summary judgment motion.

[2] As the Supreme Court explained in *Parklane Hosiery Co. v. Shore*, "[u]nder the doctrine of collateral estoppel . . . [a] second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."  439 U.S. 322, 326 n. 5 (1979).  **Defensive use of collateral estoppel** is when a plaintiff asserts "a claim that the plaintiff has previously litigated and lost against another defendant." *Id.* at 322.  **Offensive use of collateral estoppel** is when a plaintiff seeks to foreclose a defendant "from litigating an issue that the defendant has previously litigated unsuccessfully in an action with another party[.]" *Id.*

consistent with the Supreme Court's holdings in *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959); *Katchen v. Landy*, 382 U.S. 323 (1966); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979); and *Perttu v. Richards,* 605 U.S. 460 (2025); the Eighth Circuit's reasoning in *Perkins v. Spivey*, 911 F.2d 22 (8th Cir. 1990); and the statutory scheme for antitrust enforcement put in place by Congress.

### A.     Relevant Case Law

#### 1.     U.S. Supreme Court Cases

Agri Stats's Seventh Amendment argument relies primarily on *Beacon Theatres*, in which the Supreme Court established the general rule that when "suits . . . contain both legal and equitable claims . . . judges may not resolve equitable claims first if doing so could prevent legal claims from getting to the jury." *Perttu*, 605 U.S. at 471 (citing *Beacon Theatres*, 359 U.S. 500). *Beacon Theatres* involved a dispute between two movie theaters, which raised both equitable and legal claims. 359 U.S. at 503. The district court permitted the equitable claims to be tried first "even though this might, through collateral estoppel, prevent a full jury trial of the counterclaim and cross-claim[.]" *Id*. at 505. The Supreme Court, rejecting several aspects of the district court's analysis, held that "the use of discretion by the trial court under Rule 42(b) to deprive Beacon of a full jury trial on its counterclaim and cross-claim, as well as on [plaintiff's] plea for declaratory relief," violated Beacon's Seventh Amendment rights. *Id.* at 508. The Court emphasized that under "the Federal Rules the same court may try both legal and equitable causes in the same action" so "the issues between these parties could be settled in one suit giving

Beacon a full jury trial of every antitrust issue." *Id*. The *Beacon Theatres* Court concluded that:

> If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial.

*Id.* at 510 (internal footnote omitted).

Twenty years later, the Court narrowed the holding of *Beacon Theatres* in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322. In *Parklane*, Stockholders brought a class action against Parklane Hosiery, including claims related to a "materially false and misleading proxy statement in connection with a merger." *Id.* at 324. Before that private action went to trial, the Securities and Exchange Commission (SEC) brought a case against the same defendants, arising from the same alleged false statement. *Id.* The SEC case was tried in district court first, and that court "found that the proxy statement was materially false and misleading in the respects alleged, and entered a declaratory judgment to that effect." *Id.* at 325. The private plaintiffs then sought partial summary judgment against Parklane Hosiery, on the grounds that Parklane was collaterally estopped from litigating certain issues that had been decided in the SEC action. *Id.* "The District Court denied the motion on the ground that such an application of collateral estoppel would deny the

-4-

petitioners their Seventh Amendment right to a jury trial." *Id.* The Second Circuit reversed, and the Supreme Court affirmed the judgment of the Court of Appeals. *See id.*

In holding that "an equitable determination **can** have collateral-estoppel effect in a subsequent legal action and that this estoppel does not violate the Seventh Amendment[,]" *id.* at 334–35 (emphasis added), the Supreme Court described the *Beacon Theatres* case as establishing "no more than a general prudential rule" guiding that "when legal and equitable claims are joined **in the same action**, the trial judge has only limited discretion in determining the sequence of trial." *Id.* at 334 (emphasis added).[3]

In noting that "*Beacon Theatres* . . . enunciated no more than a general prudential rule," the *Parklane* Court also reaffirmed the holding of *Katchen v. Landy*, 382 U.S. 323 (1966), that "a bankruptcy court, sitting as a statutory court of equity, is empowered to adjudicate equitable claims prior to legal claims, even though the factual issues decided in the equity action would have been triable by a jury under the Seventh Amendment if the legal claims had been adjudicated first." *Parklane*, 439 U.S. at 334–35; *see also Katchen v. Landy*, 382 U.S. at 339–40.

---

[3] Agri Stats repeatedly argued in its briefing and at oral argument that "*Parklane Hosiery* merely holds that decisions in bench trials may have a preclusive effect in *subsequent* legal actions without violating the Seventh Amendment" but that a single court sequencing a jury and bench trial has no discretion in their order in view of *Beacon Theatres*. (Agri Stats' Letter at 3–4, Dec. 30, 2025, Docket No. 460.) The Court notes that Agri Stats' argument is inconsistent with the Supreme Court's characterization in *Parklane,* where it stated "[b]oth *Beacon Theatres* and *Dairy Queen* recognize that there might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim." 439 U.S. at 335 (quoting *Katchen v. Landy*, 382 U.S. at 339–40).

The Supreme Court addressed this line of cases most recently in *Perttu v. Richards,* holding that a party is entitled to a jury trial on Prison Litigation Reform Act (PLRA) exhaustion—an equitable claim—when that dispute was intertwined with the merits of an underlying suit about prison conditions. 605 U.S. 460. *Perttu* states that "*Beacon Theatres* should be read 'expansively,' applying to any claim triable by a jury even 'in a suit in which the basic relief sought is equitable.'" *Id.* at 471–72(quoting 9 Fed. Prac. & Proc. Civ. § 2302.1 (4th ed.))  But, as in *Beacon Theatres*, the case before the Supreme Court in *Perttu* included "both legal and equitable issues . . . presented in a single case." 9 Fed. Prac. & Proc. Civ. § 2302.1 (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 (1962)).

### 2. Eighth Circuit

The Eighth Circuit considered these issues in *Perkins v. Spivey* when it addressed whether the Seventh Amendment prevented Spivey, who was not a party to a prior judgment, from nevertheless using that judgment defensively to prevent relitigation of issues by Perkins in a subsequent suit. 911 F.2d 22. The Eighth Circuit held that the Seventh Amendment did not prevent the application of collateral estoppel.

> Not only did Perkins fully litigate her Title VII claim in [the initial bench trial], but Perkins conceded during oral argument that the ensuing findings of fact resolved all relevant factual disputes in her claim against Spivey. Because Perkins had a full and fair opportunity to litigate her claims of harassment and assault in her Title VII suit, she is collaterally estopped from relitigating these fact issues in her subsequent action against Spivey.

*Id.* at 35. The Eighth Circuit further clarified that *Beacon Theatres* was "inapposite" because the two cases Perkins had brought (one with a legal claim against Spivey and one with an equitable claim against a third party) were "not joined in the same action." *Id.* at 34.

**B.   Analysis**

For three primary reasons, the Court concludes that it may exercise its discretion to schedule the bench trial in *United States v. Agri Stats* before the jury trial in *In re Pork*.

**First**, as the Supreme Court said in *Parklane*, "*Beacon Theatres* . . . enunciated no more than a general prudential rule," which applies specifically to instances involving the same parties where the legal and equitable causes could be joined in one suit. 439 U.S. at 334. While the Supreme Court subsequently said that *Beacon Theatres* should be read "expansively," *see Perttu*, 605 U.S. at 471, the Court did not say that it should be read so expansively as to restrain the Court's discretion in scheduling trials in different litigations, involving different parties and different claims.

While there is no doubt that the two cases at issue here are related, the parties are not the same. The plaintiffs in *United States v. Agri Stats* and in *In re Pork* are completely distinct. And while Agri Stats is a defendant in both cases, Agri Stats is only one of many defendants in *In re Pork*.

Agri Stats' concern with the ordering of trials appears to be that a private plaintiff in *In re Pork* will assert collateral estoppel to prevent relitigation of an issue decided unfavorably to Agri Stats in *United States v. Agri Stats*. But the holdings of *Parklane* and

*Perkins v. Spivey* are clear—even if this scenario did occur, it would not run afoul of the Seventh Amendment.

**Second**, the Court finds that there is "a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury." *Katchen v. Landry*, 382 U.S. at 339.[4]  The United States brought this action "pursuant to Section 4 of the Sherman Act, 15 U.S.C. § 4, to prevent and restrain Agri Stats from violating Section 1 of the Sherman Act, 15 U.S.C. § 1." (Second Am. Compl. ¶ 152, Sept. 28, 2023, Docket No. 50.)  Section 4 of the Sherman Act[5] vests district courts with "jurisdiction to prevent and restrain violations of . . . this title" and states that "it shall be the duty of the several United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings . . . ."  15 U.S.C. § 4.  Once the parties are notified "the court shall proceed, **as soon as may be**, to the hearing and determination of the case." *Id.* (emphasis

---

[4] Agri Stats argues that [s]ubsequent cases . . . have abandoned" the reasoning "that *Beacon Theatres* does not apply when there is 'a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury.'" (Agri Stats Reply Letter at 4, Jan. 8, 2026, Docket No. 462 (quoting Pls.' Letter at 6).). Specifically, Agri Stats cites to Justice White's dissent in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 72 (1989) ("Though the Court professes not to overrule [*Katchen*], . . . there is simply no way to reconcile our decision in *Katchen* with what the Court holds today."). But in *Granfinanciera*, the Supreme Court was parsing whether "a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." *Id.* at 36. The Court held that such a person was entitled to a trial by jury. *Id.* The majority opinion declined to overrule *Katchen* and did not address at all whether a party is entitled to a jury trial in a completely separate case.

[5] 15 U.S.C. §§ 1–7.

added).  To the extent *Beacon Theatres* governs the Court's decision here, it still contemplates a degree of discretion to decide "whether the legal or equitable cause should be tried first." 359 U.S. at 510.  The Sherman Act appears to weigh strongly in favor of the Court using its discretion to permit the government Plaintiffs' claims to proceed to trial first.[6]

**Third**, common sense dictates that a government action to enforce an antitrust violation should not be required to be postponed until after the completion of a private action, even if the private action was filed first.  In this instance, Agri Stats is one among many defendants in *In re Pork*, and multiple classes of plaintiffs have been certified in that action as well.  Since it is unclear exactly which issues Agri Stats believes are common between the two cases, it is unclear how long Agri Stats believes the Plaintiffs' case would need to be delayed—until after the first jury trial, or the second, or the third?  Perhaps longer?  Such an indefinite delay cannot be in the interests of justice.

---

[6] The Clayton Act, 15 U.S.C. §§ 12–27, also supports the Court exercising its discretion to try the Plaintiffs' claims first:

> A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto[.]

15 U.S.C. §§ 16(a).

The Court does acknowledge that delayed private enforcement can, in some instances, delay victim compensation, a key goal of antitrust enforcement. Nevertheless, the Court determines that allowing the Plaintiffs' case to proceed first will facilitate the enforcement of the antitrust laws against all defendants in these information exchange conspiracies.

## CONCLUSION

Because the Court finds that scheduling a bench trial in *United States v. Agri Stats* prior to a jury trial in *In re Pork* is within its discretion, a trial in *United States v. Agri Stats* will be set for May 4, 2026.[7] The Court will schedule a status conference to address the pretrial schedule and other trial-related logistics.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the parties in *United States v. Agri Stats* shall prepare for a trial to begin on May 4, 2026.

DATED: February 24, 2026            _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                       United States District Judge

---

[7] The trial for parties of *In re Pork* will be delayed and the timing of that trial will be addressed in a separate order.