**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

UNITED STATES OF AMERICA;
STATE OF CALIFORNIA;
STATE OF NORTH CAROLINA;
STATE OF TENNESSEE;
STATE OF MINNESOTA;
STATE OF TEXAS; and
STATE OF UTAH,

Plaintiffs,

v.

AGRI STATS, INC.,

Defendant.

Civil No. 23-3009 (JRT/JFD)

**FINAL JUDGMENT**

---

WHEREAS, Plaintiff, United States of America filed a Complaint on September 28, 2023, which was joined by the States of California, Minnesota, North Carolina, Tennessee, Texas, and Utah (collectively, the "Plaintiff States") on November 6, 2023, and November 15, 2023;

AND WHEREAS, the United States, Plaintiff States, and Defendant, Agri Stats, Inc., have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

AND WHEREAS, Agri Stats agrees to undertake certain actions to remedy the loss of competition alleged in the Complaint;

AND WHEREAS, Agri Stats represents that the relief required by this Final Judgment can and will be made and that Agri Stats will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment, except as set forth in Paragraph XII.A;

NOW THEREFORE, **it is ORDERED, ADJUDGED, AND DECREED**:

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this action under Section 4 of the Sherman Act, 15 U.S.C. § 4, and 28 U.S.C. §§ 1331, 1337(a), and 1345, and has personal jurisdiction over each of the parties to this action. The Complaint states claims upon which relief may be granted against Agri Stats under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II. DEFINITIONS

As used in this Final Judgment:

A. "Agri Stats" means Agri Stats, Inc., an Indiana company with its headquarters in Fort Wayne, Indiana, its successors and assigns, and its subsidiaries (including EMI), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B. "Agri Stats Report" means a compilation of data or information derived from the Non-Public Information of one or more Information Contributors.

C. "Book" means a compilation of Agri Stats Reports that relate to a common aspect of Meat Processing operations, which Agri Stats groups together and sells as a single package (*e.g.*, the Live, Processing, Operations Profit, Bottomline, and Sales).

D. "Business Unit" means a group of Complexes that represent the whole or some portion of a Meat Processing operation. For example, and without limitation, a Business Unit may include (i) a group of Complexes treated as one integrated operation because they all produce products in the same sales channel, or (ii) multiple Complexes performing different operations (hatching, grow out, processing), which are associated together.

E. "Complex" means a standalone facility engaged in one or more aspects of Meat Processing operations. For example, and without limitation, a Complex may be a hatchery, a feed mill, or a Meat Processing plant.

F. "Data Confidentiality" means the requirements of Paragraph VI.D (including all subparts), below.

G. "EMI" means Express Markets, Inc., a subsidiary of Agri Stats.

H. "EMI Price Reports" means the EMI publications that (1) Report nationwide (United States) broiler chicken prices by product category, (2) are compiled from actual invoice transactions sent electronically from Meat Processors to EMI, independent of data submissions sent to Agri Stats, and (3) EMI makes available for purchase by any Person.

I. "Flag" means the feature of an Agri Stats Report that reveals the number of Meat Processors, Business Units, or Complexes used in the calculation of a given metric. For example, a metric that reflects the average performance of 88 Complexes might include a "Flag" notation reflecting the number "88."

J. "including" means including but not limited to.

K. "Individual Information" means the Non-Public Information of any single Information Contributor (regardless of whether such information or data is anonymized), including information or data at the Complex-, Business Unit-, or Meat Processor-level, which is not aggregated or otherwise combined with the information or data of another Information Contributor.

L. "Information Contributor" means a Person that contributes its information or data to Agri Stats for use in Reporting by Agri Stats.

M. "Manuals" means the instructions, explanations, and calculations that are compiled by Agri Stats to assist any Person in understanding Reporting by Agri Stats.

N. "Meat Processing" means the business of transforming raw broiler chicken, pork, or turkey meat into consumable products. Meat Processing includes all aspects of such operations, including birthing or hatching, raising, feeding, slaughtering, eviscerating, cleaning, butchering, processing, deboning, further processing, packing, packaging, distributing, selling, and all related activities and the management of those activities. Meat Processing may occur at integrated facilities or independent facilities,

including feed mills, hatcheries, grow out farms, farrowing farms, and processing facilities.

O. "Meat Processor" means a Person (1) that is engaged in the business of Meat Processing, or (2) that has full or partial ownership or control of a Complex.

P. "Monitor" means the Person selected by the United States and appointed by the Court as described in Section VII.

Q. "Non-Public Information" means information or data provided to Agri Stats by one or more Information Contributor(s), which is not otherwise publicly available, including publicly available through Agri Stats Reports. Information or data based on Non-Public Information even if standardized, cleansed, or manipulated in other ways, is also Non-Public Information.

R. "Operations Profit Analysis" means the Book of Agri Stats Reports, in substantially the same form as exists in April 2026, relating to the overall profitability of a Meat Processing operation, which includes metrics related to Operations Profits Per Live Pound, Other Profit, Yielded Margin Over Processing ("YMOP"), Plant YMOP Variance Contributions, Sales Impact On Operations Profits, and Live Cost Impact On Operations Profits.

S. "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, or other legal entity.

T. "Report" or "Reporting" means to publish, disclose, disseminate, circulate, provide, transfer, discuss, send, or exchange information or data by any means including orally (*e.g.*, telephone communications, video communications, meetings, interviews, voicemails, audio recordings), electronically (*e.g.*, electronic communications, emails, text messages, data or information downloads, dashboard, databases, or structured data access), or by writing (*e.g.*, written or computer compiled reports, correspondence, graphs, facsimiles).

U. "Run" means a version of an Agri Stats Report or Book compiled from the Non-Public Information of a subset of Meat Processors, Business Units, or Complexes that share a common characteristic (*e.g.*, a small bird Run may include Complexes that primarily process small birds).

V. "Sales Data" means Non-Public Information regarding amounts charged or paid for broiler chicken, pork, or turkey products sold in the United States, including aggregated calculations, averaged calculations, statistical calculations, or distributive calculations.

W. "Sales Report Books" means Agri Stats' Express Sales and Customer Sales Books, in substantially the same form as exists in April 2026, containing Sales Data and other information.

## III. APPLICABILITY

This Final Judgment applies to Agri Stats, as defined above, and all other Persons in active concert or participation with Agri Stats who receive actual notice of this Final Judgment.

## IV. PROHIBITED CONDUCT

**A. Restrictions on Sales Reporting.**

1. Agri Stats must cease offering its Sales Report Books. Except as permitted for EMI below, Agri Stats must not Report any Sales Data, regardless of whether such Sales Data is anonymized, except that Agri Stats is not prohibited by this Final Judgment from (a) Reporting calculations provided in the Operations Profit Analysis (which must otherwise conform to the terms of this Final Judgment) and (b) Reporting to an Information Contributor its own Individual Information, which may contain that Information Contributor's own Sales Data.

2. Except as permitted for EMI below, Agri Stats must not receive or maintain any Sales Data, except for use (a) by Agri Stats' audit team for calculations in the Operations Profit Analysis (which must otherwise conform to the terms of this Final Judgment) and (b) for Reporting to an Information Contributor its own Individual Information. Except as permitted for EMI below, any Sales Data Agri Stats receives in compliance with this Paragraph must not identify the purchaser of the product (whether by name or through use of a customer identification field) and must not be accessible by Agri Stats account managers.

**B. Restrictions on Non-Sales Reporting.**

All Reporting by Agri Stats involving Meat Processing in the United States and that is not otherwise prohibited by this Final Judgment, including Paragraph IV.**Error! Reference source not found.**, must conform to the following requirements, except as otherwise set forth in this Final Judgment:

1. Prohibition on Participant Lists. Agri Stats must not Report or otherwise reveal the identity of any Information Contributor; Agri Stats is not prohibited by this Final Judgment from Reporting an estimated percentage of the production volume in a given protein captured by a given Agri Stats Report.

2. Prohibition on Rankings. Agri Stats must not Report any Information Contributor's ranking(s), including at the Meat Processor-, Business Unit-, or Complex-level, in any given metric.

3. Prohibition on Flags. Agri Stats must not Report any "Flags."

4. Prohibition on Reporting Individual Information. Agri Stats must not Report any Individual Information, except as explicitly provided for below in Paragraphs IV.B.4.a through IV.B.4.d and Section V.

a. Information Contributor Data. Agri Stats may Report to an Information Contributor that Information Contributor's own Individual Information, as well as the quartile(s) in which the Information Contributor falls relative to that Agri Stats Report.

b. Aggregated Data. Agri Stats may Report aggregated data that sums data from multiple Information Contributors in an Agri Stats Report, subject to any Data Confidentiality restrictions in Paragraph VI.D.1 of this Final Judgment.

c. Statistical Data. Agri Stats may Report statistical averages (including weighted averages) that are calculated from the data of multiple Information Contributors in an Agri Stats Report, subject to any Data Confidentiality restrictions in Paragraph VI.D.1 of this Final Judgment.

d. Distribution Data. Agri Stats may Report average data values for the Information Contributors within each quartile of the data provided by multiple Information Contributors in an Agri Stats Report, so long as that average data value is subject to the Data Confidentiality for Quartile Reporting restrictions in Paragraph VI.D.2 of this Final Judgment.

5. Public Availability. Agri Stats must make all Reporting and Manuals available to any Person in the United States in compliance with the requirements of Paragraph VI.C (including all subparts).

## V. CONDUCT NOT PROHIBITED

A. Feed Formulation Information. Agri Stats is not prohibited by this Final Judgment from sharing anonymized Individual Information in the following Agri Stats Reports in substantially the same form as those Reports currently exist in Exhibit A: (i) Broiler Breeder Section Reports 1.11, 1.12, 1.19, and 1.20 and Broiler Live Feed Formulation Section Reports 5.1 to 5.15, except that with respect to the Broiler Breeder

Section Reports the Individual Information in such Agri Stats Reports must not include pullet weights, feed owner variance, percent egg production, percent hatchability, males per 100 females, percent males, percent mortality, average age, bird weight, bird weight range, bird age, beginning age, or days fed; (ii) Swine Live Pig Production Section Reports 1.8, 1.9, 1.10, and 1.11 and Nursery Section Reports 5.9, 5.14, 5.15, 5.16, and 5.17, except that with respect to the Swine Live Pig Production Section Reports and Nursery Section Reports the Individual Information in the Agri Stats Reports must not include age, start age, start weight, finish age, finish weight, final weight, percent mortality, days in finish, percent in gilt pool, pigs weaned per litter, sow own cost, average litter weight, economic impact, placed weight, moved weight, days in nursery, age placed, weight placed, age moved, or weight moved; and (iii) Swine Live 3 Phase Finishing Section Reports 6.11, 6.12, 6.13, 6.26, 6.27, and 6.28; and Wean to Finish Section Reports 7.11, 7.12, 7.13, 7.26, 7.27, and 7.28, except that with respect to the Swine Live 3 Phase Finishing Section Reports and Wean to Finish Section Reports the Individual Information in the Agri Stats Reports must not include start weight, finish weight, final weight, start age, finish age, age, or days in finish. All other restrictions in this Final Judgment apply to the Agri Stats Reports identified in this Paragraph. Agri Stats must permit Processors, Business Units, or Complexes participating in the Agri Stats Reports identified in this Paragraph to independently determine whether their Individual Information will be Reported.

B. Performance Metrics. Agri Stats is not prohibited by this Final Judgment from limiting the sale of the broiler chicken and pork performance metrics listed in Exhibit B (or corresponding turkey and pork processing metrics should such Reporting resume) to Information Contributors. The metrics in this Paragraph are excepted only to the extent that they relate to animals that are no longer in production (e.g., Agri Stats must not restrict to Information Contributors data regarding animal stocking density for breeder hen flocks that are still producing eggs at the time of the Reporting). All other terms in this Final Judgment apply to such Reporting.

C. Agri Stats is not prohibited by this Final Judgment from continuing to publish weekly Agri Stats Reports containing feed, yield, and performance data that are otherwise not prohibited by this Final Judgment and such weekly Agri Stats Reports are subject to all provisions of this Final Judgment, including the Recency Restrictions in Paragraph VI.E.

D. Agri Stats is not prohibited by this Final Judgment from offering new or additional types of Reporting, provided that such Reporting incorporates corresponding restrictions as those set forth in this Final Judgment. Agri Stats must submit notice of any new Reporting (including examples of public Reporting and Information Contributor Reporting, as applicable) to the United States, the Monitor, and the Plaintiff States no fewer than sixty (60) days prior to the introduction of such Reporting. The Monitor will provide to Agri Stats, the United States, and the Plaintiff States any comments about the Reporting, including any opinion that the Reporting is prohibited by the terms of this Final

Judgment, within 30 days of receipt of Agri Stats' notice. For the avoidance of doubt, no new Reporting may be restricted or prohibited under this Final Judgment unless it is inconsistent with the terms set forth herein. Agri Stats is not prohibited by this Final Judgment from adding new average or quartile statistics based on data already included in existing Reporting without notice to the Monitor, so long as such average or quartile statistics comply with the Data Confidentiality standards set forth in Paragraph VI.D (including all subparts).

E. Notwithstanding the restrictions in Paragraph IV.**Error! Reference source not found.**.1 and IV.**Error! Reference source not found.**.2, the following applies to Agri Stats' subsidiary, EMI:

1. EMI is not prohibited by this Final Judgment from continuing to provide EMI Price Reports in substantially the same manner as it did as of April 24, 2026, but (1) such Reporting must continue to be made available to any interested party in the United States on terms that are no worse than those available to Meat Processors, and (2) EMI must not disclose in any manner the identities of the Persons that provide Sales Data for use in EMI Price Reports.

2. EMI is not prohibited by this Final Judgment from modifying the EMI Price Reports to add new or revised product categories so long as EMI meets all of the following conditions in Paragraph V.E.2.a (including all subparts):

a. Beginning 30 days after the Monitor agreement is finalized, and every six months thereafter, EMI must provide notice to the United States, the Monitor, and Plaintiff States identifying the product categories it intends to add to its EMI Price Reports.

i. For each product category EMI intends to add to its EMI Price Reports, EMI's notice to the United States, the Monitor, and Plaintiff States must include data sufficient to show that during the previous three months at least five Meat Processors produced products assigned to that product category, and no Meat Processor was responsible for more than 50 percent of the sales for that product category in the United States over that three month period. EMI's notice to the United States, the Monitor, and Plaintiff States must include the raw data underlying EMI's calculations and the identities and contact information of the Meat Processors that contributed to that data.

ii. For each product category EMI intends to add to its EMI Price Reports, EMI's notice to the United States, the Monitor, and Plaintiff States must include documents or information sufficient to show that EMI received requests to include the proposed product category in its EMI Price Reports from three meat purchasers that are not Meat Processors. Those non-Meat Processor meat purchasers may be current EMI customers or prospective EMI customers. EMI's notice to the United States, the Monitor, and Plaintiff States also must include contact information for each

non-Meat Processor meat purchaser from whom EMI received the requests. Unless the United States objects that such added product categories do not comply with this Final Judgment, EMI may publish the product categories identified pursuant to Paragraph V.E.2.a in its EMI Price Reports 30 days after providing notice. Objection by the United States need not be filed with the Court.

3. As an alternative to the provisions set forth in Paragraphs V.E.2.a.i and ii, EMI may, at any time, request and receive approval to add new product categories to its EMI Price Reports from the United States after recommendation from the Monitor.

4. Other than new product categories, which are subject to the requirements above, this Final Judgment does not prohibit EMI from modifying its EMI Price Reports to add new or revised Reporting statistics, provided that such newly revised statistics do not in any way compare Meat Processor prices (including individual processor price averages) to prices in EMI Price Reports, including through variances, economic impact statistics, or rankings.

5. EMI may only collect, receive, or maintain Sales Data for purposes of preparing the EMI Price Reports described in Paragraphs V.E and for no other purpose. Agri Stats (including EMI) may not use EMI Price Reports or the information and data underlying such Reports to reintroduce Agri Stats' Sales Report Books or to compare Meat Processor prices (including individual processor price averages) to prices in EMI Price Reports, including through variances, economic impact statistics, or rankings. For the

avoidance of doubt, Agri Stats will not provide price opportunities or consulting to identify products for raising prices to Meat Processors using EMI Sales Data.

6. The Paragraphs in V.E are intended only to exempt EMI Price Reports from Paragraphs IV.**Error! Reference source not found.**.1 and IV.**Error! Reference source not found.**.2 of this Final Judgment while ensuring that EMI does not become a vehicle for the reintroduction of Agri Stats' Sales Report Books.

7. During the Term of this Final Judgment, EMI must provide at least 30 days' notice to the United States, the Monitor, and the Plaintiff States before it expands its EMI Price Reports to include U.S. turkey or pork products. All provisions of this Final Judgment apply to any Reporting of those products; provided, however, that Agri Stats may submit for approval by the United States in its sole discretion, concurrently with providing notice to the Monitor and the Plaintiff States, a proposal for alternatives to the restrictions in Paragraphs V.E.2.a.i-ii in light of market differences for those products.

## VI. REQUIRED CONDUCT

A. Agri Stats must not Report any Non-Public Information collected from an Information Contributor other than as expressly permitted in this Final Judgment.

B. Agri Stats is not prohibited by this Final Judgment from renumbering or reordering its Agri Stats Reports or data fields, provided doing so does not cause such Reports or data fields to violate this Final Judgment. Agri Stats must keep detailed records, available to the United States, the Monitor, and the Plaintiff States at their

request, at any time, cataloguing any renumbering or reordering of its Agri Stats Reports or data fields.

C. Agri Stats must comply with the following provisions related to making its Reporting available for purchase by non-Meat Processor Persons in the United States.

1. The first time any non-Meat Processor Person seeks to purchase any Agri Stats Report, Agri Stats must offer to sell any monthly general Run of any Agri Stats Report for a single month at the average monthly rate for a single-plant Meat Processor.If the non-Meat Processor Person purchases a general Run of an Agri Stats Report, Agri Stats must also offer to sell any monthly specialty Run of that Agri Stats Report for that same month.After that initial purchase by the non-Meat Processor Person, Agri Stats may require it to purchase annual subscriptions pursuant to Paragraphs VI.C.2.

2. Other than as described in Paragraph VI.C.1, Agri Stats must make annual subscriptions to all Reporting and Manuals available to all Persons in the United States or doing business in the United States. Consistent with Agri Stats' policy with respect to Meat Processors, if a non-Meat Processor Person purchases the general Run, that Person also may purchase one or more specialty Runs. Non-Meat Processor Persons also may choose to limit their subscriptions to particular Books. Agri Stats must not require non-Meat Processor Persons to purchase more Reporting or Manuals than it requires Meat Processors to purchase.

3. For the duration of this Final Judgment, Agri Stats must not charge a non-Meat Processor Person for its Reporting and Manuals more than the average price as of the day of purchase that Agri Stats charges single-plant Meat Processors for the same Reporting and Manuals on a Book-by-Book or Run-by-Run basis. For example, if single-plant Meat Processors pay an average price of $1,500 per month for the general Run of the Live/Growout general Run Book, Agri Stats must charge a non-Meat Processor Person no more than $1,500 per month for the Live/Growout general Run Book or $18,000 for an annual subscription.

4. Agri Stats must not attach non-price terms or prices or use any other means to discourage or prevent non-Meat Processor Persons from purchasing its Reporting, except that Agri Stats may impose reasonable restrictions on the disclosure of any Reporting. Agri Stats also may impose nondiscriminatory limitations on the use of any Reporting, including: (a) prohibitions on de-identifying Agri Stats Reports, and (b) prohibitions on use of Agri Stats Reports to reverse-engineer or otherwise develop a competing benchmarking service. For the avoidance of doubt, Agri Stats will not apply non-price terms for non-Meat Processors that are less favorable in any way than those terms Agri Stats applies for Meat Processors.

5. Agri Stats may not require non-Meat Processor Persons to contribute data or condition the purchase of any Reporting by Agri Stats on a requirement to purchase any other Agri Stats product or service. Agri Stats may require Meat Processors

to contribute data as a condition of the purchase of any Reporting by Agri Stats. Agri Stats must publicize in a conspicuous manner on its website that its Reporting and Manuals are available for purchase by any Person in the United States.

D. Data Confidentiality. All Reporting by Agri Stats involving Meat Processing located in the United States and which is not otherwise prohibited by this Final Judgment must conform to the following requirements:

1. Data Confidentiality Restrictions. For all Agri Stats Reports consisting of data reflecting 50 percent or more of the United States sales for the protein segment that is the subject of the specific Run, Agri Stats must ensure that all Aggregated Data and Statistical Data values consist of data from at least three Meat Processors with no Meat Processor representing more than 70% of the data reflected in the Agri Stats Report, except as stated in Paragraph VI.D.2.

2. Data Confidentiality Restrictions for Quartile Reporting. For all Agri Stats Reports consisting of data reflecting 50 percent or more of the United States sales for the protein segment that is the subject of the specific Run, Agri Stats must ensure that a quartile average is calculated from at least 3 Complexes in each quartile.

E. Recency Restrictions. Other than Agri Stats Reports of a Person's own data, Agri Stats must ensure that every data field in every Agri Stats Report is composed of data that is at least (i) cumulatively 45 days old on average, and (ii) in the case of data that reflects production decisions (*e.g.*, breeder chick placements), that the production

decision was made at least 90 days prior to Reporting. Data for a given month will not be included in an Agri Stats Report until the first day of the second month after the given month (*e.g.*, February data will not be included in an Agri Stats Report until April 1).

F. 30 days after entry of this Final Judgment, Agri Stats must send to the United States and the Plaintiff States the following:

1. Copies of all Agri Stats Reports as modified to comply with the terms of this Final Judgment;

2. A sworn statement describing all efforts to make Agri Stats Reports publicly available as required by Paragraph VI.C of this Final Judgment, including the identity and contact information of all current Agri Stats customers and known prospective non-Meat Processor customers from preceding three months;

3. Copies of all contracts with Agri Stats' customers (or, if no written contract exists for a customer, a summary of all material terms between Agri Stats and that customer);

4. A sworn statement describing in detail the steps Agri Stats has taken to implement an antitrust compliance program as required by Section VIII of this Final Judgment; and

5. Even if earlier than otherwise required by Paragraph V.E.2.a and its notice requirement, a list of all product categories Agri Stats intends to add to EMI Price Reports, consistent with the other requirements of Paragraph V.E.2.a.

## VII. APPOINTMENT OF MONITOR

A. Upon application of the United States, which Agri Stats may not oppose, the Court will appoint a Monitor selected by the United States in its sole discretion and approved by the Court. Within 30 calendar days after entry of the Stipulation and Order in this case, Agri Stats may propose to the United States a pool of three candidates to serve as the Monitor, and the United States may consider Agri Stats' perspectives on Agri Stats' three proposed candidates or any other candidates identified by the United States. The United States retains the right, in its sole discretion, either to select the Monitor from among the three candidates proposed by the Settling Defendants or to select a different candidate for the Monitor.

B. The Monitor will have the power and authority to monitor Agri Stats' compliance with the terms of this Final Judgment entered by the Court and will have other powers as the Court deems appropriate. The Monitor will have no responsibility or obligation for the operation of Agri Stats' business. No attorney-client relationship will be formed between Agri Stats and the Monitor.

C. The Monitor will have the authority to take such steps as, in the judgment of the Monitor and the United States, may be necessary to accomplish the Monitor's responsibilities. The Monitor may seek information from Agri Stats' personnel, including executives, in-house counsel, compliance personnel, and internal auditors. Agri Stats must establish a policy, annually communicated to all employees, that employees may disclose any information to the Monitor without reprisal for such disclosure. Agri Stats

must not retaliate against any employee or third party for disclosing information to the Monitor.

D. Agri Stats may not object to actions taken by the Monitor in fulfillment of the Monitor's responsibilities under any Order of the Court on any ground other than malfeasance by the Monitor except as set forth in Paragraph XII.A. Disagreements between the Monitor and Agri Stats related to the scope of the Monitor's responsibilities do not constitute malfeasance. Objections by Agri Stats must be conveyed in writing to the United States and the Monitor within 30 calendar days after Agri Stats learns of the Monitor's action that gives rise to Agri Stats' objection, or the objection is waived.

E. The Monitor will serve at the cost and expense of Agri Stats pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved by the United States in its sole discretion. If the Monitor and Agri Stats are unable to reach such a written agreement within 14 calendar days of the Court's appointment of the Monitor, or if the United States, in its sole discretion, declines to approve the proposed written agreement, the United States, in its sole discretion, may take appropriate action, including making a recommendation to the Court, which may set the terms and conditions for the Monitor's work, including compensation, costs, and expenses.

F. The Monitor may hire, at the cost and expense of Agri Stats, any agents and consultants, including attorneys and accountants, that are reasonably necessary in the

Monitor's judgment to assist with the Monitor's duties. These agents or consultants will be directed by and solely accountable to the Monitor and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved by the United States in its sole discretion. Within three business days of hiring any agents or consultants, the Monitor must provide written notice of the hiring, the identity of the agent or consultant, and the rate of compensation to Agri Stats and the United States.

G. The compensation of the Monitor and agents or consultants retained by the Monitor must be on reasonable and customary terms commensurate with the individuals' experience and responsibilities.

H. The Monitor must account for all costs and expenses incurred, including by submitting reports to the United States, the Plaintiff States, and Agri Stats on a regular basis. The frequency and details included in such reports will be determined as part of the Monitor's work plan, but must include time spent, work performed, and rates charged. Agri Stats' failure to promptly pay the Monitor's accounted-for costs and expenses, including for agents and consultants, will constitute a violation of this Final Judgment and may result in sanctions ordered by the Court. If Agri Stats make a timely objection in writing to the United States to any part of the Monitor's accounted-for costs and expenses, Agri Stats must establish an escrow account into which Agri Stats must pay the disputed costs and expenses until the dispute is resolved. For the avoidance of doubt,

Agri Stats retains the right under Section XI and Paragraph XII.A to seek relief from the Court if unable to resolve its objections with the United States and the Monitor regarding the Monitor's accounted-for costs and expenses.

I. Agri Stats must use best efforts to cooperate fully with the Monitor and to assist the Monitor in monitoring Agri Stats' compliance with its obligations under this Final Judgment. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges or court orders, Agri Stats must provide the Monitor and agents or consultants retained by the Monitor with full and complete access to all personnel (current and former), agents, consultants, information and data, books, records, and facilities. Agri Stats may not take any action to interfere with or to impede accomplishment of the Monitor's responsibilities.

J. Following Agri Stats' provision of the information set forth in Paragraph VI.F, the United States will determine whether Agri Stats' Reporting, customer agreements, and compliance program are compliant with the Final Judgment, address any deficiencies with Agri Stats, and, upon Agri Stats' compliance, inform the Monitor as to Agri Stats' compliance with the Final Judgment. The Monitor will monitor Agri Stats' Reporting, customer agreements, and compliance program to ensure that Agri Stats continues to be in compliance with the Final Judgment. For avoidance of doubt, this provision is not

intended to and does not limit the Monitor's power and authority to monitor Agri Stats' compliance with the terms of this Final Judgment.

K. The Monitor must investigate and report on Agri Stats' compliance with this Final Judgment, including reviewing and reporting on (1) Reporting by Agri Stats to determine compliance with, *e.g.*, Sections IV-VI; (2) data to determine compliance with, *e.g.*, Paragraphs IV.A.2, B.4.b-d; V.C; V.E.2, 5-7; and VI.D-E; (3) the identity of Agri Stats' customers to determine compliance with, *e.g.*, Paragraphs V.E.1 and VI.C; (4) the identity of Agri Stats' prospective, non-Meat Processor customers to determine compliance with, *e.g.*, Paragraph VI.C; and (5) Agri Stats' agreements and price and non-price terms offered to its customers and prospective customers (including non-Meat Processors seeking to purchase Agri Stats Reporting) to determine compliance with, *e.g.*, Paragraphs V.E.1; VI.C; and Section VIII. The Monitor should not repeat the initial review of Agri Stats information produced to the United States pursuant to Paragraph VI.F. The Monitor must provide periodic reports to the United States and the Plaintiff States setting forth Agri Stats' efforts to comply with its obligations under this Final Judgment. The United States, in its sole discretion, will set the frequency of the Monitor's reports, but, at minimum, the Monitor must provide reports annually.

L. Within 30 calendar days after appointment of the Monitor by the Court, and on a yearly basis thereafter, the Monitor must provide to the United States, the Plaintiff States, and Agri Stats a proposed written work plan. Agri Stats may provide comments

on the proposed written work plan to the United States and the Monitor within 14 calendar days after receipt, after which the Monitor must produce a final work plan to the United States and Agri Stats, for approval by the United States in its sole discretion. Any disputes between Agri Stats and the Monitor with respect to any written work plan will be decided by the United States in its sole discretion. The United States retains the right, in its sole discretion, to require changes or additions to a work plan at any time.

M. The Monitor will serve for a term of 7 years beginning on the date that the initial work plan is finalized pursuant to Paragraph VII.L unless the United States, in its sole discretion after consultation with the Plaintiff States, determines a shorter period is appropriate. Beginning three years from the date the initial work plan is finalized pursuant to Paragraph VII.L, the United States will determine in its sole discretion whether continuation of the Monitor's term is appropriate, or whether to suspend the remainder of the term. Factors that the United States will consider in that determination include:

1. Agri Stats' compliance with the terms of this Final Judgment;

2. Agri Stats' cooperation with the Monitor; and

3. Whether Agri Stats has retained a dedicated compliance officer to oversee its compliance with the Approved Compliance Program and annually certify its compliance to the United States and Plaintiff States for the remainder of the term of the consent decree.

N. If the United States determines that continuation of the Monitor's term is appropriate pursuant to Paragraph VII.M, it may determine that a reduced Monitor work plan is appropriate for the remainder of the Monitor's term.

O. If the United States determines that the Monitor is not acting diligently or in a reasonably cost-effective manner, or if the Monitor resigns or becomes unable to accomplish the Monitor's duties, the United States may recommend that the Court appoint a substitute.

## VIII. ANTITRUST COMPLIANCE PROGRAM

A. Within 30 days of entry of the Stipulation and Order, Agri Stats must submit a written antitrust compliance policy to the United States and Plaintiff States for approval by the United States in its sole discretion that complies with the obligations set forth in this Final Judgment. Agri Stats must annually train all United States employees on this written policy. At a minimum, the compliance program will include the following:

1. Data security measures to prevent Meat Processor employees who leave their employment from accessing their prior employer's Agri Stats Reports and Individual Information;

2. Data security measures to prevent Agri Stats employees who accept employment with a Meat Processor from accessing Non-Public Information of any Meat Processor other than the employee's new Meat Processor employer;

3. A prohibition on Agri Stats and its employees assisting with identifying Information Contributors and/or de-anonymizing Non-Public Information in Agri Stats Reports;

4. Publication of confidentiality language on all Reporting;

5. Whistleblower protections for any Person who reports to Agri Stats, the United States, the Monitor, or any of the Plaintiff States, any known or suspected violation of law or this Final Judgment;

6. Disciplinary consequences for violations of the antitrust compliance policy; and

7. Mandatory disclosure of violations or potential violations of this Final Judgment to the United States, Plaintiff States, and the Monitor, including the following information:

a. The date, time, location, and a description of the violation or potential violation;

b. All participants involved in the violation or potential violation; and

c. A description of any documents related to the violation, which Agri Stats must also produce to the United States and the Plaintiff States.

## IX. COMPLIANCE INSPECTION

A. For the purposes of determining or securing compliance with this Final Judgment or of related orders or of determining whether this Final Judgment should be

modified or vacated, upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, or any one of the Plaintiff States, and reasonable notice to Agri Stats, Agri Stats must permit, from time to time and subject to legally recognized privileges or court order, authorized representatives, including agents retained by the United States:

1. to have access during Agri Stats' business hours to inspect and copy, or at the option of the United States, to require Agri Stats to provide electronic copies of all Agri Stats Reports, books, ledgers, accounts, records, data, and documents, wherever located, in the possession, custody, or control of Agri Stats relating to any matters contained in this Final Judgment; and

2. to interview, either informally or on the record, Agri Stats' officers, employees, or agents, wherever located, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Agri Stats.

B. Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Agri Stats must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## X. PUBLIC DISCLOSURE

A. No information or documents obtained pursuant to any provision in this Final Judgment, including reports the Monitor provided to the United States and Plaintiff States pursuant to Paragraph VII.K, may be divulged by the United States and Plaintiff States or the Monitor to any person other than the Court, an authorized representative of the executive branch of the United States, or an authorized representative of the Plaintiff States; except in the course of legal proceedings to which the United States or a Plaintiff State is a party, including grand-jury proceedings; for the purpose of securing compliance with this Final Judgment; or as otherwise required by law.

B. In the event that the Monitor receives a subpoena, court order, or other court process seeking or requiring production of information or documents obtained pursuant to any provision in this Final Judgment, including reports the Monitor provides to the United States or the Plaintiff States pursuant to Paragraph VII.K, the Monitor must notify the United States, the Plaintiff States, and Agri Stats immediately and prior to any disclosure, so that Agri Stats may address such potential disclosure and, if necessary, pursue legal remedies, including, if deemed appropriate by Agri Stats, intervention in the relevant proceedings.

C. In the event of a request by a third party pursuant to the Freedom of Information Act, 5 U.S.C. § 552, or similar state disclosure laws for disclosure of information obtained pursuant to any provision of this Final Judgment, the United States will act in accordance with that statute and the Department of Justice regulations at 28

C.F.R. part 16, including the provision on confidential commercial information at 28 C.F.R. § 16.7, and the Plaintiff States will act in accordance with their applicable disclosure laws. When submitting information to the Antitrust Division, Agri Stats should designate those portions of the information or documents submitted that contain or constitute confidential commercial information under 28 C.F.R. § 16.7. Designations of confidentiality expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

D. If at the time that Agri Stats furnishes information or documents to the United States and Plaintiff States pursuant to any provision of this Final Judgment, Agri Stats represents and identifies in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Agri Stats marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States and the Plaintiff States must give Agri Stats 10 calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XI. RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, including as to Paragraph XII.A, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XII. ENFORCEMENT OF FINAL JUDGMENT

A. In developing and approving the annual Monitor work plans pursuant to Paragraph VII.L, the United States and the Monitor will reasonably consider Agri Stats' size, revenue, financial condition, and compliance with this Final Judgment, recognizing that Agri Stats' conduct and compliance with this Final Judgment will affect Monitor costs. On a yearly basis beginning thirty (30) days before the annual Monitor work plan is due, Agri Stats must provide the United States, Monitor, and Plaintiff States with an affidavit of financial condition, made under penalty of perjury, that includes annual operating revenue and costs for the preceding year for Agri Stats, including EMI. If at any time during the term of the monitorship the United States or Plaintiff State(s) determine that the monitorship has failed to secure Agri Stats' compliance with the terms of this Final Judgment or that Agri Stats has failed to use best efforts to cooperate fully with the Monitor and to assist the Monitor in monitoring Agri Stats' compliance with its obligations under this Final Judgment, then the United States or Plaintiff State(s) may move to seek additional relief.

B. The United States and Plaintiff States retain and reserve all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. In a civil contempt action, a motion to show cause, or a similar civil action brought by the United States or Plaintiff States relating to an alleged violation of this Final Judgment, the United States or Plaintiff States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the

evidence, and Agri Stats waives any argument that a different standard of proof should apply.

C. This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States and Plaintiff States allege was harmed by the challenged conduct. Agri Stats may be held in contempt of, and the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

D. In an enforcement proceeding in which the Court finds that Agri Stats has violated this Final Judgment, the United States or Plaintiff State(s) may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States or Plaintiff State(s) to enforce this Final Judgment against Agri Stats, whether litigated or resolved before litigation, that Agri Stats must reimburse the United States or Plaintiff State(s) for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including during the investigation of the potential violation.

E. For a period of four years following the expiration of this Final Judgment, if the United States has evidence that Agri Stats violated this Final Judgment before it expired, the United States may file an action against Agri Stats in this Court requesting that the Court order: (1) Agri Stats to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Agri Stats complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XII.

## XIII. EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire 10 years from the date of its entry, except that after 7 years from the date of its entry, this Final Judgment may be terminated upon motion by the United States, with the consent of all Plaintiffs, to the Court and notice by the United States to Defendant that continuation of this Final Judgment is no longer necessary or in the public interest. All requirements, including all notice, certification, and reporting requirements will terminate automatically upon the expiration of this Final Judgment.

## XIV. RESERVATION OF RIGHTS

This Final Judgment terminates only the claims stated in the Complaint against Agri Stats and does not in any way affect other charges or claims the United States or Plaintiff States may file.

## XV. NOTICE

For purposes of the Final Judgment, any notice or other communication required to be filed with or provided to the United States or Plaintiff States must be sent to the addresses set forth below (or such other addresses as the United States or Plaintiff States may specify in writing to Agri Stats):

Chief
Anti-Monopoly and Collusion Enforcement Section
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
ATRJudgmentCompliance@usdoj.gov

**For the State of Minnesota:**
Katherine Moerke
Sarah Doktori
Assistant Attorneys General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
katherine.moerke@ag.state.mn.us
sarah.doktori@ag.state.mn.us

**For the State of California**
Paula Blizzard
Paula.blizzard@doj.ca.gov
Michael Jorgenson
Michael.jorgenson@doj.ca.gov
Casey Kovarik
Casey.kovarik@doj.ca.gov
California Attorney General's Office
Antitrust Section
300 South Spring St.
Los Angeles, CA 90013

**For the State of North Carolina:**
Kunal Choksi
Senior Deputy Attorney General
kchoksi@ncdoj.gov
Charles White
Assistant Attorney General
cwhite@ncdoj.gov
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, NC 27602

**For the State of Tennessee:**
Deputy Attorney General
Antitrust and Scaled Industries Division
Office of the Tennessee Attorney General
P.O. Box 20207,
Nashville, TN 37202
David.McDowell@ag.tn.gov

**For the State of Texas:**
Chief
Antitrust Division
Office of the Texas Attorney General
300 West 15th St.
Austin, TX 78701
antitrust@oag.texas.gov

**For the State of Utah:**
Marie W.L. Martin, CIPP/US
Division Director
Antitrust & Data Privacy Division
Utah Office of the Attorney General
P.O. Box 140811
160 E. 300 South
Salt Lake City, UT 84114
Cel: 385-270-2164
mwmartin@agutah.gov

## XVI. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 10, 2026
at Minneapolis, Minnesota.

_____/s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge

EXHIBIT A

Feed Formulation Reports

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (l.1) | (m) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIES/LB FEED | | PROTEIN/1325 | | LYSINE/1325 | | TSAA/1325 | | TRYPTO/1325 | | ARGINE/1325 | | THREONINE/1325 | | A.PHOS/1325 | | CALCIUM/1325 | | SODIUM/1325 | | % ANIMAL PROTEIN | % ADDED FAT | % DDGS | ADJ TO CALORIE LEVEL |
| LIN | % | CNT | SP | PLT. NUM. | CALORIES | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

AGRI STATS, GROUP 00

Period: Month 3/26

| | | | | | (a) | (a.1) | (a.2) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (h.2) | (h.3) | (i) | (i.1) | (i.2) | (i.3) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | FEED COST PER PULLET | | | GRAMS OF NUTRIENTS/GOOD PULLET (MALE & FEMALE) | | | | | | | | | | | | PULLET WEIGHTS | | | | FEED COST AND USAGE | | | |
| LIN | % | CNT | SP | PLT. NUM. | VAR | COST/ PULLET | PER 13 DOZEN | CALORIES /PULLET | % | PROTEIN GRAMS | % | LYSINE GRAMS | % | TSAA GRAMS | % | PHOS GRAMS | % | CALCIUM GRAMS | % | VAR | 25 WKS | 20 WKS | 4 WKS | ACTUAL POUNDS | ACTUAL COST | CALORIE LEVEL | FEED OWN VAR |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | CNT | SP | PLT. NUM. | (a) CALORIE/LB FEED CALORIE | (a.1) % AVG | (b) PROTEIN/1325 % | (b.1) % AVE | (c) LYSINE/1325 % | (c.1) % AVE | (d) TSAA/1325 % | (d.1) % AVE | (e) TRYTOPHAN % | (e.1) % AVE | (f) ARGININE % | (f.1) % AVE | (g) THREONINE % | (g.1) % AVE | (h) A. PHOS/1325 % | (h.1) % AVE | (i) CALCIUM/1325 % | (i.1) % AVE | (j) SODIUM/1325 % | (j.1) % AVE | (k) % ANIMAL PROTEIN | (l) % ADDED FAT | (l.1) % DDGS | (m) ADJ TO CALORIE LEVEL | (n) % BRDR #1 FEED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (a.2) | (a.3) | (a.4) | (b) | (b.1) | (b.2) | (b.3) | (b.4) | (b.5) | (c) | (c.1) | (c.2) | (c.3) | (c.4) | (d) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | FEED INGR COST LESS OWN | | | | | NUTRIENTS PER HEN PER DAY | | | | | | PERFORMANCE FACTORS | | | | | |
| LIN | % | CNT | SP | PLT. NUM. | VAR | /100 HENS PER DAY | PER DOZEN | PER CHICK | /TON /1325 | CAL | MLGS PROTEIN | MLGS LYSINE | MLGS TSAA | MLGS A PHOS | MLGS CALCIUM | LBS/100 HENS/DAY | LBS PER DOZEN | % PROD | % HATCH | MALES/ 100 FEM | AVG AGE |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | CNT | SP | PLT. NUM. | (a) FD ING COST ADJ WT & CWN | (b) CAL/LB OF MEAT ADJ 6.7 | (c) ADJ CAL COST | (d) CAL LOSS DUE TO MORT | (e) DAYS TO 6.7 | (f) % MORT | (g) BIRD AGE | (h) % WB & 1/2 PARTS CONDEMN | (i) BIRD WEIGHT | (i.1) BIRD WEIGHT RANGE | (j) DAYS PRESTART & STARTER | (k) AGE PLACED ON W/D | (l) CALORIE LEVEL | (m) % PROTEIN /1400 | (n) % LYSINE /1400 | (o) % TSAA /1400 | (p) % TRYPTO /1400 | (q) % ARGINE /1400 | (r) % THREON /1400 | (s) % A. PHOS /1400 | (t) % CALCIUM /1400 | (u) % ANIMAL PROTEIN | (v) % ADDED FAT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (k.1) | (l) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB | | PROTEIN/LB | | LYSINE/LB | | TSAA/LB | | TRYPTOPHAN/LB | | ARGININE/LB | | THREONINE/LB | | A. PHOS/LB | | CALCIUM/LB | | SODIUM/LB | | | BIRD | |
| LIN | % | CNT | SP | PLT. NUM. | CAL | % AVG | MLGS | % AVG | MLGS | % AVG | MLGS | % AVG | MLGS | % AVG | MLGS | % AVG | MLGS | % AVG | MLGS | % AVG | MLGS | % AVG | MLGS | % AVG | BIRD WT | WT RANGE | BIRD AGE |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Feed Form

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (m) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1400 | | LYSINE/1400 | | TSAA/1400 | | TRYPTOPHAN/1400 | | ARGININE/1400 | | THREONINE/1400 | | A. PHOS/1400 | | CALCIUM/1400 | | SODIUM/1400 | | % ANIMAL PROTEIN | % ADDED FAT | ADJ TO CALORIE LEVEL |
| LIN | % | CNT | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (m) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1400 | | LYSINE/1400 | | TSAA/1400 | | TRYPTOPHAN/1400 | | ARGININE/1400 | | THREONINE/1400 | | A. PHOS/1400 | | CALCIUM/1400 | | SODIUM/1400 | | % ANIMAL PROTEIN | % ADDED FAT | ADJ TO CALORIE LEVEL |
| LIN | % | CNT | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Feed Form

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (m) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1400 | | LYSINE/1400 | | TSAA/1400 | | TRYPTOPHAN/1400 | | ARGININE/1400 | | THREONINE/1400 | | A. PHOS/1400 | | CALCIUM/1400 | | SODIUM/1400 | | % ANIMAL PROTEIN | % ADDED FAT | ADJ TO CALORIE LEVEL |
| LIN | % | CNT | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (m) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1400 | | LYSINE/1400 | | TSAA/1400 | | TRYPTOPHAN/1400 | | ARGININE/1400 | | THREONINE/1400 | | A. PHOS/1400 | | CALCIUM/1400 | | SODIUM/1400 | | % ANIMAL PROTEIN | % ADDED FAT | ADJ TO CALORIE LEVEL |
| LIN | % | CNT | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



**Feed Form**

AGRI STATS, GROUP 00

Period: Month 3/26

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (m) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1400 | | LYSINE/1400 | | TSAA/1400 | | TRYPTOPHAN/1400 | | ARGININE/1400 | | THREONINE/1400 | | A. PHOS/1400 | | CALCIUM/1400 | | SODIUM/1400 | | % | % | ADJ TO |
| LIN | % | CNT | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | ANIMAL PROTEIN | ADDED FAT | CALORIE LEVEL |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | CNT | SP | PLT. NUM. | (a) FD ING COST-ADJ WT & OWN | (b) CAL/LB MEAT ADJ. 6.7 | (c) ADJ CAL COST | (d) DAYS TO 6.7 | (e) % MORT | (f) % WHEAT START | (f.1) % WHEAT GROW | (f.2) % WHEAT W/D | (h) % OF MEAT PRODUCTS START | (h.1) % OF MEAT PRODUCTS GROW | (h.2) % OF MEAT PRODUCTS WD | (i) % DDGS START | (i.1) % DDGS GROW | (i.2) % DDGS WD | (j) % SBOM START | (j.1) % SBOM GROW | (j.2) % SBOM WD | (k) % SYN LYSINE START | (k.1) % SYN LYSINE GROW | (k.2) % SYN LYSINE WD | (l) % DL METH START | (l.1) % DL METH GROW | (l.2) % DL METH WD | (m) % SYN THR START | (m.1) % SYN THR GROW | (m.2) % SYN THR WD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | CNT | SP | PLT. NUM. | (a) ADJ CAL CONV VAR | (a.1) ADJ CAL CONV C/LB | (b) TOT CALORIES C/BIRD | (b.1) TOT CALORIES % AVG | (b.2) TOT CALS LOST MORT | (c) WK 1 CALORIES C/DAY | (c.1) WK 1 CALORIES % AVG | (d) WK 2 CALORIES C/DAY | (d.1) WK 2 CALORIES % AVG | (e) WK 3 CALORIES C/DAY | (e.1) WK 3 CALORIES % AVG | (f) WK 4 CALORIES C/DAY | (f.1) WK 4 CALORIES % AVG | (g) WK 5 CALORIES C/DAY | (g.1) WK 5 CALORIES % AVG | (h) WK 6 CALORIES C/DAY | (h.1) WK 6 CALORIES % AVG | (i) WK 7 CALORIES C/DAY | (i.1) WK 7 CALORIES % AVG | (j) WK 8 CALORIES C/DAY | (j.1) WK 8 CALORIES % AVG | (k) WK 9 CALORIES C/DAY | (k.1) WK 9 CALORIES % AVG | (l) PART WEEK C/DAY | (m) BIRD WT | (m.1) BIRD WT RANGE | (n) BIRD AGE | (o) % MORT | (p) % MALE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

# PROTEIN CONSUMPTION PER BIRD

AGRI STATS, GROUP 00

Period: Month 3/26

| LIN | % | CNT | SP | FLT. NUM. | (a) ADJ CAL CONV VAR | (a.1) ADJ CAL CONV C/LB | (b) TOTAL PROTEIN MLGS | (b.1) TOTAL PROTEIN %AVG | (b.2) PROTEIN LOSS DUE MORT | (c) WEEK 1 PROTEIN MLGS | (c.1) WEEK 1 PROTEIN %AVG | (d) WEEK 2 PROTEIN MLGS | (d.1) WEEK 2 PROTEIN %AVG | (e) WEEK 3 PROTEIN MLGS | (e.1) WEEK 3 PROTEIN %AVG | (f) WEEK 4 PROTEIN MLGS | (f.1) WEEK 4 PROTEIN %AVG | (g) WEEK 5 PROTEIN MLGS | (g.1) WEEK 5 PROTEIN %AVG | (h) WEEK 6 PROTEIN MLGS | (h.1) WEEK 6 PROTEIN %AVG | (i) WEEK 7 PROTEIN MLGS | (i.1) WEEK 7 PROTEIN %AVG | (j) WEEK 8 PROTEIN MLGS | (j.1) WEEK 8 PROTEIN %AVG | (k) WEEK 9 MLGS | (k.1) WEEK 9 %AVG | (l) PARTIAL WEEK PROTEIN MLGS | (m) BIRD WT | (m.1) BIRD WT RANGE | (n) BIRD AGE | (o) % MORT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Feed Form

AGRI STATS, GROUP 00

Period: Month 3/26

| LIN | % | CNT | SP | PLT. NUM. | (a) ADJ CAL CONV VAR | (a.1) ADJ CAL CONV C/LB | (b) TOTAL LYSINE MLGS | (b.1) TOTAL LYSINE %AVG | (b.2) LYSINE LOSS DUE MORT | (c) WEEK 1 LYSINE MLGS | (c.1) WEEK 1 LYSINE %AVG | (d) WEEK 2 LYSINE MLGS | (d.1) WEEK 2 LYSINE %AVG | (e) WEEK 3 LYSINE MLGS | (e.1) WEEK 3 LYSINE %AVG | (f) WEEK 4 LYSINE MLGS | (f.1) WEEK 4 LYSINE %AVG | (g) WEEK 5 LYSINE MLGS | (g.1) WEEK 5 LYSINE %AVG | (h) WEEK 6 LYSINE MLGS | (h.1) WEEK 6 LYSINE %AVG | (i) WEEK 7 LYSINE MLGS | (i.1) WEEK 7 LYSINE %AVG | (j) WEEK 8 LYSINE MLGS | (j.1) WEEK 8 LYSINE %AVG | (k) WEEK 9 MLGS | (k.1) WEEK 9 %AVG | (l) PARTIAL WEEK LYSINE MLGS | (m) BIRD WT | (m.1) BIRD WT RANGE | (n) BIRD AGE | (o) % MORT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (b) | (b.1) | (b.2) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (k.1) | (l) | (m) | (m.1) | (n) | (o) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ADJ CAL CONV | | TOTAL TSAA | | TSAA LOSS DUE | WEEK 1 TSAA | | WEEK 2 TSAA | | WEEK 3 TSAA | | WEEK 4 TSAA | | WEEK 5 TSAA | | WEEK 6 TSAA | | WEEK 7 TSAA | | WEEK 8 TSAA | | WEEK 9 | | PARTIAL WEEK TSAA | BIRD | BIRD WT | BIRD | % |
| LIN | % | CNT | SP | PLT. NUM. | VAR | C/LB | MLGS | %AVG | MORT | MLGS | %AVG | MLGS | %AVG | MLGS | %AVG | MLGS | %AVG | MLGS | %AVG | MLGS | %AVG | MLGS | %AVG | MLGS | %AVG | MLGS | %AVG | MLGS | WT | RANGE | AGE | MORT |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Feed Form

| LIN | % | CNT | SP | PLT. NUM. | (a) EFF FEED SCHED/AVG $/ TON | (a.1) REQ CAL | (a.2) CAL VAR | (b) PRE-START & START FEEDS LBS FED | (b.1) % FED | (b.2) DAYS FED | (b.3) COST $/TON | (c) GROWER FEEDS LBS FED | (c.1) % FED | (c.2) BEGIN AGE | (c.3) DAYS FED | (c.4) COST $/TON | (d) FIRST WITHDRAW FEEDS LBS FED | (d.1) % FED | (d.2) BEGIN AGE | (d.3) DAYS FED | (d.4) COST $/TON | (e) FINAL WITHDRAW FEEDS LBS FED | (e.1) % FED | (e.2) BEGIN AGE | (e.3) DAYS FED | (e.4) COST $/TON | (f) TOTAL LBS FED /BIRD | (g) BIRD AGE | (h) BIRD WT | (h.1) BIRD WT RANGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | CNT | SP | PLT. NUM. | (a) CAL CONV 6.7# | (b) DAYS TO 6.7# | (c) % MORT | (d) BIRD WT | (d.1) BIRD WT RANGE | (e) FEED MEDICATE AVG ALL FEEDS VAR | (e.1) $/TON | (f) STARTER MEDICATION MEDICATION CODE/ USAGE LBS/TON | (g) GROWER #1 MEDICATION MEDICATION CODE / USAGE LBS/TON | (h) GROWER #2 MEDICATION MEDICATION CODE / USAGE LBS/TON | (i) FIRST W/D MEDICATION MEDICATION CODE / USAGE LBS/TON | (j) FINAL W/D MEDICATION MEDICATION CODE / USAGE LBS/TON |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Feed Form

| LIN | % | CNT | SP | PLT. NUM. | (a) CAL CONV 6.7# | (b) DAYS TO 6.7# | (c) % MORT | (d) BIRD WT | (d.1) BIRD WT RANGE | (e) FEED MEDICATE AVG ALL FEEDS VAR | (e.1) FEED MEDICATE AVG ALL FEEDS $/TON | (f) STARTER MEDICATE MEDICATION CODES / USAGE LBS/TON | (g) GROWER #1 MEDICATION MEDICATION CODES USAGE LBS/TON | (h) GROWER #2 MEDICATION MEDICATION CODES USAGE LBS/TON | (i) FIRST W/D MEDICATION MEDICATION CODES USAGE LBS/TON | (j) FINAL W/D MEDICATION MEDICATION CODES USAGE LBS/TON |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | CNT | SP | PLT. NUM. | (a) CAL CONV 6.7# | (b) DAYS TO 6.7# | (c) % MORT | (d) BIRD WT | (d.1) BIRD WT RANGE | (e) GUT HEALTH AVG ALL FEED VAR | (e.1) GUT HEALTH AVG ALL FEED $/TON | (f) PRE/PROBIOTICS AVG ALL FEEDS VAR | (f.1) PRE/PROBIOTICS AVG ALL FEEDS $/TON | (g) ORGANIC ACIDS AVG ALL FEEDS VAR | (g.1) ORGANIC ACIDS AVG ALL FEEDS $/TON | (h) PHYTOGENICS AVG ALL FEEDS VAR | (h.1) PHYTOGENICS AVG ALL FEEDS $/TON | (i) MYCOTOX INHIB AVG ALL FEEDS VAR | (i.1) MYCOTOX INHIB AVG ALL FEEDS $/TON | (j) OTH GUT HEALTH AVG ALL FEEDS VAR | (j.1) OTH GUT HEALTH AVG ALL FEEDS $/TON |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (b) | (c) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | FEED MOLD INH AVG ALL FEEDS | | STARTER MOLD INHIB | | GROWER #1 MOLD INHIB | | GROWER #2 MOLD INHIB | | FIRST W/D MOLD INHIB | | FINAL W/D MOLD INHIB | |
| LIN | % | CNT | SP | PLT. NUM. | CAL CONV 6.7# | DAYS TO 6.7# | % MORT | BIRD WT | BIRD WT RANGE | VAR | $/TON | MOLD INHIB CD | $ PER TON | MOLD INHIB CD | $ PER TON | MOLD INHIB CD | $ PER TON | MOLD INHIB CD | $ PER TON | MOLD INHIB CD | $ PER TON |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (m.1) | (m.2) | (m.3) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1500 | | LYSINE/1500 | | TSAA/1500 | | THREONINE/1500 | | TRYPTOPHAN/1500 | | ARGININE/1500 | | A. PHOS/1500 | | CALCIUM/1500 | | SODIUM/1500 | | % ANIMAL PROTEIN | % ADDED FAT | BREED/GEST FEED STATISTICS | | |
| LIN | % | FLAGS | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | LBS/GEST SOW DAY | $/TON 1500 CAL | $/100 SOWS/DAY |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1a) | (a.1) | (a.2) | (a.3) | (a.4) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | ADJ FEED INGREDIENT COST | | | | CALORIES OR MILLIGRAMS OF NUTRIENTS PER SOW PER DAY | | | | | | | | | | | | |
| LIN | % | FLAGS | SP | PLT. NUM. | VAR | $/PIG ADJ COMB | FD $ PER SOW/DAY | LBS/SOW PER DAY | ADJ $ PER TON | ACTUAL $/TON | % OF AVG | CALORIES | % OF AVG | PROTEIN | % OF AVG | LYSINE | % OF AVG | TSAA | % OF AVG | AVAIL PHOS | % OF AVG | CALCIUM | % IN GILT POOL |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Pig Prod

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (m.1) | (m.2) | (m.3) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1500 | | LYSINE/1500 | | TSAA/1500 | | THREONINE/1500 | | TRYPTOPHAN/1500 | | ARGININE/1500 | | A. PHOS/1500 | | CALCIUM/1500 | | SODIUM/1500 | | % ANIMAL PROTEIN | % ADDED FAT | LACTATION FEED STATISTICS | | |
| LIN | % | FLAGS | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | LBS/LAC SOW DAY | $/TON 1500 CAL | $/100 SOWS/DAY |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | FLAGS | SP | PLT. NUM. | (a) VAR | (a.1a) $/PIG ADJ COMB | (a.1) ADJ FEED INGREDIENT COST $/SOW PER DAY | (a.2) $ PER PIG | (a.3) ADJ $ PER TON | (a.4) ACTUAL $/TON | (b) CALORIES OR MILLIGRAMS PER SOW PER DAY % OF AVG | (b.1) CALORIE | (c) % OF AVG | (c.1) PROTEIN | (d) % OF AVG | (d.1) LYSINE | (e) % OF AVG | (e.1) TSAA | (f) % OF AVG | (f.1) AVIL PHOS | (g) % OF AVG | (g.1) CALCIUM | (h) PIGS WEAN /LTR | (j) % MORT | (k) AVERAGE LITTER WEIGHT | (l) SOW OWN COST | (m) ECONOMIC IMPACT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Pig Prod

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (m) | (n) | (o) | (p) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | PLT. | CALORIE/LB FD | | PROTEIN/1500 | | LYSINE/1500 | | TSAA/1500 | | THREONINE | | TRYPTOPHAN | | ARGININE | | A. PHOS | | CALCIUM/1500 | | SODIUM/1500 | | % ANIMAL PROTEIN | % ADDED FAT | ADJ TO CALORIE LEVEL | LBS FED/ 100 PIGS PER DAY | AVG COST PER 1500 CALORIES | FEED COST PER 100 PIGS/DAY |
| LIN | % | FLAGS | SP | NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (a.2) | (a.3) | (a.4) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (j) | (k) | (l) | (m) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | FEED PERFORMANCE/LB GAIN | | | | | CALORIE/LB FEED | | PROTEIN/1500 | | LYSINE/1500 | | TSAA/1500 | | A PHOS/1500 | | CALCIUM/1500 | | SODIUM/1500 | | | | | | |
| LIN | % | FLAGS | SP | PLT. NUM. | VAR | ADJ WT & OWN | ACTUAL ¢/LB | ADJ CAL CONV | DAILY GAIN | CALORIE | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % ANIMAL PROTEIN | % ADDED FAT | % MORT | PLACE WT | MOVE WT |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

# NURSERY PERFORMANCE VS NUTRIENTS/LB GAIN (COMBINED)

AGRI STATS, GROUP 00



| | | | | | NURSERY FEED PERFORMANCE/LB GN | | | | | | CALORIES OR GMS PER POUND OF GAIN IN NURSERY | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) | (a.1) | (a.2) | (a.3) | (a.4) | (a.5) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (i) | (j) |
| LIN | % | FLAGS | SP | PLT. NUM. | VAR | ADJ WT & OWN | ACTUAL ¢/LB | CALORIE ADJ WT | DAILY GAIN | % MORT | % OF AVG | CALORIES | % OF AVG | PROTEIN | % OF AVG | LYSINE | % OF AVG | TSAA | % OF AVG | AVAIL PHOS | % OF AVG | CALCIUM | PLACE WT | MOVE WT | DAYS IN NURS'Y |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (a.2) | (a.3) | (a.4) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (g.2) | (g.3) | (g.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | NURSERY MEDICATION | | | | | 14-28 DAY MEDI | | 29-42 DAY MEDI | | 43-56 DAY MEDI | | 57-70 DAY MEDI | | 70 PLUS DAY MEDI | | NURSERY FEED PERFORMANCE | | | | |
| LIN | % | FLAGS | SP | PLT. NUM. | VAR $/PIG | TOTAL $/PIG | NON-FD $/PIG | FEED $/PIG | FEED $/TON | CODE | $/TON | CODE | $/TON | CODE | $/TON | CODE | $/TON | CODE | $/TON | VAR | CALORIE ADJ WT | ACTUAL FD CONV | DAILY GAIN | % MORT |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) <29 DAYS | (a.1) | (a.2) | (b) 29-42 DAYS | (b.1) | (b.2) | (c) 43-56 DAYS | (c.1) | (c.2) | (d) 57-70 DAYS | (d.1) | (d.2) | (e) >70 DAYS | (e.1) | (e.2) | (f) | (f.1) | (g) | (g.1) | (g.2) | (g.3) | (g.4) | (g.5) | (g.6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LIN | % | FLAGS | SP | PLT. NUM. | LBS/HD MOVED | % FED | COST /TON | LBS/HD MOVED | % FED | COST /TON | LBS/HD MOVED | % FED | COST /TON | LBS/HD MOVED | % FED | COST /TON | LBS/HD MOVED | % FED | COST /TON | TOTAL LBS/HD MOVED | NUM FEED FORM | AGE PLACE | WGT PLACE | AGE MOVED | WGT MOVED | DAILY GAIN | DAILY INTAKE | CAL ADJ TO 13-55 |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (n) | (o) | (p) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1500 | | LYSINE/1500 | | TSAA/1500 | | THREONINE/1500 | | TRYPTOPHAN/1500 | | A. PHOS/1500 | | CALCIUM/1500 | | SODIUM/1500 | | % ANIMAL PROTEIN | % ADDED FAT | LBS FED/ 100 PIGS PER DAY | AVG COST PER 1500 CALORIES | FEED COST PER 100 PIGS/DAY |
| LIN | % | FLAGS | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | FINISHING PERFORMANCE (a) | (a.1) | (a.2) | (a.3) | (a.4) | (a.5) | (a.6) | (a.7) | CALORIES/LB FEED (b) | (b.1) | PROTEIN/1500 (c) | (c.1) | LYSINE/1500 (d) | (d.1) | TSAA/1500 (e) | (e.1) | A.PHOS/1500 (f) | (f.1) | CALCIUM/1500 (g) | (g.1) | SODIUM/1500 (h) | (h.1) | (i) | (j) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LIN | % | FLAGS | SP | PLT. NUM. | VAR | ADJ ç/ LB GAIN | RANK | ADJ CAL /LB GAIN | FINAL WT | AGE | DAILY GAIN | % MORT | CALORIE | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % ANIMAL PROTEIN | % ADDED FAT |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Phase Fini

| | | | | | (a) | (a.1) | (a.2) | (a.3) | (a.4) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (i) | (j) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | CALORIES OR MILLIGRAMS PER LB OF GAIN IN FINISHING | | | | | | | | | | | | | | |
| LIN | % | FLAGS | SP | PLT. NUM. | VAR | ADJ FD COST/ LB GAIN | CALORIES ADJ TO 285 LB | DAILY GAIN | % MORT | % OF AVG | CALORIES | % OF AVG | PROTEIN | % OF AVG | LYSINE | % OF AVG | TSAA | % OF AVG | A. PHOS | % OF AVG | CALCIUM | START WT | FINISH WT | DAYS IN FINISH |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | FLAGS | SP | PLT. NUM. | (a) VAR | (a.1) INGRED COST ADJ WT & OWN | (a.2) CALORIES ADJ TO 285 LB | (a.3) ADJ CALORIE COST | (a.4) DAILY GAIN | (b) % SBOM 7-10 WEEKS | (b.1) % SBOM 11-14 WEEKS | (b.2) % SBOM OVER 15 WKS | (c) % FAT PRODUCTS 7-10 WEEKS | (c.1) % FAT PRODUCTS 11-14 WEEKS | (c.2) % FAT PRODUCTS OVER 15 WKS | (d) % SYNTHETIC LYSINE 7-10 WEEKS | (d.1) % SYNTHETIC LYSINE 11-14 WEEKS | (d.2) % SYNTHETIC LYSINE OVER 15 WKS | (e) % DDGS 7-10 WEEKS | (e.1) % DDGS 11-14 WEEKS | (e.2) % DDGS OVER 15 WKS | (f) % ALT GRAIN PRODUCTS 7-10 WEEKS | (f.1) % ALT GRAIN PRODUCTS 11-14 WEEKS | (f.2) % ALT GRAIN PRODUCTS OVER 15 WKS | (g) % BAKERY PRODUCTS 7-10 WEEKS | (g.1) % BAKERY PRODUCTS 11-14 WEEKS | (g.2) % BAKERY PRODUCTS OVER 15 WKS | (h) % MIDD PRODUCTS 7-10 WEEKS | (h.1) % MIDD PRODUCTS 11-14 WEEKS | (h.2) % MIDD PRODUCTS OVER 15 WKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Phase Fini

| LIN | % | FLAGS | SP | PLT. NUM. | (a) VAR | (a.1) CALORIES ADJ TO 285 LB | (a.2) DAILY GAIN | (b) AVG FEED MEDICATION VAR | (b.1) $/TON | (c) <77 DAYS MEDI MED CODES | (c.1) $ PER TON | (d) 77-91 DAYS MEDI MED CODES | (d.1) $ PER TON | (e) 91-105 DAYS MEDI MED CODES | (e.1) $ PER TON | (f) 105-119 DAYS MEDI MED CODES | (f.1) $ PER TON | (g) 119-133 DAYS MEDI MED CODES | (g.1) $ PER TON | (h) 133-147 DAYS MEDI MED CODES | (h.1) $ PER TON | (i) AFTER 147 DAYS MEDI MED CODES | (i.1) $ PER TON |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) <85 DAYS | (a.2) | (b) | (b.1) 85-112 DAYS | (b.2) | (c) | (c.1) 113-140 DAYS | (c.2) | (d) | (d.1) 141-168 DAYS | (d.2) | (e) | (e.1) >168 DAYS | (e.2) | (f) | (f.1) | (g) | (g.1) | (g.2) | (g.3) | (g.4) | (g.5) | (g.6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LIN | % | FLAGS | SP | PLT. NUM. | LBS/HD SETTLD | % FED | COST /TON | LBS/HD SETTLD | % FED | COST /TON | LBS/HD SETTLD | % FED | COST /TON | LBS/HD SETTLD | % FED | COST /TON | LBS/HD SETTLD | % FED | COST /TON | TOTAL LBS/HD SETTLD | NUM FEED FORM | ST AGE | ST WGT | FIN AGE | FIN WGT | GAIN /DAY | DAILY INTAKE | CAL ADJ TO 55-285 |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Phase Fini

| | | | | | (a) | (a.1) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (h) | (h.1) | (i) | (i.1) | (j) | (j.1) | (k) | (l) | (n) | (o) | (p) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIE/LB FD | | PROTEIN/1500 | | LYSINE/1500 | | TSAA/1500 | | THREONINE/1500 | | TRYPTOPHAN/1500 | | A. PHOS/1500 | | CALCIUM/1500 | | SODIUM/1500 | | % ANIMAL PROTEIN | % ADDED FAT | LBS FED/ 100 PIGS PER DAY | AVG COST PER 1500 CALORIES | FEED COST PER 100 PIGS/DAY |
| LIN | % | FLAGS | SP | PLT. NUM. | CAL | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | % | % AVG | | | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) | (a.2) | (a.3) | (a.4) | (a.5) | (a.6) | (a.7) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (j) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | FINISHING PERFORMANCE | | | | | | | | CALORIES/LB FEED | | PROTEIN/1500 | | LYSINE/1500 | | TSAA/1500 | | A.PHOS/1500 | | CALCIUM/1500 | | SODIUM/1500 | | | |
| LIN | % | FLAGS | SP | PLT. NUM. | VAR | ADJ ç/ LB GAIN | RANK | ADJ CAL /LB GAIN | FINAL WT | AGE | DAILY GAIN | % MORT | CALORIE | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % | % OF AVG | % ANIMAL PROTEIN | % ADDED FAT |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Wn to Fin

| LIN | % | FLAGS | SP | PLT. NUM. | (a) VAR | (a.1) ADJ FD COST/ LB GAIN | (a.2) CALORIES ADJ TO 285 LB | (a.3) DAILY GAIN | (a.4) % MORT | (b) % OF AVG | (b.1) CALORIES | (c) % OF AVG | (c.1) PROTEIN | (d) % OF AVG | (d.1) LYSINE | (e) % OF AVG | (e.1) TSAA | (f) % OF AVG | (f.1) A. PHOS | (g) % OF AVG | (g.1) CALCIUM | (h) START WT | (i) FINISH WT | (j) DAYS IN FINISH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | CALORIES OR MILLIGRAMS PER LB OF GAIN IN FINISHING | | | | | | | | | | | | | | |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| LIN | % | FLAGS | SP | PLT. NUM. | (a) VAR | (a.1) INGRED COST ADJ WT & OWN | (a.2) CALORIES ADJ TO 285 LB | (a.3) ADJ CALORIE COST | (a.4) DAILY GAIN | (b) % SBOM 7-10 WEEKS | (b.1) % SBOM 11-14 WEEKS | (b.2) % SBOM OVER 15 WKS | (c) % FAT PRODUCTS 7-10 WEEKS | (c.1) % FAT PRODUCTS 11-14 WEEKS | (c.2) % FAT PRODUCTS OVER 15 WKS | (d) % SYNTHETIC LYSINE 7-10 WEEKS | (d.1) % SYNTHETIC LYSINE 11-14 WEEKS | (d.2) % SYNTHETIC LYSINE OVER 15 WKS | (e) % DDGS 7-10 WEEKS | (e.1) % DDGS 11-14 WEEKS | (e.2) % DDGS OVER 15 WKS | (f) % ALT GRAIN PRODUCTS 7-10 WEEKS | (f.1) % ALT GRAIN PRODUCTS 11-14 WEEKS | (f.2) % ALT GRAIN PRODUCTS OVER 15 WKS | (g) % BAKERY PRODUCTS 7-10 WEEKS | (g.1) % BAKERY PRODUCTS 11-14 WEEKS | (g.2) % BAKERY PRODUCTS OVER 15 WKS | (h) % MIDD PRODUCTS 7-10 WEEKS | (h.1) % MIDD PRODUCTS 11-14 WEEKS | (h.2) % MIDD PRODUCTS OVER 15 WKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Wn to Fin

| | | | | (a) | (a.1) | (a.2) | (b) | (b.1) | (c) | (c.1) | (d) | (d.1) | (e) | (e.1) | (f) | (f.1) | (g) | (g.1) | (h) | (h.1) | (i) | (i.1) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CALORIES | | AVG FEED MEDICATION | | <77 DAYS MEDI | | 77-91 DAYS MEDI | | 91-105 DAYS MEDI | | 105-119 DAYS MEDI | | 119-133 DAYS MEDI | | 133-147 DAYS MEDI | | AFTER 147 DAYS MEDI | |
| LIN | % | FLAGS | SP | PLT. NUM. | VAR | ADJ TO 285 LB | DAILY GAIN | VAR | $/TON | MED CODES | $ PER TON | MED CODES | $ PER TON | MED CODES | $ PER TON | MED CODES | $ PER TON | MED CODES | $ PER TON | MED CODES | $ PER TON | MED CODES | $ PER TON |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.

| | | | | | (a) | (a.1) <50 DAYS | (a.2) | (b) | (b.1) 50-84 DAYS | (b.2) | (c) | (c.1) 85-126 DAYS | (c.2) | (d) | (d.1) 127-168 DAYS | (d.2) | (e) | (e.1) >168 DAYS | (e.2) | (f) | (f.1) | (g) | (g.1) | (g.2) | (g.3) | (g.4) | (g.5) | (g.6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LIN | % | FLAGS | SP | PLT. NUM. | LBS/HD SETTLD | % FED | COST/ TON | LBS/HD SETTLD | % FED | COST/ TON | LBS/HD SETTLD | % FED | COST/ TON | LBS/HD SETTLD | % FED | COST/ TON | LBS/HD SETTLD | % FED | COST/ TON | TOTAL LBS/HD SETTLD | NUM FEED FORM | ST AGE | ST WGT | FIN AGE | FIN WGT | GAIN /DAY | DAILY INTAKE | CAL ADJ TO 13-285 |

COPYRIGHT (c) 2026, AGRI STATS, INC., ALL RIGHTS RESERVED.



Wn to Fin

## EXHIBIT B

**Broiler Live Operations Metrics:**

A. Percent DOAs (6.3, 6.12, 6.17) (Completed).
B. Condemnations (5.1, 6.3, 6.10, 6.11, 6.17) (Completed).
C. Livability (6.1) (Completed).
D. Mortality (5.1, 5.8, 5.9, 5.10, 5.11, 5.12, 5.14, 5.14A, 5.14B, 5.14C, 5.15, 6.3, 6.4. 6.5, 6.5a, 6.6, 6.6a, 6.8, 6.10). (Completed).
E. Feed Calories (1.10, 1.17, 1.17a, 4.16, 5.1, 5.16, 6.6, 6.6a, 6.7, 6.10).
F. Feed Medication Usage and Rates (5.14A, 5.14A, 5.14B, 5.14C, 5.15).
G. Animal Stocking Density (6.5, 6.5a, 6.7, 6.10) (Completed)
H. Growth Rates (6.7, 6.17) (Completed).
I. Bird Age (6.1, 6.2, 6.3, 6.5, 6.5a, 6.6, 6.7, 6.8, 6.10, 6.11, 6.16, 6.17) (Completed)
J. Hatchery – Total BTU/Chick (2.5)
K. Hatchery – Total Cost/BTU (2.5)
L. Hatchery – Electrical BTU/Chick (2.5)
M. Hatchery – Electrical K/W Hrs/Chick (2.5)
N. Hatchery – Electrical $/K/W Hours (2.5)
O. Hatchery – Gas&Oil BTU's/Chick (2.5)
P. Hatchery – Gas&Oil $/BTU's (2.5)
Q. Feed Mfg – Total BTU/Ton (3.5)
R. Feed Mfg – Total Cost/BTU (3.5
S. Feed Mfg – Electrical BTU/Ton (3.5)
T. Feed Mfg – Electrical K/W Hrs/Ton (3.5)
U. Feed Mfg – Electrical $/K/W Hours (3.5)
V. Feed Mfg – Gas&Oil BTU's/Ton (3.5)
W. Feed Mfg – Gas&Oil $/BTU's (3.5)
X. Feed Delivery – Fuel Usage (3.7a, 3.9
Y. Live Haul – Fuel Usage (6.15)

**Broiler Processing Metrics:**

A. Hang to Stun Time (Processing 3.19)
B. Amperage at Stun (Processing 3.19)
C. Stun to Kill Time (Processing 3.19)
D. Kill to Scald Time (Processing 3.19)
E. Time in Scalder (Processing 3.19)
F. Scalder Temp (Processing 3.19)
G. Pre-Chiller Temp (Processing 3.19)

H. Animal Temp at Chiller Exit (Processing 3.19)
I. Bleed Time Minutes (Processing 3.19)
J. Total Water Usage – Gallons per Bird for 2nd Processing (Processing 4.4)
K. Total Water Usage – Gallons per Bird for 1st Processing (Processing 4.4)
L. Total Water Cost – $/1000 Gallons (Processing 4.4)
M. Total Water Usage – Water Source (Processing 4.4)
N. Total Electrical Usage – Cents Per Bird (Processing 2.7)
O. Total Electrical Usage – Dollars Per 100 Kilowatt Hours (Processing 2.7)
P. Gas and Oil Usage – Cents Per Bird (Processing 2.7)
Q. Gas and Oil Usage – BTU Per Bird (Processing 2.7)
R. Gas & Oil Usage – $/Mil BTU's (Processing 2.7)
S. Undergrade Paws – (Processing 5.21)
T. Undergrade Wings – (Processing 3.6)
U. DOA's – (Processing 3.1, 3.2) (Completed)
V. Condemnations – (Processing 2.9, 2.9a, 3.1, 3.2) (Completed)

**Swine Live Metrics**

A. Feed Mfg – Total BTU/Ton (3.5)
B. Feed Mfg – Total Cost/BTU (3.5
C. Feed Mfg – Electrical BTU/Ton (3.5)
D. Feed Mfg – Electrical K/W Hrs/Ton (3.5)
E. Feed Mfg – Electrical $/K/W Hours (3.5)
F. Feed Mfg – Gas&Oil BTU's/Ton (3.5)
G. Feed Mfg – Gas&Oil $/BTU's (3.5)
H. Feed Delivery – Fuel Usage (3.7a, 3.9)
I. Live Haul – Fuel Usage (9.3)
J. DOA's – (9.1)
K. Mortality – (6.10, 6.10a, 6.12, 6.13, 6.3, 6.3a, 6.4, 6.5, 6.5a, 6.8, 6.8a, 6.9, 6.98, 6.9a, 7.10, 7.10a, 7.12, 7.13, 7.3, 7.3a, 7.4, 7.5a, 7.8, 7.8a, 7.9, 7.95WF, 7.96WF, 7.97WF, 7.98, 7.99WF, 7.9a, 8.1a, 8.1b)
L. Age – (6.12, 6.13, 6.28, 6.28a, 6.28b, 6.3, 6.3a, 6.5, 6.5a, 6.8, 6.8a, 6.98, 7.12, 7.13, 7.28, 7.28a, 7.28b, 7.3, 7.3a, 7.5a, 7.8, 7.8a, 7.96WF, 7.98)
M. Medication Usage – (5.16, 6.27, 6.9a, 7.27, 7.9a)
N. Growth Rates – (6.12, 6.13, 6.26, 6.27, 6.28, 6.5, 6.5a, 6.8, 6.8a, 6.98, 7.12, 7.13, 7.26, 7.27, 7.28, 7.5a, 7.8, 7.8a, 7.96WF, 7.98)