# EXHIBIT 1

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA
 2

 3   ------------------------------------------------------------
                                    )
 4                                  )   File No. 18-CV-1776
     IN RE:  PORK ANTITRUST         )           (JRT/JFD)
 5   LITIGATION                     )
                                    )
 6                                  )   St. Paul, Minnesota
                                    )   December 9, 2022
 7   This Document Relates to:      )   3:00 p.m.
     All Actions                    )
 8                                  )   DIGITAL RECORDING
                                    )
 9   ------------------------------------------------------------

10

11

12                BEFORE THE HONORABLE JOHN F. DOCHERTY
             UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
13                         (MOTION HEARING)

14

15

16

17

18

19

20

21

22

23

24        Proceedings recorded by digital recording; transcript
     produced with computer.
25
```

```
     APPEARANCES (Via Zoom Videoconference):

 1

 2   For Direct Action          Boies Schiller Flexner, LLP
     Plaintiffs Amory           MICHAEL S. MITCHELL, ESQ.
     Investments, LLC and       1401 New York Avenue Northwest
 3   Sysco Corporation:         Washington, DC 20005

 4   For Plaintiff              Schneider Wallace Cottrell
     Commonwealth of Puerto     Konecky, LLP
 5   Rico:                      BRADLEY R. FAGNANI, ESQ.
                                300 South Grand Avenue
 6                              Suite 2700
                                Los Angeles, CA 90071
 7

     For Defendant JBS USA:     Spencer Fane
 8                              JESSICA J. NELSON, ESQ.
                                100 South Fifth Street
 9                              Suite 2500
                                Minneapolis, MN 55402
10
                                Quinn Emanuel, LLP
11                              SAMI H. RASHID, ESQ.
                                51 Madison Avenue
12                              22nd Floor
                                New York, NY 10010
13
     For Defendant Hormel       Faegre Drinker Biddle & Reath,
14   Foods, LLC:                LLP
                                CRAIG S. COLEMAN, ESQ.
15                              90 South Seventh Street
                                Suite 2200
16                              Minneapolis, MN 55402

17   For Defendant Triumph      Husch Blackwell, LLP
     Foods, LLC:                JASON HUSGEN, ESQ.
18                              190 Carondelet Plaza
                                Suite 600
19                              St. Louis, MO 63105

20   For Defendant              Brown Fox, PLLC
     Smithfield Foods, Inc.:    BRIAN E. ROBISON, ESQ.
21                              6303 Cowboys Way
                                Suite 450
22                              Frisco, TX 75034

23   For Defendant Tyson        Axinn, Veltrop & Harkrider, LLP
     Foods, Inc.:               ALLISON M. VISSICHELLI, ESQ.
24                              1901 L Street Northwest
                                Washington, DC 20036
25
```

Transcriber:                    PAULA K. RICHTER, RMR-CRR-CRC
                                300 South Fourth Street
                                Minneapolis, Minnesota 55415

1          **P R O C E E D I N G S**

2          **(VIA ZOOM VIDEO CONFERENCE)**

3          THE COURT:  Good afternoon, everybody.  My name is

4  John Docherty.  I'm the federal magistrate judge assigned to

5  this case.

6          We are here on Zoom this afternoon for a hearing

7  on a motion to compel that's been brought by two of the

8  direct action plaintiffs, Sysco Corporation and Amory

9  Investments, LLC, and by the Commonwealth of Puerto Rico,

10 seeking to try and compel JBS to add two topics that weren't

11 covered before to its 30(b)(6) deposition.

12         Appearances have been noticed before this started.

13 I'll just repeat what Ms. Meyers said.  We don't have a

14 court reporter.  If you do start talking fast or your audio

15 is poor, I will, with respect, interrupt you, but otherwise,

16 I think that we are ready to go.

17         I understand that Mr. Michael Mitchell will be

18 speaking on behalf of the two direct action plaintiffs.  And

19 then Mr. -- is it Fagnani?

20         MR. FAGNANI:  Fagnani, yes, Your Honor.

21         THE COURT:  I pronounced it right.  Good.  For the

22 Commonwealth of Puerto Rico.

23         It does not matter to me whether Mr. Mitchell or

24 Mr. Fagnani goes first, but why don't we, just for the sake

25 of making a decision, have Mr. Mitchell lead us off.

1            MR. MITCHELL:  Thank you, Judge Docherty.  Good

2     afternoon.

3            I'd like to, if I could, use our time this

4     afternoon to address some of the arguments that JBS made in

5     its opposition to our motion.  Of course, if there are any

6     particular questions that you may have or if there are

7     issues in the briefing that you would like me to address

8     specifically, obviously please feel free to interrupt me at

9     any time.

10           But what I'd like to try to do is address JBS'

11    opposition.  And there are really three parts to it, the

12    first being JBS' argument that the motion should be denied

13    because it was untimely through, really, two things.  First,

14    our supposed failure to meet and confer on the topics at

15    issue and, secondly, our supposed delay in bringing the

16    motion to the Court's attention.

17           So first, on the duty to meet and confer, I don't

18    think that there is any dispute about the facts of the

19    meet-and-confer process that occurred here prior to our

20    filing the motion.  It's detailed in our briefing.  But I

21    think there are just a few points that I'd like to make

22    about that, and it is that we had two telephonic

23    meet-and-confers with JBS.  The first was in August

24    regarding the draft 30(b)(6) notice that we sent to them.

25           And I was not personally on that call, but my

1    understanding is that all of the topics in the draft notice,

2    including the two topics that are at issue in the motion,

3    were discussed during that initial conference.  That was

4    followed by our serving the formal notice itself, to which

5    JBS responded, again, to the topics at issue by refusing to

6    designate a witness.  In the subsequent telephonic

7    meet-and-confer we had, there were other topics that were

8    discussed.

9         But following that, we sent an email to them, and

10   this is in Exhibit D to our motion, in which we told them

11   that we intended to, with respect to those two topics -- the

12   two topics at issue about the compliance policies, that if

13   they were going to maintain their refusal, that we intended

14   to move to compel and that if -- and we told them that if

15   there is anything else that they would like to discuss about

16   those topics, to please let us know.

17        THE COURT:  Okay.  Let's go through this a little

18   bit.

19        The 30(b)(6) notice was served on the 14th of

20   September; is that right?

21        MR. MITCHELL:  That's correct.

22        THE COURT:  And then JBS objected on the 20th?

23        MR. MITCHELL:  Also correct.

24        THE COURT:  The meet-and-confer was held on the

25   22nd.

1              MR. MITCHELL:  The second meet-and-confer, yes.

2              THE COURT:  Well, okay.  We'll circle back to your

3      use of the word "second."

4              There was a meet-and-confer on September 22nd.

5      You don't indicate in your brief that these two topics were

6      raised there, nor does JBS, nor is it on the list of topics

7      to be discussed at the meet-and-confer.

8              Is that all correct also?

9              MR. MITCHELL:  That is correct.

10             THE COURT:  Okay.  And you know that the Court

11     does not consider emailing and letter writing to be a form

12     of meet-and-confer.  I understand that, you know, this is

13     geographically dispersed counsel.  We're not going to get

14     together face to face, but telephone or Zoom video or

15     videoconferencing, like we're using today, was an option,

16     correct?

17             MR. MITCHELL:  That is correct, Your Honor.

18             THE COURT:  So is the meet-and-confer that you are

19     hanging your hat on one that was conducted in August before

20     the 30(b)(6) notice was even served?

21             MR. MITCHELL:  That is correct.  It was in regards

22     to the draft notice, which included these topics.  But yes,

23     that is correct.

24             THE COURT:  All right.  And why is that an

25     adequate meet-and-confer for a motion to compel when the

1    30(b)(6) notice and objection and meet-and-confer are all

2    held on that 30(b)(6) notice?

3              MR. MITCHELL:  Well, Your Honor, it was our view

4    that -- we had discussed that topic with JBS, and then we

5    received from JBS two written express refusals to identify

6    any witness but asked them that, you know, if we were wrong

7    about that -- that we intended to move to compel, but if we

8    were wrong about that, that if there was anything else to

9    discuss, to let us know.

10             THE COURT:  Okay.  And then Mr. -- is it -- am I

11   saying it right, Manternach, had his deposition taken on

12   September 27th.  I haven't looked at the transcript of that

13   deposition, I will admit, but were any questions asked about

14   the two topics at issue?

15             MR. MITCHELL:  There were no questions asked.

16             THE COURT:  Was there --

17             MR. MITCHELL:  We asked -- I'm sorry.  If I may,

18   Your Honor.

19             THE COURT:  Yes.

20             MR. MITCHELL:  We asked if the witness was

21   prepared to testify on those topics, and he said he was not.

22   And counsel, of course, interposed objections -- the

23   objections that they had stated in the written objections to

24   us on those topics.  But there were no substantive questions

25   asked on those topics themselves.

1        THE COURT:  And other than what you've just

2   described, was there any discussion between counsel about

3   those topics?

4        MR. MITCHELL:  You mean on the record during the

5   30(b)(6)?

6        THE COURT:  Correct.

7        MR. MITCHELL:  There was no discussion between

8   counsel except the objections that were made by JBS on the

9   record at the deposition.

10        THE COURT:  Okay.  Now, what's the nondispositive

11   motion deadline in this case?

12        MR. MITCHELL:  It was November 14th, although as

13   you know, Your Honor, that was extended originally from

14   October 31st to November 14th.

15        THE COURT:  I have it actually the other way

16   around.  It was November 14th.  Then Judge Tunheim issued

17   pretrial order number 1 on October the 4th, and that changed

18   the date to October 31st.

19        So is it your -- now, you didn't mention this in

20   your brief.  JBS mentions it in their opposition, and they

21   say that the deadline is October 31st.

22        What's your view?

23        MR. MITCHELL:  No.  Our view is that -- and I

24   think the record will reflect this, that the original

25   nondispositive motion deadline was the same date as the end

1    of the fact discovery deadline, which was October 31st.  And

2    the parties all agreed that in light of what was a very busy

3    deposition schedule in October, to extend that deadline to

4    November 14th, and that was -- that was the day -- the last

5    day the nondispositive motion deadline that had been

6    extended to November 14th, that is the day that the motion

7    was filed.

8              THE COURT:  All right.  And then on November --

9    among other things, though, I mean, there was more activity

10   there.  For example, on September 28th we had a hearing

11   about serving letters rogatory to Canada for the deposition

12   of Mr. Matsumoto.  So that was a deposition that was being

13   discussed after the 30(b)(6) deposition of JBS, correct?

14             MR. MITCHELL:  Yes.  And I think there were many

15   others as well, but yes.

16             THE COURT:  Yes, there were.  And, in fact,

17   they're well summarized, I think, in a stipulation of

18   November the 3rd where there's a whole bunch of depositions

19   that are going to be taken after the close of fact

20   discovery, and this 30(b)(6) is not on them.

21             MR. MITCHELL:  That is correct, although I think

22   there are other depositions in the case that were not listed

23   there as well that are currently being discussed.  But you

24   are correct, Your Honor, that was not -- the JBS 30(b)(6)

25   that's the subject of this motion was not identified there.

1          THE COURT:  Okay.  So I've been asking you a lot

2     of -- why then is this motion timely?

3          MR. MITCHELL:  Well, Your Honor, I think, in our

4     view, I mean, we didn't understand any of the -- the

5     pretrial order or the -- and the case management plan that

6     we submitted to require that unless our motion was

7     specifically stated in there, that it would be -- that it

8     would be waived.

9          And the delay, I think, that we're talking about

10    that JBS is hanging its hat on here really amounts to what

11    is a couple of weeks in a very -- in what was a very busy

12    last month of fact discovery.  There were dozens of

13    depositions, dozens of depositions of defendants, more than

14    30 depositions of DAPs, and that was the reason why the

15    parties extended that nondispositive motion deadline from

16    October 31 to November 14th.

17         So what we're talking about, I think, from our

18    perspective, is JBS' complaint that it should have been

19    filed a few weeks earlier, and I don't think that that

20    constitutes delay.  Certainly it is not consistent with the

21    delay that's described in the cases that they cite, which

22    were, you know, months, in some cases over a year of delay,

23    when a party sought at the very end of fact discovery

24    extensive discovery documents, dozens of document requests,

25    dozens of interrogatories.

1          Here, we're talking about, I think, a limited

2     deposition of no more than a few hours, and I can explain

3     that in more detail if it would be helpful to the Court.

4          But for all of those reasons, I don't think that

5     this qualifies as the kind of delay that would warrant

6     precluding us from taking the deposition that we think is

7     important.

8          THE COURT:  Sorry about that.

9          Is your claim then that there was no delay, or is

10    it your claim that there was delay but it's not undue delay?

11         MR. MITCHELL:  I don't think there was any --

12    well, I don't think there -- I don't think we delayed,

13    because we worked -- I can tell you, given how busy we were,

14    we believed we were diligent and worked expeditiously to get

15    this motion filed by the deadline that was set, the extended

16    deadline that was set upon agreement of the parties.

17    Certainly we would -- I do not believe that the delay was

18    undue.

19         THE COURT:  Okay.  And the reason I was muted is

20    because I was checking on the date for the nondispositive

21    motions deadline, and I can tell you what I found, which is

22    that on September the 9th the Court approved a stipulation

23    that extended the nondispositive motion deadline to November

24    14th.  The docket number is 1486 and 1488, but that order

25    was followed and, in my view, therefore superceded by

1    pretrial order number 1, because that came out on October

2    4th and that set a nondispositive motions deadline of

3    October 31st.

4            So I am taking the view that this is untimely, but

5    I'm also willing, of course, to hear what you have to say as

6    to why any delay is excusable or not undue or whatever the

7    words would be.

8            In connection, though, with the importance that

9    you attach to this deposition, because you just did say

10   something about that, I note that there are, correct me if

11   I'm wrong, about 20 direct action plaintiffs in this case

12   and there's two of them on this motion, plus the

13   Commonwealth, and I don't think you've tried to have the

14   same 30(b)(6) topics with any of the other defendants.

15   That's not explained in your briefing, and it at least makes

16   my eyebrows go up because I wonder whether that's evidence

17   that it's not really all that important, and if it's not

18   really all that important, that would factor into, of

19   course, a proportionality analysis.

20           Could you speak to that a little bit, please?

21           MR. MITCHELL:  Yes, of course.  So I think -- and

22   JBS was quite careful about how it worded this.  There are

23   many more than 20 DAPs in the case.  What its opposition

24   said is that of the 20 DAPs who could have joined this

25   motion, because there are many DAPs, it appears, as we

1    interpret from the filings in the case, that have settled.

2    So there are -- there are some numbers of DAPs, 20 to 30

3    DAPs who it appears have settled with JBS and, therefore, as

4    we understand it, could not join our motion.  And obviously,

5    the classes -- the classes haven't joined our motion because

6    they also have settled with JBS and agreed to pay, as you

7    know, nearly $60 million to settle with JBS.

8         But if the inference that JBS is trying to have

9    you draw that the other DAPs who remain in the case disagree

10   with us on this motion, I don't think that that is correct.

11   I can represent to you that I'm unaware of any DAP who could

12   have joined this motion who disagrees with it.  And, of

13   course, the other DAPs don't have to join the motion to get

14   the benefit of it.  If the motion were to be granted, they

15   would get the benefit of the testimony and they could use

16   it.

17        And I will also say, you know, in my duty of

18   candor, that we -- the moving DAPs maybe didn't give the

19   other DAPs who could have joined this motion enough time,

20   given the flurry of activity that was happening the end of

21   discovery in terms of joining the motion, but I don't

22   think -- I don't think it's fair to say that because there

23   aren't more of the remaining DAPs who could have joined this

24   motion, that they don't agree with it and that they don't

25   consider it to be important.

```
1                    I would say --

2                    THE COURT:  That's part of it.  And just to be

3       clear, I didn't draw any conclusion that the other DAPs

4       disagreed with you.  Rather, I gathered that in the press of

5       business, people have to make choices about how they

6       allocate their time.  They allocate their time to things

7       that are important.  And if the other DAPs are not -- you

8       know, can't be bothered to join this motion, it's because

9       it's far down on their to-do list, if their to-do list is

10      ordered top to bottom in terms of priority.  That's more --

11      and it wasn't even a conclusion I drew.  It was a question I

12      wanted to ask you.

13                   What about then the fact that there are a number

14      of other defendants who have also said, we're not answering

15      questions at 30(b)(6) about our antitrust policies and

16      training on them?  And it doesn't look like there are

17      motions to compel pending against them.

18                   MR. MITCHELL:  I think there are a couple of

19      differences between JBS that makes JBS uniquely situated

20      here.

21                   The first is that I don't think JBS is in the same

22      position relative to these other defendants as to their

23      objections.  So, for example, Hormel objected to that topic

24      on grounds of burden, specifically to this issue of

25      policies.  JBS did not.
```

1          Seaboard objected to the topic as irrelevant.  As

2     we point out in our motion, JBS did not identify a relevance

3     objection in response to these two specific topics.

4          Triumph is the other defendant that JBS cites in

5     its papers.  It objected to the similar topic as calling for

6     privileged information insofar as the topic sought

7     interpretations by counsel but otherwise agreed to put up

8     someone on the topic and, indeed, that witness testified in

9     response to questions about that topic.  So in that way, I

10    don't think -- I think JBS is not the same as the other

11    defendants.

12         And another, I think, important reason to this

13    notion that we're singling out JBS, I think there's an

14    important distinction about JBS in what I would characterize

15    what appears to be a systemic problem with compliance in

16    light of several facts, the first being it's widely been

17    reported that JBS has implemented an increased compliance

18    program in response to -- or in the wake of scandals by its

19    parent company and senior executives, resulting in JBS'

20    parent company paying I think over -- or in the neighborhood

21    of 250 or more than 250 million in fines to the DOJ and the

22    SEC.  Similarly, I think a subsidiary of JBS, Pilgrim's

23    Pride, has entered into a plea agreement in the chicken

24    case, as you probably know, agreeing to pay a fine of I

25    think it's $107 million in that case.

1          So with respect to its compliance conduct, I think

2     JBS appears to be differently situated, which is why we

3     think testimony from JBS is important.

4          THE COURT:  All right.  Thank you.

5          Mr. Fagnani, do you wish to be heard on behalf of

6     the Commonwealth?

7          MR. FAGNANI:  No, Your Honor, I don't.  I don't

8     have anything to add to what Mr. Mitchell has said.

9          THE COURT:  Fair enough.

10          Ms. Nelson, will it be you or Mr. Rashid who

11     speaks on behalf of JBS?

12          MS. NELSON:  Good afternoon, Your Honor.  It will

13     be me.

14          THE COURT:  Okay.  You have the floor.

15          MS. NELSON:  Thank you, Your Honor.

16          Well, Your Honor, we are very surprised to be here

17     today, given the lack of any kind of telephone conference or

18     meet-and-confer on these two disputed topics.

19          And, Your Honor, we agree with you that this

20     motion is untimely, and I won't belabor that point.  But,

21     Your Honor, they conducted this deposition without meeting

22     and conferring on these two topics.  That was two and a half

23     months ago.  Mr. Manternach testified for nearly a full day

24     on September -- back in September, and, Your Honor, we --

25          THE COURT:  September 27th?

1            MS. NELSON:  Sorry?

2            THE COURT:  September 27th?

3            MS. NELSON:  Yes.  And we would be in a much

4    different position today if the DAPs had raised these

5    disputed topics on that meet-and-confer call that we did

6    have prior to the deposition.  And as Mr. Mitchell

7    referenced, during the deposition we made a record that they

8    never met and conferred with us on the --

9            THE COURT:  Well, to Mr. Mitchell's point,

10   Mr. Mitchell would take issue with your use of the word

11   "never" because there was a meet-and-confer over the draft

12   30(b)(6) notice back in August.  I understand that you are

13   probably entitled to, you know, technically stand on the

14   idea that there wasn't a meet-and-confer following the

15   filing of the 30(b)(6) notice.  But really, as a practical

16   matter, why wasn't that August meet-and-confer sufficient to

17   put you on notice?

18           MS. NELSON:  Before this argument, Your Honor -- I

19   was not on that August call either, but before this

20   argument, I clarified with JBS' counsel, who was on that

21   call -- Mr. Rashid and I asked specifically, were these two

22   topics discussed on the August call, and he said no, they

23   were not discussed on that call.  And even if they were, as

24   Your Honor has noted, that's not the same as having actually

25   been served with official topics and serving official

1    objections and responses and actually meeting and conferring

2    on those topics prior to the deposition.

3            THE COURT:  Correct me if I'm wrong, but I don't

4    think that anywhere in your brief you said that these topics

5    were not relevant.  You say they're not -- you say that

6    complying is unduly burdensome and not proportional, but I

7    don't think you're saying that the examination of JBS'

8    antitrust policies and training of executives on the

9    antitrust laws is irrelevant.

10           MS. NELSON:  The policies themselves may be

11   marginally relevant, so our argument, Your Honor, is that

12   they are not important and that it would be unduly

13   burdensome and that that burden outweighs the benefit of

14   these topics.

15           And, Your Honor, I think you were right to have

16   your eyebrows raised by the fact that there are only three

17   of the 20 DAPs that have claims against JBS joining this

18   motion.  You know, it's significant.  The other DAPs did not

19   put their name on this, which is telling, and --

20           THE COURT:  Well, let me interrupt you on that.

21           MS. NELSON:  Sure.

22           THE COURT:  The briefs on both sides were written

23   by very good lawyers who chose their words carefully.  That

24   is not a criticism and it's, in fact, a compliment.  And

25   Mr. Mitchell points out that the number of DAPs who could

1    join this motion is actually, at least I got the impression,

2    quite small because a number of people have settled with

3    your client and, therefore, aren't in a position to anymore

4    be taking depositions of your client.

5              MS. NELSON:  I think what he was saying is there

6    are actually more than 20 DAPs in this case -- or many more

7    than 20 DAPs in this case, but there are 20 DAPs with claims

8    remaining against JBS who could have joined this motion.

9              THE COURT:  All right.  Then -- okay.  No, that's

10   all the questions I have.  Thank you.

11             MS. NELSON:  I'd like to address, Your Honor,

12   Mr. Mitchell's argument about why JBS is uniquely situated.

13   And first, his claim that there are systematic problems with

14   compliance is a red herring, those are separately

15   incorporated entities.  Pilgrim's Pride is a publicly traded

16   entity that is in the business of chicken.  These are

17   different executives, different decision-makers than the

18   pork decision-makers at JBS USA here.

19             THE COURT:  Well, it's the same family of

20   companies, though, Ms. Nelson, and there's just -- I don't

21   know that you can really dispute that there have been some

22   problems.

23             MS. NELSON:  With other business units --

24             THE COURT:  Well, with other business units of the

25   same corporate family, leading to payments of fines in the

1    hundreds of millions of dollars.

2             MS. NELSON:  And the fact, as you mentioned, that

3    they are not seeking the same testimony against the other

4    defendants is also telling that this is not that important

5    to their claims.

6             Your Honor, I'll note that JBS' objections are

7    very similar to the other defendants.  We objected based on

8    relevance -- we objected that -- based on proportionality

9    because this case isn't about employment practices.  We

10   objected based on burden.  We objected based on privilege

11   and legal conclusions, the same as Hormel and Seaboard did.

12            And I'll note that Mr. Mitchell's firm took the

13   deposition of Hormel, and Hormel did not provide a witness

14   on these topics and there's no motion.  And, again, it's

15   just an indication that this extra testimony is not

16   proportional -- or is not proportional because it's not

17   important to their claims.

18            THE COURT:  All right.

19            MS. NELSON:  And, Your Honor, if I may, as to the

20   delay, that also goes to the proportionality analysis,

21   because if this were really important to the DAPs, they

22   would have raised this dispute much earlier than they did.

23            And, Your Honor, they did miss the deadline in the

24   Court's scheduling order, so as you know, they have to show

25   diligence and good cause, and I didn't really hear any

1    explanation of diligence or good cause that would justify

2    missing the burden, especially in light of the fact that

3    even between the deposition and between the close of fact

4    discovery and the nondispositive motion deadline, these

5    issues were raised and the Court ordered the parties to

6    specifically disclose any discovery that was going to happen

7    after the close of fact discovery.  Specifically asked the

8    parties to call out that information, specifically asked the

9    parties to promptly meet and confer on any disputed issues.

10          And we had a case managements conference.  We

11   submitted a joint status report that outlined very

12   specifically the depositions and all the fact discovery that

13   was going to happen after the Court's deadline.  We

14   discussed those issues with the Court at the case management

15   conference, including upcoming motions.  And then we filed a

16   stipulation very specifically outlining that discovery that

17   was going to happen after October 31st.  The Court, of

18   course, issued an order on that stipulation.

19          And during all of these opportunities, these DAPs

20   remained silent.  And they filed their motion on November

21   14th, two weeks after the nondispositive motion deadline,

22   and they did so without ever requesting a call from JBS on

23   this issue.  In fact, they emailed on that date and said,

24   we're calling the Court for a hearing date, and we responded

25   that please don't contact -- this is a surprise to us;

1     please don't contact the Court until you hear from us.  And

2     then they said, well, today is the deadline, in their view,

3     so we're going to file our motion.

4          So, Your Honor, for all of these reasons, we

5     believe that Your Honor should deny the motion as untimely

6     because they did not act with diligence and they didn't

7     fulfill their meet-and-confer obligation.

8          And, Your Honor, I'll just touch on burden.  Even

9     if this testimony were marginally important, which we don't

10    believe it is, but even if it were, the burden would

11    outweigh any benefit because these are legal compliance

12    policies.

13         And if you look at the policy itself, Your Honor,

14    which is Exhibit -- one of the DAP's Exhibit F, the person

15    that is in charge of enforcing the policy, the person in

16    charge of compliance issues is the ethics officer, and it

17    states that the ethics officer is JBS' general counsel.  So

18    this is a policy that's developed and implemented by legal

19    counsel.  It is aimed at legal compliance.  Specifically the

20    sections that are at issue in this motion deal with

21    compliance with the antitrust laws, and that is improper

22    testimony to seek from a lay witness.

23         Also --

24         THE COURT:  Wait.  Why is that?  I mean, okay, so

25    legal counsel says, don't fix prices.  Why is it illegal or

1      improper -- or even improper to ask an executive, do you

2      understand it's illegal to meet with your competitors and

3      agree on price?

4              MS. NELSON:  Well, you can ask about the very

5      language of the policy, but going beyond the language of the

6      policy, if there are issues that come up, those are going to

7      go to legal.  Those are going to go to the general counsel,

8      ultimately, and --

9              THE COURT:  Well, you hope they are, but maybe

10     they're not, you know.  And I think that that would be a

11     perfectly fair question to ask.

12             MS. NELSON:  So to prepare a witness on this,

13     though, you essentially need to sit down with in-house

14     counsel and get in-house counsel's view on all this, and I

15     think that invades the attorney-client privilege.  And there

16     are a number of cases in our brief that actually do say that

17     legal compliance policies necessarily invoke legal

18     conclusions.

19             THE COURT:  Which cases are those?  Because I've

20     got maybe four cases.  You've got the *Polyurethane Foam*

21     case, *J & M Distributing*, the *Linerboard* case, and the

22     *Tableware* case, but those deal with the admissibility of

23     antitrust policies into evidence.  They don't deal with

24     deposition testimony about antitrust compliance policies.

25             MS. NELSON:  Yeah, and that's exactly right, Your

1  Honor.  So the cases that I am talking about are, on page 15

2  of our brief, the *MM Steel* case says, the internal antitrust

3  compliance policies necessarily present legal conclusions as

4  of the scope and the meaning of the act.  And then we cite

5  cases in general that it's improper to seek late testimony

6  from a 30(b)(6) witness regarding legal conclusions, and

7  those cases are cited on page 15 of our brief.

8             THE COURT:  All right.  Let me go back to

9  Mr. Mitchell for some brief rebuttal, and then we will see

10 where we are.

11            Mr. Mitchell, how many direct action plaintiffs

12 does it take to file a motion?  How many direct action

13 plaintiffs are in this case that could have joined this

14 motion and did not do so?

15            MR. MITCHELL:  Well, I will take -- well, I don't

16 know the exact number of DAPs in the case, but I think it's

17 north of 50 or 60.  But just taking JBS' representation that

18 there are 20 DAPs in the case who have current -- who

19 currently have claims against JBS, our clients are two of

20 them, so that would leave 18.

21            I suppose if it would make a difference to JBS or

22 the Court about the significance of this, we could take a

23 poll of the DAPs that remain, whether they agree or join the

24 motion, and report back to the Court.  But I don't think

25 that's necessary for the reasons I said, which is, you know,

1    all of those DAPs who remain with claims against JBS will

2    benefit from any deposition that the Court permits us to

3    take.

4            If I could just address some of the arguments that

5    Ms. Nelson made with respect to burden as it goes to the

6    proportionality analysis.  JBS' burden objection is

7    boilerplate and nothing more than that, nor have they

8    substantiated it, I think, in any way as this Court

9    typically would require through an affidavit or otherwise.

10           With respect to this notion that the testimony

11   that we would seek is privileged, obviously that's hard to

12   square with the fact that the policies themselves were

13   produced, and they're not claiming privilege over those.

14           And JBS seems to want to have it both ways, which

15   is you have the documents.  The documents should be

16   sufficient.  But if that's true, then there can't be a

17   burden as to preparing a witness.  The only burden that I've

18   heard is that we would need to consult with an in-house

19   lawyer about, you know, the testimony that would be

20   provided.  Well, it wouldn't be the first time that an

21   in-house lawyer ends up being the 30(b)(6) designee on a

22   topic.  I mean, that's what you do in all cases.  If a

23   witness has personal knowledge as to some topic and it's

24   more efficient to do so and less burdensome than to prepare

25   someone else, then you just put up that witness.  So if it's

1    in-house counsel who's the designee, that's the way to

2    address that problem.

3              And as you identified, I think, there are lots of

4    questions here about the policies and the mechanics of the

5    policies.  When they were created, when they were

6    implemented, were they implemented throughout the entire

7    relevant time period, what was the process by which

8    employees certified their acknowledgment with that policy.

9    For example, if you look at the policy itself, which is

10   Exhibit F to our motion, there's an acknowledgment at the

11   back of that that says, all employees are provided this

12   policy and are supposed to sign it.  And then a copy goes to

13   the HR file at JBS and the person is given a copy.  None of

14   those, as far as we can tell, were produced.  So was this

15   policy in paper only or what did -- did JBS actually follow

16   it?  And if so, what did it do?  How did it train the

17   employees to follow the policy?  And I think all of those

18   things would be relevant -- certainly relevant and,

19   therefore, discoverable.

20             And I think this goes to something you identified,

21   which is there's a difference between discoverability and

22   admissibility.  And I think we should not lose sight of the

23   fact that we would hope that obviously there -- there will

24   be some court for the DAPs who have a remand right, and if

25   this case were to go back to the courts in which we were

1     originally filed, this question about admissibility would be

2     confronted and decided by the trial court.

3              So it would be our view that the proper step here

4     is to do this incrementally, not to foreclose the

5     deposition, but because this information is discoverable, we

6     take the discovery.  And as I said, there's only about two

7     and a half hours left on the record of the JBS 30(b)(6).  I

8     don't even think we'd need all of that time.  So we're

9     talking about a very limited deposition, which we think

10    there certainly is benefit to getting for the reasons I

11    said.  And once we have that information, at least we have

12    it, and at least we can argue to the trial court when we get

13    there about why this evidence is admissible, and I don't

14    think we should foreclose that now and thereby preclude any

15    argument in the trial court from ever being made.

16             So I think -- and just one more point, Your Honor,

17    if I could, on this notion of legal conclusions.  If you

18    look at the cases that they cite, the topics at issue in

19    those cases were really contention deposition topics.  What

20    do you contend as to some legal issue in the case?  That is

21    not what these topics are.  What is your interpretation of

22    the contracts at issue?  What are the facts that you contend

23    that show that you acted in a way with ordinary care, which

24    is a legal issue?

25             So I think there are important distinctions to be

1    made with respect to the topics here.  And I think there's

2    plenty of factual information -- non-privileged factual

3    information that we can ask about these policies that

4    warrant the deposition.

5            I will stop there.  Thank you for the opportunity,

6    Your Honor.

7            THE COURT:  Okay.  Thank you both.  I'm going to

8    step away for about two or -- two to five minutes.  Just sit

9    tight.  I'll be back.  I anticipate being able to rule on

10   this today, but just hold on.

11           (Off the record.)

12           THE COURT:  All right, everybody.  Thank you for

13   your patience.

14           The motion of the direct action plaintiffs Sysco

15   and Amory and also of plaintiff, Commonwealth of Puerto

16   Rico, is respectfully denied.  Here are the reasons.

17           First of all, the motion is untimely.  I went

18   through the timeline when I was speaking with Mr. Mitchell,

19   but I will do it again now.

20           And I also want to say that I'm not going to be

21   issuing a written order on this and that, therefore, this

22   oral ruling is going to be the formal order of the Court.

23           There was discussion in August.  There was a

24   meet-and-confer.  There are differing claims about what was

25   discussed at that meet-and-confer, but it really doesn't

1    matter because that was not a meet-and-confer on a filed

2    motion.  And that is not simply a formalistic distinction.

3    That is a distinction with a difference, because when one

4    has the concrete motion in front of a person, lawyers are

5    able to talk about the actual motion that was filed.

6            The 30(b)(6) notice was provided on the 14th of

7    September.  Objections were made by JBS on the 20th of

8    September.  A meet-and-confer was held on the 22nd.  These

9    topics were not raised at that meet-and-confer.  These two

10   topics were not on the list of topics to be discussed at the

11   meet-and-confer.

12           The 30(b)(6) deposition went forward on the 27th

13   of September.  There were objections interposed by JBS when

14   questions were sought to be asked, but there was no further

15   discussion amongst counsel, nor were these topics otherwise

16   addressed during the deposition itself.

17           There was, however, discussion of a number of

18   other depositions that would take place after the close of

19   fact discovery.  And for that, I refer the parties to the

20   stipulation of November the 3rd, which goes on at some

21   length about a number of depositions that are going to be

22   taken afterwards, and also about the -- refer the parties to

23   the September 28th hearing on the letters rogatory for

24   Mr. Matsumoto's deposition in Canada.

25           There was a case management conference on the 17th

1    of October.  There is discussion in the minutes -- or there

2    is a line in the minutes noting that many depositions are

3    going to be taken after the close of fact discovery.  It

4    does not go into detail and, therefore, this deposition is

5    not discussed in those minutes, but neither is any other

6    deposition discussed in those minutes, or any other

7    post-close of fact discovery discussed in those minutes.

8             The deadline for fact discovery in this case was

9    October 31st.  That was also the deadline for nondispositive

10   motions.  Mr. Mitchell and I went back and forth a little

11   bit on this, but I will just reiterate as part of the ruling

12   that on September 9th of 2022, I did approve a stipulation

13   that extended fact discovery to November 14th.  We then,

14   however, had case management order -- excuse me, pretrial

15   order number 1 issued by Judge Tunheim on October 4th at

16   docket number 1525, which changed that date and made the

17   close of fact discovery and the nondispositive motion

18   deadline the same, October the 31st of this year.

19            I am also denying the motion for a failure to meet

20   and confer.  I take the meet-and-confer requirement

21   seriously.  I think that the meet-and-confer requirement is

22   important not just for resolving matters, which it rarely

23   does, but for focusing matters and allowing efficient and --

24   I guess the word I'll use is "focused" use of the Court's

25   time and of the parties' time.  People come to terms and

1    come to grips with the real issues that are in dispute.

2    There simply was not a meet-and-confer on these two topics

3    following the filing of the 30(b)(6) notice, and I cannot

4    find that a pre-30(b)(6) notice discussion back in August

5    serves as a meet-and-confer for a motion that is then filed

6    in October.

7           As to proportionality, what I will say about that

8    is that I do -- I know Mr. Mitchell feels strongly the other

9    way and I respect his opinions, and he did a very, very good

10   job of lawyering here today.  However, I cannot, at the end

11   of it all, escape the conclusion that I expressed earlier,

12   which is when people are busy, as these lawyers have been,

13   they choose to work on the things that are most important.

14   And, therefore, it is telling to me that a number of DAPs

15   have not joined in this motion that could have,

16   notwithstanding that yes, they will benefit from it.  And I

17   cannot get away from the conclusion that this motion was not

18   preceded by a meet-and-confer, was not brought up at a case

19   management conference, was not part of the November 3rd

20   stipulation, was really not grappled with at the deposition

21   itself on the 27th of September, and that does play into my

22   proportionality analysis.

23          As to JBS' objection that any 30(b)(6) deposition

24   testimony about the antitrust compliance policies would

25   necessarily implicate privilege and would necessarily call

1    for the legal conclusion, I reject that argument.  I do not

2    accept it.  However, based upon the reasons that I have

3    given for the ruling, it is not necessary for me to reach

4    that issue.

5           Mr. Mitchell, I understand you're disappointed, of

6    course, but do you have any questions or any requests for

7    clarification at this time?

8           MR. MITCHELL:  No, not at this time.  Thank you

9    very much, Your Honor.

10          THE COURT:  Ms. Nelson?

11          MS. NELSON:  No.  Thank you for your time, Your

12   Honor.

13          THE COURT:  All right.  Well, thank you, all.

14   Have a good weekend, and I'm sure we'll be talking again.

15   Take care.

16          (Court adjourned at 3:51 p.m.)

17                    *     *     *

18

19          I, Paula K. Richter, certify that the foregoing is

20   a correct transcript to the best of my ability from the

21   official digital recording in the above-entitled matter.

22

23          Certified by:  *s/ Paula K. Richter* _____

24                          Paula K. Richter, RMR-CRR-CRC

25