Christopher A. Smith
Partner

190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Direct: 314.480.1836
Fax: 314.480.1505
chris.smith@huschblackwell.com

January 20, 2023

**VIA CM/ECF**
Hon. John R. Tunheim
United States District Judge
U.S. District Court, District of Minnesota
Warren E. Burger Federal Building
316 N. Robert Street
St. Paul, MN 55101

     Re:    *In re Pork Antitrust Litigation*, Case No. 0:18-cv-1776 (JRT/JFD)

Dear Judge Tunheim:

As addressed at the December 20, 2022, Status Conference (Doc. 1692), Defendant Triumph Foods, LLC ("Triumph") moves for leave to file summary judgment as to the Direct Action Plaintiffs' ("DAPs") Consolidated Complaint (Doc. 1659) filed in December 2022. Triumph seeks leave because fact discovery has closed and the DAPs have no evidence to make out a threshold element of their claims as to Triumph: an unlawful agreement. Discovery has shown the DAPs' allegations against Triumph were baseless from the beginning. Their claims against Triumph should end here.

For the past four years, plaintiffs have struggled to pinpoint how Triumph entered into an agreement to control pork prices by restricting supply. Triumph was kept in this case with allegations of sow-herd reductions—falsely attributed to Triumph—in plaintiffs' complaints, which the DAPs copied and pasted as they entered the case. But fact discovery is now complete, and the facts make plain that the DAPs' allegations do not stand up against the record. Triumph is a pork processor only. Triumph is not a hog producer. Triumph owns no sows. Triumph operates at only one level of the supply chain in this case—pork processing. It is against this undisputed reality that the DAPs' allegations and evidence as to Triumph must be assessed.

Triumph was initially dismissed from this litigation because the Court recognized that, in a circumstantial case like plaintiffs', neither parallel conduct nor plus factors alone establish an agreement under Section 1 of the Sherman Act, and plaintiffs failed to allege parallel conduct as to any defendant, including Triumph. *In re Pork Antitrust Litig.*, No. 18-cv-1776, 2019 WL 3752497, at *5-9 (D. Minn. Aug. 8, 2019). Plaintiffs amended their

complaints and withstood a second round of motions to dismiss. There, the Court framed the "critical question" before it as whether plaintiffs sufficiently alleged how *each defendant* "affirmatively acted to reduce the supply of pork" and, with respect to Triumph, found that just two allegations nudged Plaintiffs' claims over the line: (a) that "[a] farm member of Triumph announced that it was reducing its herd by 11,000 sows in September 2008"; and (b) that "[i]n 2009, Triumph further reduced its herd by 6% (24,500 sows)." *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 768-69 (D. Minn. 2020). The Court found these allegations, along with similar allegations against several other defendants, to be the "most specific allegations of herd-size reductions" and that, taken as a whole, they plausibly alleged parallel conduct. *Id*. at 769-70.

After the plaintiffs survived this second round of motions to dismiss, DAP complaints began pouring in, each cutting and pasting liberally from prior complaints, and copying and pasting *verbatim* the allegations that Triumph reduced its sow herd. Before the DAPs filed their Consolidated Complaint, they were reminded by counsel for Triumph of what they had learned in discovery: that Triumph does not own—and has never owned—sows, and therefore made no sow reductions. But rather than withdrawing their claims against Triumph, the DAPs pushed ahead, while at the same time back-peddling from earlier allegations that Triumph itself undertook any specific actions to reduce pork supply. Specifically, the DAPs now allege that:

> In September 2008, Christensen Farms, a member of Triumph Foods, reported that it had cut back approximately 11,000 sows. In 2009, Triumph reported substantial cutbacks of approximately 24,500 sows, representing over 6% of its members' sow herd, contributing to historic production restraints in the pork industry.

*Id*. ¶ 258 (footnotes omitted). But the DAPs admit that Triumph itself made no reductions and that "Triumph *did not directly own* its members' sows." *Id*. n.66 (emphasis added).

The DAPs further allege, with no specifics, that in furtherance of the alleged conspiracy "Triumph focused its production on exports" that "constituted a significant portion of its production throughout the Conspiracy Period and reduced or otherwise limited Triumph's sales in the United States." *Id*.; *but cf. In re Pork Antitrust Litig.*, 495 F. Supp. 3d at 769-70 (noting that "Plaintiffs allege that Triumph focused its production on exports but do not provide specifics" and crediting only "specific allegations of increased exports" in concluding plaintiffs' plausibly alleged parallel conduct (cleaned up)).

Neither allegation is enough at this stage. The record is clear—as the DAPs' concede—that Triumph does not own sows. Triumph never has. So in a case where plaintiffs have no direct evidence of a conspiracy, the alleged sow-herd cuts fail to demonstrate parallel conduct, and thus fail to show Triumph entered into an unlawful agreement. And the vague export allegations fare no better, because the pork Triumph

processes is not sold by Triumph, whether domestically or abroad: it is sold by Seaboard. There is simply no evidence, circumstantial or otherwise, supporting DAPs' claims against Triumph.

What the record shows as to Triumph is the opposite of conduct aimed at reducing pork supply. From Triumph's inception in 2006 onward, Triumph has consistently expanded its pork processing output. In 2009, the year the DAPs accuse Triumph of reducing its non-existent sow herd, Triumph processed 50 million more pounds of pork than it did in 2008. And Triumph's processing volume from 2008 to 2018 steadily and dramatically trended upward, increasing by more than 3,000 head per day and by nearly 230 million pounds of pork per year over that time.

Judicial efficiency is served by allowing Triumph's motion now because the issues are straightforward. They concern a discrete set of dispositive, material facts that tie back directly to the current record and law of the case. Dispelling the confusion created by the DAPs' false allegations eliminates a defendant that lacks the capacity—because of its role and position in the pork supply chain—to conspire in the manner they allege.

Ultimately, Triumph seeks to set a narrow, and conclusive, record straight. Summary judgment at this time is the proper vehicle for Triumph to do so. Triumph attaches its motion and memorandum in support for the Court's convenience in assessing whether leave should be granted. To the extent the DAPs contend they are somehow unable to respond to Triumph's motion for summary judgment at this time, the Federal Rules provide a mechanism. Fed. R. Civ. P. 56(d). With the discrete facts at issue, and fact discovery now closed, however, it is difficult to conceive of a viable Rule 56(d) path. Regardless, if the DAPs wish to proceed under Rule 56(d), the Rule itself makes clear the time for them to do so is in "opposition" to Triumph's motion for summary judgment itself, once filed, and not in response to a motion for leave. *Id.* Triumph's motion is ready to be filed and Triumph requests leave to do so.

Respectfully submitted,

*/s/ Christopher A. Smith*
Counsel for Defendant
Triumph Foods, LLC