# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 0:18-cv-01776 (JRT-HB) |
| | **MEMORANDUM IN SUPPORT OF CONSUMER INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** |
| *This Document Relates to*: | |
| All Consumer Indirect Purchaser Plaintiff Actions | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 6

II.   BACKGROUND ......................................................................................... 8

III.  LEGAL STANDARD ............................................................................... 13

IV.   ARGUMENT ........................................................................................... 14

      A.    The Court should grant Counsel's request for attorneys' fees
            while the litigation is ongoing. .................................................... 15

      B.    Usage of the percent-of-funds approach here is appropriate. .................... 16

            1.    The $75 million cash settlement provides a substantial
                  and immediate benefit to the Consumer IPPs. ............................... 17

            2.    This case involves difficult factual and legal issues. ...................... 18

            3.    In taking this case on contingency, Counsel has been
                  exposed to significant risk. ............................................... 19

            4.    Counsel has invested significant time and resources to
                  advance this case. ........................................................ 20

            5.    The attorneys litigating this case have extensive
                  experience and expertise. ................................................. 22

            6.    The reaction of the class supports the award. ............................. 23

            7.    The request is consistent with the percentage awarded
                  in similar cases. ......................................................... 24

      C.    The lodestar cross-check confirms that the request is
            reasonable. ........................................................................ 25

            1.    The lodestar cross-check from the inception of the case
                  through December 2022 confirms the fee award is
                  reasonable. .............................................................. 26

            2.    The lodestar cross-check from July 2021 through
                  December 2022 confirms the fee award is reasonable. .................... 29

D.    The Court should reimburse the expenses Counsel has incurred over the course of this litigation ..................................................... 30

E.    The named plaintiffs expended significant time on this litigation and should be awarded $2,000 each. ......................................... 31

V.    CONCLUSION ..................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ........................................................ 10

*In re Airline Ticket Comm'n Antitrust Litig.*,
   953 F.Supp. 280 (D. Minn. 1997) ........................................................ 18

*In re Auto. Parts Antitrust Litig.*,
   2016 WL 8201516 (E.D. Mich. Dec. 28, 2016) ........................................................ 18

*In re Auto Parts Antitrust Litig.*,
   2018 WL 7108072 (E.D. Mich. Nov. 5, 2018) ........................................................ 20

*In re Auto. Refinishing Paint Antitrust Litig.*,
   2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ........................................................ 10

*Caligiuri v. Symantec Corp.*,
   855 F.3d 860 (8th Cir. 2017) ........................................................ 11, 14

*In re Capacitors Antitrust Litig.*,
   2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ........................................................ 11

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
   2020 WL 7133805 (D. Minn. Dec. 4, 2020) ........................................................ 17

*In re Centurylink Sales Pracs. & Sec. Litig.*,
   2021 WL 3080960 (D. Minn. July 21, 2021) ........................................................ 20

*In re Charter Commc'ns, Inc., Sec. Litig.*,
   2005 WL 4045741 (E.D. Mo. Jun. 30, 2005) ........................................................ 21

*In re Dairy Farmers of Am., Inc.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ........................................................ 18

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................ 12

*Dickey v. Advanced Micro Devices, Inc.*,
   2020 WL 870928 (N.D. Cal. Feb. 21, 2020) ........................................................ 20

*In re Diet Drugs Prod. Liab. Litig.*,
   2002 WL 32154197 (E.D. Pa., Oct. 3, 2002) ........................................................ 10

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................................ 18

*Huyer v. Buckley*,
   849 F.3d 395 (8th Cir. 2017) ........................................................................... 9, 18

*Johnson v. Georgia Highway Express*,
   488 F.2d 714 (5th Cir. 1974) ................................................................................. 9

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ................................................................ 8, 9, 18, 19

*Khoday v. Symantec Corp.*,
   2016 WL 1637039 (D. Minn. Apr. 5, 2016) ........................................ 14, 18, 21, 22

*Krueger v. Ameriprise Fin., Inc*.,
   2015 WL 4246879 (D. Minn. July 13, 2015) ...................................................... 18, 22

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ........................................................ 20

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
   847 F.3d 619 (8th Cir. 2017) ................................................................................. 8

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) .............................................................................. 13

*McDonald v. Edward D. Jones & Co., L.P.*,
   791 F. App'x 638 (8th Cir.) ................................................................................... 17

*In re Monosodium Glutamate Antitrust Litig.*,
   2003 WL 297276 (D. Minn. Feb. 6, 2003) ............................................................ 10

*In re Motorsports Merchandise Antitrust Litig.*,
   112 F. Supp .2d 1329 (N.D. Ga. 2000) .................................................................. 12

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
   2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) .......................................................... 16

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-aid Cap Antitrust Litig.*,
   2019 WL 1593939 (N.D. Cal. Mar. 8, 2019) .......................................................... 16

*Nat'l Collegiate Athletic Ass'n v. Alston*,
   141 S. Ct. 2141, 210 L. Ed. 2d 314 (2021) ........................................................... 16

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................. 11

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ............................................................... 18

*In re Processed Egg Prod. Antitrust Litig.*,
    2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ............................................ 11

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ................................................................. 21

*Shiyang Huang v. Schultz*,
    141 S. Ct. 252, 208 L. Ed. 2d 25 (2020) ................................................ 17

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    2014 WL 2946459 (E.D. Tenn. June 30, 2014) ...................................... 18

*In re St. Paul Travelers Sec. Litig.*,
    2006 WL 1116118 (D. Minn. Apr. 25, 2006) ......................................... 21

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002) ............................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................... 12

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ............................................ *passim*

*Yarrington v. Solvay Pharms., Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010) ...................................... 20, 21, 22

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 23(h) ............................................................ 8, 9

# I.    INTRODUCTION

For almost five years, Hagens Berman and Gustafson Gluek[1] have diligently worked on behalf of the Consumer Indirect Purchaser Plaintiffs (Consumer IPPs) in this complex antitrust case against the defendants, a group of pork processors who conspired to stabilize the price of pork in the U.S. Consumer IPPs have reached a settlement with defendant Smithfield Foods, Inc. for $75 million. This is the Consumer IPPs' second settlement, the first was with the JBS defendants for $20 million. Consumer IPPs have now reached settlements totaling $95 million, which represents an outstanding recovery for the Class.

The Smithfield settlement also represents a significant increase in recovery for the Consumer IPPs. This $75 million settlement represents a $2.36 million valuation for each point of Smithfield's market share—an increase from the approximately $1 million valuation for each point of JBS's market share in the first settlement. In addition to the financial compensation from the settlement, the Consumer IPPs have secured Smithfield's cooperation. This cooperation will bolster the class's claims against the six remaining, non-settling defendants that remain jointly and severally liable for the

---

[1] Throughout this memorandum, Hagens Berman Sobol Shapiro, LLP is referred to as "Hagens Berman" and Gustafson Gluek PLLC is referred to as "Gustafson Gluek." As shorthand, this memorandum refers to these firms collectively as "Counsel." *See* Order Granting Hagens Berman Sobol Shapiro LLP and Gustafson Gluek PLLC's Mot. for Appointment as Interim Co-Lead Counsel for Proposed Consumer Indirect Purchaser Class, ECF No. 151 (filed Oct. 15, 2018).

damages caused by Smithfield.[2] Further, because Smithfield and JBS together constitute about half of the existing market (54.5 percent on an adjusted basis), the class still stands to potentially recover from the remaining half of the total market.

From the inception of this case until December 31, 2022, all Counsel representing the Consumer IPPs have invested more than 37,000 hours and pursuing their claims. This litigation is not only long running, it has been hard fought. The docket contains more than 1,700 entries.

In particular, Class Counsel for Consumer IPPs have taken the bulk of responsibility for litigating on behalf of the Classes against Smithfield. The Direct Purchaser Plaintiffs filed a motion for preliminary approval of settlement with Smithfield on July 14, 2021. ECF No. 828 (filed July 14, 2021). At that point in time, document production had not been substantially completed and no depositions had been taken in the case. Following that settlement, Class Counsel for Consumer IPPs took the primary role in the continuing litigation against Smithfield, including leading negotiation of supplemental discovery from Smithfield (additional custodians and search terms), as well as taking depositions of key Smithfield witnesses such as Dhamu R. Thamodaran (former EVP of Smithfield), and Mark Copa (VP of financial planning and analysis). Scarlett Decl. ¶ 4.

---

[2] Six defendants remain in the Consumer IPPs' case (non-settling defendants): Agri Stats, Inc. (Agri Stats); Clemens Food Group, LLC, The Clemens Family Corporation, and Hatfield Quality Meats (together Clemens); Hormel Foods Corporation (Hormel); Seaboard Foods LLC (Seaboard); Triumph Foods, LLC (Triumph); and Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (Tyson).

Class Counsel requests an attorneys' fee award of $24,975,000, which is approximately 33.3% percent of the proposed settlement, equating to a modest 1.34 multiplier from Counsel's lodestar of $18,607,349.00 from the inception of the case through December 2022. This is the second request for fees in this case—on September 14, 2022, this Court awarded Class Counsel for Consumer IPPs $6,600,000 in fees and $322,972.19 in costs related to Consumer IPPs' settlement with JBS. (ECF No. 1491). Even looking only at the fees incurred from the last request for attorneys' fees (which showed a lodestar from the inception of the case through June 30, 2021), the lodestar from July 2021 through December 2022, the requested fee award equates to a reasonable 1.77 multiplier from Counsel's lodestar of $14,141,941.50. Counsel also seeks reimbursement for the litigation expenses in the amount of $2,526,958.37 already incurred as well as $2,000 service awards for each class representative. As discussed below, these requests are well within the range of awards made by courts in this District.

## II.     BACKGROUND

From the onset of this case—five years ago—Hagens Berman and Gustafson Glueck have zealously represented the Consumer IPPs' interests. As noted in Counsel's prior memorandum in support of an award of attorneys' fees and expenses in the JBS settlement,[3] Counsel has invested significant time and resources into developing this case, even without any certainties of their investigation's outcome—or even that Hagens

---

[3] *See* Memo. in Supp, of Consumer IPPs' Mot. for an Award of Attorneys' Fees and Expenses, ECF No. 951 (filed Oct. 6, 2021).

Berman and Gustafson Gluek would be appointed as lead counsel. Scarlett Decl., ¶ 2.[4]

Nevertheless, Counsel for the Consumer IPPs has continued to push this litigation

forward. Defendants are large companies, represented by some of the most sophisticated

law firms in the country, which has ensured that every dispute in this litigation has been

hard-fought.

To avoid increasing costs to the class, even when it meant increasing the risk to

their firms, Counsel kept the pre-filing investigation limited to just a few attorneys who

now intimately know the intricacies of the pork processing market. These same attorneys

wrote every briefing and filed every motion, including the recent motions in support of

class certification. Scarlett Decl., ¶ 3. For five years, these few, dedicated attorneys have

diligently represented the class, ensuring that the plaintiffs can seek justice for their

injuries.

Throughout this case, Counsel for the Consumer IPPs have engaged in substantial

motion practice and discovery efforts. Counsel took the lead on negotiating much of the

discovery, including taking the lead on drafting many other interrogatories and requests

for production served on defendants. Attorneys for the three classes, including many

attorneys representing the Consumer IPPs, have reviewed, catalogued, and distilled over

3.9 million documents produced by defendants and non-parties. In addition, Counsel

subpoenaed 79 non-parties for data and information relating to their claims and data to

---

[4] "Scarlett Decl." refers to the Decl. of Shana E. Scarlett in Supp. of Consumer IPPs'
Mot. for an Award of Attorneys' Fees and Expenses, which accompanies this motion.

perform an analysis of the pass-through of overcharges to the consumer class. Counsel then led meet and confers with third parties to negotiate the production of structured data. Scarlett Decl., ¶ 4.

Counsel for the Consumer IPPs have also been deeply involved in developing the facts of this case as defendants' and third parties' document productions have rolled in. Several individuals have worked full time to review hundreds of thousands of defendants' and third parties' documents and compile the best documents for defendants' and third parties' depositions. Counsel have drafted detailed interrogatory responses to over 25 interrogatories served by the Defendants. Scarlett Decl., ¶ 5.

In addition, over 175 depositions have been taken of defendant employees, their alleged co-conspirators, and third parties—many of which were led by the attorneys at Hagens Berman and Gustafson Gluek. Preparing for these depositions takes significant time and effort. Staff attorneys, associates and partners at each respective firm spent hundreds of hours combing through documents, selecting exhibits and preparing to ask questions at these depositions, many of which will be used as trial testimony in this action. Counsel for the Consumer IPPs took depositions of key Smithfield witnesses, as well as led many depositions of other Defendants, including Tyson and Agri Stats. Defendants deposed each of the named class representatives whom were all prepared for deposition and defended by Counsel for the Consumer IPPs. Scarlett Decl., ¶¶ 6, 7.

Counsel has also spent a significant time and effort preparing and filing the pending motion for class certification. Scarlett Decl., ¶ 8. The Consumer IPPs' expert

witness, Dr. Hal Singer, has submitted over 300 pages of testimony.[5] Consumer IPPs

submitted nearly 300 exhibits in support of their motion.[6] Defendants have also filed a

motion to strike the testimony of Dr. Singer, which was opposed by Consumer IPPs.[7] In

addition, Defendants filed a sur-reply opposing class certification, necessitating the filing

of a sur-rebuttal brief by the classes jointly.[8]

Further, Counsel worked extensively with the Consumer IPPs' expert, Dr. Hal J.

Singer, to explain the economic mechanisms in this market and empirically demonstrate

the overcharge. Demonstrative of the staggering amount of work behind this litigation, in

his opening declaration, Dr. Singer relied upon approximately 856 gigabytes of raw data

(6 gigabytes from Agri Stats, 164 gigabytes from defendants, and 686 gigabytes from

non-parties for regressions measuring pass-through). To put this vast amount of data in

context, it would take over 1,220 standard CD-ROMs to fit all of this data, or over

590,000 standard 3.5" floppy disks. Scarlett Decl., ¶ 9.

---

[5] Decl. of Hal J. Singer, Ph.D. in Supp. of Consumer IPPs' Mot. for Class Certification, ECF No. 1347 (filed May 2, 2022) ("Singer Decl."); Reply Declaration of Dr. Hal Singer in Supp. of Consumer IPPs' Mot. for Class Certification, ECF No. 1626 (filed Nov. 18, 2022).

[6] Declaration of Shana E. Scarlett in Supp. of Consumer IPPs' (1) Reply in Supp. of Mot. for Class Certification; and (2) Opposition to Defendants' Mot. to Exclude the Testimony of Dr. Hal Singer, ECF No. 1627 (filed Nov. 18, 2022); Declaration of Shana E. Scarlett in Supp. of Mot. to Certify Class filed by Consumer IPPs, ECF No. 1345 (filed May 2, 2022).

[7] Consumer IPPs' Opposition to Defendants' Joint Mot. to Exclude the Expert Report and Testimony of Dr. Hal Singer, ECF No. 1625 (filed Nov. 18, 2022).

[8] Class Plaintiffs' Sur-Rebuttal in Supp. of Pls.' Mots. for Class Certification, ECF No. 1722 (filed Jan. 5, 2023).

Additionally, Counsel worked closely with the class representatives, including reviewing class representatives' documents and responding to defendants' discovery requests. To respond to defendants' interrogatories and requests for production, hundreds of thousands of personal emails for each class representative were searched. Counsel reviewed every single plaintiff document turned over to defendants. Counsel also helped the class representatives prepare for, and defended them at, their depositions. Class representatives sat through more than 87 hours of depositions—an average of three hours for each for the 29 total depositions. Scarlett Decl., ¶ 10. For most class representatives, this was their first time being deposed and having themselves exposed to such invasive inquiries. Each representative spent as much as 50 hours understanding the complaint and preparing for depositions. Scarlett Decl., ¶ 11. All of the depositions were attended by multiple defense counsel, and at some depositions, partners—some of whom have more than 25 years of litigation experience—led the questioning.

On November 9, 2022, this Court granted preliminary approval of the $75 million settlement between the Consumer IPPs and Smithfield.[9] As the Consumer IPPs discussed in its Motion for preliminary approval,[10] this settlement was the result of arm's-length negotiations conducted using an experienced mediator. Scarlett Decl., ¶ 18. Litigation has

---

[9] Order Granting Mot. for Prelim. Approval of Class Action Settlement Between Consumer IPPs and Defendant Smithfield Foods, ECF No. 1588 (filed Nov. 9, 2022).

[10] *See* Memo. in Supp. of Mot. for Prelim. Approval of the Class Action Settlement Between Consumer IPPs and Defendant Smithfield Foods, Inc. and to Direct Notice to the Settlement Class, ECF No. 1515 (filed Sept. 27, 2022) at 1.

inherent risks, and settlement reduces those risks by guaranteeing that the Consumer IPPs will receive at least some compensation for their claims. Scarlett Decl., ¶ 17.

As with the prior settlement, settling here allows plaintiffs to focus on building their strongest case against the remaining defendants. Beyond monetary compensation, the Smithfield settlement benefits the class because Smithfield has agreed to cooperate with the class plaintiffs on discovery requests. These cooperation terms—which include giving the Consumer IPPs copies of any additional documents, produced in this litigation, an agreement to authenticate Smithfield documents, and an agreement to respond to Counsel's questions regarding structured data—provide the Consumer IPPs with significant assistance in moving for class certification and litigating the claims against the remaining defendants at trial.[11]

### III.    LEGAL STANDARD

Rule 23(h) permits a district court in a class action proceeding to "award reasonable attorney's fees and nontaxable costs that are authorized by law[.]" The Eighth Circuit reviews decisions by district courts regarding attorney fees in a class action settlement under the "abuse of discretion" standard.[12]

There are two approaches district courts generally use to award fees. Under the "percentage of benefit approach," a court is permitted to award fees "equal to some fraction of the common fund that the attorneys were successful in gathering during the

---

[11] *See* Settlement Agreement, ECF No. 1516 (filed Sept. 27, 2022).

[12] *See Keil v. Lopez*, 862 F.3d 685, 700 (8th Cir. 2017) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999)).

course of the litigation."[13]  Under the "lodestar methodology," courts may award fees by

multiplying the hours worked "by a reasonable hourly rate of compensation so as to

produce a fee amount which can be adjusted, up or down, to reflect the individualized

characteristics of a given action."[14] The district court has discretion "to choose which

method to apply, as well as to determine the resulting amount that constitutes a

reasonable award of attorney's fees in a given case."[15] "Although not required to do so,"

district courts that use the percentage of the benefit approach may verify the

reasonableness of the award "by cross-checking it against the lodestar method."[16]

Under either approach, to assess whether a fee award is reasonable under Rule

23(h), the Eighth Circuit encourages district courts to "consider the relevant factors from

the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20

(5th Cir. 1974)."[17]

## IV.    ARGUMENT

Counsel for the Consumer IPPs requests: (1) an award of attorneys' fees in the

amount of 33.3% percent of the $75 million settlement fund; (2) reimbursement of

---

[13] *Id.* at 701 (quotations and citations omitted).

[14] *Id.*

[15] *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (quotations and citations omitted).

[16] *Keil*, 862 F.3d at 701.

[17] *Keil*, 862 F.3d at 701; *also Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (permitting the district court to use the *Johnson* factors to assess the reasonableness of the fees based on the percentage-of-funds method).

expenses Counsel has advanced to date on behalf of the class; and (3) service awards of $2,000 for each of the class representatives.

As discussed below, Counsel's request for $24,975,000 in fees from the onset of the case until December 31, 2022, is reasonable and in line with the fees awarded in similar cases. Applying a lodestar cross-check, Counsel's request represents a modest 1.34 multiplier, well in line with other cases. Even using only the lodestar incurred since the first fees motion (which submitted time for Counsel from inception through June 30, 2021), Counsel's request would still represent a reasonable multiplier of 1.77.[18] Counsel's request for reimbursement for out-of-pocket funds to advance this litigation is similarly reasonable and should be granted. Likewise, Counsel's request for service awards for each of the class representatives is reasonable and should be granted.

## A. The Court should grant Counsel's request for attorneys' fees while the litigation is ongoing.

The Court has granted preliminary approval of Consumer IPP's settlement with Smithfield. As noted in Counsel's prior memorandum in support of fees in the JBS settlement,[19] by the time many antitrust cases are resolved and all appeals are heard, antitrust litigation typically extends through the better part of decade. In this kind of

---

[18] Updated calculations of time spent and lodestar since the prior settlement show a certain *de minimis* revision of approximately $ 15,750 to the lodestar that were provided in the submissions that were previously made to the Court as part of the approval of the Consumer IPP's settlement with JBS. Scarlett Decl. ¶ 23. The figures submitted in this motion are based on these revised figures.

[19] *See* Memo. in Supp. of Consumer IPPs' Mot. for an Award of Attorneys' Fees and Expenses, ECF No. 951 (filed Oct. 6, 2021) at 9.

protracted and hard-fought antitrust litigation—where attorneys work on a contingency basis—it is appropriate to award fees while the litigation is ongoing.[20]

## B. Usage of the percent-of-funds approach here is appropriate.

The Court has discretion to use the percent-of-funds approach to award attorneys' fees.[21] As the district court in *In re Xcel Energy, Inc.* explained, "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method for determining attorney fees[.]"[22] One benefit is that this structure incentivizes attorneys to maximize the recovery for the class while expending fewer legal hours to reach the result, which will "encourage class counsel to prosecute the case in an efficient manner."[23] Relying upon similar reasoning, courts in other districts have often used the percent-of-funds approach in large antitrust cases.[24]

---

[20] *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *3 (E.D.N.Y. Sept. 25, 2009) (approving an interim award for attorneys' fees for a settlement that was reached one year into the litigation); *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *2 (E.D. Pa. Jan. 3, 2008) (discussing the award for attorneys' fees for a settlement reached three years into litigation); *In re Diet Drugs Prod. Liab. Litig.*, 2002 WL 32154197, at *12 (E.D. Pa., Oct. 3, 2002) (awarding a fee after four years because having counsel "wait any longer for at least some award would be grossly unfair").

[21] *See*, *e.g.*, *In re Monosodium Glutamate Antitrust Litig.*, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003).

[22] *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005).

[23] *Id.*

[24] *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (holding that the district court did not abuse its discretion in applying the percent of funds approach); *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) (finding the percent of funds approach was appropriate "[w]here there is an easily

The typical factors courts evaluate when employing the percent-of-funds approach include: (1) the benefit to the class; (2) the difficulty and novelty of the litigation; (3) the risks to plaintiffs' counsel; (4) the time and labor involved to bring the litigation; (5) the skill and experience of the attorneys representing the parties; (6) the reactions of class members; and (7) whether the award is consistent with awards in other cases.[25]

### 1. The $75 million cash settlement provides a substantial and immediate benefit to the Consumer IPPs.

One factor that plays an important role in determining a fair fee award is the value achieved for the class. Although the Smithfield settlement is not the first settlement, the amount is substantial, providing an immediate benefit to the Consumer IPPs. For the Smithfield settlement, the Consumer IPPs will receive approximately $2.36 million in compensation for each point of Smithfield's estimated market share. This is more than double the amount per point of market share the Consumer IPPs received in its first settlement with JBS.

Furthermore, the more than double increase in the amount per point of market share in the Smithfield settlement will serve to increase pressure on the six remaining defendants in future settlements. If similar or better results are achieved against the

---

quantifiable benefit to the class—namely, the cash recovery achieved through settlement"); *In re Processed Egg Prod. Antitrust Litig.*, 2012 WL 5467530, at *2 (E.D. Pa. Nov. 9, 2012) (noting that the percentage of recovery method is "generally favored in cases involving a common settlement fund.") (citations and quotations omitted).

[25] *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017).

remaining defendants, the Consumer IPPs would recover well over $200 million. Scarlett Decl., ¶ 14.

In addition to these monetary benefits, the Consumer IPPs will benefit from Smithfield's agreement to cooperate as plaintiffs pursue the claims against the remaining defendants. Moreover, the remaining defendants remain joint and severally liable for Smithfield's damages to the extent not already recovered by the class in this settlement.

### 2. This case involves difficult factual and legal issues.

Another factor courts use to determine a reasonable fee is the difficulty and novelty of the litigation. As noted in Counsel's prior memorandum in support of fees,[26] courts routinely remark on the time and expenses it takes for a civil plaintiff to bring an antitrust suit. Antitrust cases "are complicated, lengthy and bitterly fought,"[27] which makes "[a]n antitrust class action [ ] arguably the most complex action to prosecute."[28] Antitrust litigation often involves "highly nuanced" claims that require "both sides to work extensively with economists[.]"[29] Even when plaintiffs surpass the hurdles of the motions to dismiss, motions for summary judgment, and class certification, "post-trial

---

[26] *See* Memo. in Supp. of Consumer IPPs' Mot. for an Award of Attorneys' Fees and Expenses, ECF No. 951 (filed Oct. 6, 2021) at 12.

[27] Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 118 (2d Cir. 2005).

[28] *In re Motorsports Merchandise Antitrust Litig*., 112 F. Supp .2d 1329, 1337 (N.D. Ga. 2000).

[29] *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 435 (S.D.N.Y. 2016).

motions and appeals [are] likely, which would delay and further risk recovery."[30] These cases involve issues that "are always numerous and uncertain in outcome."[31]

This case has proven no exception. Discovery has been hard-fought with millions of pages of documents and over 175 depositions of defendants and non-parties. The class plaintiffs' motions for class certification are set to be heard at the end of this month and involves hundreds of pages of exhibits and expert testimony. Defendants have filed *Daubert* challenges. Certainly cases of this magnitude are some of the most complex in the country.

### 3. In taking this case on contingency, Counsel has been exposed to significant risk.

When deciding an award of attorneys' fees, courts also examine the risks associated with advancing the litigation. "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees."[32] Counsel for the Consumer IPPs has worked this case on contingency—which means the attorneys work for free and pay the class's significant expenses (already millions of dollars) with no guarantee of payment for their services or reimbursement of their expenses. The

---

[30] In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 393 (D.D.C. 2002)

[31] *Id.*

[32] *In re Xcel Energy*, 364 F. Supp. 2d at 994.

substantial risk Counsel has undertaken to advance this litigation over the past five years strongly favors the fee award.[33]

### 4. Counsel has invested significant time and resources to advance this case.

Another factor courts evaluate is the time and labor Counsel has invested into the case to move it forward.[34] From the beginning their investigation into the pork industry through December 31, 2022, Counsel for the Consumer IPPs has expended more than 38,823 hours pursing the class's claims. Scarlett Decl., ¶ 19. This includes 29,835.6 hours expended from July 1, 2021 through December 31, 2022 since the first application for a fee award. Scarlett Decl., ¶ 20. Since July 1, 2021, Counsel's effort has consisted of preparing for and attending over 175 depositions; working with 29 class representatives and defending them in depositions; issuing subpoenas on third parties; responding to defendants' requests for interrogatories; working with expert consultants; drafting the briefing and filing the motions for class certification, replies in support of class certification, and opposition to defendants' joint motion to exclude the testimony of the class's expert. Scarlett Decl., ¶ 12.

For a case of this complexity and size, Counsel has kept the team relatively small—a core team of experienced lawyers have been working on this case since the beginning and these lawyers have drafted all briefing. Scarlett Decl., ¶ 21. This core team

---

[33] *See id; also Khoday v. Symantec Corp.*, 2016 WL 1637039, at *10 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

[34] *See In re Xcel Energy*, 364 F. Supp. 2d at 995.

of experienced lawyers has worked on this case since the beginning and understands the complexity and nuances of this litigation. Counsel has often dedicated their full time to work on this case, recent examples include preparing for and taking depositions, as well as drafting and filing the motion for and replies supporting class certification.

Additionally, Counsel has continued to work with the other class plaintiffs to split assignments wherever possible, thereby avoiding duplication of efforts. For the document review undertaken on behalf of the Consumer IPPs, Counsel conducted its portion of the document review using a small team of attorneys experienced in reviewing troves of corporate communications for antitrust cases. Scarlett Decl., ¶ 22.

Further, from the onset of this case through December 2022, non-lead counsel conducted minimal work; most of their work involved communicating with named plaintiffs who retained counsel and gathering their documents to respond to defendants' discovery requests. Scarlett Decl., ¶ 19. By keeping the team of lawyers relatively small, Counsel has been able to efficiently prosecute the class's claims. The table below summarizes the time spent by all law firms and illustrates this point:

| Hours Expended on Behalf of Consumer IPPs (Inception through December 31, 2022) | |
|---|---|
| **Firm** | **Hours Expended** |
| Hagens Berman (Co-Lead Counsel) | 20,513.70 |
| Gustafson Gluek (Co-Lead Counsel) | 17,807.50 |
| All Other Firms | 502.50 |
| **TOTAL:** | **38,823.70** |

Further, even using the shorter time period of July 1, 2021, through December 31, 2022, non-lead counsel conducted minimal work. The following table describing the time spent during this period again illustrates this point:

| Hours Expended on Behalf of Consumer IPPs (July 1, 2021 through December 31, 2022) | |
| --- | --- |
| Firm | Hours Expended |
| Hagens Berman (Co-Lead Counsel) | 15,595.40 |
| Gustafson Gluek (Co-Lead Counsel) | 13,865.00 |
| All Other Firms | 375.20 |
| TOTAL: | 29,835.60 |

**5.  The attorneys litigating this case have extensive experience and expertise.**

When deciding fee requests, Courts also examine the skill and experience of the attorneys prosecuting and defending the litigation.[35] As noted in Counsel's prior memorandum in support of fees,[36] across the country, courts have commended the skill and experience of Hagens Berman and Gustafson Gluek in antitrust class actions. When evaluating fees for the *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation,* Judge Wilken wrote that Hagens Berman was "among the most well-respected class action litigation firms in the country."[37] Both Hagens Berman and Gustafson Gluek have deep experience in class action antitrust cases, representing class plaintiffs in some of the largest antitrust cases in this country.[38] Counsel also has

---

[35] *See In re Xcel Energy*, 364 F. Supp. 2d at 995.

[36] *See* Memo. in Supp. of Consumer IPPs' Mot. for an Award of Attorneys' Fees and Expenses, ECF No. 951 (filed Oct. 6, 2021) at 16.

[37] *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *10 (N.D. Cal. Dec. 6, 2017) (calling Hagens Berman "among the most well-respected class action litigation firms in the country[.]"); *aff'd,* 768 F. App'x 651 (9th Cir. 2019).

[38] *See, e.g., In re EBooks Antitrust Litigation*, Case No. 11-md-02293 (S.D.N.Y.) (Hagens Berman); *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-cv-05238 (E.D.N.Y.) (Hagens Berman); *In re DRAM Antitrust Litig.*, MDL No. 1486 (N.D. Cal.)

experience taking these complex antitrust cases to trial and winning. For example, Judge Wilken found for the plaintiffs after a bench trial in the *National Collegiate Athletic Association* litigation,[39] a verdict upheld by the Supreme Court on review.[40]

Meanwhile, defendants have retained some of the most well-known, large law firms, such as Gibson, Dunn & Crutcher, LLP (representing Smithfield). On all sides, attorneys in this case are some of the most skilled and experienced professionals in the legal field. This factor supports the fee request by Counsel.

### 6. The reaction of the class supports the award.

Another factor courts use to evaluate fees is the reaction of the class.[41] As with the Consumer IPPs' motion for an award of attorneys' fees and expenses from the JBS settlement,[42] Counsel has filed this motion early to give class members an opportunity to comment on the request, and this motion will be posted on the settlement website for class members to view. Through the published notice, class members have been advised that Counsel may seek up to 33.3% of the settlement funds as attorneys' fees, past costs

---

(Gustafson Gluek); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 07-1827 (N.D. Cal.) (Gustafson Gluek).

[39] In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-aid Cap Antitrust Litig., 2019 WL 1593939, at *1 (N.D. Cal. Mar. 8, 2019).

[40] *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 210 L. Ed. 2d 314 (2021).

[41] *See In re Xcel Energy*, 364 F. Supp. 2d at 996; *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *12 (D. Minn. Dec. 4, 2020) (finding "little dissatisfaction with the settlement" where only 8 class members objected and .07% of the class opted out).

[42] *See* Consumer IPPs' Mot. for an Award of Attorney's Fees and Expenses, ECF No. 949 (filed Oct. 6, 2021).

in an amount not to exceed $5,200,000, and class representative service awards of $2,000 each.

Currently, no class member has filed notice that they intend to object to the settlement. However, the opt-out deadline has not passed. Counsel is filing this Motion ahead of the opt-out deadline and will make these briefs available on the settlement website (www.overchargedforpork.com) so interested class members will have an opportunity to review and comment. Scarlett Decl., ¶ 16. If this factor changes, Counsel will update the Court.

### 7. The request is consistent with the percentage awarded in similar cases.

To determine whether the request is reasonable, Courts often compare the request to awards in similar cases. Here, Counsel has requested 33.3% of the settlement funds to cover attorneys' fees, which is well in line with other cases. This Court has granted similar requests by the other Classes, and by Consumer IPP Counsel in connection with the JBS settlement.[43] In this district, courts routinely approve attorneys' fees of at least one third of the common fund.[44] The request for 33.3% of the settlement funds is also in

---

[43] Order Granting Commercial and Institutional Indirect Purchaser Plaintiffs' (CIIPPs) Mot. for Attorney Fees, Reimbursement of Litig. Expenses, Set Aside for Future Litig. Expenses, and Class Representative Service Awards, ECF No. 1549 (filed Oct. 19, 2022); Order Granting Mot. for Final Approval of the Class Action Settlement Between Consumer IPPs and JBS Defendants and Granting Mot. for Attorneys' Fees and Expenses, ECF No. 1491 (filed Sept. 14, 2022); Order Granting Direct Purchaser Plaintiffs' Mot. for Interim Payment of Attorneys' Fees, Currently and Ongoing Litig. Expenses, and Service Awards, ECF No. 1424 (filed July 22, 2022).

[44] *See, e.g.*, *Huyer*, 849 F.3d at 399 (upholding an award for one third of the total settlement fund); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (upholding an award for 36 percent of the common fund); *Khoday,* 2016 WL 1637039, at

line with awards approved in similar antitrust class actions brought around the country.[45]

Thus, this factor supports the award.

## C. The lodestar cross-check confirms that the request is reasonable.

Though it is not required in this district, courts routinely apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund.[46] Under the lodestar methodology for awarding attorney fees, the total hours expended by the attorneys advancing the litigation are multiplied by a reasonable hourly rate of compensation.[47] When performing a lodestar cross-check, a court may rely on summaries submitted by attorneys.[48] "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case."[49] A court may give an upwards of adjustment to a lodestar

---

*11 ("In this District, however, courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions."); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (noting that a request for one third of the common fund is in line with other class cases); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F.Supp. 280, 285–86 (D. Minn. 1997) (awarding 33.3% of $86 million fund); *In re Xcel Energy*, 364 F. Supp. 2d at 998 (collecting other cases).

[45] *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 862 (N.D. Ill. 2015) (awarding one-third of the $46 million common fund); *In re Auto. Parts Antitrust Litig.*, 2016 WL 8201516, at *2 (E.D. Mich. Dec. 28, 2016) (awarding one-third of the common fund); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *3 (E.D. Tenn. June 30, 2014) (awarding one third of the $73 million settlement fund); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 756 (E.D. Pa. 2013) (awarding $50 million, or one third of the common fund, as fees).

[46] *Keil*, 862 F.3d at 701.

[47] *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).

[48] *Keil*, 862 F.3d at 702.

[49] *In re Xcel Energy*, 364 F. Supp. 2d at 999.

(through a positive multiplier) to reflect "the contingent nature of success, and … the quality of the attorney's work."[50]

Here, the lodestar cross-check confirms that the award is reasonable, both from the inception of the case through December 31, 2022, as well as from July 1, 2021, through December 31, 2022.

### 1. The lodestar cross-check from the inception of the case through December 2022 confirms the fee award is reasonable.

From the outset of this case through December 31, 2022, Counsel for the Consumer IPPs has expended over 38,823 hours. Scarlett Decl., ¶ 23. Here, Counsel's fee request results in a multiplier of 1.34 when compared to their lodestar.

All the law firms that worked to advance the class's claims did so under the direction of Hagens Berman or Gustafson Gluek, who were appointed as Interim Co-Lead Counsel.[51] All counsel for the Consumer IPPs provided their monthly time and expense documentation to Interim Co-Lead Counsel.

Those time reports set forth the timekeepers, customary rates, and hours worked to advance the litigation for the Consumer IPPs. Each law firm that conducted work on behalf of the Consumer IPPs is submitting a declaration attesting to the hours spent on this case. Counsel kept the team litigating this case relatively lean and nimble, more than

---

[50] *Id.*

[51] Order Granting Hagens Berman Sobol Shapiro LLP and Gustafson Gluek PLLC's Mot. for Appointment as Interim Co-Lead Counsel for Proposed Consumer Indirect Purchaser Class. ECF No. 151 (filed Oct. 15, 2018).

98 percent of the hours billed have been incurred by Interim Co-Lead Counsel.[52] The use of fewer attorneys allowed those spending a large proportion of their time litigating this case to gain a deeper institutional knowledge of the facts, law, and theory involved. This deeper institutional knowledge enabled these fewer attorneys to produce better work product and litigate more efficiently. The table below provides an aggregated summary of Counsel's lodestar through December 31, 2022:

| Lodestar for Consumer IPP Counsel (Inception through December 31, 2022) | | | |
|---|---|---|---|
| Category of Timekeeper | Number of Hours | Mean Hourly Rate | Lodestar |
| Partner | 7,997.7 | $827 | $6,614,066.00 |
| Associate | 6,693.0 | $514 | $3,442,060.00 |
| Staff/Contract Attorney | 19,530.2 | $365 | $7,121,702.50 |
| Law Clerk | 45.8 | $224 | $10,260.00 |
| Case Investigator | 57.5 | $200 | $11,500.00 |
| Non-Attorney Reviewer | 845.9 | $205 | $173,777.50 |
| Paralegal | 3,147.8 | $320 | $1,009,067.50 |
| Legal Assistant | 3.3 | $175 | $577.50 |
| Non-Lead Counsel | 520.5 | $446 | $224,338.00 |
| **Total** | **38,823.70** | | **$18,607,349.00** |

The hourly rates used to calculate this lodestar are reasonable and in line with similar litigation. Indeed, more than a decade ago, this Court approved partner rates of up to $850 per hour and associate rates up to $410 per hour.[53] In 2016, this Court approved

---

[52] *See In re Centurylink Sales Pracs. & Sec. Litig.*, 2021 WL 3080960, at *10 (D. Minn. July 21, 2021) (commending that 91% of the total lodestar was incurred by lead counsel).

[53] *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1065 (D. Minn. 2010).

rates up to $915 per hour.[54] Likewise, this court and others overseeing large antitrust matters have used similar rates, exceeding $1,150 per hour.[55]

Further, the 1.34 multiplier does not exceed the bounds of reasonableness, particularly in light of the work performed by Counsel prior to this settlement.[56] For example, Counsel often worked full-time on this case. During the discovery process, there have been many weeks where multiple depositions were scheduled on the same day, and back-to-back each week. The lean team of attorneys working on this case often had to prepare for and attend several depositions each week, every week, for months at a time. Moreover, the time difference caused these attorneys to regularly begin their days with a deposition at 6:00 A.M., before spending the rest of the day preparing for the next deposition. Scarlett Decl., ¶ 6.

---

[54] *See Khoday v. Symantec Corp.*, Case No. 11-cv-180 (JRT/TNL) (D. Minn.), ECF Nos. 409-1, 410-1 (filed December 7, 2015).

[55] *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (finding rates between $300 and $1,050 for attorneys reasonable); *Dickey v. Advanced Micro Devices, Inc.*, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding rates between $275 and $1,000 for attorneys reasonable); *In re Auto Parts Antitrust Litig.*, 2018 WL 7108072, at *3 (E.D. Mich. Nov. 5, 2018) ("In national markets, "partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400." In specialties such as "antitrust and high-stakes litigation and appeals … [f]or lawyers at the very top of those fields, hourly rates can hit $1,800 or even $1,950.").

[56] *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (upholding a lodestar multiplier of 5.3); *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *18 (E.D. Mo. Jun. 30, 2005) (finding reasonable a 5.61 cross-check multiplier and noting that "[t]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services" (internal quotation omitted)).

Thus, given the extensive work performed by Counsel, the multiplier here is reasonable. In this district, courts routinely award positive multipliers of up to 4.7.[57] Indeed, a multiplier of less than two is below the range of multipliers commonly accepted in similar litigation.[58]

## 2. The lodestar cross-check from July 2021 through December 2022 confirms the fee award is reasonable.

Even using the lodestar cross-check from July 1, 2021 through December 31, 2022, the award of attorneys' fees is reasonable. From July 2021 through December 2022, Counsel for the Consumer IPPs has expended over 29,835 hours. Scarlett Decl., ¶ 19. Counsel's fee request from this period results in a multiplier of 1.77 when compared to their lodestar.

Most of the hours spent on this litigation during this time period—more than 98 percent—have been incurred by Interim Co-Lead Counsel. The table below provides an aggregated summary of Counsel's lodestar from July 1, 2021 through December 31, 2022:

| Lodestar for Consumer IPP Counsel (July 1, 2021 through December 31, 2022) | | | |
|---|---|---|---|
| Category of Timekeeper | Number of Hours | Mean Hourly Rate | Lodestar |
| Partner | 4,832.7 | $888 | $4,289,538.50 |

---

[57] *See, e.g., In re Xcel Energy*, 364 F. Supp. 2d at 999 (awarding a fee representing a 4.7 multiplier); *Yarrington*, 697 F. Supp. 2d at 1076 (awarding a fee representing a 2.26 multiplier); *In re St. Paul Travelers Sec. Litig.*, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (using a multiplier of 3.9).

[58] *Khoday*, 2016 WL 1637039, at *11, *report and recommendation adopted*, No. 11-CV-0180 (JRT/TNL), 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

| Lodestar for Consumer IPP Counsel (July 1, 2021 through December 31, 2022) | | | |
|---|---|---|---|
| **Category of Timekeeper** | **Number of Hours** | **Mean Hourly Rate** | **Lodestar** |
| Associate | 5,319.8 | $521 | $2,770,952.50 |
| Staff/Contract Attorney | 16,744.2 | $367 | $6,146,602.50 |
| Law Clerk | 44.0 | $225 | $9,900.00 |
| Case Investigator | -- | -- | -- |
| Non-Attorney Reviewer | 514.9 | $225 | $115,852.50 |
| Paralegal | 2,004.8 | $332 | $665,062.50 |
| Legal Assistant | -- | -- | -- |
| Non-Lead Counsel | 375.2 | $384 | $144,033.00 |
| **Total** | **29,835.6** | | **$14,141,941.50** |

Again, here, the 1.77 multiplier does not exceed the bounds of reasonableness, particularly in light of the work performed by Counsel prior to this settlement.[59] As noted above, courts in this district routinely award positive multipliers of up to 4.7.

**D.    The Court should reimburse the expenses Counsel has incurred over the course of this litigation.**

Class Counsel also seeks reimbursement for the out-of-pocket costs advanced to support this litigation. "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court

---

[59] *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (upholding a lodestar multiplier of 5.3); *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *18 (E.D. Mo. Jun. 30, 2005) (finding reasonable a 5.61 cross-check multiplier and noting that "[t]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services" (internal quotation omitted)).

reports, travel expenses, and copy, telephone, and facsimile expenses."[60] Thus far, Counsel has spent $2,526,958.37 to advance this litigation. Scarlett Decl., ¶ 30. Most of these costs are attributable to hosting defendants' document production in an online database ($187,185.91) and paying experts and consultants ($1,743,751.32). *Id.*, ¶ 31. These costs were incurred by Counsel with no guarantee that they would ultimately be recovered. These costs were reasonable, necessary for this case, and should be reimbursed.

**E.    The named plaintiffs expended significant time on this litigation and should be awarded $2,000 each.**

Finally, plaintiffs request that each class representative receive a $2,000 service award. Courts often grant service awards to named plaintiffs in class action suits to "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits."[61] The relevant factors for deciding whether service awards are warranted include, "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation."[62]

---

[60] *Yarrington*, 697 F. Supp. 2d at 1065; *Krueger v. Ameriprise Fin., Inc*., 2015 WL 4246879, at *3 (D. Minn. July 13, 2015) (citing to Fed. R. Civ. P. Rule 23 and cases); *see also Khoday*, 2016 WL 1637039, at *12 (D. Minn. April 5, 2016) ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation.").

[61] *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citing *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010)).

[62] *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

Here, the class representatives spent significant time and effort in taking actions to protect the class's interest—actions from which the class has greatly benefited. As described above (*see* Section II), representing the class required great time and effort by each of the named plaintiffs. All class representatives sat for depositions, which totaled more than 87 hours; read the complaint and other filings; responded to interrogatories and other discovery requests; remained informed of updates in the case; and importantly, gave their approval of this settlement. Scarlett Decl., ¶ 33; Exhibit D (class representative declarations detailing their significant efforts in the course of the litigation). The Smithfield settlement itself is a direct result of the class representatives' involvement, which required each of their understanding, participation, and approval to occur. Thus, this $2,000 service award serves to fairly compensate these class representatives for their time and effort in protecting the class's interests and for pursuing litigation.[63] The service awards are also in line with the service awards that the Court has granted in other settlements to date. *See e.g.,* ECF No. 1006 (November 18, 2021) (awarding service awards of $7,500 to class representatives for the Commercial and Institutional Indirect Purchaser Plaintiffs as part of the settlement with JBS).

---

[63] Moreover, "courts in this circuit regularly grant service awards of $10,000 or greater," while only a $2,000 service award is sought here. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (affirming approval of settlement that included $10,000 service awards to named plaintiffs)*; see also.*, *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (approving settlement that included a $10,000 service award for each named plaintiffs); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F.Supp.2d 1075, 1085 (D. Minn. 2009) (granting named plaintiffs $15,000 each in service awards from common fund settlement of $17,000,000).

## V. CONCLUSION

For these reasons, Counsel respectfully requests an award of $24,975,000 in

attorneys' fees, $2,526,958.37 in expenses, and $2,000 service awards for each of the

class representatives.


DATED: January 24, 2023     HAGENS BERMAN SOBOL SHAPIRO LLP

          By:    */s/ Shana E. Scarlett*
              SHANA E. SCARLETT
          Rio Pierce
          715 Hearst Avenue, Suite 202
          Berkeley, California 94710
          Telephone: (510) 725-3000
          Facsimile: (510) 725-3001
          shanas@hbsslaw.com
          riop@hbsslaw.om

          Steve W. Berman
          Breanna Van Engelen
          HAGENS BERMAN SOBOL SHAPIRO LLP
          1301 Second Avenue, Suite 2000
          Seattle, Washington 98101
          Telephone: (206) 623-7292
          Facsimile: (206) 623-0594
          steve@hbsslaw.com
          breannav@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
Facsimile:  (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Interim Co-Lead Counsel for Consumer
Indirect Purchaser Plaintiffs*