# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>*This Document Relates to*:<br><br>All Consumer Indirect Purchaser Plaintiff Actions | Civil No. 18-1776 (JRT/JFD)<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT BETWEEN CONSUMER INDIRECT PURCHASER PLAINTIFFS AND DEFENDANT SMITHFIELD FOODS, INC.** |

The above matter came before the Court on the Consumer Indirect Purchaser Plaintiffs' ("Consumer IPPs") motion for final approval of the class action settlement between Consumer IPPs and Smithfield Foods, Inc. ("Smithfield") ("Motion").

The Court has reviewed the memorandum submitted by the Consumer IPPs in support of their Motion and has reviewed the various declarations and submissions relating to that Motion. The Court has also reviewed the Consumer IPPs' Motion for Attorneys' Fees and Expenses ("Fee Request," ECF No. 1763) and has reviewed the various declarations and submissions relating to that motion. The Court held a hearing on March 30, 2023, and appearances were noted on the record.

Based on the record and proceedings before the Court, it is hereby **ORDERED**:

1. This Court has jurisdiction over this action and each of the parties to the Settlement Agreement.

2. This Court certifies a Settlement Class defined as:

010736-11 1670688V1

> [A]ll persons and entities who indirectly purchased pork from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates, for personal use in the United States from at least as early as January 1, 2009 until April 2, 2021. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and members of his/her immediate family and judicial staff, and any juror assigned to this action.

This class definition is in all material respects the same settlement class proposed in the Consumer IPPs' Third Amended Consolidated Amended Class Action Complaint, ECF Nos. 866 (redacted), and 865 (sealed), and the same class set forth in the Settlement Agreement. *See* Settlement Agreement, ¶ 5.

3. The Court appoints the law firms of Hagens Berman Sobol Shapiro LLP and Gustafson Gluek, PLLC as Co-Lead counsel for the Settlement Class.

4. Upon review of the record, the Court finds that the Settlement Agreement is a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23.

   a. The proposed Settlement Agreement has been negotiated at arm's length and is entitled to a presumption of fairness.

   b. The settlement provides substantial relief for the class in the form of $75 million in monetary compensation and certain injunctive relief as well as cooperation from Smithfield in the ongoing litigation. Weighed against the

uncertainty of relief at this stage of the litigation, this factor supports Final Approval.

    c. Defendants' financial condition is a neutral factor in this analysis.

    d. The complexity and expense of further litigation supports final approval. The legal and factual issues involved are numerous and uncertain in outcome. Because the Settlement Agreement will yield a certain, substantial, and prompt recovery, without further delay and expense, it substantially benefits the Consumer IPP class, and approval is appropriate.

    e. The settlement class members' positive reaction supports Final Approval. Of the millions of potential class members reached by the Consumer IPPs direct and indirect notice efforts, none have opted out, and none have objected.

5. The Court finds further that the proposed Settlement class meets all prerequisites of Rule 23(a) based on a preliminary inquiry behind the pleadings and assuming that if the plaintiffs' general allegations are true, evidence could suffice to make out a prima facie case for the class.

    a. The numerosity requirement of Rule 23(a)(1) is satisfied. The proposed class spans over a decade, and the product (pork) is nearly ubiquitous in American households.

    b. The commonality requirement is satisfied. Consumer IPPs are relying on several common contentions, including: (1) defendants conspired to stabilize the price and supply of pork in the United States; and (2) defendants' conduct caused overcharges for pork consumers.

c. The typicality requirement is satisfied. Consumer IPPs' claims are based on the same antitrust conspiracy. Consumer IPPs are relying on common contentions, including: (1) Each class member has suffered the same harm through the purchase of pork in grocery stores that was subject to an overcharge; (2) No individual class member could have known of the conspiracy – the Agri Stats reports themselves are highly secretive, provided only to industry participants and never released to the public; and (3) Each individual class representative has the same interests in pursuing these claims on behalf of the absent class.

d. The adequacy requirement is satisfied. The named plaintiffs have no material conflict with other class members. Consumer IPPs are relying on common contentions, including: (1) Each purchased pork from grocery stores, unaware of the existence of the defendants' alleged agreement to fix, raise, maintain, and stabilize pork prices, and suppress pork output. No one individual class member could avoid the claimed overcharges; (2) Each named plaintiff is aligned with the class in establishing the defendants' liability and maximizing class-wide damages. Interim co-lead class counsel is also adequate. As the Court has already recognized in appointing Hagens Berman and Gustafson Gluek, each of these firms and their attorneys are qualified and experienced in representing antitrust plaintiffs. Interim co-lead counsel have represented victims of antitrust conspiracies across the country, and will continue to vigorously represent the class here. The named plaintiffs have fulfilled their duties as class representatives by actively participating

in the litigation. Each representative has approved the terms of this settlement and remains apprised of the status of the case.

6.      The Court finds further that the proposed Settlement Class satisfies Rule 23(b)(3). Questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy. The Court has made a preliminary inquiry behind the pleadings and finds that, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class. Specifically, the Court has reviewed Consumer IPPs' Third Amended Complaint and finds those allegations, if proven true, would constitute ample common evidence of: (a) Defendants' conduct—common to all pork consumers—illegally agreeing to stabilize price and supply; (b) inflated wholesale prices—again, common to all pork consumers—that broke significantly from the Defendants' pre-class-period margins; and (c) analyses of the consumer price index showing that overcharges were passed through from producers to all consumer indirect purchaser plaintiffs. The Court finds further that the focus of this litigation will be on the conduct of Defendants and the stabilization of the pricing and supply of pork. The Court finds further that the Consumer IPP class members have not expressed interest in individually controlling the prosecution of their claims, and that separate proceedings would produce duplicate efforts, generate unnecessary litigation costs, create an "unwarranted burden on this Court and other courts throughout the country," and risk inconsistent results for similarly situated parties.

7.     Consumer IPPs have executed the best notice practicable under the circumstances of the Settlement Agreement and the Fairness Hearing. Consumer IPPs' notice constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice. Consumer IPPs reached over 17,500,000 potential class members through their direct notice e-mail program. And Consumer IPPs reached millions of potential class members through the indirect notice efforts conducted in both English and Spanish. The notice itself informed class members of the nature of the action, the terms of the proposed settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed settlements.

8.     The plan of allocation is fair, reasonable, and adequate. The Settlement provides for a cash payment of $75 million which has been deposited into the Settlement Fund. The Agreement provides that the Settlement Fund will fund the payment of valid claims of Settlement Class members, costs of notice, claims administration, payment for service awards to the Named Plaintiffs and attorneys' fees and costs.

9.     The proposed settlement treats class members equitably relative to each other. Funds will be awarded based on the *pro rata* share per class member of qualifying class products purchased and will be distributed through an electronic method. For efficiency's sake, the plan of distribution and the distribution itself may wait until later in the litigation when more settlement monies are available for distribution.

10.    The terms of Consumer IPPs' proposed interim award of attorney's fees, including timing of payment, satisfies Rule 23(e)(2)(C)(iii). The Court will award fees to

counsel for the Consumer Indirect Class using the percentage-of-the-fund approach. "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). As other courts have recognized, "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method for determining attorney fees[.]" *Id.* The percentage of recovery method is "generally favored in cases involving a common settlement fund." *In re Processed Egg Prod. Antitrust Litig.*, 2012 WL 5467530, at *2 (E.D. Pa. Nov. 9, 2012).

11. Counsel for the Consumer IPPs request a fee award of 33.3% of the settlement funds. The requested fee, which totals $24,975,000, is well within the range allowed by this District.

12. When using the percentage-of-the-fund approach, the Court considers seven factors: (1) the benefit to the class; (2) the difficulty and novelty of the litigation; (3) the risks to plaintiffs' counsel; (4) the time and labor involved to bring the litigation; (5) the skill and experience of the attorneys representing the parties; (6) the reactions of class members; *and* (7) whether the award is consistent with awards in other cases. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017).

13. **The $75 million cash settlement provides a substantial benefit to the Class**. The settlement provides $75 million and is coupled with injunctive relief and meaningful cooperation terms that will assist in the claims against the non-settling

Defendants. This cash settlement represents a substantial recovery and benefits the class. *In re Xcel Energy*, 364 F. Supp. 2d at 991.

14.     **This case involves difficult factual and legal issues**. Antitrust cases are especially difficult because they "are complicated, lengthy and bitterly fought." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005). Antitrust litigation often involves claims that are "highly nuanced" and require "both sides to work extensively with economists[.]" *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 435 (S.D.N.Y. 2016). This case is no exception. More than four years have passed since the first complaint was filed. Plaintiffs had to overcome 22 motions to dismiss, and the parties have since undertaken significant discovery, reviewing millions of pages of documents and taking over one hundred depositions.

15.     **Counsel took this case on contingency and has been exposed to significant risk**. "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 393 (D.D.C. 2002). The contingent nature of this case means that Counsel has a balanced set of interests – to achieve excellent results for the class, as efficiently as possible. This substantial risk that Counsel has undertaken to advance this litigation over the past three years strongly favors the fee award. *See Khoday*, 2016 WL 1637039, at *10, *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

16.     **Counsel has invested significant time and resources**. From the beginning of their investigation into the pork industry through December 31, 2022, Counsel for the

Consumer IPPs have expended more than 38,800 hours pursing the class's claims. This effort has consisted of conducting the first extensive factual investigation into the antitrust claims; drafting two complaints; reviewing and analyzing over hundreds of thousands of documents and taking defendant depositions; and preparing and arguing a class certification motion. Given the time and resources Counsel has devoted to this case, this factor weighs in favor of the award. *See In re Xcel Energy*, 364 F. Supp. 2d at 995.

17. **The attorneys litigating this case have extensive experience and expertise.** The attorneys representing parties in this litigation are some of the most well-respected antitrust litigators in the country. They have deep experience in class action antitrust cases and experience taking these complex cases to trial. This factor supports awarding a fee.

18. **The reaction of the Class supports the award.** Another factor courts use to evaluate fees is the reaction of the class. *See In re Xcel Energy*, 364 F. Supp. 2d at 996; *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *12 (D. Minn. Dec. 4, 2020) (finding "little dissatisfaction with the settlement" where only 8 class members objected and .07% of the class opted out). Not a single member of the Consumer Indirect Class has objected to nor opted-out of the Smithfield settlement. Given that the class seems satisfied with the settlement, this factor supports awarding a fee.

19. **The request is consistent with the percent awarded in similar cases.** Courts often compare the request to awards in similar cases to determine whether the request is reasonable. Here, Counsel has requested 33.3% of the settlement funds to cover attorneys' fees, which is well in line with other cases. In this district, courts routinely

approve attorneys' fees of at least one third of the common fund. *See, e.g., Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (upholding an award for one third of the total settlement fund); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (upholding an award for 36 percent of the common fund); *Khoday*, 2016 WL 1637039, at *11 ("In this District, however, courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions."); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (noting that a request for one third of the common fund is in line with other class cases); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F.Supp. 280, 285–86 (D. Minn. 1997) (awarding 33.3% of $86 million fund); *In re Xcel Energy*, 364 F. Supp. 2d at 998 (collecting other cases).

20. **A Lodestar "crosscheck" confirms that the requested fees are reasonable.** Though it is not required in this district, courts routinely apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *Keil*, 862 F.3d at 701. "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Xcel Energy*, 364 F. Supp. 2d at 999. A court may give an upward adjustment to a lodestar (through a positive multiplier) to reflect "the contingent nature of success, and … the quality of the attorney's work." *Id.* Counsel for the Consumer Indirect Class has expended over 38,800 hours from the outset of this case investigation through December 31, 2022. All the law firms that have worked to advance the classes' claims have done so under the direction of Hagens Berman or Gustafson Gluek, who were appointed as Interim Co-Lead Counsel. Those time reports set forth the timekeepers, customary rates, and hours

worked to advance the litigation for the Consumer Indirect Class. Each law firm who has conducted work on behalf of the Consumer Indirect Class has submitted a declaration regarding attesting to the hours spent on this case. Most of the hours spent on this litigation – more than 98 percent – have been incurred by Interim Co-Lead Counsel. The hourly rates used to calculate this lodestar are reasonable and in line with similar litigation. *Yarrington*, 697 F. Supp. 2d at 1065 (D. Minn. 2010). The 1.34 multiplier does not exceed the bounds of reasonableness, particularly in light of the work performed by Counsel prior to this settlement. Indeed, a multiplier of less than two is below the range of multipliers commonly accepted in similar litigation. *Khoday*, 2016 WL 1637039, at *11, *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016).

21. The past litigation expenses incurred by counsel for the Consumer Indirect Class were reasonable and necessary and were of the type normally awarded in class action litigation. *See, e.g.,* Fed. R. Civ. P. 23(h); *Khoday*, 2016 WL 1637039, at *12 ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation."); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013); *Yarrington v. Solvay Pharm., Inc.*, 697 F.Supp.2d 1057, 1067 (D. Minn. 2010). The past litigation expenses incurred in the prosecution of this case shall be reimbursed from the settlement fund.

22. The Court has considered the relevant case law and authority and finds that awards of attorneys' fees and reimbursement of expenses to the Consumer Indirect Class and their counsel are appropriate under Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2).

Notice of the request for fees and reimbursement of expenses was provided to the potential class members via direct and published notice and a settlement web site that identified relevant documents and pleadings.

23. The Court has considered the reaction of the class members to the fee and reimbursement request.

24. For the reasons set forth herein, the Court GRANTS the Consumer IPPs' motion for Final Approval.

25. For the reasons set forth herein, the Court GRANTS the Consumer IPPs' request for attorney's fees in the amount of 33.3% of the common fund, or $24,975,000. Interim Co-Lead Counsel for the Consumer Indirect Class are authorized to allocate the attorneys' fees awarded herein among counsel who performed work on behalf of the Consumer Indirect Class in accordance with Interim Co-Lead Counsel's assessment of each firm's contribution to the prosecution of this litigation.

26. The Court further GRANTS the Consumer IPPs' request for reimbursement of expenses and costs in the amount of $2,526,958.37. "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger*, 2015 WL 4246879, at *3.

27. The Court further GRANTS the Consumer IPPs' request for service awards for each class representative in the amount of $2,000. Granting service awards to named plaintiffs in class action suits "promote[s] the public policy of encouraging individuals to

undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citing *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010)).

28. The Action with respect to Consumer IPPs' Claims is dismissed with prejudice as to the Smithfield Released Parties (as that term is defined in the Settlement Agreement). Pursuant to Fed. R. Civ. P. 54(b), the Court finds that there is no just reason for delay and directs that the judgment of dismissal as to Smithfield shall be final and appealable and entered forthwith.

29. The Court retains continuing and exclusive jurisdiction over the Settlement Agreement for all purposes.

30. Terms used in this Order that are defined in the Settlement Agreement are, unless otherwise defined herein, used as defined in the Settlement Agreement.

31. Neither this Order nor the Settlement Agreement shall be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Settling Defendant Smithfield or of the truth of any of Consumer IPPs' Claims or allegations, nor shall it be deemed or construed to be an admission nor evidence of Released Parties' defenses.

IT IS SO ORDERED.

DATED: _____

HONORABLE JOHN R. TUNHEIM
JUDGE UNITED STATES DISTRICT
COURT