**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE PORK ANTITRUST LITIGATION

Civil No. 18-1776 (JRT/JFD)

This Document Relates To:

ALL CONSUMER INDIRECT PURCHASER
PLAINTIFF ACTIONS

**ORDER GRANTING MOTION FOR AN**
**AWARD OF ATTORNEYS' FEES AND**
**EXPENSES**

---

The Court has reviewed the Consumer IPPs' Motion for Attorneys' Fees and Expenses ("Fee Request," ECF No. 1763) and has reviewed the various declarations and submissions relating to that motion. The Court held a hearing on April 3, 2023, and appearances were noted on the record.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The terms of Consumer IPPs' proposed interim award of attorney's fees, including timing of payment, satisfies Rule 23(e)(2)(C)(iii). The Court will award fees to counsel for the Consumer Indirect Class using the percentage-of-the-fund approach. "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980, 991 (D. Minn.

2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). As other courts have recognized, "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method for determining attorney fees[.]" *Id.* The percentage of recovery method is "generally favored in cases involving a common settlement fund." *In re Processed Egg Prod. Antitrust Litig.*, 2012 WL 5467530, at *2 (E.D. Pa. Nov. 9, 2012).

2. Counsel for the Consumer IPPs request a fee award of 33.3% of the settlement funds. The requested fee, which totals $24,975,000, is well within the range allowed by this District.

3. When using the percentage-of-the-fund approach, the Court considers seven factors: (1) the benefit to the class; (2) the difficulty and novelty of the litigation; (3) the risks to plaintiffs' counsel; (4) the time and labor involved to bring the litigation; (5) the skill and experience of the attorneys representing the parties; (6) the reactions of class members; *and* (7) whether the award is consistent with awards in other cases. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017).

4. **The $75 million cash settlement provides a substantial benefit to the Class**. The settlement provides $75 million and is coupled with injunctive relief and meaningful cooperation terms that will assist in the claims against the non-settling Defendants. This cash settlement represents a substantial recovery and benefits the class. *In re Xcel Energy*, 364 F. Supp. 2d at 991.

5. **This case involves difficult factual and legal issues**. Antitrust cases are especially difficult because they "are complicated, lengthy and bitterly fought." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005). Antitrust litigation often involves claims that are "highly nuanced" and require "both sides to work extensively with economists[.]" *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 435 (S.D.N.Y. 2016). This case is no exception. More than four years have passed since the first complaint was filed. Plaintiffs had to overcome 22 motions to dismiss, and the parties have since undertaken significant discovery, reviewing millions of pages of documents and taking over one hundred depositions.

6. **Counsel took this case on contingency and has been exposed to significant risk**. "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 393 (D.D.C. 2002). The contingent nature of this case means that Counsel has a balanced set of interests – to achieve excellent results for the class, as efficiently as possible. This substantial risk that Counsel has undertaken to advance this litigation over the past three years strongly favors the fee award. *See Khoday*, 2016 WL 1637039, at *10, *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

7. **Counsel has invested significant time and resources**. From the beginning of their investigation into the pork industry through December 31, 2022, Counsel for the Consumer IPPs have expended more than 38,800 hours pursing the class's claims. This effort has consisted of conducting the first extensive factual investigation into the antitrust claims; drafting two complaints; reviewing and analyzing over hundreds of thousands of documents and taking defendant depositions; and preparing and arguing a class certification motion. Given the time and resources Counsel has devoted to this case, this factor weighs in favor of the award. *See In re Xcel Energy*, 364 F. Supp. 2d at 995.

8. **The attorneys litigating this case have extensive experience and expertise.** The attorneys representing parties in this litigation have experience in class action antitrust cases and experience taking these complex cases to trial. This factor supports awarding a fee.

9. **The reaction of the Class supports the award.** Another factor courts use to evaluate fees is the reaction of the class. *See In re Xcel Energy*, 364 F. Supp. 2d at 996; *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *12 (D. Minn. Dec. 4, 2020) (finding "little dissatisfaction with the settlement" where only 8 class members objected and .07% of the class opted out). Not a single member of the Consumer Indirect Class has objected to the Smithfield settlement, and only three

have opted out. Given that the class seems satisfied with the settlement, this factor supports awarding a fee.

10. **The request is consistent with the percent awarded in similar cases.** Courts often compare the request to awards in similar cases to determine whether the request is reasonable. Here, Counsel has requested 33.3% of the settlement funds to cover attorneys' fees, which is well in line with other cases. In this district, courts routinely approve attorneys' fees of at least one third of the common fund. *See, e.g., Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (upholding an award for one third of the total settlement fund); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (upholding an award for 36 percent of the common fund); *Khoday*, 2016 WL 1637039, at *11 ("In this District, however, courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions."); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (noting that a request for one third of the common fund is in line with other class cases); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F.Supp. 280, 285–86 (D. Minn. 1997) (awarding 33.3% of $86 million fund); *In re Xcel Energy*, 364 F. Supp. 2d at 998 (collecting other cases).

11. **A Lodestar "crosscheck" confirms that the requested fees are reasonable.** Though it is not required in this district, courts routinely apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *Keil*, 862 F.3d

at 701. "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Xcel Energy*, 364 F. Supp. 2d at 999. A court may give an upward adjustment to a lodestar (through a positive multiplier) to reflect "the contingent nature of success, and … the quality of the attorney's work." *Id.* Counsel for the Consumer Indirect Class has expended over 38,800 hours from the outset of this case investigation through December 31, 2022. All the law firms that have worked to advance the classes' claims have done so under the direction of Hagens Berman or Gustafson Gluek, who were appointed as Interim Co-Lead Counsel. Those time reports set forth the timekeepers, customary rates, and hours worked to advance the litigation for the Consumer Indirect Class. Each law firm who has conducted work on behalf of the Consumer Indirect Class has submitted a declaration regarding attesting to the hours spent on this case. Most of the hours spent on this litigation – more than 98 percent – have been incurred by Interim Co-Lead Counsel. The hourly rates used to calculate this lodestar are reasonable and in line with similar litigation. *Yarrington*, 697 F. Supp. 2d at 1065 (D. Minn. 2010). The 1.34 multiplier does not exceed the bounds of reasonableness, particularly in light of the work performed by Counsel prior to this settlement. Indeed, a multiplier of less than two is below the range of multipliers commonly accepted in similar litigation.

*Khoday*, 2016 WL 1637039, at *11, *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016).

12. The past litigation expenses incurred by counsel for the Consumer Indirect Class were reasonable and necessary and were of the type normally awarded in class action litigation. *See, e.g.,* Fed. R. Civ. P. 23(h); *Khoday*, 2016 WL 1637039, at *12 ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation."); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013); *Yarrington v. Solvay Pharm., Inc.*, 697 F.Supp.2d 1057, 1067 (D. Minn. 2010). The past litigation expenses incurred in the prosecution of this case shall be reimbursed from the settlement fund.

13. The Court has considered the relevant case law and authority and finds that awards of attorneys' fees and reimbursement of expenses to the Consumer Indirect Class and their counsel are appropriate under Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2). Notice of the request for fees and reimbursement of expenses was provided to the potential class members via direct and published notice and a settlement web site that identified relevant documents and pleadings.

14. The Court has considered the reaction of the class members to the fee and reimbursement request.

15. For the reasons set forth herein, the Court **GRANTS** the Consumer IPPs' request for attorney's fees (ECF No. 1763) in the amount of 33.3% of the common fund, or $24,975,000. Interim Co-Lead Counsel for the Consumer Indirect Class are authorized to allocate the attorneys' fees awarded herein among counsel who performed work on behalf of the Consumer Indirect Class in accordance with Interim Co-Lead Counsel's assessment of each firm's contribution to the prosecution of this litigation.

16. The Court further **GRANTS** the Consumer IPPs' request for reimbursement of expenses and costs in the amount of $2,526,958.37. "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger*, 2015 WL 4246879, at *3.

17. The Court further **GRANTS** the Consumer IPPs' request for service awards for each class representative in the amount of $2,000. Granting service awards to named plaintiffs in class action suits "promote[s] the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citing *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010)).

DATED:  April 11, 2023
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge