# UNITED STATES DISTRICT COURT
## DISTRICT COURT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF CLASS ACTION | Case No. 18-cv-01776 (JRT)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE DIRECT PURCHASER CLASS ACTION SETTLEMENT WITH SEABOARD FOODS LLC AND MOTION FOR APPROVAL OF CLASS NOTICE** |

i

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................. 1

II. LITIGATION BACKGROUND .......................................................... 2

III. THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL ............................................................. 5

    A. The Proposed Settlement is the Result of Arm's-Length Negotiations ........ 6

    B. The Settlement Provides Significant Relief to the Settlement Class and Should be Preliminarily Approved by the Court .................................. 9

IV. THE SETTLEMENT IS ON BEHALF OF A CERTIFIED CLASS .................... 11

V. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ............ 11

    A. The Content and Form of the Proposed Notices Are Fairly Balanced, Easy to Read, and Contain All Rule 23 Notice Requirements .................... 12

    B. The Notice Plan is Tailored to This Class Action ...................................... 14

        1. Direct-Mailed Notice to Claimants with Known Street Addresses ....................................................................................... 15

        2. Direct-E-Mailed Notice to Claimants With Known E-Mail Addresses ....................................................................................... 16

        3. Media Publication Campaign ......................................................... 16

        4. Informational Web Site And Toll-Free Telephone Number ............ 17

    C. The Proposed Notice Plan Provides the Best Notice Practicable Under the Circumstances of this Case ......... **Error! Bookmark not defined.**

VI. THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING ........... 17

VII. CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aranda v. Caribbean Cruise Line, Inc.*,
    No. 12 C 4069, 2017 WL 818854 (N.D. Ill. March 2, 2017) ..................................... 16

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill 2014) ............................................................................. 14, 16

*City of Greenville v. Syngenta Crop Prot.*,
    No. 3:10-CV-188, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ................................ 14

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ....................................................................................... 7

*In re Domestic Air Transp. Antitrust Litig.*,
    141 F.R.D. 534 (N.D. Ga. 1992) ............................................................................... 16

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................................................... 14

*In re Emp. Benefit Plans Sec. Litig.*,
    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ....................................... 6, 7

*Grier v. Chase Manhattan Auto Fin. Co.*,
    No. A.99-180, 2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ......................................... 7

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ..................................................................................... 6, 7

*Hughes v. Kore of Indiana Enterprise, Inc.*,
    731 F.3d 672 (7th Cir. 2013) ...................................................................................... 14

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................ 12, 13

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
    281 F.3d 629 (7th Cir. 2002) ..................................................................................... 10

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ........................................................................ 7, 12, 13

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) .......................................................................... 10

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ............................................................ 6

*Welsch v. Gardebring*,
    667 F. Supp. 1284 (D. Minn. 1987) .................................................. 7

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D. Minn. 1993) ........................................... 5, 6, 11

*White v. Nat'l Football League*,
    836 F. Supp. 1458 (D. Minn. 1993) .................................................. 7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ............. 6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ............. 7

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(B) ................................................... 12, 14, 16

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii) ............................................... 13

Fed. R. Civ. P. 23(e) ........................................................... 5, 6, 12

Manual For Complex Litig., §§ 21.312, 21.631 (4th ed. 2011) .................. 12

Manual for Complex Litig., § 21.632 (4th ed. 2004) ............................ 6

2 Newberg on Class Actions, § 11.24 (3d ed. 1992) ........................... 6, 11

4 Newberg on Class Actions, § 11.53 (4th ed. 2002) ............................ 12

4 Newberg On Class Actions, § 13:18 (5th ed. 2011) ........................... 11

# I.    INTRODUCTION

The Direct Purchaser Plaintiffs ("DPPs") in this certified antitrust class action respectfully move the Court to (1) preliminarily approve a proposed settlement of their claims against Defendant Seaboard Foods LLC ("Seaboard"), and (2) approve the content and dissemination of the Notice Plan, which encompasses both notice of the Seaboard Settlement and the Court's recent certification of the DPP Class.[1] *See* Memorandum Opinion and Order dated March 29, 2023, ECF No. 1887 ("Class Certification Order" or "Cert. Order").

This is the third settlement in this litigation, and it provides the Certified Class (*see* Section IV below) with significant and substantial relief from one of the smaller Defendants in this action. Pursuant to the Settlement Agreement, Seaboard will pay $9.75 million in monetary relief and will provide cooperation to DPPs. Combined with DPPs' earlier settlements with the JBS and Smithfield Defendants, this brings the total settlements to date to $111,614,300. *See* Bruckner Decl. ¶ 6.

As discussed in this memorandum, the Settlement Agreement is the product of protracted arm's-length settlement negotiations that took place over two years, and provides substantial monetary and non-monetary relief to the Certified Class. It should be granted preliminary approval because it is within the range of possible final approval, it is fair, reasonable, and adequate, and it is in the best interests of the Certified Class members.

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreement (also referred to herein as "Settlement"), which is filed concurrently herewith as Exhibit A to the Declaration of W. Joseph Bruckner ("Bruckner Decl.").

In addition to approving the Notice Plan set forth herein, DPPs request that the Court set a schedule for the Final Fairness Hearing of the Settlement. At the Final Fairness Hearing, Co-Lead Class Counsel[2] will request entry of a final order and judgment dismissing Seaboard and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

With regard to the Notice Plan, the Court previously granted the DPPs' motion for class certification as to the non-settling defendants, which included Seaboard at the time. *See generally* Cert. Order. DPPs now seek approval of the content and dissemination of their Notice Plan, which will combine the notice of the proposed Seaboard Settlement and certification of the DPP Class. Consistent with the notices already approved by this Court and disseminated for the two DPP settlements to date, the proposed multi-method notice plan includes direct-mailed notices, email notices, notices published online, and a continuing informational website and toll-free telephone line to communicate with Class members. As described in this memorandum, the proposed notices and notice plan exceed the requirements for Rule 23 notice and accordingly should be approved. Seaboard, the Settling Defendant, has reviewed the notice documents and does not object to their contents. Bruckner Decl. ¶ 15.

## II.    LITIGATION BACKGROUND

This is an antitrust class action against certain producers of Pork. DPPs filed their class action lawsuit on June 29, 2018, and it and subsequently-filed cases were consolidated

---

[2] Co-Lead Class Counsel are Lockridge Grindal Nauen P.L.L.P. and Pearson Warshaw, LLP. *See* Cert. Order at 68.

before Judge John R. Tunheim in this Court. DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of Pork sold in the United States in violation of the Sherman Act, 15 U.S.C. § 1. *See generally* DPP Third Consolidated and Amended Complaint, ECF No. 431. DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Pork prices. *Id.*[3]

Defendants moved to dismiss all Plaintiffs' complaints. In August 2019, the Court granted their motions and granted Plaintiffs leave to amend. ECF No. 360. DPPs amended their complaint, and after extensive briefing by the parties, on October 16, 2020, the Court largely denied Defendants' motions to dismiss. ECF No. 519, *amended* Oct. 20, 2020, ECF No. 520.

Since the initial complaint was filed, DPPs have continued their factual investigation into the conspiracy alleged in their complaint, and once the Court largely denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs commenced extensive discovery. *See* Bruckner Decl. ¶ 3. During discovery, DPPs obtained responses to multiple sets of interrogatories, and received millions of documents in response to their requests for production and third-party subpoenas. *See Id*. ¶ 4. DPPs, along with other plaintiffs, have

---

[3] Unlike other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. *See* Corporate Leniency Policy, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy.

taken dozens depositions of the Defendants and third parties. *Id*. DPPs have also provided responses to written discovery, produced documents, and appeared for depositions noticed by the Defendants. *Id*.

On November 17, 2020, DPPs and the JBS Defendants entered into a settlement that provided for a payment of $24,500,000 and meaningful cooperation. Bruckner Decl. ¶ 5. The Court granted final approval of that settlement on July 26, 2021. *See* ECF No. 838. On June 29, 2021, DPPs and the Smithfield Defendants entered into a settlement that provided for a payment of $83 million[4] and meaningful cooperation. Bruckner Decl. ¶ 5. The Court granted final approval of that settlement on January 31, 2022. *See* ECF No. 1154. Notice to the DPP Class of these prior settlements was approved by the Court and successfully implemented by A.B. Data, Ltd. (the Court-appointed Settlement Administrator, *see* ECF Nos. 631, 845) each time. *See* ECF Nos. 838, 1154.[5]

On March 29, 2023, the Court certified the following DPP Class:

All persons and entities who directly purchased one or more of the following types of pork, or products derived from the following types of pork, from Defendants, or their respective subsidiaries or affiliates, for use or delivery in the United States from June 29, 2014 through June 30, 2018: fresh or

---

[4] The Smithfield settlement was subject to a $5,635,700 reduction based on the opt-outs received during the settlement administration process. The total net amount paid by Smithfield equaled $77,364,300. *See* Bruckner Decl. ¶ 5.

[5] Currently, Co-Lead Class Counsel are working with A.B. Data to complete the Court-approved claims process (ECF No. 1208), and aim to distribute proceeds from the JBS and Smithfield settlements in the coming months. *See* ECF No. 1864 (providing a status update to the Court regarding the claims process and targeting July 19, 2023 to file a motion for distribution).The Seaboard Settlement is not part of this current claims process and upcoming distribution, but instead will be part of a future distribution. However, any Class member who submits a valid claim as part of the current distribution will not be required to resubmit its claim for this or future recoveries.

frozen loins, shoulders, ribs, bellies, bacon, or hams. For this lawsuit, pork excludes any product that is marketed as organic or as no antibiotics ever (NAE); any product that is fully cooked or breaded; any product other than bacon that is marinated, flavored, cured, or smoked; and ready-to-eat bacon.

Excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

Cert. Order at 4-5 (the "Certified Class"), and at 69 (granting class certification).

DPP Class Counsel performed a thorough investigation prior to reaching the Seaboard Settlement and, given that the case had proceeded for nearly five years, and that class certification proceedings and fact discovery were completed by the time of the settlement, Class Counsel were were well informed by the time the parties agreed to settle. *See* Bruckner Decl. ¶¶ 8, 11. This settlement, the terms of which are detailed in this brief and the supporting documents, represents a significant recovery for DPPs given Seaboard's relatively small market share.

## III. THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

Parties proposing to settle a class action must obtain the court's approval of the settlement. Fed. R. Civ. P. 23(e). Federal Rule of Civil Procedure ("Rule") 23(e) contemplates a sequential process for courts evaluating class action settlements. At this preliminary approval stage, the court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn.

1993); 2 Newberg on Class Actions, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'"). Generally, before directing notice to the class members, a court makes a preliminary evaluation of the proposed class action settlement pursuant to Rule 23(e). *See* Manual for Complex Litig., § 21.632 (4th ed. 2004).

If the court preliminarily approves the settlement and authorizes notice to the class, and once the class has had the opportunity to consider the settlement, then on final approval the court must determine whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *see also, e.g.*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988). The law strongly favors resolving litigation through settlement, particularly in class actions. *White*, 822 F. Supp. at 1416 ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.") (citation omitted); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2012 WL 5055810, *6 (D. Minn. Oct. 18, 2012).

DPPs respectfully submit that the proposed Settlement Agreement with Seaboard satisfies the preliminary approval standard and should be approved by the Court.

### A. The Proposed Settlement is the Result of Arm's-Length Negotiations Conducted After Extensive Investigation and Discovery, and is Supported by Experienced Class Counsel

"The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Emp. Benefit Plans Sec. Litig.*,

No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also*

*Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight"

to opinions of experienced counsel). Courts attach "[a]n initial presumption of fairness . . .

to a class settlement reached in arm's-length negotiations between experienced and capable

counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-

180, 2000 WL 175126, *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123;

*White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

Indeed, courts consistently find that the terms of a settlement are appropriate where

the parties, represented by experienced counsel, have engaged in extensive negotiations at

an appropriate stage in the litigation and can properly evaluate the strengths and

weaknesses of the case and the propriety of the settlement. *See, e.g.*, *In re Emp. Benefit*

*Plans Sec. Litig.*, 1993 WL 330595, at *5 (noting that "intensive and contentious

negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods.*

*Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, *6 (D. Minn. Feb. 27, 2013) (observing

that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has

been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents

are experienced in similar matters . . . .'") (citation omitted). When, as here, experienced

counsel represent the parties, and rigorous negotiations were conducted at arms' length,

the judgment of the litigants and their counsel concerning the adequacy of the settlement

should be considered. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999);

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Here, the parties to the settlement have had ample opportunity to assess their claims and defenses through investigation, discovery, research, settlement discussions and contested motion practice; and to balance the value of Certified Class members' claims against the substantial risks and expense of continuing litigation. The proposed settlement comes after extensive confidential, protracted arm's-length negotiations between the parties. *See* Bruckner Decl. ¶¶ 8, 9, 11. These discussions commenced after the Court mostly denied all Defendants' second motion to dismiss in October 2020. ECF No. 520; Bruckner Decl. ¶ 8. During the subsequent two years the parties completed fact discovery, litigated class certification, and engaged in highly confidential, extensive arm's-length negotiations. *Id*. The hard-fought negotiations were kept confidential, and often stalled as the parties vigorously litigated the case. *Id.* The negotiations included many conferences and written exchanges between counsel, and the parties ultimately utilized the assistance of experienced mediator Gregory Lindstrom. *Id*. ¶ 9. The parties and Mr. Lindstrom held a full day remote mediation on May 18, 2023. *Id*. While the parties made substantial progress during that session, they did not reach agreement on all material terms. *Id.* The parties ultimately executed the Settlement Agreement on June 12, 2023. *See id.* ¶ 10; *see also* Settlement Agreement. Throughout all of these settlement discussions, counsel for DPPs focused on obtaining the best possible result for the DPP class. Bruckner Decl. ¶ 11.

In sum, the Settlement Agreement: (1) is the result of extensive good-faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced class counsel, is fair, reasonable, and adequate. Based on both the monetary and

cooperation elements of the Settlement Agreement, Co-Lead Class Counsel believes the Settlement Agreement is in the best interests of the Certified Class members and should be approved by the Court. Bruckner Decl. ¶ 13.

## B. The Settlement Provides Significant Relief to the DPP Class and Should be Preliminarily Approved by the Court

The Settlement Agreement with Seaboard provides substantial relief to the Certified Class in terms of monetary relief and cooperation. Under the terms of the Settlement Agreement, within 14 days of the Court's preliminary approval of the Settlement, Seaboard will pay $9.75 million into the Settlement Fund, which shall be deposited into an interest-bearing escrow account.[6] *See* Settlement Agreement ¶¶ 9-10. The Settlement Fund will be used to compensate the Certified Class for the damages suffered and expenses incurred, including attorneys' fees, litigation expenses, and the costs of notice. *Id.* ¶¶ 9-10, 12-14.

At this time, Plaintiffs and their counsel are not seeking attorneys' fees, reimbursement of litigation expenses, or class representative service awards from the Settlement proceeds. However, they will do so in the future, and will notify the Class and file a motion with the Court at an appropriate time.[7] At this time, DPPs also are not seeking to distribute the net Settlement proceeds from the Seaboard Settlement to qualified class members. *See* Bruckner Decl. ¶ 12.

---

[6] Plaintiffs respectfully request that the Court appoint Huntington Bank as the Escrow Agent.

[7] As set forth in the proposed notice documents and the Settlement Agreement at ¶ 6.b, DPPs may withdraw up to $400,000 of the Settlement Fund, subject to the Court's approval, to pay for actual costs of notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

The Settlement Agreement allows (but does not obligate) Seaboard to terminate the Settlement Agreement if potential members of the Certified Class representing more than a specified portion of relevant transactions opt out of the Certified Class. Settlement Agreement ¶ 20. DPPs will provide the side letter to the Court for *in camera* review upon request. *See* Bruckner Decl. ¶ 7.

In addition to the payment of money, the Settlement requires Seaboard to cooperate with DPPs in their continued prosecution of the action against the remaining Defendants. *See* Settlement Agreement ¶ 11. This cooperation includes providing DPPs with copies of discovery responses or other information provided to any other plaintiff in the *In re Pork Antitrust Litigation* or any government entity making substantially similar allegations regarding competition in the Pork industry; authenticating documents for summary judgment and trial; and providing a live witness for testimony at trial. *Id.* This agreement to cooperate is significant because pursuant to the Sherman Act, the remaining Defendants are jointly and severally liable for any damages resulting from Seaboard's Pork sales to DPPs during the Class Period. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 633 (7th Cir. 2002). Thus, this cooperation will assist Plaintiffs in maximizing their claims against the remaining Defendants.

In consideration for these settlement benefits, DPPs and the proposed Certified Class agree to release certain Released Claims (as defined in the Settlement Agreement) against the Seaboard Released Parties (as defined in the Settlement Agreement). *See* Settlement Agreement ¶¶ 10, 15, 16. The release does not extend to any other Defendants

or co-conspirators, or to unrelated claims for breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. *Id.* ¶ 15.

In sum, DPP Class Counsel believe this Settlement with Seaboard provides substantial monetary and non-monetary relief to the Certified Class and falls well within the range of possible approval. For these reasons, DPPs respectfully submit that the Court should grant preliminary approval to the Settlement Agreement and authorize notice to the Certified Class. *See White*, 822 F. Supp. at 1399; 2 NEWBERG ON CLASS ACTIONS, § 11.24.

## IV.    THE SETTLEMENT IS ON BEHALF OF A CERTIFIED CLASS

As noted above in Section II, pp. 4-5, on March 29, 2023, the Court granted DPPs' motion for class certification and certified the DPP Class. Cert. Order at 4-5 (the "Certified Class"), 69 (granting class certification).

"If the court has certified a class prior to settlement, it does not need to recertify it for settlement purposes." 4 NEWBERG ON CLASS ACTIONS, § 13:18 (5th ed. 2011). Here, the parties do not request any changes to the Certified Class, so the Court need not re-certify it.

## V.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

DPPs respectfully request the Court's approval of the notice plan, which will inform class members of: (1) the Court's order certifying the litigation class; and (2) the settlement with Seaboard. Such approval is significant at this point because this notice will provide Certified Class members their final opportunity to opt out of the DPP Class. DPPs propose

that any future settlements or judgment recoveries provide Certified Class members an opportunity to object, but not to opt out of the DPP Class at that point.

Plaintiffs have retained A.B. Data, Ltd., an experienced national class action notice provider and claims administrator and Court-appointed administrator of the JBS and Smithfield settlements, as well as the claims and distribution process, to administer the notice plan. Declaration of Eric Schachter ("Schachter Decl.") filed concurrently herewith, ¶¶ 1-2, Ex. A; ECF Nos. 631, 845, 1208.

### A. The Content and Form of the Proposed Notices Are Fairly Balanced, Easy to Read, and Contain All Rule 23 Notice Requirements.

For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Under Rule 23(e), Class Members are entitled to reasonable notice of the proposed Settlement. *See* MANUAL FOR COMPLEX LITIG., §§ 21.312, 21.631 (4th ed. 2011). The form of notice is "adequate if it may be understood by the average class member." 4 NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002). Class notice is intended as a summary, rather than a complete source of information. *See Petrovic*, 200 F.3d at 1153; *Mangone v. First*

*USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001). The class notice's form and content are committed to a district court's sound discretion. *See Mangone*, 206 F.R.D. at 231.

Settlement notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The notices in the Certification Notice Plan conform to the seven plain language requirements of Rule 23(c)(2)(B) and state the following information: (1) the nature of the action; (2) the definition of the Class certified; (3) the class claims, issues, or defenses; (4) that a Class member may enter an appearance through an attorney if the member so desires; (5) that a Class member may object to the Settlement and the process for doing so; (6) that the Court will exclude any member who requests a timely exclusion from the Settlement, the Certified Class, or both; (7) the time and manner for requesting exclusion; and (8) the binding effect of a Class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); Schachter Decl. Exs. B, C. With this and the other information they contain, the notices' contents address material information for a certified class.

The notices avoid legalese in favor of modern language and provide a toll-free number and website link to direct Class members to additional sources of information, including pleadings and orders from the case. Accordingly, the proposed notices provide the best written notice practicable to Class members.

### B. The Proposed Notice Plan Provides the Best Notice Practicable Under the Circumstances of this Case

Federal case law on notice requires "only the best notice that is practicable." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 255 (N.D. Ill 2014) (quoting *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013)). Best notice practicable means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Id.* at 176. In addition to United States mail, direct notice may be by electronic means or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). If names and addresses cannot be identified by reasonable effort then, other methods may be substituted. *See Hughes*, 731 F.3d at 677; *see also City of Greenville v. Syngenta Crop Prot.*, No. 3:10-CV-188, 2012 WL 1948153, *4 (S.D. Ill. May 30, 2012).

The proposed notice plan in this case satisfies these criteria and is the same as the notice plan previously approved by the Court in the JBS and Smithfield settlements. *See* ECF Nos. 631, 845. DPPs are also at the tail end of the initial claims process, which has resulted in updated contact information for Class members. *See* ECF No. 1864. Namely, DPPs propose to the Court a plan of notice that comports with due process and provides reasonable notice to known and reasonably identifiable customers of the Defendants pursuant to Rule 23. The class notice documents, consisting of the long form, short form, and publication notice, comply with the requirements of Rule 23(c)(2)(B). *See* Schachter Decl. Exs. B (long form), C (short form), D (publication). The notice documents define the

Certified Class, describe the nature of the action, summarize the class claims, explain the procedure to object to the proposed Settlement and to request exclusion from the Settlement, the Certified Class, or both. *Id.* The notice documents describe the terms of the Settlement Agreement and inform the Certified Class members that there is no plan of distribution of the Seaboard settlement proceeds at this time. *Id.* The notice documents will provide the date, time and place of the Final Fairness Hearing (once that hearing is set by the Court) and will inform Certified Class members that they do not need to enter an appearance through counsel, but may do so if they choose. *Id.*

A.B. Data is very familiar with providing such notice to DPP Class members from working with multiple settlements with notice, settlement claims, and distribution. The target audience for this notice plan is businesses and individuals that purchased the subject Pork. The proposed notice plan is designed to provide notice to these Class members consistent with the due process requirements of Rule 23. Defendants maintained and produced records showing addresses for the vast majority of Class members. Accordingly, A.B. Data has developed a multi-method campaign for the notice plan based on and similar to notice campaigns the Court approved for earlier settlements.

### 1.    Direct-Mailed Notice to Claimants with Known Street Addresses

DPPs propose to send paper long-form notices to Class members with addresses that are reasonably accessible based on records produced by Defendants. Schacter Decl. Exh. B. The long-form notice will be sent to approximately 55,000 Class members in this manner. Schachter Decl. ¶¶ 6, 7. A.B. Data will also post the long-form notice on the existing case website, https://porkantitrustlitigation.com/. *Id.* A.B. Data will track mail that

the post office returns as undeliverable, and where feasible will resend using third-party information providers. *Id.* ¶ 9.

## 2. Direct-E-Mailed Notice to Claimants With Known E-Mail Addresses

The notice rule states notice may be given by one or more methods, including electronic mail. Fed. R. Civ. P. 23(c)(2)(B). A.B. Data will send an email notice, Schacter Decl. Ex. C, to the approximately 3,000 Class members with known email addresses. *Id.* ¶ 7. A.B. Data implements certain best practices to increase deliverability and determine how many emails are successfully delivered. *Id.* ¶ 9.

The Email Notice will provide Class members with an electronic link to the case website, https://porkantitrustlitigation.com/. *Id.* ¶ 8. The website provides more detailed information including case documents and the long form notice.

## 3. Media Publication Campaign

When not all class members can be identified through reasonable effort, "there is no other requirement of mandatory individual notice, and the Court must exercise its discretion to provide the best notice practicable under the circumstances." *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 539, 539 (N.D. Ga. 1992); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854 at *2 (N.D. Ill. March 2, 2017) (publication permissible if class members not reasonably identifiable), *affirmed sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *Birchmeier*, 302 F.R.D. at 255 ("making broad-based forms of notice appropriate"). For those Class members whose addresses and email addresses are not reasonably accessible, A.B. Data

has developed a public awareness media campaign similar to campaigns used for prior settlements in this case.

This media campaign will include posting on multiple websites. A.B. Data will publish a banner ad like Exhibit D to the Schacter Declaration. The Banner Ad will run on Supermarket News (www.supermarketnews.com) and Nation's Restaurant News (www.nrn.com). DPPs expect to run the ads for four weeks. Schachter Decl. ¶ 10.

4.     Informational Web Site And Toll-Free Telephone Number

To provide detailed information about the case and specific information to Class members, A.B. Data will update and continue to operate and monitor the case website for this case at https://porkantitrustlitigation.com/. *See* Schachter Decl. ¶¶ 7, 8, 11.

## VI.     THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

The last step in the settlement approval process is the Final Fairness Hearing, at which the Court may hear all evidence necessary to evaluate and determine whether to grant final approval to the proposed Settlement. At that hearing, proponents of the Settlement may explain and describe their terms and conditions and offer argument in support of the Settlement's approval, and members of the Certified Class or their counsel may be heard regarding the proposed Settlement if they choose. DPPs propose the following schedule of events necessary for disseminating notice to the Certified Class and the Final Fairness Hearing.

| DATE | EVENT |
|---|---|
| Within 30 days after entry of the preliminary approval order. | Settlement Administrator to provide direct mail and email notice, and commence implementation of the notice plan. |
| 60 days after the commencement of Notice. | Last day for Settlement Class members to request exclusion from the Certified Class; for Certified Class members to object to the Settlement; and for Certified Class members to file notices to appear at the Final Fairness Hearing. |
| Within 45 days after last day to request exclusion from the Settlements. | Co-Lead Class Counsel to provide Seaboard with a list of all persons and entities who have timely and adequately requested exclusion from the Settlement. |
| 14 days before Final Settlement Fairness Hearing. | Co-Lead Class Counsel shall file a motion for final approval of the Settlement and all supporting papers (assuming that Seaboard's right to terminate has either not been triggered or has not been exercised), and Co-Lead Class Counsel and Seaboard may respond to any objections to the proposed Settlement. |
| 90 days after last day to request exclusion from the Settlement, or as soon thereafter as the matter may be heard by the Court. | Final Fairness Hearing.[8] |

---

[8] Under the terms of the Settlement Agreement (¶ 25), within 10 days of the filing of this motion for preliminary approval, Seaboard shall serve appropriate Federal and State officials with all required materials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Under the Act, this Court may not enter an order giving final approval of the proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under 28 U.S.C. § 1715 (b). DPPs' proposed timetable and "no sooner than" Final Settlement Fairness Hearing date proposed above will allow time for the notice required under the Act.

# VII.    CONCLUSION

For these reasons, DPPs respectfully request that the Court preliminarily approve the Settlement with Seaboard, approve the proposed notice plan, schedule the dissemination of notice to the Certified Class, and schedule the Final Fairness Hearing for the Settlement.

Date:  June 22, 2023

*/s/ Michael H. Pearson*
Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pwfirm.com
dwarshaw@pwfirm.com
bpouya@pwfirm.com
mpearson@pwfirm.com

W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Joseph C. Bourne (MN #0389922)
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
jcbourne@locklaw.com

Bruce L. Simon (*Pro Hac Vice*)
Jill M. Manning (*Pro Hac Vice*)
PEARSON WARSHAW, LLP
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pwfirm.com
jmanning@pwfirm.com

*Direct Purchaser Plaintiffs Co-Lead Class Counsel*