# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To: <br><br> ALL DIRECT PURCHASER PLAINTIFF CLASS ACTIONS | |

## LONG-FORM SETTLEMENT AGREEMENT
## BETWEEN DIRECT PURCHASER CLASS PLAINTIFFS AND SEABOARD FOODS LLC

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 12th day of June, 2023 ("Execution Date") by and between the Direct Purchaser Plaintiffs ("DPPs"),[1] through Co-Lead Class Counsel (as hereinafter defined) for the proposed Certified Class (as hereinafter defined), and Seaboard Foods LLC, and all of its predecessors; successors; assigns; and any and all past, present, and future parents, owners, divisions, and departments (collectively referred to as "Settling Defendant" or "Seaboard") in the above-captioned action (the "Actions"). DPPs, on behalf of the Certified Class, and Seaboard are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, DPPs on behalf of themselves and as representatives of the Certified Class of similarly situated persons or entities allege in the Actions, among other things, that Seaboard participated in a conspiracy – with other Defendants in this litigation and unnamed co-conspirators – "from at least 2009 to the present to fix, raise, maintain, and stabilize the price of pork." (DPPs' Third Amended Consolidated Complaint, Dkt. No. 431, ¶ 2);

---

[1] As used herein, "DPPs" means Maplevale Farms, Inc., Ferraro Foods, Inc., Ferraro Foods of North Carolina, LLC, and Olean Wholesale Grocery Cooperative, Inc.

WHEREAS, Co-Lead Class Counsel have been appointed by the Court to represent the Certified Class of direct purchasers of pork (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Seaboard in any way arising out of or relating in any way to the direct purchase of Pork (as hereinafter defined) produced, processed or sold by Seaboard or any of the Defendants or their co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the Settlement;

WHEREAS, DPPs have concluded, after preliminary investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of DPPs to enter into this Settlement Agreement with Seaboard to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Certified Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of DPPs and the Certified Class;

WHEREAS, Seaboard denies all allegations of wrongdoing in the Actions. However, despite its belief that it is not liable for, and has good defenses to, the claims alleged in the Actions, Seaboard desires to settle the Actions, and thus avoid the expense, risk, exposure, inconvenience, and distraction of continued litigation of the Actions or of any action or proceeding relating to the matters being fully settled and finally put to rest in this Settlement Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the Parties that the claims of the DPPs

and the Certified Class be settled and compromised and dismissed on the merits with prejudice as to Seaboard, subject to Court approval:

1.     <u>General Definitions</u>. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

      a.     "Seaboard Released Parties" means Seaboard, Seaboard Corporation and their former, current and future parents, subsidiaries and affiliates (except as excluded below) and any of their respective former, current and future, direct or indirect trustees, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers and employees. Provided, however, that Seaboard Released Parties does not include Seaboard Triumph Foods, LLC or Daily's Premium Meats, LLC, and for avoidance of doubt, does not include Triumph Foods, LLC.   Furthermore, notwithstanding the foregoing, "Seaboard Released Parties" does not include any Defendant other than Seaboard named by DPPs in the Actions, either explicitly or as a third-party beneficiary.

      b.     "Actions" means the putative class actions filed by DPPs in the above captioned proceeding.

      c.     "Certified Class" means the class defined in Paragraph 5 below.

      d.     "Class Period" means June 29, 2014 through June 30, 2018.

      e.     "Co-Lead Class Counsel" means Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP (now known as Pearson Warshaw, LLP) as appointed by the Court to represent the Certified Class of direct purchasers of pork.

CASE 0:18-cv-01776-JRT-JFD   Doc. 1360-1   Filed 10/09/22   Page 4 of 28

f.     "Complaint" means the DPPs' Third Amended Consolidated Complaint in these Actions, Dkt. No 431.

g.     "Court" means the United States District Court for the District of Minnesota.

h.     "Defendants" means Smithfield Foods, Inc., JBS USA Food Company, JBS USA Food Company Holdings, Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation, Seaboard Foods LLC, Seaboard Corporation, Triumph Foods, LLC, Tyson Foods, Inc., Tyson Prepared Foods, Inc., Tyson Fresh Meats, Inc., and Agri Stats, Inc.

i.     "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Seaboard for the benefit of the Certified Class.

j.     "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and DPPs (by and through Co-Lead Class Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Certified Class, as set forth in Paragraphs 9 and 10 below.

k.     "Final Approval" means an order and judgment by the Court that finally approves this Settlement Agreement and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Seaboard with prejudice from the Actions.

l.     "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) final approval of the Settlement Agreement by the Court ("Final Approval"); and (b) either

CASE 0:18-cv-01776-JRT-JFD Doc. 1336 Filed 08/25/22 Page 5 of 28

(1) thirty (30) days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

m.    "Person" means without limitation, any individual, corporation, partnership or any variation thereof (*e.g.*, limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business.

n.    "Pork" means porcine or swine products processed, produced or sold by Seaboard, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chefs prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products), offal or variety products (including but not limited to hearts, tongues, livers, head products, spleens, kidneys, feet, stomach, bladder, uterus, snoot, ears, tail, brisket bone, intestines, jowls, neck bones or other bones, skin, lungs, glands, hair, or pet food ingredients), rendered product and byproducts (including but not limited to lard,

grease, meat meal, bone meal, blood meal, or blood plasma), casings (including but not limited to mucosa), and carcasses.

o.   "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

p.   "Released Claims" shall have the meaning set forth in Paragraph 15 of this Agreement.

q.   "Releasing Party" or "Releasing Parties" shall refer individually and collectively to the Certified Class and all members of the Certified Class, including the DPPs, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement. As used in this Paragraph, "subsidiaries" means entities controlling,

controlled by or under common ownership or control with, in whole or in part, any of the Releasing Parties.

r.   "Settlement Administrator" means the firm retained to disseminate the Class Notice and to administer the payment of Settlement Funds to the Certified Class, subject to approval of the Court.

s.   "Settlement Fund" means $9,750,000.00 (nine million, seven hundred fifty thousand U.S. dollars), the amount Seaboard shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Certified Class, pursuant to Paragraphs 9 and 10 below.

2.   <u>The Parties' Efforts to Effectuate this Settlement Agreement</u>. The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.   <u>Litigation Standstill</u>. DPPs, through Co-Lead Class Counsel, shall cease all litigation activities against Seaboard related to the pursuit of claims against Seaboard in the Actions. In addition, DPPs, through Co-Lead Class Counsel, will not (a) add as a defendant in the Actions, or (b) name as a defendant in any new action asserting claims that fall within the scope of the Released Claims, any additional entities in which Seaboard has an interest, which entities include Seaboard Triumph Foods, LLC and Daily's Premium Meats, LLC. None of the foregoing provisions shall be construed to prohibit DPPs from continuing to pursue their claims against non-settling Defendants (including Triumph) or Co-Conspirators. Similarly, the Released Parties and their counsel shall cease all litigation activities against DPPs, including not participating in, or supporting any party adverse to DPPs in, any pretrial or trial challenge directed against DPPs, except if Seaboard determines, in good faith, that the proceedings could adversely affect Seaboard in connection with claims brought by other

993764.1 559578.1
CORE/3508162.0002/182448764.3

plaintiffs based on substantially similar allegations.  In the event of a disagreement among the parties as to the application of this provision, the parties will meet and confer to address the matter in good faith.

    4.   <u>Motion for Preliminary Approval</u>. Within two (2) days after the Execution Date, DPPs will file a notice of settlement with the Court, maintaining confidentiality of the settlement amount. No later than ten (10) business days after the Execution Date, unless extended by mutual agreement, DPPs will move the Court for Preliminary Approval of this Settlement Agreement. Within a reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Co-Lead Class Counsel to Seaboard for its review. To the extent that Seaboard objects to any aspect of the motion, it shall communicate such objection to Co-Lead Class Counsel, and the Parties shall meet and confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Certified Class.

    5.   <u>Certified Class</u>. The Certified Class shall have the same definition and consist of the litigation class certified by the Court on March 29, 2023 (ECF No. 1887) defined as follows:

> All persons and entities who directly purchased one or more of the following types of pork, or products derived from the following types of pork, from Defendants, or their respective subsidiaries or affiliates, for use or delivery in the United States from June 29, 2014 through June 30, 2018: fresh or frozen loins, shoulders, ribs, bellies, bacon, or hams. For this lawsuit, pork excludes any product that is marketed as organic or as no antibiotics ever (NAE); any product that is fully cooked or breaded; any product other than bacon that is marinated, flavored, cured, or smoked; and ready-to-eat bacon.[2]

---

[2] Excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any

6.     <u>Class Notices</u>. After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

a.     Individual notice of this Settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Co-Lead Class Counsel, to potential members of the Certified Class, in conformance with a notice plan to be approved by the Court.

b.     Neither the Certified Class, Co-Lead Class Counsel, nor Seaboard shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Certified Class or obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval. Seaboard shall not object to Co-Lead Class Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $400,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement.   No portion of the aforementioned $400,000 shall be paid for legal fees.

c.     Co-Lead Class Counsel shall use best efforts to send out notice to the Certified Class within two (2) months of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice that Co-Lead Class Counsel are permitted to withdraw from the Settlement Fund, either pursuant to the Parties' Settlement Agreement or order of the

federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

Court, shall be nonrefundable if, for any reason, the Settlement Agreement is rescinded according to its terms or is not finally approved by the Court.

7.    <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval, then DPPs, through Co-Lead Class Counsel – in accordance with the schedule set forth in the Court's Preliminary Approval – shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Co-Lead Class Counsel to Seaboard for its review. To the extent that Seaboard objects to any aspect of the motion, it shall communicate such objection to Co-Lead Class Counsel, and the parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.    Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Certified Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing the implementation, performance, and consummation of the Settlement Agreement;

b.    Determining that the Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.    Dismissing the Actions with prejudice as to Seaboard in all class action complaints asserted by DPPs or the Certified Class;

d.    Discharging and releasing Seaboard Released Parties from all Released Claims;

e.     Requiring Co-Lead Class Counsel to file with the Court a list of potential Certified Class members that timely excluded themselves from the Certified Class;

f.     Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

g.     Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Seaboard shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement Agreement.

8.     This Settlement Agreement shall become final only when (a) the Court has entered an order finally approving this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; (b) the Court has entered Final Judgment dismissing the Actions against Seaboard on the merits with prejudice as to all Certified Class members and without costs, and (c) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of a Final Judgment as described in clause (b) above has expired or, if appealed, approval of this Settlement Agreement and the Final Judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review or any such appeal is otherwise disposed of. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining if the conditions for final approval have been satisfied. On the Execution Date, DPPs and Seaboard shall be bound by the terms of this Settlement Agreement, and the Settlement Agreement shall not be rescinded except in accordance with Paragraph 21 of this Settlement Agreement.

9.    Escrow Account. The Escrow Account shall be administered by Co-Lead Class Counsel for the DPPs and Certified Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

10.    Settlement Consideration. In consideration for the release of Released Claims and the dismissal of the Actions, within fourteen (14) business days of the Court's grant of Preliminary Approval, Seaboard shall pay or cause to be paid the Settlement Fund of $9,750,000 (nine million, seven hundred fifty thousand U.S. dollars) into the Escrow Account.

11.    Cooperation. Cooperation by Seaboard is a material term of this Settlement Agreement. Seaboard hereby agrees to the following:

    a.    To the extent applicable during the pendency of the Direct Purchaser Plaintiffs' (DPPs) action in the *In re Pork Antitrust Litigation*, Defendant shall contemporaneously provide to DPPs (a) any discovery responses, documents, or information it provides to any other plaintiff in the *In re Pork Antitrust Litigation*, and (b) any discovery responses, documents, or information it provides to government entities making substantially similar allegations regarding competition in the Pork industry.

    b.    Defendant agrees to make all good faith efforts to provide facts relevant to DPPs' efforts in obtaining the authentication and admissibility of Defendant's documents for purposes of summary judgment and/or trial.

    c.    Defendant agrees to make available to testify live at a single DPP trial the following: (a) one then-current Seaboard employee who can authenticate a specific set of documents (all of which DPPs will

CASE 0:18-cv-01776-JRT-JFD    Doc. 1930-1    Filed 09/13/23    Page 13 of 28

provide to Seaboard at least forty-five (45) days before jury selection starts), and (b) one then-current Seaboard employee who can serve as a fact witness on material fact issues on which that employee has personal knowledge to the extent those fact issues remain in dispute at the time of trial.

12.    <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Co-Lead Class Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the relation-back election (as defined in Treas. Reg. § l.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Co-Lead Class Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.468B-1. Co-Lead Class Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § l. 468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Seaboard shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

13.     <u>Distribution of Settlement Fund to Certified Class</u>. Members of the Certified Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction against the Seaboard Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the Seaboard Released Parties. Except as provided by order of the Court, no member of the Certified Class shall have any interest in the Settlement Fund or any portion thereof. DPPs, members of the Certified Class, and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Certified Class. Seaboard and the other Seaboard Released Parties shall not be liable for any costs, fees, or expenses of any of DPPs' and Co-Lead Class Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

14.     <u>Fee Awards, Costs and Expenses, and Incentive Payments to DPPs</u>. Subject to Co-Lead Class Counsel's sole discretion as to timing, Co-Lead Class Counsel will apply to the Court for a fee award, plus expenses, and costs incurred, and incentive payments to the DPPs to be paid from the proceeds of the Settlement Fund. Seaboard shall have no responsibility, financial obligation, or liability for any such fees, costs, or expenses.

15.     <u>Release</u>. Upon Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the Seaboard Released Parties from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Certified Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval against the Released Parties on account of, or in any way

arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted in the Actions, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the direct purchase of Pork produced, processed or sold by the Seaboard Released Parties or any of the Defendants or their Co-Conspirators, and purchased directly by the Releasing Parties (the "Released Claims").[3] Without limitation, Released Claims include (a) claims arising out of purchases made at any time before, during or after the Class Period up until the date of the Order granting Preliminary Approval, and (b) claims against the Released Parties arising out of Seaboard's ownership or partial ownership of other entities in which Seaboard has an interest, including Seaboard Triumph Foods, LLC and Daily's Premium Meats, LLC. Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant (including but not limited to Triumph Foods, LLC and Triumph Foods, LLC's separate interest in Seaboard Triumph Foods, LLC and Daily's Premium Meats, LLC) or co-conspirator other than the Seaboard Released Parties, nor (ii) any claims wholly unrelated to the allegations in the Actions that are based on breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim. This reservation of claims set forth in (i) and (ii) of this Paragraph does not impair or diminish the right of the Seaboard Released Parties to assert any and all defenses to such claims. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties

CASE 0:18-cv-01776-JRT-JFD   Doc. 1788   Filed 06/05/23   Page 16

---

[3] For the avoidance of doubt, the Certified Class does not include any class member's indirect purchases of Pork, so therefore the release applies only to the purchase of Pork by a Certified Class member directly from the Seaboard Released Parties or any of the Defendants or their Co-Conspirators. Provided, however, that the release applies to claims that members of the Certified Class hold by reason of assignments from direct purchasers.

who have not submitted a valid request to be excluded from the Certified Class shall be preliminarily enjoined and barred from asserting any Released Claims against the Seaboard Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Seaboard Released Parties arising out of or relating to the Released Claims.

16.     <u>Further Release</u>. In addition to the provisions of Paragraph 15, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are released pursuant to the provisions of Paragraph 15, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 15, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

17.     Non-Disparagement. The Parties agree they will not disparage the Actions or one another, such as by making public statements that this lawsuit was frivolous, and instead will confine their public comments to essentially the following. The DPPs shall confine their public statements to essentially the following: "The parties have agreed to resolve this matter. DPPs believe they would have prevailed." Seaboard shall confine its public statements to disclosing the dollar amount of the settlement, briefly referring to the need for Court approval, and essentially the following additional comments (not intended to be verbatim): "The parties have agreed to resolve this matter. Seaboard denies liability and continues to deny the allegations in DPPs' complaint. Seaboard believes that it has valid defenses to the DPPs' claims, but it has decided to settle these claims to avoid the uncertainty, risk, expense, and distraction of continued litigation. This settlement resolves Seaboard's exposure in the Minnesota antitrust cases as to the Direct Purchaser Class Plaintiffs and is in the best interests of its stakeholders, employees, customers, and consumers. By putting these cases behind it, Seaboard can focus on achieving the long-term goals of its business."

18.     This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

19.     This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

20.     Option to Terminate: Seaboard will have the sole discretion to terminate the Settlement Agreement if potential members of the Certified Class representing more than a set percentage (as set forth in a confidential side letter) of pork sold by Defendants in the United States opt out of the Certified Class. Any such decision to rescind the Settlement Agreement must be made within eighteen (18) calendar days of Co-Lead Class Counsel providing a list of persons or entities that have timely requested exclusion from the Certified

Class, which is to be provided by DPPs to Seaboard within 45 days of the last day to request exclusion. In the event that Seaboard considers electing to terminate the Parties' Settlement Agreement under this provision, or there are any disputes under this provision, the Parties agree to mediate this dispute with Greg Lindstrom before Seaboard makes such an election. Once mediation is requested by either party, the time period for Seaboard to exercise its right to rescind the Settlement Agreement shall be tolled until seven (7) calendar days after the mediation is completed, provided, however, that in any event such tolling period may not run longer than 21 calendar days beyond the date mediation is requested by either party unless the delay occurs because of the mediator's unavailability or other factors beyond Seaboard's control. By agreeing to mediate, Seaboard does not give up its sole discretion to terminate the Settlement Agreement as set forth in this paragraph. If Seaboard elects to terminate, then DPPs shall in no way whatsoever be prejudiced in resuming litigation as it stood as of the date of this Settlement Agreement and Seaboard shall be prohibited from arguing to DPPs or the Court that its agreements with other plaintiffs or parties in any way limit DPPs' ability to do so.

21.     DPPs' and Seaboard's Option to Rescind. If the Court does not approve this Settlement Agreement in all material respects, or if the Court does not grant Preliminary Approval of the Settlement Agreement, or if the Court does not enter Final Approval and Final Judgment as provided for in Paragraphs 1(i) and 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraphs 1(i) and 7 of this Settlement Agreement, then the DPPs and Seaboard shall each, in their sole discretion, have the option to rescind this Settlement Agreement in its entirety within ten (10) business days of the event giving rise to such option.

22.     _Effect of Rescission_.   If the DPPs or Seaboard rescind this Settlement Agreement under Paragraph 21, then: (a) this Settlement Agreement shall become null and void; (b) this Settlement Agreement, including its exhibits, and any and all negotiations, documents, information, and discussions associated with it shall be without prejudice to the rights of Seaboard or the DPPs, shall not be deemed or construed to be an admission or denial, or evidence or lack of evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth or falsity of any of the claims or allegations made in the Actions, and shall not be used directly or indirectly, in any way, whether in the Actions or in any other proceeding, unless such documents and/or information is otherwise obtainable by separate and independent discovery permissible under the Federal Rules of Civil Procedure; (c) the Parties shall return to their litigation positions before the Execution Date; (d) the DPPs shall in no way whatsoever be prejudiced in resuming full discovery and adjudication of the Actions as they stood as of the Execution Date, and Seaboard shall be prohibited from arguing to DPPs or the Court that any agreements with other plaintiffs or parties in any way limit DPPs' ability to do so; (e) with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(b), all other funds in the Escrow Account shall be returned to Seaboard within five (5) business days of the Escrow Agent receiving notice of rescission; (f) Co-Lead Class Counsel shall immediately consent to such return of remaining funds in the Escrow Account; and (g) the Parties' position shall be returned to the status quo ante.

23.     _Choice of Law and Dispute Resolution_. Any disputes relating to this Settlement Agreement shall be governed by Minnesota law without regard to conflicts of law provisions, and with the exception of any dispute regarding the provisions of Paragraph 15 or 16, any and all disputes regarding this Settlement Agreement will be mediated with Greg Lindstrom, with the cost of the mediation shared equally, prior to any Party seeking Court involvement.

24. <u>Mandatory and Exclusive Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably agree to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 15 or 16, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 15 or 16 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraphs 15 or 16 are asserted by any Seaboard Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Seaboard Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

25. <u>Class Action Fairness Act</u>. Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, Seaboard, at its sole expense, shall submit all materials required to be served upon appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, shall

arrange for such notices to be served, and shall confirm to DPPs' Co-Lead Class Counsel that such notices have been served.

26.     Costs Relating to Administration. The Seaboard Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Fund.

27.     Binding Effect. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Certified Class, the Releasing Parties, and the Seaboard Released Parties. Without limiting the generality of the foregoing, upon certification of the Certified Class and Final Approval, each and every covenant and agreement herein by the DPPs shall be binding upon all members and potential members of the Certified Class and Releasing Parties who have not validly excluded themselves from the Certified Class.

28.     Sole Remedy. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Seaboard Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Seaboard Released Party.

29.     Counsel's Express Authority. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

30.     It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

31.     <u>Notices</u>. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given by: (a) email, and either (b) hand delivery; (c) registered or certified mail, return receipt requested, postage pre-paid; or (d) Federal Express or similar overnight courier.

If directed to DPPs, the Certified Class, or any member of the Certified Class, notice shall be sent to:

> W. Joseph Bruckner
> Brian D. Clark
> LOCKRIDGE GRINDAL NAUEN P.L.L.P.
> 100 Washington Avenue South, Suite 2200
> Minneapolis, MN 55401
> wjbruckner@locklaw.com
> bdclark@locklaw.com

> Clifford H. Pearson
> Bobby Pouya
> PEARSON WARSHAW, LLP
> 15165 Ventura Boulevard, Suite 400
> Sherman Oaks, CA 91403
> cpearson@pwfirm.com
> bpouya@pwfirm.com

If directed to Seaboard, notice shall be sent to:

> William L. Greene
> William D. Thomson
> STINSON LLP
> 50 South Sixth Street, Suite 2600
> Minneapolis, MN 55402
> william.greene@stinson.com
> william.thomson@stinson.com

Or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph.

32.     <u>No Admission</u>. Whether or not Final Judgment is entered or this Settlement Agreement is rescinded, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated

with it, are not and shall not be deemed or construed to be an admission of liability by any Party or Seaboard Released Party.

33.     <u>No Third-Party Beneficiaries</u>. No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Seaboard Released Party, DPP, member of the Certified Class, or Co-Lead Class Counsel.

34.     <u>No Party is the Drafter</u>. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

35.     <u>Headings</u>.  The headings used in this agreement are inserted for convenience only and shall not constitute a part hereof.

36.     <u>Amendment and Waiver</u>. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement. This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

37.     <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

38.     <u>Integrated Agreement</u>. This Settlement Agreement (including the side letter referenced in Paragraph 20) comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. In entering into this Settlement Agreement, the DPPs and Seaboard have not relied upon any representation or promise made by the DPPs or Seaboard that is not contained in this Settlement Agreement. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

39.     <u>Voluntary Settlement</u>. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached through extensive arm's-length negotiations, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

40.     <u>Confidentiality</u>. The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. However, the following rules shall govern disclosure of the fact of settlement and the settlement amount prior to the public filing of the settlement agreement: (a) as of the Execution Date, Seaboard can inform the other Defendants that it is has reached a settlement agreement with DPPs; (b) as of the Execution Date, Seaboard may disclose the amount of

the settlement on a confidential basis to attorneys, auditors, and employees who need to know

that information; (c) as of the Execution Date, DPPs may inform the other classes they have

reached a settlement with Seaboard; and (d) as of the Execution Date, DPPs may inform other

Defendants that they have reached a settlement with Seaboard in connection with settlement

discussions that are subject to the confidentiality provisions of Federal Rule of Evidence 408.

     IN WITNESS WHEREOF, the Parties, individually or through their duly authorized

representatives, enter into this Settlement Agreement on the date first above written.

Dated: June 12, 2023

W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
*wjbruckner@locklaw.com*
*bdclark@locklaw.com*

*Co-Lead Class Counsel for the Direct Purchaser
Plaintiff Class*

Dated: June 12, 2023

Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T:  (818) 788-8300
F:  (818) 788-8104
*cpearson@pwfirm.com*
*dwarshaw@pwfirm.com*
*bpouya@pwfirm.com*
*mpearson@pwfirm.com*


Bruce L. Simon (*Pro Hac Vice*)
Neil Swartzberg (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
T:  (415) 433-9000
F:  (415) 433-9008
*bsimon@pwfirm.com*
*nswartzberg@pwfirm.com*


Melissa S. Weiner (MN #0387900)
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
T: (612) 389-0600
F: (612) 389-0610
*mweiner@pwfirm.com*


*Co-Lead Class Counsel for the Direct
Purchaser Plaintiff Class*

Dated: June 12, 2023

William L. Greene
William D. Thomson
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
*william.greene@stinson.com*
*william.thomson@stinson.com*

*Counsel for Seaboard Foods LLC*