# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF CLASS ACTION | Case No. 18-cv-01776 (JRT/JFD)<br><br>**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FIRST DISTRIBUTION OF NET SETTLEMENT PROCEEDS** |

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | LITIGATION BACKGROUND | | 3 |
| | A. | Claims Administration | 3 |
| | | 1. The Court-Approved Claims Process was Successfully Carried Out | 3 |
| | | 2. A.B. Data Verified Each Claim was Valid and Accurate | 4 |
| | | 3. The Audit Process was Thorough | 7 |
| | | 4. Administration Costs | 7 |
| | B. | Distribution of the Net Settlement Fund | 8 |
| III. | ARGUMENT | | 11 |
| | A. | The Court Should Approve the Recommendations of the Claims Administrator and Co-Lead Class Counsel Concerning Acceptance or Rejection of Claims | 12 |
| | B. | Late Claims that are Otherwise Valid Should be Paid | 13 |
| | C. | The Court Should Authorize Payment of Outstanding Fees and Costs | 14 |
| | | 1. Claims Administration Costs | 14 |
| | | 2. Other Expenses Associated with the Settlements | 14 |
| IV. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Auto. Refinishing Paint Antitrust Litig.*,
    617 F. Supp. 2d 336 (E.D. Pa. 2007) ....................................................................... 11

*Bradburn Parent Teacher Store, Inc. v. 3M*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007) ....................................................................... 11

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    No. 94 C 897, 1999 WL 639173 (N.D. Ill. Aug. 17, 1999) ....................................... 11

*Burns v. Elrod*,
    757 F.2d 151 (7th Cir. 1985) .................................................................................... 13

*In re Cendant Corp. Prides Litig.*,
    233 F.3d 188 (3d Cir. 2000) ..................................................................................... 13

*In re Gypsum Antitrust Cases*,
    565 F.2d 1123 (9th Cir. 1977) .................................................................................. 13

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ...................... 11

*In re Potash Antitrust Litig.*,
    MDL No. 1996, Dkt. No. 610 (N.D. Ill Jul. 18, 2014) .............................................. 11

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .......................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 3:07-md-1827, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) .......................... 11

*In re Wholesale Grocery Prod. Antitrust*,
    No. 09-MD-02090 ADM/TNL, 2018 WL 11424046 (D. Minn. Feb. 7, 2018) ........ 11

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 12.10 (4th ed. 2002) ............... 11

## I. INTRODUCTION

The Direct Purchaser Plaintiffs ("DPPs") in this certified antitrust class action hereby seek the Court's approval of their proposed plan to distribute the $64,751,240.10 Net Settlement Fund[1] to qualified claimants. This Motion and the plan of distribution are pursuant to the terms and conditions of the first two Settlement Agreements in this case with the JBS[2] and Smithfield[3] Defendants.

DPPs propose that the Court order that the Net Settlement Fund be distributed on a *pro rata* basis pursuant to the portion of approved eligible Pork purchases of Class members who have filed valid claims. The *pro rata* distribution in this case was described in the long form class notice and claim form which have already been approved by the Court (*see* ECF No. 1208) and sent to Class members. The long form notice stated: "The anticipated distribution plan for the Settlements is to make a *pro rata* distribution to each qualifying Settlement Class Member based on the dollar value of approved purchases of

---

[1] The term "Settlement Fund" is the gross settlement fund and refers to the $101,864,300.00 paid by the JBS and Smithfield Defendants into the escrow account. The term "Net Settlement Fund" refers to the gross settlement fund plus accrued interest and minus (i) the costs of settlement administration and escrow, (ii) taxes, and (iii) the attorneys' fees, litigation expenses, and class representative incentive awards previously awarded by the Court (*see* ECF No. 1424). As more fully set forth in Section II.B below, the Net Settlement Fund equals $64,751,240.10. *See also* Declaration of Michael H. Pearson filed concurrently herewith ("Pearson Decl.") ¶ 4.

[2] "JBS" refers to Defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company. The Court granted final approval of the JBS Settlement on July 26, 2021. *See* ECF No. 838.

[3] "Smithfield" refers to Defendant Smithfield Foods, Inc. The Court granted final approval of the Smithfield Settlement on January 31, 2022. *See* ECF No. 1154.

Pork per Settlement Class Member during the Settlement Class Period." *See* ECF No. 1194-2, Ex. B.

The Court-appointed Settlement Administrator, A.B. Data Ltd., in consultation with Co-Lead Class Counsel,[4] disseminated notice to the Settlement Classes (as defined in each of the Settlement Agreements), diligently processed 4,161 claims, and determined each claimant's eligibility. *See generally* Declaration of Eric Schacter filed concurrently herewith ("Schachter Decl.") ¶ 22. All Defendants provided A.B. Data with data showing their sales to all DPP Class members of affected Pork products during the applicable time period, and thus A.B. Data was able to provide Class members with a pre-populated claim form showing the amount of that Class member's purchases as reflected in Defendants' sales data. Any claimant who disputed the purchase amount in the pre-populated claim form had the opportunity to submit and substantiate what it believed to be its correct purchase amount. Schachter Decl. ¶¶ 5, 24, 25.

As a result, there was significant participation in the claims process by Class members. 1,464 claims have been vetted and approved by A.B. Data and DPP Co-Lead Class Counsel, and are now recommended for approval.[5] *See Id.* ¶ 49. These claims will be paid promptly upon the Court's approval of this Motion. This distribution process is more fully described in Section II.B below.

---

[4] Co-Lead Class Counsel are Lockridge Grindal Nauen P.L.L.P. and Pearson Warshaw, LLP. *See* Order Granting Class Certification, ECF No. 1187 at 68.

[5] A.B. Data reviewed and rejected 2,697 claims (including withdrawn, duplicative, and ineligible claims) as more fully set forth in Section II.A.2. Schachter Decl. ¶ 45.

## II.   LITIGATION BACKGROUND

DPP Co-Lead Class Counsel's vigorous prosecution has resulted in the creation of a $101,864,300.00 gross Settlement Fund from the first two settlements. Accordingly, DPPs believe it is appropriate to propose a first distribution of the Net Settlement Fund from those two settlements.[6]

### A.   Claims Administration

On March 7, 2022, this Court approved the claims process and appointed A.B. Data as the Claims Administrator. ECF No. 1208. As more fully detailed in the concurrently filed Declaration of Eric Schachter, the claims process was carried out with significant Class member participation.

#### 1.   The Court-Approved Claims Process was Successfully Carried Out

On April 15, 2022, A.B. Data mailed notice packets containing the claim form and the long form notice. Schachter Decl. ¶ 11. On the same day, A.B. Data commenced an email campaign and sent the Email Notice to Class members. *Id*. A.B. Data also caused the Publication Notice to be published in industry publications and placed banner display advertisements on industry websites. *Id*. ¶ 12. The claim forms included pre-calculated amounts for each Class member's Pork purchases from each of the Defendants and Co-Conspirators, to the extent purchase data was produced by the Defendants. *Id*. ¶ 11. If a Class member wanted to dispute the pre-populated claim form amount, it could submit a

---

[6] As the Court is aware, DPPs have also settled with Seaboard Foods LLC for $9,750,000.00, but that settlement is not part of this first distribution and will be the subject of a future distribution subject to the Court's approval. *See* Motion for Preliminary Approval of Settlement with Seaboard Foods LLC, ECF No. 1934.

purchase audit request form (available to Class members via the settlement website) to submit documentation to support a different amount. *Id*. ¶¶ 5, 14. Class members had the opportunity to submit their claim forms via mail, email or using the settlement website. *Id*. ¶ 21.

### 2. A.B. Data Verified Each Claim was Valid and Accurate

To ensure that all claims were proper and accurate, A.B. Data: (1) identified all duplicative claims; (2) audited and consolidated claims filed by different entities for the same Class member; (3) identified any claims that were deficient on their face; (4) reviewed and audited any claims submitted by self-identified claimants without pre-populated data; (5) reviewed and audited any claims for which a purchase audit request was submitted (*i.e.*, where the claimant disputed the pre-populated claim form amount); (5) identified any ineligible product purchases claimed; and (6) identified and excluded any claims based on indirect purchases. Schachter Decl. ¶¶ 21-43. A.B. Data also worked with Co-Lead Class Counsel's data team to ensure that all claims were accurate. *Id*. ¶ 39. The claim review process is described in greater detail below and in the supporting Schachter Declaration.

A.B. Data reviewed the claim submissions to identify potentially duplicate claims filed for the same Class member. Exact duplicates were consolidated. Where multiple claims were filed by different entities on behalf of the same Class member, the claims were further analyzed and, in many cases, additional outreach was performed to determine which claim(s) should be accepted or rejected. *Id*. ¶ 27.

Claim Forms were also reviewed for any facial deficiencies, including missing signatures or other required information. *Id*. ¶ 26. All such claims were flagged as deficient. *Id*.

Where Claim Forms were submitted by self-identified entities who did not have pre-populated data, A.B. Data worked with Co-Lead Class Counsel to determine whether the claimant could be matched to Class purchase data. If a match was confirmed, the Class member's record was updated accordingly in A.B. Data's database. *Id*. ¶ 31.

For claims other than those accepting pre-populated data, where supporting documentation was not submitted, the claims were flagged as deficient. Where documentation was submitted, A.B. Data carefully reviewed all submissions, including invoices and structured transactional data, to ensure that only eligible direct Pork purchases were validated. If the documentation was not sufficient to prove the eligibility of claimed purchases, the claim was categorized as deficient. *Id*. ¶ 36.

The Court-approved notice required all claims to be submitted by June 14, 2022. ECF No. 1208; Schacter Decl. ¶ 22.[7] A.B. Data received 60 claims after the June 14, 2022 deadline. *Id*. However, A.B. Data recommends, and Co-Lead Class Counsel concur, that all late claims received on or before November 1, 2022 be paid. Payment of these late claims will have a *de minimus* effect on the payment to qualified claimants who filed timely claims. *Id*. ¶ 47; *see also* Pearson Decl. ¶ 5.

---

[7] Due to a calculation error involving certain Defendant data on some of the pre-populated claim forms, claimants who were affected by the error were given an addition 30 days, until July 14, 2022, to submit their claims. *See* ECF No. 1375.

A.B. Data's claim review was methodical and detailed. Each claim submission that provided facially valid supporting documentation received several rounds of review by A.B. Data staff to ensure accuracy. Claims based on purchases not made directly from a Defendant or Co-Conspirator were rejected. Claims filed by excluded government entities were rejected as ineligible. Schachter Decl. ¶ 28. Claims based on purchases of ineligible products, such as organic products and those exported directly out of the United States, were rejected as non-qualifying. Where claims reflected assignment agreements between Class members and another entity, the assigned purchases were carefully credited to the assignee's claim and debited from the assignor's claim, as appropriate. *Id*. ¶ 33. This same review process was used to review purchase audit requests, when a claimant disputed the pre-populated purchase amount.

Finally, A.B. Data reviewed claims to identify any claimants who had opted out of only one of the Settlements. Such claims were processed to ensure these claimants would not receive a distribution from any Settlement from which they had opted out. *Id*. ¶ 30.

In sum, A.B. Data received and processed a total of 4,161 claim forms from potential Class members. *Id*. ¶ 22. After auditing the claims received, A.B. Data identified and rejected 290 duplicates and consolidated claims. *Id*. ¶ 49. Further, 83 claimants have withdrawn their claims. *Id*. A.B. Data recommends that a total of 2,697 claims (including withdrawn claims) be denied for the reasons described in detail herein. *Id*. A total of 1,464 valid claims remains with Pork purchases totaling $121,307,977,478.28.[8] *Id*. ¶¶ 48, 49.

---

[8] Of these valid claims, 61 claims, totaling $8,874,014,977.25, or 7.3%, were submitted after the June 14, 2022 deadline. Schachter Decl. ¶ 47.

### 3. The Audit Process was Thorough

Where a claimant either did not have a pre-populated claim form, or disagreed with their pre-populated purchase data, A.B. Data reviewed the claim submission in detail with the help of Co-Lead Class Counsel and their data team to confirm validity. *Id.* ¶ 39. Three hundred thirteen claimants submitted purchase audit request forms or otherwise disputed the amounts reflected in their pre-populated Claim Forms. *Id.* ¶ 24.

When addressing any claim modifications, deficiencies, and/or purchase audit requests, A.B. Data provided notice to the affected Class members and, if necessary, Co-Lead Class Counsel, and gave the claimant an opportunity to cure any deficiencies. *Id.* ¶¶ 40-42. A.B. Data investigated and handled each issue on an individual basis and resolved it in a timely manner. *Id.*; *see also* Pearson Decl. ¶ 6. As of the filing of this Motion there are no outstanding disputes or issues. Schachter Decl. ¶ 42.

### 4. Administration Costs

A.B. Data has provided to Co-Lead Class Counsel invoices detailing the fees and expenses it has incurred to administer the notice and claims of the direct purchaser Class members. Pearson Decl. ¶ 8; Schachter Decl. ¶ 52. In approving the Settlements the Court approved the payment of the costs of administration, pursuant to which Co-Lead Class Counsel have already paid from the Settlement Fund $642,995.31 to A.B. Data for the notice and administration of the Settlements. Schachter Decl. ¶ 52. A.B. Data's fees, including the anticipated cost of completing this initial distribution, are $842,995.31. *Id.* This is within the amount already approved by the Court in approving each of the

Settlements. *See* Section III.C.1 below. If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata*.

B.  **Distribution of the Net Settlement Fund**

As noted, JBS and Smithfield have paid a total of $101,864,300.00 into the Settlement Fund. Pearson Decl. ¶ 4. This money has been earning interest since deposited. *Id*. The Net Settlement Fund equals $64,751,240.10. An accounting of the Net Settlement Fund is as follows:

[INTENTIONALLY LEFT BLANK]

| Description | | JBS | Smithfield | Total |
|---|---|---|---|---|
| Funding by JBS | + | $24,500,000.00 | - | $24,500,000.00 |
| Funding by Smithfield[9] | + | - | $77,364,300.00 | $77,364,300.00 |
| **Gross Settlement Fund** | = | **$24,500,000.00** | **$77,364,300.00** | **$101,864,300.00** |
| Interest (through July 3, 2023) | + | $381,016.07 | $1,227,311.95 | $1,608,328.02 |
| Taxes (Paid) | - | $39,519.23 | $133,810.77 | $173,330.00 |
| Escrow Fees (through July 3, 2023) | - | $0.00 | $0.00 | $0.00 |
| Claims Administration Costs (through June 30, 2023)[10] | - | $302,305.60 | $340,689.71 | $642,995.31 |
| Court-Approved Attorneys' Fees (Paid, *see* ECF No. 1424) | - | $8,166,666.67 | $25,788,099.99 | $33,954,766.66 |
| Court-Approved Incurred Litigation Expenses through April 30, 2022 and Litigation Expense Fund (Paid, *see* ECF No. 1424) | - | $1,202,580.30 | $3,797,419.70 | $5,000,000.00 |
| Court-Approved Class Representative Incentive Awards (Paid, *see* ECF No. 1424) | - | $24,051.61 | $75,948.39 | $100,000.00 |
| **Current Settlement Fund** | = | **$15,145,892.66** | **$48,455,643.39** | **$63,601,536.05** |
| Reserve for Additional Costs through End of Distribution[11] | - | $2,500.00 | $2,500.00 | $5,000.00 |
| Anticipated Escrow Fees (July 3, 2023 through September 14, 2023) | - | $0.00 | $0.00 | $0.00 |
| Anticipated Interest (July 3, 2023 through September 14, 2023) | + | $323,227.14 | $1,031,476.91 | $1,354,704.05 |
| Anticipated Claims Administration Costs[12] | - | $140,689.71 | $59,310.29 | $200,000.00 |
| **Net Settlement Fund** | = | **$15,325,930.10** | **$49,425,310.00** | **$64,751,240.10** |

---

[9] DPPs and Smithfield entered into a settlement that provided for a payment of $83 million. The Smithfield settlement was subject to a $5,635,700.00 reduction based on the opt-outs received during the settlement administration process. The total net amount paid by Smithfield equaled $77,364,300.00. *See* ECF No. 1154.

[10] Claims Administration costs are allocated to each settlement as billed for notice and on a *pro rata* basis for the claims and distribution process. *See* Section III.C.1 below.

[11] $2,500.00 reserve for each of the Settlements for additional costs through the end of the distribution, for a total of $5,000. If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata*.

[12] *See* Section III.C.1. If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata*.

*See* Pearson Decl. ¶ 4.

Upon entry of an Order approving the distribution as set forth herein or as modified by the Court, within 21 days, but not before September 15, 2023 due to the maturity date of certain settlement funds that are invested, the Escrow Agent[13] will transfer the Net Settlement Fund to A.B. Data, and A.B. Data will promptly issue payment of each qualified claimant's *pro rata* share by mailing payments to qualified claimants at the address indicated on their claim form or as updated in A.B. Data's database. For any payment above $100,000.00, A.B. Data will contact the qualified claimant and arrange payment via wire transfer or some other trackable method. In addition, A.B. Data will file any tax returns and pay any taxes due from the Settlement Fund. A.B. Data recommends (and Co-Lead Class Counsel concur) that the checks disbursed to qualified claimants bear the notation "Non-Negotiable After 90 Days" and that no check be negotiable more than 120 days after the date of the check. Schachter Decl. ¶ 51. The additional 30 days will allow for bank processing and a small extension of time for individuals who present their checks to the bank after 90 days but the bank continues to accept the check for payment. *Id*.

DPPs will file a report with the Court 30 days after the 120 days of negotiability advising the Court regarding the status of the distribution and propose a plan for any funds remaining in the Net Settlement Fund. If the Court believes a hearing on the status of distribution is appropriate at that time, DPPs are happy to oblige.

---

[13] Huntington Bank was appointed by the Court as escrow agent for each of the Settlements.

## III.   ARGUMENT

In antitrust cases such as this, many courts, including in this District, have approved settlement distributions that apportion available settlement funds on a *pro rata* basis to class members with qualified claims, without favoring any single or group of class members over another. *See, e.g.*, *In re Wholesale Grocery Prod. Antitrust*, No. 09-MD-02090 ADM/TNL, 2018 WL 11424046, at *1 (D. Minn. Feb. 7, 2018); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1999 WL 639173, *4 (N.D. Ill. Aug. 17, 1999) ("We note that courts have utilized the pro rata distribution method in several prior price-fixing class actions . . . . We think this method will provide the most accurate measure of the damages suffered by each class member and, for this reason, we endorse the pro rata distribution method."); *accord In re Potash Antitrust Litig.*, MDL No. 1996, Dkt. No. 610 (Order Approving Plan of Distribution of the Settlement Fund) (N.D. Ill Jul. 18, 2014); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *15-16 (E.D. Mich. Dec. 13, 2011); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 345 (E.D. Pa. 2007); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 335 (E.D. Pa. 2007); *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, *11 (D.N.J. Nov. 9, 2005) (citing cases); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 12.10 (4th ed. 2002). In administering the substantial *LCD* settlements, the court noted that *pro rata* allocation "has been used in many antitrust cases." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827, 2011 WL 7575004, *4 (N.D. Cal. Dec. 27, 2011).

The proposed *pro rata* distribution in this case was described in the long form class notice and claim form which have already been approved by the Court and sent to Class members. The long form notice clearly stated: "The anticipated distribution plan for the Settlements is to make a *pro rata* distribution to each qualifying Settlement Class Member based on the dollar value of approved purchases of Pork per Settlement Class Member during the Settlement Class Period." *See* ECF No. 1194-2, Ex. B.)

> **A.  The Court Should Approve the Recommendations of the Claims Administrator and Co-Lead Class Counsel Concerning Acceptance or Rejection of Claims**

As explained above, A.B. Data has performed a diligent, thorough review of all claim forms. *See* Section II.A above; Schachter Decl. ¶ 25. Based on this process, A.B. Data has determined (and Co-Lead Class Counsel concurs) that there are 1,464 eligible claims to be paid according to the proposed plan of distribution.[14] Schachter Decl. ¶ 49. Thus, DPPs propose that the Court approve the payment of the eligible claims.

A.B. Data reviewed and rejected 2,697 claims (including withdrawn claims). *Id.* ¶ 45. The most common reasons for rejecting claims were: (i) claimants did not have pre-populated data and did not submit documentation of any kind to support their claim, (ii) claimants' supporting documentation indicated that the claimed purchases were not direct and therefore not eligible, (iii) the supporting documentation was insufficient to support the claimed amount, and (iv) the claim was submitted by an excluded government entity.

---

[14] Where more than one claimant with the same standardized name submitted a validated claim, A.B. Data counted the total purchase amount only once (as the maximum amount to be paid per standardized claimant); however, each submitted claim is included in the claim counts herein. Schachter Decl. ¶ 27.

*Id*. Co-Lead Class Counsel agrees with A.B. Data's determinations, and proposes that the Court approve A.B. Data's determinations concerning the denial of ineligible claims and the payment of eligible claims. Pearson Decl. ¶ 7.

### B. Late Claims that are Otherwise Valid Should be Paid

As noted above, of the 1,464 claims recommended for approval, 61 were received after the Court's June 14, 2022 deadline to submit all claims. Schachter Decl. ¶¶ 46-49. Of the 61 late and otherwise valid claims, 24 claims were filed within two weeks of the filing deadline and all were filed by November 1, 2022. *Id.* None of these late claims delayed the claim review process. Those 61 late-filed claims total $8,874,014,977.25 in otherwise eligible purchases, or 7.3% of the total qualified purchases of $121,307,977,478.28. The Court has discretion to allow or disallow such claims. *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) (court has discretion with respect to the disallowance of late claims); *Burns v. Elrod*, 757 F.2d 151, 154-55 (7th Cir. 1985); *see In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194-97 (3d Cir. 2000) (holding that until the fund created by the settlement is actually distributed, the court retains its traditional equity powers to protect unnamed but interested persons; a court may assert this power to allow late-filed proofs of claim).

DPPs propose that all late-filed claims filed prior to November 1, 2022 be paid. Payment of these late-filed claims will have a *de minimus* impact on the distribution to the Class and will not delay the distribution plan. Pearson Decl. ¶ 5.

### C. The Court Should Authorize Payment of Outstanding Fees and Costs

DPPs respectfully request that the Court authorize the payment of any outstanding expenses associated with the Settlements.

#### 1. Claims Administration Costs

The Court-appointed claims administrator, A.B. Data, has provided its services, as described in the Schachter Declaration. Each of the Settlement Agreements authorized Class Counsel to withdraw up to a certain amount for notice and administration costs, totaling $900,000.00. *See* ECF Nos. 543-1 at 9 (JBS, $500,000), 831-2 at 9 (Smithfield, $400,000). Pursuant to this, Co-Lead Class Counsel have already paid $642,995.31 from the Settlement Fund to A.B. Data after review and approval of their bills. Pearson Decl. ¶ 8. As set forth in Section II.A.4 above, A.B. Data's fees, including the anticipated cost of completing this initial distribution, are $842,995.31.[15] *Id*. Co-Lead Class Counsel find this request to be reasonable and recommend that the Court approve the payment. *Id*.

#### 2. Other Expenses Associated with the Settlements

DPPs request the Court's authorization to reserve, if necessary, $2,500.00 per settlement[16] ($5,000.00 total) for any additional, unaccounted for costs (*i.e.*, escrow, banking) that may be incurred before the actual distribution.

---

[15] If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata* to the Court-approved qualified claimants.

[16] If the actual amount is less than this anticipated amount, the difference will be distributed *pro rata* to the Court-approved qualified claimants.

## IV. CONCLUSION

For the foregoing reasons, DPPs respectfully request that the Court (1) authorize the payment of eligible claims; (2) deny the ineligible claims; (3) order the Escrow Agent to distribute the Net Settlement Fund to A.B. Data and pay approved fees and costs from the Settlement Fund; and (4) order A.B. Data to distribute the *pro rata* settlement proceeds to qualified claimants.

Further, as noted above, DPPs will file a report with the Court 150 days after payments are sent advising the Court of the status of the distribution, and at that time will propose a plan for any funds remaining in the Net Settlement Fund.

Date: July 19, 2023

| | |
|---|---|
| */s/ Michael H. Pearson* | */s/ W. Joseph Bruckner* |
| Clifford H. Pearson (*Pro Hac Vice*) | W. Joseph Bruckner (MN #0147758) |
| Daniel L. Warshaw (*Pro Hac Vice*) | Brian D. Clark (MN #0390069) |
| Bobby Pouya (*Pro Hac Vice*) | Joseph C. Bourne (MN #0389922) |
| Michael H. Pearson (*Pro Hac Vice*) | LOCKRIDGE GRINDAL NAUEN |
| PEARSON WARSHAW, LLP | P.L.L.P. |
| 15165 Ventura Boulevard, Suite 400 | 100 Washington Avenue South, Suite 2200 |
| Sherman Oaks, CA 91403 | Minneapolis, MN 55401 |
| Telephone: (818) 788-8300 | Telephone: (612) 339-6900 |
| Facsimile: (818) 788-8104 | Facsimile: (612) 339-0981 |
| cpearson@pwfirm.com | wjbruckner@locklaw.com |
| dwarshaw@pwfirm.com | bdclark@locklaw.com |
| bpouya@pwfirm.com | jcbourne@locklaw.com |
| mpearson@pwfirm.com | |

Bruce L. Simon (*Pro Hac Vice*)
Jill M. Manning (*Pro Hac Vice*)
PEARSON WARSHAW, LLP
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pwfirm.com
jmanning@pwfirm.com

*Direct Purchaser Plaintiffs Co-Lead Class Counsel*