# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>*Sysco Corp. v. Agri Stats, Inc., et al.*,<br><br>Case No. 21-cv-1374 (D. Minn.) | Civil No. 18-cv-1776-JRT-JFD<br><br><br><br>The Honorable John R. Tunheim<br>The Honorable John F. Docherty |

# DEFENDANTS' MEMORANDUM IN OPPOSITION TO JOINT MOTION FOR SUBSTITUTION OF PLAINTIFF

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

PROCEDURAL BACKGROUND ...................................................................................... 5

I.    THE HISTORY AND STATUS OF SYSCO'S CLAIM UNDERMINES ITS
MOTION TO SUBSTITUTE CARINA AS PLAINTIFF NOW .................................. 5

II.   SYSCO'S DISPUTE WITH BURFORD EXPOSES SERIOUS CONCERNS
WITH LITIGATION FUNDERS CONTROLLING LITIGATION ............................ 7

III.  SYSCO AND CARINA REQUEST SUBSTITUTION WHILE EVADING
DISCLOSURES ABOUT THEIR AGREEMENT, CARINA'S HISTORY, AND
THEIR LITIGATION OBLIGATIONS ................................................................... 11

LEGAL STANDARD ....................................................................................................... 13

ARGUMENT .................................................................................................................... 14

I.    SYSCO'S ASSIGNMENT SHOULD BE FOUND VOID AS CHAMPERTOUS,
UNCONSCIONABLE, AND VIOLATIVE OF PUBLIC POLICY ......................... 15

II.   THE MOTION TO SUBSTITUTE PLAINTIFF SHOULD BE DENIED AS
IMPROPER UNDER RULE 25 .............................................................................. 21

      A.    Sysco, Not Carina, Possesses the Documents, Information, and Witnesses
Relevant to This Litigation .............................................................................. 23

      B.    The Proposed Substitution at This Stage Would Make Resolution of
Sysco's Claims More Rather Than Less Difficult ........................................... 24

      C.    Defendants Should Not Be Forced to Litigate Against a Sham Entity ........... 27

III.  IF SUBSTITUTION IS NOT DENIED ON THE CURRENT RECORD, THEN
DEFENDANTS SHOULD BE GRANTED LEAVE TO CONDUCT CRITICAL
DISCOVERY RELATED TO THIS MOTION ....................................................... 29

CONCLUSION ................................................................................................................. 32

## INTRODUCTION

On March 10, 2023, Direct Action Plaintiff Sysco Corporation ("Sysco") filed a motion to stay this litigation following its termination of Boies Schiller Flexner LLP as counsel ("Boies Schiller"). (*See* Sysco Corp. Memo. Supp. Mot. Limited Stay, ECF No. 1845 (the "Motion to Stay").) As justification for that motion, Sysco directed the Court to its ongoing legal battle with litigation funder Burford Capital Limited and affiliated entities (collectively, "Burford") that fronted Sysco $140 million in exchange for a financial interest in this and other Sysco lawsuits. (*See id*. at 1; New York Litig., ECF No. 10, Letter Resp. Anticipated Mtn. Trans. at 1 (Mar. 29, 2023).) Sysco's termination of Boies Schiller and its litigation against Burford in the Southern District of New York, the Northern District of Illinois, and arbitration challenged Burford's efforts to control Sysco's fundamental litigation decisions—including Burford's assertion of the right to veto Sysco settlements based, at least in part, upon Boies Schiller's pronouncement that the settlement values were too low.[1] (*See* New York Litig., ECF No. 38-7, Swiber Decl. Ex. G at 1–2 (June 12, 2023)[2]; Illinois Litig., ECF No. 1, Pet. Vacate Arb. Award at 12–15 (Mar. 8, 2023); Motion to Stay at 2.)

In its filings in this Court and elsewhere, Sysco has been remarkably cleareyed and candid about the problems that Burford's control over Sysco's claims have inflicted on

---

[1] *See Glaz LLC. v. Sysco Corp.*, Case No. 1:23-cv-02489-PPG (S.D.N.Y) ("New York Litigation"); *Sysco Corp. v. Glaz LLC*, No. 23-cv-1451 (N.D. Ill.) ("Illinois Litigation"). This Memorandum cites to filings made in each of these cases, and Defendants use the shorthand forms defined in this footnote to refer to each of the cases.

[2] A copy of this filing is attached to the Declaration of Craig Coleman ("Coleman Decl.") as Exhibit A.

litigants and the courts. On May 3, 2023, for example, Sysco detailed how Burford's ability to control and dictate resolution of Sysco's claims:

- "burdens federal courts in Illinois and Minnesota with unnecessary litigation, risks congesting the courts' dockets, and harms the public's interest in the efficient functioning of the courts" (New York Litig., ECF No. 18, Resp. Opp. Pet. Confirm Arb. Award, at 6 (May 3, 2023));

- "violates well-established public policy in all potentially relevant jurisdictions," including "Illinois and Minnesota, the states in which the underlying Antitrust Litigations are pending" (*id.* at 7);

- forces Sysco to remain "trapped in protracted and unnecessary litigation (which also burdens federal courts in Illinois and Minnesota and the taxpayers who fund them)" (*id.* at 9);

- violates "public policy in every state" by allowing "a funder to take control of settlement" (*id.* at 11);

- "is also unconscionable in Minnesota . . . where the case law is clear that a litigation funder cannot wrest control of claims from the litigant" (*id.* at 15);

- "us[es] the courts for a purpose other than the pursuit of justice" (*id.*); and

- prompted Burford to "induce[] [Boies Schiller] to violate its fiduciary duties to Sysco" and to "dictat[e] what procedural motions Sysco could file in the Antitrust Litigations" (*id.* at 16.).

Even more, Sysco understood that Burford's direct control over its claims would undermine "the integrity of the US court system," which, as Sysco recognized, "is intended

to be a forum where disputes may be resolved and justice may be done, not a casino in which financial speculators may gamble with claims that are not their own or prolong litigation for motives that (as here) having nothing to do with the funded litigants' own claims." (*Id.* at 12–13.) According to Sysco, Burford's assertion of litigation control seeks "to make more money on Sysco's claims and Burford's unrelated investments by forcing Sysco to continue litigating against its will," a gambit that Sysco knows to be "naked speculation in litigation [that] is precisely what public policy forbids." (*Id.* at 13.) Sysco confirmed that it is "aware of no case in which *any* court has permitted a litigation funder to buy control over a party's settlement decision." (*Id.*)

Despite having articulated to multiple federal courts exactly why Burford's control over Sysco's claims undermines the integrity of the judicial system and the courts' core function of administering justice, Sysco now asks this Court to grant its and Carina Ventures LLC's Joint Motion for Substitution of Plaintiff ("Joint Motion", ECF No. 1940) and *cement* Burford's control over Sysco's litigation claims, while Sysco washes its hands of the problem. The Joint Motion admits that Carina Ventures LLC ("Carina") is yet another "affiliate of Burford Capital LLC" (*id.* at 1), which was apparently created on June 12, 2023 to enable Burford to take assignment of, and fully control, Sysco's claim in this litigation. (Coleman Decl. Ex. B.) In fact, it appears that Carina's sole purpose is to function as a vehicle for pursuing this and other lawsuits in the hope of recouping Burford's investment. Further, after Boies Schiller "encouraged [Burford's] litigation *against* Sysco" (Sysco Corp. Memo. Re. Boies Schiller's Mot. Withdraw at 2, ECF. 1884); "breache[d] [] its fiduciary duties and ethical obligations to Sysco" (*id.* at 8); and made "false and

3

misleading statements to this Court" (*id.* at 6), Sysco jointly signed the motion with Boies Schiller so that the same counsel can continue litigating Sysco's claims as counsel to Carina.

On closer study, the movants' recourse to an assignment as a vehicle for Sysco to cede control of its claims to Burford is hardly surprising. In the same September 2, 2022 e-mail that led Sysco to conclude that Boies Schiller violated its ethical duties, Burford discussed Boies Schiller's suggestion of an assignment to "tak[e] pressure off of Sysco in business negotiations because they could say the cases aren't theirs to settle." (New York Litig., ECF No. 38-7 at 2.) Boies Schiller further informed Burford that it was confident that courts would look the other way: "While defendants might move for discovery, [Scott Gant at Boies Schiller] seemed to think that the magistrate would not give them a lot of leeway on that and the district judge would likely agree." (*Id.*) Now, after several intervening months of litigation between Sysco and Burford with Boies Schiller in the middle, the time has come to see whether those predictions about the Court's response to the scheme will hold true.

The Court should reject this cynical ploy and deny the Joint Motion for at least three reasons. First, as Sysco has vigorously advocated in federal court, Burford's control over Sysco's claims in this litigation would be unconscionable and unlawful, rendering Sysco's assignment to Carina void and making the substitution of Carina as a plaintiff untenable. Second, even if assignment of claims to a shell entity created last month and controlled by a litigation funder could be deemed valid, there are a litany of reasons why the Court should exercise its discretion under Rule 25 of the Federal Rules of Civil Procedure to deny

Carina's substitution at this stage of the litigation. Among other concerns, substituting Carina for Sysco will not serve judicial economy given the current posture of the Pork Litigation. Third, should any doubt or factual questions remain regarding the propriety of Carina's substitution, Defendants respectfully suggest that robust discovery of Carina, its members, Burford, and the circumstances surrounding the assignment is necessary as a precursor to the Court's further consideration of the Joint Motion.

## PROCEDURAL BACKGROUND

### I. THE HISTORY AND STATUS OF SYSCO'S CLAIM UNDERMINES ITS MOTION TO SUBSTITUTE CARINA AS PLAINTIFF NOW

On March 8, 2021, Sysco filed a direct-action complaint against Defendants in the Southern District of Texas—one of the first actions filed outside of the District of Minnesota. (Compl., *Sysco Corp. v. Agri Stats, Inc., et al.*, No. 4:21-cv-00773 (S.D. Tex. Mar. 8, 2021), ECF No. 1.) Two days later, along with another Direct Action Plaintiff ("DAP") that had filed a direct-action complaint around the same time in the Southern District of Florida, Sysco jointly moved the Judicial Panel on Multidistrict Litigation ("JPML") to either consolidate the two cases in the Southern District of Texas or to transfer the two cases to this Court. (Joint Mot. Transfer, *In re Pork Individual Direct and Indirect Purchaser Antitrust Litig.*, MDL No. 2998 (JPML Mar. 10, 2021), ECF No. 1.) Defendants opposed the creation of a separate MDL in the Southern District of Texas and requested that the JPML transfer the two actions to this Court, where this litigation had already been underway for almost three years. (Def. Resp. Joint Mot. Transfer, *In re Pork*, MDL No. 2998 (JPML Apr. 1, 2021), ECF No. 34.) On June 9, 2021, the JPML issued an order transferring the two cases to this Court. (Transfer Order at 2–3, *In re Pork*, MDL No. 2998 (JPML June

9, 2021), ECF No. 55.)

Upon transfer to this Court, Defendants took significant and critical discovery from Sysco. Sysco's witnesses testified ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

When asked about ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

Instead, Sysco's witnesses testified ██████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ And, as a sophisticated and well-resourced purchaser, Sysco testified ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████ None of the Sysco testimony suggested█████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

Defendants intend to rely on the testimony of Sysco's witnesses, documents Sysco produced, and its interrogatory responses to defend and defeat Sysco's claims. Discovery taken from Sysco as the real plaintiff in interest provides accountability that is important to the litigation.

## II. SYSCO'S DISPUTE WITH BURFORD EXPOSES SERIOUS CONCERNS WITH LITIGATION FUNDERS CONTROLLING LITIGATION

As Carina acknowledges, Sysco and its litigation financier, Burford, have spent the last several months embroiled in a dispute—spanning three separate venues—that centers on Sysco's ability to control its litigation strategy and negotiate its own settlements. (*See* Memo. Supp. Joint Mot. Substitution ("Carina Mem.") at 1–2, ECF No. 1952.) On September 9, 2022, Burford initiated arbitration to enjoin Sysco from executing settlements. (New York Litigation, ECF No. 18, Resp. Opp. Pet. Confirm Arb. Award at 2 (May 3, 2023).) On March 8, 2023, following entry of an arbitration injunction blocking the execution of those settlements, Sysco filed a Petition to Vacate Arbitration Award in the

Northern District of Illinois—the Illinois Litigation. Two days later, on March 10, 2023, Burford filed an action in New York state court to enforce the award, which Sysco subsequently removed to the Southern District of New York—the New York Litigation. In each forum, Sysco consistently advocated that it is unlawful for Burford to attempt to control disposition of Sysco's litigation claims.

While the positions taken by Sysco in its dispute with Burford bear directly on consideration of the Joint Motion, Sysco and Carina now seek to ignore all of that history. As Sysco detailed in its Petition to Vacate Arbitration Award filed in the Illinois Litigation, its dispute with Burford arose following Sysco's negotiation of "reasonable settlements" with several "of its key suppliers" to resolve antitrust claims, including those asserted in this litigation. (Illinois Litigation, ECF No. 1 at 6–7.) After Sysco counsel Mr. Gant reported to Burford his view that the settlements were "unreasonably low" and were motivated by Sysco's "separate business considerations that are leading them to want to dispose of these cases" (New York Litigation, ECF No. 38-7 at 1), Burford took action to "block[] Sysco from executing those settlements and forc[ed] Sysco to continue [] litigat[ing] against its will" (Illinois Litigation, ECF No. 1 at 7). In other words, as Sysco described it in federal court, "Burford wants to roll the dice on Sysco's claims, hoping that something good will happen in the future that will make them more valuable." (*Id.*)

Burford's attempts to seize full control of Sysco's claims for its own financial interests did not stop with obstruction of Sysco's efforts to settle its claims. Burford "sought to improperly influence Sysco's outside counsel … Boies Schiller … to betray its fiduciary duties to Sysco." (*Id.*) Burford even asserted that Sysco was in breach of its funding

agreement by not filing a new lawsuit in *In re Turkey Antitrust Litigation* (New York Litig., ECF No. 38-14, Swiber Decl. Ex. N, at 5 (June 12, 2023)),[3] a demand that Sysco recognized as "a naked exercise of pure champerty" (New York Litig., ECF No. 38-13, Swiber Decl. Ex. M, at 6 (June 12, 2023)).[4]

Similarly, in opposing Burford's efforts to enforce the arbitration decision in the New York Litigation, Sysco characterized Burford as seeking to control "the day-to-day prosecution of its claims" and argued that Burford engaged in unmitigated champerty by vetoing Sysco's negotiated settlements and controlling basic litigation decisions. (*See* New York Litig., ECF No. 18, at 15–16.) Sysco and its experts told the federal courts that the applicable law, including in Minnesota where Sysco was being blocked from executing a settlement with pork and/or beef suppliers under this Court's jurisdiction, precluded Burford from forcing Sysco to continue litigating these cases. (*See* New York Litig., ECF No. 21-4, Expert Rep. Prof. Maya Steinitz, at 5 (May 3, 2023)[5] (arguing the temporary restraining order preventing the execution of Sysco's settlements "improperly sanctions champerty under the law of Illinois, where Sysco is currently blocked from executing a settlement, and would be unconscionable in Minnesota, another jurisdiction where Sysco is currently blocked from settling federal litigation").) And in support of its motion to stay this litigation filed in March, Sysco directed this Court to the Illinois Litigation, while highlighting the "deep-rooted public policy" concerns associated with stripping control of these claims from Sysco and handing the reins to a litigation funder, whose role was supposed to be passive.

---

[3] A copy of this filing is attached to the Declaration of Craig Coleman as Exhibit E.
[4] A copy of this filing is attached to the Declaration of Craig Coleman as Exhibit F.
[5] A copy of this filing is attached to the Declaration of Craig Coleman as Exhibit G.

(*See* Redacted Exhibit A to Declaration of Arthur G. Boylan in Support of Sysco Corp.'s Motion for Limited Stay, ECF No. 1846-1 at 7.)

Now, after laying bare the serious problems with Burford's control of these cases, Sysco's solution is to relinquish full control of its claims to Burford through an assignment of its claims to a brand-new Burford-created shell entity named Carina. (*See* Carina Mem., ECF No. 1952 at 2 (noting that "Burford and Sysco agreed to settle their dispute ..." and "[a]s part of that resolution, Sysco assigned its food antitrust claims – including its claims in this case – to Carina, a Burford affiliate").) To use Carina's euphemism, it is nothing more than a "special purpose financing vehicle" established to take ownership of Sysco's claims for Burford's control and benefit. (*Id.* at 1.)

For Sysco, assignment of the claims gives it cover, so that it need not concern itself with any business ramifications associated with litigating claims to which it is not committed or refusing to execute reasonable settlements with its suppliers. Indeed, the plan for Sysco to assign its claims to a Burford affiliate was hatched as early as September 2022 by Mr. Gant, who assured Burford that he was not "overly concerned about how defendants would use an assignment in the litigation." (New York Litig., ECF No. 38-7, at 3.) Burford's internal recap of Mr. Gant's advice included the following:

> He asked what happened with the possibility of an assignment which it sounds like he had discussed with Kelly. I said that we were discussing it internally and that even though it would create some problems for us, we would try to make it work if it would create peace. He suggested me that it would have the advantage of taking the pressure off of Sysco in business negotiations because they could say the cases aren't theirs to settle. He also said he was not overly concerned about how defendants would use an assignment in the litigation. He reminded me that lots of other claims had been assigned - a great number from direct to indirect purchasers. While defendants might move for discovery he seemed to think that the magistrate would not give them a lot of leeway on that and the district judge would likely agree.
>
> Jon
>
> **Jonathan T. Molot | Chief Investment Officer**
>
> O: +1 212 235 6835
> M: +1 202 486 6373
>
> Burford Capital
> www.burfordcapital.com

(*Id.*)

On June 28, 2023, just nine months after this e-mail exchange and shortly after Carina's June 12, 2023 formation, Sysco and Burford entered into the contemplated assignment agreement (*see* Joint Motion, ECF No. 1940, at 4–9), "taking the pressure off" of Sysco having to continue to litigate claims against its suppliers that its own witnesses failed to support (New York Litig., ECF No. 38-7, at 3). Then, one day later on June 29, 2023, Sysco and Carina—now represented by Boies Schiller—filed the Joint Motion to allow "Carina to be substituted as the Plaintiff in this action." (Joint Motion, ECF No. 1940, at 1.)

## III. SYSCO AND CARINA REQUEST SUBSTITUTION WHILE EVADING DISCLOSURES ABOUT THEIR AGREEMENT, CARINA'S HISTORY, AND THEIR LITIGATION OBLIGATIONS

Seeking to brush past the questions and concerns raised by Sysco's dispute with Burford, the Joint Motion claims that "the Court should substitute Carina as the Plaintiff[,] . . . remove Sysco from the docket and all ECF notices as a party, and the action should proceed as if it had been originally commenced by Carina." (*Id.* at 1.) The Assignment and

Novation Agreement ("Assignment Agreement") between Sysco, Carina, and two other parties attached to the motion purports to assign Sysco's claims in five different antitrust actions to Carina.[6] (*Id.* at 8.) In addition to the rights to "collect any damages or awards or otherwise exercise remedies," the Assignment Agreement purports to confer upon Carina "all rights to prosecute, mediate, arbitrate, compromise, settle, or otherwise deal with the [c]laims." (*Id.* at 9.)

On July 5, 2023, this Court highlighted several deficiencies in the Joint Motion and, among other things, directed Sysco and Carina to "file an Amended Meet and Confer Statement showing that a meaningful meet and confer has occurred[.]" (Order, ECF No. 1947 (July 5, 2023).) That same day, counsel for Carina e-mailed Defendants and requested that Defendants provide available times for a meet-and-confer and a list of questions regarding the substitution. (Coleman Decl. Ex. H at 3–4.) Counsel for Triumph Foods replied on the same day with several questions regarding the proposed substitution of a direct purchaser of Pork with a shell entity created by a litigation funder, ranging from Carina's formation to availability of witnesses at trial, while noting that the list was "by no means exhaustive." (Coleman Decl. Ex. H at 2–3.)

The parties met and conferred on July 6, 2023. (Amended Local Rule 7.1 Meet and

---

[6] These actions are *Sysco Corp. v. Agri Stats Inc., et al.*, No. 0:21-cv-01750 (D. Minn.) ("Pork Litigation"); *Sysco Corp. v. Tyson Foods, et al.*, No. 1:18-cv-00700 (N.D. Ill) ("Broiler Litigation"); *Sysco Corp. v. Cargill Inc., et al.*, No. 0:22-cv-01750 (D. Minn.) ("Beef Litigation"); *Olean Wholesale Grocery Cooperative v. Agri Stats, Inc.*, No. 19-cv-8318 (N.D. Ill.) ("Turkey Litigation"); and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-2542 (S.D.N.Y.). Notably, the procedural postures of these cases vary widely, ranging from cases that have not even been filed by Sysco—like the Turkey Litigation—to cases like this one that are preparing for dispositive-motion practice.

Confer Statement, ECF No. 1953 (July 7, 2023).) In the Amended Meet and Confer Statement, Sysco and Carina represent that they "answered each of [the above] questions and others posed by Defendants to the best of their ability." (*Id.* at 1.) While Defendants cannot opine on the veracity of this representation, "Defendants' core questions remain unanswered." (*Id.* at 2.) For example, Carina said that it would consent to some unspecified, limited discovery *if* Defendants did not oppose the Joint Motion, and Sysco indicated that it would make *some* witnesses available for trial as if it were a party to the litigation. (Coleman Decl. ¶ 3.) Sysco and Carina, however, refused to provide discovery related to the terms of the assignment or the settlement agreement between the two parties, and both Sysco and Carina also refused to discuss how the substitution would affect trial. (*Id.* ¶ 4.) In addition, Carina could not provide assurances about: (1) its ability to cover any sanctions or costs that may be incurred for discovery-related issues or bad-faith findings that might arise from its continuing speculation on claims that Sysco would prefer to resolve; or (2) its willingness to accept liability for any prior actions taken by Sysco in this litigation. (*Id.* ¶ 5.) In short, basic threshold questions regarding the substitution remain unanswered, but the movants' position is that Defendants should consent to substitution now and ask questions later.

## <u>LEGAL STANDARD</u>

Under the Federal Rules of Civil Procedure, once an interest in a litigation claim is transferred, "the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25.

Substitution upon a transfer of interest is not automatic or mandated. Instead, "[t]he decision whether to substitute parties lies within the discretion of the trial judge and he may refuse to substitute parties in an action even if one of the parties so moves." *Froning's Inc. v. Johnston Feed Serv., Inc.*, 568 F.2d 108, 110 n.4 (8th Cir.1978); *see also Jalin Realty Cap. Advisors, LLC v. A Better Wireless, NISP, LLC*, No. 11-cv-165 (JRT/LIB), 2017 WL 1968285, at *3 (D. Minn. Apr. 18, 2017) ("The decision to grant or deny a Rule 25(c) motion is a matter within the district court's sound discretion."). In exercising such discretion, this Court has considered "convenience and economy" to assess whether the substitution would "facilitate the conduct of the litigation." *Jalin Realty,* 2017 WL 1968285, at *3. "There is little law governing how a court should exercise its discretion . . .," but the Court clearly must take care not to impair the substantive rights of the parties." *Great W. Cas. Co. v. Kirsch Transp.*, No. 1:18-cv-00012, 2022 WL 4182377, at *3 (S.D. Iowa June 3, 2022). Thus, the sound administration of justice, the integrity of the court system, and basic fairness to the parties are critical considerations when assessing the Joint Motion.

## ARGUMENT

Because Sysco's assignment to Burford turns its litigation claim into an instrument of financial speculation for a litigation funder with no connection to the underlying claim, the assignment violates the prohibition on champerty and longstanding policy that treat as unconscionable the use of our courts as roulette wheels. Accordingly, the Court should find the assignment void and deny substitution. In addition—and whether or not the Court finds the assignment to be invalid—Defendants respectfully request that the Court exercise its discretion under Rule 25 to reject substitution of Sysco at this stage of the litigation based

on the equitable and prudential concerns at issue. Finally, should the Court conclude that, in order to rule on the Joint Motion, the record needs to be first developed on important questions about the assignment, Carina, the motives of the movants, and how Carina intends to conduct itself as a plaintiff, Defendants request that the Court direct Sysco and Carina to submit to thorough, expedited discovery on those targeted questions.

## I. SYSCO'S ASSIGNMENT SHOULD BE FOUND VOID AS CHAMPERTOUS, UNCONSCIONABLE, AND VIOLATIVE OF PUBLIC POLICY

The Joint Motion depends entirely on the unstated assumption that Sysco's assignment of its litigation claims to Carina is valid. It is not. The Joint Motion presents the Court with the specter of a litigation funder creating a shell entity that it controls and operates for the sole purpose of acquiring a litigation claim in which it has nothing more than a speculative financial interest. As Sysco has itself established, allowing a litigation funder to buy a claim, take full control of the litigation and resolution of that claim, and proceed directly as a plaintiff in place of the real party in interest constitutes an obvious, egregious violation of the law in every relevant jurisdiction.

Assignments are contracts, so their validity is judged by state law. *See Perry v. Thomas*, 482. U.S. 483, 491 n.9 (1987)*; Heavenly Ham Co. v. HBH Franchise Co.*, No. 04 C 2577, 2005 WL 331558, at *8 (N.D. Ill. Feb. 7, 2005). Here, choice of law involves only three possible options: Delaware, the state of incorporation of both Sysco and Carina; Illinois, the state law invoked by the "Governing Law" provision of the Assignment Agreement; or Minnesota, where Carina is seeking to proceed as a plaintiff in two antitrust litigations. (Joint Motion, ECF No. 1940, at 5.) Ultimately, however, that choice does not

matter.[7] In all three states, Sysco's assignment of its claims to Carina is patently unlawful, a measure of the extent to which movants seek to transgress fundamental principles by which the courts administer justice.

**Delaware**: Delaware forbids as champertous an assignment "where the assignee had *no* interest in the cause of action prior to the assignment." *Hall v. State*, 655 A.2d 827, 829-30 (Del. Super. Ct. 1994) (citing *Gibson v. Gillespie*, 152 A. 589, 593 (Del. Super. Ct. 1928)). Under Delaware law, the key question is whether "the assignee has some legal or equitable interest in the subject matter of the litigation *independent from* the terms of the assignment under which the suit was brought." *Hall*, 655 A.2d at 829 (citing *Drake v. Nw. Natural Gas Co.*, 165 A.2d 452, 454 (Del. Ch. 1960)). While "Delaware permits conveyance of a lawsuit . . .when the *transferee* already has a legal or equitable claim on the rights that predates and is outside of the transfer," Delaware law forbids assignment to a party that has no independent interest in the litigation. *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 203-04 (Del. Super. Ct. 2020) (citing *Drake*, 165

---

[7] Federal courts ordinarily apply choice of law rules of the state within which they sit. *SCM Corp. v. Deltak Corp.*, 702 F. Supp. 1428, 1430 (D. Minn. 1988). Minnesota law will enforce a contractual choice of law but only "so long as the parties acted in good faith and without an intent to evade the law." *St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785, 788 (8th Cir. 2016). Without an enforceable choice-of-law provision, Minnesota courts apply five "choice influencing factors" to decide which state's law should apply. *Pitman Farms v. Kuehl Poultry, LLC*, No. 19-cv-3040, 2023 WL 3853411, at *6 (D. Minn. June 6, 2023). These factors include "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id.* While the result does not change, Defendants suggest that the Court apply Delaware law because both Sysco and Carina are Delaware entities. The Court should reject their effort to dictate the law applied by the courts to evaluate the validity of the assignment that Sysco knows to be unlawful. As reflected in above-cited Sysco briefing, Sysco knows that Delaware is particularly stringent in prohibiting champerty.

A.2d at 454) (emphasis added). And Delaware courts soundly reject transfers of litigation claims to parties that do not have such an interest: "It is the duty of the court to dismiss a case in which the evidence discloses that the assignment of the cause of action sued upon was tainted with champerty." *Hall*, 655 A.2d at 830; *see also Hannigan v. Italo Petroleum Corp.*, 178 A. 589, 591 (Del. Super. Ct. 1935) (holding that champertous agreements "are necessarily absolutely void" (citations omitted)); *Street Search Partners, L.P. v. Rincon Int'l, LLC*, No. 04C-09-191-PLA, 2006 WL 1313859, at *3, *5 (Del. Super Ct. May 12, 2006) (rejecting an assignment as champertous where the assignee had no interest in the cause of action independent of the assignment).

    <u>**Illinois**</u>: Likewise, Illinois rejects litigation assignments as "thinly veiled champerty" and void as against public policy where the assignee "had no involvement prior to the assignment and, absent the assignment, would have no interest at all in the subject matter of [the] case." *Birner v. Gen. Motors Corp.*, No. 06-1148, 2007 WL 269847, at *2 (C.D. Ill. Jan. 26, 2007). Sysco has observed that the Illinois "prohibition on champerty was established at common law over 100 years ago." (New York Litigation, ECF No. 34, Sysco Corp. Mem. Supp. Pet. Vacate Arb. Award, at 17 (June 9, 2023).) As Sysco recognizes, "Illinois courts continue to 'preserve the principle which tends to defeat the mischief to which the old law was directed, namely the traffic of merchandising in quarrels and of huckstering in litigious discord.'" (*Id.* (quoting 7 Ill. L. & Prac. *Champerty & Maintenance* § 2 (Jan. 2023 Update).) And, again as Sysco recognizes, Illinois courts take particular care to ensure that potentially champertous arrangements do not transfer a litigation interest to a party—such as a litigation funder—that may perpetuate litigation

that might otherwise be resolved. (*Id.* at 17 (citing and quoting cases).)

**Minnesota**: As to Minnesota, Sysco has once again correctly distilled the applicable law. As Sysco understands, a litigation funder's assertion of control over a party's claims is "unconscionable and thus unenforceable under Minnesota law." (New York Litig., ECF No. 18, at 18.) On that point, Sysco invoked the Minnesota Supreme Court's decision in *Mazlowski v. Prospect Funding Partners, LLC*, 944 N.W.2d 235, 241 (Minn. 2020), for the mandate that courts must "'scrutinize' litigation funding agreements to determine whether 'equity allows their enforcement.'" (New York Litig., ECF No. 18, at 18.) As Sysco has explained, "the Minnesota Supreme Court specifically directed that litigation funders must not 'attempt to control the course of the underlying litigation,' and that 'it is difficult to conceive of any stipulation more against public policy' than a contract requiring the litigation financier's permission to settle the underlying litigation.'" (*Id.* at 18 (quoting *Mazlowksi*, 944 N.W.2d at 241).) Thus, while Minnesota permits a litigant to obtain financing to facilitate the pursuit of its claim, Minnesota expressly adheres to all other jurisdictions in prohibiting a litigation funder from exercising control over the claim.

Thus, under the law of every applicable state and regardless of the precise boundaries of the prohibition on champerty, the real party in interest cannot assign its claims to a litigation funder, like Burford or Carina, that has no underlying interest in the dispute other than financial speculation. (*See, e.g.*, New York Litig., ECF No. 34, at 2 ("Burford's only interest in Sysco's claims is a potential financial return.").)

The saga of the Sysco-Burford dispute illustrates the necessity of that definitive rule. Courts cannot permit a litigation funder to compel litigation solely as a financial

venture, refuse settlement even against the interests and judgment of the real party in interest, or dictate litigation strategy and decisions in pursuit of the funder's profiteering. (*See, e.g.*, New York Litig., ECF No. 38-13, at 6; New York Litig., ECF No. 18, at 15.) As Sysco has put it, such actions to "seize further control of Sysco's antitrust claims" are "illegal." (New York Litig., ECF No. 38-13, at 1.) Yet, by expressly giving Carina and Burford unfettered control of Sysco's claims, that is exactly what Sysco's assignment would do. (Joint Motion, ECF No. 1940, at 4 (purporting to grant Carina "all rights to prosecute, enforce and collect the Claims, including any Claim Resolutions").) Because it attempts to enable such corruption of the judicial process, Sysco's assignment to Carina is void.

The assignment is particularly offensive to public policy given the history here. Sysco has made much of the fact that Burford seeks to "force Sysco to litigate against its will" solely to obtain greater profits for Burford and that Sysco believes that "further negotiation or litigation would not result in a higher recovery." (New York Litig., ECF No. 34, at 2.) With Sysco prepared to resolve its claims with several of its suppliers, the assignment replaces the real party in interest with a litigation funder that has no interest in this litigation other than financial speculation.

There cannot be a sincere dispute that an agreement giving a litigation funder control over litigation claims and settlement is unlawful. As Sysco has pointed out, even Burford's "own Ethics Consultant has written that 'a funding agreement that allows a funder to take control of settlement' would be 'seen as against public policy in every state.'" (*Id.* at 4 (quoting Anthony J. Sebok, The Rules of Professional Responsibility and

Legal Finance: A Status Update, Cardozo Law Jacob Burns Inst. For Advanced Legal Studies, Faculty Research Paper No. 671 (2022)).) Sysco is "aware of no case upholding such an agreement; on the contrary, it is self-evident to courts confronting this issue that they are unenforceable." (*Id.*) In support of that proposition, Sysco quoted *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018), which held that funding arrangements that "give to the lender any control over litigation strategy or settlement decisions" must be "deem[ed] unenforceable."

Should any confusion remain on the controlling law and its application to the assignment, Defendants refer the Court to an expert report prepared by Professor Maya Steinitz on behalf of Sysco regarding litigation finance. (*See* New York Litig., ECF No. 21-4.) That report provides a detailed review of the development and current status of the law applicable to a funder's control over litigation claims. In addition to explaining why courts—including the case law cited above—will not tolerate a funder's control over claim resolution, Professor Steinitz explained why replacement of Sysco as the real party in interest by a litigation funder "is particularly problematic in the antitrust context" and especially in "antitrust suits pertaining to the entire American protein market." (*Id.* at 25.) The "main downside of treble damages" is the risk that "such punitive damages can incentivize overzealous prosecution of antitrust claims which would force defendants to overpay beyond what the merits of the case warrant." (*Id.*) Among the guardrails to control that risk, "the courts have clarified that claims are to be brought on behalf of parties that have actually been harmed by anticompetitive behavior." (*Id.* (citing scholarship and cases).) "Empower[ing] a third-party funder to enforce antitrust law absent any injury to

*its* business or property through anticompetitive behavior" would be "in diametric opposition to the goals of treble damages and joint-and-several liability." (*Id.* at 26.) That is exactly the result that Sysco now seeks to achieve by turning its claims over to a litigation funder.

By granting Carina unfettered control over Sysco's claim, the assignment should be deemed void as unconscionable and violative of both public policy and the prohibition on champerty. Accordingly, substitution should be denied.

## II.     THE MOTION TO SUBSTITUTE PLAINTIFF SHOULD BE DENIED AS IMPROPER UNDER RULE 25

Even if the assignment were valid, this Court should exercise its discretion to reject the proposed substitution under Rule 25.

A valid transfer of interest is "a necessary but not sufficient condition for Rule 25(c) relief." *Nationstar Mortg. LLC v. Fiesta Del Norte Homeowners Assoc.*, No. 2:16-cv-00497, 2020 WL 10787496, at *2 (D. Nev. May 13, 2020) (ordering that the moving party "must establish: (1) a valid transfer of interest under [the applicable state] law; and (2) that the Court should exercise its discretion to grant Rule 25(c) relief because the substitution would facilitate the conduct of this litigation (*especially given that dispositive motions are currently pending before the district judge*)" (emphasis added)). Here, Carina has not established that replacing Sysco with Carina as a party will "facilitate the conduct of this litigation," and its motion should therefore be denied. *Id.*; *Jalin Realty*, 2017 WL 1968285, at *3.

The Court's exercise of discretion in this case should also be informed by the unique facts and circumstances surrounding the proposed substitution. Defendants cannot

reasonably anticipate every prejudice that will flow from the proposed substitution, but at a minimum, it will: (1) complicate Defendants' efforts to access needed information and witnesses from Sysco at both discovery and trial; (2) slow the progress of this case as Defendants are forced to retrace discovery steps to obtain information about Carina; (3) introduce the specter of Carina attempting to dodge admissions and discovery proffered by Sysco; and (4) put Defendants in the precarious position of having to litigate against an assetless and potentially judgment proof shell entity. *Contra Potvin v. Speedway LLC*, 891 F.3d 410, 416-17 (1st Cir. 2018) (finding district court did not abuse its discretion in granting substitution where the party opposing substitution had not put forth "so much as a smidgen of prejudice stemming from the substitution," failing to claim, for example, that the new party was judgment-proof, that the swap would curtail discovery efforts, or that the swap would adversely impact "the presentation or the substance" of the case). And those considerations are in addition to the fundamental problem raised by Professor Steinitz of an antitrust claim being prosecuted by a litigation funder lacking the incentives and accountability of a market participant.

Indeed, this case is far from the "straightforward application of Rule 25(c)" that Carina claims. (Carina Mem., ECF No. 1952, at 3.) None of the cases cited by Carina in support of the Joint Motion involves the substitution of a newly formed shell company created for the sole purpose of litigating assigned claims on behalf of a litigation funder. In the typical case—including in each case cited by Carina—there is some significant change in a party's situation separate and apart from the lawsuit, such as an acquisition or bankruptcy. *See, e.g.*, *Fischer Bros. Aviation, Inc. v. NWA, Inc.*, 117 F.R.D. 144 (D. Minn.

1987) (allowing the substitution of a corporation's four sole shareholders to whom the corporation assigned its claims prior to the corporation's acquisition by another entity); *Ritz Camera & Image, LLC v. Sandisk Corp.*, No. C 10–02787, 2013 WL 3387817 (N.D. Cal. July 5, 2013) (allowing the unopposed substitution of a bankruptcy trustee for a newly bankrupt entity).

Here, there has been no such change. Sysco–the pork purchaser claiming to be the injured party–did not go bankrupt, was not acquired by any other entity, did not otherwise become unavailable or incapable of pursing its claim, and fails to point to any practical need for a new entity to assume its role in the litigation. Instead, after its efforts to execute settlements were blocked by its litigation funder, Sysco has simply pivoted to selling its claims to that funder, and asking Defendants to litigate against a "special purpose financing vehicle." Such a result is plainly not mandated by Rule 25, and the Court should exercise its discretion to deny substitution based on the unique and troubling circumstances here.

### A. Sysco, Not Carina, Possesses the Documents, Information, and Witnesses Relevant to This Litigation

Substitution does not facilitate the conduct of litigation where the original party in interest, not the assignee, possesses all of the information relevant to the case. *See, e.g., Great W. Cas. Co.*, 2022 WL 4182377, at *3 (recognizing a party's "legitimate interest in ensuring" that the party with whom it contracted "remains part of the case and subject to party discovery"); *Eastman Chem. Co. v. Alphapet Inc.*, No. 09–971, 2011 WL 13054223, *5 (D. Del. Dec. 9, 2011) (denying substitution because the "conduct of the litigation" would be better served by the continued involvement of the party in possession of relevant documents and employees with relevant knowledge); *Bullets2Bandages, LLC v. Caliber*

*Corp.*, No. 3:18-cv-00669, 2019 WL 5684400, at *4 (S.D. Cal. Nov. 1, 2019) (denying substitution in part because substitution would require additional discovery and turn the original plaintiff into a "non-party participant which creates an additional hurdle for not only discovery but also for trial"). Defendants have a legitimate interest in ensuring that Sysco remains a party both to ensure accountability for its discovery responses and for trial, and Carina has put forth no basis for overriding that interest. For that reason alone, substitution should be denied.

**B.      The Proposed Substitution at This Stage Would Make Resolution of Sysco's Claims More Rather Than Less Difficult**

Substituting Carina for Sysco is particularly unlikely to serve judicial economy given the advanced state of the proceedings in the Pork Litigation. While there is no strict "time limit" by which a party must file for substitution, courts consider the stage of the litigation and the impact of substitution on administration of the case. Where, for example, the merits of the underlying claims have already been resolved and the substitution will have no material impact on the conduct of the litigation, courts are more lenient. *See, e.g.*, *Jalin Realty,* 2017 WL 1968285, at *4 (allowing substitution of a defendant's insurance company after the "underlying claims dispute" had been resolved, and only a motion for attorney's fees remained pending); *Columbian Bank & Trust Co. v. Miller*, 384 Fed. Appx. 524, 525 (8th Cir. 2010) (allowing substitution by a plaintiff (for a bank that had closed) after summary judgment was entered and damages awarded to such a party, but before such damages had been paid). In contrast, substitution is not permitted when the addition of a new party midstream may disrupt the process of resolving the claims based on discovery that has been taken—that is, when substitution makes the case *more* instead of *less* difficult to

administer. *See, e.g.*, *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 269 F.R.D. 355, 359 (S.D.N.Y. 2010), judgment entered, No. 05 CIV. 9121 VM, 2010 WL 4237319 (S.D.N.Y. Oct. 5, 2010) (denying motion for substitution because it "would lengthen and complicate what is, at its core, a contractual dispute between two companies").

Here, like in *Advanced Marketing Group*, allowing Carina to replace Sysco will only "lengthen and complicate" the resolution of Sysco's claims. *Id.* at 359. Fact discovery in the Pork Litigation closed more than eight months ago, and considerable time has passed since Defendants took discovery from Sysco: Sysco's 30(b)(6) designee, a Director of Pork, was deposed on July 27, 2022, and its Senior Director of Category Management was deposed on October 19, 2022. Complying with the Court's directive to proceed toward summary judgment proceedings (Order Denying Leave to File Summ. J. Mot., ECF No. 1819, at 3), the parties are in the midst of merits expert discovery with summary judgment briefing set to begin on May 31, 2024. (Order on Stip. Amend Sched. Order, ECF No. 1927, at 1.) The replacement of Sysco with Carina at this juncture will undermine the progress that has been made. Rule 25 does not warrant substitution under such circumstances. *See, e.g.*, *Advanced Mktg. Grp.*, 269 F.R.D. at 359 (denying substitution where the introduction of the new party would force the court to confront "several threshold issues," including an assessment of whether the underlying agreement transferring the litigation interest was "a sham," as well as "the full spectrum of more typical issues that float to the surface during pretrial litigation and beyond").

In addition to the more typical case considerations, the Rule 25 analysis here must account for the fact that Sysco wants to resolve these claims and Burford (Carina's owner)

does not. As the United States Chamber of Commerce explained in its amicus brief filed in support of Sysco's petition in the Illinois Litigation, the involvement of third-party litigation funders "makes settlement of lawsuits more difficult, expensive, and inefficient." (Illinois Litig., ECF No. 30-1, Brief Amicus Curiae of the Chamber of Commerce of the U.S. in Supp. of Sysco's Petition to Vacate the Arb. Award, at 2 (Mar. 27, 2023).) Here, it is a matter of public record that Sysco has publicly professed its desire to resolve the ongoing litigation with its "key suppliers" of protein on "fair and reasonable" terms and avoid further protracted litigation on the claims at issue. (*See, e.g.*, New York Litig., ECF No. 33, Sysco Corp. Pet. Vacate Arb. Award, at 31 (June 9, 2023).) Carina, in contrast, is a Burford entity that Sysco recognizes "wants to roll the dice on Sysco's claims, hoping something good will happen in the future that will make them more valuable," and Carina is represented by Boies Schiller, who Sysco claims betrayed its ethical and fiduciary duties in support of Burford's quest to obstruct reasonable settlements. (Illinois Litig., ECF No. 1, at 6–7.) Indeed, according to Sysco, Burford wants to "further its own financial interest in obtaining a large return on its investment, prioritizing its greed over Sysco's rights and interests as the plaintiff." (*Id.* at 16.) The substitution of Carina for Sysco all but assures Sysco's claims will be pressed longer than they otherwise would, an inevitable consequence of handing control of claims to a litigation funder motivated exclusively by profit and lacking any underlying interest in the subject of the claims.

Finally, the assignment threatens to complicate what has already been the difficult task of managing DAP litigation. The ceaseless filing of new DAP complaints coupled with the DAPs' resistance to efforts to streamline their claims have made it challenging to

maintain a reasonable case schedule. For example, Sysco vigorously opposed participating in a consolidated complaint, before the Court ordered that such a complaint be filed on December 5, 2022. That filing allowed Defendants to file a motion to dismiss specific claims (*see* ECF No. 1754), and the Court heard argument on that motion on June 28, 2023, a day before Sysco and Carina filed the Joint Motion. Likewise, despite Sysco's objections, the Court has consistently ordered Sysco and other DAPs to conform to the Court's discovery schedule. (Dkt. 1576, 1744.) With extraordinary efforts by the parties, fact discovery closed on October 31, 2022. Now, if granted, the Joint Motion would necessitate considerable new discovery.

### C.    Defendants Should Not Be Forced to Litigate Against a Sham Entity

To allow the replacement of the largest global food distributor (a $68 billion company)[8] with an assetless shell company[9] in this litigation would unfairly prejudice Defendants. Absent substitution, the claims at issue will continue to be litigated between companies with business affiliations and mutual involvement in the pork industry–namely, a pork purchaser (Sysco) and pork suppliers (Defendants). Indeed, Defendants in this case are some of Sysco's "most significant suppliers." (Illinois Litig., ECF No. 1, at 8.) If substitution is allowed, Defendants will be forced to litigate instead against an affiliate of a litigation financier accused by the claimant itself of letting its own "greed" impede reasonable

---

[8] *2022 Annual Report,* 3 (2022) https://investors.sysco.com/~/media/Files/S/Sysco-IR/documents/annual-reports/Sysco_2022-Annual-Report_Web.pdf

[9] Defendants lack specific information regarding Carina's assets, but note that Mr. Gant, counsel for Carina, repeatedly replied "I don't know," when asked in the context of a meet and confer whether Carina had any assets other than the claims purportedly assigned to it by Sysco. Coleman Decl. ¶ 6.

settlements. (*See, e.g.*, Illinois Litig., ECF No. 1, at 16, 7 (alleging that Burford "prioritize[d] its greed over Sysco's rights and interests as a plaintiff" by "forcing Sysco to continue to litigate against its will").)

Setting aside the serious concerns regarding Carina's motivations, the issue of Carina's apparent lack of assets is also relevant to the Joint Motion. In the context of litigation, parties are disincentivized from violating their discovery obligations in part by the specter of a costs award under Rule 37. *See* Fed. R. Civ. P. Rule 37(a)(5)(A) (providing that courts must, under certain circumstances, require a party whose discovery failure necessitated motion practice by another party to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees"). It is not clear whether Defendants have any such recourse against a Burford-created shell entity. To the best of Defendants' understanding, Carina is an LLC indirectly owned, via multiple other LLCs, by a company whose funds reside on the island of Guernsey. (*See* 2022 Burford Capital Limited Form 20-F, at 14, 25, *available at* https://investors.burfordcapital.com/financials/annual-reports/default.aspx.) Thus, unlike Sysco, an accountable litigant with significant assets that reside in this country, Carina may very well be judgment-proof such that Defendants would have no redress for litigation misconduct by Carina.

Moreover, as an empty shell created as a vehicle for investment in a litigation claim, merits discovery of Carina is likely to be little more than a farce. The deposition of DAP Amory Investments LLC ("Amory") is instructive. Also a shell entity created by Burford to take assignment of a litigation claim that Burford acquired, and also represented by Boies Schiller, Amory proffered a *Burford Senior Vice President* as its Rule 30(b)(6) witness. The

Burford executive testified that she ████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████ As Amory's 30(b)(6) witness, she could not ████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ While

Defendants would insist on the right to depose whatever marionette Carina proffers as a Rule

30(b)(6) witness should it be allowed to join the litigation, the Court should not sanction this

sham, and substitution should be denied.

### III. IF SUBSTITUTION IS NOT DENIED ON THE CURRENT RECORD, THEN DEFENDANTS SHOULD BE GRANTED LEAVE TO CONDUCT CRITICAL DISCOVERY RELATED TO THIS MOTION

Given the record in this case and the extensive record in the Sysco-Burford dispute,

Defendants maintain that the Joint Motion should be summarily denied. Defendants

recognize, however, that a number of essential questions about Carina, the Sysco

assignment, and the future conduct of the case with Carina as a potential plaintiff remain unanswered. Should the Court view answers to those questions as necessary to decide the Joint Motion, Defendants respectfully request leave to conduct discovery on an accelerated timeline to enable further consideration of the motion.

When any uncertainty about the propriety of a proposed substitution or assignment exists, courts will allow additional discovery into the matter. *See, e.g.*, *Tool-Plas Sys., Inc. v. Camaco, LLC*, No. 09-12003, 2010 WL 1347686, at *3 (E.D. Mich. Mar. 31, 2010) (allowing defendant "to conduct discovery into the purported assignment and identity of" the substitute-plaintiff, "to prevent [the defendant] from being prejudiced by the substitution"); *Urena v. Nationwide Ins. Co. of Am.*, No. 13-cv-03544, 2017 WL 735583, at *6, 9 (D.S.C. Feb. 24, 2017) (allowing party "to conduct further discovery into" a mid-litigation assignment's "validity"). *Cf. Moroccanoil, Inc. v. Conforti*, No. 11-136, 2021 WL 2310092, at *8 (D.N.J. June 4, 2021) (permitting substitution in part because the opposing party had received "extensive discovery" about the underlying transfer of interest).

At the very least, then, the Court should permit Defendants to conduct discovery in the following targeted areas before approving substitution. First, Defendants seek to obtain information related to the underlying agreement between Sysco and Burford; the terms of the assignment between Sysco and Carina; any rights retained by Sysco; any consideration negotiated between Sysco and Carina (and/or Burford); and updated discovery regarding Sysco's assessment of its claims and rationale for assigning them away.[10] Such discovery is

---

[10] Sysco and Carina have refused on confidentiality grounds to provide Defendants with this information. There is no absolute bar, however, under Federal Rule of Evidence 408 or

necessary because substitution is generally denied where uncertainty about the nature or legal sufficiency of the transfer agreement exists. *Great W. Cas. Co.*, 2022 WL 4182377, at *3 (citing *Eastman Chem.*, 2011 WL 13054223, at *4); *see also ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, No. 98-C-7614, 2002 WL 230904, at *3–4 (N.D. Ill. Feb. 15, 2002) (rejecting a motion for substitution where legal sufficiency of transfer agreement was unclear). On the current record, all available information indicates that the assignment is an illegitimate sham conceived of nearly a year ago and designed to extricate Sysco from a relationship with Burford that it knows to be champertous and unlawful.

Second, Defendants seek information about the formation, structure, control, and capitalization of Carina. Currently, Defendants know only that Carina was newly created on June 12, 2023 and is controlled by Burford. Defendants lack sufficient information to determine how Carina will be responsible for, and able to pay, costs or expenses related to this litigation, including those that may be due to Defendants. That information goes to the heart of the Court's consideration about the validity of the assignment and legitimacy of Carina assuming control over claims that Sysco intended to settle. Particularly given the circumstances here—a litigation funder seeking to perpetuate litigation solely to recoup a return on its investment—Defendants should not be forced to litigate against a party against whom they do not have any recourse. *Great W. Cas. Co.*, 2022 WL 4182377, at *3 (denying

---

otherwise, to producing a confidential settlement agreement in discovery. If a party can show that a settlement agreement is relevant, as the Sysco-Burford agreement is here, courts in this Circuit require production of that agreement. *See, e.g.*, *Williams v. BHI Energy I Power Servs., LLC*, No. 21-cv-1186, 2022 WL 17485550, at *2 (D. Minn. Dec. 7, 2022); *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, No. 16-cv-52, 2017 WL 9690400, at *5-6 (N.D. Iowa July 19, 2017); *Hawkins v. Cty. of Lincoln*, No. 10-cv-5001, 2012 WL 12884563, at *1-2 (D. Neb. Apr. 5, 2012).

motion to substitute where assets but not liabilities were assigned and thus ability to recover costs or attorney's fees was not available).

Third, Defendants need information regarding the degree to which Sysco's absence from this litigation will impair Defendants' ability to defend against Sysco's claims. For example, it is vital that the movants commit to be bound by Sysco's discovery responses. And clarity regarding exactly how Carina will be presented to a jury should be resolved now, when the Court is assessing whether it can or should be permitted to proceed as a plaintiff.

Defendants respectfully suggest that movants be ordered to respond to such discovery on an accelerated schedule, followed by supplemental briefing should Defendants continue to oppose substitution.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Sysco's and Carina's motion for substitution. In the alternative, should the Court find that additional discovery is necessary, Defendants respectfully suggest that it direct Defendants to serve discovery requests on Sysco and Carina within 15 days of the Court's order, followed by full substantive responses to those requests 30 days later with depositions to follow.

Dated: July 21, 2023

/s/ Craig S. Coleman
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com

Jacob D. Bylund (*pro hac vice*)
Robert C. Gallup (#0399100)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave., 33rd Floor
Des Moines, IA 50309
(515) 248-9000
jacob.bylund@faegredrinker.com
robert.gallup@faegredrinker.com

John S. Yi (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2200
Philadelphia, PA 19103
(215) 988-2700
john.yi@faegredrinker.com

Jonathan H. Todt (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 842-8800
jonathan.todt@faegredrinker.com

**Counsel for Hormel Foods Corporation and Hormel Foods, LLC**

/s/ Daniel E. Laytin, P.C.
Mark L. Johnson (#0345520)
Davida S. McGhee (#0400175)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
dwilliams@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Jenna M. Stupar (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
jenna.stupar@kirkland.com

**Counsel for Clemens Food Group, LLC
and The Clemens Family Corporation**

/s/ John A. Cotter
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY & LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN &CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
(972) 707-1809
brian@brownfoxlaw.com

**Counsel for Smithfield Foods, Inc.**

/s/ Sami H. Rashid
Sami H. Rashid (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
samirashid@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE LLP
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402-4206
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

**Counsel for JBS USA Food Company**

/s/ Peter J. Schwingler
Peter J. Schwingler (#0388909)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
(612) 217-8800
pschwingler@jonesday.com

Jordan M. Baumann
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215-2673
(614) 469-3939
jbaumann@jonesday.com

William L. Greene (#0198730)
William D. Thomson (#0396743)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
william.thomson@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

**Counsel for Seaboard Foods LLC**

/s/ Christopher A. Smith
Aaron Chapin (#0386606)
Christopher A. Smith (*pro hac vice*)
Tessa K. Jacob (*pro hac vice*)
A. James Spung (*pro hac vice*)
Jason Husgen (*pro hac vice*)
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Ste 1500
St. Louis, MO 63105
Telephone: (314) 480-1500
aaron.chapin@huschblackwell.com
chris.smith@huschblackwell.com
tessa.jacob@huschblackwell.com
james.spung@huschblackwell.com
jason.husgen@huschblackwell.com

**Counsel for Triumph Foods, LLC**

/s/ Tiffany Rider Rohrbaugh
Tiffany Rider Rohrbaugh (*pro hac vice*)
Rachel J. Adcox (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
trider@axinn.com
radcox@axinn.com
lstrang@axinn.com

Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

**Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.**

*/s/ William L. Monts III*

Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
(612) 402-3000
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

**Counsel for Agri Stats, Inc.**

US.358424056.08