# EXHIBIT E

# Exhibit N

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
_____
(202) 326-7900
FACSIMILE:
(202) 326-7999

March 17, 2023

*Via Electronic Mail*

Jeffrey A. Rosenthal
Lina Bensman
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006-1470

    Re:    Notice of Sysco Corporation's Material Breaches of the Second Amended and
             Restated Capital Provision Agreement, and Amendment No. 1 to the Second
             Amended and Restated Capital Provision Agreement

Dear Jeff & Lina:

    Pursuant to Section 12.2 of the Second Amended and Restated Capital Provision
Agreement, dated December 22, 2020 ("CPA"), and as amended by the parties on April 1, 2022
("Amended CPA"), Glaz LLC, Posen Investments LP, and Kenosha Investments LP ("Capital
Providers") hereby provide written notice to Sysco Corporation ("Sysco") of the occurrence of
multiple material breaches of the parties' agreements. As you are well aware, the Tribunal now
has preliminarily enjoined Sysco from carrying out its threat to breach the Amended CPA by
accepting the contested settlements without the Capital Providers' prior consent. *See Glaz LLC,
Posen Investments LP, and Kenosha Investments LP vs. Sysco Corporation* (LCIA No. 225609)
("Arbitration"). In addition to the threatened – and now preliminarily enjoined – settlements,
Sysco has violated its contractual obligations in multiple ways. Those breaches, individually and
collectively, trigger the remedies set forth in section 13 of the CPA if Sysco does not promptly
cure them.

    The CPA requires Sysco not to disclose any "information relating to . . . a Capital
Provider and its Affiliates," "the nature, terms and existence of this Agreement," and "the
existence of any relationship between the Counterparty and a Capital Provider." CPA § 8.2; Ex.
A at 2. The CPA further obligates the parties to "keep confidential the existence and content of
any arbitral proceedings initiated hereunder and any rulings or award except," *inter alia*, "to the

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jeffrey A. Rosenthal
Lina Bensman
March 17, 2023
Page 2

extent that disclosure may be required of a party to . . . enforce or challenge an award in *bona fide* legal proceedings." *Id.* § 29(g).

For months, Sysco repeatedly has breached these provisions. In November 2022, over Capital Providers' express objection, Sysco disclosed to at least ███████████████ that it had pledged its Claims as collateral for litigation funding. In mid-December 2022, Sysco disclosed to ██████ that it was engaged in arbitration. And, in January 2023, Sysco threatened to disclose the details of the Arbitration to each defendant in the *Broilers* litigation.

Now, Sysco has made good on that threat by filing its petition to vacate the TRO in the Northern District of Illinois. *See* Pet. to Vacate Arbitration Award, *Sysco Corp. v. Glaz LLC, et al.*, No. 23-cv-01451 (N.D. Ill. Mar. 8, 2023), ECF No. 1. Fundamentally, that filing was wholly inappropriate and unnecessary – and therefore not *"bona fide."* CPA § 29(g). Sysco's frivolous petition also violates its obligations to "take such actions as are reasonable and appropriate to maximize the Proceeds received from each Claim," Amended CPA § 7(a), and to "use all commercially reasonable efforts to . . . pursue such Claim[s] and all of the Counterparty's legal and equitable rights arising in connection with such Claim[s]." CPA § 5.3(b)(i).

As of Sysco's public filing, the TRO had been in place for nearly three months, and the Tribunal had informed the parties, merely five days earlier, that it would rule on Capital Providers' preliminary injunction application by March 17. Thus, when Sysco filed its petition to vacate on March 8, it knew that the case would be mooted almost immediately, because no matter who won or lost on Capital Providers' preliminary injunction application, the TRO would be dissolved. Sysco's petition therefore has no possible purpose other than to diminish the value of the Claims in an effort to coerce Capital Providers into withdrawing the Arbitration before Sysco could do more damage.

Sysco has contended that it had to file the petition to vacate the TRO because of an impending March 14 statutory deadline. That is nonsense. Given that the Tribunal had promised a ruling on the preliminary injunction within days, Sysco – after sitting on its rights for almost three months – had no hope for a ruling on its petition before it became moot. And if the Tribunal ruled against Sysco on the preliminary injunction (as it did), that ruling would have given Sysco a fresh clock for purposes of seeking judicial relief from the Tribunal's injunction. There is no explanation for Sysco filing a public petition to vacate a TRO whose shelf life was measured in days – other than its desire to damage its own Claims, and Capital Providers' interests in the process.[1]

_____

[1] Sysco's naming of Burford as Capital Providers' parent represents a separate violation of the CPA's confidentiality provisions. Obviously, Sysco's "due process" claim – that the Tribunal issued the TRO "in violation of Sysco's due process rights," Pet. ¶ 57 – has nothing to

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jeffrey A. Rosenthal
Lina Bensman
March 17, 2023
Page 3

Sysco's antics in the underlying food antitrust cases also violate the parties' agreements. Sysco fired Boies, Schiller, & Flexner L.L.P. without any arrangement for replacement counsel, thereby ensuring delay and confusion. While Sysco is free to change counsel, it is not free to do so in a way that negatively affects the underlying cases. Sysco's gross mismanagement of the litigation evinces (yet again) its determination to undermine the value of its Claims, and is, independently, an inexcusable and a clear violation of Sysco's obligation to "retain and remunerate" replacement counsel "in a timely manner." CPA § 5.3(b)(ii).

What is more, Sysco has filed a series of frivolous stay motions in the *Broilers*, *Pork*, and *Beef* cases, supposedly because it cannot find replacement counsel.[2] Those filings are self-evidently disingenuous. Sysco does not actually seek to stay any impending deadlines – because there are none. Judge Gilbert, in *Broilers*, already has identified that evident flaw in Sysco's motion, ordering Sysco to identify any plausibly applicable deadline that will arise before Sysco could obtain replacement counsel. *See* Minute Order, *Broilers*, ECF No. 6346 (Mar. 16, 2023). Sysco has no answer, because there is obviously no shortage of lawyers that would represent it. Multiple law firms have reached out to Capital Providers expressing interest in representing Sysco. Sysco likely has heard from some of these firms directly. There should thus be no difficulty securing counsel on terms consistent with the Amended CPA. But Sysco clearly has decided to create the false impression – in the media and in the underlying litigations – that the Tribunal's ruling is interfering with its ability to find counsel and proceed with the cases. To do so, Sysco needlessly has delayed its own litigation and communicated disorganization and weakness to the defendants – again in violation of its obligations under the Amended CPA § 7(a) and CPA § 5.3(b)(i).

Sysco's petition to vacate also violates the CPA's provision that any "challenge[] [to] the validity of [] this Agreement" is a material breach. CPA § 12.2. The CPA further provides: "The parties, being sophisticated commercial entities with access to counsel, irrevocably waive and forever and unconditionally release" any claim or defense that "this Agreement . . . [is] against the public policy of any relevant jurisdiction." *Id.* § 29(k). Sysco's filings in the Northern District of Illinois are littered with impermissible – and incorrect – arguments that the

---

do with the identity of any Affiliate of Capital Providers. Sysco's disclosure of Burford Capital's involvement thus went far beyond what was "required of a party to . . . challenge" the TRO. CPA § 29(g). Sysco purposefully disclosed Burford for no reason other than to inflict damage on the Claims and exact a litigation advantage.

[2] *See In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637 (N.D. Ill. Mar. 10, 2023), ECF No. 6339; *In re Pork Antitrust Litig.*, No. 18-cv-01776 (D. Minn. Mar. 10, 2023), ECF Nos. 1843, 1845; *In re Cattle and Beef Antitrust Litig.*, No. 22-md-03031 (D. Minn. Mar. 10, 2023), ECF Nos. 164, 166.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jeffrey A. Rosenthal
Lina Bensman
March 17, 2023
Page 4

CPA violates "public policy." *E.g.* Pet. ¶¶ 1, 16, 56-57. To the extent that Sysco seeks to challenge its knowing and voluntary waiver of a public-policy defense, "the scope or validity of [its] waiver [is] within the exclusive jurisdiction of the Tribunal." CPA § 29(k). Sysco never has challenged its prior waiver before the Tribunal, making its arguments in federal court both unmeritorious and procedurally improper. This is yet more evidence that Sysco's federal filing was a bad faith tactic to sabotage the value of the Claims.

Finally, pursuant to section 5.3(g) of the CPA, Sysco is required to file a direct-action complaint in the *Beef*, *Pork*, and *Turkey* cases "no later than the date which is three (3) months following the applicable court's denial of a motion to dismiss the putative class action." The Northern District of Illinois denied defendants' motion to dismiss in the *Turkey* litigation on October 19, 2020. *See In re Turkey Antitrust Litig.*, No. 19-cv-8318 (N.D. Ill.), ECF No. 173. The deadline for Sysco to file its *Turkey* complaint thus came and went on January 19, 2021.

Sysco still has not filed its *Turkey* complaint. Capital Providers repeatedly have inquired why Sysco has failed to do so, even offering Sysco an extension of the deadline to comply. Eventually, Sysco directed Boies Schiller to prepare a *Turkey* complaint, and then billed Capital Providers for that complaint, only to terminate that work long before Sysco terminated Boies Schiller as counsel. To date, Sysco still has not filed its *Turkey* case, repeatedly has refused to provide further updates on the issue, and remains in ongoing breach of its obligation under the CPA to file its claim. Each day that passes not only ███████████████████████████ ███████████████████████████████[3] but also risks the entirety of Sysco's claims being dismissed as time-barred.

Viewed in their entirety, the foregoing breaches manifest Sysco's clear breach of its fundamental obligation to take "reasonable and appropriate" steps to "maximize the [value]" of its Claims. Amended CPA § 7(a).

\*     \*     \*

In light of the foregoing material breaches of the parties' agreements, Sysco must: (1) dismiss with prejudice its petition to vacate in the Northern District of Illinois; (2) withdraw its stay motions in the underlying food antitrust litigations; (3) retain replacement counsel in those litigations by March 24, 2023; (4) cease and desist from repudiating the parties' CPA and Amended CPA on so-called "public policy" grounds; and (5) file a direct-action complaint in the *Turkey* litigation.

---

[3] ████████████████████████████████████████████████

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jeffrey A. Rosenthal
Lina Bensman
March 17, 2023
Page 5

     If Sysco fails to undertake these steps immediately, Capital Providers reserve all rights to declare a Remedy Event; exercise all remedies pertaining thereto; and exercise all other legal and equitable remedies available to them.

Sincerely,

Derek T. Ho
