# **EXHIBIT F**

# Exhibit M

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

**AMERICAS**
NEW YORK
SAN FRANCISCO
SÃO PAULO
SILICON VALLEY
WASHINGTON, D.C.

**ASIA**
BEIJING
HONG KONG
SEOUL

**EUROPE & MIDDLE EAST**
ABU DHABI      LONDON
BRUSSELS       MILAN
COLOGNE        PARIS
FRANKFURT      ROME

CRAIG B. BROD
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
ALAN M. LEVINE
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
DEBORAH NORTH
MATTHEW P. SALERNO
MICHAEL J. ALBANO

VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
AUDRY X. CASUSOL
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOHN A. KUPIEC
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA

KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
JULIA L. PETTY
HELENA K. GRANNIS
SUSANNA E. PARKER
THOMAS S. KESSLER
RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
HEIDE H. ILGENFRITZ
ANDREW WEAVER
JOHN V. HARRISON
MATTHEW BRIGHAM
EMILIO MINVIELLE
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
BRIAN J. MORRIS
CARINA S. WALLANCE
ALEXANDER JANGHORBANI
RESIDENT COUNSEL

D: +1 212 225 2086
jrosenthal@cgsh.com

March 20, 2023

BY EMAIL

Derek T. Ho, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
Sumner Square
1615 M Street, N.W.
Washington, D.C. 20036

Re:   Notice of Sysco Corporation's Material Breaches of the Second Amended and Restated Capital Provision Agreement, and Amendment No. 1 to the Second Amended and Restated Capital Provision Agreement

Dear Derek:

We write in response to your March 17, 2023 letter (the "Letter") in which you baselessly accuse Sysco of breaching the funding agreement and make various related threats and demands. We address these in detail below, though none of them merit a serious response, as each is obviously manufactured and claims rights that Burford does not have. More fundamentally, we are troubled by Burford's transparent and illegal efforts to seize further control of Sysco's antitrust claims, both by making multiple demands that Sysco take certain actions in the antitrust cases and by threatening to invoke Burford's purported right under Section 13 of the CPA to assume complete control—in Sysco's name—of the antitrust cases, including the engagement of counsel answerable to Burford, not Sysco.

*First*, you assert that Sysco has repeatedly breached its confidentiality obligations under the CPA, citing purported breaches in November 2022, December 2022, and January 2023. Letter at 1-2 (citing CPA §§ 8.2 and 29(g)). We address each in turn.

- November 2022. You allege that in November 2022, Sysco advised certain settling defendants that Sysco had pledged its claims as collateral for litigation funding. You are mistaken; all Sysco did was obtain permission from certain settling defendants to share a confidential draft settlement agreement with any "financial partner" or

Derek T. Ho, Esq., p. 2

- "litigation funder."[1] Sysco was forced to make this request because Burford was so uninterested in even seeing the proposed settlement agreement (having already decided in September to withhold consent) that it would not allow us to seek express permission. In any event, we learned weeks later from Burford's document production that your outrage at Sysco was a pretense since Burford has consented to other plaintiffs' explicit disclosure of their use of litigation funding in documents then shared with all JSA signatories. Burford's assertion that this constitutes a material breach of the CPA is obviously frivolous, pretextual and raised in bad faith. We would also note that just a couple of weeks later, this disclosure was mooted entirely as set forth in the next paragraph.

- <u>December 2022.</u> You appear to refer to the fact that in mid-December, Sysco disclosed to one of the defendants proposing to settle that it was enjoined by an arbitral tribunal from executing the settlement agreement. As you know perfectly well, the Tribunal's temporary restraining order was explicitly conditioned on Burford consenting to this disclosure.[2] Burford then consented.[3] Burford's claim that through this disclosure Sysco breached any contractual obligation of Sysco's is another flagrant example of the bad faith with which Burford has conducted itself.

- <u>January 2023.</u> You appear to refer to the fact that, after extensive discussions with you, Sysco reached out to the parties in *Broilers* by email to seek their consent to use their confidential information in the arbitration. Need we remind you that Sysco's email used language that *Burford proposed*?[4] Of course, as Burford's proposed language was vague in the extreme, it predictably resulted in no consent being given; consequently, Sysco followed up with Burford in January 2023 to describe the further steps it believed were necessary to prepare Sysco's defenses in the arbitration, which Section 29(g) of the CPA entitles Sysco to do. Your suggestion that Sysco's letter, in which Sysco attempted to transparently work through a roadblock in the hope that Burford would discuss the approach further with Sysco, breached the CPA, is simply risible and, once again, bad faith.

In contrast to these baseless accusations that Sysco has breached confidentiality—when, in fact, Burford has used confidentiality at every opportunity as a sword to prevent Sysco from defending itself in the arbitration and from exhibiting candor to the Court and the

---

[1] Email from J. Rosenthal to L. Snodgrass & D. Ho, dated December 2, 2022.

[2] Tribunal's Order, dated December 14, 2022 ("[T]his restraint on Respondent shall be conditioned on Claimants' acceptance — to be immediately indicated to Respondent (copying the Tribunal) that (a) Respondent may inform ▮▮▮▮ of the imposition of the restraint by this Tribunal; and (b) Respondent may inform ▮▮▮▮ of the hearing . . . regarding the preliminary injunction application.").

[3] Burford attempted to consent only to a narrower disclosure, specifically, to disclosure of "the existence of an arbitration." Email from D. Ho to Members of the Tribunal and Sysco's Counsel, dated December 14, 2022. The Tribunal reiterated that Burford was not free to alter the scope of the disclosure on which the TRO was conditioned. Email from L. Shore to D. Ho, dated December 14, 2022.

[4] Letter from D. Ho to J. Rosenthal & L. Bensman, dated December 14, 2022 ("We believe that this proposal provides Sysco an opportunity to obtain the discovery it claims that it needs while upholding its contractual confidentiality obligations to Claimants.").

Derek T. Ho, Esq., p. 3

defendants with whom it was attempting to negotiate in good faith—Burford flagrantly breached confidentiality moments after Sysco filed its petition by repeatedly divulging to multiple reporters the arms'-length value placed by Burford and Sysco on Sysco's antitrust claims when they transacted, information that we were careful to redact and file under seal. It is obvious that confidentiality is a one-way street with Burford to be touted when it furthers Burford's threats to muzzle its clients and flouted when Burford wishes to score points in the press.

*Second*, you assert that Sysco's filing of its petition to vacate the TRO was a breach of the CPA. Letter at 2 (citing Amendment § 7(a); CPA § 5.3(b)(i)). To prop up this extraordinary argument, you contend that Sysco filed the petition solely to damage the value of its own claims. This is a remarkable and obviously counterfactual contention given that Sysco advised you in advance that it had a March 14, 2023 deadline to challenge the TRO in court or lose its right to do so. Indeed, your client recognized the seriousness of this deadline by offering to toll it, only to be educated by us that it was not subject to tolling. At no time did the Tribunal ever commit to issuing its award prior to that deadline (despite multiple inquiries by us) and it was not bound to issue its PI Award on any particular timeline, or ever. Sysco simply could not risk being left without a remedy if, after allowing the deadline to lapse, the Tribunal simply left the TRO in place indefinitely. Your suggestion that Sysco should have waited longer relies entirely on hindsight.

Burford's suggestion that Sysco breached the CPA's confidentiality provisions by naming Burford in its petition is equally frivolous. Letter at 2-3 (citing CPA § 29(g)). While we understand that Burford would prefer to hide its unlawful and unethical activities behind three entities that are entirely unknown to the public, as is apparent from the face of the petition, which we presume you have read, Burford's identity and relationship to the Capital Providers is directly relevant to Sysco's jurisdictional arguments.[5] Moreover, you yourself advised us in recent correspondence that it is your position that the PI Award—which defined the claimants as "Burford" and refers to it throughout—is not confidential, and you attached a nearly complete version of the PI Award to the petition that Burford itself filed publicly in New York.[6] Accordingly, we cannot grasp any basis for your contention of breach.

*Third*, you assert that Sysco's termination of Boies Schiller was a breach of its obligations under the CPA. Letter at 3 (citing CPA § 5.3(b)(ii)). And you suggest that securing replacement counsel should pose "no difficulty" to Sysco because "[m]ultiple law firms have reached out to [Burford] expressing interest in representing Sysco." Letter at 3. In other words, after Burford breached its own contractual obligations by secretly influencing Boies Schiller to violate its fiduciary duties to Sysco,[7] and after weaponizing against Sysco privileged attorney-client information that Burford secretly and improperly obtained from Boies Schiller, Burford is now threatening to retaliate against Sysco (having learned of Boies Schiller's disloyalty) for firing Boies Schiller, and demanding that Sysco retain as replacement outside counsel a law firm

---

[5] *See Sysco Corp. v. Glaz LLC, et al.,* No. 23-CV-1451, ECF No. 1 ¶¶ 8-11 (N.D. Ill. Mar. 8, 2023).

[6] Letter from D. Ho to J. Rosenthal & L. Bensman, dated March 14, 2023.

[7] *See* CPA § 5.2(d) ("With respect to the Claims, each Capital Provider agrees with the Counterparty that: (d) such Capital Provider and its respective Affiliates shall do nothing that compromises the professional duties of any of the Nominated Lawyers."); Amendment § 7(b) ("[T]he Capital Providers (and their respective Affiliates) shall have no right to exercise control over the independent professional judgment of [Sysco's] Nominated Lawyers . . .").

Derek T. Ho, Esq., p. 4

that, upon learning of the dispute between Sysco and Burford, reached out to *Burford* seeking to be engaged.[8] The brazenness of Burford's demand simply beggars belief.

We presume that, in fact, Burford well understands that securing replacement counsel is not simple in cases that involve such a large number of parties. And it is made considerably more difficult by the obstacles that Burford has interposed to Sysco's retention of new counsel; we note in this regard that nearly three weeks later, Burford *still* has not responded to our March 2, 2023 letter asking Burford to clarify its position on the proposed fee arrangement for replacement counsel, to which Burford still has not consented in violation of its contractual obligations. Sysco has been working diligently to identify replacement counsel and has spoken to a number of firms, and is attempting to work through several conflicts issues. It has no desire to remain without counsel in the antitrust litigations, and therefore urges Burford to clarify its position on the fee proposal that was previously provided. If Burford hopes that, by ignoring that fee proposal entirely, it can in effect exercise a pocket veto and force Sysco to engage counsel whose loyalty will be to Burford, we assure you that Sysco will not allow its selection of outside counsel to be so improperly manipulated or controlled.

*Fourth*, you assert that the stay requests that Sysco filed in the antitrust litigations are also a breach of Sysco's obligations under the CPA. Letter at 3 (citing CPA § 5.3(b)(1), Amendment § 7(a)). This too is risible. It is obvious that during the period when Sysco does not have outside counsel, Sysco needs to ensure that its rights are protected and that it will receive flexibility and consideration, not just with respect to deadlines that are already set forth in the schedules entered in the various actions, but also with respect to any deadlines that may arise in the future. Given Burford's repeated pronouncements to us of its sophistication and experience, we should not need to explain to you that it is common in litigation for unexpected motions and orders to be filed that may require the parties to act, sometimes quickly and on short notice. Should that occur, or should (for example) the Track 1 motion to dismiss order issue in *Broilers* (with discovery potentially commencing very quickly thereafter), Sysco's stay motions, once granted, are intended ensure that Sysco does not inadvertently waive any right or fail to meet any obligation that it would otherwise have. This is the course that best protects the value of Sysco's claims until Sysco obtains new counsel. We would think that Burford's interests in this regard are aligned with Sysco's.

Burford's threats if Sysco does not withdraw its stay motions are not only frivolous, but are themselves a breach of Burford's covenant not to interfere with Sysco's "day-to-day and overall control over the conduct of, and responsibility for, the Claims."[9] Sysco will not cave to Burford's attempt to dictate to Sysco what procedural motions it can and cannot file.

*Fifth*, Burford asserts that Sysco has breached the CPA by arguing in its petition that the TRO violated public policy. Once again, Burford distorts the facts: Sysco has been unambiguously clear throughout the arbitration and in its petition that it is *Burford's incorrect interpretation* of the Amendment to the CPA that is contrary to public policy, and it is only by endorsing that incorrect interpretation that the TRO Award (and now the preliminary injunction

---

[8] We have asked you to identify these law firms and reiterate that request here.

[9] CPA § 5.2(c).

Derek T. Ho, Esq., p. 5

award), too, violated public policy. The only viable interpretation of the CPA, read as a whole and consistent with all parol evidence (which the Tribunal majority ignored because it could not be reconciled with Burford's twisted construction), the law and public policy is that Burford has no consent right. In challenging the TRO Award and the preliminary injunction award on the basis that the misreading of the CPA in these awards—not the CPA itself—violates public policy, Sysco has indisputably complied with all of its contractual obligations. In any event, to the extent that the CPA or the Amendment is illegal or contrary to public policy, they are not enforceable regardless of Section 29(k), an argument that you incorrectly suggest was not presented to the Tribunal.[10]

*Sixth*, in a naked exercise of pure champerty, Burford demands that Sysco file new claims and initiate new litigation against its suppliers of Turkey. The timing of any such filing is a strategic decision that belongs to the plaintiff, and is made in consultation with outside counsel. Once again, Burford is improperly seeking to insert itself and exercise total domination and control over Sysco's claims.

Finally—and tellingly—although you purport to provide notice "pursuant to Section 12.2 [of the CPA]" of "multiple material breaches of the parties' agreements," the bald assertions contained in your letter fall woefully short of identifying any breach—let alone a material breach—that would constitute a Remedy Event. Even if Burford had identified any failure by Sysco to comply with its contractual obligations—and for the reasons stated above, it has not—Burford has not even attempted to establish, nor could it establish, that any such alleged "failure could reasonably be expected to have a Material Adverse Effect." CPA § 12.2. It is beyond dispute that Sysco has the right to challenge the TRO and the PI Award—Sysco explained repeatedly over the course of the past several months that it would do so, and not once did Burford suggest that Sysco was not entitled to do so, nor could it possibly have done so.[11] Burford has also since advised Sysco of its view that the entire unredacted version of the PI Award may be shared publicly, so cannot be heard now to assert that the disclosure of any information in that 86-page document could possibly cause any harm to it. Nor can Burford be heard to say that a temporary stay of the antitrust litigations in order to provide sufficient time to replace counsel tainted and conflicted by Burford's improper conduct, or the inability to complete that process before the arbitrary deadline of March 24, 2023 set by Burford, could possibly harm Burford, let alone constitute a Material Adverse Effect.[12]

\* \* \*

---

[10] *See* Respondents' Rejoinder ¶ 100.

[11] *See* CPA § 29(g) (permitting disclosure of confidential information about arbitral proceedings "to the extent that disclosure may be required of a party to . . . enforce or challenge an award . . . ."); Transcript of December 7, 2022 Procedural Conference at 102:4-11 (Burford's counsel conceding that "a public application to a court that involves incidental disclosure" is permitted under the CPA).

[12] Nor can Buford be heard to say that "the Counterparty or any of its Representatives [have] disaffirm[ed], disclaim[ed], repudiate[d], or reject[ed] in writing, in whole or in part, or challenge[d] the validity of, [the CPA] or any other Transaction Document." Sysco has not disputed the validity of the CPA or Transaction Documents, but rather Burford's incorrect interpretation of the Amendment, as well as the notion that any purported rights under those agreements can be legally enforced through the form of injunctive relief granted pursuant to the PI Award.

Derek T. Ho, Esq., p. 6

Taken as a whole, the sheer number of egregious factual distortions, misstatements, and overt mischaracterizations of law expose your Letter as a clear attempt to lay groundwork for more baseless claims to bully Sysco into acceding to Burford's demand for complete and unfettered control of Sysco's antitrust claims. While Burford may be used to throwing around its weight against its smaller, poorly capitalized clients, Sysco will not abandon its legal rights in the face of Burford's scare tactics. We are confident that the law and public policy will ultimately be respected in court and that Burford's misconduct will not be rewarded.

We note, incidentally, that all of the threats stated in your Letter purport to be based on the original CPA, not solely on the Amendment that you assert was intended to punish Sysco for its assignments of certain claims to its customers. In other words, notwithstanding Burford's statements to reporter after reporter that its actions are justified by the unique nature of the Amendment that was supposedly necessitated solely by the fact of Sysco's assignments (which is itself obvious spin that seeks to distract the reader from what Burford is really doing), Burford is actually relying on provisions of the original, pre-assignments CPA to assert control over Sysco's counsel and claims. That Burford would couple such baseless accusations with a threat to invoke Section 13.1 of the original CPA, which appears to be part of Burford's standard contractual template, reveals the extent to which Burford has lied to Sysco, the Tribunal, and the world about the lack of any control rights in its "standard" contract or how easily Burford can trump up charges against its client to invoke such purported rights.

We consider your Letter to be evidence of Burford's bad faith, dishonesty, and continuing breaches of its material contractual obligations. Sysco reserves all rights.

Sincerely,

Jeffrey A. Rosenthal
Lina Bensman