UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br><br>The Consumer Indirect Purchaser Plaintiff Action | Civil No. 18-1776 (JRT/JFD)<br><br>**MEMORANDUM IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' UNCONTESTED MOTION TO APPROVE THE MANNER AND FORM OF CLASS NOTICE** |

## I. INTRODUCTION

The Consumer Indirect Purchaser Plaintiffs respectfully ask this Court for permission to direct notice to class members in accordance with Federal Rule of Civil Procedure 23(c)(2)(B).[1] CIPPs' proposed notice plan is described below. It includes both a short-form and long-form notice; both use plain language to inform potential class members of their rights and options at this stage of the litigation. An experienced administrator, A.B. Data, supports the proposed notice plan. This Court has previously appointed A.B. Data to serve as the notice and claims administrator for the CIPP class settlements.[2] Class Counsel has conferred with non-settling defendants, and this motion is not opposed.

## II. RELEVANT PROCEDURAL BACKGROUND

The Court certified the Consumer Class on March 29, 2023.[3] These claims are brought under the laws of 17 states and the District of Columbia.[4] The Consumer Class is:

---

[1] In this Motion, the Consumer Indirect Purchaser Plaintiffs are called the "Consumer Class" or "CIPPs."

[2] *See* Order Granting Preliminary Approval of the Class Action Settlement Agreement Between CIPPs and the JBS Defendants, ECF No. 752 (Apr. 2, 2021); Order Granting Preliminary Approval of the Class Action Settlement Agreement Between the CIPPs and Defendant Smithfield Foods, ECF No. 1588 (Nov. 9, 2022).

[3] *See* Mem. Opinion and Order Granting Class Cert. and Denying Defendants' Mot. to Exclude Expert Testimony, ECF No. 1887 (Mar. 29, 2023).

[4] The states are Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Tennessee, Utah, and West Virginia. The class period for Kansas, Tennessee, and South Carolina class members is proposed to begin June 28, 2015.

> All persons and entities who indirectly purchased raw pork, bacon, or one or more of the following types of raw pork, whether fresh or frozen: bellies, loins, shoulder, ribs or pork chops from defendants or co-conspirators for personal consumption in the Repealer Jurisdictions from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic, no-antibiotics ever (NAE) and any product other than bacon that is marinated, seasoned, flavored, or breaded.

After the Court certified the class, Defendants petitioned the Eighth Circuit to appeal under Federal Rule of Civil Procedure 23(f). The Eighth Circuit denied Defendants' petition on May 19, 2023.[5]

Since then, Class Counsel has worked with A.B. Data to develop a proposed notice plan. A.B. Data has repeatedly been appointed as the notice, claims, and settlement administrator in other large class action cases.[6] A.B. Data's notice plan is like the notice plan used to identify members of the settlement class: CIPPs propose using a combination of direct email notice, digital media, social media, and earned media to deliver notice to potential class members. Schachter Decl., ¶ 6. CIPPs have maintained a case-specific notice website to host the claims forms, notice documents, and other information about settlements in this case: www.overchargedforpork.com. *Id*. at ¶ 11. CIPPs propose sending direct notice through email to all class members who submitted claims for the settlements, as well as to the consumers whose contact information was provided by third-party grocery stores in response to the Consumer Class subpoenas. *Id.*

---

[5] *See* Judgment, Case No. 23-8002 (8th Cir. May 19, 2023).

[6] *See* Decl. of Eric Schachter in Support of Pls.' Mot. to Approve the Manner and Form of Class Notice at ¶ 1, filed concurrently herewith ("Schachter Decl.").

at ¶ 8. In total, A.B. Data estimates that 24 million consumers will receive direct notice. *Id*.

### III. ARGUMENT

Federal Rule of Civil Procedure 23(c)(2) and due process require that class members be properly notified of a class action to be bound by it.[7] Class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2). The "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[8] However, "[n]either Rule 23 nor due process require that all class members receive actual notice by mail or other means."[9] In this electronic age, the best practical notice may not always be postal mail – which is why the Rule 23 embraces notice through a variety of methods including "by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2).[10]

---

[7] *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 303 (8th Cir. 1995).

[8] *Id.*

[9] *In re Wholesale Grocery Prod. Antitrust Litig.*, No. 09-MD-2090 ADM/TNL, 2017 WL 826917, at *3 (D. Minn. Mar. 1, 2017).

[10] *See also Taqueria El Primo LLC v. Illinois Farmers Ins. Co.*, 630 F. Supp. 3d 1121, 1127 (D. Minn. 2022) (approving a notice plan to send email notice to most class members); *Phillips v. Caliber Home Loans, Inc.*, No. 19-CV-2711 (WMW/LIB), 2021 WL 3030648, at *8 (D. Minn. July 19, 2021) ("given the relatively small value at stake for each Class Member, the Court finds that email notice is the best practicable notice under the circumstances").

The Court has discretion over the mechanisms for providing notice, "subject only to the broad 'reasonableness' standards imposed by due process."[11] The Eighth Circuit has reviewed similar electronic notice plans and found no abuse of discretion.[12]

A.  **The Court should approve the proposed notice.**

The Consumer Class propose two notice forms for this case and both meet the requirements to be approved. The Email Notice is a short-form notice that contains summary information about the lawsuit. *See* Schachter Decl., Ex. A (email notice). The Consumer Class recommend sending the Email Notice to the 24 million consumers whose email address was provided by grocery retailers in response to Consumer Plaintiffs' subpoenas. *Id*. at ¶ 8. The Consumer Class has also prepared a Website Notice, which is a long-form notice that contains more detailed information about the case. *See* Schachter Decl., Ex. B (website notice). CIPPs recommend publishing the long-form notice on the case website. *Id*. at ¶ 7.

Notice to class members "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for

---

[11] *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

[12] *Jones v. Monsanto Co.*, 38 F.4th 693, 696 (8th Cir. 2022), *cert. denied sub nom. John v. Jones*, 143 S. Ct. 2458, 216 L. Ed. 2d 430 (2023) (finding a notice plan that included publication in advertisements, banner ads, sponsored search listings, a nationwide news release, and the creation of a settlement website and hotline adequate).

010736-11/2324002 V1

requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Since class members are bound by the results of a certified Rule 23(b)(3) class action unless they affirmatively opt out, this class notice is required as a matter of constitutional due process to protect the rights of the absent class members.[13]

Here, the proposed notices comply with these requirements. The notices convey enough information so that class members can make an informed decision in connection with the next step of the proceedings. Each notice is written in plain language and sets out the relevant information in a question-and-answer form that a class member can understand. *See* Schachter Decl., ¶ 7. Consistent with Rule 23(c)(3) and the Federal Judicial Center's *Class Action Notice and Plain Language Guide*, the proposed notices use neutral language to describe the nature of the action; the definition of the certified class; the claims and issues related to the lawsuit; class counsels' identity and contact information; and the binding effect of a judgment on class members. The proposed notices also tell class members that they can opt out of the class by requesting an exclusion before the deadline, sets out the consequences of opting out, and informs them that they may hire an attorney to file their own case, if desired. *Id*. Because the notices clearly and fairly appraise class members of the nature of this class action and the scope of their rights, they should be approved.

---

[13] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

- 5 -

B.  **The proposed notice plan provides the best practicable notice under the circumstances.**

The Consumer Class's proposed notice plan is organized into two parts: (1) direct notice through email to all class members who can be identified; (2) a robust indirect notice campaign to inform all class members of their rights. *See* Schachter Decl., ¶¶ 7-11. This plan also builds on the notice campaign for the $95 million in settlements – any class member who submitted a claim related to these settlements will receive direct notice of the class certification here.

1.  **Direct notice through email is appropriate.**

When it comes to direct notice, Rule 23(c)(2) demonstrates flexibility and options: in some cases, the best practicable notice might be through U.S. mail, but in other cases the best notice might be electronic. Here, the claims administrator recommends sending the short-form notice through email. "Nowadays, communications by email is also the 'norm.' . . . . email is a ubiquitous means of communication, and individuals often retain the same email address despite multiple changes in their mailing addresses."[14] Direct notice is estimated to reach approximately 24 million people. *See* Schachter Decl., ¶ 8.

This Court previously approved two rounds of direct email notice in connection with settlements.[15] Class counsel previously obtained from grocery stores the email

---

[14] *Kujat v. Roundy's Supermarkets Inc.*, No. 18 C 5326, 2019 WL 1953107, at *4 (N.D. Ill. May 2, 2019).

[15] *See* Order Granting Motion to Approve the Manner and Form of Class Notice Regarding Settlement with JBS Defendants, ECF No. 811 (June 22, 2021); Order Granting Preliminary Approval of the Class Action Settlement Agreement Between the CIPPs and Defendant Smithfield Foods, ECF No. 1588 (Nov. 9, 2022).

addresses for potential class members. Many grocery stores and club stores collect and retain the email addresses of customers and use these email addresses to inform customers of product recalls.

When sending email notice, A.B. Data will follow the same protocols that it previously followed to maximize deliverability and avoid SPAM and junk filters. Schachter Decl., at ¶ 8. These tasks include running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid, as well as working with A.B. Data's contacts at the email service providers to develop strategies to achieve optimal deliverability. *Id.* A.B. Data will also incorporate certain best practices to maximize deliverability, such as ensuring no inclusion of words or phrases known to trigger SPAM or junk filters, not including attachments to the email, and sending the emails in tranches over a period of days or weeks. *Id.* The email notice will also include the case specific website, where class members will have access to the updated website (long-form) notice, the exclusion deadlines, and other case specific information. *Id.* at ¶ 8.

### 2. The remaining components of the proposed notice program are comprehensive and satisfy the due process rights of absent class members.

When direct notice is not is not practical, courts may use alternative means such as notice through third parties, paid advertising, or posting in places frequented by class members.[16] Consumer Plaintiffs have proposed a robust notice campaign intended to

---

[16] *See Jones v. Monsanto*, 38 F.4th 693, 696 (8th Cir. 2022) (holding the district court did not abuse its discretion by approving an approach that included broad advertisements

reach class members whose contact information may be unavailable. The notice program includes publication notice, including (1) banner ads, (2) sponsored internet search listings, and (3) a media information release; (4) a case-specific website, and (5) a case-specific toll-free number.

**Publication Notice**. To supplement the direct notice program, CIPPs propose a publication notice program. The publication plan includes paid media and earned media components. A.B. Data proposes using highly targeted advertisements, specifically delivered to the social media feeds of potential class members using their known contact information, and to digital users that have expressed an interest in information relevant to the subject of this case, such as pork products. Schachter Decl., at ¶ 9. Each of the following elements of publication notice has been specifically designed to be readable, noticeable, targeted, and widely disseminated to sources calculated to reach potential Settlement Class Members. *Id.*

**Banner Advertisements**. Digital banner and social media newsfeed advertisements, targeted specifically to class members, will provide class members with additional opportunities to be apprised of the settlements and their rights. These banner advertisements and social media newsfeed advertisements will appear in multiple formats across desktop and mobile devices in both English and Spanish. *Id.* at ¶ 9. The banner advertisements will be placed via Google Display Networks and Google AdWords, and

---

online and in publications, but did not require plaintiffs to subpoena third parties for mailing addresses).

- 8 -

on the social media platforms Facebook, Instagram, and YouTube, leading social media sites in the United States. *Id.* . Clicking on any such banner notice will take the reader to the case website, www.overchargedforpork.com, where they can obtain detailed information about the litigation. A.B. Data proposes displaying these banner advertisements for 30 days, which is expected to generate a minimum of 402 million impressions. *Id.*

**Sponsored Internet Search Listings**. Additionally, sponsored search listings, directing class members to the case website, will be acquired on Google and other search engines. *Id.* at ¶ 9. When identified target phrases and keywords relevant to the action are used, links to the Settlement website will appear on the search result pages. *Id.* This earned media component will be available to Settlement Class Members across the U.S. and will assist them in finding and accessing the case website.

**Informational Release**. As a further supplement to the above-described elements, an "Informational Release" will be issued to approximately 10,000 newsrooms, including those of print, broadcast, and digital websites across the United States. *Id.* at ¶ 10. The news release will also be translated and published to PR Newswire's U.S. Hispanic media contacts and Hispanic news websites. *Id.*

**Settlement Website.** A.B. Data has implemented a case-specific website for this matter, www.overchargedforpork.com. *Id.* at ¶ 11. The website notice will be posted prominently. *Id.* The website will also provide, among other things, a summary of the case, all relevant documents, important dates, and any pertinent updates concerning the litigation or the settlement process. *Id.* The website is secure, with an "https"

designation. Google Analytics and Facebook Pixel tracking codes will also be placed on the website to ensure accurate optimization with the digital and social media ads.

**Toll-Free Number and Mailing Address**. A.B. Data will also implement and maintain a toll-free telephone number with an automated interactive voice response system. *Id.* at ¶ 11. The automated interactive voice response system will present callers with a series of choices to hear prerecorded information concerning the case deadlines. *Id.*

These components satisfy the due process requirements and are similar to the methods the Consumer Class previously used to reach class members to notify them of the prior settlements. The claims administrator estimates that this notice campaign will reach approximately 80.3 percent of class members. *Id.* at ¶ 12. This is well above the 70% threshold recommended by the Federal Judicial Center's *Class Action Notice and Plain Language Guide*. *Id*.

## IV.   CONCLUSION

With the Consumer Class now certified under Rule 23(b)(3), it is time to direct notice to class members, pursuant to Rule 23(c)(2)(B) The Consumer Class respectfully requests that the Court approve the proposed form of notice plan. The Consumer Class further requests the Court Order that: (1) the notice program begin within 30 days after the date the Court enters an order approving the proposed notice plan ("Notice Start Date"); (2) the deadline for class members to request exclusion ("Exclusion Deadline") be set at 60 days following the Notice Start Date; (3) the deadline for class counsel to file with the Court the list of all persons who have requested exclusion to be set 14 days after

the Exclusion Deadline; (4) the internet address for the notice website be set as www.overchargedforpork.com; and that (5) A.B. Data be appointed as the notice administrator.

DATED: September 5, 2023                HAGENS BERMAN SOBOL SHAPIRO LLP

By: *Shana E. Scarlett*
         SHANA E. SCARLETT
Rio Pierce
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.om

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Elaine T. Byszewski
Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
elaine@hbsslaw.com
abigailp@hbsslaw.com

GUSTAFSON GLUEK PLLC

By: *Daniel C. Hedlund*
         DANIEL C. HEDLUND

- 11 -

- 12 -

        Daniel E. Gustafson (#202241)
        Daniel C. Hedlund (#258337)
        Michelle J. Looby (#388166)
        Joshua J. Rissman (#391500)
        GUSTAFSON GLUEK PLLC
        120 South 6th Street, Suite 2600
        Minneapolis, MN 55402
        Telephone: (612) 333-8844
        Facsimile: (612) 339-6622
        dgustafson@gustafsongluek.com
        dhedlund@gustafsongluek.com
        mlooby@gustafsongluek.com
        jrissman@gustafsongluek.com

*Interim Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*